# EXHIBIT  4

MVI/Palaxar - Pl
101

# EMPLOYMENT AGREEMENT

This Agreement made on the October day of 3rd, 2005, between **Common Paymaster Corporation**, a Florida corporation, with its principal office located at 20 North Orange Avenue, Suite 1400, Orlando, Florida 32801, hereinafter referred to as "**Employer**," and **Frank Hailstones**, who resides at 734 Lake Biscayne Way, Hidden Lakes, FL 328371, hereinafter referred to as "**Employee**." **Employer** and **Employee** are hereinafter jointly referred to as the "**Parties**."

**WHEREAS, Employer** provides general business consulting activities to a number of different companies, which may or may not be affiliated or controlled by **Employer**, and

**WHEREAS, Employee** seeks to secure a position with **Employer**. **Employer** desires to hire **Employee** for that position under the terms set forth in this Agreement.

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein, and other good and valuable consideration received in hand, the sufficiency and receipt of which is hereby acknowledged, the **Parties** agree as follows:

## TERMS AND CONDITIONS

1.    NATURE OF EMPLOYMENT

(a)    **Employer** hereby hires **Employee** and **Employee** accepts such employment and agrees to perform at all times faithfully, industrially, and to the best of his ability, experience and talent, all the duties **Employer** may require of him pursuant to the expressed and implicit terms of this Agreement. **Employee**, during the term of this Agreement, agrees to diligently perform all services that may be assigned to him and shall exercise such powers and authority as may, from time to time, be delegated to him, including such powers and authority usually pertaining and attributed by law, custom, or otherwise to a management level associate in a professional firm. The initial primary classification for **Employee** will be as **Master Strategist** (the "Initial Primary Classification"), and **Employee**'s title shall be **Senior Vice President**. **Employee**'s Job Description is set forth in Schedule "A," attached hereto and incorporated by reference herein.

(b)    **Employer** shall have the right, in its sole discretion, to change the job description to include responsibilities reasonably related to the position or to remove responsibilities from the description of the position.

(c)    **Employee** acknowledges that by signing this Agreement **Employee** shall be available to any of **Employer**'s affiliates during the Employment Term of this Agreement.

(d)    **Employee** hereby acknowledges that he has received a copy of the Employee Handbook and has reviewed its provisions. **Employee** agrees to comply with **Employer**'s policies and procedures as set forth in the Employee Handbook. **Employee** agrees to follow the policies and procedures set forth in Schedule "B," attached hereto and incorporated by reference herein, regardless of whether such policies and procedures are set forth in the Employee Handbook.

2.    DURATION OF THIS AGREEMENT

**Employer** employs **Employee**, and **Employee** accepts such employment with **Employer**, for a period of thirty-six (36) months, beginning on October 1, 2005, and terminating on September 31, 2008. As used in this Agreement, "Employment Term" refers to the period of employment of **Employee** under this

Initials_____
          Employer

Common Paymaster Corp Employment Agreement – Frank Hailstones
Page 1 of 15

Initials_____
          Employee

(Ver H05)

MVI/Palaxar - PI
102

Agreement, whether for the aforementioned period above, termination earlier as provided elsewhere in this Agreement, or as extended by mutual agreement of **Employer** and **Employee**.

3.   COMPENSATION AND BENEFITS

   (a)   **Employer** shall pay **Employee**, and **Employee** agrees to accept from **Employer**, in full payment for **Employee's** services under this Agreement, the Compensation as set forth opposite **Employee's** Initial Primary Classification in Schedule "C" attached hereto and incorporated by reference herein.

   (b)   In addition to the Compensation set forth in Paragraph 3(a) hereinabove, **Employee** shall be entitled to Three (3) directorship(s) in **Employer** and/or its affiliated companies, which shall be in **Employer's** sole and absolute discretion, and shall be compensated Six Thousand ($6,000) per month for the directorship(s) position(s); provided, however, that **Employee's** directorship(s) compensation shall never be greater than the "Directors Fee (Incentive Compensation)" set forth in Schedule "C-1a" attached hereto and incorporated by reference herein.

   (c)   **Employee** shall receive no other fringe benefits, and disability, medical, dental, life or other insurance except those benefits that are generally available to any employee of **Employer**.

   (d)   **Employee** shall be granted considerable autonomy on establishing **Employee's** schedule. **Employee** shall exercise informed and reasonable judgment concerning appropriate hours and vacation time. Notwithstanding anything to the contrary contained in the Employee Handbook, **Employee** may not receive lesser benefits than the benefits contained in the Handbook in effect at the execution date of this Agreement.

   (e)   **Employer** shall reimburse **Employee** for all actual, reasonable and necessary business expenses incurred by **Employee** in connection with the business of **Employer**. Payments to **Employee** for such business expenses shall be made within seven (7) days after receipt of an approved expense report from **Employee**, or such ordinary day of the calendar month as **Employer** pays employees' accounts, whichever day is later in time. **Employer** shall determine whether expense reports are to be submitted weekly or monthly.

   (f)   **Employee's** entitlement to receive Compensation under this Agreement shall be offset against any other compensation otherwise paid to **Employee** under any employment arrangement with **Employer** or any **Employer** affiliate (regardless of the number of years), on a cumulative basis from the date of execution of this Agreement.

   (g)   Notwithstanding any other provision regarding dispute resolution set forth elsewhere in this Agreement, any dispute regarding the Compensation shall be exclusively decided in accordance with the laws of the State of Florida. Such dispute shall first be submitted to non-binding mediation and shall thereafter be determined by final binding arbitration, and not litigation, with the agreed venue for mediation and arbitration being in Orlando, Florida. The mediation and, if needed, arbitrator, shall be selected in each case by the applicable regional manager of **Employer** and by **Employee**. In the event of a disagreement between **Employer** and **Employee** as to the arbitrator, the parties shall have a mutually agreeable independent third party select an arbitrator. **Employee** agrees to waive all other enforcement rights with respect to any dispute regarding the Compensation.

Initials_____ ___
Employer

Common Paymaster Corp Employment Agreement – Frank Hailstones
Page 2 of 15

Initials_____ __
Employee

(Ver H05)

MVI/Palaxar - P1
103

## 4.    TERMINATION/SEVERANCE

(a)    Notwithstanding any contrary provision in this Agreement, **Employer** may terminate this Agreement for cause without notice.  For the purpose of this paragraph, "cause" is defined as (1) **Employee** convicted of, or pleading guilty or no contest to, a felony under applicable law; (2) Willful material breach of **Employee's** fiduciary duty to **Employer**; (3) **Employee** willfully failing to perform any material explicit or implicit duty that is within the normal duties of **Employee** or is a reasonable request or directive of **Employer**; (4) **Employee** committing any breach of a material term of this Agreement, provided that **Employee**, after receiving twenty (20) days written notice from **Employer**, has not cured such breach; (5) **Employee** willfully failing to adhere to any material rule, policy or directive set forth by **Employer**; (6) **Employee** committing willful insubordination, corruption and/or disruption in the workplace; or (7) **Employee** committing a harassment violation of law against an employee, affiliate, owner, client, invitee, or licensee of **Employer**.

(b)    Upon termination, **Employee** shall immediately provide to **Employer** all documents and items of any nature or description, including computer files, that pertain to actual potential customers or leads that **Employee** developed or obtained during employment, any phase or aspect of **Employer's** operations, any phase or aspect of **Employer's** future operations or plans, and any other items, lists, documents, or the like, that in any way may pertain to **Employer's** business.

(c)    Except for termination of **Employee** due to breaches of paragraphs 4(a)(1) and 4(a)(7) above, if **Employer** terminates this Agreement for any reason, including for cause, or as a result of a merger, acquisition, sale or "Change in Control" (as defined below in paragraph 4(f)), in addition to the Compensation up until date of termination, **Employee** shall be entitled to a lump sum severance payment within thirty (30) days of the termination date of employment.  This severance payment shall be an amount equal to one (1) month's base compensation for every two (2) years of employment by **Employee** under this Agreement, but shall never be less than one (1) month's base compensation.

> *For illustrative purposes:*  If Employee's average monthly Base Compensation is $8,000, and Employee has worked for 4 years and 3 months and is terminated, Employee is entitled to $8,000 times 2 = $16,000.

(d)    In the event it shall be determined that any payment, distribution or other action by **Employer**, to or for the benefit of **Employee**, whether paid or payable or distributed or distributable pursuant to the terms of this Agreement or otherwise, would be taxable as an excise tax under the Internal Revenue Code 1986, **Employer** shall make a payment to **Employee** in an amount equal to any such excise tax imposed upon said payments.  Should any interest or penalties accrue to **Employee** with respect to any such excise tax, **Employer** will also reimburse those costs.

(e)    For purposes of this Agreement, the term "Change in Control" shall be defined as:

(i)    The approval by the shareholders of **Employer** of a reorganization, merger, consolidation or other form of corporate transaction or series of transactions, in each case, where the persons who were the shareowners of **Employer** immediately prior to such organization, merger or consolidation or other transaction do not, immediately thereafter, own more than fifty percent (50%) of the combined voting power of the succeeding corporation. This voting power is generally entitled to vote for election of directors of the newly reorganized, emerged, or consolidated company resulting in new outstanding voting shares, or

(ii)    **Employer** liquidates or dissolves the company, or

Initials _____
Employer

Comnua Paymaster Corp Employment Agreement – Frank Hailstones
Page 3 of 15

Initials _____
Employee

(Ver H05)

MVI/Palaxar - PI
104

(iii)     The acquisition by any person, entity or "group" of more than fifty percent (50%) of the then outstanding shares of **Employer's** common voting stock, or

(iv)     The sale of all or substantially all of the assets of **Employer**.

## 5.     UNIQUENESS OF SERVICES OF EMPLOYEE

**Employee** hereby warrants and represents that the services he intends to provide under this Agreement are of a special, unique, unusual, extraordinary and intellectual character that gives him a peculiar value, the loss of which cannot be reasonably or adequately compensated by damages in an action at law. **Employee**, therefore, expressly agrees that **Employer** shall be entitled to injunctive and other equitable relief to prevent a breach of this Agreement by **Employee** in addition to any other rights or remedies that **Employer** may possess and to the maximum extent permitted by law.  Any action for injunctive relief under this paragraph should not be subject to the provisions in this Agreement related to the alternative dispute resolution process.

## 6.     NON-DISCLOSURE OF CONFIDENTIAL INFORMATION COVENANTS

(a)     "Confidential Information" shall include, but not be limited to, regardless of form, all: (i) customer lists, affiliates, referral source lists, prospect lists, investor lists, vendor lists, client lists, databases, and personnel records; (ii) financial information concerning **Employer** and its operations; (iii) methods of organizing and conducting **Employer's** business as such methods, relate to **Employer's** sales, accounts, borrowers, customers, financing products or techniques, employees and referral sources; (iv) information relating to **Employer's** proprietary rights prior to any permitted public disclosure thereof, including, but not limited to, the nature of the proprietary rights, the status and details of research and development of products and services, and information regarding acquiring, protecting, enforcing and licensing proprietary rights (including trademarks and trade names); and, (v) other information, whether or not originated by **Employee**, which is used in **Employer's** business and is (a) proprietary to, about, or created by or for **Employer**; (b) information which gives **Employer** some competitive business advantage or the opportunity of obtaining such advantage or the disclosure of which could be detrimental to the interests of **Employer**; (c) designated as confidential information by **Employer**, or from all of the relevant circumstances should reasonably be assumed by **Employee** to be confidential and proprietary to **Employer**, or (d) is not generally known by persons other than **Employer**; all of which information, lists, schedules, records or methods are obtained by **Employee** from **Employer** or through **Employee's** performance of duties hereunder.  Confidential Information shall include all of the foregoing whether the same are produced by **Employee** or any other employee, agent or affiliate of **Employer** and all physical, tangible, or intangible embodiments or repositories (including any and all photocopies thereof) of the foregoing but shall not include information or matters that are a trade secret under applicable law.

(b)     **Employee** acknowledges and agrees that (i) **Employer** has expended and will continue to expend considerable and substantial time, effort and capital resources to develop the Confidential Information, (ii) the Confidential Information is innovative and proprietary in nature to **Employer** and must receive confidential treatment to protect **Employer's** proprietary interest therein from irreparable damage, (iii) **Employee** by virtue of **Employee's** employment relationship with **Employer**, will have access to the Confidential Information, and (iv) the Confidential Information and all physical, tangible and intangible embodiments or other repositories of the Confidential Information shall be and at all times remain the sole and exclusive property of **Employer**.  **Employee** further acknowledges that specialized training, unique to **Employer** and not otherwise available from any other source, has been provided to **Employee** at much cost, time and expense to **Employer**.  This training is not available from any school, available courses or from any source whatsoever but from the continued intense training offered by **Employer** to **Employee** as partial consideration for this Agreement.

Initials_____
     Employer

Common Paymaster Corp Employment Agreement – Frank Hailstones
Page 4 of 15

Initials_____
          Employee

(Ver H05)

MVI/Palaxar - PI
105

(c)     For the period of the Employment Term through the date which is three (3) years after termination of employment, **Employee** agrees that **Employee** will not, without the prior written consent of **Employer**, which consent may be withheld in the **Employer's** sole and absolute discretion, disclose or make available any Confidential Information to any person or entity (verbally or in writing), nor shall **Employee** make or cause to be made, or permit or allow, either on **Employee's** own behalf or on behalf of others, any use of the Confidential Information then in **Employee's** knowledge, custody, control or possession. **Employee** further agrees that immediately upon termination of **Employee's** employment with **Employer** for any reason or at any other time requested by **Employer** and as a condition precedent to **Employee's** receipt of any payments then due **Employee** from **Employer** under this Agreement, **Employee** shall promptly deliver to **Employer** any and all property belonging to **Employer**, including without limitation, all Confidential Information (including all physical, electronic, or other repositories thereof) in **Employee's** custody, control or possession.

(d)     **Employee** acknowledges that during the Employment Term, from time to time, **Employee** may have access to (directly or indirectly), or receive information from or regarding the **Employer** or its affiliates in the nature of trade secrets, the release of which may be damaging to **Employer** or its affiliates. **Employee** agrees to hold in strict confidence any information it receives regarding the **Employer** or its affiliates that is considered a trade secret and shall not disclose such information to any other person or entity, and will take all necessary steps to prevent any other person or entity from discovering the trade secrets. Accordingly, **Employee** agrees that the provisions of this Paragraph 6(d) may be enforced by temporary and permanent injunction, in addition to all other remedies provided by law and equity. Furthermore, **Employee** acknowledges and agrees that theft of trade secrets may subject **Employee** to certain sanctions and criminal penalties under the Economic Espionage Act of 1996 (18 U.S.C., Sections 1831 to 1839).

## 7.     PROTECTIVE COVENANTS

(a)     "Protected Parties" or "Protected Party" shall mean (i) all prospective customers, affiliates, partners, borrowers and referral sources of **Employer** with whom **Employee** has had direct contact as an employee of **Employer** during the eighteen (18) month period immediately preceding the termination of **Employee's** employment with **Employer**; (ii) all customers, affiliates, partners, borrowers and referral sources who have purchased, contracted, engaged or referred others to **Employer** for products, services or financing from **Employer** during the eighteen (18) month period immediately preceding the termination of **Employee's** employment with **Employer** and with whom **Employee** had direct contact as an employee of **Employer**; and (iii) all employees of **Employer** employed by **Employer** as of the termination date with whom **Employee** had direct contact while employed by **Employer**.

(b)     Except for or on behalf of **Employer**, **Employee** agrees that for the period of the Employment Term through the date which is two (2) years after termination of employment, **Employee** shall not on **Employee's** own behalf or in the service or on behalf of others, solicit, divert, pirate or appropriate, or attempt to solicit, divert, pirate or appropriate, to **Employee** or any other person or entity, any of the Protected Parties in connection with the provision of services, products or financing in competition with **Employer**, or otherwise interfere or attempt to interfere with **Employer's** relationship with the Protected Parties.

## 8.     RESTRICTIVE COVENANTS – INDEPENDENT COVENANTS

(a)     **Employee** agrees that while working for the **Employer** and for a period of eighteen months (18) immediately following the termination of employment for any reason whatsoever or no reason at all, **Employee** shall not provide, directly or indirectly, services similar to those **Employee** is

---

Initials_____
     Employer

Common Paymaster Corp Employment Agreement – Frank Hailstones
Page 5 of 15

Initials_____
     Employee

(Ver H05)

MVI/Palaxar - PI
106

providing to **Employer** under this Agreement, to any person or entity that provides services substantially similar to those of **Employer**.

(b)     Except in performance of this Agreement, **Employee** shall not during the term of this Agreement and for eighteen (18) months following termination of employment for any reason whatsoever or no reason at all, solicit, either directly or indirectly, any Protected Party for the purpose of encouraging or inducing such Protected Party to purchase or obtain specialized financial services or related to any other product/services provided by **Employer** as of the date of this Agreement and through the date of the termination of **Employee's** employment.

(c)     **Employee** further acknowledges that this covenant is an independent covenant within this Agreement. **Employee** acknowledges actual receipt of good and valuable consideration for the purpose of executing this covenant, as well as other consideration stated herein and including the consideration of continued employment by **Employer.**

(d)     **Employee** recognizes that the terms of this covenant found in Paragraphs 6, 7 and 8 are reasonable and necessary for the protection of the **Employer's** unique and national business, and shall survive the termination of this Agreement.

(e)     The provisions of the covenants found in Paragraphs 6, 7 and 8, as well as the period of time, geographical areas and types and scope of restrictions of **Employee's** activities specified herein are intended to be divisible; and, in the event any provision herein shall be deemed invalid or unenforceable in any respect, as to any one or more periods of time, geographical areas, business or activities, the remaining provisions shall not thereby be effected but shall, to the extent allowed by law, remain in full force and effect; and this Agreement shall, to the extent allowed by law, be deemed to be amended without further action by the parties hereto to the extent necessary to render it valid and enforceable.

(f)     **Employee** acknowledges that the covenants in Paragraphs 6, 7 and 8 are independent of the existence of any agreement, claim or cause of action that **Employee** may ever have against **Employer**, whether predicated on this Agreement or otherwise and shall not constitute a defense to the enforcement by **Employer** of this Agreement not to compete.

9.     **DEVOTION BY EMPLOYEE OF FULL-TIME TO BUSINESS**

(a)     Except as otherwise agreed to by **Employer** in writing, **Employee** shall devote all of his time, attention, knowledge and skills solely and exclusively to the business and interests of **Employer** during normal working hours. **Employer** shall retain all of the benefits, emoluments, profits or other returns from or incidental to any and all work, services, advice and mental efforts of **Employee** that arise during the term of this Agreement, or such other amount as agreed to in writing by **Employer's** Board of Directors.

(b)     **Employee** shall not directly or indirectly, act as a partner, officer, director, stockholder, adviser, employee, or affiliate in any other business or trade that is related to that of **Employer**, except as otherwise agreed to in writing. **Employee** may invest his funds in the capital stock of a direct or indirect competitor of **Employer** only if said holdings represent less than five percent (5%) of the total number shares or principal amount of the securities of said issuer outstanding.

(c)     **Employee** shall provide **Employer** a confidential list of all current business and commercial interests, other than holdings inside of an ERISA qualified retirement account or any holdings of any kind or nature that are less than five percent (5%) of the value of any enterprise or venture (whether such holdings are held directly or indirectly by **Employee**).

Initials_____  __
          Employer

Common Paymaster Corp Employment Agreement – Frank Hailstones
Page 6 of 15

Initials_____ .
          Employee

(Ver II05)

MVI/Palaxar - P1
107

(d)    Any future business and commercial interests, other than those set forth under Paragraphs 9(b) and 9(c) hereinabove, must be disclosed to **Employer** at least thirty (30) days prior to **Employee** acquiring any such interests. **Employee** acknowledges that the reason for the disclosure of such interests is because **Employer** and its affiliates have diverse holdings and are subject to various federal and state securities laws, as well as certain contractual vendor obligations with both public and private companies, making it necessary to disclose such information so that **Employer** does not violate any contracts, covenants, federal or state laws.

(e)    Failure of **Employee** to provide **Employer** with a list of all current business and commercial interests and/or failure of **Employee** to disclose any future business and commercial interests in accordance with Paragraph 9 shall subject **Employee** to default under this Agreement, resulting in the immediate termination of this Agreement and **Employee's** forfeiture of all benefits, compensation and interests held pursuant to this Agreement, at the time of termination.

## 10.    INDEMNIFICATION OF EMPLOYER AND INDEMNIFICATION OF EMPLOYEE

(a)    Unless acting under the direction of **Employer**, **Employee** shall hold harmless, indemnify and defend **Employer** from any and all claims, demands, damages, losses, expenses, attorneys' fees, causes of action, judgments and liability arising out of or in connection with **Employee's** breach of any representation, warranty, or agreement made under this Agreement, or arising out of any fraudulent or deliberate wrongful acts of **Employee** during **Employee's** engagement or representation to others as an **Employee**, independent contractor, or other affiliate of **Employer**.

(b)    **Employer** shall hold harmless, indemnify and defend **Employee** from any and all claims, demands, damages, losses, expenses, attorneys fees, causes of action, judgments and liability arising out of any fraudulent or deliberate wrongful acts of **Employer**, independent contractor or other affiliate of **Employer** and further for any acts or omissions arising out of **Employee's** employment with **Employer** unless caused by the active gross negligence of **Employee**.

