# EXHIBIT 9

MVI/Palaxar - PI
334

DRAFT OF LETTER OF INTENT TO EDIE CURRY

October 31, 2006
Edith Curry-Broadhead
11916 Brookmeade Court
Glen Allen, VA 23059

Re: Confidential Separation Agreement

Dear Edie:

The purpose of this letter is to set forth our mutual understanding of our agreement ("Agreement") to the terms and conditions with respect to the termination of your position from Mirabilis Ventures, Inc.("Mirabilis") and any and all its affiliated companies. Based upon our discussions and negotiations, we would like to confirm that it is our collective agreement to do the following:

1. All right, title and interest in and to the Nexia Certification program ("Nexia Certification"), will be assigned to you. Payment for same is hereinafter described.

2. You shall be indemnified by Mirabilis Ventures, Inc. from and against any claims that may be brought against you as a result of your serving as an officer and director of the Mirabilis and/or its affiliates, which claims were covered by the D & O policy.

3. You shall retain of your stock in Presidion Corporation.

4. You shall resign effective October 31, 2006 from all board positions held in Mirabilis or any of its affiliates.

5. You shall retain the right, as an independent contractor, to participate in transactions that you may bring to the Company or its affiliates in the future, on mutually agreeable terms.

6. As compensation for the transfer to you of all right, title and interest in and to Nexia Certification, you have agreed to designate or create a new entity ("Newco") for the purpose of advancing Nexia Certification and/or for performing consulting work. This entity will execute a note payable to an entity to be formed, Newco B, as hereinafter described. The note shall be for the sum of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) with interest at prime + 2% which interest shall accrue from October 31, 2006 until paid (the "Note") It shall be pre-payable in whole or in part without penalty at any time. The Note shall be payable from the first profits earned by Newco.

7. Nexia consultants will form a separate company (Newco B) and will not have any controlling shareholders or employees with a history of fraud or other criminal activity. Newco B shall be formed for the specific purpose of working with Newco on the Nexia Certification program and related Anti-Fraud consulting. The gross revenues from consulting on this joint venture shall be shared equally between the two "Newco" entities.

- 1 -

MVI/Palaxar - PI
335

DRAFT OF LETTER OF INTENT TO EDIE CURRY

The parties agree to execute a final an complete joint venture agreement between the "Newco" entities by October 31, 2006.

8.  All obligations (other than current salary which terminates by agreement of October 15, 2006 and unpaid expenses) owed to you as of October 31, 2006, by Mirabilis, Common Paymaster or any other affiliate or subsidiary of Mirabilis pursuant to any employment or any other oral or written agreement that you have with any such entity shall be null void and of no further force or effect. Moreover, you agree to a general release in favor of all such entities as of the aforesaid October 31, 2006, date. Notwithstanding the foregoing, the obligations of this Agreement shall survive as shall the restrictions contained in the Common Paymaster Employment Agreement as to you as employee thereunder, except to the extent necessary to permit you to perform consulting services and to market and fully develop and market the Nexia Certification Program.

9.  Neither party shall disparage the other and shall agree upon a statement to be made to any third party who may inquire as to the reasons for separation. The parties shall provide each other with good references upon request.

10. The Brookmeade note from Presidion Solutions shall remain in full force and effect.

If this letter accurately sets forth our agreement, kindly execute and return the enclosed copy of this letter. Thereafter, the Newco entities can be created (or identified in the case of your entity), the Note can be drafted and our agreement can be further documented.

Sincerely,
MIRABILIS VENTURES, INC.

By: _____

Frank Hailstones, President

**CONFIRMATION AND ACCEPTANCE**

I confirm my acceptance of the terms and conditions of this letter Agreement with Nexia Strategy Corporation. Dated on this 10 day of October, 2006.

