# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

MIRABILIS VENTURES, INC. and )
NEXIA STRATEGY CORPORATION, )
                 )
         Plaintiffs, )
                 )     CASE NO.:  6:07-CV-1788-ORL-28-KRS
-vs-               )
                 )
PALAXAR GROUP, LLC; )
PALAXAR HOLDINGS, LLC; )
FRANK HAILSTONES; EDITH )
CURRY a/k/a EDITH BROADHEAD; )
and FICTITIOUS DEFENDANT 1; )
FICTITIOUS DEFENDANT 2; )
FICTITIOUS DEFENDANT 3; )
FICTITIOUS DEFENDANT 4; )
FICTITIOUS DEFENDANT 5; )
FICTITIOUS DEFENDANT 6; )
FICTITIOUS DEFENDANT 7; )
FICTITIOUS DEFENDANT 8 )
                 )
         Defendants. )
                 )

## AFFIDAVIT OF TOM ALLATT BROADHEAD

STATE OF  Virginia     }
                       }     ss:
COUNTY OF  Henrico  }

Tom Allatt Broadhead, being duly sworn, deposes and says:

         1.     I am over the age of 21 years and competent to make the statements contained herein.

         2.     I was employed by Common Paymaster Corporation ("CPC") or its predecessor from approximately August 15, 2005 through January 31, 2007. Upon



**No Personal
Knowledge**

information and belief, CPC was a wholly owned subsidiary of Mirabilis Ventures, Inc
("MVI").

**No Personal
Knowledge**

3.      Upon information and belief, Frank Amodeo was the primary
investor in MVI and sole Class A shareholder of MVI.  Upon further information and
belief, and according to the Shareholder's Agreement provided to me by Scott Goldberg,
attorney for Mirabilis Ventures, Inc., Class A shareholders had the power to override or
veto decisions made by the Board of MVI.  Additionally, while Amodeo did not officially
hold any MVI title or serve on the MVI Board, in my experience as a Board member of
MVI, no significant decisions were made at MVI without his express approval and
direction.  In fact, during a teleconference that occurred on February 28, 2006, Amodeo
told all of the employees at Mirabilis that he controlled Mirabilis and that all employees    **Hearsay**
were to follow his directions or face serious consequences.

4.      During the time I was employed by CPC, I was assigned to work
for various entities including MVI.   I was also assigned to work for Titanium
Technologies, Inc. and AQMI Strategies, Inc., both of which were not affiliates or
subsidiaries of MVI.  Upon information and belief Titanium Technologies, Inc. and
AQMI Strategies, Inc. were wholly owned by Frank Amodeo.  Upon information and
belief, all of my work assignments were all made at the ultimate direction or approval of
Frank Amodeo.                                                              **No Personal
                                                                          Knowledge**

5.      During the time I was employed by CPC, I held the title of
Secretary and General Counsel of MVI from approximately October 1, 2005 through
January 25, 2006.

6.      During the time I was employed by CPC, I was also a member of the Board of Directors of MVI from March 23, 2006 through December 31, 2006.

7.      In late 2005 and early 2006, Frank Amodeo told me that he wanted to have MVI set up operations in Virginia to include a call center for a Professional Employment Organization ("PEO") and PEO operations center. He also told me that he wanted to set up a separate group of companies in Virginia that would not be owned or controlled by MVI. He further told me that he wanted me to be the manager of the Richmond Region.

**Hearsay**

8.      I participated in a meeting with an economic development group in Virginia where MVI was offered over $4,000,000.00 in economic incentives to locate its operations to Virginia. I also helped negotiate a long term lease on a building that would be suitable for such operations.

9.      In my capacity as Regional Manager, I assisted with the acquisition by MVI of Absolute Packaging Engineering Services, LLC, a local Richmond company. I also helped coordinate the attempted opening of the call center/operations center in Richmond for MVI. All efforts to open the call center were stymied by the fact that MVI and Frank Amodeo kept delaying any decision about what should actually be located in Virginia.

10.     Because Edith Curry Broadhead is my wife, I became generally aware of the processes and program associated with the Nexia Certification Program. I was also aware that she had worked several years prior to here employment CPC or MVI and had developed an "Illegal Sources and Uses of Funds Algorithm" that was the basis

of the development of the Nexia Certification product. However, at no time while I was employed by CPC did I work directly on the Nexia Certification or have any billable time attributable to Nexia Certification.

11.     On or about March 1, 2006, each person working in Richmond was assigned by CPC to a specific company and instructed to work only on the assigned tasks. Most of my time was devoted to developing the Richmond region and working on developing a guaranteed purchase program for MVI's business broker network. Specifically, my assigned tasks did not include working on the Nexia Certification Program.

12.     In early September 2006, I was informed that MVI, at the direction          **Hearsay**
of Frank Amodeo, would be closing operations in various sites including Richmond. After that time, I remained employed by CPC assigned to Titanium Technologies, Inc. and/or AQMI Strategies, Inc., until January 31, 2007 and worked on further developing the Guaranteed Purchase Program.

13.     I have never been an owner or had any ownership interest in Palaxar Holdings, LLC or Palaxar Group, LLC or the patent rights held by Edith Curry Broadhead.

FURTHER AFFIANT SAYETH NAUGHT.

Tom Allatt Broadhead

On this ___ /4ᵗʰ __ day of January 2008, before me personally appeared Tom Allatt Broadhead, known to me to be the person executing the foregoing, and stated that foregoing is true and correct to the best of his knowledge, information, and belief.

_____
Notary Public

DAVID A. PASCUCCI
Notary Public
Commonwealth of Virginia
7032055
My Commission Expires Aug 31, 2010