# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

| | |
|---|---|
| MIRABILIS VENTURES, INC. and<br>NEXIA STRATEGY CORPORATION,<br><br>Plaintiffs,<br>-vs-<br><br>PALAXAR GROUP, LLC;<br>PALAXAR HOLDINGS, LLC;<br>FRANK HAILSTONES; EDITH CURRY<br>a/k/a EDITH BROADHEAD; and<br>FICTITIOUS DEFENDANTS 1 through 8,<br><br>Defendants,<br><br>vs.<br><br>MIRABILIS VENTURES, INC.;<br><br>NEXIA STRATEGY CORPORATION;<br><br>and THIRD PARTY DEFENDANTS:<br><br>AQMI STRATEGY CORPORATION;<br>2875 SOUTH ORANGE AVENUE<br>SUITE 500<br>ORLANDO, FL 32806<br><br>Registered Agent:<br>HENDRY, STONER,  CALANDRINO, &<br>BROWN, PA<br>20 NORTH ORANGE AVENUE, SUITE<br>600<br>ORLANDO, FL 32801<br><br>WELLINGTON CAPITAL GROUP, INC.<br>1969 SOUTH ALAFAYA TR.<br>SUITE 236<br>ORLANDO, FL 32828<br><br>Registered Agent:<br>CORPORATE CREATIONS NETWORK, | Case No.:  6:07-CV-1788-ORL-28-GJK |

1

INC.                                          )
11380 PROSPERITY FARMS ROAD                   )
SUITE 221                                     )
PALM BEACH GARDENS, FL 33410                  )
                                              )
YANIV AMAR                                    )
3475  MYSTIC POINT DRIVE, TH # 10             )
AVENTURA, FL 33180                            )
                                              )
FRANK AMODEO                                  )
614 LAKE AVENUE,                              )
ORLANDO, FLORIDA 32801                        )
                                              )
AARON BATES                                   )
3660 MAQUIRE BOULEVARD                        )
SUITE 102                                     )
ORLANDO, FLORIDA   32803                      )
                                              )
MATTHEW MOKWA                                 )
3660 MAQUIRE BOULEVARD                        )
SUITE 102                                     )
ORLANDO, FLORIDA   32803                      )
                                              )
ROBERT POLLACK                                )
8767 THE ESPLANADE #36                        )
ORLANDO, FL 32836                             )
                                              )
JAMES SADRIANNA                               )
10025 CHATHAM OAKS COURT                      )
ORLANDO, FL 32836                             )
                                              )
                                              )
_____)

## JOINT ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' FIRST AMENDED COMPLAINT, COUNTERCLAIMS, AND THIRD PARTY CLAIMS  OF DEFENDANTS EDITH CURRY a/k/a EDITH BROADHEAD, FRANK HAILSTONES, PALAXAR GROUP, LLC, and PALAXAR HOLDINGS, LLC

Defendants   Edith   Curry   a/k/a   Edith   Broadhead   ("Curry"),   Frank   Hailstones,

("Hailstones")  Palaxar  Group,  LLC  ("Palaxar  Group"),  and  Palaxar  Holdings,  LLC  ("Palaxar

Holdings"),  by  and  through  their  undersigned  attorneys,  answer  Plaintiffs'  First  Amended

Complaint ("Complaint") as follows:

2

1.      Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings admit the allegation set forth in Paragraph 1 of the Complaint.

2.      Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings admit the allegation set forth in Paragraph 2 of the Complaint.

3.      Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny that Palaxar Group is a Virginia limited liability company but admit the remaining allegation set forth in Paragraph 3 of the Complaint.

4.      Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings admit the allegations set forth in the first two sentences of Paragraph 4 of the Complaint and deny the allegation set forth in the last sentence of Paragraph 4 of the Complaint

5.      Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings admit the allegation set forth in the first two sentences of Paragraph 5 of the Complaint and deny the allegation set forth in the last sentence of Paragraph 5 of the Complaint.

6.      Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations set forth in paragraph 6 of the Complaint.

7.      Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings admit the jurisdictional allegation contained in paragraph 7 of the Complaint.

8.      Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings the jurisdictional allegations contained in paragraph 8 of the Complaint.

9.      Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings admit the allegation of venue set forth in paragraph 9 of the Complaint.

10.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings admit the allegation set forth in paragraph 10 of the Complaint.

3

11.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings are without knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 11 of the Complaint.

12.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegation set forth in paragraph 12 of the Complaint.

13.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings are without knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 13 of the Complaint.

14.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings admit that during the relevant time period, Nexia was a wholly owned subsidiary of Mirabilis and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegation set forth in paragraph 14 of the Complaint.

15.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in the first and second sentences and admit the remaining allegations contained in paragraph 15 of the Complaint.

16.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 16 of the Complaint.

17.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 17 of the Complaint.

18      Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 18 of the Complaint.

19.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 19 of the Complaint.

20.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 20 of the Complaint.

21.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 21 of the Complaint.

22.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings answer that any relevant employment contracts speak for themselves and deny the remaining allegations of paragraph 22 of the Complaint.

23.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings answer that any relevant employment contracts speak for themselves and deny the remaining allegations of paragraph 23 of the Complaint.

23.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 23 of the Complaint.

24.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 24 of the Complaint.

25.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings admit that Curry and Hailstones, along with Laurie Holtz and Michael Dement, were named on the cited patents but deny the remaining allegations contained in Paragraph 25 of the Complaint.

26.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 26 of the Complaint.

27.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 27 of the Complaint.

28.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 28 of the Complaint.

5

29.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 29 of the Complaint.

30.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegation contained in the first sentence and admit the allegation contained in the second sentence of Paragraph 30 of the Complaint.

31.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 31 of the Complaint.

