### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

|  |  |
|---|---|
| MIRABILIS VENTURES, INC. and<br>NEXIA STRATEGY CORPORATION,<br><br>        Plaintiffs,<br>-vs-<br><br>PALAXAR GROUP, LLC;<br>PALAXAR HOLDINGS, LLC;<br>FRANK HAILSTONES; EDITH CURRY<br>a/k/a EDITH BROADHEAD; and<br>TERENCE CHU,<br><br>        Defendants,<br><br>vs.<br><br>MIRABILIS VENTURES, INC., et al.<br><br>        Counterclaim and Third<br>        Party Defendants. | ) <br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.:  6:07-CV-1788-JA-GJK |

### JOINT ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' SECOND AMENDED COMPLAINT and FIRST AMENDED COUNTERCLAIMS AND THIRD PARTY CLAIMS  OF DEFENDANTS EDITH CURRY a/k/a EDITH BROADHEAD, <u>FRANK HAILSTONES, PALAXAR GROUP, LLC, and PALAXAR HOLDINGS, LLC</u>

Defendants Edith Curry a/k/a Edith Broadhead ("Curry"), Frank Hailstones, ("Hailstones") Palaxar Group, LLC ("Palaxar Group"), and Palaxar Holdings, LLC ("Palaxar Holdings"), by and through their undersigned attorneys, answer Plaintiffs' Second Amended Complaint ("Complaint") as follows:

1.  Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings admit the allegation set

forth in Paragraph 1 of the Complaint.

2.    Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings admit the allegation set forth in Paragraph 2 of the Complaint.

3.    Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny that Palaxar Group is a Virginia limited liability company but admit the remaining allegation set forth in Paragraph 3 of the Complaint.

4.    Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings admit the allegations set forth in the first two sentences of Paragraph 4 of the Complaint and deny the allegation set forth in the last sentence of Paragraph 4 of the Complaint

5.    Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings admit the allegation set forth in the first two sentences of Paragraph 5 of the Complaint and deny the allegation set forth in the last sentence of Paragraph 5 of the Complaint.

6.    Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in the first sentence of Paragraph 6 of the Complaint and deny the allegations set forth in the last sentence of paragraph 6 of the Complaint.

7.    Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings admit the jurisdictional allegation contained in paragraph 7 of the Complaint.

8.    Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings admit the jurisdictional allegations contained in paragraph 8 of the Complaint.

9.    Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings admit the allegation of venue set forth in paragraph 9 of the Complaint.

10.   Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings admit the allegations of personal jurisdiction set forth in Paragraph 10 of the Complaint as to themselves but are

without knowledge or information sufficient to form a belief as to the truth of the allegation set forth in paragraph 10 of the Complaint as to Terence Chu.

11. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegation set forth in paragraph 11 of the Complaint.

12. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings are without knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 12 of the Complaint.

13. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings admit that during the relevant time period, Nexia was a wholly owned subsidiary of Mirabilis and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegation set forth in paragraph 13 of the Complaint.

14. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in the first sentence and admit the remaining allegations contained in paragraph 14 of the Complaint.

15. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 15 of the Complaint.

16. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 16 of the Complaint.

17. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 17 of the Complaint.

18. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 18 of the Complaint.

19. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 19 of the Complaint.

20. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 20 of the Complaint.

21. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings answer that any relevant employment contracts speak for themselves and deny the remaining allegations of paragraph 21 of the Complaint.

22. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings answer that any relevant employment contracts speak for themselves and deny the remaining allegations of paragraph 22 of the Complaint.

23. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 23 of the Complaint.

24. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings admit that Curry and Hailstones, along with Laurie Holtz and Michael Dement, were named on the cited patent applications but deny the remaining allegations contained in Paragraph 24 of the Complaint.

25. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 25 of the Complaint.

26. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 26 of the Complaint.

27. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 27 of the Complaint.

28. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 28 of the Complaint.

29. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 29 of the Complaint.

30. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegation contained in the first sentence and admit the allegation contained in the second sentence of Paragraph 30 of the Complaint.

31. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 31 of the Complaint.

32. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 32 of the Complaint.

33. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings admit that Palaxar Holdings is offering for sale a patent-pending anti-fraudsolution but deny the remaining allegations contained in Paragraph 33 of the Complaint.

34. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 34 of the Complaint.

35. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 35 of the Complaint.

36. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings admit that Palaxar Holdings markets a patent-pending anti-fraud solution.  Defendants further admit that they participated in a conference located in Scottsdale, Arizona from October 14 through 18, 2007 entitled the "58th Audit Directors & Managers Symposium," but deny all the remaining allegations contained in Paragraph 36 of the Complaint.

37. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 37 of the Complaint.

38. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings restate their answers to paragraphs 1 through 37 as if fully set forth herein.

39. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings admit that on June 17, 2005, Curry signed an employment agreement with Nexia and deny the remaining allegations of paragraph 39 of the Complaint.

40. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 40 of the Complaint.

41. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 41 of the Complaint.

42. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 42 of the Complaint.

43. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings restate their answers to paragraphs 1 through 42 as if fully set forth herein.

44. Curry, Hailstones, Palaxar Group, and Palaxar Holdings admit that Hailstones and Curry were, at various times, officers, directors and/or employees of one or both of the Plaintiffs. The remaining allegation of paragraph 44 states a legal conclusion to which no response is required.

45. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 45 of the Complaint.

46. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 46 of the Complaint.

47. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 47 of the Complaint.

48. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings restate their answers to paragraphs 1 through 47 as if fully set forth herein.

49. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 49 of the Complaint.

50. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 50 of the Complaint.

51. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 51 of the Complaint.

52. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 52 of the Complaint.

53. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings restate their answers to paragraphs 1 through 52 as if fully set forth herein.

54. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 54 of the Complaint.

55. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 55 of the Complaint.

56. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 56 of the Complaint.

57. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 57 of the Complaint.

58. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 58 of the Complaint.

59. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 59 of the Complaint.

60. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 60 of the Complaint.

61. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings restate their answers to paragraphs 1 through 60 as if fully set forth herein.

62. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 62 of the Complaint.

63. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 63 of the Complaint.

64. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 64 of the Complaint.

65. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings restate their answers to paragraphs 1 through 64 as if fully set forth herein.

66. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 66 of the Complaint.

67. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 67 of the Complaint.

68. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 68 of the Complaint.

69. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 69 of the Complaint.  *See* <u>Order</u> of Judge Antoon (Doc. 48) dated January 30, 2008 at p. 3.

70. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 70 of the Complaint.

71. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings admit that Plaintiffs sought injunctive relief pursuant to Fla. Stat. § 688.003, but assert that said injunctive relief was denied.  *See* <u>Order</u> of Judge Antoon (Doc. 48) dated January 30, 2008 at p. 3.

72. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 72 of the Complaint.

73. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings restate their answers to paragraphs 1 through 72 as if fully set forth herein.

74. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 74 of the Complaint.

75. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 75 of the Complaint.

76. Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings deny the allegations contained in Paragraph 76 of the Complaint.

## **AFFIRMATIVE DEFENSES**

### <u>FIRST AFFIRMATIVE DEFENSE</u>

Plaintiffs' claims are barred by the two written contracts which govern the subject matter of the Complaint.  Pursuant to the August 1, 2006, Assignment Agreement, attached hereto as Exhibit A and incorporated by reference herein, plaintiffs assigned all of their right, title and interest in a patent-pending anti-fraud solution previously referred to by the working title Nexia Certification to Curry, Hailstones, and two other individuals.  Plaintiffs' assignment of all their right, title and interest in so-called Nexia Certification was reiterated in the Confidential

Separation Agreement entered into on October 20, 2006, between Mirabilis and Curry, attached hereto as Exhibit B and incorporated by reference herein.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of accord and satisfaction, because any right, title or interest plaintiffs ever may have had to so-called Nexia Certification was voluntarily contracted away in the Assignment Agreement (Exhibit A) and the Confidential Separation Agreement (Exhibit B) in exchange for valuable consideration.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of estoppel, because any right, title or interest plaintiffs ever may have had to so-called Nexia Certification was contracted away in the Assignment Agreement (Exhibit A) and the Confidential Separation Agreement (Exhibit B).

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are waived, because any right, title or interest plaintiffs ever may have had to so-called Nexia Certification was contracted away in the Assignment Agreement (Exhibit A) and the Confidential Separation Agreement (Exhibit B).

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against Curry are barred by the indemnification clause contained in the Confidential Separation Agreement (Exhibit B).

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against are barred by operation of federal patent law and by Florida law requiring an absolutely clear assignment of rights in order to establish Plaintiffs' entitlement to the intellectual property at issue.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against Curry and Hailstones are barred by the provision for waiver of damages against officers and directors contained in Mirabilis' Articles of Incorporation.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against Curry and Hailstones are barred by the ratification by Mirabilis, the sole shareholder of Nexia, of all actions the Board of Directors and Officers of Nexia from the date of inception through December 13, 2006 pursuant to the Written Action of the Shareholders of Nexia Strategy Corporation dated December 13, 2006.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of estoppel, because Defendants use and possession of any alleged trade secrets was open and notorious and they expended substantial amounts of time, effort and money in promoting and developing products utilizing the alleged trade secrets while Mirabilis and Nexia took no steps to maintain the secrecy of the alleged trade secrets or prevent their use by Curry/Palaxar during the time between Curry's separation from Mirabilis and the filing of this action.

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs are estopped from claiming that Board approval of the Assignment Agreement or the Confidential Separation Agreement was necessary, because (i) the determination of whether such approval was necessary was solely in the discretion of Mirabilis and Nexia; (ii) the General Counsel for Mirabilis told Curry that the Separation Agreement was "done;" (iii) counsel for Mirabilis told other employees of Mirabilis and Nexia (including Defendant Hailstones) that Plaintiffs were "bound" by the terms of Curry's Separation Agreement; and

(iv) Curry has expended substantial substantial amounts of time, effort and money in promoting and developing products in reliance on the statements of Mirabilis.

ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs are estopped from claiming that Board approval of the Assignment Agreement or the Confidential Separation Agreement was necessary, because Mirabilis and Nexia had no standards for when such approval was required and frequently sold or transferred assets without prior Board approval or any Board approval at all.

TWELTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrines of waiver and estoppel because Amodeo, the only shareholder with the right to vote under Mirabilis' Shareholder Agreement, was aware of and approved both Agreements.

THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs are estopped from claiming that that intellectual property transferred to Curry under the Assignment Agreement and/or the Separation Agreement was substantially all of the assets of Nexia, because neither Nexia nor Mirabilis has ever shown such an asset on its balance sheet or accounting records.

**DEFENDANTS' FIRST AMENDED COUNTERCLAIMS AND THIRD PARTY CLAIMS**

THE PARTIES

1. Counterclaim and Third Party Plaintiff Palaxar Holdings, LLC is a Virginia limited liability company with its principal place of business in Henrico County, Virginia.

2. Counterclaim and Third Party Plaintiff Edith L. Curry is a resident and citizen of Henrico County, Virginia.

12

3.  Counterclaim and Third Plaintiff Frank Hailstones is a resident and citizen of the United Kingdom.

4.  Counterclaim Defendant Mirabilis Ventures, Inc. is a corporation organized under the laws of the State of Nevada with its principal place of business in Orange County, Florida.

5.  Counterclaim Defendant Nexia Strategy Corporation is a corporation organized under the laws of the State of Florida with its principal place of business in Orange County, Florida.

6.  Third Party Defendant AQMI Strategy Corporation is a corporation organized under the laws of the State of Florida with its principal place of business in Orange County, Florida which, upon information and belief, is wholly-owned by Third Party Defendant Frank Amodeo.

7.  Third Party Defendant Wellington Capital Group, Inc. is a corporation organized under the laws of the State of Nevada with its principal place of business in Orange County, Florida, and upon information and belief, is wholly-owned by Third Party Defendant Frank Amodeo.

