## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

MIRABILIS VENTURES, INC. and
NEXIA STRATEGY CORPORATION,

      **Plaintiffs,**

v.                            **CASE NO.: 6:07-CV-1788-ORL-28-KRS**

PALAXAR GROUP, LLC;
PALAXAR HOLDINGS, LLC;
FRANK HAILSTONES; EDITH CURRY
a/k/a EDITH BROADHEAD; and
FICTITIOUS DEFENDANTS 1-8.

      **Defendants.**

### DECLARATION OF JODI JAIMAN

1.     My name is Jodi Jaiman. I am a resident of Orange County, Florida. I am over the age of 19 and of sound mind.

2.     I am currently the president of Mirabilis Ventures, Inc ("Mirabilis") and Nexia Strategy Corporation ("Nexia").

3.     I am currently the sole director of Nexia.

4.     Mirabilis is the sole shareholder of Nexia.

5.     I have reviewed the Complaint, Defendants' Answers, and Exhibits A and B to Defendants' Answers.

6.     I have also reviewed the meeting minutes for the Board of Directors Meetings and Shareholders' Meetings for Mirabilis and Nexia from the beginning of 2006 through the present date.



7.    Neither the Board of Directors for Mirabilis nor Nexia authorized, approved or ratified the transactions reflected in Exhibits A or B to Defendants' Answers.

8.    Mirabilis, in its capacity as the sole shareholder of Nexia, did not authorize, approve, or ratify the transactions reflected in Exhibits A or B to Defendants' Answers.

9.    Further, the By-laws for both Mirabilis and Nexia prohibit the transactions reflected in Exhibits A and B to Defendants' Answers without the authorization, approval or ratification of the Board of Directors.

10.   Frank Hailstones did not have the authority to execute Exhibits A and B to Defendants' Answers on behalf of Mirabilis or Nexia without the authorization, approval or ratification of the Board of Directors for Mirabilis and Nexia.

11.   Additionally, Frank Hailstones did not have the authority to execute Exhibits A and B to Defendants' Answers on behalf of Mirabilis or Nexia without the authorization, approval or ratification of Mirabilis, in its capacity as the sole shareholder of Nexia.

12.   The facts set forth in this declaration are based on my personal knowledge or knowledge available to me in my capacity as president of Mirabilis.

13.   Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the facts set forth in this declaration are true to the best of my knowledge.


Jodi Jaiman

Date: Dec. 5, 2007

## MINUTES OF

## NEXIA STRATEGY CORPORATION

### SPECIAL JOINT MEETING OF DIRECTORS AND SHAREHOLDERS

#### April 22, 2005

A special joint meeting of the directors and shareholders of NEXIA STRATEGY CORPORATION was held at 20 N. Orange Avenue, Orlando, Florida 32801 on April 22, 2005, at 9:00 am.  All of the directors and shareholders were present.  Frank Amodeo acted as Chairman of the meeting.

Upon motion duly made and seconded, the following resolution was unanimously adopted:

RESOLVED, the Company is authorized to open a General Business account.

RESOLVED, that DAN MYERS shall be the authorized and appointed signatory on said account.

RESOLVED, that DAN MYERS is hereby authorized and directed to take all such actions as he shall deem necessary or advisable to carry out the foregoing resolutions.

There being no further business, the meeting was adjourned at 9:55 am.

_____
Frank Amodeo, Chairman

#### WAIVER AND CONSENT

The undersigned, being all the shareholders and directors of Nexia Strategy Corporation, hereby waive notice of the Special Joint Meeting of the Board of Directors and Shareholders held on April 22, 2005, and consent to all actions taken thereat.

_____
Frank Amodeo, Sole Director and Shareholder

STATE OF FLORIDA
COUNTY OF ORANGE

The foregoing was acknowledged before me this _____ day of _____, 2005 by FRANK AMODEO, who is personally known to me or who has produced _____ as identification and who did take an oath, and deposes and says that the matters and things contained therein are true and correct.

_____
Print: _____
Notary Public, State of Florida
My Commission Expires: _____
My Commission No. _____

# EXHIBIT 1

MVI/Palaxar - PI
001

### WRITTEN ACTION OF THE SHAREHOLDERS
### OF
### NEXIA STRATEGY CORPORATION

#### December 13, 2006

The undersigned, being and constituting all of the Shareholders of **NEXIA STRATEGY CORPORATION**, a Florida corporation (the "Corporation"), pursuant to Florida Statutes, and on this the 13th day of December, 2006, do hereby consent to the following actions to be taken without a meeting of the Shareholders of this Corporation:

**WHEREAS,** the Shareholders wish to correct prior resolutions and ratify actions taken by the Board of Directors and Officers of the Corporation prior to the date of these resolutions.

#### NOW, THEREFORE:

**BE IT RESOLVED,** that except as otherwise set forth herein, the Shareholders do hereby ratify and approve and effectuate all actions taken by the Board of Directors and Officers of the Corporation from the date of inception through December 13, 2006; and be it,

**FURTHER RESOLVED,** that the Shareholders confirm and ratify the following corporate events, corrections and transactions:

1.     The Shareholders do hereby acknowledge that the "Minutes of the First Meeting of the Incorporator of Nexia Strategy Corporation", dated April 20, 2005, contains certain mistakes, and that in fact Mr. Lawrence Haber was the incorporator of the Corporation, not Frank Amodeo, pursuant to the Articles of Incorporation of the Corporation. Edith Curry mistakenly did not sign the Minutes; although consented to the actions thereat. Furthermore, Frank Amodeo was elected to the Corporation's Board of Directors by the incorporator to serve on the Board of Directors together with Mr. Haber.

2.     The Shareholders do hereby acknowledge that the "Minutes of the First Meeting of the Board of Directors of Nexia Strategy Corporation", dated April 20, 2005, contains certain mistakes, and that Frank Amodeo was not the sole director of the Corporation, and that in fact both Mr. Amodeo and Mr. Haber were the only two (2) directors of the Corporation. Additionally, the date on page 6 of these meeting minutes should be April 20, 2005, and not April 20, 2003 which was a mistake. Furthermore, although the Waiver of Notice of the First Meeting of the Board of Directors of Nexia Strategy Corporation is not contained in the corporate book, all of the directors consented to the actions taken thereat.

3.     The Shareholders do hereby acknowledge that the "Bylaws of Nexia Strategy Corporation", dated April 18, 2005, should state under Section 3.11 that the initial number of directors shall be Two (2). Furthermore, it is acknowledged that the correct date for the execution of the bylaws should be April 20, 2005.

4.     The Shareholders acknowledge that Mr. Amodeo was the sole shareholder of One Thousand (1,000) shares of common stock of the Corporation, which represented One Hundred Percent (100%) of all issued and outstanding shares of common stock of the Corporation, as of April 20, 2005.

