**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| MIRABILIS VENTURES, INC. and <br> NEXIA STRATEGY CORPORATION, <br><br> Plaintiffs, <br> -vs- <br><br> PALAXAR GROUP, LLC; <br> PALAXAR HOLDINGS, LLC; <br> FRANK HAILSTONES; EDITH CURRY <br> a/k/a EDITH BROADHEAD; and <br> TERENCE CHU, <br><br> Defendants, <br><br> vs. <br><br> MIRABILIS VENTURES, INC., et al. <br><br> Counterclaim and <br> Third Party <br> Defendants. | Case No.: 6:07-CV-1788-ORL-28-GJK <br><br> JUDGE JOHN ANTOON II |

**MOTION OF THIRD PARTY CLAIMANTS EDITH CURRY AND
FRANK HAILSTONES TO DISMISS THIRD PARTY COUNTERCLAIMS
OF THIRD PARTY DEFENDANT FRANK AMODEO**

**I.     INTRODUCTION**

On December 2, 2009, this Court reinstated the above-captioned matter. After an application by Third Party Claimants Frank Hailstones ("Mr. Hailstones") and Edith Curry ("Ms. Curry") for entry of a clerk's default against him if he did not file a response before the appropriate date (Dkt. 183), Third Party Defendant Frank Amodeo ("Mr. Amodeo"), on January 27, 2010, filed an answer and counterclaims to the third party claims of Edith Curry, Frank Hailstones, Palaxar Group, LLC, and Palaxar Holdings, LLC against him. (Dkt. 185).

After conferring with Mr. Amodeo via certified letter,[1] pursuant to Fed. R. Civ. P. 12(b)(6), Mr. Hailstones and Ms. Curry respectfully urge this Court to deny Mr. Amodeo's Third Party Counterclaims against them on the grounds that (1) the counterclaims fail to state claims upon which relief can be granted and Mr. Hailstones and Ms. Curry are entitled to judgment as a matter of law; (2) neither Mr. Hailstones nor Ms. Curry ever owed any duty personally to Mr. Amodeo, and certainly not one sufficient to support a claim of negligence against either of them for any breach of duty; and (3) Mr. Amodeo is barred by the doctrine of collateral estoppel by his own guilty plea and sentencing in this Court from arguing any notion contrary to his sworn testimony and plea agreement, in which Mr. Amodeo acknowledged that he knowingly and willfully caused the harms he now alleges were caused by Mr. Hailstones and/or Ms. Curry.

## II.     THE STANDARD FOR GRANTING A MOTION TO DISMISS.

In evaluating a plaintiff's pleadings pursuant to Fed. R. Civ. P. 12(b)(6), the Court must make reasonable inferences in Plaintiff's favor, "but [is] not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.,* 416 F.3d 1242, 1248 (11th Cir. 2005). Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal,* 556 U.S. \_\_, 129 S.Ct. 1937, 1949 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true.

---

[1] Ms. Curry and Mr. Hailstones acknowledge the Court's preference for "meet and confer" via telephone or email, but those means are unavailable in Mr. Amodeo's case due to his current incarceration.

A complaint should be dismissed if the facts as pled do not state a claim upon which relief may be granted. *See Iqbal,* 129 S.Ct. at 1950 (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 561-62, 570, 127 S.Ct. 1955, 1968-69, 1974 (2007) (retiring the prior "unless it appears beyond doubt that the plaintiff can prove no set of facts" standard). In *Twombly,* the Supreme Court emphasized a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1965. Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555, 127 S.Ct. at 1964-65 (internal citations and emphasis omitted).

More recently, in *Iqbal,* the Supreme Court reiterated that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 129 S.Ct. at 1949. The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss. *Id.* The well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974.

Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief." *Iqbal*, 29 S. Ct. at 1937. In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 1949 (internal quotation marks and citation omitted).

### III. MR. AMODEO'S COUNTERCLAIMS AGAINST MS. CURRY AND MR. HAILSTONES.

#### A. Mr. Amodeo's Counterclaims Against Ms. Curry.

In their entirety, Mr. Amodeo's counterclaims against Ms. Curry state as follows:

> Further with regards to Edie Curry, Amodeo asserts claims of negligent conduct regarding Ms. Curry's advice to Amodeo with regards to the strategy involving the use of payroll taxes for other expenses, including but not limited to the advice that Mirabilis Ventures, Inc. or other entities as assignee of certain security interests had priority over the United States in payment.
>
> Also with Ms. Curry in her role as co-consultant and subcontractor with regards to the due diligence utilized in the investigation of Presidion and the selection of professionals to collect, manage, and disburse the funds from various projects including the payroll taxes.
>
> Finally Curry is liable to Amodeo for contribution with regards to the unpaid payroll taxes.