## 11.    RELEASE OF PRIOR CLAIMS

**Employee**, for and in consideration of the payment of One Dollar ($1.00), and other good and valuable consideration, in hand paid, the receipt and sufficiency of which is hereby acknowledged, hereby agrees, to release, cancel, forgive and forever discharge **Employer**, each of its predecessors, parent corporations or companies, holding companies, subsidiaries, affiliates, divisions, successors and assigns, and all of its/their officers, directors, members and employees from all actions, claims, demands, damages, obligations, liabilities, controversies and executions, of any kind or nature whatsoever, whether known or unknown, whether suspected or not, which have arisen, or may have arisen, or shall arise by reason of the prior employment by **Employer** of **Employee**. Furthermore, **Employee** hereby acknowledges that **Employee** has no present or past claims of any nature against **Employer**. **Employee** specifically waives any claim or right to assert any cause of action or alleged cause of action or claim or demand which has, through oversight or error, intentionally or unintentionally or through a mutual mistake, been omitted from this section. This release shall be effective from the beginning of time until the date hereof.

## 12.    ALTERNATIVE DISPUTE RESOLUTION

All claims, duties, disputes and other matters in question by and between **Employee** and **Employer** shall be decided by final binding Arbitration under and in accordance with the provisions of Chapter 682, Florida Statutes, with exclusive venue for such Arbitration, and for any judicial proceedings to enforce the terms and conditions of this provision requiring Arbitration, or to confirm such Arbitration Award, to

Initials_____
    Employer

Common Paymaster Corp Employment Agreement – Frank Hailstones
Page 7 of 15

Initials_____
    Employee

(Ver H05)

MVI/Palaxar - P1
108

be only in the Court of appropriate jurisdiction in Orange County, Florida. Provided further, that in the event for any reason a dispute under this Agreement is not subject to the Florida Arbitration Code, then in such event such dispute shall be decided by final binding Arbitration under and in accordance with the provisions of the Federal Arbitration Code, with exclusive venue likewise to be in Orange County, Florida, in the same manner as provided above. If there is no jurisdiction for such dispute under the Federal Arbitration Code, then such disputes shall be decided by Arbitration in accordance with Rules of the American Arbitration Association then in effect, with exclusive venue likewise to be in Orange County, Florida, in the same manner as provided above. The prevailing party in any Arbitration under this Agreement, including in any litigation required to enforce the terms and conditions of this Arbitration Provision, including to confirm an Arbitration Award, shall be entitled to recover their reasonable attorney's fees and consulting fees, and in addition, any taxable costs (including Arbitrator compensation) as are otherwise allowed in the Arbitration and for litigation to enforce the terms of this Arbitration provision or to confirm any Arbitration Award. This provision specifically authorizes the Arbitrator(s), within his (their) discretion, to tax in favor of the prevailing party that fees and costs of the Arbitration proceedings, to include Arbitrator compensation, filing fees, subpoena service fees, expert witness fees and costs, and out-of-pocket costs for a hearing room to conduct the proceeding.

## 13. MISCELLANEOUS PROVISIONS

(a)     This Agreement contains the sole and entire agreement between the **Parties** and shall supersede any and all other agreements between the **Parties** except for any covenant not to compete, covenant not to solicit, confidentiality agreement, or amended compensation agreement signed by both **Parties**. The **Parties** acknowledge that they have read this Agreement in its entirety and that any oral or written statements to the contrary are void and that neither **Party** has relied on any such representation in connection with this Agreement.

(b)     The **Parties** agree that no waiver or modification of this Agreement or of any covenant, condition, or limitation contained within it is valid unless it is in writing, clearly identified as a modification or waiver of this Agreement, or one of the clauses of this Agreement, and duly executed by both **Parties**. The **Parties** further agree that neither shall submit or attempt to submit any waiver or modification into evidence in any proceeding, arbitration, or litigation between the **Parties** arising out of or affecting this Agreement, or the rights or obligations of any **Party** under it, unless such waiver or modification is in writing, clearly identified as a modification or waiver of this Agreement or one of the clauses of this Agreement, and duly executed by both **Parties**.

(c)     The laws of the State of Florida govern this Agreement and performance under it at the exclusion of the laws of any other forum or jurisdiction irrespective of the particular jurisdiction in which any action or proceeding is instituted.

(d)     In the event that one or more provisions in this Agreement are held invalid or unenforceable, the remaining provisions shall remain in full force and effect.

(e)     Any waiver or modification of any breach of one or several provisions contained in this Agreement shall not be considered as a waiver of any subsequent breach of the same or other provisions of this Agreement.

(f)     The headings and titles used in this Agreement are for the reference and convenience of the **Parties** and do not serve to limit or change the meaning of any provision contained in this Agreement. All personal pronouns used in this Agreement, whether in the masculine, feminine or neuter gender, shall include all other genders; the singular shall include the plural; and the plural shall include the singular.

Initials_____
        Employer

Common Paymaster Corp Employment Agreement – Frank Hailstones
Page 8 of 15

Initials_____
        Employee

(Ver H05)

MVI/Palaxar - P1
109

(g)     Any **Party** required to provide notice to the other **Party** pursuant to this Agreement may affect such notice by personal delivery in writing or by certified mail, postage prepaid, return receipt requested. A **Party** mailing a notice shall address it to the relevant **Parties** at the addresses appearing in the introductory paragraph of this Agreement, but any **Party** may change its notice address in accordance with this paragraph. The **Parties** hereby deem any personally delivered notice as delivered on the date of actual receipt, provided the notice is signed by the person named in the notice or if the receipt refuses to sign such notice, then by the date of a notation as the delivering **Party** may show that communicates an attempted, but unclaimed or refused, delivery.

(h)     Failure to insist upon strict compliance with any of the terms, covenants or conditions hereof, shall not be deemed a waiver of such terms, covenants or conditions, nor shall any waiver or relinquishment of any right or power hereunder, at any one time or more times, be deemed a waiver or relinquishment of such right or power at any other time or times.

(i)     This Agreement shall be binding on, and inure to the benefit of, the successors and assigns of **Employer**. **Employee** shall have no right to assign this Agreement, but **Employer**, at its sole discretion, shall have the right to assign it.

(j)     This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which together shall comprise but a single instrument.

(k)     No provision of this Agreement shall be construed against, or interpreted to the disadvantage of, any **Party** hereto by any court or other governmental or judicial authority by reason of such party having or being deemed to have drafted, structured, dictated or required such provision.

**EMPLOYEE CERTIFIES THAT EMPLOYEE READ THE ENTIRE CONTENTS OF THIS AGREEMENT BEFORE EXECUTING SAME; THAT EMPLOYEE FULLY UNDERSTANDS ALL THE TERMS, CONDITIONS AND PROVISIONS SET FORTH IN THIS AGREEMENT, PARTICULARLY INCLUDING, BUT NOT LIMITED TO, EMPLOYEE'S FIDUCIARY AND CONFIDENTIAL RELATIONSHIP WITH EMPLOYER AND EMPLOYEE'S PROTECTIVE COVENANTS AND AGREEMENTS; THAT EMPLOYEE HAS RECEIVED A COPY OF THIS AGREEMENT AS SIGNED BY EMPLOYEE; AND THAT EMPLOYEE BEING BOUND BY THIS AGREEMENT IS A CONDITION PRECEDENT TO EMPLOYER'S ENGAGEMENT OF EMPLOYEE'S SERVICES AND EMPLOYER'S EXECUTION OF THIS AGREEMENT.**

**BY SIGNING BELOW AND INITIALING THE BOTTOM OF EACH OF THE PRECEDING EIGHT (8) PAGES, AS WELL AS THE ATTACHED SCHEDULES, THE PARTIES AGREE TO THE TERMS AND CONDITIONS HEREOF.**

**EMPLOYER:**                                              **EMPLOYEE:**
**Common Paymaster Corp**
A Florida corporation

**By:**_____          **By:**_____

**Print Name:**   _Martin C. Flynn, Jr._          **Print Name:** _____

**Print Title:**        _President_          **Print Title:** _____

**Date:**_____          **Date:**_____

                                              **Social Security Number:**_____

Initials_____          Common Paymaster Corp Employment Agreement – Frank Hailsfunes          Initials_____
        Employer                                    Page 9 of 15                                    Employee

{Ver H05)                                                                              MVI/Palaxar - Pf
                                                                                              110

## Schedule "A"
## __JOB DESCRIPTION__

**Employee's** duties and responsibilities shall include, but not be limited to:

- The business development and/or management of any current or prospective client-related activities.
- Other responsibilities to be assigned.

Initials_____ ___
Employer

Common Paymaster Corp Employment Agreement – Frank Hailstones
Page 10 of 15

Initials_ _____
Employee

(Ver H05)

MVI/Pataxar - PI
111

Schedule "B"

## POLICIES

Employee agrees to use Employee's best efforts to do the following:

- Identify and schedule work related to Employee's businesses.

- Make a weekly report to Employer regarding the status of any significant projects on which Employee is working.

- Make a full disclosure of any existing business. All future business will be run through Employer's screening processes.

- Complete and turn in weekly timesheets.

- Deliver all PIN numbers and pass codes relating to the business financial account, along with full disclosure of any activities on any business account to Employer.

- Deliver personal biographical materials to Employer to be published in advertising, marketing or promotional materials and on company websites of Employer and its affiliates. By delivering such biographical materials to Employer, Employee hereby expressly grants Employer and its affiliates the nonexclusive right to use Employee's name, biographical materials and likeness in connection with advertising, marketing or promotional materials, and websites of Employer and its affiliates.

- Employee agrees that any communication received or sent by Employee at his employment location, whether voice, email, or regular mail shall be subject to review and inspection by Employer at any time.

Initials _____
        Employer

Common Paymaster Corp Employment Agreement - Frank Hailstones
Page 11 of 15

Initials___ _____
        Employee

(Ver H05)

MVI/Palaxar - PI
112

## Schedule "C"
## COMPENSATION

Employee shall be compensated in accordance with Schedule "C-1a" or "C-1b" in accordance with Employee's then current Primary Classification. Such compensation shall consist of "Base Compensation" and "Incentive Compensation" as identified in Schedule "C-1a" or "C-1b" attached hereto and incorporated by reference herein.

Incentive Compensation shall consist of the grant to **Employee** on an annual basis of preferred shares of **Mirabilis Ventures, Inc.**, a Nevada corporation ("Mirabilis"), each preferred share (a "Preferred Share") having a face value of One Thousand Dollars ($1,000), and bearing a coupon rate of six percent (6%) (the "Coupon"). Preferred Shares shall be granted to **Employee** on the basis of the formula (position and longevity) set forth in Schedule "C-2," attached hereto and incorporated by reference herein, whenever there are **Employer** net revenues sufficient to enable grants to all employees eligible for such grants (the "Formula"). The Preferred Shares shall not be granted to **Employee** until **Employee** completes their second full year of employment, after which **Employee** shall receive **Employee's** Preferred Shares in accordance with Schedule "C-2." Thereafter, **Employee** shall continue to receive their Preferred Shares, in accordance with Schedule "C-2", on the yearly anniversary of the date of execution of this Agreement. The Coupon shall be paid annually to **Employee**. Incentive Compensation may also consist of yearly discretionary monetary bonuses and yearly discretionary stock bonuses. Both bonuses shall be determined by the Board of Directors of **Employer** and shall be based upon certain performance goals of **Employer** as set by the Board of Directors.

Based on the Formula, whenever three thousand (3,000) Preferred Shares have been granted to **Employee**, **Employee** shall be eligible to be a Preferred Member, and as a Preferred Member, shall have the right to vote, with other Preferred Member, on the admission of new Preferred Members. **Employee** becomes a Preferred Member whenever one-half (1/2) of all current Preferred Members' vote to grant preferred membership status to **Employee**.

Based on the Formula, whenever five thousand (5,000) Preferred Shares have been granted to **Employee**, **Employee** shall be eligible to have "Tenure," and as such a "Tenured Member," shall have the right to vote, with other Tenured Members, on the admission of new Tenured Members. An **Employee** has Tenure and becomes a Tenured Member whenever two-thirds (2/3) of all current Tenured Members vote to grant Tenure to **Employee**, and the permission of a majority in ownership of the common stock of Mirabilis vote to allow **Employee** to be granted Tenure also. Tenured Members shall have such other rights and privileges as Mirabilis shall determine from time to time. The maximum number of Preferred Shares that **Employee** may earn shall be five thousand (5,000).

Tenured Members shall select the boards of directors of Mirabilis' various affiliated companies that **Employee** shall serve on, and **Employee** shall thereby be entitled to receive the additional compensation listed in the Formula for such services.

All voting rights granted under this Agreement shall be subject to Mirabilis' Shareholders Agreement.

Initials_____
Employer

Common Paymaster Corp Employment Agreement – Frank Hailstones
Page 12 of 15

Initials_____
Employee

(Ver H05)

MVI/Palaxar - PI
113

Schedule "C-1a"
## EMPLOYEE COMPENSATION RANKS, TITLES & COMPENSATION

*Vice President* – Officer performing primarily professional and advisory services for clients.

*Administrative Vice President* – Officer in a regional office who performs primarily management functions instead of client services.

*Senior Vice President* – Officer in charge of client selection and case assignments in a geographic region.

*Senior Regional Officer (SRO)* – Professional in charge of managing regional organization operations by directing and coordinating activities consistent with established goals, objectives, and policies.

*Executive Vice President* – Officer at corporate office performing primarily management functions, such as Business Development, Operations, Corporate Relations, Controller, Treasurer, Corporate/General Counsel, and Secretary.

| Classification | Hourly Rate | Base Compensation | Directors Fee (Incentive Compensation) |
|---|---|---|---|
| 1. General Analyst | 75 | 48,000 | — |
| 2. Senior Analyst | 80 | 54,000 | — |
| 3. Expert Analyst | 90 | 60,000 | 25% |
| 4. General Advisor | 100 | 66,000 | 25% |
| 5. Senior Advisor | 125 | 72,000 | 33.33% |
| 6. Expert Advisor | 150 | 84,000 | 33.33% |
| 7. Expert Advisor II | 150 | 90,000 | 33.33% |
| 7. General Strategist | 200 | 96,000 | 40% |
| 8. General Strategist II | 200 | 108,000 | 40% |
| 8. Senior Strategist | 250 | 120,000 | 40% |
| 10. Senior Strategist II | 250 | 132,000 | 40% |
| 11. Senior Strategist III | 250 | 144,000 | 40% |
| 9. Expert Strategist | 300 | 150,000 | 40% |
| 10. Master Strategist | 400 | 180,000 | 50% |
| 11. Grand Strategist | 500 | 240,000 | 50% |
| 12. Grand Strategist II | 500 | 300,000 | 50% |
| 12. Nexial Strategist | ∞ | ∞ | N/A |

1.   All professional staff are also entitled to receive referral, sourcing and other fees or commissions on work referred to the firm as if professional was an independent representative.

2.   All professionals except General Analyst and Senior Analyst are eligible for selection by Mirabilis' "Tenured Members" as directors for which additional compensation is paid.

3.   All professionals shall receive performance bonus should personal billings exceed 3 times base compensation.

4.   All professionals shall receive retention consideration as set forth in retention program.

5.   All professionals shall be eligible for discretionary bonuses awarded by **Employer's** BOD or designate.

Initials _____
Employer

Common Paymaster Corp Employment Agreement – Frank Hailstones
Page 13 of 15

Initials ___ __
Employee

(Ver H05)

MVI/Palaxar - PI
114

## Schedule "C-1b"
## SALES COMPENSATION RANKS, TITLES & COMPENSATION

***Sales Regional Manager*** – Officer, with sales supervising and management experience, who shall control and direct Sales Managers, Sales Specialists and Sales Representatives in a geographic region.

***Sales Manager*** – Officer in a regional office who performs primarily general sales management functions over Sales Specialists and Sales Representatives instead of client services.

***Sales Specialist*** – Individual who has formal training in selling Mirabilis', and its affiliates', products and services.

***Sales Representative*** – Individual who is designated to sell a specific product and/or service for the benefit of Mirabilis and its affiliates.

| | Classification | Hourly Rate | Base Compensation |
|---|---|---|---|
| 1. | Sales Representative | 35.00 | 24,000 |
| 2. | Sales Specialist | 50.00 | 36,000 |
| 3. | Sales Manager | 75.00 | 48,000 |
| 4. | Sales Regional Manager | 125.00 | 72,000 |

1. All sales professional staff are also entitled to receive referral, sourcing and other fees or commissions on work referred to the firm as if sales professional was an independent representative.

2. Sales Regional Manager is eligible for selection by Mirabilis' "Tenured Members" as directors for which additional compensation is paid.

3. All sales professionals shall receive retention consideration as set forth in retention program.

4. All sales professionals shall be eligible for discretionary bonuses awarded by Employer's Board BOD or designate.

Initials_____
Employer

Common Paymaster Corp Employment Agreement – Frank Hailstones
Page 14 of 15

Initials_____
Employee

(Ver 1105)

MVI/Palaxar - Pl
115

## Schedule "C-2"
### PREFERRED STOCK SCHEDULE

| Staff | Annual Shares | Cumulative Shares |
|---|---|---|
| Year 1 | - | - |
| Year 2 | 50 | 50 |
| Year 3 | 50 | 100 |
| Year 4 | 100 | 200 |
| Year 5 | 100 | 300 |
| Year 6 | 100 | 400 |
| Year 7 | 150 | 550 |
| Year 8 | 150 | 700 |
| Year 9 | 150 | 850 |
| Year 10 | 150 | 1,000 |
| Year 11 | 100 | 1,100 |
| Year 12 | 100 | 1,200 |
| Year 13 | 100 | 1,300 |
| Year 14 | 100 | 1,400 |
| Year 15 | 100 | 1,500 |
| Year 16 | 100 | 1,600 |
| Year 17 | 100 | 1,700 |
| Year 18 | 100 | 1,800 |
| Year 19 | 100 | 1,900 |
| Year 20 | 100 | 2,000 |
| | | |
| Executive | | |
| Year 1 | - | - |
| Year 2 | 100 | 100 |
| Year 3 | 200 | 300 |
| Year 4 | 300 | 600 |
| Year 5 | 400 | 1,000 |
| Year 6 | 200 | 1,200 |
| Year 7 | 200 | 1,400 |
| Year 8 | 200 | 1,600 |
| Year 9 | 200 | 1,800 |
| Year 10 | 200 | 2,000 |
| Year 11 | 200 | 2,200 |
| Year 12 | 200 | 2,400 |
| Year 13 | 200 | 2,600 |
| Year 14 | 200 | 2,800 |
| Year 15 | 200 | 3,000 |
| Year 16 | 200 | 3,200 |
| Year 17 | 200 | 3,400 |
| Year 18 | 200 | 3,600 |
| Year 19 | 200 | 3,800 |
| Year 20 | 200 | 4,000 |
| Year 21 | 200 | 4,200 |
| Year 22 | 200 | 4,400 |
| Year 23 | 200 | 4,600 |
| Year 24 | 200 | 4,800 |
| Year 25 | 200 | 5,000 |

Initials_____
Employer

Common Paymaster Corp Employment Agreement – Frank Hailstones
Page 15 of 15

Initials_____
Employee

(Ver H05)

MVI/Palaxar - PI
116

# COMMON PAYMASTER CORPORATION
## EMPLOYEE HANDBOOK

Name _FRANK HAILSTONES_

Location _ORLANDO, FLORIDA._

Start Date _10 / 03 / 2005_

Common Paymaster Corporation Employee Handbook

Employee

Initials

Rev 1.0 (9/21/2005)

area as neat and orderly as possible.

- ## Change in Name, Address, Telephone Number or Marital Status

  If you change your name, address, and telephone number or if your number of dependents changes, it is your responsibility to immediately notify the Human Resources Department. Current and correct information must be available in your personnel files for tax and insurance purposes, and in the event of an emergency.

- ## Policy Changes

  Common Paymaster Corporation, reserves the right to amend, modify or terminate any or all of our policies, including those contained in this handbook, at any time. As policy changes occur, steps will be taken to notify all employees who have a job-related need to know. Such steps may include direct contact, posting notices on bulletin boards, or providing amended inserts for this guide. Any time employees receive an insert for this handbook, you will also be informed the pages that are superseded. Employees are expected to keep their handbook up to date.

  We are pleased that you are part of our team. We want to help you to do a job you are proud of and to help you feel at home here. If you have any questions or need any assistance, do not hesitate to contact the Human Resources Department.

  **Your signature below indicates you have read, understand, and agree to abide by the Company's policies and procedures as set forth in the employee handbook.**

  **I have carefully reviewed the employee handbook and understand it. I understand that the Company expects me to be in compliance with all Company policies at all times.**

Your Signature: _____

Printed Name: FRANK HAILSTEET

Date: 10/20/2005

Social Security No.: 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

Witness: _____

## TERMINATION OF EMPLOYMENT AGREEMENT AND RELEASE

This TERMINATION OF EMPLOYMENT AGREEMENT AND RELEASE ("Agreement") is entered into as of January 31, 2007, by and between MIRABILIS VENTURES INCORPORATED (the "Company") and Frank Hailstones (the "Employee"). Company and Employee are hereinafter collectively referred to as the "Parties."

### BACKGROUND

A.   On October 1 2005, Company and Employee entered into an employment agreement ("Employment Agreement") pursuant to which Employee was employed as Senior Strategist at the Orlando, Florida, offices of the Company.

B.   As of January 31 2007, the Company eliminated Employee's position with the Company.

NOW, THEREFORE; for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agreed to the terms as follows:

1.   **Termination of Employment Agreement.**  The Employment Agreement with the Company shall terminate as of the close of business on January 31, 2007 (the "Separation Date").

2.   **Benefits.**  In consideration for the Employee's agreement to be bound by the terms of this Agreement and the surviving provisions of the Employment Agreement the Employee shall be entitled to receive from the Company the payments and benefits set forth on subparagraphs (i) through (iv) of this Section 2.