By: _____
Name: Edith Curry-Broadhead

- 2 -

MVI/Palaxar - PI
336

## ASSIGNMENT AGREEMENT

This Assignment Agreement (this "Agreement") is made as of August 1, 2006 (the "Effective Date"), by and between Mirabilis Ventures, Inc, a Nevada corporation with its principal place of business at 1111 North Orange Avenue, Suite 2000, Orlando, FL 32801 ("Assignor"), and Frank Hailstones, 734 Lake Biscayne Way, Orlando, FL 32824, Edith Curry, who resides at 11916 Brookmeade Court, Glen Allen, VA 23059, Laurie Holtz, who resides at 1826 W 23rd St. Apt 3 Miami Beach, FL 33140-4621 and Michael Dement who resides at 6222 Derby Lane, Williamsburg, VA 23185-1463 ("Assignee") (hereinafter referred to collectively as the "Parties" and individually as a "Party").

RECITALS

WHEREAS, Assignor has heretofore irrevocably transferred and assigned to Assignee all of its rights, title and interest, on a worldwide basis, including, without limitation, all intellectual property rights and moral rights, in and to certain proprietary products, patent applications and proprietary information set forth herein (excluding any trademark rights) as part of its initial and original capital contribution in Assignee, and the Parties wish to memorialize such transfer and assignment in this Agreement;

WHEREAS, Assignor desires and agrees to irrevocably assign to Assignee as of the Effective Date all of its rights, title and interest, on a worldwide basis, including, without limitation, all intellectual property rights and moral rights, in and to certain proprietary products, patent applications and proprietary information, as set forth herein, that otherwise have not been transferred and assigned to Assignee prior to the Effective Date, as well as certain trademark rights as set forth herein;

WHEREAS, except for any ownership interest already held by Assignee, Assignor is the sole owner of all rights, title and interest, including, without limitation, all intellectual property rights, in and to such proprietary products, patents, trademarks, proprietary information and proprietary business information; and, with respect to the trademarks, Assignee is a successor to a portion of the business of the Assignor to which these trademarks pertain;

WHEREAS, Assignor has agreed to irrevocably assign to Assignee all of its rights, title and interest on a worldwide basis, including, without limitation, all intellectual property rights and moral rights, in and to certain non-proprietary products set forth herein, to the full extent that Assignor has a license for such rights and subject to and contingent upon Assignor having the right and necessary consents to assign such license;

WHEREAS, to enable Assignor to continue its current use of certain proprietary products, Assignee is willing to grant to Assignor a license back to certain rights in such proprietary products as set forth herein;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

AGREEMENT

1. DEFINITIONS

For the purposes of this Agreement, the following terms will have the meanings ascribed to them as follows:

1.1 "Assigned Property" means the Proprietary Products, Proprietary Information, Third Party Products, Trademarks and Patents.

1.2 "Patents" means the patent applications set forth in Exhibit C.

1.3 "Price" means a one-time payment of one dollar (US$1).

1.4 "Proprietary Business Information" means any confidential or proprietary information, know-how, or trade secret described or comprised in or relating to the general business operations of Assignee, excluding Proprietary Information (but including, without limitation, access to the carrier minutes report manager, call costing and

payments settlement system and similar databases to the extent related to and appropriate for the operation of Assignee's business), that exists as of the Effective Date or that is subsequently provided by Assignor to Assignee at its sole discretion, and that is not in the public domain or regularly disclosed by Assignor to third parties without confidentiality restrictions.

1.5 "Proprietary Information" means any confidential or proprietary information, know-how, or trade secret described or comprised in or relating to the Assigned Property that is not in the public domain or regularly disclosed by Assignee to third parties without confidentiality restrictions.

1.6 "Proprietary Products" means the products set forth in Exhibit A, including, without limitation, all user manuals, reference manuals and other documentation and materials relating thereto; and any derivative works, foreign language versions, fixes, upgrades, updates, enhancements, new versions or previous versions thereof.

1.7 "Trademarks" means the product marks and logos set forth in Exhibit D and all rights and goodwill associated therewith.