32.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings admit that Palaxar Holdings is offering for sale a patent-pending anti-fraud solution but deny the remaining allegations contained in Paragraph 32 of the Complaint.

33.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 33 of the Complaint.

34.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 34 of the Complaint.

35.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings admit that Palaxar Holdings markets a patent-pending anti-fraud solution.  Defendants further admit that they participated in a conference located in Scottsdale, Arizona from October 14 through 18, 2007 entitled the "58th Audit Directors & Managers Symposium," but deny all the remaining allegations contained in Paragraph 35 of the Complaint.

36.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 36 of the Complaint.

37.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings restate their answers to paragraphs 1 through 36 as if fully set forth herein.

CLE - 1051366.1

38.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings admit that on June 17, 2005, Curry signed an employment agreement with Nexia and deny the remaining allegations of paragraph 38 of the Complaint.

39.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 39 of the Complaint.

40.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 40 of the Complaint.

41.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 41 of the Complaint.

42.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings restate their answers to paragraphs 1 through 41 as if fully set forth herein.

43.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 43 of the Complaint to the extent that Hailstones' and Curry's appointments to and service in their positions as Directors and Officers of Mirabilis and Nexia were not lawful and in accordance with the bylaws of the companies, since the Class A shareholder could unilaterally override any decision made by the Board.

44.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 44 of the Complaint.

45.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 45 of the Complaint.

46.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 46 of the Complaint.

7

47. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings restate their answers to paragraphs 1 through 46 as if fully set forth herein.

48. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 48 of the Complaint.

49. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 49 of the Complaint.

50. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 50 of the Complaint.

51. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 51 of the Complaint.

52. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings restate their answers to paragraphs 1 through 51 as if fully set forth herein.

53. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 53 of the Complaint.

54. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 54 of the Complaint.

55. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 55 of the Complaint.

56. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 56 of the Complaint.

57. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 57 of the Complaint.

58.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 58 of the Complaint.

59.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 59 of the Complaint.

60.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings restate their answers to paragraphs 1 through 59 as if fully set forth herein.

61.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 61 of the Complaint.

62.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 62 of the Complaint.

63.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 63 of the Complaint.

64.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings restate their answers to paragraphs 1 through 63 as if fully set forth herein.

65.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 65 of the Complaint.

66.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 66 of the Complaint.

67.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 67 of the Complaint.

68.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 68 of the Complaint.  *See* <u>Order</u> of Judge Antoon (Doc. 48) dated January 30, 2008 at p. 3.

69.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 69 of the Complaint.

70.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings admit that Plaintiffs sought injunctive relief pursuant to Fla. Stat. § 688.003, but assert that said injunctive relief was denied.  *See* <u>Order</u> of Judge Antoon (Doc. 48) dated January 30, 2008 at p. 3.

71.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 71 of the Complaint.

72.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings restate their answers to paragraphs 1 through 71 as if fully set forth herein.

73.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 73 of the Complaint.

74      Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 74 of the Complaint.

75.     Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 75 of the Complaint.

## **<u>AFFIRMATIVE DEFENSES</u>**

### <u>FIRST AFFIRMATIVE DEFENSE</u>

Plaintiffs' claims are barred by the two written contracts which govern the subject matter of the Complaint.  Pursuant to the August 1, 2006, Assignment Agreement, attached hereto as Exhibit A and incorporated by reference herein, plaintiffs assigned all of their right, title and interest in a patent-pending anti-fraud solution previously referred to by the working title Nexia Certification to Curry, Hailstones, and two other individuals.  Plaintiffs' assignment of all their right, title and interest in so-called Nexia Certification was reiterated in the Confidential

10

Separation Agreement entered into on October 20, 2006, between Mirabilis and Curry, attached hereto as Exhibit B and incorporated by reference herein.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of accord and satisfaction, because any right, title or interest plaintiffs ever may have had to so-called Nexia Certification was voluntarily contracted away in the Assignment Agreement (Exhibit A) and the Confidential Separation Agreement (Exhibit B) in exchange for valuable consideration.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of estoppel, because any right, title or interest plaintiffs ever may have had to so-called Nexia Certification was contracted away in the Assignment Agreement (Exhibit A) and the Confidential Separation Agreement (Exhibit B).

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are waived, because any right, title or interest plaintiffs ever may have had to so-called Nexia Certification was contracted away in the Assignment Agreement (Exhibit A) and the Confidential Separation Agreement (Exhibit B).

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against Curry are barred by the indemnification clause contained in the Confidential Separation Agreement (Exhibit B).

## SIXTH AFFIRMATIVE DEFENSE

CLE - 1051366.1

Plaintiffs' claims against are barred by operation of federal patent law and by Florida law requiring an absolutely clear assignment of rights in order to establish Plaintiffs' entitlement to the intellectual property at issue.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against Curry and Hailstones are barred by the provision for waiver of damages against officers and directors contained in Mirabilis' Articles of Incorporation.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against Curry and Hailstones are barred by the ratification by Mirabilis, the sole shareholder of Nexia, of all actions the Board of Directors and Officers of Nexia from the date of inception through December 13, 2006 pursuant to the Written Action of the Shareholders of Nexia Strategy Corporation dated December 13, 2006.

## DEFENDANTS' COUNTERCLAIMS AND THIRD PARTY CLAIMS

### THE PARTIES

1.  Counterclaim and Third Party Plaintiff Palaxar Holdings, LLC is a Virginia limited liability company with its principal place of business in Henrico County, Virginia.

2.  Counterclaim and Third Party Plaintiff Edith L. Curry is a resident and citizen of Henrico County, Virginia.

3.  Counterclaim and Third Plaintiff Frank Hailstones is a resident and citizen of the United Kingdom.

4.  Counterclaim Defendant Mirabilis Ventures, Inc. is a corporation organized under the laws of the State of Nevada with its principal place of business in Orange County, Florida.