8.  Third Party Defendant Yaniv Amar is an individual who, upon information and belief, is a resident and citizen of Miami-Dade County, Florida, and at times relevant to this action was an executive at Mirabilis and/or one of its affiliate companies.

9.  Third Party Defendant Frank Amodeo is an individual who, upon information and belief, is a resident and citizen of Orange County, Florida.

10. Third Party Defendant Aaron Bates is an individual who, upon information and belief, is a resident and citizen of Orange County, Florida, was formerly counsel to Mirabilis and/or one of its affiliate companies and is presently counsel to Plaintiffs in this case.

11. Third Party Defendant Matthew Mokwa is an individual who, upon information and belief, is a resident and citizen of Orange County, Florida, was formerly counsel to Mirabilis and/or one of its affiliate companies and is presently counsel to the Plaintiffs in this case.

12. Third Party Defendant Robert Pollock is an individual who, upon information and belief, is a resident and citizen of Orange County, Florida and at times relevant to this action was an executive at Mirabilis and/or one of its affiliate companies.

13. Third Party Defendant James V. Sadrianna is an individual who, upon information and belief, is a resident and citizen of Orange County, Florida and at times relevant to this action was an executive at Mirabilis and/or one of its affiliate companies.

## ALLEGATIONS RELEVANT TO ALL CLAIMS

14. Counterclaim Plaintiff Curry joined Nexia Strategy Corporation ("Nexia") on June 17, 2005, as a Master Strategist with the title of Senior Regional Office Manager, and was employed by Nexia until October 2006.

15. Counterclaim Plaintiff Hailstones joined Mirabilis Ventures, Inc. on October 3, 2005, when Mirabilis took a 25% stake in Hailstones' company Axena, Inc. ("Axena"), at which time Frank Amodeo committed that Mirabilis would pay all further expenses of Axena.

16. Mirabilis was controlled by Frank Amodeo.  Amodeo was the sole individual permitted to make significant business decisions for Mirabilis, Nexia, Counterclaim Defendants AQMI Strategies, and Wellington Capital during the relevant time period, and was the only individual with the authority to approve the payment of invoices or commit to a transaction involving a debt on the part of any of the entities involved.

14

17. Frank Amodeo was the sole Class A (Black Stock) shareholder of Mirabilis Ventures and the only shareholder with voting rights.  Class A shareholders, per the Mirabilis Shareholder Agreement, agree that such shares are non-alienable except to the AQMI trust and, "shall have the ability to veto any of any decision made by the other classes of shareholders."

18. At all times relevant to this lawsuit, Frank Amodeo was the sole owner and shareholder of AQMI.

19. According to the December 13, 2006 Nexia Strategy Written Action of the Shareholders minutes, "from April 20, 2005 thorough December 13, 2006, Frank Amodeo was listed as the sole shareholder and sole director of Nexia Strategy Corporation."

20. Frank Amodeo, with the assistance and knowing complicity of other Third Party Defendants, changed the titles and operational responsibilities even of senior executives, including Hailstones and Curry, without their prior knowledge and consent, without change in employment documentation, job descriptions, or terms and conditions."

21. Frank Amodeo is the sole member of Wellington Capital, Inc. which is successor in interest to Presidion Solutions, Inc. ("PSI").

COUNT 1: BREACH OF CONTRACT / CURRY VS. WELLINGTON CAPITAL / (January 2005 Agreement)

22. Counterclaim Plaintiffs restate the allegations in Paragraphs 1 through 21 as if fully set forth herein.

23. Amodeo negotiated a fee arrangement with Curry for work she had performed for PSI pursuant to which Curry, through Brookmeade Group LLC, of which Curry was the

controlling member, was to receive $2,000,000 worth of stock in Presidion Corporation, then parent company of PSI, and a $500,000 promissory note from PSI. (A true and correct copy of the PSI Secured Promissory Note is attached hereto at Exhibit C.)   The Secured Promissory Note was executed by the President and CEO of PSI on January 26, 2005.

24. Pursuant to the terms of the Secured Promissory Note, PSI was to remit to Curry $20,833.34 per month for a period of twenty-four months.  PSI paid on the note for a period of five months, for a total amount of $104,166.70, and has never paid further, leaving a balance of $395,833.30 unpaid.

25.  On April 15, 2005, Brookmeade was issued what was represented to be $2,000,000 worth of stock in Presidion Corporation, the publicly traded company.  In fact, the stock—on the date it was issued to Brookmeade—was worth less than 10% of that amount.  The stock is presently worthless.

26. Wellington Capital, which purchased PSI for $500,000, and is the successor-in-interest to PSI, is responsible for the remaining debt due to Brookmeade Solutions and Curry in the amount of $395,833.30 based on the Secured Promissory Note, as well as in the amount of $1,800,000 based on the promise of $2,000,000 worth of stock in Presidion Corporation.

27. One of the provisions of the Secured Promissory Note is that the Note would be entirely due and payable upon the agreement to transfer significant ownership in the Maker to another party.  That condition occurred as soon as Wellington became the owner of PSI.  As soon as Wellington Capital purchased PSI, the debt to Curry was due and owing.  To date, the debt has not been paid, which constitutes a further material breach of the contract.

16

28. Curry has suffered damages in the amount of not less than $2,195,833.30, plus applicable interest, on account of the breach of Curry's January 2005 agreement with PSI.

COUNT 2: FRAUD IN THE INDUCEMENT / CURRY VS. AMODEO, MIRABILIS, NEXIA, POLLACK, AND SADRIANNA (Nexia Employment Agreement)

29. Counterclaim Plaintiffs restate the allegations in Paragraphs 1 through 28 as if fully set forth herein.

30. At the same time that payments ceased on the January 2005 Secured Promissory Note, Curry approached Amodeo in search of a resolution.

31. On June 17, 2005, in reliance on a number of promises by Amodeo and Robert Pollack, Curry signed a written employment agreement with Nexia.  The Employment Agreement was countersigned for Nexia by James Sadrianna.  Upon information and belief, Amodeo, was aware of and in agreement with Sadrianna, Pollack, and Nexia that the promises made to Curry could not be honored.