MVI/Palaxar – P1
002

5.      The Shareholders acknowledge, confirm and ratify the Stock Purchase Agreement which was executed on June 30, 2005, by and between Frank Amodeo and Mirabilis Ventures, Inc., a Nevada corporation, whereby Mr. Amodeo sold all of his stock in the Corporation to Mirabilis Ventures, Inc., entitling Mirabilis Ventures, Inc. to One Hundred Percent (100%) of all issued and outstanding shares of common stock of the Corporation, as of June 30, 2005. Furthermore, on this date, Mr. Amodeo was removed as an officer of the Corporation and as a director of the Corporation, leaving only one sole director, Lawrence Haber.

6.      The Shareholders acknowledge, confirm and ratify the cancellation of Stock Certificate Number 1, which was issued to Frank Amodeo on April 20, 2005 for One Thousand Shares (1,000) shares of common stock, and further do hereby acknowledge, confirm and ratify the issuance of Stock Certificate Number 2 to Mirabilis Ventures, Inc. on June 30, 2005 for One Thousand Shares (1,000) shares of common stock of the Corporation.

7.      The Shareholders acknowledge, confirm and ratify the change of address for the Corporation to 111 North Orange Avenue, Suite 2000, Orlando, Florida 32801, which was mailed off to the Florida Secretary of State on October 19, 2006.

8.      The Shareholders acknowledge, confirm, adopt and ratify the removal of Edie Curry, Dr. Robert Pollack and Dan Myers as officers of the Corporation, and the addition of Frank Hailstones as President, Secretary and Treasurer and Esta Tanenbaum as Vice President of the Corporation pursuant to the Articles of Amendment which were filed with the Florida Secretary of State on October 27, 2006.

and be it,

FURTHER RESOLVED, the Shareholders do hereby agree to, and authorize, the removal of Lawrence Haber as director of the Corporation; and be it,

FURTHER RESOLVED, that the Shareholders do hereby authorize and appoint the following persons to serve on the Board of Directors of the Corporation commencing immediately and continuing thereafter until such time as their successors have been nominated, qualified, and elected:

Fernando Simo
Frank Hailstones
Laurie Holtz

and be it,

FURTHER RESOLVED, that any one of the directors, or any officer, of this Corporation be and they hereby are each and all authorized and directed in the name, and on behalf, of this Corporation to carry out and fulfill the purposes and intent of the Resolutions contained herein including, but not limited to, the documents and instruments set forth in these Resolutions.

Execution of this certificate by the undersigned, constituting all of the Shareholders of the Corporation, waives any requirement of a formal annual meeting or formal notice to conduct the business referred to herein.

MVI/Palaxar - PL
003

This written consent may be executed in one or more identical counterparts and shall be effective upon execution of counterparts by unanimous consent of the Shareholders of the Corporation.

Dated: December 13, 2006

SHAREHOLDERS:

Signature:
Mimbiis Ventures, Inc., a Nevada corporation
By:    Fernando Simo
Its:    President

MVI/Palaxar - PI
004

Case 6:07-cv-01788-JA-GJK   Document 162-1   Filed 10/15/09   Page 8 of 28
Case 6:07-cv-01788-JA-UAM    Document 24-3    Filed 01/04/2008   Page 5 of 54

12/21/2006  15:06    3054162400                        NE FAX                           PAGE  02/04

## NEXIA STRATEGY CORPORATION

## MEETING OF THE BOARD OF DIRECTORS

### December 21, 2006

A meeting of the Board of Directors of Nexia Strategy Corporation, a Florida corporation (the "Corporation"), was held at 111 N. Orange Avenue, Suite 2000, Orlando, Florida 32801 on December 21, 2006, at 10:00 am. All of the directors were present, having waived notice of the meeting. Frank Hailstones acted as Chairman of the meeting.

The Chairman called the meeting to order and announced that this meeting was held pursuant to written waiver of notice and consent to the holding of this meeting. The waiver and consent was presented to this meeting and, on a motion duly made, seconded, and unanimously carried, was made a part of the records and ordered inserted in the Corporation's Corporate Book immediately preceding the records of this meeting.

Upon motion duly made, seconded and approved by the Board of Directors, the following resolutions were unanimously adopted, ratified and approved:

RESOLVED, that the Board of Directors do hereby ratify and adopt the following Shareholders' resolutions made pursuant to the "Written Actions of the Shareholders" dated December 13, 2006:

The confirmation and ratification of the change of address for the Corporation to 111 North Orange Avenue, Suite 2000, Orlando, Florida 32801, which was mailed off to the Florida Secretary of State on October 19, 2005.

The confirmation and ratification of the removal of Edie Curry, Dr. Robert Pollack and Dan Myers as officers of the Corporation, and the addition of Frank Hailstones as President, Secretary and Treasurer and Esta Tanenbaum as Vice President of the Corporation pursuant to the Articles of Amendment which were filed with the Florida Secretary of State on October 27, 2006, which are also hereby ratified and confirmed.

and be it;

FURTHER RESOLVED, that the Board of Directors do hereby agree to, and authorize, the removal of Frank Hailstones as Secretary and Treasurer of the Corporation, and furthermore, the Board of Directors do hereby authorize and appoint the following persons to serve as, and continue to serve as, officers of the Corporation commencing immediately and continuing thereafter until such time as their successors have been nominated, qualified, and elected:

Frank Hailstones       - President and CEO
Esta Tanenbaum         - Vice President and Secretary
William F. Walsh       - Treasurer

and be it;

MVI/Palaxar - FI
005

FURTHER RESOLVED, that the Board of Directors do hereby authorize and approve that, effective immediately, Paul Glover and Daniel Myers shall be removed as signatories on any and all bank accounts opened on behalf of, and in the name of, the Corporation, and be it;

FURTHER RESOLVED, that the Board of Directors do hereby agree that, effective immediately, Fernando Simo and William F. Walsh shall be authorized and appointed as signatories together with Frank Hailstones, on any and all bank accounts opened on behalf of, and in the name of, the Corporation, and be it;

FURTHER RESOLVED, that the directors or any of the officers of the Corporation, are hereby authorized and directed to take any and all such actions and to execute and deliver any and all such additional agreements, documents and instruments as they may deem necessary and appropriate to carry out the foregoing resolutions.

There being no further business, the meeting was adjourned at 10:30 am.