Amodeo Answer and Counterclaims (Dkt. 185) at 2. In short, Mr. Amodeo appears to be alleging that Ms. Curry is liable to him ***personally*** (1) in negligence with respect to her alleged "advice" concerning the strategy he employed involving the use of payroll taxes to pay other expenses; (2) in negligence with respect to her status as a co-consultant and subcontractor concerning the investigation of Presidion and selection of professionals to manage funds (negligent hiring); and (3) in contribution for unpaid payroll taxes.

Mr. Amodeo's allegations can be dealt with succinctly. To maintain an action for negligence under Florida law, a plaintiff must establish three things: 1) that the

defendant owed a duty to the plaintiff; 2) that the defendant breached that duty; and 3) that the breach caused the plaintiff damages. *Fla. Dep't of Corrs. v. Abril,* 969 So.2d 201, 203 (Fla.2007). A duty of care is "a minimal threshold legal requirement for opening the courthouse doors." *McCain v. Fla. Power Corp.,* 593 So.2d 500, 502 (Fla.1992) (footnote and emphasis omitted).

The existence of a duty poses a question of law that the court must answer **before** permitting a negligence claim to proceed before the trier of fact. *See Williams v. Davis,* 974 So.2d 1052, 1057 n. 2 (Fla. 2007) (emphasis added) (citing *McCain,* 593 So.2d at 504); *see also* Restatement (Second) of Torts § 328B. A duty of care requires that the defendant "conform to a certain standard of conduct . . . . for the protection of others against unreasonable risks." *Clay Elec.,* 873 So.2d at 1185 (quoting *Prosser and Keeton on the Law of Torts* § 30, at 164-65 (W. Page Keeton, et al. eds., 5th ed.1984) (footnotes omitted).

Nowhere does Mr. Amodeo allege that Ms. Curry was ever engaged by him in any manner that could have given rise to a duty owed by Ms. Curry to Mr. Amodeo personally. Ms. Curry was never engaged by Mr. Amodeo to advise him in any capacity, much less as to the "strategy involving the use of payroll taxes." Ms. Curry was never a "co-consultant" with or "subcontractor" to Mr. Amodeo, nor did she ever select "professionals to collect, manage [or] disburse [] funds" on Mr. Amodeo's behalf. Even if those allegations were true, again Mr. Amodeo fails to allege that such a relationship gave rise to a duty to him personally which Ms. Curry then breached. Accordingly, no claim against Ms. Curry for negligence against Mr. Amodeo can lie.

In order to maintain a claim for contribution, the claimant **must** have paid more than his pro rata share of the debt and the party against whom the claim for

5

contribution be held liable in common along with the claimant for the debt at issue. *See* Section 768.31(2)(b) of Florida's version of the Uniform Contribution among Tortfeasors Act. It is wildly implausible that Ms. Curry will be held jointly liable with Mr. Amodeo for the unpaid payroll taxes even **if** Amodeo paid more than his pro rata share, which—of course—he has not, and which accomplishment is even more unlikely.

Finally, a criminal defendant is generally estopped from later arguing a position contrary to statements made in open court or in writing." *Simmons v. State,* 611 So.2d 1250, 1253 (Fla. 2d DCA 1992), *cited in Rappaport v. State*, ___ So. 2d. ____, 2009 WL 5064039, 35 Fla. L. Weekly D8, Fla.App. 4 Dist. (December 23, 2009). Since Ms. Curry's alleged incorrect advice and her suggested liability for contribution are contrary to Mr. Amodeo's guilty plea and conviction for evading the payroll taxes at issue, his counterclaims against Ms. Curry should be barred.

Accordingly, Mr. Amodeo has failed to state any claim against Ms. Curry upon which relief can be granted, and Mr Amodeo's Third Party Counterclaims against Ms. Curry cannot lie.

### B.   Mr. Amodeo's Counterclaims Against Mr. Hailstones.

In their entirety, Mr. Amodeo's counterclaims against Mr. Hailstones state as follows:

> As to Hailstones, Amodeo brings this action regarding Hailstones that after Hailstones own personal review and the review of Hailstones own professional advisors that the business model was legal and Hailstones decision as Chief Executive Office to continue the practice resulting in, essentially, vicarious liability of Amodeo of some amount greater than 80 million dollars.
>
> Further, Hailstones, like Curry, and any other person or entity part of this action who held the status of director, officer, manager, account signer, controlling person, or

6

> otherwise a responsible party under the tax code is liable to Amodeo in contribution for the unpaid payroll taxes.

Just as with his counterclaims against Ms. Curry, Mr. Amodeo has failed to identify any duty ***to Mr. Amodeo personally***, the breach of which would render Mr. Hailstones liable. And again, given that Mr. Amodeo's guilty plea had the effect of acknowledging that it was he and no other who was responsible for the failure to pay the unpaid payroll taxes, Mr. Amodeo cannot now be heard to complain that the very officers, directors, etc. whom he deceived are now in fact liable ***to him*** for misadvising him. In Mr. Hailstones' case, Mr. Amodeo even alleges that Mr. Hailstones is liable to Mr. Amodeo personally because Mr. Hailstones' unidentified professional advisors expressed the vague opinion that "the business model was legal." Mr. Amodeo's claims against Mr. Hailstones are specious at best.