   (i)    The Company agrees to pay the Employee severance pay in the amount equal to three-months of the yearly compensation, subject to customary withholding obligations. Payments shall be made on the Company's regular payment dates;

   (ii)   The Company will continue to provide the benefit coverage for three (3) months from the Separation Date through April 30 2007;

   (iii)  In return for any claims regarding bonus or deal commissions, the Company will convey to Employee all of its right, title and interest in and to its shares of stock in Axena Inc. after the liquidation and post distribution to Axena Inc. creditors and shareholders of all of the Axena Inc. assets, including its FoxT stock acquired as part of the asset sale of Axena Inc to FoxT, together with its equity interest in the Axena Inc subsidiary companies , including the MVI ownership interest in Axena UK. The transfer of stock in Axena Inc to Employee shall be on an "AS IS, WHERE IS, WITH ALL FAULTS" basis, and the Company has made and makes NO REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE with regard to said stock. Employee acknowledges that he has had access to and has reviewed all of the books and records of Axena Inc. and that he is acquiring the stock in Axena Inc. for investment purposes, and not with any intent to re-sell such stock.

1





(iv)   Employee shall retain his stock in Mirabilis Ventures

3.   **Obligations.**   In consideration for the Company's agreement to be bound by the terms of this Agreement the Employee shall do all of the following:

(i)   Employee shall provide to Company, within two business days, all documents and items of any nature or description, including computer files, that pertain to actual or potential customers or leads that Employee developed or obtained during employment, any phase or aspect of Company's operations, any phase or aspect of Company's future operations or plans, and any other items, lists, documents, or the like, that in any way may pertain to Company's business; and

(ii)   Employee shall observe full confidentiality with respect to all confidential matters relating to the Company and its affiliated companies and shall not in any manner disclose any confidential information, or use such information to his own benefit.

4.   **Mutual Release.**

(a)      **Release by the Employee.**

(i)   Except as set forth herein, nothing herein shall be deemed to release any of the Employee's rights under this Agreement or under the Employment Agreement.

(iii)   The Employee represents that the Company has advised him to consult with an attorney of his choosing prior to signing this Agreement.  The Employee further represents that he understands and agrees that he has the right and has in fact reviewed this Agreement, and, specifically, the Release, with an attorney of the Employee's choice.  The Employee further represents that he understands and agrees that the Company is under no obligation to offer him this Agreement, and that the Employee is under no obligation to consent to the Release, and that he has entered into this Agreement freely and voluntarily.

(b)      **Release by the Company.**

i.   Employee shall be indemnified by Mirabilis Ventures, Inc. from and against any claims that may be brought against him as a result of him serving as an officer and director of the Mirabilis and/or its affiliates, which claims were covered by the D & O policy.

ii.   Except as set forth herein, nothing herein shall be deemed to release any of the obligations set forth in this Agreement.

2



BY SIGNING BELOW AND INITIALING THE BOTTOM OF EACH OF THE PRECEDING TWO (2) PAGES, THE PARTIES AGREE TO THE TERMS AND CONDITIONS HEREOF.

COMPANY:                                      EMPLOYEE:
Mirabilis Ventures Inc.
a Nevada corporation

By: _____                          By: _____

Print Name: William F. Walsh                    Print Name: Frank Hailstones

Print Title: Executive Vice President           Social Security Number: 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

Date: 30 January 2007                           Date: 30 January 2007

3

# EMPLOYMENT AGREEMENT

This Agreement made on the October day of 3rd, 2005, between **Common Paymaster Corporation,** a Florida corporation, with its principal office located at 20 North Orange Avenue, Suite 1400, Orlando, Florida 32801, hereinafter referred to as "**Employer,**" and **Frank Hailstones,** who resides at 734 Lake Biscayne Way, Hidden Lakes, FL 328371, hereinafter referred to as "**Employee.**" **Employer** and **Employee** are hereinafter jointly referred to as the "**Parties.**"

**WHEREAS, Employer** provides general business consulting activities to a number of different companies, which may or may not be affiliated or controlled by **Employer,** and

**WHEREAS, Employee** seeks to secure a position with **Employer. Employer** desires to hire **Employee** for that position under the terms set forth in this Agreement.

**NOW, THEREFORE,** in consideration of the mutual covenants contained herein, and other good and valuable consideration received in hand, the sufficiency and receipt of which is hereby acknowledged, the **Parties** agree as follows:

## TERMS AND CONDITIONS

1.   **NATURE OF EMPLOYMENT**

(a)   **Employer** hereby hires **Employee** and **Employee** accepts such employment and agrees to perform at all times faithfully, industrially, and to the best of his ability, experience and talent, all the duties **Employer** may require of him pursuant to the expressed and implicit terms of this Agreement. **Employee,** during the term of this Agreement, agrees to diligently perform all services that may be assigned to him and shall exercise such powers and authority as may, from time to time, be delegated to him, including such powers and authority usually pertaining and attributed by law, custom, or otherwise to a management level associate in a professional firm. The initial primary classification for **Employee** will be as **Master Strategist** (the "Initial Primary Classification"), and **Employee's** title shall be **Senior Vice President. Employee's** Job Description is set forth in Schedule "A," attached hereto and incorporated by reference herein.

(b)   **Employer** shall have the right, in its sole discretion, to change the job description to include responsibilities reasonably related to the position or to remove responsibilities from the description of the position.

(c)   **Employee** acknowledges that by signing this Agreement **Employee** shall be available to any of **Employer's** affiliates during the Employment Term of this Agreement.

(d)   **Employee** hereby acknowledges that he has received a copy of the Employee Handbook and has reviewed its provisions. **Employee** agrees to comply with **Employer's** policies and procedures as set forth in the Employee Handbook. **Employee** agrees to follow the policies and procedures set forth in Schedule "B," attached hereto and incorporated by reference herein, regardless of whether such policies and procedures are set forth in the Employee Handbook.

2.   **DURATION OF THIS AGREEMENT**

**Employer** employs **Employee,** and **Employee** accepts such employment with **Employer,** for a period of thirty-six (36) months, beginning on October 1, 2005, and terminating on September 31, 2008. As used in this Agreement, "Employment Term" refers to the period of employment of **Employee** under this

Initials_____
Employer

Common Paymaster Corp Employment Agreement – Frank Hailstones
Page 1 of 15

Initials_____
Employee

(Ver H05)

MVI/Palaxar – P1
122

Agreement, whether for the aforementioned period above, termination earlier as provided elsewhere in this Agreement, or as extended by mutual agreement of **Employer** and **Employee**.

### 3.    COMPENSATION AND BENEFITS

(a)    **Employer** shall pay **Employee**, and **Employee** agrees to accept from **Employer**, in full payment for **Employee's** services under this Agreement, the Compensation as set forth opposite **Employee's** Initial Primary Classification in Schedule "C" attached hereto and incorporated by reference herein.

(b)    In addition to the Compensation set forth in Paragraph 3(a) hereinabove, **Employee** shall be entitled to Three (3) directorship(s) in **Employer** and/or its affiliated companies, which shall be in **Employer's** sole and absolute discretion, and shall be compensated Six Thousand ($6,000) per month for the directorship(s) position(s); provided, however, that **Employee's** directorship(s) compensation shall never be greater than the "Directors Fee (Incentive Compensation)" set forth in Schedule "C-1a" attached hereto and incorporated by reference herein.

(c)    **Employee** shall receive no other fringe benefits, and disability, medical, dental, life or other insurance except those benefits that are generally available to any employee of **Employer**.

(d)    **Employee** shall be granted considerable autonomy on establishing **Employee's** schedule. **Employee** shall exercise informed and reasonable judgment concerning appropriate hours and vacation time. Notwithstanding anything to the contrary contained in the Employee Handbook, **Employee** may not receive lesser benefits than the benefits contained in the Handbook in effect at the execution date of this Agreement.

(e)    **Employer** shall reimburse **Employee** for all actual, reasonable and necessary business expenses incurred by **Employee** in connection with the business of **Employer**. Payments to **Employee** for such business expenses shall be made within seven (7) days after receipt of an approved expense report from **Employee**, or such ordinary day of the calendar month as **Employer** pays employees' accounts, whichever day is later in time. **Employer** shall determine whether expense reports are to be submitted weekly or monthly.

(f)    **Employee's** entitlement to receive Compensation under this Agreement shall be offset against any other compensation otherwise paid to **Employee** under any employment arrangement with **Employer** or any **Employer** affiliate (regardless of the number of years), on a cumulative basis from the date of execution of this Agreement.

(g)    Notwithstanding any other provision regarding dispute resolution set forth elsewhere in this Agreement, any dispute regarding the Compensation shall be exclusively decided in accordance with the laws of the State of Florida. Such dispute shall first be submitted to non-binding mediation and shall thereafter be determined by final binding arbitration, and not litigation, with the agreed venue for mediation and arbitration being in Orlando, Florida. The mediation and, if needed, arbitrator, shall be selected in each case by the applicable regional manager of **Employer** and by **Employee**. In the event of a disagreement between **Employer** and **Employee** as to the arbitrator, the parties shall have a mutually agreeable independent third party select an arbitrator. **Employee** agrees to waive all other enforcement rights with respect to any dispute regarding the Compensation.

Initials_____
          Employer

Common Paymaster Corp Employment Agreement – Frank Hailstones
Page 2 of 15

Initials___
          Employee

(Ver H05)

MVI/Palaxar - PI
123

4.     **TERMINATION/SEVERANCE**

(a)     Notwithstanding any contrary provision in this Agreement, **Employer** may terminate this Agreement for cause without notice.  For the purpose of this paragraph, "cause" is defined as (1) **Employee** convicted of, or pleading guilty or no contest to, a felony under applicable law; (2) Willful material breach of **Employee's** fiduciary duty to **Employer**; (3) **Employee** willfully failing to perform any material explicit or implicit duty that is within the normal duties of **Employee** or is a reasonable request or directive of **Employer**; (4) **Employee** committing any breach of a material term of this Agreement, provided that **Employee**, after receiving twenty (20) days written notice from **Employer**, has not cured such breach; (5) **Employee** willfully failing to adhere to any material rule, policy or directive set forth by **Employer**; (6) **Employee** committing willful insubordination, corruption and/or disruption in the workplace; or (7) **Employee** committing a harassment violation of law against an employee, affiliate, owner, client, invitee, or licensee of **Employer**.

(b)     Upon termination, **Employee** shall immediately provide to **Employer** all documents and items of any nature or description, including computer files, that pertain to actual potential customers or leads that **Employee** developed or obtained during employment, any phase or aspect of **Employer's** operations, any phase or aspect of **Employer's** future operations or plans, and any other items, lists, documents, or the like, that in any way may pertain to **Employer's** business.

(c)     Except for termination of **Employee** due to breaches of paragraphs 4(a)(1) and 4(a)(7) above, if **Employer** terminates this Agreement for any reason, including for cause, or as a result of a merger, acquisition, sale or "Change in Control" (as defined below in paragraph 4(f)), in addition to the Compensation up until date of termination, **Employee** shall be entitled to a lump sum severance payment within thirty (30) days of the termination date of employment.  This severance payment shall be an amount equal to one (1) month's base compensation for every two (2) years of employment by **Employee** under this Agreement, but shall never be less than one (1) month's base compensation.

> *For illustrative purposes:*  *If Employee's average monthly Base Compensation is $8,000, and Employee has worked for 4 years and 3 months and is terminated, Employee is entitled to $8,000 times 2 = $16,000.*

(d)     In the event it shall be determined that any payment, distribution or other action by **Employer**, to or for the benefit of **Employee**, whether paid or payable or distributed or distributable pursuant to the terms of this Agreement or otherwise, would be taxable as an excise tax under the Internal Revenue Code 1986, **Employer** shall make a payment to **Employee** in an amount equal to any such excise tax imposed upon said payments.  Should any interest or penalties accrue to **Employee** with respect to any such excise tax, **Employer** will also reimburse those costs.

(e)     For purposes of this Agreement, the term "Change in Control" shall be defined as:

(i)     The approval by the shareholders of **Employer** of a reorganization, merger, consolidation or other form of corporate transaction or series of transactions, in each case, where the persons who were the shareowners of **Employer** immediately prior to such organization, merger or consolidation or other transaction do not, immediately thereafter, own more than fifty percent (50%) of the combined voting power of the succeeding corporation.  This voting power is generally entitled to vote for election of directors of the newly reorganized, emerged, or consolidated company resulting in new outstanding voting shares, or

(ii)     **Employer** liquidates or dissolves the company, or

Initials_____
Employer

Common Paymaster Corp Employment Agreement – Frank Hailstones
Page 3 of 15

Initials_____
Employee

(Ver H05)

MVI/Palaxar - PI
124

(iii)    The acquisition by any person, entity or "group" of more than fifty percent (50%) of the then outstanding shares of **Employer's** common voting stock, or

(iv)    The sale of all or substantially all of the assets of **Employer**.

## 5.    UNIQUENESS OF SERVICES OF EMPLOYEE

**Employee** hereby warrants and represents that the services he intends to provide under this Agreement are of a special, unique, unusual, extraordinary and intellectual character that gives him a peculiar value, the loss of which cannot be reasonably or adequately compensated by damages in an action at law. **Employee**, therefore, expressly agrees that **Employer** shall be entitled to injunctive and other equitable relief to prevent a breach of this Agreement by **Employee** in addition to any other rights or remedies that **Employer** may possess and to the maximum extent permitted by law.  Any action for injunctive relief under this paragraph should not be subject to the provisions in this Agreement related to the alternative dispute resolution process.

## 6.    NON-DISCLOSURE OF CONFIDENTIAL INFORMATION COVENANTS

(a)    "Confidential Information" shall include, but not be limited to, regardless of form, all: (i) customer lists, affiliates, referral source lists, prospect lists, investor lists, vendor lists, client lists, databases, and personnel records; (ii) financial information concerning **Employer** and its operations; (iii) methods of organizing and conducting **Employer's** business as such methods, relate to **Employer's** sales, accounts, borrowers, customers, financing products or techniques, employees and referral sources; (iv) information relating to **Employer's** proprietary rights prior to any permitted public disclosure thereof, including, but not limited to, the nature of the proprietary rights, the status and details of research and development of products and services, and information regarding acquiring, protecting, enforcing and licensing proprietary rights (including trademarks and trade names); and, (v) other information, whether or not originated by **Employee**, which is used in **Employer's** business and is (a) proprietary to, about, or created by or for **Employer**; (b) information which gives **Employer** some competitive business advantage or the opportunity of obtaining such advantage or the disclosure of which could be detrimental to the interests of **Employer**; (c) designated as confidential information by **Employer**, or from all of the relevant circumstances should reasonably be assumed by **Employee** to be confidential and proprietary to **Employer**, or (d) is not generally known by persons other than **Employer**; all of which information, lists, schedules, records or methods are obtained by **Employee** from **Employer** or through **Employee's** performance of duties hereunder.  Confidential Information shall include all of the foregoing whether the same are produced by **Employee** or any other employee, agent or affiliate of **Employer** and all physical, tangible, or intangible embodiments or repositories (including any and all photocopies thereof) of the foregoing but shall not include information or matters that are a trade secret under applicable law.

(b)    **Employee** acknowledges and agrees that (i) **Employer** has expended and will continue to expend considerable and substantial time, effort and capital resources to develop the Confidential Information, (ii) the Confidential Information is innovative and proprietary in nature to **Employer** and must receive confidential treatment to protect **Employer's** proprietary interest therein from irreparable damage, (iii) **Employee** by virtue of **Employee's** employment relationship with **Employer**, will have access to the Confidential Information, and (iv) the Confidential Information and all physical, tangible and intangible embodiments or other repositories of the Confidential Information shall be and at all times remain the sole and exclusive property of **Employer**.  **Employee** further acknowledges that specialized training, unique to **Employer** and not otherwise available from any other source, has been provided to **Employee** at much cost, time and expense to **Employer**.  This training is not available from any school, available courses or from any source whatsoever but from the continued intense training offered by **Employer** to **Employee** as partial consideration for this Agreement.

Initials_____                Common Paymaster Corp Employment Agreement – Frank Hailstones          Initials_____
        Employer                                        Page 4 of 15                                            Employee

(Ver H05)

MVL/Palaxar - PI
125

(c)     For the period of the Employment Term through the date which is three (3) years after termination of employment, **Employee** agrees that **Employee** will not, without the prior written consent of **Employer**, which consent may be withheld in the **Employer's** sole and absolute discretion, disclose or make available any Confidential Information to any person or entity (verbally or in writing), nor shall **Employee** make or cause to be made, or permit or allow, either on **Employee's** own behalf or on behalf of others, any use of the Confidential Information then in **Employee's** knowledge, custody, control or possession. **Employee** further agrees that immediately upon termination of **Employee's** employment with **Employer** for any reason or at any other time requested by **Employer** and as a condition precedent to **Employee's** receipt of any payments then due **Employee** from **Employer** under this Agreement, **Employee** shall promptly deliver to **Employer** any and all property belonging to **Employer**, including without limitation, all Confidential Information (including all physical, electronic, or other repositories thereof) in **Employee's** custody, control or possession.

(d)     **Employee** acknowledges that during the Employment Term, from time to time, **Employee** may have access to (directly or indirectly), or receive information from or regarding the **Employer** or its affiliates in the nature of trade secrets, the release of which may be damaging to **Employer** or its affiliates. **Employee** agrees to hold in strict confidence any information it receives regarding the **Employer** or its affiliates that is considered a trade secret and shall not disclose such information to any other person or entity, and will take all necessary steps to prevent any other person or entity from discovering the trade secrets. Accordingly, **Employee** agrees that the provisions of this Paragraph 6(d) may be enforced by temporary and permanent injunction, in addition to all other remedies provided by law and equity. Furthermore, **Employee** acknowledges and agrees that theft of trade secrets may subject **Employee** to certain sanctions and criminal penalties under the Economic Espionage Act of 1996 (18 U.S.C., Sections 1831 to 1839).

## 7.     PROTECTIVE COVENANTS

(a)     "Protected Parties" or "Protected Party" shall mean (i) all prospective customers, affiliates, partners, borrowers and referral sources of **Employer** with whom **Employee** has had direct contact as an employee of **Employer** during the eighteen (18) month period immediately preceding the termination of **Employee's** employment with **Employer**; (ii) all customers, affiliates, partners, borrowers and referral sources who have purchased, contracted, engaged or referred others to **Employer** for products, services or financing from **Employer** during the eighteen (18) month period immediately preceding the termination of **Employee's** employment with **Employer** and with whom **Employee** had direct contact as an employee of **Employer**; and (iii) all employees of **Employer** employed by **Employer** as of the termination date with whom **Employee** had direct contact while employed by **Employer**.

(b)     Except for or on behalf of **Employer**, **Employee** agrees that for the period of the Employment Term through the date which is two (2) years after termination of employment, **Employee** shall not on **Employee's** own behalf or in the service or on behalf of others, solicit, divert, pirate or appropriate, or attempt to solicit, divert, pirate or appropriate, to **Employee** or any other person or entity, any of the Protected Parties in connection with the provision of services, products or financing in competition with **Employer**, or otherwise interfere or attempt to interfere with **Employer's** relationship with the Protected Parties.

## 8.     RESTRICTIVE COVENANTS – INDEPENDENT COVENANTS

(a)     **Employee** agrees that while working for the **Employer** and for a period of eighteen months (18) immediately following the termination of employment for any reason whatsoever or no reason at all, **Employee** shall not provide, directly or indirectly, services similar to those **Employee** is

Initials_____                 Common Paymaster Corp Employment Agreement – Frank Hailstones                 Initials_____
        Employer                                              Page 5 of 15                                                    Employee

(Ver H05)

MVf/Palaxar - PI
126

providing to **Employer** under this Agreement, to any person or entity that provides services substantially similar to those of **Employer**.

(b)     Except in performance of this Agreement, **Employee** shall not during the term of this Agreement and for eighteen (18) months following termination of employment for any reason whatsoever or no reason at all, solicit, either directly or indirectly, any Protected Party for the purpose of encouraging or inducing such Protected Party to purchase or obtain specialized financial services or related to any other product/services provided by **Employer** as of the date of this Agreement and through the date of the termination of **Employee's** employment.

(c)     **Employee** further acknowledges that this covenant is an independent covenant within this Agreement.  **Employee** acknowledges actual receipt of good and valuable consideration for the purpose of executing this covenant, as well as other consideration stated herein and including the consideration of continued employment by **Employer**.

(d)     **Employee** recognizes that the terms of this covenant found in Paragraphs 6, 7 and 8 are reasonable and necessary for the protection of the **Employer's** unique and national business, and shall survive the termination of this Agreement.

(e)     The provisions of the covenants found in Paragraphs 6, 7 and 8, as well as the period of time, geographical areas and types and scope of restrictions of **Employee's** activities specified herein are intended to be divisible; and, in the event any provision herein shall be deemed invalid or unenforceable in any respect, as to any one or more periods of time, geographical areas, business or activities, the remaining provisions shall not thereby be effected but shall, to the extent allowed by law, remain in full force and effect; and this Agreement shall, to the extent allowed by law, be deemed to be amended without further action by the parties hereto to the extent necessary to render it valid and enforceable.

(f)     **Employee** acknowledges that the covenants in Paragraphs 6, 7 and 8 are independent of the existence of any agreement, claim or cause of action that **Employee** may ever have against **Employer**, whether predicated on this Agreement or otherwise and shall not constitute a defense to the enforcement by **Employer** of this Agreement not to compete.

9.    **DEVOTION BY EMPLOYEE OF FULL-TIME TO BUSINESS**

(a)     Except as otherwise agreed to by **Employer** in writing, **Employee** shall devote all of his time, attention, knowledge and skills solely and exclusively to the business and interests of **Employer** during normal working hours.  **Employer** shall retain all of the benefits, emoluments, profits or other returns from or incidental to any and all work, services, advice and mental efforts of **Employee** that arise during the term of this Agreement, or such other amount as agreed to in writing by **Employer's** Board of Directors.