1.8 "Third Party Products" means a mutually agreed upon subset of products selected by the Parties from among the products set forth in Exhibit B (and such additional similar products as the Parties may mutually agree), including, without limitation, any software and firmware relating thereto; all user manuals, reference manuals and other documentation and materials relating thereto; and any derivative works, foreign language versions, fixes, upgrades, updates, enhancements, new versions or previous versions thereof provided by the third-party licensor of such products to Assignor.

2. ASSIGNMENT

Assignor hereby irrevocably assigns, conveys, sells, grants and transfers and agrees to assign, convey, sell, grant and transfer to Assignee the following rights (collectively, the "Rights"):

2.1 Proprietary Products.

Subject to the terms and conditions of this Agreement, Assignor hereby irrevocably assigns, conveys, sells, grants and transfers and agrees to assign, convey, sell, grant and transfer to Assignee, its successors and assigns all of its rights, title and interest of every kind and character throughout the world in and to the Proprietary Products to the full extent of its ownership or interest therein, including, without limitation, all federal, state, foreign, statutory and common law and other rights in patents, copyrights, moral rights, trademarks, trade secrets, know-how, design rights and all other intellectual property and proprietary rights therein; all domestic and foreign intellectual property applications and registrations therefor (and all divisions, continuations, continuations-in-part, reexaminations, substitutions, reissues, extensions, and renewals of such applications and registrations, and the right to apply for any of the foregoing); all goodwill associated therewith; all rights to causes of action and remedies related thereto (including, without limitation, the right to sue for past, present or future infringement, misappropriation or violation of rights related to the foregoing); and any and all other rights and interests arising out of, in connection with or in relation to the Proprietary Products. Upon Assignee's reasonable request, Assignor will promptly take such actions, including, without limitation, the prompt execution and delivery of documents in recordable form, as may be reasonably necessary to vest, secure, perfect, protect or enforce the rights and interests of Assignee in and to the Proprietary Products.

2.2 Proprietary Information.

Subject to the terms and conditions of this Agreement, Assignor hereby irrevocably assigns, conveys, sells, grants and transfers and agrees to assign, convey, sell, grant and transfer to Assignee, its successors and assigns all of its rights, title and interest of every kind and character throughout the world, including moral rights, in and to the Proprietary Information to the full extent of its ownership or interest therein, including, without limitation, all intellectual property and proprietary rights therein, all goodwill associated therewith, all rights to causes of action and remedies related thereto (including, without limitation, the right to sue for past, present or future infringement, misappropriation or violation of rights related to the foregoing), and any and all other rights and interests arising out of, in connection with or in relation to the Proprietary Information.

2.3 Third Party Products.

Subject to the terms and conditions of this Agreement, and subject to and contingent upon Assignor obtaining any necessary and applicable third party consents, Assignor hereby irrevocably assigns, conveys, sells, grants and transfers and agrees to assign, convey, sell, grant and transfer to Assignee, its successors and assigns all rights, title and interest of every kind and character throughout the world, including moral rights, in and to the Third Party Products and any license agreements related thereto to the full extent of Assignor's rights or interest therein (if any). Upon Assignee's request, Assignor will promptly take such actions, including, without limitation, the prompt execution and delivery of documents in recordable form, as may be reasonably necessary to vest, secure, perfect, protect or enforce the rights and interests of Assignee in and to the Third Party Products and any license agreements related thereto.

2.4 Patents. Subject to the terms and conditions of this Agreement

Assignor hereby irrevocably assigns, conveys, sells, grants and transfers and agrees to assign, convey, sell, grant and transfer to Assignee, its successors and assigns all of its rights, title and interest of every kind and character throughout the world, including moral rights, in and to the Patents to the full extent of its ownership or interest therein, including, without limitation, all domestic and foreign patent applications and registrations therefore (and all patents that issue therefrom and all divisions, continuations, continuations-in-part, reexaminations, substitutions, reissues, extensions, and renewals of such applications, registrations and patents, and the right to apply for any of the foregoing); all goodwill associated therewith; all rights to causes of action and remedies related thereto (including, without limitation, the right to sue for past, present or future infringement, misappropriation or violation of rights related to the foregoing); and any and all other rights and interests arising out of, in connection with or in relation to the Patents. Upon Assignee's request, Assignor will promptly take such actions, including, without limitation, the prompt execution and delivery of documents in recordable form, as may be reasonably necessary to vest, secure, perfect, protect or enforce the rights and interests of Assignee in and to the Patents.