CLE - 1051366.1

5.  Counterclaim Defendant Nexia Strategy Corporation is a corporation organized under the laws of the State of Florida with its principal place of business in Orange County, Florida.

6.  Third Party Defendant AQMI Strategy Corporation is a corporation organized under the laws of the State of Florida with its principal place of business in Orange County, Florida which, upon information and belief, is wholly-owned by Third Party Defendant Frank Amodeo.

7.  Third Party Defendant Wellington Capital Group, Inc. is a corporation organized under the laws of the State of Nevada with its principal place of business in Orange County, Florida, and upon information and belief, is wholly-owned by Counterclaim Defendant Frank Amodeo.

8.  Third Party Defendant Yaniv Amar is an individual who, upon information and belief, is a resident and citizen of Miami-Dade County, Florida, and at times relevant to this action was an executive at Mirabilis and/or one of its affiliate companies.

9.  Third Party Defendant Frank Amodeo is an individual who, upon information and belief, is a resident and citizen of Orange County, Florida.

10. Third Party Defendant Aaron Bates is an individual who, upon information and belief, is a resident and citizen of Orange County, Florida, was formerly counsel to Mirabilis and/or one of its affiliate companies and is presently counsel to Plaintiffs in this case.

11. Third Party Defendant Matthew Mokwa is an individual who, upon information and belief, is a resident and citizen of Orange County, Florida, was formerly counsel to Mirabilis and/or one of its affiliate companies and is presently counsel to the Plaintiffs in this case.

13

12. Third Party Defendant Robert Pollock is an individual who, upon information and belief, is a resident and citizen of Orange County, Florida and at times relevant to this action was an executive at Mirabilis and/or one of its affiliate companies.

13. Third Party Defendant James V. Sadrianna is an individual who, upon information and belief, is a resident and citizen of Orange County, Florida and at times relevant to this action was an executive at Mirabilis and/or one of its affiliate companies.

<u>ALLEGATIONS RELEVANT TO ALL CLAIMS</u>

14. Counterclaim Plaintiff Curry joined Nexia Strategy Corporation ("Nexia") on June 17, 2005, as a Master Strategist with the title of Senior Regional Office Manager, and was employed by Nexia until October 2006.

15. Counterclaim Plaintiff Hailstones joined Mirabilis Ventures, Inc. on October 3, 2005, when Mirabilis took a 25% stake in Hailstones' company Axena, Inc., at which time Frank Amodeo committed that Mirabilis would pay all further expenses of Axena.

16. Mirabilis was controlled by Frank Amodeo.  Amodeo was the sole individual permitted to make significant business decisions for Mirabilis, Nexia, Counterclaim Defendants AQMI Strategies, and Wellington Capital during the relevant time period, and was the only individual with the authority to approve the payment of invoices or commit to a transaction involving a debt on the part of any of the entities involved.

17. Frank Amodeo was the sole Class A (Black Stock) shareholder of Mirabilis Ventures and the only shareholder with voting rights.  Class A shareholders, per the Mirabilis Shareholder

14

Agreement 'shall have the ability to veto any of any decision made by the other classes of shareholders"

18. Frank Amodeo is the sole owner and shareholder of AQMI.

19. According to the December 13, 2006 Nexia Strategy Written Action of the Shareholders minutes, "from April 20, 2005 thorough December 13, 2006, Frank Amodeo was listed as the sole shareholder and sole director of Nexia Strategy Corporation."

20. Frank Amodeo, with the assistance and knowing complicity of other Third Party Defendants, changed the titles and operational responsibilities even of senior executives, including Hailstones and Curry, without their prior knowledge and consent, without change in employment documentation, job descriptions, or terms and conditions.

21. Frank Amodeo is the sole member of Wellington Capital, Inc. which is successor in interest to Presidion Solutions, Inc. ("PSI").

### COUNT 1: BREACH OF CONTRACT / CURRY VS. WELLINGTON CAPITAL / (January 2005 Agreement)

22. Counterclaim Plaintiffs restate the allegations in Paragraphs 1 through 21 as if fully set forth herein.

23. Amodeo negotiated a fee arrangement with Curry for work she had performed for PSI pursuant to which Curry, through Brookmeade Group LLC, of which Curry was the controlling member, was to receive $2,000,000 worth of stock in Presidion Corporation, then parent company of PSI, and a $500,000 promissory note from PSI. (A true and correct copy

of the PSI Secured Promissory Note is attached hereto at Exhibit C). The Secured Promissory Note was executed by the President and CEO of PSI on January 26, 2005.

24. Pursuant to the terms of the Secured Promissory Note, PSI was to remit to Curry $20,833.34 per month for a period of twenty-four months. PSI paid on the note for a period of five months, for a total amount of $104,166.70, and has never paid further, leaving a balance of $395,833.30 unpaid.

25. On April 15, 2005, Brookmeade was issued what was represented to be $2,000,000 worth of stock in Presidion Corporation, the publicly traded company. In fact, the stock—on the date it was issued to Brookmeade—was worth less than 10% of that amount. The stock is presently worthless.

26. Wellington Capital, which purchased PSI for $500,000, and is the successor-in-interest to PSI, is responsible for the remaining debt due to Brookmeade Solutions and Curry in the amount of $395,833.30 based on the Secured Promissory Note, as well as in the amount of $1,800,000 based on the promise of $2,000,000 worth of stock in PSI.

27. One of the provisions of the Secured Promissory Note is that the Note would be entirely due and payable upon the agreement to transfer significant ownership in the Maker to another party. That condition occurred as soon as Wellington became the owner of PSI. As soon as Wellington Capital purchased PSI, the debt to Curry was due and owing. To date, the debt has not been paid, which constitutes a further material breach of the contract.