32. Sadrianna made representations to Curry, which upon information and belief, he knew to be false, that is, as an attorney and CPA, Sadrianna assured Curry that the promises made to her by Mirabilis and Amodeo would be kept.

33. Curry signed her written contract with Nexia in part based upon a written assurance from Pollack that she would be "empowered to run her own business," a representation that was patently false.

34. Curry signed her written contract with Nexia in part based upon false representations by Frank Amodeo, Mirabilis, and Nexia that Nexia/Mirabilis planned to open an accounting

17

operations center for all Mirabilis and Nexia's Professional Employee Operations ("PEOs")[1] in Richmond, Virginia, which Curry would manage.

35. Curry signed her written employment agreement with Nexia in part based on the false assurances of James Sadrianna that Mirabilis' and Nexia's promises would be fulfilled.

36. Curry immediately began preparing a business plan for the proposed new operation. In that regard, Curry met with a number of public officials in Virginia, including the governor, three cabinet members, the Virginia Chamber of Commerce, the Virginia Economic Development Commission, The Richmond Times Dispatch, Senator George Allen, and many others in her efforts to establish the Richmond facility.

37. Frank Amodeo pledged to Curry that he was also beginning to acquire manufacturing domains and manufacturing businesses in Richmond which would be under the direction of the Richmond facility.

38. On or about May 3, 2006, after Curry had negotiated and acquired a lease on premises as the base for the business referred to above, the five Nexia staff hired by Curry pursuant to the plan described above and based at the planned Richmond facility, repeatedly notified the Mirabilis staff that the Richmond facility was non-operational, *i.e.*, that it had no telephones or computers.

39. In addition, the Richmond staff were tasked with selling PEO's in Virginia, although it later turned out that Mirabilis-affiliated PEO's were not and had never been licensed to operate in Virginia, despite Amodeo's assurances to the contrary.

---

[1] A PEO is a Professional Employment Organization, sometimes referred to as an Employee Leasing Company.

40. On June 5, 2006, Curry sent an email to Mirabilis asking the status of the manufacturing domains.  She was informed that Frank Amodeo had moved all manufacturing domains to his personal control.

41. Upon information and belief, the manufacturing domains were moved into Amodeo's personal control with the agreement and participation of James Sadrianna, and Robert Pollack.

42. None of the commitments Frank Amodeo or Robert Pollack made to Curry concerning the Richmond operation were fulfilled.

43. Frank Amodeo, Nexia, Mirabilis, Pollack, and Sadrianna misrepresented material facts which they knew or should have known to be false at the time they were made in an effort to induce Curry to enter into her employment contract and to continue her employment at Nexia.

44. Frank Amodeo, Nexia, Mirabilis, Sadrianna, and Pollack intended that Curry rely on their misrepresentations in order to induce her to accept and continue her employment with Nexia.

45. Curry has suffered damages as a result of her being fraudulently being induced to enter into the employment contract with Nexia in an amount to be determined at trial, including forgone opportunities, lost profits, and damage to her reputation in her home state of Virginia.

<u>COUNT 3: BREACH OF SEPARATION AGREEMENT / CURRY VS. MIRABILIS AND
NEXIA</u>

46. Counterclaim Plaintiffs restate the allegations in Paragraphs 1 through 45 as if fully set forth
herein.

47. By early September 2006, Curry was advised of Amodeo's decision to terminate her contract
together with the other Nexia staff based in Richmond.

48. Between September 8 and October 31, 2006, Mirabilis, Nexia, and Curry negotiated the
terms of Curry's separation from Mirabilis and Nexia.  Frank Amodeo was fully aware of the
progress of these negotiations and participated in them.  The negotiations led to the execution
of a Confidential Separation Agreement between Nexia, Mirabilis, and Curry (Exhibit B).

49. On October 20, 2006, Curry signed the Confidential Separation Agreement that iterated the
terms of Curry's separation from Mirabilis and all its affiliate companies effective October
31, 2006.  (Exhibit B).

50. The Confidential Separation Agreement constitutes a valid contract.

51. The Confidential Separation Agreement assigned all right, title, and interest in the so-called
"Nexia Certification" to Curry, an assignment for which Curry gave significant
consideration.

52. Moreover, the Confidential Separation Agreement  states clearly that Mirabilis will
indemnify Curry from and against any claims that may be brought against her as a result of
Curry's serving as an officer and director of Mirabilis and/or its affiliates.  (See id., ¶2)  The
agreement did not exclude claims by Mirabilis or Nexia.  Accordingly, Mirabilis and Nexia

20

have agreed to indemnify Curry for their own claims against her.  Because to date they have failed to do so, Mirabilis and Nexia have materially breached the Confidential Separation Agreement with Curry.

53. The Confidential Separation Agreement commits that "neither party shall disparage the other and [the parties] shall agree upon a statement to be made to any third party who may inquire as to the reasons for separation."  Mirabilis and Nexia have disparaged Curry by filing their Amended Complaint and by making other false and disparaging statements, including press releases and oral statements insinuating that Curry has absconded with cash assets of the Mirabilis companies, and in its means of service of the Complaint on Curry. Each of these disparaging statements constitutes a material breach of the Confidential Separation Agreement.

54. The Confidential Separation Agreement provided that Nexia would accomplish certain tasks that would allow for Curry to work with Nexia in a joint venture to launch the anti-fraud solution.  Nexia has failed to accomplish any of those tasks, which failure is a material breach of the Confidential Separation Agreement.

55. The Confidential Separation Agreement provided that the Brookmeade agreement (of January 2005) would remain in full force and effect.  Nexia and Mirabilis' continued failure to honor the 2005 Brookmeade agreement is a material breach of the Confidential Separation Agreement.

56. Curry has suffered severe monetary damages as a result of Mirabilis and Nexia's breach of the Confidential Separation Agreement in an amount to be determined at trial, including but not limited to lost opportunity, lost profits, and the expenditure of attorneys' fees.