DIRECTORS:

Signature:

Name: Frank Hailstones
Its:    Chairman, Director

Signature:
Name: Fernando Simo
Its:    Director

Signature:

Name: Laurie Holtz
Its:    Director

MVL/Palazar - PI
006

## NEXIA STRATEGY CORPORATION

### WAIVER AND CONSENT OF NOTICE OF
### MEETING OF THE BOARD OF DIRECTORS

The undersigned, constituting all of the directors of Nexia Strategy Corporation, do hereby waive notice and call of the time, place and purpose of the Meeting of the Board of Directors and hereby consent that the time and place for holding said meeting shall be 10:00 am on the 21st day of December, 2006, at 111 North Orange Avenue, Suite 2000, Orlando, Florida 32801, and do hereby further consent to all actions taken thereat.

Date:   December 21, 2006

Signature:
Name: Frank Hailstones
Its:    Chairman, Director

Signature:
Name: Laurie Holtz
Its:    Director

Signature:
Name: Fernando Simo
Its:    Director

MVI/Palaxar - PI
007

## MINUTES OF SPECIAL MEETING OF
## THE BOARD OF DIRECTORS OF
## NEXIA STRATEGY CORPORATION

This special meeting of the Board of Directors of Nexia Strategy Corporation, a Florida corporation (the "Corporation"), was convened at 1:15 p.m. on October 11, 2007.

Present at the meeting was Jodi Jaiman, the Sole Director of the Corporation, which constituted all of the Directors of the Corporation. All Directors have waived notice of the meeting, and such waiver has been made a part of these minutes. Jodi Jaiman was appointed Chairman of the meeting.

The Chairman called the meeting to order and stated that all of the Directors were present for the conduct of business.

NOW, THEREFORE, upon motion duly made, seconded, and approved by the Board of Directors, the following resolutions were unanimously adopted:

RESOLVED, that the Board of Directors do hereby authorize and approve the reinstatement of the Corporation for the purpose of filing and maintaining lawsuits against third-parties to re-acquire and collect assets of the Corporation, and do hereby authorize the officers and directors to file the appropriate documents with the Florida Secretary of State effectuating this reinstatement; and be it,

FURTHER RESOLVED, that the Board of Directors do hereby acknowledge, authorize and approve the removal, and/or accept the resignations, of Frank Hailstones as President and CEO, Esta Tanenbaum as Vice President and Secretary, and Bill Walsh as Treasurer of the Corporation, as well as any and all other officers that may have been in office for the Corporation prior to the date of these resolutions, effective as of the date of this resolution or date of resignation (whichever is earlier); and be it,

FURTHER RESOLVED, that the Board of Directors do hereby adopt, ratify and approve the following individuals to serve as the officers of the Corporation with such appointment effective as of the date of this resolution, and continuing thereafter until such time as they have been removed, they have resigned, or their successors have been nominated, qualified, elected and/or appointed:

| Jodi Jaiman | - President |
| Shane Williams | - Vice President |
| Jay Stollenwerk | - Treasurer and Secretary |

and be it,

FURTHER RESOLVED, that the Board of Directors do hereby authorize and approve retaining the law firms of Goldberg Bates, PLLC and Balch & Bingham, LLP to pursue all

MVI/Palaxar - P1
006

lawsuits and causes of action on behalf of, and available to, the Corporation against Palaxar Group, LLC and Palaxar Holdings, LLC and any of their respective subsidiaries and affiliates and Palaxar's officers, directors, employees, agents, or representatives as directed by the Corporation; and be it,

FURTHER RESOLVED, that the Board of Directors do hereby authorize and approve the removal of the current Registered Agent, if any, and do hereby authorize and appoint the law firm of Goldberg Bates, PLLC as Registered Agent of the Corporation, effective immediately; and be it,

FURTHER RESOLVED, that the Board of Directors do hereby expressly agree that the Corporation shall indemnify and hold Jodi Jaiman, Shane Williams and Jay Stollenwerk harmless from any and all actions, claims, liabilities and causes of actions of any kind or nature which may be asserted against them in connection with their services on behalf of the Corporation; and be it,

FURTHER RESOLVED, that any acting officer of the Corporation, or their designee, shall be, and hereby is, authorized, empowered, and directed in the name of and on the behalf of the Corporation, to take all such additional actions and to execute and deliver such additional agreements, documents and instruments as he or she may deem necessary or appropriate to implement the provisions of the foregoing resolutions, the authority for the taking of such action and the execution and delivery of such agreements, documents, and instruments to be conclusively evidenced thereby.

There being no further business before the meeting, the meeting was adjourned at 1:30 p.m.

DIRECTOR:

By: Jodi Jaiman, Sole Director

MVI/Palaxar - PI
089

## WAIVER OF NOTICE OF
## SPECIAL MEETING OF THE BOARD OF DIRECTORS OF
## NEXIA STRATEGY CORPORATION

The undersigned, constituting all of the Board of Directors of Nexia Strategy Corporation, a Florida corporation, do hereby waive notice and call of the time, place and purpose of the Special Meeting of the Board of Directors, and hereby consent that the time and place for holding said meeting shall be 1:15 p.m. on the 11th day of October, 2007, at 3660 Maguire Boulevard, Suite 103, Orlando, Florida, and do hereby further consent to all actions taken thereat.

DIRECTOR:

By: Jodi Jaiman, Sole Director

MVI/Paloxar - PI
010

WEDNESDAY, OCTOBER 17, 2007

## Palaxar Lawsuit

*This news release was originally distributed on October 15, 2007.*

Orlando, FL –Orlando-based private equity fund Mirabilis Ventures, Inc. has filed a lawsuit and a preliminary injunction against Palaxar, LLC and its founding members, Frank Hailstones and Edith Curry, to enjoin them from utilizing property, trade secrets and confidential/proprietary information that rightfully belongs to Mirabilis. Hailstones and Curry were formerly CEO and Executive Vice President, respectively, of Mirabilis Ventures, Inc.

According to its Web site, Palaxar provides clients with anti-fraud solutions. According to the lawsuit, these solutions are based on research, studies, strategies and software products developed while Hailstones and Curry were employed by Mirabilis. Mirabilis is seeking approximately $20 million in damages.

Hailstones and Curry were served today with the lawsuit during an anti-fraud symposium in Scottsdale, Arizona, a necessary action given Hailstones's residence in the United Kingdom. Hailstones and Curry were featured speakers at the symposium; their presentation titled, "Dealing With a Likely Fraud Situation: Audit Management's Responsibilities."

The lawsuit against Palaxar is among a series of actions by Mirabilis to collect unpaid loans made to other companies as well as assets absconded with by former Mirabilis officers. Mirabilis recently announced it has divested all operating and non-financial assets. Proceeds from its asset sales and collection actions have been assigned to the Internal Revenue Service (IRS) until a determination can be made if Mirabilis is liable for unpaid payroll taxes incurred by Presidion Solutions, Inc., to which Mirabilis was a creditor and vendor. Presidion was dissolved on July 1, 2007. Frank Hailstones and Edith Curry were officers of Mirabilis during the two years Mirabilis had business relationships with Presidion and during which Presidion subsidiaries failed to pay $173 million in payroll taxes.