### C.   **Mr. Amodeo's Third Party Counterclaims are Inconsistent With the Circumstances of his Criminal Case and Should be Dismissed**.

Mr. Amodeo's allegations—taken in context—border on the preposterous. Not only did Ms. Curry and Mr. Hailstones ***never*** advise Mr. Amodeo concerning payroll taxes, but in two years of criminal investigation, Mr. Amodeo was unable to produce a single piece of evidence that anyone at Mirabilis ever knew that payroll tax monies were funding the operations of Mirabilis Ventures, Inc. For example, during Mr. Amodeo's sentencing hearing, Assistant U. S. Attorney Randall Gold examined IRS Special Agent Richard Smith. In response to one of Mr. Gold's questions, Agent Smith testified:

> . . . . In addition to asking about somebody's actions, we [AUSA and IRS] told Mr. Amodeo, Mr. Slaughter and Mr. Sands [Mr. Amodeo's criminal lawyers] that we were having, it was a challenge bridging the gap as it was referred to as between Presidion and Mirabilis. ***Presidion was the one running up the payroll tax liabilities.*** People at

7

> Mirabilis knew about it, but did ***they know that payroll tax funds were going to Mirabilis and funding its operations***?  And again, we asked Mr. Amodeo that, he said something to the effect, now I get it, I get what you're looking for, I'll get it.
>
> Q. Did he ever get you that evidence?
>
> A. ***No.***

*See* Sentencing Hearing of Frank Amodeo in Case No. 6:08-CR-176-ORL-28GJK, May 19, 2009, Randy Gold - Direct Examination of IRS Special Agent Richard Smith at pp. 24–25 (emphasis added).  Thus, when provided with the opportunity—over a period of two years—to deliver to the United States government any evidence that any person at Mirabilis other than Amodeo himself was aware of the misuse of payroll tax funds, Amodeo failed to do so.  Here, however, in the civil context, he believes that the bare allegations should stand.  He is mistaken.

Moreover, according to Frank Amodeo's indictment and plea agreement (which was negotiated for over two years), his scheme began when he signed a consulting agreement with Presidion Solutions ("PSI") in October, 2004.  On December 8, 2004, Amodeo was given power of attorney over PSI's bank accounts and began his criminal enterprise of diverting trust fund payroll tax funds on December 10, 2004.  *See United States v. Frank Amodeo*, Case No. 6:08-CR-176-ORL-28GJK, Indictment, attached hereto as Exhibit 1, at p. 9 and Amended Plea Agreement, attached hereto as Exhibit 2, at page 29.  This was a full seven months before Ms. Curry was hired by Mirabilis Ventures, Inc. and twelve months before Mr. Hailstones joined the company.

Mr. Amodeo's counterclaims against Ms. Curry and Mr. Hailstones not only fail to state a claim upon which relief can be granted, they utterly lack plausibility as required under *Twombly* to proceed.  550 U.S. at 570, 127 S.Ct. at 1974.

8

## CONCLUSION

For all the reasons set forth herein, this Motion to Dismiss should be granted and the Third Party Counterclaims of Frank Amodeo against Edith Curry and Frank Hailstones should be dismissed.

Respectfully submitted,

Date: February 15, 2010

/s/ Kathleen B. Havener
KATHLEEN B. HAVENER
THE HAVENER LAW FIRM, LLC
15511 Russell Road
Chagrin Falls, OH 44022
Phone: 440-893-0188
Cell: 216-288-6009
Fax: 440-893-9326
kbhavener@havenerlaw.com

Attorney for Defendants Curry, Hailstones, Palaxar Group, LLC and Palaxar Holdings, LLC

MARTIN R. RASKIN
Florida Bar No. 315206
JANE SERENE RASKIN
Florida Bar No. 848689
RASKIN & RASKIN, P.A.
866 South Dixie Highway
Coral Gables, FL 33146
Telephone: (305) 444-3400
Facsimile: (305) 445-0266
mraskin@raskinlaw.com

Attorneys for Defendant Curry, Palaxar Group, LLC and Palaxar Holdings, LLC

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this the 15th day of February, 2010, I electronically filed the foregoing Motion of Third Party Claimants Edith Curry and Frank Hailstones to Dismiss Third Party Counterclaims of Third Party Defendant Frank Amodeo with the Clerk of Court using the CM/ECF system and that I have sent a notice of electric filing to the *pro se* parties.

/s/ Kathleen B. Havener____
KATHLEEN B. HAVENER