(b)     **Employee** shall not directly or indirectly, act as a partner, officer, director, stockholder, adviser, employee, or affiliate in any other business or trade that is related to that of **Employer**, except as otherwise agreed to in writing. **Employee** may invest his funds in the capital stock of a direct or indirect competitor of **Employer** only if said holdings represent less than five percent (5%) of the total number shares or principal amount of the securities of said issuer outstanding.

(c)     **Employee** shall provide **Employer** a confidential list of all current business and commercial interests, other than holdings inside of an ERISA qualified retirement account or any holdings of any kind or nature that are less than five percent (5%) of the value of any enterprise or venture (whether such holdings are held directly or indirectly by **Employee**).

---

Initials_____
    Employer

Common Paymaster Corp Employment Agreement – Frank Hailstones
Page 6 of 15

Initials_____
    Employee

(Ver H05)

MVI/Palaxar - P1
127

(d)     Any future business and commercial interests, other than those set forth under Paragraphs 9(b) and 9(c) hereinabove, must be disclosed to **Employer** at least thirty (30) days prior to **Employee** acquiring any such interests. **Employee** acknowledges that the reason for the disclosure of such interests is because **Employer** and its affiliates have diverse holdings and are subject to various federal and state securities laws, as well as certain contractual vendor obligations with both public and private companies, making it necessary to disclose such information so that **Employer** does not violate any contracts, covenants, federal or state laws.

(e)     Failure of **Employee** to provide **Employer** with a list of all current business and commercial interests and/or failure of **Employee** to disclose any future business and commercial interests in accordance with Paragraph 9 shall subject **Employee** to default under this Agreement, resulting in the immediate termination of this Agreement and **Employee's** forfeiture of all benefits, compensation and interests held pursuant to this Agreement, at the time of termination.

## 10.    INDEMNIFICATION OF EMPLOYER AND INDEMNIFICATION OF EMPLOYEE

(a)     Unless acting under the direction of **Employer**, **Employee** shall hold harmless, indemnify and defend **Employer** from any and all claims, demands, damages, losses, expenses, attorneys' fees, causes of action, judgments and liability arising out of or in connection with **Employee's** breach of any representation, warranty, or agreement made under this Agreement, or arising out of any fraudulent or deliberate wrongful acts of **Employee** during **Employee's** engagement or representation to others as an **Employee**, independent contractor, or other affiliate of **Employer**.

(b)     **Employer** shall hold harmless, indemnify and defend **Employee** from any and all claims, demands, damages, losses, expenses, attorneys fees, causes of action, judgments and liability arising out of any fraudulent or deliberate wrongful acts of **Employer**, independent contractor or other affiliate of **Employer** and further for any acts or omissions arising out of **Employee's** employment with **Employer** unless caused by the active gross negligence of **Employee**.

## 11.    RELEASE OF PRIOR CLAIMS

**Employee**, for and in consideration of the payment of One Dollar ($1.00), and other good and valuable consideration, in hand paid, the receipt and sufficiency of which is hereby acknowledged, hereby agrees, to release, cancel, forgive and forever discharge **Employer**, each of its predecessors, parent corporations or companies, holding companies, subsidiaries, affiliates, divisions, successors and assigns, and all of its/their officers, directors, members and employees from all actions, claims, demands, damages, obligations, liabilities, controversies and executions, of any kind or nature whatsoever, whether known or unknown, whether suspected or not, which have arisen, or may have arisen, or shall arise by reason of the prior employment by **Employer** of **Employee**. Furthermore, **Employee** hereby acknowledges that **Employee** has no present or past claims of any nature against **Employer**. **Employee** specifically waives any claim or right to assert any cause of action or alleged cause of action or claim or demand which has, through oversight or error, intentionally or unintentionally or through a mutual mistake, been omitted from this section. This release shall be effective from the beginning of time until the date hereof.

## 12.    ALTERNATIVE DISPUTE RESOLUTION

All claims, duties, disputes and other matters in question by and between **Employee** and **Employer** shall be decided by final binding Arbitration under and in accordance with the provisions of Chapter 682, Florida Statutes, with exclusive venue for such Arbitration, and for any judicial proceedings to enforce the terms and conditions of this provision requiring Arbitration, or to confirm such Arbitration Award, to

Initials_____                    Common Paymaster Corp Employment Agreement – Frank Hailstones          Initials_____
         Employer                                        Page 7 of 15                                                  Employee

(Ver H05)
                                                                        MVI/Palaxar – PI
                                                                              128

be only in the Court of appropriate jurisdiction in Orange County, Florida. Provided further, that in the event for any reason a dispute under this Agreement is not subject to the Florida Arbitration Code, then in such event such dispute shall be decided by final binding Arbitration under and in accordance with the provisions of the Federal Arbitration Code, with exclusive venue likewise to be in Orange County, Florida, in the same manner as provided above. If there is no jurisdiction for such dispute under the Federal Arbitration Code, then such disputes shall be decided by Arbitration in accordance with Rules of the American Arbitration Association then in effect, with exclusive venue likewise to be in Orange County, Florida, in the same manner as provided above. The prevailing party in any Arbitration under this Agreement, including in any litigation required to enforce the terms and conditions of this Arbitration Provision, including to confirm an Arbitration Award, shall be entitled to recover their reasonable attorney's fees and consulting fees, and in addition, any taxable costs (including Arbitrator compensation) as are otherwise allowed in the Arbitration and for litigation to enforce the terms of this Arbitration provision or to confirm any Arbitration Award. This provision specifically authorizes the Arbitrator(s), within his (their) discretion, to tax in favor of the prevailing party that fees and costs of the Arbitration proceedings, to include Arbitrator compensation, filing fees, subpoena service fees, expert witness fees and costs, and out-of-pocket costs for a hearing room to conduct the proceeding.

## 13.   MISCELLANEOUS PROVISIONS

(a)   This Agreement contains the sole and entire agreement between the **Parties** and shall supersede any and all other agreements between the **Parties** except for any covenant not to compete, covenant not to solicit, confidentiality agreement, or amended compensation agreement signed by both **Parties**. The **Parties** acknowledge that they have read this Agreement in its entirety and that any oral or written statements to the contrary are void and that neither **Party** has relied on any such representation in connection with this Agreement.

(b)   The **Parties** agree that no waiver or modification of this Agreement or of any covenant, condition, or limitation contained within it is valid unless it is in writing, clearly identified as a modification or waiver of this Agreement, or one of the clauses of this Agreement, and duly executed by both **Parties**. The **Parties** further agree that neither shall submit or attempt to submit any waiver or modification into evidence in any proceeding, arbitration, or litigation between the **Parties** arising out of or affecting this Agreement, or the rights or obligations of any **Party** under it, unless such waiver or modification is in writing, clearly identified as a modification or waiver of this Agreement or one of the clauses of this Agreement, and duly executed by both **Parties**.

(c)   The laws of the State of Florida govern this Agreement and performance under it at the exclusion of the laws of any other forum or jurisdiction irrespective of the particular jurisdiction in which any action or proceeding is instituted.

(d)   In the event that one or more provisions in this Agreement are held invalid or unenforceable, the remaining provisions shall remain in full force and effect.

(e)   Any waiver or modification of any breach of one or several provisions contained in this Agreement shall not be considered as a waiver of any subsequent breach of the same or other provisions of this Agreement.

(f)   The headings and titles used in this Agreement are for the reference and convenience of the **Parties** and do not serve to limit or change the meaning of any provision contained in this Agreement. All personal pronouns used in this Agreement, whether in the masculine, feminine or neuter gender, shall include all other genders; the singular shall include the plural; and the plural shall include the singular.

Initials_____                     Common Paymaster Corp Employment Agreement – Frank Hailstones                     Initials_____
      Employer                                                         Page 8 of 15                                                              Employee

(Ver H05)

MVI/Palaxar - PI
129

(g)     Any **Party** required to provide notice to the other **Party** pursuant to this Agreement may affect such notice by personal delivery in writing or by certified mail, postage prepaid, return receipt requested.  A **Party** mailing a notice shall address it to the relevant **Parties** at the addresses appearing in the introductory paragraph of this Agreement, but any **Party** may change its notice address in accordance with this paragraph.  The **Parties** hereby deem any personally delivered notice as delivered on the date of actual receipt, provided the notice is signed by the person named in the notice or if the receipt refuses to sign such notice, then by the date of a notation as the delivering **Party** may show that communicates an attempted, but unclaimed or refused, delivery.

(h)     Failure to insist upon strict compliance with any of the terms, covenants or conditions hereof, shall not be deemed a waiver of such terms, covenants or conditions, nor shall any waiver or relinquishment of any right or power hereunder, at any one time or more times, be deemed a waiver or relinquishment of such right or power at any other time or times.

(i)     This Agreement shall be binding on, and inure to the benefit of, the successors and assigns of **Employer**.  **Employee** shall have no right to assign this Agreement, but **Employer**, at its sole discretion, shall have the right to assign it.

(j)     This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which together shall comprise but a single instrument.

(k)     No provision of this Agreement shall be construed against, or interpreted to the disadvantage of, any **Party** hereto by any court or other governmental or judicial authority by reason of such party having or being deemed to have drafted, structured, dictated or required such provision.

**EMPLOYEE CERTIFIES THAT EMPLOYEE READ THE ENTIRE CONTENTS OF THIS AGREEMENT BEFORE EXECUTING SAME; THAT EMPLOYEE FULLY UNDERSTANDS ALL THE TERMS, CONDITIONS AND PROVISIONS SET FORTH IN THIS AGREEMENT, PARTICULARLY INCLUDING, BUT NOT LIMITED TO, EMPLOYEE'S FIDUCIARY AND CONFIDENTIAL RELATIONSHIP WITH EMPLOYER AND EMPLOYEE'S PROTECTIVE COVENANTS AND AGREEMENTS; THAT EMPLOYEE HAS RECEIVED A COPY OF THIS AGREEMENT AS SIGNED BY EMPLOYEE; AND THAT EMPLOYEE BEING BOUND BY THIS AGREEMENT IS A CONDITION PRECEDENT TO EMPLOYER'S ENGAGEMENT OF EMPLOYEE'S SERVICES AND EMPLOYER'S EXECUTION OF THIS AGREEMENT.**

**BY SIGNING BELOW AND INITIALING THE BOTTOM OF EACH OF THE PRECEDING EIGHT (8) PAGES, AS WELL AS THE ATTACHED SCHEDULES, THE PARTIES AGREE TO THE TERMS AND CONDITIONS HEREOF.**

**EMPLOYER:**                                                    **EMPLOYEE:**
**Common Paymaster Corp**
A Florida corporation

By:_____                          By:_____

Print Name:   __Martin C. Flynn, Jr.__                Print Name: _____

Print Title:_____President_____                  Print Title: _____

Date:_____                          Date:_____

                                                      Social Security Number:_____

Initials_____                Common Paymaster Corp Employment Agreement – Frank Hailstones                Initials_____
      Employer                                   Page 9 of 15                                              Employee

(Ver H05)                                                                                MVI/Palaxar - PI
                                                                                              130

## Schedule "A"
## __JOB DESCRIPTION__

**Employee's** duties and responsibilities shall include, but not be limited to:

- The business development and/or management of any current or prospective client-related activities.
- Other responsibilities to be assigned.

Initials _____
  Employer

Common Paymaster Corp Employment Agreement – Frank Hailstones
Page 10 of 15

Initials_____
  Employee

(Ver H05)

MVI/Palaxar - PI
131

**Schedule "B"**

## POLICIES

**Employee** agrees to use **Employee's** best efforts to do the following:

- Identify and schedule work related to **Employee's** businesses.

- Make a weekly report to **Employer** regarding the status of any significant projects on which **Employee** is working.

- Make a full disclosure of any existing business.  All future business will be run through **Employer's** screening processes.

- Complete and turn in weekly timesheets.

- Deliver all PIN numbers and pass codes relating to the business financial account, along with full disclosure of any activities on any business account to **Employer**.

- Deliver personal biographical materials to **Employer** to be published in advertising, marketing or promotional materials and on company websites of **Employer** and its affiliates.  By delivering such biographical materials to **Employer**, **Employee** hereby expressly grants **Employer** and its affiliates the nonexclusive right to use **Employee's** name, biographical materials and likeness in connection with advertising, marketing or promotional materials, and websites of **Employer** and its affiliates.

- **Employee** agrees that any communication received or sent by **Employee** at his employment location, whether voice, email, or regular mail shall be subject to review and inspection by **Employer** at any time.

Initials_____ .
     Employer

Common Paymaster Corp Employment Agreement – Frank Hailstones
Page 11 of 15

Initials_____
                Employee

(Ver H05)

MVU/Palaxar - Pl
132

## Schedule "C"
## COMPENSATION

Employee shall be compensated in accordance with Schedule "C-1a" or "C-1b" in accordance with **Employee's** then current Primary Classification. Such compensation shall consist of "Base Compensation" and "Incentive Compensation" as identified in Schedule "C-1a" or "C-1b" attached hereto and incorporated by reference herein.

Incentive Compensation shall consist of the grant to **Employee** on an annual basis of preferred shares of **Mirabilis Ventures, Inc.**, a Nevada corporation ("Mirabilis"), each preferred share (a "Preferred Share") having a face value of One Thousand Dollars ($1,000), and bearing a coupon rate of six percent (6%) (the "Coupon"). Preferred Shares shall be granted to **Employee** on the basis of the formula (position and longevity) set forth in Schedule "C-2," attached hereto and incorporated by reference herein, whenever there are **Employer** net revenues sufficient to enable grants to all employees eligible for such grants (the "Formula"). The Preferred Shares shall not be granted to **Employee** until **Employee** completes their second full year of employment, after which **Employee** shall receive **Employee's** Preferred Shares in accordance with Schedule "C-2." Thereafter, **Employee** shall continue to receive their Preferred Shares, in accordance with Schedule "C-2", on the yearly anniversary of the date of execution of this Agreement. The Coupon shall be paid annually to **Employee**. Incentive Compensation may also consist of yearly discretionary monetary bonuses and yearly discretionary stock bonuses. Both bonuses shall be determined by the Board of Directors of **Employer** and shall be based upon certain performance goals of **Employer** as set by the Board of Directors.

Based on the Formula, whenever three thousand (3,000) Preferred Shares have been granted to **Employee**, **Employee** shall be eligible to be a Preferred Member, and as a Preferred Member, shall have the right to vote, with other Preferred Member, on the admission of new Preferred Members. **Employee** becomes a Preferred Member whenever one-half (1/2) of all current Preferred Members' vote to grant preferred membership status to **Employee**.

Based on the Formula, whenever five thousand (5,000) Preferred Shares have been granted to **Employee**, **Employee** shall be eligible to have "Tenure," and as such a "Tenured Member," shall have the right to vote, with other Tenured Members, on the admission of new Tenured Members. An **Employee** has Tenure and becomes a Tenured Member whenever two-thirds (2/3) of all current Tenured Members vote to grant Tenure to **Employee**, and the permission of a majority in ownership of the common stock of Mirabilis vote to allow **Employee** to be granted Tenure also. Tenured Members shall have such other rights and privileges as Mirabilis shall determine from time to time. The maximum number of Preferred Shares that **Employee** may earn shall be five thousand (5,000).

Tenured Members shall select the boards of directors of Mirabilis' various affiliated companies that **Employee** shall serve on, and **Employee** shall thereby be entitled to receive the additional compensation listed in the Formula for such services.

All voting rights granted under this Agreement shall be subject to Mirabilis' Shareholders Agreement.

Initials_____
            Employer

Common Paymaster Corp Employment Agreement – Frank Hailstones
Page 12 of 15

Initials_____
            Employee

(Ver H05)

MVI/Palaxar - P1
133

Schedule "C-1a"
## EMPLOYEE COMPENSATION RANKS, TITLES & COMPENSATION

*Vice President* – Officer performing primarily professional and advisory services for clients.

*Administrative Vice President* -- Officer in a regional office who performs primarily management functions instead of client services.

*Senior Vice President* – Officer in charge of client selection and case assignments in a geographic region.

*Senior Regional Officer (SRO)* – Professional in charge of managing regional organization operations by directing and coordinating activities consistent with established goals, objectives, and policies.

*Executive Vice President* – Officer at corporate office performing primarily management functions, such as Business Development, Operations, Corporate Relations, Controller, Treasurer, Corporate/General Counsel, and Secretary.

| Classification | Hourly Rate | Base Compensation | Directors Fee (Incentive Compensation) |
|---|---|---|---|
| 1. General Analyst | 75 | 48,000 | -- |
| 2. Senior Analyst | 80 | 54,000 | -- |
| 3. Expert Analyst | 90 | 60,000 | 25% |
| 4. General Advisor | 100 | 66,000 | 25% |
| 5. Senior Advisor | 125 | 72,000 | 33.33% |
| 6. Expert Advisor | 150 | 84,000 | 33.33% |
| 7. Expert Advisor II | 150 | 90,000 | 33.33% |
| 7. General Strategist | 200 | 96,000 | 40% |
| 8. General Strategist II | 200 | 108,000 | 40% |
| 8. Senior Strategist | 250 | 120,000 | 40% |
| 10. Senior Strategist II | 250 | 132,000 | 40% |
| 11. Senior Strategist III | 250 | 144,000 | 40% |
| 9. Expert Strategist | 300 | 150,000 | 40% |
| 10. Master Strategist | 400 | 180,000 | 50% |
| 11. Grand Strategist | 500 | 240,000 | 50% |
| 12. Grand Strategist II | 500 | 300,000 | 50% |
| 12. Nexial Strategist | ∞ | ∞ | N/A |

1. All professional staff are also entitled to receive referral, sourcing and other fees or commissions on work referred to the firm as if professional was an independent representative.

2. All professionals except General Analyst and Senior Analyst are eligible for selection by Mirabilis' "Tenured Members" as directors for which additional compensation is paid.

3. All professionals shall receive performance bonus should personal billings exceed 3 times base compensation.

4. All professionals shall receive retention consideration as set forth in retention program.

5. All professionals shall be eligible for discretionary bonuses awarded by **Employer's** BOD or designate.

Initials_____   Common Paymaster Corp Employment Agreement – Frank Hailstones   Initials_____
          Employer                              Page 13 of 15                                    Employee

(Ver H05)

MVI/Palaxar - PI
134

## Schedule "C-1b"
## SALES COMPENSATION RANKS, TITLES & COMPENSATION

*Sales Regional Manager* – Officer, with sales supervising and management experience, who shall control and direct Sales Managers, Sales Specialists and Sales Representatives in a geographic region.

*Sales Manager* – Officer in a regional office who performs primarily general sales management functions over Sales Specialists and Sales Representatives instead of client services.

*Sales Specialist* – Individual who has formal training in selling Mirabilis', and its affiliates', products and services.

*Sales Representative* – Individual who is designated to sell a specific product and/or service for the benefit of Mirabilis and its affiliates.

| | Classification | Hourly Rate | Base Compensation |
|---|---|---|---|
| 1. | Sales Representative | 35.00 | 24,000 |
| 2. | Sales Specialist | 50.00 | 36,000 |
| 3. | Sales Manager | 75.00 | 48,000 |
| 4. | Sales Regional Manager | 125.00 | 72,000 |

1. All sales professional staff are also entitled to receive referral, sourcing and other fees or commissions on work referred to the firm as if sales professional was an independent representative.

2. Sales Regional Manager is eligible for selection by Mirabilis' "Tenured Members" as directors for which additional compensation is paid.