2.4 Trademarks.

Subject to the terms and conditions of this Agreement Assignor hereby irrevocably assigns, conveys, sells, grants and transfers and agrees to assign, convey, sell, grant and transfer to Assignee, its successors and assigns all of its rights, title and interest of every kind and character throughout the world, including moral rights, in and to the Trademarks to the full extent of its ownership or interest therein, including, without limitation, all federal, state, foreign, statutory and common law and other rights; all domestic and foreign trademark applications and registrations therefor (and all extensions and renewals of such applications and registrations, and the right to apply for any of the foregoing); all goodwill associated therewith symbolized by the Trademarks and the portion of the business of the Assignor to which the Trademarks pertain; all rights to causes of action and remedies related thereto (including, without limitation, the right to sue for past, present or future infringement, misappropriation or violation of rights related to the foregoing); and any and all other rights and interests arising out of, in connection with or in relation to the Trademarks. Upon Assignee's request, Assignor will promptly take such other actions, including, without limitation, the prompt execution and delivery of documents in recordable form, as may be reasonably necessary to vest, secure, perfect, protect or enforce the rights and interests of Assignee in and to the Trademarks.

2.5 Further Assurances For Third Party Products.

Assignor and Assignee will use their respective reasonable best efforts to obtain any consent, approval or amendment required to novate and/or assign the Third Party Products; provided, however, that except for filing and other administrative charges, Assignee shall not be obligated to pay any consideration therefor to the third party from whom such consents, approvals and amendments are requested. In the event and to the extent that Assignee and Assignor are unable to obtain any such required consent, approval or amendment, or if any attempted assignment would be ineffective or would adversely affect the rights of Assignor with respect to any Third Party Product so that Assignee would not in fact receive all the rights with respect to such Third Party Product, Assignor and Assignee will cooperate (to the extent permitted by law or the terms of any applicable agreement) in a

mutually agreeable arrangement under which Assignee would, to the extent possible and permissible under any applicable agreement, obtain the benefits and assume the obligations with respect to such Third Party Product, in accordance with this Agreement, including sub-contracting, sub-licensing, or sub-leasing to Assignee, or under which Assignor would enforce for the benefit of Assignee, with Assignee assuming Assignor's obligations, any and all rights of Assignor against a third party thereto. Assignor shall, without further consideration therefor, pay and remit to Assignee promptly all monies, rights and other considerations received in respect to Assignee's performance of such obligations and Assignee shall remit to Assignor (or pay directly) all amounts due with respect to such Third Party Products to such third parties. If and when any such consent shall be obtained or such Third Party Product shall otherwise become assignable or able to be novated, Assignor shall promptly assign and novate all of its rights and obligations thereunder to Assignee without payment of further consideration and Assignee shall, without the payment of any further consideration therefor, assume such rights and obligations and Assignor shall be relieved of any and all liability hereunder.

3. LICENSE

3.1 Subject to the terms and conditions of this Agreement, Assignee hereby grants and agrees to grant to Assignor a worldwide, royalty-free, fully paid up, perpetual, irrevocable, non-exclusive license to use the product "Nexia Certification" as identified in Exhibit B only for internal use by and for Assignor. Assignor will not assign, sublicense, resell, rent, distribute or provide service-bureau timesharing or related services with respect to the license granted in this Section 3.1, provided, however, Assignor takes such steps as are reasonably necessary to protect Assignee's rights in the Proprietary Business Information, including by providing the same protection that Assignee affords to Proprietary Business Information and by treating Proprietary Business Information as confidential information, if appropriate.

4. PAYMENT

As payment for the assignment of Rights and the license granted pursuant to Sections 2 and 3, Assignee will pay to Assignor the Price, the receipt and full satisfaction of which is hereby acknowledged by the Parties.