28. Curry has suffered damages in the amount of not less than $2,195,833.30, plus applicable interest, on account of the breach of Curry's January 2005 agreement with PSI.

16

<u>COUNT 2: FRAUD IN THE INDUCEMENT / CURRY VS. AMODEO, MIRABILIS, NEXIA,</u>
<u>POLLOCK, AND SADRIANNA (Nexia Employment Agreement)</u>

29. Counterclaim Plaintiffs restate the allegations in Paragraphs 1 through 28 as if fully set forth

   herein.

30. At the same time that payments ceased on the January 2005 Secured Promissory Note, Curry

   approached Amodeo in search of a resolution.

31. On June 17, 2005, in reliance on a number of promises by Amodeo and Robert Pollock,

   Curry signed a written employment agreement with Nexia.  The Employment Agreement

   was countersigned for Nexia by James Sadrianna, who, upon information and belief, was

   aware of and in agreement with Amodeo and Nexia that the promises made to Curry could

   not be honored.

32. Sadrianna made representations to Curry, which upon information and belief, he knew to be

   false, that—as an attorney and CPA—in which he assured her that the promises made to her

   by Mirabilis and Amodeo would be kept.

33. Curry signed her written contract with Nexia in part based by a written assurance from

   Pollock that she would be "empowered to run her own business," a representation that was

   patently false.

34. Curry signed her written contract with Nexia in part based on false representations by Frank

   Amodeo, Mirabilis, and Nexia that Nexia/Mirabilis planned to open an accounting operations

center for all for Mirabilis and Nexia's Professional Employee Operations ("PEOs")[1] in Richmond, Virginia, which Curry would manage.

35. Curry signed her written employment agreement with Nexia in part based on the false assurances of James Sadrianna that Mirabilis' and Nexia's promises would be fulfilled.

36. Curry immediately began preparing a business plan for the planned new operation. Curry met with a number of public officials in Virginia, including the governor, three cabinet members, the Virginia Chamber of Commerce, the Virginia Economic Development Commission, The Richmond Times Dispatch, Senator George Allen, and many others in her efforts to establish the Richmond facility.

37. Frank Amodeo pledged to Curry that he was also beginning to acquire manufacturing domains and manufacturing businesses in Richmond which would be under the direction of the Richmond facility.

38. On or about May 3, 2006, the staff at the planned Richmond facility repeatedly notified the Mirabilis staff that the Richmond facility had no telephones or computers.

39. In addition the Richmond staff was tasked with selling PEO's in Virginia, although Mirabilis-affiliated PEO's were not licensed to operate in Virginia, despite Amodeo's assurances to the contrary.

---

[1] A PEO is a Professional Employment Organization, sometimes referred to as an Employee Leasing Company.

40. On June 5, 2006, Curry sent an email to Mirabilis asking the status of the manufacturing domains.  She was informed that Frank Amodeo had moved all manufacturing domains to his personal control.

38. Upon information and belief, the manufacturing domains were moved into Amodeo's personal control with the agreement and participation of James Sadrianna, and Robert Pollock.

39. None of the commitments Frank Amodeo or Robert Pollock made to Curry concerning the Richmond operation were fulfilled.

41. Frank Amodeo, Nexia, Mirabilis, Pollock, and Sadrianna misrepresented material facts which they knew or should have known to be false in an effort to induce Curry to enter into her employment contract and to continue her employment at Nexia.

42. Frank Amodeo, Nexia, Mirabilis, Sadrianna, and Pollock intended that Curry rely on their misrepresentations in order to induce her to accept and continue her employment with Nexia.

43. Curry has suffered damages as a result of the fraudulent inducement of her entering into the employment contract with Nexia, in an amount to be determined at trial, including forgone opportunities, lost profits, and damage to her reputation in her home state of Virginia as a result of her having been fraudulently induced to enter into the Employment Agreement with Nexia.

19

COUNT 3: BREACH OF SEPARATION AGREEMENT / CURRY VS. MIRABILIS AND
NEXIA

44. Counterclaim Plaintiffs restate the allegations in Paragraphs 1 through 42 as if fully set forth
    herein.

45. By early September 2006, it was evident that any association Curry had with Mirabilis and/or
    Nexia would be terminated.

46. Between September 8 and October 31, 2006, literally scores of emails illustrate and
    illuminate the process of negotiation that led to the Confidential Separation Agreement
    between Nexia, Mirabilis, and Curry (Exhibit B).   Multiple references to meetings and
    discussions with Frank Amodeo indicate that he was fully aware of the progress of the
    negotiations and participated in them.

47. On October 20, 2006, Curry signed the Draft Letter of Intent that iterated the terms of
    Curry's separation from Mirabilis and all its affiliate companies effective October 31, 2006.
    (Exhibit B).

48. The letter constitutes a valid contract.

49. The letter assigned all right, title, and interest in the so-called "Nexia Certification" to Curry,
    an assignment for which Curry gave significant consideration.

50. Moreover, the agreement states clearly that Mirabilis will indemnify Curry from and against
    any claims that may be brought against her as a result of Curry's serving as an officer and
    director of Mirabilis and/or its affiliates.  (See id., ¶2)  The agreement did not exclude claims
    by Mirabilis or Nexia.  Accordingly, Mirabilis and Nexia have agreed to indemnify Curry for

20

their own claims against her.  Because to date they have failed to do so, Mirabilis and Nexia have materially breached their contract with Curry.

51. The agreement commits that "neither party shall disparage the other and [the parties] shall agree upon a statement to be made to any third party who may inquire as to the reasons for separation."  Mirabilis and Nexia have disparaged Curry by filing their Amended Complaint and by making other false and disparaging statements, including press releases and oral statements insinuating that Curry has absconded with cash assets of the Mirabilis companies, and in its means of service of the Complaint on Curry,. Each of these disparaging statements constitutes a material breach of the separation agreement.