21

COUNT 4: BREACH OF TERMINATION AGREEMENT / HAILSTONES V. MIRABILIS

57. Counterclaim Plaintiffs restate the allegations in Paragraphs 1 through 56 as if fully set forth herein.

58. Hailstones was constructively terminated.

59. Following a discussion at the Mirabilis board meeting on December 28, 2006, Hailstones prepared and provided to Mark Bernet, Mirabilis' general counsel, a one-page list of questions to be asked by Bernet, on behalf of the board, of Frank Amodeo regarding the tax status of the Mirabilis PEO, financial transactions and liabilities of Mirabilis, and confirmation that the financial control of Mirabilis would pass to the board effective January 1, 2007, as had previously been agreed by Amodeo. These questions were never answered. Indeed Amodeo's actions in early January, 2007, confirmed that he would not relinquish his control of Mirabilis.

60. On or about January 2, 2007, Fernando Simo informed Hailstones that he had been advised by Marty Flynn of Common Paymaster that Hailstones' salary was to be reduced from $180,000 per annum to nothing and that Hailstones was to be retained only as a Director of Mirabilis at the then agreed director's fees of $72,000 per annum.  A new Mirabilis organizational structure was announced.  Hailstones was offered a second-tier position at Mirabilis as Chief Strategist.

61. On or about January 4 or 5, 2007, without the knowledge, participation or consent of Hailstones, most of the Nexia Strategy staff were terminated or reallocated to Amodeo-controlled companies.  Nexia was effectively rendered inactive.

62. Thereafter, Hailstones began negotiating his Termination and Release from Mirabilis.   A written Termination Agreement (the "Termination Agreement") was entered into between Mirabilis and Hailstones on January 31, 2007, and is a valid and enforceable contract.   (A true and correct copy of the Termination Agreement is attached hereto as Exhibit D.)

63. In the Termination Agreement, Mirabilis promised Hailstones severance pay in the amount of three months of his annual compensation.

64. The severance was never paid, constituting a material breach of the contract.

65. In the Termination Agreement, Mirabilis agreed to continue Hailstones' health insurance and other benefits through April 30, 2007.

66. Hailstones' health insurance and other benefits were cancelled soon after his Termination Agreement was executed, constituting a material breach of the contract.

67. In the Termination Agreement, Mirabilis promised that it would return to Hailstones the shell corporation that would be left after Axena Inc. was liquidated.   This was critical since Hailstones' visa—which gave him the right to work in the United States—was associated with his participation in Axena.

68. Mirabilis has deliberately and intentionally prevented the liquidation of Axena, has failed to return the shell corporation to Hailstones, and thus has held hostage Hailstones' visa, preventing him from being employed in the United States and requiring that he return to the United Kingdom in order to comply with federal immigration laws.   These actions constitute a material breach of the Termination Agreement.

69. Because of Mirabilis' failure to abide by the terms of Hailstones' Termination Agreement, Hailstones has been severely damaged, in an amount to be proven at trial.


<u>COUNT 5: CIVIL CONSPIRACY TO COMMIT SLANDER/ CURRY AND HAILSTONES V. NEXIA, MIRABILIS, AMODEO, AMAR, BATES, AND MOKWA</u>

70. Counterclaim/Third Party Plaintiffs Curry and Hailstones restate the allegations in Paragraphs 1 through 69 as if fully set forth herein.

71. On or about October 15, 2007, and at various times prior thereto, Defendants Nexia, Mirabilis, Amodeo, Bates (counsel to Plaintiffs in this lawsuit and former Mirabilis in-house attorney), Amar (a former Mirabilis employee) and Mokwa (who was either a current or former attorney of Mirabilis, later to be hired by Goldberg & Bates, counsel to Plaintiffs in this lawsuit) met, joined together, planned, and conspired to slander Curry, Hailstones and Palaxar Holdings, Inc.

72. Upon information and belief, Defendants Nexia, Mirabilis, Amodeo, Bates, Amar and Mokwa agreed or understood that the purpose of their meetings and agreements as described below were unlawful and would result in injury to Plaintiffs, and agreed and understood that each would act in concert with the others to achieve this purpose.

73. On October 15, 2007, Mirabilis and Nexia served Curry and Hailstones personally with the complaint that initiated this litigation.  The service of the initial complaint took place in Scottsdale, Arizona, at the "58th Audit Directors & Managers Symposium," a conference which was attended by some 75 delegates including numerous professional acquaintances of both Hailstones and Curry.  The gravamen of the complaint is that when Curry and Hailstones left the employ of Mirabilis and Nexia Strategy, they took with them certain

24

intellectual property, the so-called "Nexia Certification," which plaintiffs claim belongs to Nexia.

74. Curry had left the employ of Nexia Strategy approximately one (1) year prior to the time the complaint was served on her.   Hailstones left the employ of Mirabilis approximately nine (9) months prior to the time the complaint was served.   At no time prior to the date that the complaint was served on them did anyone representing either Mirabilis or Nexia ever express any dissatisfaction about the so-called "Nexia Certification" and no demand was ever made for them to return it.

75. Mirabilis, Nexia, Amodeo, Amar, Bates, and Mokwa knew that Curry and Hailstones were scheduled to present at the conference on Sunday, October 14, 2007.

76. Mirabilis, Nexia, Amodeo, Amar, Bates, and Mokwa did not contact the conference organizers to attempt to prevent Curry and Hailstones from presenting at the conference, despite the fact that they were allegedly concerned that Nexia Certification would be promoted for Hailstones and Curry's personal gain and or benefit.

77. Mirabilis, Nexia, Amodeo, Amar, Bates, and Mokwa did not make any effort to contact Curry or Hailstones to request that they refrain from presenting at the conference, despite the fact that they were allegedly concerned that Nexia Certification would be promoted.   Upon information and belief, Amar, Bates, and Mokwa were physically present at the resort in Scottsdale, Arizona where the conference was held prior to and during the same time that Curry and Hailstones were presenting.