SHOULD THE ORLANDO SENTINEL RE-POST DELETED COMMENTS ABOUT MIRABILIS?

○ Yes
○ No

Vote | Show results

Votes so far: 112
Hours left to vote: 22

Join the Conversation
Contact Mirabilis Ventures
2007 W-2 Forms
Digg it

CATEGORIES

atlantic american (2)
cadent (1)
common paymaster (1)
mirabilis hr (1)
palaxar (3)
paradyme (1)
presidion (4)
stratis (2)

ARCHIVE

▼ 2008 (5)
  February (3)
  January (2)
► 2007 (17)

ADD THIS BLOG TO MY
**Technorati** FAVORITES

 Subscribe in a reader

**Nexia Strategy Corporation**
**Profit & Loss**
2006

| Nexia Consulting 2007 | Jan 2006 | Feb 2006 | Mar 2006 | Apr 2006 | May 2006 | Jun 2006 | FIRST HALF-YEAR | Jul 2006 | Aug 2006 | Sep-06 | Oct-06 | Nov-06 | Dec-06 | SECOND HALF-YEAR | FULL YEAR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | | | | |
| 4010 - Sales | $ 37,093 | $ 19,443 | $ 9,462 | $ 4,000 | | | $ 69,998 | $ 28,295 | $ 69,779 | $ 20,000 | $ 25,100 | $ 12,000 | | $ 155,174 | $ 225,170 |
| 4030 - Misc. Income | | | | $ 1,760 | | | $ 1,760 | $ 8,041 | $ 5,850 | $ 48,000 | $ 540 | | | $ 61,731 | $ 63,491 |
| MVI Internal Consulting | | | | | | | | | | | | | | | |
| 4900 - Interest Income | $ 687 | $ 321 | $ 197 | $ 53 | $ 12 | $ 4 | $ 1,274 | $ 4 | $ 4 | $ 4 | $ 4 | $ 4 | | $ 16 | $ 1,290 |
| Total Income | $ 37,780 | $ 19,764 | $ 9,657 | $ 5,833 | $ 12 | $ 4 | $ 73,050 | $ 36,340 | $ 74,833 | $ 68,004 | $ 25,744 | $ 12,000 | $ - | $ 216,921 | $ 289,971 |
| **Cost of Goods Sold** | | | | | | | | | | | | | | $ - | $ - |
| 7250 - Salaries | $ 91,800 | $ 92,361 | $ 306,817 | $ 108,447 | $ 417,248 | $ 199,921 | $ 1,216,594 | $ 387,750 | $ 264,082 | $ 104,100 | $ - | | | $ 755,932 | $ 1,972,505 |
| 5200 - Sub Contractor | | | | | | | | | | $ - | | | | $ - | $ - |
| Total COGS | $ 91,800 | $ 92,361 | $ 306,817 | $ 108,447 | $ 417,248 | $ 199,921 | $ 1,216,594 | $ 387,750 | | $ - | | | | $ 387,750 | $ 1,804,344 |
| Gross Profit | $ (54,020) | $ (72,597) | $ (297,160) | $ (102,614) | $ (417,236) | $ (199,917) | $ (1,143,544) | $ (351,410) | $ 74,833 | $ 68,004 | $ 25,744 | $ 12,000 | $ - | $ (170,829) | $ (1,314,373) |
| **Expense** | | | | | | | | | | | | | | $ - | |
| Printing & Production | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 1,200 | $ - | $ 901 | | $ 2,101 | $ 2,101 |
| Training | | | | | | | $ - | $ - | $ 1,205 | | | $ 1,385 | $ 982 | $ 3,612 | $ 3,612 |
| 6100 - Advertising | $ (88) | $ 45 | $ 4,321 | $ 948 | $ 5,540 | | $ 10,727 | $ 2,469 | $ - | $ 372 | | | | $ 2,841 | $ 13,568 |
| 6180 - Bank Charges | $ 90 | $ 45 | | | $ 15 | $ 24 | $ 175 | $ 58 | $ 14 | $ 7 | $ - | | | $ 77 | $ 252 |
| 6200 - Charitable Contributions | | | $ 820 | | $ 500 | $ 900 | $ 2,220 | $ 1,500 | $ - | $ - | $ 500 | | | $ 2,000 | $ 4,220 |
| 6250 - Consulting Fees | $ 3,500 | $ 84,377 | $ 12,000 | | | $ 7,500 | $ 87,377 | $ 2,100 | $ - | $ - | $ 29,000 | $ 14,300 | | $ 44,400 | $ 131,777 |
| 6251 - Commissions | | | | | | $ 5,344 | $ 5,344 | | $ - | $ - | $ - | | | $ - | $ 5,344 |
| 6300 - Education | | $ 4,025 | $ 7,584 | | | $ 2,310 | $ 13,908 | | $ - | $ - | $ - | $ 1,790 | | $ 1,790 | $ 15,698 |
| 6500 - Dues & Subscriptions | $ 1,305 | | | | $ 10 | $ 275 | $ 1,590 | $ 230 | $ - | $ - | $ - | | | $ 230 | $ 1,820 |
| 7000 - Lease Expense | | $ 4,019 | | | | | $ 4,019 | | $ - | $ - | $ - | | | $ - | $ 4,019 |
| 7150 - Legal & Accounting | $ 5,000 | | | $ 4,290 | | $ 3,598 | $ 4,007 | $ 17,091 | | $ 4,520 | $ 23,357 | $ 42,213 | | $ 70,161 | $ 87,152 |
| 7200 - Office Expense | $ 20,778 | $ 17,395 | $ 10,836 | $ 22,370 | $ 24,905 | $ 24,902 | $ 121,187 | $ 25,179 | $ 15,419 | $ 20,172 | $ (23,434) | $ 382 | | $ 38,717 | $ 159,904 |
| 7350 - Postage & Freight | $ 40 | $ 5,341 | $ 6,525 | $ 39 | $ 223 | $ 101 | $ 12,370 | $ 304 | $ - | $ 4,937 | $ - | | | $ 5,241 | $ 17,611 |
| 7380 - Recruiting | | | $ 646 | | | | $ 646 | | $ - | $ - | $ - | | | $ - | $ 646 |
| 7400 - Rent | $ 3,788 | $ 1,863 | $ 1,863 | $ 1,863 | | $ 97,767 | $ 107,112 | | $ - | $ - | $ - | | | $ - | $ 107,112 |
| 7750 - Telephone | $ 1,814 | $ 398 | | $ 581 | $ 1,061 | $ 1,900 | $ 5,614 | $ 1,630 | $ 169 | $ 292 | $ 455 | $ 716 | | $ 3,235 | $ 8,849 |
| 7760 - Travel | $ 46,223 | $ 14,536 | $ 14,863 | $ 39,451 | $ 2,328 | $ 8,377 | $ 125,679 | $ 10,328 | $ 21,757 | $ 20,163 | $ 2,368 | $ 465 | | $ 55,082 | $ 180,661 |
| 7770 - Meals & Entertainment | $ 3,500 | $ 699 | $ 3,458 | $ 552 | $ 1,608 | $ 1,207 | $ 11,050 | $ 1,100 | $ 1,189 | $ 450 | $ 786 | $ 192 | | $ 3,797 | $ 14,847 |
| 7960 - Penalties | $ - | $ - | $ - | $ - | $ 3 | $ - | $ - | $ - | $ - | $ - | $ 4,239 | | | $ 4,239 | $ 4,239 |
| Total Expense | $ 87,738 | $ 117,018 | $ 63,714 | $ 70,416 | $ 34,614 | $ 152,415 | $ 525,917 | $ 47,296 | $ 44,284 | $ 69,760 | $ 57,405 | $ 18,508 | $ - | $ 237,513 | $ 763,430 |
| Net Income | $ (141,758) | $ (189,615) | $ (360,874) | $ (173,030) | $ (451,850) | $ (352,334) | $ (1,669,460) | $ (398,706) | $ 30,599 | $ (1,738) | $ (31,662) | $ (6,808) | | $ (408,342) | $ (2,077,802) |