3. All sales professionals shall receive retention consideration as set forth in retention program.

4. All sales professionals shall be eligible for discretionary bonuses awarded by **Employer's** Board BOD or designate.

Initials_____
Employer

Common Paymaster Corp Employment Agreement – Frank Hailstones
Page 14 of 15

Initials_____
Employee

(Ver H05)

MVI/Pataxar - P1
135

## Schedule "C-2"
### PREFERRED STOCK SCHEDULE

| Staff | Annual Shares | Cumulative Shares |
|---|---|---|
| Year 1 | - | - |
| Year 2 | 50 | 50 |
| Year 3 | 50 | 100 |
| Year 4 | 100 | 200 |
| Year 5 | 100 | 300 |
| Year 6 | 100 | 400 |
| Year 7 | 150 | 550 |
| Year 8 | 150 | 700 |
| Year 9 | 150 | 850 |
| Year 10 | 150 | 1,000 |
| Year 11 | 100 | 1,100 |
| Year 12 | 100 | 1,200 |
| Year 13 | 100 | 1,300 |
| Year 14 | 100 | 1,400 |
| Year 15 | 100 | 1,500 |
| Year 16 | 100 | 1,600 |
| Year 17 | 100 | 1,700 |
| Year 18 | 100 | 1,800 |
| Year 19 | 100 | 1,900 |
| Year 20 | 100 | 2,000 |
| | | |
| Executive | | |
| Year 1 | - | - |
| Year 2 | 100 | 100 |
| Year 3 | 200 | 300 |
| Year 4 | 300 | 600 |
| Year 5 | 400 | 1,000 |
| Year 6 | 200 | 1,200 |
| Year 7 | 200 | 1,400 |
| Year 8 | 200 | 1,600 |
| Year 9 | 200 | 1,800 |
| Year 10 | 200 | 2,000 |
| Year 11 | 200 | 2,200 |
| Year 12 | 200 | 2,400 |
| Year 13 | 200 | 2,600 |
| Year 14 | 200 | 2,800 |
| Year 15 | 200 | 3,000 |
| Year 16 | 200 | 3,200 |
| Year 17 | 200 | 3,400 |
| Year 18 | 200 | 3,600 |
| Year 19 | 200 | 3,800 |
| Year 20 | 200 | 4,000 |
| Year 21 | 200 | 4,200 |
| Year 22 | 200 | 4,400 |
| Year 23 | 200 | 4,600 |
| Year 24 | 200 | 4,800 |
| Year 25 | 200 | 5,000 |

Initials_____
Employer

Common Paymaster Corp Employment Agreement – Frank Hailstones
Page 15 of 15

Initials_____
Employee

(Ver H05)

MVI/Palaxar - P1
136

## <u>Status</u> - Frank Hailstones

| | | |
|---|---|---|
| 1 | 10/3/2005 | ▪ Common Paymaster Corporation - Employee Handbook |
| 2 | 5/30/2006 | ▪ Status as President & Director of Mirabilis Ventures, Inc. |
| 3 | 2006 | ▪ Status as Controlling Person |

# COMMON PAYMASTER CORPORATION
## EMPLOYEE HANDBOOK

Name _Edith Curry_

Location _Richmond, VA_

Start Date _8/1/05_

# *TABLE OF CONTENTS*

TABLE OF CONTENTS ........................................................................................................ i,

QUICK FACTS ABOUT YOUR EMPLOYMENT ...................................................................... iv

COMMON PAYMASTER CORPORATION EMPLOYEE HANDBOOK ...................................... 1

SECTION I - Introduction ...................................................................................................... 1

SECTION II - GENERAL EMPLOYMENT POLICIES AND PRACTICES ................................ 1

* Categories of Employment ................................................................................... 1

* Equal Employment Opportunity ........................................................................... 2

* Harassment ......................................................................................................... 2

* Americans With Disabilities Act (ADA) ............................................................... 3

* Employment At Will .............................................................................................. 4

* Introductory/Probationary Period ........................................................................ 4

* Letters of Recommendation ................................................................................. 4

* Confidentiality and Office Privacy ........................................................................ 4

* Off-Duty Conduct/Fraternization Policy ............................................................... 4

* Immigration Reform and Control Act .................................................................... 5

* Drug and Alcohol ................................................................................................. 6

* Unethical Conduct ............................................................................................... 6

* Employment Rules Of Conduct ........................................................................... 7

* Business Ethics Code .......................................................................................... 7

        Objective ........................................................................................... 9

        Business Conflicts ............................................................................. 9

        Professional Integrity ......................................................................... 9

        Accurate and Complete Accounting ................................................. 11

        Bribes and Kickbacks ...................................................................... 11

        Gifts and Entertainment ................................................................... 12

        Policy Against Diverting .................................................................... 12

        Non-Disclosure of Confidential Information ...................................... 12

        Political and Charitable Contributions .............................................. 13

        Business Developments ................................................................... 14

Common Paymaster Corporation Employee Handbook

Rev 1.0 (9/22/2005)

Employee _____   Initials _____

-i-

MVI/Palaxar - P1
139

Administration of Business Ethics Policy..................................................................15

# SECTION III - EMPLOYMENT INFORMATION ...............................................15

- Overtime.........................................................................................................15
- Required Tools................................................................................................15
- Job Site Placement.........................................................................................16
- Payroll Deductions.........................................................................................16
- Professionalism in the Workplace..................................................................16
- Performance Evaluation..................................................................................16
- Termination.....................................................................................................16
- Other Employment..........................................................................................17
- Personnel Records...........................................................................................17
- Grievance Policy and Procedure.....................................................................17
    - Procedure....................................................................................................18
    - Step 1...........................................................................................................18
    - Step 2...........................................................................................................18
    - Step 3...........................................................................................................18
- Workplace Safety and Security........................................................................18
- Electronic (E-Mail and Internet) and Telephonic Systems Usage Policy......19
- Electronic and Telephone Communication Systems Data...............................19
- News Media Relations......................................................................................21
    - Statement Of Policy.....................................................................................21
    - Provisions.....................................................................................................21
    - Procedures....................................................................................................21

# SECTION IV - EMPLOYEE BENEFITS ...............................................................21

- Injuries/Workers' Compensation Claims.........................................................21
- Unemployment Compensation Insurance.........................................................22
- Social Security Insurance.................................................................................22
- Bereavement Policy..........................................................................................22
- Jury/Witness Duty............................................................................................23
- Military Leave..................................................................................................23
- When Late or Absent........................................................................................23

• Charities and Solicitations ............................................................................................... 24

• Use of Telephone and Cell Phone .................................................................................... 24

• Housekeeping ..................................................................................................................... 24

• Change in Name, Address, Telephone Number or Marital Status ................................ 24

• Policy Changes ................................................................................................................... 24

# QUICK FACTS ABOUT YOUR EMPLOYMENT

The following information specifically addresses the employment of _____.

1) You will be employed in the _____ and your employment position is described by COMMON PAYMASTER CORPORATION as _____.

2) You will report to _____ for work assignments.

3) Your position is considered an exempt/non-exempt one, which means your pay will/will not be governed by the United States Department of Labor's Wage and Hour Division regulations for workers. Therefore, you will/will not be entitled to overtime pay.

4) You will be required to report to work routinely from ____ to ____ each day, Monday through Friday each week, and such other hours and days as may be required.

5) Weekly time sheets indicate hours worked during the workweek that runs from _____ to _____. Failure to submit an accurate time sheet every _____ may delay the issuance of your paycheck. Paychecks are issued every _____.

Common Paymaster Corporation Employee Handbook

_____
Employee

_____
Initials

Rev 1.0 (9/22/2005)

-iv-

MVI/Palaxar - Pl
142

# COMMON PAYMASTER CORPORATION
## EMPLOYEE HANDBOOK

## SECTION I - INTRODUCTION

At Common Paymaster Corporation, we believe our most valuable asset is the team of top quality employees of which you are a part. This handbook is an information guide to your employment with Common Paymaster Corporation. It contains general information about the policies and procedures governing Common Paymaster Corporation's employees and outlines the benefits that are made available to you.

This handbook is intended to help you get acquainted with Common Paymaster Corporation, (often referred to as "the Company"). It explains some of our philosophies and beliefs, and describes our employment guidelines. We hope it will serve as a useful reference documents throughout your employment at the Company. Please understand that the handbook is not intended to create or to be a contract (express or implied) between Common Paymaster Corporation, and any one or all of its employees, nor is it intended to otherwise create any legally enforceable obligations on the part of Common Paymaster Corporation, or its employees. The plans, policies, and procedures described herein are not conditions of employment. Rather, Common Paymaster Corporation has adopted this set of policies in order to plan its overall success and to allow its employees to understand, in advance of employment, what Common Paymaster Corporation, expects its employees to achieve. This handbook supersedes and replaces all previous personnel policies, practices, and guidelines.

To obtain information regarding specific employment policies or procedures, whether or not they are referred to in this handbook, contact your supervisor or the Company's Human Resources Manager. Because the Company is a growing and changing organization, it reserves full discretion to add to, modify, or delete provisions of this handbook, or the policies and procedures on which they may be based, at any time without advance notice. For this reason, we urge you to check with your supervisor or the Company's Human Resources Manager for current information regarding the status of any particular policy, procedure, or practice. This handbook is the property of Common Paymaster, and it is intended for your personal use and reference as an employee of the Company. Circulation of this handbook outside of the Company requires the prior written approval of the Human Resources Manager.

Once you have reviewed the handbook, please sign the acknowledgment form at the back of this handbook, acknowledging you have received, read, understand, and agree to abide by the handbook, and return the acknowledgment to the Human Resources Department.

Please remember this handbook is intended as a summary. The policies, procedures, and benefits as outlined in this handbook are periodically reviewed and may be modified, revoked, suspended, terminated, or changed, in whole or in part, at any time with or without notice. Updates to this handbook summarizing such changes will be distributed to you from time to time. If you have any questions, please contact the Human Resources Department for clarification. When there are questions about insurance or other benefits, the benefit-plan documents will prevail. We are sincerely interested in helping you succeed as a team member.

## SECTION II - GENERAL EMPLOYMENT POLICIES AND PRACTICES

• **Categories of Employment**

*Regular Full-Time Employees*

Regular full-time employees are those employed to work a regular full schedule of at least 30 hours per week. All regular full-time employees may be eligible for Company benefits, according to the plan eligibility

1   Common Paymaster Corporation Employee Handbook

Employee     Initials

requirements for each benefit.

*Regular Part-Time Employees*

Regular part-time employees are those scheduled to work on a regular and continued basis, but at less than the allotted full-time schedule. They may be eligible for some benefits, to be determined by the Human Resources Department, in addition to the provisions set out in benefit plan documents. Benefit Plan documents should be consulted for such issues, and will prevail in any dispute of eligibility based on category of employment.

*Temporary Employees*

A temporary employee is any employee who is retained by the Company or through a personnel agency with the understanding that employment is temporary and of limited duration. Temporary employees may work part-time or full-time schedules, and are not eligible for Company benefits. A temporary employee who subsequently becomes a regular employee, with no break in service, will be eligible for benefits on the same basis as a newly hired regular employee, with any applicable waiting periods starting from the date of regular employment. In cases of leave time and years of service, the date of hire will be the starting date of regular employment.

It is the responsibility of every manager and employee to conscientiously follow this policy.

- **Equal Employment Opportunity**

The Company is an equal opportunity employer. In all aspects of employment, the Company recruits, hires, trains, pays, and promotes regardless of race, color, gender, religion, age, national origin, family responsibilities, marital status, sexual orientation, matriculation, political affiliation, disability, veteran status, or any other protected class or condition. Our objective is to hire and promote individuals best qualified and/or trainable for the position, by virtue of job-related standards of education, training, experience, and personal qualifications.

In addition, we do not tolerate unlawful harassment on the basis of race, color, gender, religion, age, national origin, disability, or any other protected classes listed above, and follow the anti-harassment policy described below in this handbook.

- **Harassment**

The Company is committed to providing a workplace free of sexual or gender harassment, as well as harassment based on such factors as race, color, religion, national origin, ancestry, age, medical condition, marital status, handicap disability, or veteran status. The Company strongly disapproves of and will not tolerate harassment of employees and persons providing services to the Company by managers, supervisors, coworkers, or by customers, vendors, or other persons performing services for the Company. Harassment includes, but is not limited to, verbal, physical, and visual conduct that creates an intimidating, offensive, or hostile work environment or that interferes with work performance. Some examples include racial slurs, ethnic jokes, posting of offensive statements, posters, or cartoons, or similar conduct. Sexual harassment includes solicitation of sexual favors, unwelcome sexual advances, or other verbal, visual, or physical conduct of a sexual nature that creates an offensive or hostile work atmosphere.

Behavior of this nature is unprofessional and will distract employees from performing their job functions. Therefore, any form of unlawful harassment, including unwelcome sexual advances, requests for sexual favors, or verbal or physical conduct that has sexual connotations will not be tolerated. Also, such behaviors by vendors and other non-employees who deal with the Company's employees will not be tolerated.

Any employee who believes that she or he is being sexually harassed, or harassed on the basis of race, color, religion, gender, age, national origin, ancestry, handicap, disability, marital, parental, or veteran status or any other protected class mentioned above should promptly take the following steps:

(a)   Meet with one's immediate supervisor and, orally or in writing, state the specific details of the harassing behavior. If one prefers, one may report such behavior directly to the Human Resources Manager Diana Kristona 1-800-704-2080.

(b)   The policy of the Company is to listen to all reasonable complaints, investigate with due regard for confidentiality, and quickly apply appropriate sanctions that will end any offensive behavior.

(c)   Sanctions against harassment will depend upon the facts and circumstances of the incident. Minor first offenses may lead to written reprimands and/or time off without pay for non-exempt employees. Major or multiple offenses can result in the discharge of the offender.

The Company's system for resolving complaints is available to all employees without fear of retaliation. An employee who believes retaliation has resulted from the reporting of a harassment complaint should report this immediately to the Human Resources Manager.

- ## Americans With Disabilities Act (ADA)

The Company is committed to providing equal opportunity in employment to qualified individuals with disabilities. The Company agrees to employ, advance in employment and otherwise treat qualified individuals without regard to disability in all employment practices including the following: employment, upgrading, demotion or transfer, recruitment, advertising, layoff or terminations, rates of pay or other forms of compensation and benefits, and selection for training.

The Company will attempt to reasonably accommodate disabled employees and job applicants to permit them to perform the essential functions of their jobs in a safe and efficient manner. The Company will afford reasonable accommodation to qualified applicants and employees with a known disability provided that the accommodation does not cause undue hardship to the Company or, irrespective of the accommodation, that such individuals do not pose a direct threat to the health and safety of themselves or others.

Applicants and employees with disabilities may inform their supervisor or Human Resources Manager of the disability and may suggest, on a confidential basis, how the Company may reasonably accommodate them. The Company may require medical confirmation either from the employee's healthcare provider or one chosen by the company in evaluating the employee's condition, applicable work limitations and potential accommodation as a part of this process. All information will be kept confidential.

Employees with life-threatening illness, such as cancer, heart disease and HIV-disease, often wish to continue their normal pursuits—including work—to the extent allowed by their condition. The Company enthusiastically supports this endeavor as long as employees are able to meet performance standards. As with other disabilities, the Company will make reasonable accommodations and will keep medical information confidential, and will treat employees with a disability in a manner consistent with its treatment of others. Employees are expected to cooperate with disabled colleagues, and should be aware that employees with the life-threatening illnesses above do not pose a threat to their co-employees or those with whom then interact in ordinary workplace contact. Employees with questions or concerns about life-threatening illnesses are encouraged to contact their

Common Paymaster Corporation Employee Handbook                    _____  _____
                                                                  Employee          Initials

MVI/Palaxar - PI
145

supervisor or the Human Resources Manager for more information.

- ### Employment At Will

During the course of your employment, you are free to terminate your employment with the Company at any time for any reason, or no reason. The Company reserves the right to terminate your employment, as well, at any time, without advance notice, and with or without cause. This is called "employment at will" and no one has the authority to alter this arrangement.

- ### Introductory/Probationary Period

The Company recruits carefully and believes it is hiring the best employee for each position. It is, however, to both the Company's and the employee's advantage to have an initial period of employment in which the employee has time to appraise the Company and job content, and the Company has a similar opportunity to appraise the new employee's job performance. Thus, each new employee must satisfactorily complete an introductory period of ninety (90) days, measured from his or her initial date of employment. The Employee will not be eligible for or earn any benefits during the introductory period, with these exceptions: holidays that fall within the introductory period may be taken, insurance will be produced in accordance with plan provisions (after 30 days), personal time off will be accrued but not taken until completion of the introductory period, and time worked will be credited toward Family and Medical Leave. At the Company's discretion, the introductory period may be extended one or more times.

The Company or the employee may terminate the employment relationship during the introductory period and/or anytime thereafter, with or without cause and with or without prior notice.

At the successful completion of the 90-day introductory period, the employee becomes a regular employee. The successful completion of the introductory period, however, does not mean the employee is guaranteed employment for any specific duration, or does it change the at-will status of regular employment.

- ### Letters of Recommendation

Letters of recommendation for departing employees are not a matter of right. Requests for such letters should be made to the Human Resources Manager. Under most circumstances, the Company will only provide prospective employers with the dates of employment, rate of pay, and job classification of former employees, and may, depending upon the circumstances, provide further information only with the written consent of the requesting employee.

- ### Confidentiality and Office Privacy

While working with the Company, employees will necessarily become familiar with confidential information. All employees must respect the confidentiality of all vendor, customer, client and employee information, regardless of its source, and must adhere to the Company's ethical responsibility to protect such information from disclosure to outsiders.

All work performed, information received and all files, including employee files maintained in the Company office shall be considered confidential and shall not be discussed outside the Company or with any unauthorized person. Confidential matters must not be discussed in any area within the Company in which an unauthorized

Common Paymaster Corporation Employee Handbook

Employee    Initials

Rev 1.0 (9/22/2005)

-4-

MVI/Palaxar - PI
146

individual might overhear the conversation.

Similarly, all Company documents and other information should be protected from the sight of unauthorized individual. Under no circumstances may Company documents or other documents be disclosed to third parties without the prior approval of the employee's supervisor.

Further, Company information is not to be shared with others in the Company when that information is not required in the official conduct of the employee's duty. This applies to the electronic access of information via the Company's computer network. Additionally, directories of another are not to be accessed without an official requirement for such access.

Likewise, should you receive a bonus, your bonus is considered to be a confidential matter between you and Common Paymaster Corporation. We respect your personal matters and do not disclose any bonus you may receive to anyone other than those who have a need to know. We encourage you to exercise the same discretion as does Common Paymaster Corporation. It is strictly prohibited for an employee to discuss his or her bonuses with anyone at a job site other than a Company supervisor.

Each employee may be required to execute a confidentiality agreement and Business Ethics Code Agreement as a condition of employment.

- **Off-Duty Conduct/Fraternization Policy**

The Company always seeks to respect the dignity of its employees. At the same time, when employee conduct, off- or on-duty, has the potential to impact the business, other employees, or guests (including customers and vendors), the Company will need to review that conduct. Thus, occasions may arise when, to avoid the appearance of favoritism, maintain management objectivity, maintain the ability to effectively manage employees, safeguard our guests, and safeguard our property, the off-duty actions of an employee must be reviewed. These off-duty actions include fraternization between management and any employees. It is not possible to anticipate all off-duty conduct or fraternization that may relate to the Company's business, but we can provide some general guidelines. Further, when in doubt, please ask before you act. You should feel free to discuss this policy at any time with your supervisor or the Human Resources Manager. In general, it is against the Company policy for individuals who have an economic, social, or family relationship to supervise the other or to work in positions that have an audit or control function over the other.

To promote the efficient operation of the Company's business, and to avoid misunderstandings, complaints of favoritism, or other problems of supervision and morale, an employee cannot pursue a romantic or sexual relationship with another employee if either the employee supervises or directs the other.

This policy also includes economic, social, and family relationships. Examples of economic relationships include, but are not limited to, roommates, landlord-tenant, and creditor-debtor. Social relationships include, but are not limited to, dating, intimate relationships, close friendships, regular hosting, and frequent attendance at social gatherings together. Family relationships include spouses, parent-child, siblings, in-laws, aunts, uncles, and stepfamily. Employees and applicants are expected to disclose these relationships whenever they may come into existence. Failure to do so may lead to discipline, up to and including termination of employment.

Normally, if these relationships come into existence after employment, an attempt will be made to transfer employees to comparable (but separate) positions to avoid any appearance of favoritism, preferential treatment, or

Common Paymaster Corporation Employee Handbook

Employee _____  Initials _____

Rev 1.0 (9/22/2005)

-5-

conflict of interest. If a transfer is not possible, the employees may be requested to decide among themselves which individual is to resign. If the employees are not able to make a decision about who is to resign, the Company may take appropriate action, which can include requiring both employees to resign or requiring one of the individuals to resign based on the business needs of the Company and/or other neutral factors (e.g. seniority).

Other off-duty conduct may also result in discipline. To illustrate, if an employee is late or misses work due to his or her arrest, that is not an acceptable excuse. Similarly, if off-duty conduct could result in the loss or denial of an operating license for the Company, that behavior may result in discipline, including termination. Other examples of off-duty conduct that may result in discipline and termination include sexual harassment of other employees, violent acts, use of illegal intoxicants, illegal intoxication, illegal use of intoxicants (e.g., underage drinking), disruptive action on Company property or at company-sponsored events, use of Company facilities without permission, or disclosure of confidential information. Whenever the economic, social, or family relationships or other off-duty conduct of an employee is reviewed, the employee will be requested to cooperate with such a review. Generally, the employee will be given an opportunity to explain the situation.

- ### Immigration Reform And Control Act

  In accordance with the Immigration Reform and Control Act of 1986, it is Common Paymaster Corporation's policy to hire only those individuals for work in the United States who are authorized in the United States . All individuals who are offered employment will be required to submit documented proof of their identity and employment authorization.

- ### Drug And Alcohol

  Common Paymaster Corporation is committed to maintaining a safe, healthy, and efficient working environment free from the influences of drugs and alcohol. For that purpose, we have adopted the following drug and alcohol policy:

  The possession, use, or sale of illegal drugs and the misuse of alcohol or any legally prescribed drugs on Common Paymaster Corporation's premises or while on Common Paymaster Corporation, business, are all prohibited and will constitute grounds for discipline, up to and including termination of employment.

  Working under the influence of illegal drugs, alcohol, or any unauthorized controlled substance at any time is against Common Paymaster Corporation's policy. The term "working" includes any time where you are representing Common Paymaster Corporation. The term "under the influence" means having any detectable level of illegal drugs (or any illegal derivative) in one's system, or exhibiting behavioral changes typically caused by the consumption of alcohol or illegal drugs.

  For your further understanding, and not meant as an exclusive listing of inappropriate behavior, please refer to the following as guidance in maintaining a drug-free work environment. All employees shall refrain from these activities on job sites: using, possessing, manufacturing, distributing, dispensing, or selling illegal drugs, drug paraphernalia, or unauthorized controlled substances. Off the job site, this type of activity is against Common Paymaster Corporation's policy when it has the potential to adversely affect job performance, workplace safety, or Common Paymaster Corporation's regard or reputation in the community.

  Customary and ordinary use of over-the-counter drugs and prescribed drugs are not prohibited under this policy. Please notify your supervisor if you are taking a legally prescribed medication, which has side effects that

Employee          Initials

could impact workplace safety or your safety, or ability to perform the functions of your job, as described to you by your physician or as described to you on your medication packaging. Employees' voluntary disclosure of their use of such drugs will be treated as confidential by the Company.

Common Paymaster Corporation requires all applicants for employment to be tested for illegal drugs prior to a final hiring decision. This will be administered in a non-discriminatory manner, without regard to race, sex, age, religion, national origin, disability, or any other protected class or condition.