5. REPRESENTATIONS AND WARRANTIES

UNLESS EXPLICITLY STATED OTHERWISE IN THIS AGREEMENT, THE ASSIGNED PROPERTY, PRODUCTS IN EXHIBIT E, AND PROPRIETARY BUSINESS INFORMATION ARE PROVIDED "AS IS" AND THE PARTIES HEREBY DISCLAIM ALL WARRANTIES OF ANY KIND WITH RESPECT TO ANY OF THE ASSIGNED PROPERTY, PRODUCTS IN EXHIBIT E OR PROPRIETARY BUSINESS INFORMATION, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

6. LIMITATION OF LIABILITY

IN NO EVENT WILL EITHER PARTY BE LIABLE FOR ANY CONSEQUENTIAL, INCIDENTAL, SPECIAL, INDIRECT, EXEMPLARY OR PUNITIVE DAMAGES, OR DAMAGES FOR ANY LOSS OF PROFITS, REVENUE OR BUSINESS, EVEN IF SUCH PARTY IS NOTIFIED OF THE POSSIBILITY OF SUCH DAMAGES. The Parties acknowledge that the limitation of liability in this Section 6 and the allocation of risk that it implements is an essential element of the bargain agreed to by the Parties, without which the Parties would not have entered into this Agreement.

7. GENERAL

7.1 This Agreement, and all disputes, claims or controversies arising under or relating to this Agreement or the breach, termination or validity hereof, or any transaction contemplated hereby shall first be submitted to non-binding mediation prior to litigation, the agreed venue for mediation being in Orlando, Florida.

7.2 If either Party commences any action or proceeding against the other Party to enforce this Agreement or any of such Party's rights hereunder, the prevailing Party will be entitled to its reasonable expenses related to such action or proceeding, including reasonable attorneys' and expert fees.

7.3 No delay, failure or waiver by either Party to exercise any right or remedy under this Agreement, and no partial or single exercise, will operate to limit, preclude, cancel, waive or otherwise affect such right or remedy, nor will any single or partial exercise limit, preclude, impair or waive any further exercise of such right or remedy or the exercise of any other right or remedy.

7.4 If any provision of this Agreement is determined to be invalid or unenforceable, the validity or enforceability of the other provisions or of this Agreement as a whole will not be affected; and, in such event, such provision will be changed and interpreted so as best to accomplish the objectives of such provision within the limits of applicable law or applicable court decision.

7.5 Except as provided in Section 7.1, this Agreement, including any exhibit(s) hereto which are incorporated herein by this reference, serves to document formally the entire understanding between the Parties relating to the subject matter hereof, and supersedes and replaces any prior or contemporaneous agreements, negotiations or understandings (whether oral or written), relating generally to the same subject matter. No amendment or modification of any provision of this Agreement will be effective unless in writing and signed by a duly authorized signatory of the Party against which enforcement of the amendment or modification is sought.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives as of the Effective Date.

Mirabilis Ventures, Inc.
By: /s/ Frank Hailstones
President

Frank Hailstones
By: /s/ Frank Hailstones
Individual

Edith L. Curry
By: /s/ Edith L. Curry
Individual

Laurie Holtz
By: /s/ Laurie Holtz
Individual

Michael Dement
By: /s/ Michael Dement
Individual

## Exhibit A

Any communication of or relating to the patent application "Methods of Monitoring Financial Behavioral Activity of an Individual Associated with an Organization," working title, "Nexia Certification" including but not limited to flow-charts, presentations, white papers, research materials, emails, notes, training materials, business plans, work papers, professional communications, etc.

Exhibit B

Any trademarks of or relating to "Methods of Monitoring Financial Behavioral Activity of an Individual Associated with an Organization" working title "Nexia Certification"

Exhibit C

Methods of Monitoring Financial Behavioral Activity of an Individual Associated with an Organization – working title "Nexia Certification"

Exhibit D

Methods of Monitoring Financial Behavioral Activity of an Individual Associated with an Organization – working title "Nexia Certification"