52. The letter agreement provided that Nexia would accomplish certain tasks that would allow for Curry to work with Nexia in a joint venture to launch the anti-fraud solution.  Nexia has accomplished none of those tasks, which constitutes a material breach of Curry's separation agreement.

53. The letter agreement provided that the Brookmeade agreement (of January 2005) would remain in full force and effect.  Nexia and Mirabilis' continued failure to honor the 2005 Brookmeade agreement is a material breach of Curry's separation agreement.

54. Curry has suffered severe monetary damages as a result of Mirabilis and Nexia's breach of her separation agreement in an amount to be determined at trial, including but not limited to lost opportunity, lost profits, and the expenditure of attorneys' fees.

COUNT 4: BREACH OF TERMINATION AGREEMENT / HAILSTONES V. MIRABILIS

55. Counterclaim Plaintiffs restate the allegations in Paragraphs 1 through 54 as if fully set forth herein.

56. Hailstones was constructively terminated.

57. Following a discussion at the Mirabilis board meeting on December 28, 2006 Hailstones prepared and provided to Mark Bernet, Mirabilis' general counsel, a one-page list of questions to be asked by Bernet of Frank Amodeo regarding the tax status of the Mirabilis PEO, financial transactions and liabilities of Mirabilis, and confirmation that the financial control of Mirabilis would pass to the board effective January 1, 2007. These questions were never answered.  Indeed Amodeo's actions in early January 2007 confirmed that he would not relinquish his control of Mirabilis.

58. On or about January 2, 2007, Fernando Simo informed Hailstones that he had been advised by Marty Flynn of Common Paymaster that Hailstones' salary was to be reduced from $180,000 per annum to nothing, and that Hailstones was to be retained only as a Director of Mirabilis at the then agreed director's fees of $72,000 per annum.  Although this was subsequently revoked, on January 8, 2007, the new Mirabilis organizational structure was announced.  Hailstones was offered a second-tier position at Mirabilis as Chief Strategist.

59. On or about January 4 or 5, 2007, without the knowledge, participation or consent of Hailstones, most of the Nexia Strategy staff were terminated or reallocated to Amodeo-controlled companies.  Nexia was effectively rendered inactive.

60. Thereafter, Hailstones began negotiating his Termination and Release ("Termination Agreement"). The Termination Agreement was entered into between Mirabilis and Hailstones on January 31, 2007, and is a valid and enforceable contract. (A true and correct copy is attached hereto as Exhibit D).

61. In the Termination Agreement, Mirabilis promised Hailstones severance pay in the amount of three months of his annual compensation.

62. The severance was never paid, constituting a material breach of the contract.

63. In the Termination Agreement, Mirabilis agreed to continue Hailstones' health insurance and other benefits through April 30, 2007.

64. Hailstones' health insurance and other benefits were cancelled soon after his Termination Agreement was executed, constituting a material breach of the contract.

65. In the Termination Agreement, Mirabilis promised that it would return to Hailstones the shell corporation that would be left after Axena was liquidated. This was critical since Hailstones' visa—which gave him the right to work in the United States—was associated with his participation in Axena.

66. Mirabilis has deliberately and intentionally prevented the liquidation of Axena, has failed to return the shell corporation to Hailstones, and thus has held hostage Hailstones' visa, preventing him from being employed in the United States and requiring that he return to the United Kingdom in order to comply with federal immigration laws. These actions constitute a material breach of the termination agreement.

67. Because of Mirabilis' failure to abide by the terms of Hailstones' Termination Agreement, Hailstones has been severely damaged, in an amount to be proven at trial.

## COUNT 5: CIVIL CONSPIRACY TO COMMIT SLANDER/ CURRY, HAILSTONES, AND PALAXAR V. NEXIA, MIRABILIS, AMODEO, AMAR, BATES, AND MOKWA

68. Counterclaim Plaintiffs restate the allegations in Paragraphs 1 through 67 as if fully set forth herein.

69. On or about October 15, 2007, and at various times prior thereto, Defendants Nexia, Mirabilis, Amodeo, Bates (counsel to Plaintiffs in this lawsuit and former Mirabilis in-house attorney), Amar (a former Mirabilis employee) and Mokwa (who was either a current or former attorney of Mirabilis, later to be hired by Goldberg & Bates, counsel to Plaintiffs in the this lawsuit) met, joined together, planned, and conspired to slander Curry, Hailstones and Palaxar Holdings, Inc.

70. Upon information and belief, Defendants Nexia, Mirabilis, Amodeo, Bates, Amar and Mokwa agreed or understood that the purpose of their meetings and agreements as described below were unlawful and would result in injury to Plaintiffs, and agreed and understood that each would act in concert with the others to achieve this purpose.

71. On October 15, 2007, Mirabilis and Nexia served Curry and Hailstones personally with the complaint that initiated this litigation in Scottsdale, Arizona, at the "58th Audit Directors & Managers Symposium," which was attended by some 50 delegates including numerous professional acquaintances of both Hailstones and Curry.  The gravamen of the complaint is that Curry and Hailstones purportedly took with them certain intellectual property when they left the employ of Mirabilis and Nexia Strategy.

24

72. Curry had left the employ of Nexia Strategy approximately one (1) year prior to the time the complaint was served on her.   Hailstones left the employ of Mirabilis approximately nine (9) months prior to the time the complaint was served.   At no time prior to the date that the complaint was served on them did anyone representing either Mirabilis or Nexia ever express any dissatisfaction about the so-called "Nexia Certification" and no demand was ever made for them to return it.

73. Mirabilis, Nexia, Amodeo, Amar, Bates, and Mokwa knew that Curry and Hailstones were scheduled to present at the conference on Sunday, October 14, 2007.