78. Plaintiffs' Motion for Preliminary Injunction, filed on October 12, 2007, along with the complaint, asked the court to enjoin Curry and Hailstones from using "Nexia Certification" during their scheduled October 14, 2007, presentations at the Scottsdale, Arizona conference. On information and belief, Amar, Bates, and Mokwa were physically present at the resort in Scottsdale, Arizona, where the conference was held prior to and during the same time that Curry and Hailstones were presenting.  Nevertheless, Amar, Bates, Mokwa, Amodeo, Nexia and Mirabilis made no attempt to serve Curry or Hailstones prior to the referenced presentations.

79. Rather, on the morning of October 15, 2007, the day after Curry and Hailstones had both presented, an unknown process server, in the company of Amar, Bates, and Mokwa, all of whom, upon information and belief, were acting on behalf of and as agents of Mirabilis and Nexia, confronted Curry and Hailstones within earshot of a group of the organizers and attendees of the conference having breakfast.

80. At that time, Mokwa held up and displayed a copy of the Saturday, October 13, 2007 Orlando Sentinel featuring the banner headline: "Mirabilis Files Suit Against Former Executives."  Mokwa loudly announced, "See, you are on the front page of the paper for stealing assets."  Such conduct was an overt act in furtherance of the conspiracy.

81. When Curry pointed out that the intellectual property at issue had been addressed by a series of three agreements, Amar responded, "I don't care about any bullshit agreements.  $220 million is missing while you were in charge and now you are here selling anti-fraud solutions.  Where did the money go?"  Amar then mocked and taunted Hailstones saying, "I

guess you have to go back to the UK now, huh?"   Such conduct was an overt act in furtherance of the conspiracy.

82. The above statements were false, misleading, and not relevant to the judicial proceedings regarding the complaint filed in Florida.

83. In addition, the false and misleading statements were published to a group of the organizers and attendees of the conference, persons having no relationship to the proposed or pending judicial proceeding.

84. On information and belief, at the time that these false and misleading statements were made, Bates was electronically recording the proceedings.

85. Mirabilis and Nexia are vicariously liable because Bates, Amar, and Mokwa acted intentionally and within their actual and apparent authority as Plaintiffs' representatives.

86. The defamatory false and misleading statements made by Amar and Mokwa about Curry and Hailstones constitute slander *per se* because they stated that Curry and Hailstones had committed illegal or dishonest acts which were not the subject of the lawsuit they were there to serve.

87. In cases of slander *per se*, general damages are presumed.

88. Defendants made the statements set forth above with malice and intent to injure Plaintiffs.

89. As a result of the Defendants' actions, Curry and Hailstones were injured in their good name and reputation, were brought into public scandal and disgrace by many persons with whom

they previously had social and business relationships, have suffered mental anguish, and have been injured in their businesses by having lost business opportunities.

90. Curry and Hailstones suffered severe damages, in an amount to be determined at trial, because of the Counterclaim and Third Party Defendants' conspiracy to commit slander against them.


COUNT  6: SLANDER *PER SE*/ CURRY AND HAILSTONES V. MIRABILIS, NEXIA, AND MOKWA

91. Counterclaim and Third Party Plaintiffs Curry and Hailstones restate the allegations in Paragraphs 1 through 90 as if fully set forth herein.

92. As set forth in Count 5 above, on October 15, 2007, Mirabilis and Nexia served Curry and Hailstones personally with the complaint that initiated this litigation in Scottsdale, Arizona, at the "58th Audit Directors & Managers Symposium."  That professional conference was attended by some 75 delegates, including numerous professional acquaintances of both Hailstones and Curry.

93. At that time, within earshot of approximately 40 of the organizers and attendees of the conference, Defendant Mokwa held up and displayed a copy of the Saturday, October 13, 2007 Orlando Sentinel featuring the banner headline: "Mirabilis Files Suit Against Former Executives."  Mokwa loudly announced, "See, you are on the front page of the paper for stealing assets."

94. The above statement by Mokwa was made of and concerning Curry and Hailstones.

95. The above statement was false, misleading and not relevant to a judicial proceeding.

96. The false and misleading statement was published to approximately 40 of the organizers and attendees of the conference, persons having no relationship to a proposed or pending judicial proceeding.

97. The service of the lawsuit upon Curry and Hailstones, along with the false and misleading statements and implications that Curry and Hailstones were thieves, was deliberately staged to embarrass, humiliate, and discredit Hailstones and Curry in front of their colleagues and peers.  Curry and Hailstones were injured in their good name and reputation and brought into public scandal and disgrace by many persons with whom they previously had social and business relationships, have suffered mental anguish and have been injured in their businesses by having lost business opportunities.

98. The false and defamatory statements made about Curry and Hailstones by Mokwa constitute slander *per se* because they suggest that Curry and Hailstones committed illegal or dishonest acts.   Mirabilis and Nexia are vicariously liable for Mokwa's false and defamatory statements, because Mokwa acted intentionally and within his actual and apparent authority as their representatives.

99. In cases of slander *per se*, general damages are presumed.

100.    Curry and Hailstones suffered damages as a result of the slander *per se* in an amount to be determined at trial, damages which were compounded because Curry, an accountant and licensed attorney, and Hailstones, a Chartered Accountant, are in the business of creating and

distributing anti-fraud solutions, and the slanderous statements accused them of dishonest and illegal acts.

<u>COUNT 7: SLANDER *PER SE* / CURRY AND HAILSTONES<br>V. MIRABILIS, NEXIA, AMAR</u>

101.    Counterclaim and Third Party Plaintiffs restate the allegations in Paragraphs 1 through 100 as if fully set forth herein.

102.    As set forth in the Conspiracy to Commit Slander Count above, on October 15, 2007, Mirabilis and Nexia served Curry and Hailstones personally with the complaint that initiated this litigation in Scottsdale, Arizona, at the "58th Audit Directors & Managers Symposium," which was attended by some 75 delegates including numerous professional acquaintances of both Hailstones and Curry.

103.    At that time, within earshot of a group of the organizers and attendees of the conference, Defendant Amar, in the company of defendants Bates and Mokwa, stated to and about Curry and Hailstones: "$220 million is missing while you were in charge and now you are here selling anti-fraud solutions.  Where did the money go?"