**Queries / Review Points**

1    Analysis of advertising spend by supplier
2    Consulting fees by vendor and date
3    Commissions by vendor
4    Education by vendor
5    Lease expense Feb 2006? For what and to whom?
6    Legal and accounting by vendor
7    Office expense by vendor and type
8    Salaries - Ref back to Common Paymaster invoices
9    Rent analysis - particularly Jun 2006
10    Travel - Analysis of people and costs
11    Meals and Entertainment - Analysis of people and type by month

**Notes:** Jan-Nov (Current Books) with large internal "Sales" removed for June ($18,540,587), Sept ($4,752,767)

## . ank Hailstones

| | |
|---|---|
| From: | Fernando Simo |
| Sent: | 20 June 2006 12:22 |
| To: | Frank Hailstones (M) |
| Cc: | Frank Amodeo; Shane Williams |
| Subject: | RE: Manufacturing Consulting |

Frank,
I totally agree with you, regarding Paul.   The lack of financials, in his opinion, is of
no concern to those operating the companies.  He provides what he wants and feels
appropriate--who is the customer?  In my old job as CFO, my operating team new about the
results on day one of the month by providing a "flash" report of the all elements of the
P&L.

It is NOT his decision as to what we find necessary to run our business.  He needs to
provide what WE feel is appropriate.  His behavior is totally unacceptable and insulting.

Best Regards,

Fernando
Work:      407-454-6660
FAX        407-426-9191
Cell         407-342-3347
Home     321-939-4264
Email:      fsimo@inabilisventures.com

-----Original Message-----
From: Frank Hailstones (M)
Sent: Monday, June 19, 2006 6:52 PM
To: Fernando Simo
Cc: Frank Amodeo; Shane Williams
Subject: RE: Manufacturing Consulting

Ok thanks
Interesting meetinf today
Also Kaurie in town tomorrow expecting financials for every company I think we should
arrange a meeting with him and Paul?
We need to sort this out
His outburst today was wholly inappropriate and his disrespectful comments unacceptable
especailly in such a forum They did not go  unnoticed Frank

  -----Original Message-----
From: Fernando Simo
Sent: Mon Jun 19 17:53:53 2006
To:   Frank Hailstones (M)
Cc:   Frank Amodeo; Shane Williams
Subject:    Manufacturing Consulting

Frank,

As per our conversation, I discussed with F1 the need to provide an intensive consulting
evaluation of our Manufacturing Domain; particularly, 2Wheel Tunes.  He agrees.  As a
minimum,

a.             An evaluation of its current supply chain.  Looking at reducing piece part costs as well as improving manufacturing cycle time.

b.             A Marketing Plan.  The plan, given the evaluation of piece parts, should allow for a tier pricing of 2Wheel Tunes products—to allow for Class B and C customers penetration of this product.  Additionally, the marketing plan should allow for OEM pricing.

c.             Sales Plan.  An aggressive (world-wide) sales plan.  The sales plan should look at the major, existing, two wheel vehicles manufacturers—Yamaha, Vespa, etc.

d.             Manufacturing Plan.

a.       Where can we manufacture high volume production?

b.       An evaluation of our current Systems – Bill of Materials, Labor and MRP—Can they handle high volume production.

c.       Cost Structure.

d.       Production Equipment.  Automation requires significant CAPEX investment.  What would it be?

e.             People/Leadership required.


Let's discuss in more detail.  Thanks.


Best Regards,


Fernando

Work:     407-454-6660

FAX       407-426-9191

Cell        407-342-3347

Home     321-939-4264

Email:      fdino@hirebilliovenumes.com

# Frank Hailstones

| From: | Kevin Leonard |
|---|---|
| Sent: | 26 September 2006 19:06 |
| To: | Frank Hailstones (M); Jodi Jaiman |
| Cc: | Nikitra Martin; Fernando Simo |
| Subject: | RE: Nexia Invoices |

Jodi would be in the best position to explain the Nexia invoices and I will forward the original invoices with your notations to her. Fernando and I had a similar conversation with Jodi this morning.

On a broader note, I don't know what source information Jodi uses or for that matter what source information I would use to charge out these costs 'accurately'.

For instance, is it based on where the employee's payroll is charged or what organization they may be providing service for on a project. If it is based upon payroll, is it where their payroll was charged at the time the charge was incurred or the date of the invoice? If it is based upon Common Paymaster's Payroll or the Headcount report, which list should be used? What if the Domain President doesn't agree with the payroll list? This is not uncommon.

If certain charges or charges for particular individuals are not chargeable to Nexia then it needs to be determined what entity should be responsible for them. I struggle with understanding to which entity certain charges belong at a particular point in time as the organizational structure, people's assignments have been and are very fluid.

I would suggest some basic rules that we'd all need to live by but given the natural tendencies of the organization, I don't think we could cover every permutation. Therefore if we are to ever get companies to Inter-company charge and gain agreement I believe we will need to have some basic ground rules and allowance for the moving target. For instance if it is a charge specific to a particular individual then agree a common Payroll Headcount report and let that be the referee.

I'd suggest some overhead application for certain central charges but that doesn't work particularly well for companies owned by different parent companies.