As an employee of Common Paymaster Corporation, you may be required to submit to random illegal drug testing at our expense. If any tests are returned positive, you will be immediately terminated from employment. This will be administered in a non-discriminatory manner, without regard to race, sex, age, religion, national origin, disability, or any other protected class or condition.

If you are injured on the job because of your acts, or cause injury to another or cause injury to Company property, an immediate illegal drug and alcohol test will be required. If results are positive, your injury will not be covered under our insurance and you will be liable for all expenses relating to such injury.

Disciplinary measures, including termination, may be taken when: (1) An employee refuses to submit to an illegal drug or alcohol test; (2) An employee tests positive for the presence of illegal drugs, alcohol, or any derivatives thereof; and (3) An employee adulterates, switches, or tampers with a urine specimen, or attempts to do so, or otherwise refuses to cooperate in the medical testing procedure.

- ## Unethical Conduct

There may be instances where co-workers or supervisors knowingly or unknowingly violate Common Paymaster Corporation policy, or federal, state or local laws or regulations. You are encouraged to report the unethical or illegal activity of others, anonymously or otherwise, without fear of reprisal, to your supervisor, or the Human Resources Manager. The matter will be investigated and acted upon appropriately.

- ## Employment Rules Of Conduct

The Company has established rules of conduct that apply to all employees. These are desirable to assure a safe and productive business operation, as well as to comply with federal, state and local laws. By conducting yourself within these rules, the well-being and rights of everyone are protected.

The following is a list, but not meant to be all-inclusive, that outlines actions and behavior that are not appropriate for Common Paymaster Corporation. Inappropriate conduct subjects an employee to disciplinary action, up to and including termination of employment.

*First level offenses* are inappropriate actions and behavior that subject the employee to disciplinary action, any issuance of warning notices. The purpose of such a notice is to remind the employee of the need for corrective action *on the employee's part*. The supervisor will have a discussion with the employee. The supervisor will document such a discussion by memorandum, which will be placed in the employee's file.

The warning notice will be reviewed and signed by the employee acknowledging he or she reviewed the notice. The notice becomes a part of the employee's file and will be considered when the employee is evaluated for promotion, transfer, salary increase, or additional discipline.

Common Paymaster Corporation Employee Handbook _____

Employee      Initials

MVI/Palaxar - PI
149

*Three warning notices issued within twelve (12) months time, regardless of the type of first level violation,* may result in disciplinary action which may include time off without pay for non-exempt employees. *Four such notices within a year, regardless of the type of first level violation, will result in termination of employment. Management is responsible for evaluating each case based on its facts.*

<u>Examples of First Level offenses include, but are not limited to:</u>

- ❏ Unauthorized or excessive absence, tardiness, or early work stoppage;
- ❏ Unauthorized time away from your office;
- ❏ Failure to notify your direct supervisor promptly of completion of an assignment, <u>especially a rush</u> <u>assignment.</u>
- ❏ Failure to keep an appropriately organized area, according to your work responsibilities;
- ❏ Failure to perform work assignments in a timely manner;
- ❏ Leaving Company premises or your work assignment without first notifying your supervisor;
- ❏ Failure to adhere to Company policy regarding appropriate attire, while on corporate premises and during assigned working hours;
- ❏ Lack of attention to work responsibilities;
- ❏ Failure to follow prescribed work procedures;
- ❏ Failure to follow off-duty/fraternization policy; and
- ❏ Failure to notify your supervisor of your absences or tardiness.

*Second level offenses* include behavior that is of such a nature that violation may result in both a warning notice and disciplinary action, which includes a demotion or transfer of an employee, or time off without pay for non-exempt employees. *Repetition of this type of violation may result in termination of employment.*

<u>Examples of Second Level offenses include, but are not limited to:</u>

- ❏ Failure to follow supervisor's instructions;
- ❏ An isolated incident of obscene, abusive, or disruptive language or behavior, which includes complaints regarding personal matters not relevant to your employment. A repeat of this language or behavior will result in immediate termination. Depending upon the nature of the language or behavior, an isolated incident may be grounds for immediate termination.;
- ❏ Violation of major posted safety precautions;
- ❏ Allowing or inviting a non-employee to enter "Employee Only" areas, which include all areas except for reception areas *(except for visitors who have business appointments with Common Paymaster Corporation, personnel; these visitors may enter after being announced by the receptionist);*
- ❏ Unauthorized use of Company equipment and materials; and
- ❏ Posting notices on Company property without prior management approval or removing posted notices without prior management approval.

*Third level offenses* include behavior which is of such a nature that a first occurrence will normally warrant termination of employment.

<u>Examples of Third Level offenses include, but are not limited to:</u>

- ❏ Use of alcohol and/or drugs (non-prescription controlled substances or other illegal drugs) on Company

premises, and/or bringing them onto Company premises;

- [ ] Reporting to work when intoxicated or while using alcohol or non-prescription controlled substances or other illegal drugs;
- [ ] Falsification of records, vouchers, reports, insurance claims, and records involving personal absences, illnesses, time, production or expenses, including billings;
- [ ] Deliberate damage, defacing, or misuse of Company property or property of fellow employees;
- [ ] Insubordination;
- [ ] Theft, misappropriation, unauthorized possession or use of Company property or that of fellow employees;
- [ ] Threats and acts of physical violence on Company premises;
- [ ] Rude or hostile behavior exhibited toward a supervisor, other employee, Company customer or guest, or vendor;
- [ ] Immoral or indecent conduct (based upon community standards of conduct) while on or off Company premises;
- [ ] Violation of any written agreement between the employee and Common Paymaster Corporation or its affiliates or subsidiaries;
- [ ] Sleeping during assigned work hours on Company premises;
- [ ] Unauthorized possession of explosives, firearms, dangerous weapons, alcohol, and/or non-prescription controlled substances or other illegal drugs on Company premises, including parking areas;
- [ ] Threatening, intimidating, coercing, or interfering with other employees, supervisors, vendors and customers, including the making of sexually harassing remarks, or inappropriate remarks based on a person's color, race, gender, ethnicity, physical impairment, age, or other protected class.
- [ ] Two (2) consecutive workdays absence without notice and/or approval. In this case, Common Paymaster Corporation will assume you have voluntarily resigned as of your last day of work, and your employment will be terminated. Accordingly, your benefits will be terminated in the same manner as is done with employees who resign with notice.

## Business Ethics Code

### Objective:

To define the policies concerning employee responsibility for maintaining high standards of honesty, ethics, integrity, and confidentiality and to ensure that all business transactions are conducted professionally and in the best interest of the company and its shareholders.

### A. Business Conflicts Policy:

It is the policy of the company to observe the highest standards of ethics, honesty, and integrity. Employees are required to uphold these standards. They must not have any personal interest which conflicts in any way with the interest of the company or its shareholders. They must not act to cause conflicts for others with whom the company does business. They must obey all applicable laws. Not every instance of a violation of this standard can be anticipated. Listed here are specific examples of conflicts with this standard. When in doubt about whether a particular matter violates this standard, seek guidance from the general counsel or the chief financial officer.

- • No employee should use his or her position with the company or information acquired during

employment in a manner that may create a conflict, or the appearance of a conflict, between the employee's personal interests and those of the company.

- All activities conducted as an employee of the company should always place the lawful and legitimate interests of the company over personal gain.
- Absent written authorization by the company, no employee shall be affiliated with any buyer, purchasing agent, or provider of goods or services to the company. Such affiliation generally is inconsistent with the employee's capacity to deal equitably with all buyers, to fairly and honestly service principals, and to discharge his or her responsibility to the company.
- If an employee has any reason to believe there may be a conflict of interest, he or she should immediately disclose the matter to an immediate supervisor or the ethics officer.

The following represent prohibited acts which represent opportunities for conflicts of interest to develop:

- To give or to receive gifts in connection with company business relationships. This is not intended to restrict gifts of token value or routine business meals and entertainment that do not exceed $25.
- To own, directly or indirectly, a financial interest in suppliers, customers, or competitors except for publicly traded securities where the employee's percentage of ownership is less than 1 percent. Financial interest includes loans, stock, contracts, joint ventures, and the like.
- To derive personal gain, directly or indirectly, from purchases or sales made by the company, other transactions to which the company is a party, use of company assets, use of company facilities, or use of company personnel.
- To borrow money from or lend money to a supplier, customer, company employee, or competitor. Normal personal and mortgage loans from banks and other financial institutions are permitted.
- To be a director, officer, employee, contractor, or consultant of a supplier, customer, or competitor or to receive income from these sources. Outside directorships may be permitted in limited circumstances, but only with the written approval of the president of the company.
- To indicate, directly or indirectly, that any supplier or customer must purchase anything from or give anything to the company or any company employee in order to remain a supplier or customer.
- To violate applicable law pursuant to the instructions or direction of any one, including a company employee.
- To accept outside compensation for work that is already being paid for by the company, or to accept outside employment that interferes in any way with the employee's position with the company.
- To recruit, solicit, or hire (or to assist others to do so), any company employee to work for a non-related entity except as part of an approved written outplacement plan.
- To sell, utilize, or disclose confidential information of the company except in the pursuit of the best interests of the company.
- To compete with the company.
- To buy stock or securities of a company with which the company is conducting or contemplating conducting acquisition negotiations.
- To buy or sell real estate or mineral interests that the company is considering or in the same area as the company.
- To buy or sell commodities, supplies, or products of a same or similar type as the company's.
- To enter into option agreements with respect to commodities, supplies, or products the same as the company's.
- To use "insider" information to trade in company stock.
- To use "insider" information to buy or sell anything.

- To violate any applicable federal or state security or stock law.

Serious problems can be caused for the company and the employee by unauthorized disclosure of internal information about the company, whether or not for the purpose of facilitating improper trading in company stock or other motives. Company employees should not discuss internal matters with anyone outside the company, except as required in the performance of regular duties. This prohibition applies specifically (but not exclusively) to inquiries about the company that may be made by the press, investment or others in the community. It is important that all such communications on behalf of the company be through an appropriately designated officer under carefully controlled circumstances. Unless the employee is expressly authorized to the contrary, if any employee receives any inquiries of this nature, every employee should decline comment and refer the inquirer to the vice president of shareholders' relations. Because of the size and complexity of the company, it is impossible to list every circumstance in which the interests of employees and the interest of the company may conflict. Employees are required to observe the spirit as well as the letter of this policy and to report in writing any conflict situation, however minor, to the chief financial officer or the general counsel of the company, without exception. This obligation extends not only to the potential conflicts personal to the employee but also to all conflicts known or suspected by him or her. No exceptions or modifications to the conflict of interest policy will be made unless approved in writing by the general counsel and the chief financial officer. Whenever an employee leaves, the company expects the employee to continue to comply with those obligations that continue, such as the duty of loyalty and the duty not to trade on "insider" information.

## B. Professional Integrity Policy

Consistent with our operating principles, employees should strive to conduct all business dealings and relationships with    integrity, honesty, and respect for others. Employees should loyally and faithfully serve our principles and always deal fairly and honestly with customers and others with whom we do business. No employee should knowingly permit any transaction to occur through his or her offices that is not fair to our principals and customers alike. Relationships with customers, manufacturers, suppliers, competitors, and employees are to be based on fair dealing, on fair competition in quality, price, and service, and on compliance with applicable laws and regulations.

## C. Accurate and Complete Accounting Policy

1. Employees should use a manufacturer's funds and other property solely for the benefit of that manufacturer. All disbursements must be lawful and consistent with instructions provided by the manufacturer. Transactions concerning the account, including the purchase and distribution of premiums, should be clearly authorized and properly and promptly recorded.
2. No unrecorded fund, reserve, asset, or special account shall be set up or maintained for any purpose. No false or fictitious entries shall be made in books, records, accounts, or in company communications for any reason. No payment or transfer of funds or assets (such as tangible and intangible premiums) shall be made for any purpose other than that described by the supporting documents, and specifically as authorized by the principal or clearly within the discretion granted to the company by the principal.
3. Employees are responsible for accurate and timely record keeping for all company assets, liabilities, revenues, and expenses. Compliance with accepted accounting rules and controls is required. All books, records, and documents must accurately and completely describe the transactions they represent.

Common Paymaster Corporation Employee Handbook

Employee          Initials

## D. Bribes and Kickbacks Policy

1. The company does not permit or condone bribes, kickbacks, or any other illegal, secret, or improper payments, transfers, or receipts. This prohibition applies both to the giving and the receiving of payments or gifts.

2. All payments and transfers of premium and other items of value to employees of other business entities or to such entities themselves shall be made openly and must be disclosed and authorized in advance by the principal, the customer, and the company.

3. No employee shall offer, give, or transfer any money or anything else of value for the personal benefit of any employee or agent of another business entity for the purpose of:

   a. Obtaining or retaining any business that the business entity itself would not otherwise provide
   b. Receiving any kind of favored treatment that the business entity itself would not otherwise provide
   c. Inducing or assisting such employee or agent to violate any duty to his employer or to violate any law.

4. No employee shall assist in the misuse of manufacturers' or company funds, including, without limitation, the misappropriation of such funds for the personal benefit of employees of the manufacturer, the company, or customers.

   a. No outside agent of any kind shall be used to circumvent the prohibition against bribes, kickbacks, and other illegal, secret, or improper payments. Fees, commissions, and expenses paid to outside agents must be based upon proper billings, accurate record keeping, and reasonable standards for services   rendered.

## E. Gifts and Entertainment Policy

1. Except in connection with and specifically pursuant to programs officially authorized by our principals, employees may not accept, directly or indirectly, any money, objects of value, or premiums from any person or company that has or is doing or seeking business with the company. All employees must disclose authorized transactions of this nature to the ethics officer. Providing excessive gifts or entertainment to others who may represent potential business is prohibited.

2. Employees may accept only business-related meals, entertainment, gifts, or favors when authorized by management and when the value involved in not significant and clearly will not create an obligation to the donor.

3. Any payments or transactions must be accurately recorded in the company's books and records and must be consistent with applicable law and accepted practice in the community.

## F. Policy Against Diverting

Diverting is defined as "a process in which a product is sold by a manufacturer to a specific customer in a designated market, who subsequently transfers product ownership, distribution and retail control to a different customer and/or marketing area." It is a process that many principals prohibit either by policy or in their contracts with the company. Employees shall not knowingly assist or otherwise be involved with the diverting of any products.

## G. Non-Disclosure of Confidential Information

1. Except as properly authorized by the company, it is the responsibility of all employees to maintain the confidentiality of:

Common Paymaster Corporation Employee Handbook

Employee            Initials

Rev 1.0 (9/22/2005)

-12-

MVI/Palaxar - PI
154

    a. Proprietary information of the company.
    b. Information entrusted to the company by principals or customers that is otherwise not readily available to the public.

1. Employees should refrain from discussing confidential company business with outsiders and with anyone else who does not have a legitimate need to know the information. Employees should refer outside inquiries regarding the company to the persons in the company authorized to respond to the particular inquiry.

2. Upon demand of Company or termination of employment, employee will deliver to Company all code, disks, blueprints, manuals, designs, photographs, recordings and any other medium by which, through which or on which confidential information has been recorded or stored, which are in employee possession, custody or control. Employee further agrees that the disclosure or use of any confidential information, in breach of this understanding, would cause irreparable harm to Company and, accordingly, not only can Company seek damages, but employee agrees to the issuance of a permanent injunction against me restraining such disclosure and use, and employee agrees that any court of competent jurisdiction, selected by Company, shall have personal jurisdiction over employee.

    (a) "Confidential Information" shall include, but not be limited to, regardless of form, all: (i) customer lists, affiliates, referral source lists, prospect lists, investor lists, vendor lists, client lists, databases, and personnel records; (ii) financial information concerning Employer and its operations; (iii) methods of organizing and conducting Employer's business as such methods, relate to Employer's sales, accounts, borrowers, customers, financing products or techniques, employees and referral sources; (iv) information relating to Employer's proprietary rights prior to any permitted public disclosure thereof, including, but not limited to, the nature of the proprietary rights, the status and details of research and development of products and services, and information regarding acquiring, protecting, enforcing and licensing proprietary rights (including trademarks and trade names); and, (v) other information, whether or not originated by Employee, which is used in Employer's business and is (a) proprietary to, about, or created by or for Employer; (b) information which gives Employer some competitive business advantage or the opportunity of obtaining such advantage or the disclosure of which could be detrimental to the interests of Employer; (c) designated as confidential information by Employer, or from all of the relevant circumstances should reasonably be assumed by Employee to be confidential and proprietary to Employer, or (d) is not generally known by persons other than Employer; all of which information, lists, schedules, records or methods are obtained by Employee from Employer or through Employee's performance of duties hereunder. Confidential Information shall include all of the foregoing whether the same are produced by Employee or any other employee, agent or affiliate of Employer and all physical, tangible, or intangible embodiments or repositories (including any and all photocopies thereof) of the foregoing but shall not include information or matters that are a trade secret under applicable law.

    (b) Employee acknowledges and agrees that (i) Employer has expended and will continue to expend considerable and substantial time, effort and capital resources to develop the Confidential Information, (ii) the Confidential Information is innovative and proprietary in nature to Employer and must receive confidential treatment to protect Employer's proprietary interest therein from irreparable damage, (iii) Employee by virtue of Employee's employment relationship with Employer, will have access to the Confidential Information, and (iv) the Confidential Information and all physical, tangible and intangible embodiments or other repositories of the Confidential Information shall be and at all times remain the sole and exclusive property of Employer. Employee further acknowledges that specialized training, unique to Employer and not otherwise available from any other source, has been provided to Employee at much cost, time and expense to Employer. This training is not available from any school, available courses or from any source whatsoever but from the continued intense training offered by

Common Paymaster Corporation Employee Handbook    /s/        
                                      Employee      Initials

Employer to Employee as partial consideration for this Agreement.

(c)     For the period of the Employment Term through the date which is three (3) years after termination of employment, Employee agrees that Employee will not, without the prior written consent of Employer, which consent may be withheld in the Employer's sole and absolute discretion, disclose or make available any Confidential Information to any person or entity (verbally or in writing), nor shall Employee make or cause to be made, or permit or allow, either on Employee's own behalf or on behalf of others, any use of the Confidential Information then in Employee's knowledge, custody, control or possession. Employee further agrees that immediately upon termination of Employee's employment with Employer for any reason or at any other time requested by Employer and as a condition precedent to Employee's receipt of any payments then due Employee from Employer under this Agreement, Employee shall promptly deliver to Employer any and all property belonging to Employer, including without limitation, all Confidential Information (including all physical, electronic, or other repositories thereof) in Employee's custody, control or possession.

(d)     Employee acknowledges that during the Employment Term, from time to time, Employee may have access to (directly or indirectly), or receive information from or regarding the Employer or its affiliates in the nature of trade secrets, the release of which may be damaging to Employer or its affiliates. Employee agrees to hold in strict confidence any information it receives regarding the Employer or its affiliates that is considered a trade secret and shall not disclose such information to any other person or entity, and will take all necessary steps to prevent any other person or entity from discovering the trade secrets. Accordingly, Employee agrees that the provisions of this Paragraph 6(d) may be enforced by temporary and permanent injunction, in addition to all other remedies provided by law and equity. Furthermore, Employee acknowledges and agrees that theft of trade secrets may subject Employee to certain sanctions and criminal penalties under the Economic Espionage Act of 1996 (18 U.S.C., Sections 1831 to 1839).

## H. Political and Charitable Contributions

Although employees are encouraged to be socially responsible and politically active, employees may not contribute the company's or any principal's funds or assets to any political candidates, party, charity, or similar organizations, unless such contribution is expressly permitted by law and has been preapproved by the appropriate, authorized representative of both the company and the principal. The company expects the strictest compliance with these procedures by all personnel at every level. Failure to observe them may result in serious legal difficulties for the employee, as well as for the company. A failure to follow their letter and spirit will be considered a matter of extreme seriousness and may result in immediate termination of employment.

## I. Business Developments Policy

Employee further agrees that all business opportunities, which are offered to employee, which relate to the business of the Company, shall be disclosed in writing to the Company. Employee agrees that all improvements, developments, concepts, and ideas ("Developments") relating to Company's business, or capable of beneficial use by Company, including, but not limited to, object code, source code, marketing, confidential and trade secret information, techniques, discoveries, slogans, designs, artwork and writings, which I may conceive, make, develop, or acquire, either solely or jointly with others, during employment, whether or not conceived, made, developed or acquired on Company time, are and shall immediately become and remain the sole and exclusive property of Company without charge to Company other than employee compensation. Employee hereby grant

and assign to Company any and all right, title, or interest now existing or that may hereafter come into existence throughout the world which employee may have in any Developments. Employee shall maintain written records of such Developments in accordance with Company policies. Employee shall promptly and fully disclose in writing all such developments to Company's officers and shall at any time either during or subsequent to my employment, upon request of Company without charge, execute, acknowledge, and deliver to Company all instruments which Company may request to enable Company to file for, and to acquire, maintain and enforce, all trademarks, service marks, registrations, copyrights, license and patents covering such Developments.

Employee agrees not to recruit and not to assist any other entity in recruiting any other employee who worked for Company during the last twelve (12) months I worked for Company. Further, employee will not reveal the identity of any supplier to any competitor of Company. These restrictions will apply during employee's employment and for twelve (12) months subsequent to my employment. Employee agrees that establishing the precise amount of damages for breach of this provision, for each person recruited about whom employee has provided information in violation of this provision, will be impossible and therefore I agree that liquidated damages for such violation shall be the amount of annual compensation of that person at Company.

## J. Administration of Business Ethics Policy

All employees who suspect violations of the letter or spirit of this policy have an obligation to report their concerns to the company's designated ethics officer. Matters of concern include pressure exerted by manufacturers, customers, company personnel, or others to utilize accounts in an unauthorized manner or to take or enable other actions inconsistent with authorized company procedures and policies. Employees may also relate their suspicions or specific incidents to any member of the board of directors.