74. Mirabilis, Nexia, Amodeo, Amar, Bates, and Mokwa did not contact the conference organizers to attempt to prevent Curry and Hailstones from presenting at the conference, despite the fact that they were allegedly concerned that Nexia Certification would be discussed.

75. Mirabilis, Nexia, Amodeo, Amar, Bates, and Mokwa did not make any effort to contact Curry or Hailstones to request that they refrain from presenting at the conference, despite the fact that they were allegedly concerned that Nexia Certification would be discussed.   Upon information and belief, Amar, Bates, and Mokwa were physically present at the resort in Scottsdale, Arizona where the conference was held at the same time that Curry and Hailstones were presenting.

76. Despite referencing Curry's and Hailstones' presentations at the Conference in the Preliminary Injunction, upon information and belief, no attempt was made to serve them prior to the referenced presentations.

25

77. Rather, on the morning of October 15, 2007, the day after Curry and Hailstones had both presented, an unknown process server, in the company of Amar, Bates, and Mokwa, all of whom, upon information and belief, were acting on behalf of and as agents of Mirabilis and Nexia, confronted Curry and Hailstones within earshot of a approximately 40 of the organizers and attendees of the conference.

78. At that time, Mokwa held up and displayed a copy of the Saturday, October 13, 2007 Orlando Sentinel featuring the banner headline: "Mirabilis Files Suit Against Former Executives." Mokwa loudly announced, "See, you are on the front page of the paper for stealing assets." Such conduct was an overt act in furtherance of the conspiracy.

79. When Curry pointed out that the intellectual property at issue had been transferred by a series of three agreements, Amar responded, "I don't care about any bullshit agreements. $220 million is missing while you were in charge and now you are here selling anti-fraud solutions. Where did the money go?" Amar then mocked and taunted Hailstones saying, "I guess you have to go back to the UK now, huh?" Such conduct was an overt act in furtherance of the conspiracy.

80. At the time that these false and misleading statements were made, Bates was observed audio recording the proceedings.

81. The above statements were false, misleading and not relevant to the judicial proceedings regarding the complaint filed in Florida.

82. In addition, the false and misleading statements were published to approximately 40 of the organizers and attendees of the conference; persons having no relationship to the proposed or pending judicial proceeding.

83. Mirabilis and Nexia are vicariously liable because Bates, Amar, and Mokwa acted intentionally and within their apparent authority as Plaintiffs' representatives.

84. The defamatory false and misleading statements made by Amar and Mokwa about Curry and Hailstones constitute slander *per se* because they suggested that Curry and Hailstones had committed illegal or dishonest acts.

85. In cases of slander *per se*, general damages are presumed.

86. Defendants made the statements set forth above with malice and intent to injure Plaintiffs.

87. As a result of the Defendants' actions, Curry and Hailstones were injured in their good name and reputation and brought into public scandal and disgrace by many persons with whom they previously had social and business relationships, have suffered mental anguish and have been injured in their businesses by having lost business opportunities.

88. Curry, Hailstones, and Palaxar suffered severe damages, in an amount to be determined at trial, because of the Counterclaim Defendants' conspiracy to commit slander against them.

<u>COUNT  6: SLANDER *PER SE*: COUNTERCLAIM PLAINTIFFS V. MIRABILIS, NEXIA, AND MOKWA</u>

89. Counterclaim Plaintiffs restate the allegations in Paragraphs 1 through 88 as if fully set forth herein.

CLE - 1051366.1

90. As set forth in the Conspiracy to Commit Slander Count above, on October 15, 2007, Mirabilis and Nexia served Curry and Hailstones personally with the complaint that initiated this litigation in Scottsdale, Arizona, at the "58th Audit Directors & Managers Symposium," which was attended by some 50 delegates including numerous professional acquaintances of both Hailstones and Curry.

91. At that time, within earshot of approximately 40 of the organizers and attendees of the conference, Defendant Mokwa held up and displayed a copy of the Saturday, October 13, 2007 Orlando Sentinel featuring the banner headline: "Mirabilis Files Suit Against Former Executives"  Mokwa loudly announced, "See, you are on the front page of the paper for stealing assets."

92. The above statement is false, misleading and not relevant to a judicial proceeding.

93. The false and misleading statement was published to approximately 40 of the organizers and attendees of the conference, persons having no relationship to a proposed or pending judicial proceeding.

94. The service of the lawsuit upon Curry and Hailstones, along with the false and misleading statements and implications that Curry and Hailstones were thieves, was deliberately staged to embarrass, humiliate, and discredit Hailstones and Curry in front of their colleagues and peers.  Curry and Hailstones were injured in their good name and reputation and brought into public scandal and disgrace by many persons with whom they previously had social and business relationships, have suffered mental anguish and have been injured in their businesses by having lost business opportunities.

95. The defamatory false statements made about Curry and Hailstones by Mokwa, and for which is Mirabilis and Nexia are vicariously liable because Mokwa acted intentionally and within his apparent authority, constitutes slander *per se* because he suggested that Curry and Hailstones had committed illegal or dishonest acts.

96. In cases of slander *per se*, general damages are presumed.

97. Curry and Hailstones suffered damages as a result of the slander *per se* in an amount to be determined at trial, damages which were compounded because Curry, an accountant and licensed attorney and Hailstones, a Chartered Accountant, are in the business of creating and distributing anti-fraud solutions and slanderous statements accused them of dishonest acts and illegal acts.

## COUNT 7: SLANDER *PER SE*: COUNTERCLAIM PLAINTIFFS V. MIRABILIS, NEXIA, AMAR

98. Counterclaim Plaintiffs restate the allegations in Paragraphs 1 through 97 as if fully set forth herein.

99. As set forth in the Conspiracy to Commit Slander Count above, on October 15, 2007, Mirabilis and Nexia served Curry and Hailstones personally with the complaint that initiated this litigation in Scottsdale, Arizona, at the "58th Audit Directors & Managers Symposium," which was attended by some 50 delegates including numerous professional acquaintances of both Hailstones and Curry.