104.    The above statement is false, misleading and not relevant to a judicial proceeding.

105.    The false and misleading statement was published to approximately 40 of the organizers and attendees of the conference, persons having no relationship to a proposed or pending judicial proceeding.

106.    The service of this lawsuit upon Curry and Hailstones, along with the false and misleading statements and implications that Curry and Hailstones were thieves, was

deliberately staged to embarrass, humiliate, and discredit Hailstones and Curry in front of their colleagues and peers.

107.    As a result of Amar's defamatory statement, Curry and Hailstones were injured in their good name and reputation, were brought into public scandal and disgrace by many persons with whom they previously had social and business relationships, have suffered mental anguish, and have been injured in their businesses by having lost business opportunities.

108.    The false and defamatory statement made about Curry and Hailstones by Amar constitutes slander *per se* because it suggests that Curry and Hailstones committed illegal or dishonest acts.  Mirabilis and Nexia are vicariously liable for Amar's false and defamatory statement because Amar acted intentionally and within his actual and apparent authority as their representatives,

109.    In cases of slander *per se*, general damages are presumed.

110.    Curry and Hailstones suffered damages as a result of the slander *per se* in an amount to be determined at trial.  Said damages were compounded because Curry, an accountant and licensed attorney, and Hailstones, a Chartered Accountant, both are in the business of creating and distributing anti-fraud solutions and the slanderous statements accused them of dishonest and illegal acts.

<u>COUNT 8:  INTENTIONAL INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIP / CURRY AND HAILSTONES V. MIRABILIS, NEXIA, AMODEO, AMAR, BATES, AND MOKWA</u>

111.    Counterclaim and Third Party Plaintiffs Curry and Hailstones restate the allegations in Paragraphs 1 through 110 as if fully set forth herein.

112.   After their respective separations from Mirabilis and Nexia, Hailstones and Curry were developing business relationships with various other parties in the hopes of marketing the anti-fraud solution that ultimately would result from their respective efforts.

113.   Mirabilis, Nexia, Amodeo, Amar, Bates, and Mokwa knew that Curry and Hailstones were engaged in developing these business relationships.

114.   Mirabilis, Nexia, Amodeo, Amar, Bates, and Mokwa intentionally committed the acts set forth in the foregoing ¶¶ 58 through 109, including breach of Hailstones' Termination Agreement and slander, for the purpose of interfering with those relationships.

115.   The conduct of Mirabilis, Nexia, Amodeo, Amar, Bates, and Mokwa was outrageous.

116.   The conduct of Mirabilis, Nexia, Amodeo, Amar, Bates, and Mokwa did interfere with Curry's and Hailstones' business relationships.

117.   As a result of the conduct of Mirabilis, Nexia, Amodeo, Amar, Bates, and Mokwa, Curry and Hailstones have suffered injuries in an amount to be established at trial.

COUNT 9: CIVIL CONSPIRACY  TO INTENTIONALLY INTERFERE WITH
ADVANTAGEOUS BUSINESS RELATIONSHIPS: CURRY AND HAILSTONES
V. NEXIA, MIRABILIS, AMODEO, AMAR, BATES, AND MOKWA

118.   Counterclaim and Third Party Plaintiffs Curry and Hailstones restate the allegations in Paragraphs 1 through 117 as if fully set forth herein.

119.   On or about October 15, 2007, and at various times prior thereto, Defendants Nexia, Mirabilis, Amodeo, Bates, Amar and Mokwa met, joined together, planned, and conspired to

interfere with advantageous business relationships of Curry and Hailstones by engaging in the conduct set forth in §§ 71 through 110.

120.    Upon information and belief, Defendants Nexia, Mirabilis, Amodeo, Bates, Amar and Mokwa agreed or understood that the purpose of their meetings and agreements as described §§ 71 through 110 were unlawful and would result in injury to Plaintiffs, and agreed and understood that each would act in concert with the others to achieve this purpose.

121.    On or about October 15, 2007, one or more defendants committed an overt act in furtherance of the above-described conspiracy, to wit, Defendant Amar stated to Curry and Hailstones in the presence of numerous attendees of the "58th Audit Directors & Managers Symposium" in Scottsdale, Arizona: "There is $220 million missing from Mirabilis.  What did you do with it?"   As an additional overt act in furtherance of the conspiracy, Defendant Mokwa then held up and displayed to the conference attendees the Saturday, October 13, 2007, Orlando Sentinel story which said that Curry and Hailstones were accused of absconding with Mirabilis/Nexia assets.

122.    Defendants undertook the acts described in Paragraph 121 with malice and intent to injure Plaintiffs.

COUNT 10: INDEMNITY / CURRY AND HAILSTONES V. MIRABILIS AND NEXIA

123.    Counterclaim Plaintiffs restate the allegations in Paragraphs 1 through 122 as if fully set forth herein.

124.    Both Hailstones' and Curry's termination agreements with Mirabilis and Nexia, respectively, specify that the employers will indemnify the employee from and against all

33

claims brought against him or her, and said agreements do not exclude claims brought by the Plaintiffs.

125.     Mirabilis and Nexia are required to indemnify Curry and Hailstones for any damages found against Curry and Hailstones.

COUNT 11: INDEMNITY / CURRY AND HAILSTONES V. AQMI

126.     Counterclaim Plaintiffs restate the allegations in Paragraphs 1 through 125 as if fully set forth herein.

127.     In AQMI's contract with Mirabilis, Amodeo, via his consulting enterprise, AQMI, agreed to indemnify Curry and Hailstones, including attorney's fees and legal expenses, against any claims, liabilities, losses, or expenses resulting from the actions of Amodeo or AQMI.

128.     Amodeo, via his company AQMI, is required to indemnify Curry and Hailstones for any damages found against Curry and Hailstones and for the attorneys' fees and legal expenses they have incurred in defense of this claim.