We can't agree UA charges, Tenshi charges, I-3 charges etc.

It is leading to a growing number of orphan charges and invoices. As well as I am sure instances where no 2 people might agree who is responsible. Further we will be putting more and more resources into no value added, swatting of charges back and forth.

I think a more fundamental approach is needed.

Kevin Leonard
Phone: 407 517 7779
Fax: 407 426 9191

**From:** Frank Hailstones (M)
**Sent:** Tuesday, September 26, 2006 12:03 PM
**To:** Kevin Leonard
**Cc:** Nikitra Martin; Fernando Simo
**Subject:** RE: Nexia Invoices

Kevin

These invoices are incorrect in several ways – some of the people charged are not/were not Nexia and, in addition contain insufficient explanation as to the charges (timing / period / nature of spend item).

I have done an analysis and highlighted the queries

Please confirm they will NOT be processed until the queries are resolved

**From:** Kevin Leonard
**Sent:** Tuesday, September 26, 2006 8:53 AM
**To:** Frank Hailstones (M)
**Cc:** Nikitra Martin
**Subject:** FW: Nexia Invoices
**Importance:** High


Kevin Leonard
Phone: 407 517 7779
Fax: 407 426 9191


**From:** Jodi Jaiman
**Sent:** Monday, September 25, 2006 2:30 PM
**To:** Kevin Leonard
**Cc:** Claudia Amell
**Subject:** Nexia Invoices
**Importance:** High

Kevin,

Attached are the Nexia invoices from TenShi Enterprises, Inc., as well as a lease schedule used to calculate the furniture and equipment costs.
You will receive the actual lease agreement electronically shortly and a full set of hard copies will be delivered to you within the next business day.

The invoices have been used credited towards the monies owed to Nexia Strategy.

If you have any questions, please do not hesitate to contact me.


Kind Regards,


*Jodi Jaiman*
*President*
*TenShi Enterprises, Inc.*
*407-454-6600*
*407-517-7879 (fax)*
*jjaiman@tenshienterprises.com*

## Frank Hailstones

| | |
|---|---|
| **From:** | Frank Hailstones (M) |
| **Sent:** | 30 August 2006 20:37 |
| **To:** | Fernando Simo |
| **Subject:** | RE: Desert Valley Travel |

Fernando,

Fully agree; also, I  suggest that you get access to the accounts (QB) of all of the companies.

I have been going through Nexia and there is lots of cleaning up required:

1 Lots of miscodings which I will reallocating out to other companies
2 A number of high value charges from F1 Axex Card ($150k first 6 months of 2006) which I need to analyse and validate
3 Almost $90k from Desert Avaiation - again I am seeking follow up data to analyse
4 Expenses charged which I have no idea who authorized

This is messy/sloppy coding; cost dumping; lack of monitoring.

I discussed with F1 and told him I was going to clean Nexia up for the year to date and discuss with you how we might clean up the rest of the companies so we all have a good starting point going forward.

I think we need to institute a few key controls immediately and link it to the current initiative on business and financial management

My thoughts on key actions (which I would like to get out this week):

1 We instruct that ALL expenses need to be approved by domain leaders then you/ me. All expenses get put in for payment processing Noon Friday and that we keep copies of them / register of whats been submitted
2 We get out a Policy note ASAP on T & E explaining the 'rules' - actual, business related and reasonable spend supported by receipts if greater than $20 per item. We need to explain policy re travel (air coach unless international / overnight) ; insurance (travel and car) ; define 'reasonable' in the context of meals, drinks etc
3 We instruct again, on the process for committing expenditure and require each business to keep a register of orders. We might also require a standard order form (seq numbered and controlled) with guidance on authority limits. Just now its all too late and after the fact
4 We design a simple Invoice Approval Form to be attached to every invoice. They should all be approved on the official form by domain leaders and they should keep a register
5 Above applies to internal companie as well as external vendors
6 All companies be required to submit a standard form note every month of goods/services sold, to whom and billing data so we can ensure we are billing regularly
7 We get a monthly report detailing every journal entry for every company
8 We get a monthly report from each company showing transactions for that month to confirm the above. This is very easy from QB

Fernando, your call from Friday. I will help you in any way I can

Let me have your thoughts

Frank Hailstones
CFO
111 N Orange Ave

## Frank Hailstones

**From:**      Fernando Simo
**Sent:**      26 September 2006 15:15
**To:**        Frank Hailstones (M)
**Subject:**   FW: Audit

Best Regards,

Fernando
Work:     407-454-6660
FAX       407-426-9191
Cell      407-342-3347
Home      321-939-4264
Email:    fsimo@mirabilisventures.com

**From:** Kevin Leonard
**Sent:** Tuesday, September 26, 2006 9:19 AM
**To:** Fernando Simo
**Cc:** Dan Myers; Paul Glover
**Subject:** Audit

You asked yesterday why the problem with the audit.  I will address at a higher level:

1. Legal transactions are devised, revised or reversed and therefore their ultimate financial accounting treatment will as well. Lack of clarity of ownership of various entities.
2. Flow of legal documents for sale agreement, note payments, transfers and other commitments are not freely shared, circulated or assessable.
3. Excessive use of un-agreed Intercompany transactions and lack of synchronization of both parties recording the same or at all.
4. Charges billed to one entity but for the benefit of another
5. Employees working across entities but invoiced to one
6. Responsibility centers do not mirror or follow legal corporate structure.
7. Decentralization of accounting records, major transactions from Trust fund accounts
8. No standard chart of accounts or common financial platform.
9. Distressed entities with lack of full history and records
10. Cash crossing unrelated entities for a third company's purposes

In my view many of these issues have accelerated in 2006.
Each area obviously can be addressed but it will require radical change to current behaviors that can not be driven without total executive commitment.