All allegations of improper or illegal behavior will be investigated promptly and thoroughly. The investigation shall remain as confidential as practicable and those conducting the investigation shall respect the privacy of all persons involved.

No adverse action shall be taken or permitted against anyone for communicating legitimate concerns to the appropriate persons. While an investigation will be facilitated if the employee identifies him or her, the company will accept and investigate matters submitted anonymously.

This policy is subject to amendment and may be reviewed and updated periodically. All employees must certify annually their intent to comply with the guidelines herein.

## SECTION III - EMPLOYMENT INFORMATION

• Overtime

Non-exempt regular full-time employees normally work 40 hours each week, but may be requested by their supervisor to work overtime when necessary to meet project schedules and deadlines. To receive payment of 1-1/2 times your hourly rate for overtime hours, you must obtain your supervisor's approval and you must record overtime hours on your weekly time sheet. Overtime is paid in accordance with the Federal Fair Labor Standards Act and is based on actual hours worked in excess of forty during a given work week. Overtime will be computed on actual minutes adjusted to the nearest increment of fifteen minutes. When computing overtime, paid time off that is part of a benefits policy, such as holidays, personal time, vacation days, sick days or short-term disability days, or

Employee      Initials

MVI/Palaxar - PI
157

bereavement, inclement weather, or jury duty days are not counted as hours worked.

No non-exempt employee may work overtime without the express prior approval of his or her supervisor.

- **Required Tools**

Employees many have to furnish his or her own hand tools to meet the required employee tool list. Employees will sign for any tools loaned to them. Any damage or loss of such tools may be assessed against the employees' final check, should termination occur while the employee is in possession of the tools.

- **Job Site Placement**

The Company will do everything possible to place each employee in a job assignment. If you are told to report to a job site, and the contractor/foreman/supervisor tells you at your arrival that you are not needed that day, we will attempt to place you at a different job site. You will not be paid unless you actually work certain hours. There will not be reimbursement for travel costs. Travel reimbursement will be paid only if authorized in writing in advance.

- **Payroll Deductions**

By law, Common Paymaster Corporation is required to deduct, where applicable, state disability insurance, Social Security, Medicare and federal, state or local withholding taxes in accordance with the federal and/or state withholding forms you are required to complete upon your date of hire. When a change occurs in any information listed on these forms, you must immediately notify the Human Resources Department so that the appropriate revisions and adjustments can be made.

You will be notified when you become eligible to participate in Common Paymaster Corporation's group insurance and benefits plan. In the event you elect to cover yourself and/or your dependents under the insurance plan, or to participate in any other optional benefit plan, Common Paymaster Corporation, may deduct dependent coverage premiums from your pay. The amounts deducted for all items are shown on the stub of your paycheck.

- **Professionalism in the Workplace**

An employee may be required to wear specific clothing for a specific job. If this clothing is not street clothing but is considered a uniform, the Company will furnish this uniform. This will occur at the same time as the new employee benefits are available to the new employee, at one month of service.

In all other cases, a "business casual" dress code is appropriate. If you have any questions about the appropriateness of specific attire, please consult your supervisor in advance of wearing that item. Examples of clothing found inappropriate for our workplace include "crop tops" or other items which show the mid-section of the body; and shorts or skirts that are shorter than five (5) inches above the knee. There is no exception to this policy.

- **Performance Evaluation**

Common Paymaster Corporation, views the performance evaluation process as an important employee relations effort. It is designed to provide you and your supervisor with essential data for career development and professional growth where mutual benefits of excellence in performance can be achieved.

Common Paymaster Corporation Employee Handbook

Employee _____   Initials _____

Rev 1.0 (9/22/2005)

-16-

Your immediate supervisor will accomplish evaluation of individual performance. Performance evaluations will consist of a written evaluation and interview with the employee. Performance objectives are the mutual responsibility of the employee and management. Evaluation of individual performance will be accomplished by management, and will be based on the performance criteria on the evaluation form and other objectives that may be stated.

## • Termination

If you voluntarily terminate your employment, you must give your supervisor advance written notice prior to departure to allow for transition planning. A notice of two weeks is required for non-exempt employees and a notice of four weeks is required for exempt employees. Compensation for unused, accrued vacation days will be forfeited if you fail to give the required advance written notice or if your employment with Common Paymaster Corporation is terminated for cause as determined by Common Paymaster Corporation, in its sole discretion.

You are expected to work during the notice period. Vacation time or other forms of leave cannot be used during this transition period. Common Paymaster Corporation may, at its discretion, determine that it is not in the Company's best interest for you to work all or any part of the notice period. In such event, any unused, accrued vacation time will be paid to you at your current rate of pay.

When termination of employment does occur, your supervisor or the Human Resources Department will conduct an exit interview consisting of the following:

- Explanation of any conversion benefits under the group insurance plan, including information for covered dependents;
- Obtain the employee's correct address for mailing Internal Revenue Service Form W-2;
- Arrangement for final pay and accrued vacation if owed to the employee;
- Withholding from final paycheck any employee receivable as allowed by law;
- Collection of the employee handbook, manuals, equipment, software, credit cards, office keys, etc., in employee's possession.

## • Other Employment

Employees are expected to devote their primary work efforts to the business of the Company. Therefore, it is required that employees refrain from other employment that:

1. Could be inconsistent with the interests of the Company;
2. Could, by reason of the association, have a derogatory effect on the Company; and/or
3. Could require devoting so much time and effort to the job that work efficiency would be adversely affected.

## • Personnel Records

Common Paymaster Corporation does its best to balance the employee's right to privacy with the Company's need to collect and use information. Files on employees contain information needed by the Company in conducting business or as required by federal, state or local laws, and are maintained by the Human Resources Department. Information in your file may include application forms, payroll information, performance appraisals, and work records. Access to the files is on a need-to-know basis. Upon request for employment verification (e.g., creditor

Common Paymaster Corporation Employee Handbook

_____        _____
     Employee                 Initials

MVI/Talaxar - PI
159

loan processing), Common Paymaster Corporation will furnish information upon your written request. The party requesting the information will need to have your Social Security number, and will be furnished your current job title, date of employment, and employment status.

To keep personnel records up to date, you are required to notify the Human Resources Department, in writing, of any changes in name, address, telephone number, marital status, number of dependents, beneficiary designations and persons to be notified in case of emergency.

- **Grievance Policy and Procedure**

It is the policy of this Company that all employees have the right to voice their complaints. We recognize the meaningful value and importance of full discussion in resolving misunderstandings and preserving good relations between management and our employees. Accordingly, we believe that the following procedure will ensure that complaints receive full consideration. Should a condition exist that an employee feels is unsatisfactory, it is important that he or she bring it to the attention of the appropriate person in the proper manner. Normally that person is the employee's immediate supervisor. If the supervisor is the source of the complaint, such as unlawful harassment, the employee is to contact the Company's Human Resources Manager.

### Procedure

**Step 1.**

It is of the utmost importance that in all instances the supervisor notify the employee of the action to be taken to correct the situation. If the supervisor believes no action is warranted or possible, the employee should receive an explanation as to the reasoning of such decision. Generally, the supervisor shall reply to the employee within three working days.

**Step 2.**

In the event the employee feels the problem remains unresolved after discussions with the supervisor, the employee may submit the complaint in writing for reconsideration. A written complaint is to be submitted to the Human Resources Manager. Upon reviewing the complaint, the Human Resources Manager will normally render a decision in writing within three days after receipt of the written complaint. In certain cases, the Human Resources Manager and the supervisor may wish to meet personally with the employee to provide a fuller explanation of the action taken. Normally, complaints will be resolved at this step of the grievance procedure.

**Step 3.**

An employee who feels the complaint has not received adequate attention in Step 2 may direct the complaint to the Company's Human Resources Manager. Such complaints are to be made in writing, on the complaint form, within three days of receiving the answer provided in Step 2. The Portfolio Manager will review the complaint with the Human Resources Manager and arrange a meeting with the employee within three (3) days of receiving the complaint. At this step, the Company's president may be consulted for a final decision in the matter.

- **Workplace Safety and Security**

Common Paymaster Corporation is committed to maintaining the highest standards of safety in the workplace. It is the policy of Common Paymaster Corporation, to comply with all applicable federal, state, and local health and safety regulations and to provide a work environment free from all recognized hazards. All employees are expected to comply with all safety and health regulations, whether established by management or by jobsite

Common Paymaster Corporation Employee Handbook

Employee _____ Initials _____

contractors, or by federal, state, or local law.

You can contribute to your workplace safety by being alert and recognizing potential hazards in your work area. If you see a need for repair, let your supervisor know.

Employees shall make themselves aware of emergency stations, first aid kits, eye wash stations, emergency call boxes, and available phones on their job site. Employees are encouraged to utilize job site first aid for minor injuries. Employees should request emergency services through calling 911 for injuries that require medical attention. All doubts should be resolved in favor of calling 911 for emergency services.

- **Electronic (E-Mail and Internet) and Telephonic Systems Usage Policy**

This policy describes our guidelines with regard to Internet access and disclosure of electronic mail messages sent or received by our employees with use of the our e-mail system. The Company respects the individual privacy of its employees. However, employee privacy does not extend to the employee's work-related conduct or to the use of the Company's provided equipment or supplies. You should be aware that the following guidelines may affect your privacy in the workplace.

**Provision of Internet access.** As a condition of providing Internet access to its employees, the Company places certain restrictions on workplace use of the Internet. The Company encourages employee use of the Internet:

☐ to communicate with fellow employees and clients or vendors regarding matters within an employee's assigned duties;

☐ to acquire information related to, or designed to facilitate the performance of regular assigned duties; and

☐ to facilitate performance of any task or project in a manner approved by an employee's supervisor.

**Compliance With Applicable Laws And Licenses.** Employees must comply with all software licenses, copyrights, and all other laws governing intellectual property and online activity. All electronic and telephonic communication systems ("systems") and all communications and information transmitted by, received from, or stored in those systems are the property of the Company and may not be deleted, removed, or otherwise disposed of except with express permission of the Company consistent with the employee's job duties and responsibilities. All passcodes or encryption keys are the property of the Company. The Company retains the right to monitor all of its electronic and communication systems at its discretion including, but not limited to, listening to, recording of, transcribing, copying or otherwise storing in a separate location all voicemail, e-mail messages, data and program files, and so forth.

Employees using any of the Company-provided systems for personal purposes do so at their own risk of loss and expressly consent to the Company monitoring, recording, and transcribing of all such personal use. Personal use of the Company-provided equipment, including systems, shall be limited to use that is incidental to the Company-business usage, that is personal to the employee, and that occurs on an irregular and infrequent basis. Employees are prohibited from using the Company's systems for any commercial activity unrelated to the Company's business or unrelated to the employee's compensation and benefits provided by the Company, i.e., the systems should not be used for personal gain, advancement of individual views, or solicitation of non-Company business. Use of the systems must not disrupt the operations of the Company and not interfere with employees' productivity.

Employee          Initials

MVUPalaxar - PI
161

Employees are not permitted to use a passcode, to use an encryption key, to access a file, or to retrieve any stored communication unless authorized to do so, or unless they have received prior clearance from an authorized Company representative. Employees are not permitted to use a passcode that has not been issued to that employee or that is unknown to the Company. Employees are not permitted to use an encryption key or program that has not been provided by the Company or that has not been provided to the Company prior to use. Further, employees are not permitted, without proper authorization to provide other employees or individuals access to a passcode or encryption key. Employees who violate this policy are subject to disciplinary action up to and including termination.

In addition to the foregoing prohibitions, employees are prohibited from engaging in the inappropriate use of all systems. Inappropriate use may result in loss of access privileges and disciplinary action up to and including termination. Inappropriate use includes, but is not limited to:

- Unauthorized access of another employee's e-mail or voicemail account or any other account maintained on the systems as well as unauthorized access to data stored on any electronic or telephonic system. This includes any attempt to obtain unauthorized access.
- Any effort to inhibit authorized access to data, mail, or programs stored on electronic or telephonic systems.
- Any effort to prevent the Company's monitoring of an electronic or telephonic system.
- Transmission of obscene or harassing messages to any other individual, i.e., hate mail, obscenity, ethnic slurs, racial comments, off-color jokes, and antisocial behavior in violation of any state or federal law.
- Use of the electronic and/or telephonic communication system to violate any other policy of the Company.
- Any illegal, unethical, or other activity that could adversely affect the Company, including the Company's reputation or image.
- Accessing sexually oriented Internet sites or the receipt, storage, or transmission of sexually oriented material.
- Unauthorized downloading of software.
- Unauthorized copies of copyrighted materials whether created, distributed, or knowingly utilized.
- Posting inaccurate, inappropriate, and unlawful business information.
- Unauthorized attempts to break into any computer whether it belongs to the Company or another organization.
- Copying, sending, or posting confidential materials of the Company or its clients.
- Sending chain letters.
- Game playing.
- Distribution of destructive programs (i.e., viruses and/or self replicating code).
- Solicitation.
- Dissemination of printing of copyrighted materials (including articles and software) in violation of copyright laws.
- Sending, receiving, printing or otherwise disseminating proprietary data, trade secrets or other confidential information of the Company in violation of company policy.
- Offensive or harassing statements or language including disparagement of others based on their race, national origin, sex sexual orientation, age, disability, religious or political beliefs.
- Sending chain letters, gambling or engaging in any other activity in violation of the law.

Employee        Initials

Violation of the Company's Electronic (E-Mail and Internet) and Telephonic Systems Policy may include disciplinary action or termination. The measure of discipline will correspond to the gravity of the offense as weighed by its potential effect on the Company and fellow employees.

- **Electronic and Telephone Communication Systems Data**

    All data on electronic and/or telephone communication systems will be saved and stored.

- **News Media Relations**

    **Statement Of Policy**

    It is Company policy not to grant interviews to the media without prior approval of the Executive Vice President, Corporate Development. With respect to Company matters that are appropriate for public knowledge, it is the policy of the Company to cooperate with news media inquiries and communicate truthfully with the media.

    **Provisions**

    No employee will give media interviews without prior approval of the Chief Financial Officer. This policy will ensure that accurate information will be given for those matters which are appropriate for public knowledge.

    **Procedures**

    1. Any requests for interviews by the media for any location will be referred to the Executive Vice President, Corporate Development. During the time an employee is attempting to contact either of the above, reporters should be told "no comment."
    2. Courtesy and common sense should always be used in dealing with reporters. If a reporter asks a question or asks to interview the employee, he/she will politely decline and explain that the Executive Vice President, Corporate Development must first be contacted for approval. The employee should ask the reporter for his or her name, the name of the publication or television or radio station, a telephone number, and the topic that they wish to discuss.
    3. The employee will then contact either the Executive Vice President, Corporate Development with the above information.
    4. When an approval is given to allow photographs in a location, the employee's supervisor should complete a Photo Release Form and send it to the Legal Department.

## SECTION IV - EMPLOYEE BENEFITS

Please refer to the Employee Benefits Handbook for the following:

- Individual and Family Insurance Program
- 401 (k) Plan
- Vacation Policy
- Carry-Over Vacation Policy
- Holidays
- Personal Days
- Family and Medical Leave (FMLA) Policy
- Other General Employee Benefits

Comdata Paymaster Corporation Employee Handbook

Employee          Initials

- **Injuries/Workers' Compensation Claims**

Employees suffering any injury incurred while on the job may be covered by Workers' Compensation insurance. Common Paymaster Corporation is responsible for the cost of this benefit and provides it at no cost to you. To qualify for coverage, you must report and record all accidents immediately upon occurrence. Any injury, regardless of how trivial it may appear, must be reported immediately to the Human Resources Department so that appropriate arrangements may be made regarding medical attention and the filling out of proper reports in accordance with the Worker's Compensation laws. Failure to make a timely report will prevent your coverage from being effective. When located at a work site away from the Human Resources Department, it is the employee's responsibility to know in advance the names of the supervisors to whom an injury should be reported. Common Paymaster Corporation's group health insurance plan may not cover injuries incurred on the job, so your prompt reporting of all such injuries is vitally important.

Also, as stated previously, if you are injured on the job, an immediate drug test will be required. If results are positive, your injury may not be covered under our insurance and you may be liable for all expenses relating to such injury.

- **Unemployment Compensation Insurance**

All employees are covered under applicable state unemployment laws. The cost of this coverage is paid entirely by Common Paymaster Corporation.

- **Social Security Insurance**

A vitally important benefit is provided by the Federal Social Security Program. Employees paying into the Social Security System are building lifetime protection for themselves and their families. In addition to monthly benefits in retirement, Social Security may also provide disability and survivors' insurance throughout your working years. Social Security deductions also pay Medicare hospital insurance for people sixty-five (65) and older.

The law provides for automatic increases in Social Security benefits to reflect increases in the cost of living. Federal law at present requires that there be deducted from every employee's salary a certain percentage of the salary, up to a maximum salary level. The percentage and/or maximum may change from year to year. The deduction is listed on your paycheck as FICA (Federal Insurance Contributions Act).

The sum deducted is matched by Common Paymaster Corporation, and sent along with the employee's contribution to the Social Security Administration. Common Paymaster Corporation's contribution automatically increases with the cost of living also. For more information about Social Security, call any Social Security office. The number is listed in you local telephone directory under "Social Security Administration".

- **Bereavement Policy**

If there is a death in the immediate family of a regular, part-time, and special assignment employee, he/she is eligible to receive up to three (3) days of paid excused absence from his/her duties with the Company. "Immediate Family" includes a spouse, child, sibling, parent, grandchild, grandparent, step-parent, step-child, step-sibling, foster relative, half-sibling, parents-in-law, sister-in-law, brother-in-law, son or daughter-in-law. Approval for additional time off without pay may be arranged by a supervisor, if substantial travel is involved.

- ## Jury/Witness Duty

Jury duty is a civic responsibility. When an employee is called to serve jury duty, he/she is required to give written evidence to his supervisor as soon as possible. Employees will be paid the difference between the court fee and the current base salary of the employee, excluding overtime pay provisions. The limit on such earnings is eight (8) hours a day and forty (40) hours per week, for as long as the employee is required to perform jury duty. If an employee is serving jury duty on any scheduled holiday, he shall receive full pay for that holiday rather than the difference between the jury fee and base pay. The employee must supply the Company with a statement from the court certifying the time the employee spent on jury duty and the fees received. Employees serving jury duty are expected to return to employment responsibilities during all periods reasonably possible.

Employees may be granted make-up pay if they suffer a loss of pay because of an appearance in court in answer to a subpoena, unless the employee is either a plaintiff or defendant or other interested party to the court proceeding.

- ## Military Leave

Employees who perform and return from military service in the Armed Forces, the military Reserves or the National Guard shall have and retain such rights with respect to reinstatement, seniority, vacation, layoffs, compensation, benefits, and length of service pay increases as may be from time to time provided by applicable federal and state statutes.

- ## When Late or Absent

Employees calling in sick for their scheduled workday shall notify their assigned job site supervisor at least two (2) hours prior to reporting time. Employees reporting late to work will be required to immediately notify their supervisor of their tardiness.

Although there are justifiable reasons for late work attendance, an employee's job may be jeopardized by tardiness that is persistent. When the employee works extra days or hours, tardiness or failure to attend will be treated in the same manner as it would be on regular days.

## SECTION V - MISCELLANEOUS POLICIES AND PROVISIONS

- ## Charities and Solicitations

To keep an orderly workflow, the Company cannot permit employees or any other person to solicit on *Common Paymaster Corporation*'s premises for products or other purposes.

- ## Use of Telephone and Cell Phones

Employees are requested to inform family and friends that calls at work will be received only when absolutely necessary. Necessary personal calls are to be kept as short as possible.

- ## Housekeeping

Housekeeping is the responsibility of each employee. You are to keep your workstation and surrounding

area as neat and orderly as possible.

- ## Change in Name, Address, Telephone Number or Marital Status

    If you change your name, address, and telephone number or if your number of dependents changes, it is your responsibility to immediately notify the Human Resources Department. Current and correct information must be available in your personnel files for tax and insurance purposes, and in the event of an emergency.

- ## Policy Changes

    Common Paymaster Corporation, reserves the right to amend, modify or terminate any or all of our policies, including those contained in this handbook, at any time. As policy changes occur, steps will be taken to notify all employees who have a job-related need to know. Such steps may include direct contact, posting notices on bulletin boards, or providing amended inserts for this guide. Any time employees receive an insert for this handbook, you will also be informed the pages that are superseded. Employees are expected to keep their handbook up to date.

    We are pleased that you are part of our team. We want to help you to do a job you are proud of and to help you feel at home here. If you have any questions or need any assistance, do not hesitate to contact the Human Resources Department.

    **Your signature below indicates you have read, understand, and agree to abide by the Company's policies and procedures as set forth in the employee handbook.**

    **I have carefully reviewed the employee handbook and understand it. I understand that the Company expects me to be in compliance with all Company policies at all times.**

Your Signature: _____

Printed Name: _____

Date: _____

Social Security No.: _____

Witness: _____

Employee _____ Initials _____

## EMPLOYMENT AGREEMENT

This Agreement is made this ___ day of June, 2005 between Nexia _____, a Florida corporation, with its principal office located at 20 North Orange Avenue, Suite 1400, Orlando, Florida 32801, hereinafter referred to as "Employer," and Edith Curry-Broadhead, who resides at 11916 Brookmeade Court, Glen Allen, Virginia 23059, hereinafter referred to as "Employee." Employer and Employee are hereinafter jointly referred to as the "Parties."