100. At that time, within earshot of approximately 40 of the organizers and attendees of the conference, Defendant Amar, in the company of defendants Bates and Mokwa, stated to

29

Curry and Hailstones: "$220 million is missing while you were in charge and now you are here selling anti-fraud solutions.  Where did the money go?"

101.    The above statement is false, misleading and not relevant to a judicial proceeding.

102.    The false and misleading statement was published to approximately 40 of the organizers and attendees of the conference, persons having no relationship to a proposed or pending judicial proceeding.

103.    The service of this lawsuit upon Curry and Hailstones, along with the false and misleading statements and implications that Curry and Hailstones were thieves, was deliberately staged to embarrass, humiliate, and discredit Hailstones and Curry in front of their colleagues and peers.

104.    By Amar's defamatory conduct, Curry and Hailstones were injured in their good name and reputation and brought into public scandal and disgrace by many persons with whom they previously had social and business relationships, have suffered mental anguish and have been injured in their businesses by having lost business opportunities.

105.    The defamatory false statements made about Curry and Hailstones by Amar, and for which is Mirabilis and Nexia are vicariously liable because Amar acted intentionally and within his apparent authority, constitutes slander *per se* because he suggested that Curry and Hailstones had committed illegal or dishonest acts.

106.    In cases of slander *per se*, general damages are presumed.

107.   Curry and Hailstones suffered damages as a result of the slander *per se* in an amount to be determined at trial, damages which were compounded because both Curry, an accountant and licensed attorney and Hailstones, a Chartered Accountant, are in the business of creating and distributing anti-fraud solutions and slanderous statements accused them of dishonest acts and illegal acts.

## COUNT 8:  INTENTIONAL INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIP / CURRY AND HAILSTONES V. MIRABILIS, NEXIA, AMODEO, AMAR, BATES, AND MOKWA

108.   Counterclaim Plaintiffs restate the allegations in Paragraphs 1 through 107 as if fully set forth herein.

109.   After their respective separations from Mirabilis and Nexia, Hailstones and Curry were developing business relationships with various other parties in the hopes of marketing the anti-fraud solution that ultimately would result from their respective efforts.

110.   Mirabilis, Nexia, Amodeo, Amar, Bates, and Mokwa knew that Curry and Hailstones were engaged in developing these business relationships.

111.   Mirabilis, Nexia, Amodeo, Amar, Bates, and Mokwa intentionally committed the acts set forth in the foregoing ¶¶ 56 through 104, including breach of Hailstones' Termination Agreement, and slander, for the purpose of interfering with those relationships.

112.   The conduct of Mirabilis, Nexia, Amodeo, Amar, Bates, and Mokwa was outrageous.

113.   The conduct of Mirabilis, Nexia, Amodeo, Amar, Bates, and Mokwa did interfere with Curry's and Hailstones' business relationships.

31

114.    As a result of the conduct of Mirabilis, Nexia, Amodeo, Amar, Bates, and Mokwa, Curry

and Hailstones have suffered injuries in an amount to be established at trial.

## COUNT 9: CIVIL CONSPIRACY  TO INTENTIONALLY INTERFERE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS: CURRY, HAILSTONES, AND PALAXAR V. NEXIA, MIRABILIS, AMODEO, AMAR, BATES, AND MOKWA

115.    Counterclaim Plaintiffs restate the allegations in Paragraphs 1 through 115 as if fully set

forth herein.

116.    On or about October 15, 2007, and at various times prior thereto, Defendants Nexia,

Mirabilis, Amodeo, Bates, Amar and Mokwa met, joined together, planned, and conspired to

interfere with Curry's, Hailstones' and Palaxar Holdings, Inc.'s advantageous business

relationships by engaging in the conduct set forth in §§ 56 through 104.

117.    Upon information and belief, Defendants Nexia, Mirabilis, Amodeo, Bates, Amar and

Mokwa agreed or understood that the purpose of their meetings and agreements as described

§§ 57 through 111 were unlawful and would result in injury to Plaintiffs, and agreed and

understood that each would act in concert with the others to achieve this purpose.

118.    On or about October 15, 2007, one or more defendants committed an overt act in

furtherance of the above-described conspiracy, to wit, Defendant Amar stated to Curry and

Hailstones in the presence of numerous attendees of the "58th Audit Directors & Managers

Symposium" in Scottsdale, Arizona: "There is $220 million missing from Mirabilis.  What

did you do with it?"   As an additional overt act in furtherance of the conspiracy, Defendant

Mokwa then held up and displayed to the conference attendees the Saturday, October 13,

2007 Orlando Sentinel story which said that Curry and Hailstones were accused of

absconding with Mirabilis/Nexia assets.

32

119.    Defendants undertook the acts described in Paragraph 119 with malice and intent to injure Plaintiffs.

## COUNT 10: INDEMNITY

120.    Counterclaim Plaintiffs restate the allegations in Paragraphs 1 through 119 as if fully set forth herein.

121.    Both Hailstones' and Curry's termination agreements with Mirabilis and Nexia, respectively, specify that the employers will indemnify the employee from and against all claims brought against him or her.

122.    In AQMI's contract with Mirabilis, Amodeo, via his consulting enterprise, AQMI, agreed to indemnify Curry and Hailstones, including attorney's fees and legal expenses, against any claims, liabilities, losses, expenses, etc., resulting from the actions of Amodeo or AQMI.

123.    Mirabilis and Nexia are required to indemnify Curry and Hailstones for any damages found against Curry and Hailstones.