COUNT 12: CURRY AND HAILSTONES V. NEXIA AND MIRABILIS / ABUSE OF PROCESS

129.     Counterclaim Plaintiffs restate the allegations in Paragraphs 1 through 128 as if fully set forth herein.

130.     Nexia and Mirabilis brought the claims in the instant lawsuit for purposes other than to recover the asset sued for, *i.e.*, the so-called "Nexia Certification."

131.   Counterclaim Defendants are aware of an ongoing criminal investigation by the United States Attorney for the Middle District of Florida involving Mirabilis and Amodeo in which Curry has been subpoenaed to testify and as to which Hailestones has revlevant knowledge and information.

132.   Upon information and belief, the instant lawsuit was brought in an effort to intimidate Curry and Hailstones to prevent and/or impede their cooperation with the United States Attorney.

133.   The instant lawsuit was brought for the further purpose of discrediting the testimony of Curry and Hailstones in the event of their testimony against any defendants who may be charged as a result of said investigation.

134.   The instant lawsuit was brought for the further purpose of invoking the Directors and Officers portion of Mirabilis' General Commercial Liability policy and its excess insurance policy.

135.   Curry and Hailstones have suffered damages, in an amount to be determined at trial, as a result of Mirabilis' and Nexia's abuse of process.

<u>PRAYERS FOR RELIEF</u>

WHEREFORE, Defendants Curry, Hailstones, Palaxar Group, and Palaxar Holdings pray for judgment as follows:

1.   That the Complaint against them be dismissed in its entirety;

2.   That they be awarded their costs and reasonable attorney's fees incurred in defending against plaintiffs' claims;

35

3.      With respect to Count One, Breach Of Contract / Curry vs. Wellington Capital / (January 2005 Agreement), that the Court award damages to Curry in an amount to be determined at trial, but not less than $2,395,833.30, plus applicable interest;

4.      With respect to Count Two, Fraud in the Inducement / Curry vs. Amodeo, Mirabilis, Nexia, Pollock, and Sadrianna (Nexia Employment Agreement), that the Court award damages in an amount to be determined at trial;

5.      With respect to Count Three: Breach of Separation Agreement / Curry vs. Mirabilis And Nexia, that the Court award damages to Curry in an amount to be determined at trial;

6.      With respect to Count Four, Breach of Termination Agreement / Hailstones vs. Mirabilis, that the Court award damages to Hailstones in an amount to be determined at trial;

7.      With respect to Count Five, Civil Conspiracy to Commit Slander/ Curry and Hailstones vs. Nexia, Mirabilis, Amodeo, Amar, Bates, and Mokwa, that the Court award damages to Hailstones and Curry in an amount to be determined at trial;

8.      With respect to Count Six, Slander *per se*: Curry and Hailstones vs. Mirabilis, Nexia, and Mokwa, that the Court award damages to Curry and Hailstones in an amount to be determined at trial;

9.      With respect to Count Seven, Slander *per se*: Curry and Hailstones vs. Mirabilis, Nexia, and Amar, that the Court award Curry and Hailstones damages in an amount to be determined at trial;

11.     With respect to Count Eight, Intentional Interference with Advantageous Business Relationship / Curry and Hailstones v. Mirabilis, Nexia, Amodeo, Amar, Bates, and Mokwa, that the Court award damages to Curry and Hailstones in an amount to be determined at trial;

12.     With respect to Count Nine, Civil Conspiracy  to Intentionally Interfere with Advantageous Business Relationships: Curry and Hailstones v. Nexia, Mirabilis, Amodeo, Amar, Bates, and Mokwa, that the Court award damages to Curry and Hailstones in an amount to be determined at trial;

13.     With respect to Count Ten, Indemnity: Curry and Hailstones v. Mirabilis and Nexia, that the Court award damages to Hailstones and Curry in an amount equal to their attorneys' fees and costs expended in defending against this lawsuit, plus interest;

14.     With respect to Count Eleven, Indemnity:  Curry and Hailstones v. Aqmi, that the Court award damages to Hailstones and Curry in an amount equal to their attorneys' fees and cost expended in defending against this lawsuit, plus interest;

15.     With respect to Count Eleven, Abuse of Process, Curry and Hailstones against Mirabilis and Nexia, that the Court award damages in an amount to be determined at trial;

16.     That the Court award punitive damages as appropriate and allowed by law, including, in particular, reasonable attorneys' fees and costs; and

17.     That the Court order such other and further relief as is deemed just and proper.

Respectfully submitted,

/s/ Martin R. Raskin
MARTIN R. RASKIN
Florida Bar No. 315206
JANE SERENE RASKIN
Florida Bar No. 848689
**RASKIN & RASKIN, P.A.**
2601 South Bayshore Drive
Suite 725
Miami, Florida  33133
Telephone: (305) 444-3400
Facsimile: (305) 445-0266
mraskin@raskinlaw.com

Attorneys for Defendant Curry,
Palaxar Group, LLC and Palaxar Holdings,
LLC

KATHLEEN B. HAVENER
**HAHN LOESER + PARKS LLP**
Suite 3300, 200 Public Square
Cleveland, OH 44114
Telephone: (216) 274-2297
Facsimile:  (216) 241-2824
kbhavener@hahnlaw.com

Attorneys for Defendants Curry, Hailstones,
Palaxar Group, LLC and Palaxar Holdings,
LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 6 2008, I electronically filed the foregoing Joint Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint, First Amended Counterclaims and Third Party Claims of Defendants Edith Curry, Frank Hailstones, Palaxar Group, LLC, And Palaxar Holdings, LLC with the Clerk of Court using the CM/ECF system which will send a notice of electric filing to the following:

> Aaron C. Bates, Esquire
> abates@goldbergbates.com
>
> J. Russell Campbell, Esquire
> rcampbell@balch.com

I further certify that on March 6, 2008, a copy of the foregoing Answer, Affirmative Defenses, and Amended Counterclaims has been furnished by U.S. Mail to:

> Allen Estes, Esquire
> Balch & Bingham LLP
> P.O. Box 306
> Birmingham, AL 35201

> /s/ Jane Serene Raskin
> JANE SERENE RASKIN