Kevin Leonard
Phone: 407 517 7779
Fax: 407 426 9191

41

09:21AM 1    very few assets, if any.
09:21AM 2        Q.    Does it have liabilities?
09:21AM 3        A.    Very few.  I believe I can think
09:21AM 4    of -- of one liability is all I can recall at
09:21AM 5    this point.
09:21AM 6        Q.    Have you seen a financial statement
09:21AM 7    of Mirabilis Ventures, Inc.?
09:21AM 8        A.    I had.  I had seen one in -- I had
09:21AM 9    seen one certainly in June of '07.
09:22AM 10       Q.    What occasioned that?
09:22AM 11       A.    The reason being in June of '07, I
09:22AM 12   was involved with the wind down of Mirabilis, the
09:22AM 13   settling with creditors and winding down
09:22AM 14   Mirabilis, and for that reason, we secured the
09:22AM 15   Mirabilis financials which were being kept in
09:22AM 16   Quickbooks in which I ran reports, and quite
09:22AM 17   frankly, there was so much information in there
09:22AM 18   that -- that did not provide a clear picture in
09:22AM 19   my opinion.  There was so much history in there
09:22AM 20   and so many people had been involved in the
09:22AM 21   bookkeeping of Mirabilis that we left that
09:22AM 22   version of the books untouched from that time
09:23AM 23   period -- or close to that time period.  We have
09:23AM 24   not been actively using those financials.
09:23AM 25       Q.    So it's fair to say that at least

THIBAULT, SUHR & THIBAULT, INC.
Omaha, Nebraska (402) 331-2500

42

09:23AM 1    from your observation, the Quickbooks database
09:23AM 2    was probably not reliable?
09:23AM 3        A.    Yes.
09:23AM 4        Q.    And that observation was made by you
09:23AM 5    in June of '07?
09:23AM 6        A.    Yes, that's my opinion in looking at
09:23AM 7    it.
09:23AM 8        Q.    Did you ever see a financial
09:23AM 9    statement of Mirabilis Ventures, Inc., prior to
09:23AM 10   today that you would consider reliable?
09:23AM 11       A.    I have a copy of the 2005 audited
09:23AM 12   financial statements either on my computer or --
09:23AM 13   or in a hard copy file in my office.
09:23AM 14       Q.    Is that a calendar?
09:23AM 15       A.    Yes, it would have been a calendar.
09:23AM 16   The fiscal year was a calendar year.
09:24AM 17       Q.    So the last reliable financial
09:24AM 18   statement for Mirabilis Ventures, Inc., that you
09:24AM 19   have reviewed is the one for the period ended
09:24AM 20   December 31, 2005?
09:24AM 21       A.    Yes.
09:24AM 22       Q.    And you have not seen what you would
09:24AM 23   consider to be a reliable financial statement of
09:24AM 24   Mirabilis Ventures, Inc., from and after that
09:24AM 25   date?

THIBAULT, SUHR & THIBAULT, INC.
Omaha, Nebraska (402) 331-2500

43

09:24AM 1        A.    That's right.
09:24AM 2        Q.    And did you understand prior to the
09:24AM 3    closing of the Alliance transaction that the
09:24AM 4    parties had contemplated that Mirabilis Ventures,
09:24AM 5    Inc., would acquire the capital stock of
09:24AM 6    Alliance?
09:24AM 7        A.    I'm sorry, will you repeat that?
09:24AM 8            MR. PASSARELLI:  Can you repeat
09:24AM 9    that, Jessica?
09:24AM 10           (The requested portion of the testimony
09:24AM 11   was read back.)
09:25AM 12           MR. MOONEY:  And I'll interpose a
09:25AM 13   foundation objection.  You can go ahead and
09:25AM 14   answer to the extent you understood it and know
09:25AM 15   what it's asking.
09:25AM 16           THE WITNESS:  My understanding prior
09:25AM 17   to the closing was that the Alliance companies
09:25AM 18   were being acquired to be part of the Mirabilis
09:25AM 19   PEO network that was being assembled.
09:25AM 20   BY MR. PASSARELLI:
09:25AM 21       Q.    And did you understand that on the
09:25AM 22   eve of closing that -- at Mr. Amodeo's election,
09:25AM 23   the documentation was modified to reflect that
09:25AM 24   the buyer would be Wellington Capital?
09:26AM 25       A.    I don't recall when I became familiar

THIBAULT, SUHR & THIBAULT, INC.
Omaha, Nebraska (402) 331-2500

44

09:26AM 1    with -- I believe I became familiar with that
09:26AM 2    change on the day of the closing when I was asked
09:26AM 3    to coordinate the initial payments of closing to
09:26AM 4    be made on behalf of Wellington Capital.
09:26AM 5        Q.    What do you recall about that fact?
09:26AM 6        A.    I recall Jim Sadrianna contacting me
09:26AM 7    about the initial payments being out of
09:26AM 8    Wellington, and the payments were made -- I
09:26AM 9    believe Mr. Mapes and Mr. Petersen were made the
09:26AM 10   following day out of Wellington's trust funds,
09:27AM 11   out of Berman, Keane law firm trust fund, and
09:27AM 12   Wellington had cut the other three checks on that
09:27AM 13   date.  And as I recall, I was -- my role in that
09:27AM 14   was -- I believe I contacted Marty Flynn who was
09:27AM 15   a check signer for Wellington to cut those three
09:27AM 16   checks, and I had sent an e-mail to Richard
09:27AM 17   Berman at the law firm holding the trust to send
09:27AM 18   out the two wires for Mr. Petersen and Mr. Mapes,
09:27AM 19   and I believe it was very late in the day.  I
09:27AM 20   want to say after 4 o'clock.  And I don't -- I
09:27AM 21   don't recall if it was too late to send the wire
09:27AM 22   or what, but we had agreed that it would go out
09:27AM 23   the next day, and I think Mr. Mapes and I spoke
09:27AM 24   either the day of closing or the next day so I
09:27AM 25   could give him a confirmation number -- must have

THIBAULT, SUHR & THIBAULT, INC.
Omaha, Nebraska (402) 331-2500

## Edie Curry

**From:**      Edie Curry
**Sent:**      Wednesday, April 19, 2006 3:19 PM
**To:**        Jodi Jaiman
**Subject:**   RE:


I get it!

-----Original Message-----
From:     Jodi Jaiman
Sent: Wed Apr 19 15:17:14 2006
To:   Edie Curry
Subject:    RE:

Edie,


While I understand you received approval from Frank A already, as part of my process I
then take the costs associated with his approval for him to sign off on.  If I don't, it
will come back to haunt me later!

It's for my protection, purely!


Thank you!

Jodi



_____

From: Edie Curry
Sent: Wednesday, April 19, 2006 2:46 PM
To: Jodi Jaiman
Subject: RE:


Jodi:

Scott, Wylie, Mark and Tony will need the Treo set up given their position and what they
will be working on.  The laptops are because of their travel requirements during the first
12 months of their employment.  I have had this conversation with Frank A and Laurie Holtz
as well as Frank Hailstones and this has been approved.  The rest of the staff can get the
standard equipment setup for regional offices.



Thanks,

Edie



_____

From: Jodi Jaiman
Sent: Wed 4/19/2006 1:19 PM
To: Tom Broadhead
Cc: Allen Archer; Frank Hailstones (M); Edie Curry; Scott and Georgia Hannah

94

Subject: RE:

Tom,

I received your voice mail and wanted to follow up with you.  I was in a meeting where we were actually discussing Richmond (as well as other sites).  I have a couple of questions that I need answered and then I can map out the plan for getting your office functional.