WHEREAS, Employer provides general business consulting activities _____ of different companies, which may or may not be affiliated or controlled by Employer; and

WHEREAS, Employee seeks to secure a position with Employer. Employer desires to hire Employee for that position under the terms set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration received in hand, the sufficiency and receipt of which is hereby acknowledged, the Parties agree as follows:

## TERMS AND CONDITIONS

### NATURE OF EMPLOYMENT

(a)    Employer hereby hires Employee and Employee accepts such employment and agrees to perform at all times faithfully, industrially, and to the best of her ability, experience and talent, all the duties Employer may assign her, pursuant to the expressed and implied terms of this Agreement. Employee, during the term of this Agreement agrees to diligently perform all duties that may be assigned to her and shall exercise such powers and authority as may, from time to time, be delegated to him, including such powers and authority usually pertaining and attributed by law, custom, or otherwise to a management level associate in a professional firm. The initial primary classification for Employee will be as Master Strategist (the "Initial Primary Classification"), and Employee's title shall be Senior _____ Officer. Employee's Job Description is set forth in Schedule "A" attached hereto.

(b)    Employer shall have the right to change the job description to include responsibilities reasonably related to the position or to remove responsibilities from the description of the position.

(c)    Employee hereby acknowledges that she has received a copy of the Employee Handbook, has reviewed it, and Employee agrees to comply with Employer's policies and procedures as set forth in the Employee Handbook. In addition, Employee agrees to follow the policies and procedures set forth in Schedule "B" attached hereto regardless of whether such policies and procedures are set forth in the Employee Handbook.

### DURATION OF THIS AGREEMENT

Employer employs Employee and Employee accepts such employment with Employer for a period of thirty-six (36) months, beginning on June 16, 2005, and terminating on June 15, 2008. As used in this Agreement, "employment term" refers to the period of employment of Employee under this Agreement, whether for the aforementioned period above, termination earlier as provided elsewhere in this Agreement, or any extended initial agreement of Employee and Employer.

3.    COMPENSATION AND BENEFITS

(a)    [...] Employer and Employee agrees [...] Employer, [...] payment for Employee services under this Agreement, the "Compensation" as set forth opposite Employee's initial Primary Classification in Schedule "C" attached hereto.

(b)    Employee shall receive no other fringe benefits, and disability, medical, dental, life or insurance except those benefits that are generally available to any Employee of Employer.

(c)    Employee shall be granted considerable autonomy on establishing Employee's schedule. Employee shall exercise informed and reasonable judgment concerning appropriate hours and vacation time. Notwithstanding anything to the contrary contained in the Employee Handbook, Employee may not receive lesser benefits than the benefits contained in the Handbook in effect at the execution date of [...] Agreement.

(d)    Employer shall reimburse Employee for all actual, reasonable, and necessary business expenses incurred by Employee in connection with the business of Employer.  Expenses Must be submitted within thirty (30) days of actual occurrence.  Payments to Employee for such business expenses shall be made within seven (7) days of receipt of an approved expense report from Employee [...] ordinary [...] regular month [...] employees [accounts] whichever [...] time. Employer shall determine whether expense reports are to be submitted weekly or monthly.

(e)    Employee's entitlement to receive Compensation under this Agreement shall be offset against any other compensation otherwise paid to Employee under any employment arrangement with Employer or any Employer affiliate (regardless of the number of years) on a cumulative basis from the date of execution of this [...]

(f)    Notwithstanding any other provision regarding dispute resolution set forth elsewhere in this Agreement, any dispute regarding the Compensation shall be exclusively decided in accordance with the laws of the State of Florida. Such dispute shall first be submitted to non-binding mediation and shall [...] be determined by final binding arbitration [...] not litigation [...] with the agreed venue for mediation and arbitration being in Orlando, Florida.  The mediation and, if needed, arbitrator, shall be selected in each case by the applicable regional manager of Employer.  Employee agrees to waive all other enforcement rights with respect to any dispute regarding the Compensation.

4.    TERMINATION/SEVERANCE

(a)    Notwithstanding any contrary provision in this Agreement, Employer may terminate this Agreement for cause without notice.  For the purpose of this paragraph, "cause" is defined as: (1) Employee convicted of or pleading guilty or no contest to a felony under applicable law; (2) Willful material breach of Employee's fiduciary duty to Employer; (3) Employee willfully failing to perform a material explicit or implicit duty that is within the normal duties of Employee giving a reasonable [...] or directive to Employee; (4) Employee committing any breach of a material term of this Agreement, provided that Employee, after receiving twenty (20) days written notice from Employer, has not cured such breach; (5) Employee willfully failing to adhere to any material rule, policy or directive set forth by Employer; (6) Employee committing willful insubordination, corruption and/or disruption in the workplace; or (7) Employee committing a harassment violation of law against an employee, affiliate, owner, client, invitee [...] of Employer [...]

_____

[...] Employment Agreement [...] Darrin Barry-Broadhead          Initials [...]

(b)    Upon termination, Employee shall immediately provide to Employer all documents and items of any nature or description, including computer files, that pertain to actual potential customers or that Employee obtained during his employment, any and all documents regarding Employer's operations, any phase or aspect of Employer's future operations or plans, and any other items, lists, documents, or the like, that in any way may pertain to Employer's business.

(c)    Except for termination of Employee due to breaches of paragraphs 4(a)(1) and 4(a)(7) if Employer terminates this Agreement for any reason, including for cause, or as a result of an acquisition, takeover or change in Control (as defined below in paragraph 16) in addition to Compensation, Employee shall be entitled to a lump sum severance payment, within thirty (30) days of the termination date of employment. This payment shall be an amount equal to the average monthly Compensation earned by Employee while employed by Employer to the date of termination, multiplied by the number of six-month periods or part thereof of Employee's employment with Employer.

For illustrative purposes, if Employee's average monthly Compensation is $8,000, and Employee has worked for 2 years and 3 months and is terminated, Employee is entitled to $8,000 times 4.5, or $8,000 times 27/6 = $36,000.

(d)    ... shall be ... payments distribution or other action by Employer to or for the benefit of Employee, whether paid or payable or distributed or distributable pursuant to the terms of this Agreement or otherwise, would be taxable as an excise tax under the Internal Revenue Code 1986, Employer shall make a payment to Employee in an amount equal to any such excise tax imposed upon said payments. Should any interest or penalties accrue to Employee with respect to any such excise tax, Employer will also reimburse those costs.

(e)    For purposes of this Agreement, the term "Change in Control" shall be defined as:

(i)    The approval by the shareholders of Employer of a reorganization, merger, consolidation or other form of corporate transaction or series of transactions, in each case, where the persons who were the shareowners of Employer immediately prior to the reorganization, merger or consolidation or such transaction do not, immediately thereafter, own more than 50 percent (50%) of the combined voting power of the succeeding corporation. This is voting power generally entitled to vote for election of directors of the newly reorganized, emerged, or consolidated company resulting in new outstanding voting shares; or

... liquidate or dissolve the company.

(iii)    Individuals, who, as of the date hereof, constitute the incumbent board of directors cease for any reason to constitute at least a majority of the board, provided that any person becoming a director subsequent to the date hereof, whose election, or nomination for election by Employer's shareholders was approved by a vote of at least a majority of the directors comprising the incumbent board; or

(iv)    The acquisition by any person, entity or "group" of more than 50 percent (50%) of the then outstanding shares of Employer's common voting stock, or

The sale of all or substantially all of the assets of Employer.

5.   UNIQUENESS OF SERVICES OF EMPLOYEE

Employee hereby acknowledges and represents that the services she intends to render under this Agreement are of a special, unique, unusual, extraordinary and intellectual character that gives them peculiar value, the loss of which cannot be reasonably or adequately compensated by damages in an action at law. Employee, therefore, expressly agrees that Employer shall be entitled to injunctive and other equitable relief to prevent a breach of this Agreement by Employee in addition to any other rights or remedies that Employer may possess, and to the maximum extent permitted by law. Any action for injunctive relief under this paragraph shall not be subject to the terms of this Agreement related to the alternative dispute resolution process.

6.   CONFIDENTIALITY

(a)   .......... in the normal scope of .......... Employee, and in good faith effort to protect the interests of Employer, Employee will not at any time or in any manner, directly or indirectly, communicate to any person, business, or corporate entity, any confidential information of any kind concerning any matters affecting or relating to the business of Employer. Such matters include, but are not limited to, the names of any customers of Employer; the prices or rates Employer pays or charges, the manner of any aspect of Employer's operations; Employer's plans or strategies, and other information of any kind .......... information that relates to Employer's operations, customers, suppliers, products or financial condition. The Parties hereby stipulate that all such information is per se material, important and confidential, and, therefore, disclosure of such information will irreparably harm the ongoing operations of Employer.

(b)   Employee hereby acknowledges that release of confidential information related to Employer, its subsidiaries, or parent companies or customers of any of them may constitute a criminal or tortious act under federal, state, or other applicable law, that may subject Employee, individually, to a monetary judgment or prison sentence. Consequently, Employee hereby agrees to refrain from disseminating, in any manner, information related to the affairs of Employer, its parent, subsidiary, or affiliate corporations or the customers of any of them without the receipt of written consent of the legal counsel of Employer in advance of .......... of such information.

7.   NON-SOLICITATION OF OTHERS

Employee hereby agrees not to solicit, in any manner whatsoever, the employees, agents, affiliates, contractees, or customers of Employer, its parent, subsidiary or affiliate companies or those customers of any of them.

8.   DEVOTION BY EMPLOYEE OF FULL-TIME TO BUSINESS

(a)   Except as otherwise agreed to by Employer in writing, Employee shall devote all of her attention, knowledge and skills solely and exclusively to the business and interests of Employer .......... normal working hours. Employer shall receive the benefits, emoluments, profits or other gains from or incidental to any and all work, services, advice and mental efforts of Employee that arise during the term of this Agreement, or such other amount as agreed to in writing by Employer's Board of Directors or set out in the Employment Handbook.

(b)   Employee shall not directly or indirectly .......... as a partner, officer, director, stockholder, advisor, employee, .......... in any other business or trade that .......... of Employer.

Employee may invest her funds in the capital stock of a direct or indirect competitor of Employer only if said holdings represent less than five percent (5%) of the total number shares or principal amount of the securities of said class such company (See paragraph 2(a) above).

## 9. INDEMNIFICATION OF EMPLOYER AND INDEMNIFICATION OF EMPLOYEE

(a)   Unless acting under the direction of Employer, Employee shall hold harmless, indemnify and defend Employer from any and all claims, demands, damages, losses, expenses, attorney's fees, causes of action, liabilities and liability for any fraudulent or wrongful acts of Employee during Employee's engagement or representation to others as an Employee, independent contractor, or other affiliate of Employer.

(b)   Employer shall hold harmless, indemnify and defend Employee from any and all claims, demands, damages, losses, expenses, attorney's fees, causes of action, liabilities and liability arising for any fraudulent or wrongful acts of Employer's independent contractors or other affiliates of Employer and further for any acts or omissions arising out of Employee's employment with Employer unless caused by the active gross negligence of Employee.

## 10. ALTERNATIVE DISPUTE RESOLUTION

All claims, duties and other matters in question by and between Employee and Employer shall be decided by binding Arbitration under and in accordance with the provisions of Chapter 682, Florida Statutes, with exclusive venue for such Arbitration, and for any judicial proceedings to enforce the terms and conditions of this provision requiring Arbitration, or to confirm such Arbitration Award, to be only in the Court of appropriate jurisdiction in Orange County, Florida. Provided further that in the event for any reason a dispute arising under this Agreement is not subject to the Florida Arbitration Code, then in the event such dispute shall be decided by binding Arbitration under and in accordance with the provisions of the Federal Arbitration Code, with exclusive venue likewise to be in Orange County, Florida, in the same manner as provided above. If there is no jurisdiction for such dispute under the Federal Arbitration Code, then such disputes shall be decided by Arbitration in accordance with Rules of the American Arbitration Association, with exclusive venue likewise to be in Orange County, Florida, in the same manner provided above. The prevailing Party in any action or under this Agreement, including in any litigation required to enforce the terms and conditions of this Arbitration Provision, including to confirm an Arbitration Award, shall be entitled to recover their reasonable attorney's fees and consulting fees, and in addition, any taxable costs (including Arbitrator compensation) as are otherwise allowed in the Arbitration and for litigation to enforce the terms of this Arbitration provision or to confirm any Arbitration Award (any litigation). specifically authorized by the Arbitrator as is the case in his discretion, to tax in favor of the prevailing Party. The fees and costs of the Arbitration proceedings to include Arbitrator compensation, filing fees, subpoena service fees, expert witness fees and costs, and out-of-pocket costs for a hearing room to conduct the proceeding.

## 11. MISCELLANEOUS PROVISIONS

(a)   This Agreement contains the sole and entire agreement between the Parties and shall supersede any and all other agreements between the Parties except for any covenant not to compete, confidentiality agreement, or amended compensation agreement signed by both Parties. The Parties acknowledge that they have read this Agreement in its entirety and that any oral or written statements to the contrary are void and that neither Party has relied on any such representation in connection with this Agreement.

(b)   The Parties agree that no waiver or modification of this Agreement or any covenant, condition, or limitation herein contained is valid unless it is in writing and duly identified as a modification or waiver of this Agreement or one or the clauses of this Agreement, and duly executed by both Parties. The Parties further agree that neither shall submit or attempt to submit into evidence in any proceeding, arbitration, or litigation between the Parties arising out of or affecting this Agreement, or the rights or obligations of any Party under it, unless such waiver or modification is in writing, clearly identified as a modification or waiver of this Agreement or one of the clauses of this Agreement, and duly signed by both Parties.

(c)   The laws of the State of Florida govern this Agreement and performance under it at the exclusion of the laws of any other forum or jurisdiction irrespective of the particular jurisdiction in which any action or proceeding is instituted.

(d)   If one or more provisions in this Agreement held invalid or unenforceable, the remaining provisions shall remain in full force and effect.

(e)   Any waiver or modification of any breach of one or several provisions contained in this Agreement shall not be considered as a waiver of any subsequent breach of the same or other provisions of this Agreement.

(f)   The headings and titles used in this Agreement are for the reference and convenience of the Parties and do not serve to limit or change the meaning of any provision contained in this Agreement.

(g)   Any Party required to provide notice to the other Party pursuant to this Agreement may give such notice by personal delivery in writing or by certified mail postage prepaid return receipt requested. A Party mailing a notice shall address it to the relevant Parties at the addresses appearing in the introductory paragraph of this Agreement, but any Party may change its notice address in accordance with this paragraph. The Parties hereby deem any personally delivered notice as delivered on the date of actual receipt, provided the notice is signed by the person named in the notice or if the receipt refuses to sign such notice, the date a notice sent by a delivering Party may show that communicates incurred, but unsigned or refused, delivered.

(h)   This Agreement shall be binding on and inure to the benefit of the successors and assigns of Employer. Employee shall have no right to assign this Agreement, but Employer, at its sole discretion, shall have the right to assign it.

12.   COVENANT NOT TO COMPETE OR SOLICIT

Employee shall not directly or indirectly commit or attempt to commit any of the following acts within fifteen (15) miles of any office of Employer for period of two (2) years following termination: (i) work for a direct competitor of Employer; or (ii) serve as a manager, partner, proprietor, director, shareholder, or manager of an entity that is a direct competition with Employer. Additionally, for a period of two years following Employee's termination under this Agreement, Employee agrees Employee shall not (a) contact or solicit any customer or employee of Employer for any matter; (b) divulge or use any information regarding Employer to any business in the same industry as Employer; or (c) advise any competitor of Employer regarding any aspect of the business operations of Employer.

BY SIGNING BELOW AND INITIALING THE BOTTOM OF EACH OF THE PRECEDING
SIX (6) PAGES, AS WELL AS THE ATTACHED SCHEDULES, THE PARTIES AGREE TO
THE TERMS AND CONDITIONS HEREOF.

EMPLOYER:                                          EMPLOYEE:
Nexia Strategy Corporation

By:                                               By:

Print Name:   James V. Sadrianna                 Print Name:   Edith Curin-Broadhead

Print Title:   President                          Print Title:   Senior Regional Officer

Date:                                             Date:

                                                  Social Security Number:

Nexia Employment Agreement (Edith Curin-Broadhead)                        Initials:



Schedule "A"

## JOB DESCRIPTION

Employee's duties shall include, but not be limited to:

The business development and/or management of any current or prospective client related activities.

The development and/or management of the existing branch of Nexinfo Corporation.

MVI/Pulaxar - PI

175

Schedule "B"
POLICIES

Employee agrees to use Employer's best efforts to do the following:

- Identify and schedule work related to Employee's businesses.

- Make any type of report to Employer regarding the status of any significant projects on which Employee is working.

- Make a full disclosure of any existing business. All future business will be run through Employer's screening processes.

- Complete and turn in daily timesheets.

- Deliver all PIN numbers and pass codes relating to the business financial account, along with full disclosure of any activities on any business account to Employer.

- Deliver all personal logins and passwords to allow full disclosure on the related company websites and parent company websites.

- Employee agrees that any communication received or sent by Employee at her employment location, whether voice, email, or regular mail shall be subject to review and inspection by Employer at any time.



## Schedule "C"
## COMPENSATION

Employee shall be compensated in accordance with Schedule "C-1" in accordance with Employee's then current Primary Classification. Such compensation shall consist of "Base Compensation" and "Incentive Compensation" as identified in Schedule "C-1".

Base Compensation shall be payable in accordance with Employer's then current pay cycle, and payment thereof shall be offset by any commissions earned by Employee pursuant to the Independent Representative Agreement executed in connection with this Employment Agreement.

Incentive Compensation shall consist of the grant to Employee on an annual basis of preferred shares of Mirabilis Ventures, Inc., a Nevada corporation ("Mirabilis"), each preferred share (a "Preferred Share") having a face value of One Hundred Thousand Dollars ($100,000) and bearing a coupon rate of six percent (6%) (the "Coupon") (the Preferred Shares shall be granted to Employee on the basis of the formula (position and longevity) set forth in Schedule "C-2", whenever there are Employer net revenues sufficient to enable grants to all employees eligible for such grants (the "Formula"). The Coupon shall be paid annually to Employee. Incentive Compensation may also consist of yearly discretionary monetary bonuses and yearly discretionary stock bonuses. Both bonuses shall be determined by the Board of Directors of Employer and shall be based upon certain performance goals of Employer as set by the Board.

Based on the Formula, whenever thirty (30) Preferred Shares have been granted to Employee, Employee shall be eligible to be a Partner and as a Partner shall have the right to vote with other Partners for the admission of new Partners. Employee becomes a Partner whenever one-half (1/2) of all current Partners vote to grant partnership status to Employee.

Based on the Formula, whenever fifty (50) Preferred Shares have been granted to Employee, Employee shall be eligible to have "Tenure," and as such a "Tenured Member," shall have the right to vote, with other Tenured Members, for the admission of new Tenured Members. An Employee has Tenure and becomes a Tenured Member whenever two-thirds (2/3) of all current Tenured Members vote to grant Tenure to Employee, and the permission of a majority in ownership of the common stock of Mirabilis vote to allow Employee to be granted Tenure also. Tenured Members shall have such other rights and privileges as Mirabilis shall determine from time to time. The maximum number of Preferred Shares that Employee may earn shall be fifty (50).

Eligibility for Tenured Member status shall automatically be granted to any Partner who has served continuously as a Senior Regional Partner (as such position shall be further defined and established by Mirabilis) for three (3) years, regardless of the number of Preferred Shares held by such Partner.

Tenured Members shall select the boards of directors of Mirabilis' various affiliated companies that Employee shall serve on, and Employee shall thereby be entitled to receive the additional compensation listed in the Formula for such services.

Schedule "C-1"
## EMPLOYEE COMPENSATION RANKS, TITLES & COMPENSATION

*Vice President* – Officer performing primarily professional and advisory services for clients.

*Administrative Vice President* – Officer in a regional office who performs primarily management functions instead of client services.

*Senior Vice President* – Officer in charge of client selection and case assignments in a geographic region.

*Regional Partner* – Professional in charge of managing regional organization operations by directing and coordinating activities consistent with established goals, objectives and policies.

*Executive Vice President* – Officer in corporate office performing primarily management functions such as Business Development, Operations, Corporate Relations, Controller, Treasurer, Corporate/General Counsel, and Secretary.

| | Classification | Hourly Rate | Base Compensation | Director's Fee (Incentive Compensation) |
|---|---|---|---|---|
| 1. | General Analyst | 75.00 | 48,000 | |
| 2. | Senior Analyst | 80.00 | 54,000 | |
| 3. | Expert Analyst | 90.00 | 60,000 | |
| 4. | General Advisor | 100.00 | 66,000 | 25% |
| 5. | Senior Advisor | 125.00 | 72,000 | 33 1/3% |
| 6. | Expert Advisor | 150.00 | 84,000 | 33 1/3% |
| 7. | General Strategist | 200.00 | 96,000 | 40% |
| 8. | Senior Strategist | 250.00 | 120,000 | 40% |
| 9. | Expert Strategist | 300.00 | 150,000 | 40% |
| 10. | Master Strategist | 400.00 | 180,000 | 50% |
| 11. | Grand Strategist | 500.00 | 240,000 | 50% |
| 12. | Nexus Strategist | | ∞ | 50% |

1. All professional staff are also entitled to receive referral, sourcing and other fees or commissions on work referred to the firms if professional was an independent representative.

2. All professionals except General Analyst and Senior Analyst are eligible for selection by Mirabilis "Tenured Partners" as directors for which additional compensation is paid.

3. All professionals shall receive performance bonus should personal billings exceed 3 times base compensation.

4. All professionals shall receive retention consideration as set forth in retention program.

5. All professionals shall be eligible for discretionary bonuses awarded by Nexus (BOD) or designate.

Initials _____ Nexia _____    Nexia Employment Agreement – Edith Curry-Broncato    Initials _____ Employee
Page 11 of 12