124.    Amodeo, via his company AQMI, is required to indemnify Curry and Hailstones for any damages found against Curry and Hailstones and for the attorneys' fees and legal expenses they have incurred in defense of this claim.

## COUNT 11: CURRY, HAILSTONES, AND PALAXAR V. NEXIA AND MIRABILIS / ABUSE OF PROCESS

125.    Counterclaim Plaintiffs restate the allegations in Paragraphs 1 through 124 as if fully set forth herein.

33

126.     Nexia and Mirabilis brought the claims in the instant lawsuit for purposes other than those to recover the asset sued for, *i.e.*, the so-called "Nexia Certification."

127.     Counterclaim Defendants are aware of an ongoing criminal investigation by the United States Attorney for the Middle District of Florida involving Mirabilis and Amodeo in which both Hailstones and Curry have been subpoenaed to testify.

128.     The instant lawsuit was brought in an effort to intimidate Curry and Hailstones to prevent their cooperation with the United States Attorney.

129.     The instant lawsuit was brought for the further purpose of discrediting the testimony of Curry and Hailstones in the event of their testimony against any defendants who may be charged as a result of said investigation.

130.     The instant lawsuit was brought for the further purpose of invoking the Directors and Officers portion of Mirabilis' General Commercial Liability policy and the excess insurance carrier.

131.     Curry and Hailstones have suffered damages, in an amount to be determined at trial, as a result of Mirabilis' and Nexia's abuse of process.

<u>PRAYERS FOR RELIEF</u>

WHEREFORE, Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings pray for judgment as follows:

1.     That the Complaint against them be dismissed in its entirety;

CLE - 1051366.1

2.      That they be awarded their costs and reasonable attorney's fees incurred in defending against plaintiffs' claims;

3.      With respect to Count One, Breach Of Contract / Curry vs. Wellington Capital / (January 2005 Agreement), that the Court award damages to Curry in an amount to be determined at trial, but not less than $2,195,833.30, plus applicable interest;

4.      With respect to Count Two, Breach Of Contract / Curry v. Wellington Capital as Successor-In-Interest to PSI (Nov. 4, 2004 Agreement), that that the Court award damages to Curry in the amount of $2,395,833.30 plus applicable interest;

5.      With respect to Count Three: Breach Of Separation Agreement / Curry vs. Mirabilis And Nexia that the Court award damages to Curry in an amount to be determined at trial;

6.      With respect to Count Four, Breach Of Termination Agreement / Hailstones v. Mirabilis, that the Court award damages to Hailstones in the amount of not less that $225,000 plus applicable interest;

7.      With respect to Count Five, Civil Conspiracy To Commit Slander/ Curry, Hailstones, and Palaxar v. Nexia, Mirabilis, Amodeo, Amar, Bates, And Mokwa, that the Court award damages to Hailstones in an amount to be determined at trial;

8.      With respect to Count Six, Slander *per se*: Counterclaim Plaintiffs v. Mirabilis, Nexia, And Mokwa, that the Court award damages to Curry in an amount to be determined at trial;

9.      With respect to Count Seven, Slander per se: Counterclaim Plaintiffs v. Mirabilis, Nexia, and Amar, that the Court award Curry and Hailstones damages in an amount to be determined at trial;

11.     With respect to Count Eight, Intentional Interference With Advantageous

Business Relationship / Curry and Hailstones v. Mirabilis, Nexia, Amodeo, Amar, Bates, and

Mokwa, that the Court award damages to Curry and Hailstones in an amount to be determined at

trial;

12.     With respect to Count Nine, that the Court award damages to Curry and

Hailstones in an amount to be determined at trial;

13.     With respect to Count Ten, Indemnity, that the Court award damaged to

Hailstones and Curry in an amount equal to their attorneys' fees and costs expended in defending

against this lawsuit, plus interest;

14.     With respect to Count Eleven, Abuse of Process, in an amount to be determined at

trial;

15.     That the Court award punitive damages as appropriate and allowed by law; and

16.     That the Court order such other and further relief as is deemed just and proper.


                                    Respectfully submitted,

                                    /s/ Martin R. Raskin
                                    MARTIN R. RASKIN
                                    Florida Bar No. 315206
                                    JANE SERENE RASKIN
                                    Florida Bar No. 848689
                                    **RASKIN & RASKIN, P.A.**
                                    2601 South Bayshore Drive
                                    Suite 725
                                    Miami, Florida  33133
                                    Telephone: (305) 444-3400
                                    Facsimile: (305) 445-0266
                                    mraskin@raskinlaw.com

                                    Attorneys for Defendant Curry,
                                    Palaxar Group, LLC and Palaxar Holdings,
                                    LLC

                                    36

KATHLEEN B. HAVENER
**HAHN LOESER + PARKS LLP**
Suite 3300, 200 Public Square
Cleveland, OH 44114
Telephone: (216) 274-2297
Facsimile:  (216) 241-2824
kbhavener@hahnlaw.com

Attorneys for Defendant Curry, Hailstones,
Palaxar Group, LLC and Palaxar Holdings,
LLC

37

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 11, 2008, I electronically filed the foregoing Answer, Affirmative Defenses, and Counterclaims with the Clerk of Court using the CM/ECF system which will send a notice of electric filing to the following:

> Aaron C. Bates, Esquire
> abates@goldbergbates.com
>
> J. Russell Campbell, Esquire
> rcampbell@balch.com

I further certify that on February 11, 2008, a copy of the foregoing Answer, Affirmative Defenses, and Counterclaims has been furnished by U.S. Mail on February 11, 2007 to:

> Allen Estes, Esquire
> Balch & Bingham LLP
> P.O. Box 306
> Birmingham, AL 35201

> /s/ Jane Serene Raskin
> JANE SERENE RASKIN

CLE - 1051366.1