What do you have in your budget regarding equipment?  Please understand that I have a process that I have to follow and I cannot just order equipment for ANYONE (aside for Frank Amodeo himself) without an approval (cost approval).  You are asking for laptops for people as well as cell phones.  Can you please identify how many laptops you are requesting as well as cell phones?

While I don't believe it will be necessary to supply cell phones, we need to associate a cost with the request.


Thank you!

Jodi


_____

From: Tom Broadhead
Sent: Friday, April 14, 2006 12:23 PM
To: Jodi Jaiman
Cc: Allen Archer; Frank Hailstones (M); Edie Curry; Scott and Georgia Hannah
Subject:


Jodi,


As we discussed, here is the list of people who will be at the new site ( Westmoreland building) in the short term


Edie Broadhead

Tom Broadhead

Mike Dement

Terry Carney

Lori Eberhardt

Jacquelyn Poliquin

Scott Hannah

Mark Westmoreland

Wylie Schwieder

Tony Santillo (April 24)

(Probably 2-3 more people in the next 2-3 weeks not listed above who will be brought on board or that I missed in the list)

We are trying to get very basic service established for the building.  This would include internet access and phone service of some kind.  We know that there is a strong preference for bringing the building up n a plan and making the right decisions regarding phone lines, switches, internet access, computer specs, and phone access (cell and other).  However, the people we have just brought on board are without basic tools to get things done in an efficient manner - especially computers and some sort of phone access.  We would like to be able to set up a basic set of computers with basic internet access (even wireless internet through a residential type internet router would be good) and a printer.  We would also like to get people cell phones to work with prior to the phone solution for the building being determined and installed. (For that matter, we may be able to set up some amount of telephone connectivity with the internet using Vonage, Skype or a similar service)

I understand that Florida has minimal resources over the next week or two to set up or support any of this for us.  I believe we can support a basic network on our own for the next few weeks and this would get us started.  We are coming through you because we want to be team players and not work against efforts and procedures that are being established while also jumping in and being productive over the next few weeks.  I believe the cost of getting this up and running would be fairly nominal - 3-5 thousand dollars - and most of this equipment can be recycled to either the day-care center we are planning or other uses.

Another aspect of moving forward on this is that the lease for the 2 small offices for Brookmeade expires at the end of this month.  We will therefore lose whatever connectivity we already have in Richmond (other than Edie and my personal computers and internet access at home).  We will be able to reuse some of the equipment from those offices (3 or 4 computers and the internet equipment, a printer or two, and some desks, tables and files) to bring this new site up and running in the short term until final plans are made and implemented.  This type of a solution, while not ideal, will also take off some of the pressure to meet a very aggressive date for getting the building up.

Let me know if you think we can go forward with this type of a plan.


Tom Broadhead

Mirabilis Ventures, Inc.

407.517.7712 (Orlando office)

804.364.8450 (Richmond office)

407.256.0747 (cell)

tbroadhead@nexiastrategy.com


The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient,  you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

## Edie Curry

| | |
|---|---|
| **From:** | Edie Curry |
| **Sent:** | Tuesday, May 30, 2006 3:27 PM |
| **To:** | Jodi Jaiman |
| **Cc:** | Jay Stollenwerk |
| **Subject:** | Life for eight sr execs |

We have two phone lines but no phones for the past eight weeks.

We don't have the internet except at home for the past eight weeks.

We have been served an eviction notice for the third time in two different locations.

We can't issue a press release because we don't have a local phone to take the calls.

The landlord keeps driving by the building and telling anyone who will listen that we've misrepresented our interest in moving to VA.

Tom's phone number was changed and the old number...which everyone in state and federal government has, just rings buzy with no forwarding info.  This does wonders for the landlord's storyline of misrepresentation.


Sent by GoodLink (www.good.com)
Edie Curry

## Edie Curry

| | |
|---|---|
| **From:** | Jodi Jaiman |
| **Sent:** | Tuesday, May 30, 2006 7:13 PM |
| **To:** | Tom Broadhead; Scott Hannah |
| **Cc:** | Edie Curry; Allen Archer |
| **Subject:** | Richmond Update |
| **Importance:** | High |

Tom,

I am following up with you regarding our conversation this morning. At this time I have been unable to speak to Dean Armitage regarding his team and their travel arrangements. He is out of town and I have been unsuccessful in trying to reach him. Once I do, I will provide you with the timeline I had committed to. I can however update you on the items I have control over:

- Additional phone lines were ordered and will be installed on 6/2/2006 between the hours of 8AM – 5PM
- A static IP was ordered for the DSL line and should be complete by 6/2/2006
- The copier and furniture quotes will be submitted to Frank A. in the AM for purchase approval
- The fax machine was ordered
- Jacquelyn's workstation was returned (as the laptops had been) and will ship out again tomorrow for delivery on Friday (UA will set it up once it is received)
- I spoke to Frank Amodeo regarding the security person for the site. TenShi will provide a security person as well as a receptionist for 24/7 coverage of your space. This will be a billable item that TenShi will bill back.
- Cell phones: It is my understanding that after the original request was made to convert Tom & Edie's phones to Richmond (per Tom's request on 5/18/2006) someone from UA (Larry McNeill) called to confirm the change was made and it was requested at that time (Thursday or Friday of last week) that the numbers have some sort of forwarding or reference, as you are both receiving calls from prominent individuals. That request was submitted to me today, as I have to approve the use of another phone or voice mail box, since our service provider does not offer the service you were requesting. That request was approved, but I wanted to point out that the request was made 1 week after the original was put in place and they were unable to stop the change as it had already been submitted and provisioned. I was on vacation last week and therefore did not receive the request for the forwarding/reference until today.
- I spoke with Frank Amodeo regarding the space in Richmond, and here is how he would like that space to lay out:
  - Set aside 4,000-5,000 square feet of space (cubicles) for a PEO processing center
  - Insurance (Continuum)
  - Call Center
  - Internal Factor (Continuum)
  - Day Care (If someone else pays for it Only)
  - Training
  - Mirabilis Regional Office
  - Nexia Regional Office
- Based upon what the final space will be, we need to put everyone in the offices in the front of the building (temporarily) so we can do the build out in phases. You know your team the best, so I would ask that you take a look at the floor plan and assign the offices to the individuals on your team. Feel free to double up if necessary. Please have that to me by Thursday (it is my understanding that UA will be onsite beginning Friday and through the weekend) so we can make sure that the phones and workstations are set up properly.

If you have any questions, please do not hesitate to contact me.
I will provide a more detailed timeline in the morning.

Thanks,

*Jodi Jaiman*
*President*
*TenShi Enterprises. Inc.*
*407-454-6600*
*407-517-7879 (fax)*
*jjaiman@tenshienterprises.com*