# EXHIBIT 4

# EMPLOYMENT AGREEMENT

This Agreement made on the 1st day of June. 2005. between Nexia Strategy Corporation, a Florida corporation, with its principal office located at 20 North Orange Avenue, Suite 1400, Orlando, Florida 32801, hereinafter referred to as "Employer," and Edith Curry-Broadhead, who resides at 11916 Brookmeade Court, Glen Allen. Virginia 23059, hereinafter referred to as "Employee." Employer and Employee are hereinafter jointly referred to as the "Parties."

WHEREAS, Employer provides general business consulting activities to a number of different companies, which may or may not be affiliated or controlled by Employer, and

WHEREAS, Employee seeks to secure a position with Employer. Employer desires to hire Employee for that position under the terms set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and other good and valuable consideration received in hand, the sufficiency and receipt of which is hereby acknowledged, the Parties agree as follows:

## TERMS AND CONDITIONS

### 1.    NATURE OF EMPLOYMENT

(a)    Employer hereby hires Employee and Employee accepts such employment and agrees to perform at all times faithfully, industrially, and to the best of her ability, experience and talent, all the duties Employer may require of her pursuant to the expressed and implicit terms of this Agreement. Employee, during the term of this Agreement agrees to diligently perform all services that may be assigned to her and shall exercise such powers and authority as may, from time to time, be delegated to him, including such powers and authority usually pertaining and attributed by law, custom, or otherwise to a management level associate in a professional firm. The initial primary classification for Employee will be as Master Strategist (the "Initial Primary Classification"), and Employee's title shall be Senior Regional Officer. Employee's Job Description is set forth in Schedule "A" attached hereto.

(b)    Employer shall have the right to change the job description to include responsibilities reasonably related to the position or to remove responsibilities from the description of the position.

(c)    Employee hereby acknowledges that she has received a copy of the Employee Handbook and has reviewed its provisions. Employee agrees to comply with Employer's policies and procedures as set forth in the Employee Handbook. In addition, Employee agrees to follow the policies and procedures set forth in Schedule "B" attached hereto regardless of whether such policies and procedures are set forth in the Employee Handbook.

### 2.    DURATION OF THIS AGREEMENT

Employer employs Employee and Employee accepts such employment with Employer for a period of thirty-six (36) months, beginning on June 16, 2005, and terminating on June 15, 2008. As used in this Agreement, "employment term" refers to the period of employment of Employee under this Agreement, whether for the aforementioned period above, termination earlier as provided elsewhere in this Agreement, or as extended by mutual agreement of Employer and Employee.

Initials _____ Nexia

Nexia Employment Agreement – Edith Curry-Broadhead
Page 1 of 12

Initials _____ Employee

DEFENDANTS_000211



3.    COMPENSATION AND BENEFITS

(a)    Employer shall pay Employee and Employee agrees to accept from Employer. in full payment for Employee services under this Agreement. the Compensation as set forth opposite Employee's Initial Primary Classification in Schedule "C" attached hereto.

(b)    Employee shall receive no other fringe benefits, and disability. medical. dental. life or other insurance except those benefits that are generally available to any Employee of Employer.

(c)    Employee shall be granted considerable autonomy on establishing Employee's schedule. Employee shall exercise informed and reasonable judgment concerning appropriate hours and vacation time. Notwithstanding anything to the contrary contained in the Employee Handbook. Employee may not receive lesser benefits than the benefits contained in the Handbook in effect at the execution date of this Agreement.

(d)    Employer shall reimburse Employee for all actual, reasonable, and necessary business expenses incurred by Employee in connection with the business of Employer. Expenses Must be submitted within thirty (30) days of actual occurrence. Payments to Employee for such business expenses shall be made within seven (7) days of receipt of an approved expense report from Employee, or such ordinary day of the calendar month as Employer pays employees' accounts. whichever day is later in time. Employer shall determine whether expense reports are to be submitted weekly or monthly.

(e)    Employee's entitlement to receive Compensation under this Agreement shall be offset against any other compensation otherwise paid to Employee under any employment arrangement with Employer or any Employer affiliate (regardless of the number of years). on a cumulative basis from the date of execution of this Agreement.

(f)    Notwithstanding any other provision regarding dispute resolution set forth elsewhere in this Agreement, any dispute regarding the Compensation shall be exclusively decided in accordance with the laws of the State of Florida. Such dispute shall first be submitted to non-binding mediation and shall thereafter be determined by final binding arbitration, and not litigation. with the agreed venue for mediation and arbitration being in Orlando, Florida. The mediation and. if needed. arbitrator, shall be selected in each case by the applicable regional manager of Employer. Employee agrees to waive all other enforcement rights with respect to any dispute regarding the Compensation.

4.    TERMINATION/SEVERANCE

(a)    Notwithstanding any contrary provision in this Agreement. Employer may terminate this Agreement for cause without notice.   For the purpose of this paragraph. "cause" is defined as (1) Employee convicted of or pleading guilty or no contest to a felony under applicable law; (2) Willful material breach of Employee's fiduciary duty to Employer; (3) Employee willfully failing to perform any material explicit or implicit duty that is within the normal duties of Employee or is a reasonable request or directive of Employer; (4) Employee committing any breach of a material term of this Agreement. provided that Employee. after receiving twenty (20) days written notice from Employer, has not cured such breach; (5) Employee willfully failing to adhere to any material rule. policy or directive set forth by Employer: (6) Employee committing willful insubordination. corruption and/or disruption in the workplace: or (7) Employee committing a harassment violation of law against an employee. affiliate. owner, client. invitee, or licensee of Employer.


DEFENDANTS_000212

(b)      Upon termination. Employee shall immediately provide to Employer all documents and items of any nature or description, including computer files, that pertain to actual potential customers or leads that Employee developed or obtained during employment, any phase or aspect of Employer's operations, any phase or aspect of Employer's future operations or plans, and any other items, lists, documents, or the like, that in any way may pertain to Employer's business.

(c)      Except for termination of Employee due to breaches of paragraphs 4(a)(1) and 4(a)(7) above, if Employer terminates this Agreement for any reason, including for cause, or as a result of a merger, acquisition, sale or "Change in Control" (as defined below in paragraph 4(f)), in addition to the Compensation, Employee shall be entitled to a lump sum severance payment within thirty (30) days of the termination date of employment. This payment shall be an amount equal to the average monthly Compensation earned by Employee while employed by Employer to the date of termination, multiplied by the number of six-month periods or part thereof of Employee's employment with Employer.

> *For illustrative purposes:* *If Employee's average monthly Compensation is $8,000, and Employee has worked for 2 years and 3 months and is terminated, Employee is entitled to $8,000 times 4.5, or $8,000 times 2"6 = $36,000.*

(d)      In the event it shall be determined that any payment, distribution or other action by Employer to or for the benefit of Employee, whether paid or payable or distributed or distributable pursuant to the terms of this Agreement or otherwise, would be taxable as an excise tax under the Internal Revenue Code 1986, Employer shall make a payment to Employee in an amount equal to any such excise tax imposed upon said payments. Should any interest or penalties accrue to Employee with respect to any such excise tax, Employer will also reimburse those costs.

(e)      For purposes of this Agreement, the term "Change in Control" shall be defined as:

(i)      The approval by the shareholders of Employer of a reorganization, merger, consolidation or other form of corporate transaction or series of transactions, in each case, where the persons who were the shareowners of Employer immediately prior such organization, merger or consolidation or other transaction do not, immediately thereafter, own more than 50 percent (50%) of the combined voting power of the succeeding corporation. This is voting power generally entitled to vote for election of directors of the newly reorganized, emerged, or consolidated company resulting in new outstanding voting shares, or

(ii)      Employer liquidates or dissolves the company, or

(iii)      Individuals, who as of the date hereof, constitute the incumbent board of directors cease for any reason to constitute at least a majority of the board, provided that any person becoming a director subsequent to the date hereof, whose election, or nomination for election by Employer's shareholders, was approved by a vote of at least a majority of the directors comprising the incumbent board, or

(iv)      The acquisition by any person, entity or "group" of more than 50 percent (50%) of the then outstanding shares of Employer's common voting stock, or

(v)      The sale of all or substantially all of the assets of Employer.

Initials _____
Nexia

Nexia Employment Agreement – Edith Curry-Broadhead
Page 3 of 12

Initials _____
Employee

DEFENDANTS_000213



5.    UNIQUENESS OF SERVICES OF EMPLOYEE

Employee hereby warrants and represents that the services she intends to provide under this Agreement are of a special, unique, unusual, extraordinary and intellectual character that gives her a peculiar value, the loss of which cannot be reasonably or adequately compensated by damages in an action at law. Employee, therefore, expressly agrees that Employer shall be entitled to injunctive and other equitable relief to prevent a breach of this Agreement by Employee in addition to any other rights or remEdiths that Employer may possess and to the maximum extent permitted by law. Any action for injunctive relief under this paragraph should not be subject to the provisions in this Agreement related to the alternative dispute resolution process.

6.    CONFIDENTIALITY

(a)    Unless done within the normal course and scope of the duties of Employee, and in a good faith effort to serve the best interests of Employer, Employee shall not, at any time or in any manner, directly or indirectly communicate to any person, business, or corporate entity, any confidential information of any kind concerning any matters affecting or relating to the business of Employer. Such matters include, but are not limited to, the names of any customers of Employer, the prices or rates Employer pays or charges, the manner of any aspect of Employer's operations, Employer's plans or processes, and other information of any kind, nature or description that relates to Employer's operations, customers, suppliers, products, or financial condition. The Parties hereby stipulate that all such information is per se material, important, and confidential and, therefore, disclosure of such information will irreparably harm the ongoing operations of Employer.

(b)    Employee hereby acknowledges that release of confidential information related to Employer, its affiliate, subsidiary, or parent companies, or customers of any of them, may constitute a criminal or torturous act under federal, state, or other applicable law, that may subject Employee, individually, to a monetary judgment or prison sentence. Consequently, Employee hereby agrees to refrain from disseminating, in any manner, information related to the affairs of Employer, its parent, subsidiary, or affiliate corporations or the customers of any of them without the receipt of written consent of the legal counsel of Employer in advance of such dissemination.

7.    NON-SOLICITATION OF OTHERS

Employee hereby agrees not to solicit, in any manner whatsoever, the employees, agents, affiliates, contractees, or customers of Employer, its parent, subsidiary or affiliate companies or those customers of any of them.

8.    DEVOTION BY EMPLOYEE OF FULL-TIME TO BUSINESS

(a)    Except as otherwise agreed to by Employer in writing, Employee shall devote all of her time, attention, knowledge and skills solely and exclusively to the business and interests of Employer during normal working hours. Employer shall retain all the benefits, emoluments, profits or other returns from or incidental to any and all work, services, advice and mental efforts of Employee that arise during the term of this Agreement, or such other amount as agreed to in writing by Employer's Board of Directors or set out in the Employment Handbook.

(b)    Employee shall not directly or indirectly, act as a partner, officer, director, stockholder, adviser, employee, or affiliate in any other business or trade that is related to that of Employer.

Initials _____

Nevin Employment Agreement – Edith Curry-Broadhead
Page 4 of 12

Initials _____
Employee

DEFENDANTS_000214

Employee may invest her funds i 1 the capital stock of a direct or indirect competitor of Employer only if said holdings represent less than five percent (5%) of the total number shares or principal amount of the securities of said issuer outstanding (*See* paragraph 16).

## 9.    INDEMNIFICATION OF EMPLOYER AND INDEMNIFICATION OF EMPLOYEE

(a)    Unless acting under the direction of Employer, Employee shall hold harmless, indemnify and defend Employer from any and all claims, demands, damages, losses, expenses, attorneys' fees, causes of action, judgments and liability arising out of any fraudulent or deliberate wrongful acts of Employee during Employee's engagement or representation to others as an Employee, independent contractor, or other affiliate of Employer.

(b)    Employer shall hold harmless, indemnify and defend Employee from any and all claims, demands, damages, losses, expenses, attorneys fees, causes of action, judgments and liability arising out of any fraudulent or deliberate wrongful acts of Employer, independent contractor or other affiliate of Employer and further for any acts or omissions arising out of Employee's employment with Employer unless caused by the active gross negligence of Employee.

## 10.    ALTERNATIVE DISPUTE RESOLUTION

All claims, duties and other matters in question by and between Employee and Employer shall be decided by binding Arbitration under and in accordance with the provisions of Chapter 682, Florida Statutes, with exclusive venue for such Arbitration, and for any judicial proceedings to enforce the terms and conditions of this provision requiring Arbitration, or to confirm such Arbitration Award, to be only in the Court of appropriate jurisdiction in Orange County, Florida. Provided further, that in the event for any reason a dispute under this Agreement is not subject to the Florida Arbitration Code, then in such event such dispute shall be decided by binding Arbitration under and in accordance with the provisions of the Federal Arbitration Code, with exclusive venue likewise to be in Orange County, Florida, in the same manner as provided above. If there is no jurisdiction for such dispute under the Federal Arbitration Code, then such disputes shall be decided by Arbitration in accordance with Rules of the American Arbitration Association, with exclusive venue likewise to be in Orange County, Florida, in the same manner as provided above. The prevailing Party in any Arbitration under this Agreement, including in any litigation required to enforce the terms and conditions of this Arbitration Provision, including to confirm an Arbitration Award, shall be entitled to recover their reasonable attorney's fees and consulting fees, and in addition, any taxable costs (including Arbitrator compensation) as are otherwise allowed in the Arbitration and for litigation to enforce the terms of this Arbitration provision or to confirm any Arbitration Award.    This provision specifically authorizes the Arbitrator(s), within his/her (their) discretion, to tax in favor of the prevailing Party that fees and costs of the Arbitration proceedings, to include Arbitrator compensation, filing fees, subpoena service fees, expert witness fees and costs, and out-of-pocket costs for a hearing room to conduct the proceeding.

## 11.    MISCELLANEOUS PROVISIONS

(a)    This Agreement contains the sole and entire agreement between the Parties and shall supersede any and all other agreements between the Parties except for any covenant not to compete, confidentiality agreement, or amended compensation agreement signed by both Parties.   The Parties acknowledge that they have read this Agreement in its entirety and that any oral or written statements to the contrary are void and that neither Party has relied on any such representation in connection with this Agreement.

Initials _____ Nexia

Initials _____ Employee

DEFENDANTS_000215

4

(b)     The Parties agree that no waiver or modification of this Agreement or of any covenant, condition, or limitation contained within it is valid unless it is in writing, clearly identified as a modification or waiver of this Agreement or one of the clauses of this Agreement, and duly executed by both Parties. The Parties further agree that neither shall submit or attempt to submit into evidence in any proceeding, arbitration, or litigation between the Parties arising out of or affecting this Agreement, or the rights or obligations of any Party under it, unless such waiver or modification is in writing, clearly identified as a modification or waiver of this Agreement or one of the clauses of this Agreement, and duly executed by both Parties.

(c)     The laws of the State of Florida govern this Agreement and performance under it at the exclusion of the laws of any other forum or jurisdiction irrespective of the particular jurisdiction in which any action or proceeding is instituted.

(d)     In the event that one or more provisions in this Agreement are held invalid or unenforceable, the remaining provisions shall remain in full force and effect.

(e)     Any waiver or modification of any breach of one or several provisions contained in this Agreement shall not be considered as a waiver of any subsequent breach of the same or other provisions of this Agreement.

(f)     The headings and titles used in this Agreement are for the reference and convenience of the Parties and do not serve to limit or change the meaning of any provision contained in this Agreement.

(g)     Any Party required to provide notice to the other Party pursuant to this Agreement may affect such notice by personal delivery in writing or by certified mail, postage prepaid, return receipt requested. A Party mailing a notice shall address it to the relevant Parties at the addresses appearing in the introductory paragraph of this Agreement, but any Party may change its notice address in accordance with this paragraph. The Parties hereby deem any personally delivered notice as delivered on the date of actual receipt, provided the notice is signed by the person named in the notice or if the receipt refuses to sign such notice, then by the date of a notation as the delivering Party may show that communicates an attempted, but unclaimed or refused, delivery.

(h)     This Agreement shall be binding on and inure to the benefit of the successors and assigns of Employer. Employee shall have no right to assign this Agreement, but Employer, at its sole discretion, shall have the right to assign it.

## 12.    COVENANT NOT TO COMPETE OR SOLICIT

Employee shall not directly or indirectly commit or attempt to commit any of the following acts within fifteen (15) miles of any office of Employer for period of two (2) years following termination: (i) work for a direct competitor of Employer; or (ii) serve as a promoter, partner, proprietor, director, shareholder, or manager of an entity that is in direct competition with Employer. Additionally, for a period of two (2) years following Employee's termination under this Agreement, Employee agrees Employee shall not (a) contact or solicit any customer or employee of Employer for any matter; (b) divulge or use any information regarding Employer to any business in the same industry as Employer; or (c) advise any competitor of Employer regarding any aspect of the business operations of Employer.

Initials _____ Nevin Employment Agreement – Edith Curry-Broadhead   Initials _____ Employee
Page 6 of 12

DEFENDANTS_000216

BY SIGNING BELOW AND INITIALING THE BOTTOM OF EACH OF THE PRECEDING SIX (6) PAGES, AS WELL AS THE ATTACHED SCHEDULES, THE PARTIES AGREE TO THE TERMS AND CONDITIONS HEREOF.

**EMPLOYER:**
Nexia Strategy Corporation

By: _____

Print Name:   James V. Sadrianna

Print Title:   President

Date:   6 -22-05

**EMPLOYEE:**

By: _____

Print Name:   Edith Curry-Broadhead

Print Title: Senior Regional Officer

Date: 8-17-05

Initials _____    · Nexia Employment Agreement – Edith Curry-Broadhead
Nexia            Page 7 of 12

Initials _____
Employee

DEFENDANTS_000217

Schedule "A"
## JOB DESCRIPTION

Employee's duties shall include, but not be limited to:

- The business development and/or management of any current or prospective client-related activities.
- The development and/or management of the Virginia branch of Nexia Strategy Corporation.

Initials

Nexia Employment Agreement – Edith Curry-Broadhead
Page 8 of 12

Initials

Schedule "B"
## POLICIES

Employee agrees to use Employee's best efforts to do the following:

- Identify and schedule work related to Employee's businesses.

- Make a weekly report to Employer regarding the status of any significant projects on which Employee is working.

- Make a full disclosure of any existing business.  All future business will be run through Employer's screening processes.

- Complete and turn in daily timesheets.

- Deliver all PIN numbers and pass codes relating to the business financial account, along with full disclosure of any activities on any business account to Employer.

- Deliver a personal bio to Employer to be published on the related company websites and/or parent company websites.

- Employee agrees that any communication received or sent by Employee at her employment location, whether voice, email, or regular mail shall be subject to review and inspection by Employer at any time.

Initials
Nexia

Nexia Employment Agreement – Edith Curry-Broadhead
Page 9 of 12.

Initials
Employee

DEFENDANTS_000219

◄



## Schedule "C"
## COMPENSATION

Employee shall be compensated in accordance with Schedule "C-1" in accordance with Employee's then current Primary Classification. Such compensation shall consist of "Base Compensation" and "Incentive Compensation" as identified in Schedule "C-1."

Base Compensation shall be payable in accordance with Employer's then current pay cycle. and payment thereof shall be offset by any commissions earned by Employee pursuant to the Independent Representative Agreement executed in connection with this Employment Agreement.

Incentive Compensation shall consist of the grant to Employee on an annual basis of preferred shares of **Mirabilis Ventures, Inc.,** a Nevada corporation ("Mirabilis"), each preferred share (a "Preferred Share") having a face value of One Hundred Thousand Dollars ($100,000), and bearing a coupon rate of six percent (6%) (the "Coupon"). Preferred Shares shall be granted to Employee on the basis of the formula (position and longevity) set fo th in Schedule "C-2," whenever there are Employer net revenues sufficient to enable grants to all employees eligible for such grants (the "Formula"). The Coupon shall be paid annually to Employee. Incentive Compensation may also consist of yearly discretionary monetary bonuses and yearly discretionary stock bonuses. Both bonuses shall be determined by the Board of Directors of Employer and shall be based upon certain performance goals of Employer as set by the Board.

Based on the Formula, whenever thirty (30) Preferred Shares have been granted to Employee, Employee shall be eligible to be a Partner, and as a Partner, shall have the right to vote, with other Partners, on the admission of new Partners. Employee becomes a Partner whenever one-half (1/2) of all current Partners vote to grant partnership status to Employee.

Based on the Formula, whenever fifty (50) Preferred Shares have been granted to Employee, Employee shall be eligible to have "Tenure," and as such a "Tenured Member," shall have the right to vote, with other Tenured Members, on the admission of new Tenured Members. An Employee has Tenure and becomes a Tenured Member whenever two-thirds (2/3) of all current Tenured Members vote to grant Tenure to Employee, and the permission of a majority in ownership of the common stock of Mirabilis vote to allow Employee to be granted Tenure also. Tenured Members shall have such other rights and privileges as Mirabilis shall dete mine from time to time. The maximum number of Preferred Shares that Employee may earn shall be fifty (50).

Eligibility for Tenured Member status shall automatically be granted to any Partner who has served continuously as a Senior Regional Partner (as such position shall be further defined and established by Mirabilis) for three (3) years, regardless of the number of Preferred Shares held by such Partner.

Tenured Members shall select the boards of directors of Mirabilis' various affiliated companies that Employee shall serve on, and Employee shall thereby be entitled to receive the additional compensation listed in the Formula for such services.

DEFENDANTS_000220

Schedule "C-1"
## EMPLOYEE COMPENSATION RANKS, TITLES & COMPENSATION

_Vice President_ – Officer performing primarily professional and advisory services for clients.

_Administrative Vice President_ -- Officer in a regional office who performs primarily management functions instead of client services.

_Senior Vice President_ – Officer in charge of client selection and case assignments in a geographic region.

_Regional Partner_ – Professional in charge of managing regional organization operations by directing and coordinating activities consistent with established goals, objectives, and policies.

_Executive Vice President_ – Officer at corporate office performing primarily management functions, such as Business Development, Operations, Corporate Relations, Controller, Treasurer, Corporate/General Counsel, and Secretary.

| | Classification | Hourly Rate | Base Compensation | Directors Fee (Incentive Compensation) |
|---|---|---|---|---|
| 1. | General Analyst | 75.00 | 48,000 | -- |
| 2. | Senior Analyst | 80.00 | 54,000 | -- |
| 3. | Expert Analyst | 90.00 | 60,000 | 25% |
| 4. | General Advisor | 100.00 | 66,000 | 25% |
| 5. | Senior Advisor | 125.00 | 72,000 | 33 1/3 % |
| 6. | Expert Advisor | 150.00 | 84,000 | 33 1/3 % |
| 7. | General Strategist | 200.00 | 96,000 | 10 % |
| 8. | Senior Strategist | 250.00 | 120,000 | 40 % |
| 9. | Expert Strategist | 300.00 | 150,000 | 40 % |
| 10. | Master Strategist | 400.00 | 180,000 | 50% |
| 11. | Grand Strategist | 500.00 | 240,000 | 50% |
| 12. | Nexial Strategist | x | x | N/A |

1.  All professional staff are also entitled to receive referral, sourcing and other fees or commissions on work referred to the firm as if professional was an independent representative.

2.  All professionals except General Analyst and Senior Analyst are eligible for selection by Mirabilis "Tenured Partners" as directors for which additional compensation is paid.

3.  All professionals shall receive performance bonus should personal billings exceed 3 times base compensation.

4.  All professionals shall receive retention consideration as set forth in retention program.

5.  All professionals shall be eligible for discretionary bonuses awarded by Nexia (BOD) or designate.

Initials _____ Nexia

Initials _____ Employee

DEFENDANTS_000221

# Schedule "C-2"
## PREFERRED STOCK SCHEDULE

| Staff | Annual Shares | Cumulative Shares |
|---|---|---|
| Year 1 | - | - |
| Year 2 | 0.5 | 0.5 |
| Year 3 | 1.0 | 1.5 |
| Year 4 | 1.5 | 3.0 |
| Year 5 | 2.0 | 5.0 |
| Year 6 | 2.5 | 7.5 |
| Year 7 | 2 5 | 10.0 |
| Year 8 | 2.0 | 12.0 |
| Year 9 | 1.5 | 13.5 |
| Year 10 | 1.5 | 15.0 |
| Year 11 | 1.0 | 16.0 |
| Year 12 | 1.0 | 17.0 |
| Year 13 | 1.0 | 18.0 |
| Year 14 | 1.0 | 19.0 |
| Year 15 | 1.0 | 20.0 |
| Year 16 | 1.0 | 21.0 |
| Year 17 | 1.0 | 22.0 |
| Year 18 | 1.0 | 23.0 |
| Year 19 | 1.0 | 24.0 |
| Year 20 | 1.0 | 25.0 |
| **Executive** | | |
| Year 1 | - | - |
| Year 2 | 1.0 | 1.0 |
| Year 3 | 2.0 | 3.0 |
| Year 4 | 3.0 | 6.0 |
| Year 5 | 4.0 | 10.0 |
| Year 6 | 5.0 | 15.0 |
| Year 7 | 5.0 | 20.0 |
| Year 8 | 4.0 | 24.0 |
| Year 9 | 3.0 | 27.0 |
| Year 10 | 3.0 | 30.0 |
| Year 11 | 2.0 | 32.0 |
| Year 12 | 2.0 | 34.0 |
| Year 13 | 2.0 | 36.0 |
| Year 14 | 2.0 | 38.0 |
| Year 15 | 2.0 | 40.0 |
| Year 16 | 2.0 | 42.0 |
| Year 17 | 2.0 | 44.0 |
| Year 18 | 2.0 | 46.0 |
| Year 19 | 2.0 | 48.0 |
| Year 20 | 2.0 | 50.0 |

Initials

Xxria Employment Agreement – Edith Curry-Broadhead
Page 12 of 12

Initials
Employee

DEFENDANTS_000222

# EXHIBIT 5

# EMPLOYMENT AGREEMENT

This Agreement made on the October day of 3rd, 2005, between **Common Paymaster Corporation**, a Florida corporation, with its principal office located at 20 North Orange Avenue, Suite 1400, Orlando, Florida 32801, hereinafter referred to as "**Employer**," and Frank Hailstones, who resides at 734 Lake Biscayne Way, Hidden Lakes, FL 328371, hereinafter referred to as "**Employee**." Employer and Employee are hereinafter jointly referred to as the "**Parties**."

**WHEREAS**, Employer provides general business consulting activities to a number of different companies, which may or may not be affiliated or controlled by Employer, and

**WHEREAS**, Employee seeks to secure a position with Employer. Employer desires to hire Employee for that position under the terms set forth in this Agreement.

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein, and other good and valuable consideration received in hand, the sufficiency and receipt of which is hereby acknowledged, the Parties agree as follows:

## TERMS AND CONDITIONS

### 1. NATURE OF EMPLOYMENT

(a)     Employer hereby hires Employee and Employee accepts such employment and agrees to perform at all times faithfully, industrially, and to the best of his ability, experience and talent, all the duties Employer may require of him pursuant to the expressed and implicit terms of this Agreement. Employee, during the term of this Agreement, agrees to diligently perform all services that may be assigned to him and shall exercise such powers and authority as may, from time to time, be delegated to him, including such powers and authority usually pertaining and attributed by law, custom, or otherwise to a management level associate in a professional firm. The initial primary classification for Employee will be as Master Strategist (the "Initial Primary Classification"), and Employee's title shall be Senior Vice President. Employee's Job Description is set forth in Schedule "A," attached hereto and incorporated by reference herein.

(b)     Employer shall have the right, in its sole discretion, to change the job description to include responsibilities reasonably related to the position or to remove responsibilities from the description of the position.

(c)     Employee acknowledges that by signing this Agreement Employee shall be available to any of Employer's affiliates during the Employment Term of this Agreement.

(d)     Employee hereby acknowledges that he has received a copy of the Employee Handbook and has reviewed its provisions. Employee agrees to comply with Employer's policies and procedures as set forth in the Employee Handbook. Employee agrees to follow the policies and procedures set forth in Schedule "B," attached hereto and incorporated by reference herein, regardless of whether such policies and procedures are set forth in the Employee Handbook.

### 2. DURATION OF THIS AGREEMENT

Employer employs Employee, and Employee accepts such employment with Employer, for a period of thirty-six (36) months, beginning on October 1, 2005, and terminating on September 31, 2008. As used in this Agreement, "Employment Term" refers to the period of employment of Employee under this

Initials _____          Common Paymaster Corp Employment Agreement – Frank Hailstones          Initials_____
    Employer                                    Page 1 of 15                                              Employee

(Ver H05)

MVI/Palaxar - P1
122

Agreement, whether for the aforementioned period above, termination earlier as provided elsewhere in this Agreement, or as extended by mutual agreement of Employer and Employee.

3.    COMPENSATION AND BENEFITS

(a)    Employer shall pay Employee, and Employee agrees to accept from Employer, in full payment for Employee's services under this Agreement, the Compensation as set forth opposite Employee's Initial Primary Classification in Schedule "C" attached hereto and incorporated by reference herein.

(b)    In addition to the Compensation set forth in Paragraph 3(a) hereinabove, Employee shall be entitled to Three (3) directorship(s) in Employer and/or its affiliated companies, which shall be in Employer's sole and absolute discretion, and shall be compensated Six Thousand (S6,000) per month for the directorship(s) position(s); provided, however, that Employee's directorship(s) compensation shall never be greater than the "Directors Fee (Incentive Compensation)" set forth in Schedule "C-1a" attached hereto and incorporated by reference herein.

(c)    Employee shall receive no other fringe benefits, and disability, medical, dental, life or other insurance except those benefits that are generally available to any employee of Employer.

(d)    Employee shall be granted considerable autonomy on establishing Employee's schedule. Employee shall exercise informed and reasonable judgment concerning appropriate hours and vacation time. Notwithstanding anything to the contrary contained in the Employee Handbook, Employee may not receive lesser benefits than the benefits contained in the Handbook in effect at the execution date of this Agreement.

(e)    Employer shall reimburse Employee for all actual, reasonable and necessary business expenses incurred by Employee in connection with the business of Employer. Payments to Employee for such business expenses shall be made within seven (7) days after receipt of an approved expense report from Employee, or such ordinary day of the calendar month as Employer pays employees' accounts, whichever day is later in time. Employer shall determine whether expense reports are to be submitted weekly or monthly.

(f)    Employee's entitlement to receive Compensation under this Agreement shall be offset against any other compensation otherwise paid to Employee under any employment arrangement with Employer or any Employer affiliate (regardless of the number of years), on a cumulative basis from the date of execution of this Agreement.

(g)    Notwithstanding any other provision regarding dispute resolution set forth elsewhere in this Agreement, any dispute regarding the Compensation shall be exclusively decided in accordance with the laws of the State of Florida. Such dispute shall first be submitted to non-binding mediation and shall thereafter be determined by final binding arbitration, and not litigation, with the agreed venue for mediation and arbitration being in Orlando, Florida. The mediation and, if needed, arbitrator, shall be selected in each case by the applicable regional manager of Employer and by Employee. In the event of a disagreement between Employer and Employee as to the arbitrator, the parties shall have a mutually agreeable independent third party select an arbitrator. Employee agrees to waive all other enforcement rights with respect to any dispute regarding the Compensation.

Initials_____          Common Paymaster Corp Employment Agreement – Frank Hailstones          Initials_ _____
        Employer                              Page 2 of 15                                    Employee

(Ver H05)                                      MVI/Palaxar - PI
                                                   123

## 4.    TERMINATION/SEVERANCE

(a)    Notwithstanding any contrary provision in this Agreement, Employer may terminate this Agreement for cause without notice.   For the purpose of this paragraph, "cause" is defined as (1) Employee convicted of, or pleading guilty or no contest to, a felony under applicable law; (2) Willful material breach of Employee's fiduciary duty to Employer; (3) Employee willfully failing to perform any material explicit or implicit duty that is within the normal duties of Employee or is a reasonable request or directive of Employer; (4) Employee committing any breach of a material term of this Agreement, provided that Employee, after receiving twenty (20) days written notice from Employer, has not cured such breach; (5) Employee willfully failing to adhere to any material rule, policy or directive set forth by Employer; (6) Employee committing willful insubordination, corruption and/or disruption in the workplace; or (7) Employee committing a harassment violation of law against an employee, affiliate, owner, client, invitee, or licensee of Employer.

(b)    Upon termination, Employee shall immediately provide to Employer all documents and items of any nature or description, including computer files, that pertain to actual potential customers or leads that Employee developed or obtained during employment, any phase or aspect of Employer's operations, any phase or aspect of Employer's future operations or plans, and any other items, lists, documents, or the like, that in any way may pertain to Employer's business.

(c)    Except for termination of Employee due to breaches of paragraphs 4(a)(1) and 4(a)(7) above, if Employer terminates this Agreement for any reason, including for cause, or as a result of a merger, acquisition, sale or "Change in Control" (as defined below in paragraph 4(f)), in addition to the Compensation up until date of termination, Employee shall be entitled to a lump sum severance payment within thirty (30) days of the termination date of employment.   This severance payment shall be an amount equal to one (1) month's base compensation for every two (2) years of employment by Employee under this Agreement, but shall never be less than one (1) month's base compensation.

> *For illustrative purposes:*    *If Employee's average monthly Base Compensation is $8,000, and Employee has worked for 4 years and 3 months and is terminated, Employee is entitled to $8,000 times 2 = $16,000.*

(d)    In the event it shall be determined that any payment, distribution or other action by Employer, to or for the benefit of Employee, whether paid or payable or distributed or distributable pursuant to the terms of this Agreement or otherwise, would be taxable as an excise tax under the Internal Revenue Code 1986, Employer shall make a payment to Employee in an amount equal to any such excise tax imposed upon said payments.   Should any interest or penalties accrue to Employee with respect to any such excise tax, Employer will also reimburse those costs.

(e)    For purposes of this Agreement, the term "Change in Control" shall be defined as:

(i)    The approval by the shareholders of Employer of a reorganization, merger, consolidation or other form of corporate transaction or series of transactions, in each case, where the persons who were the shareowners of Employer immediately prior to such organization, merger or consolidation or other transaction do not, immediately thereafter, own more than fifty percent (50%) of the combined voting power of the succeeding corporation.  This voting power is generally entitled to vote for election of directors of the newly reorganized, emerged, or consolidated company resulting in new outstanding voting shares, or

(ii)    Employer liquidates or dissolves the company, or

Initials_____
Employer

Common Paymaster Corp Employment Agreement – Frank Hailstones
Page 3 of 15

Initials_____
Employee

(Ver 1105)

MVI/Palaxar - PI
124

(iii)   The acquisition by any person, entity or "group" of more than fifty percent (50%) of the then outstanding shares of Employer's common voting stock, or

(iv)   The sale of all or substantially all of the assets of Employer.

## 5.   UNIQUENESS OF SERVICES OF EMPLOYEE

Employee hereby warrants and represents that the services he intends to provide under this Agreement are of a special, unique, unusual, extraordinary and intellectual character that gives him a peculiar value, the loss of which cannot be reasonably or adequately compensated by damages in an action at law. Employee, therefore, expressly agrees that Employer shall be entitled to injunctive and other equitable relief to prevent a breach of this Agreement by Employee in addition to any other rights or remedies that Employer may possess and to the maximum extent permitted by law. Any action for injunctive relief under this paragraph should not be subject to the provisions in this Agreement related to the alternative dispute resolution process.

## 6.   NON-DISCLOSURE OF CONFIDENTIAL INFORMATION COVENANTS

(a)   "Confidential Information" shall include, but not be limited to, regardless of form, all: (i) customer lists, affiliates, referral source lists, prospect lists, investor lists, vendor lists, client lists, databases, and personnel records; (ii) financial information concerning Employer and its operations; (iii) methods of organizing and conducting Employer's business as such methods, relate to Employer's sales, accounts, borrowers, customers, financing products or techniques, employees and referral sources; (iv) information relating to Employer's proprietary rights prior to any permitted public disclosure thereof, including, but not limited to, the nature of the proprietary rights, the status and details of research and development of products and services, and information regarding acquiring, protecting, enforcing and licensing proprietary rights (including trademarks and trade names); and, (v) other information, whether or not originated by Employee, which is used in Employer's business and is (a) proprietary to, about, or created by or for Employer; (b) information which gives Employer some competitive business advantage or the opportunity of obtaining such advantage or the disclosure of which could be detrimental to the interests of Employer; (c) designated as confidential information by Employer, or from all of the relevant circumstances should reasonably be assumed by Employee to be confidential and proprietary to Employer, or (d) is not generally known by persons other than Employer; all of which information, lists, schedules, records or methods are obtained by Employee from Employer or through Employee's performance of duties hereunder.  Confidential Information shall include all of the foregoing whether the same are produced by Employee or any other employee, agent or affiliate of Employer and all physical, tangible, or intangible embodiments or repositories (including any and all photocopies thereof) of the foregoing but shall not include information or matters that are a trade secret under applicable law.

(b)   Employee acknowledges and agrees that (i) Employer has expended and will continue to expend considerable and substantial time, effort and capital resources to develop the Confidential Information, (ii) the Confidential Information is innovative and proprietary in nature to Employer and must receive confidential treatment to protect Employer's proprietary interest therein from irreparable damage, (iii) Employee by virtue of Employee's employment relationship with Employer, will have access to the Confidential Information, and (iv) the Confidential Information and all physical, tangible and intangible embodiments or other repositories of the Confidential Information shall be and at all times remain the sole and exclusive property of Employer.  Employee further acknowledges that specialized training, unique to Employer and not otherwise available from any other source, has been provided to Employee at much cost, time and expense to Employer.  This training is not available from any school, available courses or from any source whatsoever but from the continued intense training offered by Employer to Employee as partial consideration for this Agreement.

Initials_____          Common Paymaster Corp Employment Agreement – Frank Hailstones          Initials_____
        Employer                              Page 4 of 15                                 Employee

(Ver H05)
                                                                        MVI/Palaxar - PI
                                                                              125

(c)     For the period of the Employment Term through the date which is three (3) years after termination of employment, Employee agrees that Employee will not, without the prior written consent of Employer, which consent may be withheld in the Employer's sole and absolute discretion, disclose or make available any Confidential Information to any person or entity (verbally or in writing), nor shall Employee make or cause to be made, or permit or allow, either on Employee's own behalf or on behalf of others, any use of the Confidential Information then in Employee's knowledge, custody, control or possession. Employee further agrees that immediately upon termination of Employee's employment with Employer for any reason or at any other time requested by Employer and as a condition precedent to Employee's receipt of any payments then due Employee from Employer under this Agreement, Employee shall promptly deliver to Employer any and all property belonging to Employer, including without limitation, all Confidential Information (including all physical, electronic, or other repositories thereof) in Employee's custody, control or possession.

(d)     Employee acknowledges that during the Employment Term, from time to time, Employee may have access to (directly or indirectly), or receive information from or regarding the Employer or its affiliates in the nature of trade secrets, the release of which may be damaging to Employer or its affiliates. Employee agrees to hold in strict confidence any information it receives regarding the Employer or its affiliates that is considered a trade secret and shall not disclose such information to any other person or entity, and will take all necessary steps to prevent any other person or entity from discovering the trade secrets. Accordingly, Employee agrees that the provisions of this Paragraph 6(d) may be enforced by temporary and permanent injunction, in addition to all other remedies provided by law and equity. Furthermore, Employee acknowledges and agrees that theft of trade secrets may subject Employee to certain sanctions and criminal penalties under the Economic Espionage Act of 1996 (18 U.S.C., Sections 1831 to 1839).

## 7.     PROTECTIVE COVENANTS

(a)     "Protected Parties" or "Protected Party" shall mean (i) all prospective customers, affiliates, partners, borrowers and referral sources of Employer with whom Employer has had direct contact as an employee of Employer during the eighteen (18) month period immediately preceding the termination of Employee's employment with Employer; (ii) all customers, affiliates, partners, borrowers and referral sources who have purchased, contracted, engaged or referred others to Employer for products, services or financing from Employer during the eighteen (18) month period immediately preceding the termination of Employee's employment with Employer and with whom Employee had direct contact as an employee of Employer; and (iii) all employees of Employer employed by Employer as of the termination date with whom Employee had direct contact while employed by Employer.

(b)     Except for or on behalf of Employer, Employee agrees that for the period of the Employment Term through the date which is two (2) years after termination of employment, Employee shall not on Employee's own behalf or in the service or on behalf of others, solicit, divert, pirate or appropriate, or attempt to solicit, divert, pirate or appropriate, to Employee or any other person or entity, any of the Protected Parties in connection with the provision of services, products or financing in competition with Employer, or otherwise interfere or attempt to interfere with Employer's relationship with the Protected Parties.

## 8.     RESTRICTIVE COVENANTS – INDEPENDENT COVENANTS

(a)     Employee agrees that while working for the Employer and for a period of eighteen months (18) immediately following the termination of employment for any reason whatsoever or no reason at all, Employee shall not provide, directly or indirectly, services similar to those Employee is

Initials_____          Common Paymaster Corp Employment Agreement – Frank Hailstones          Initials_____
      Employer                              Page 5 of 15                                           Employee

(Ver H05)

MVI/Pulaxar - PI
126

providing to Employer under this Agreement, to any person or entity that provides services substantially similar to those of Employer.

(b)     Except in performance of this Agreement, Employee shall not during the term of this Agreement and for eighteen (18) months following termination of employment for any reason whatsoever or no reason at all, solicit, either directly or indirectly, any Protected Party for the purpose of encouraging or inducing such Protected Party to purchase or obtain specialized financial services or related to any other product/services provided by Employer as of the date of this Agreement and through the date of the termination of Employee's employment.

(c)     Employee further acknowledges that this covenant is an independent covenant within this Agreement. Employee acknowledges actual receipt of good and valuable consideration for the purpose of executing this covenant, as well as other consideration stated herein and including the consideration of continued employment by Employer.

(d)     Employee recognizes that the terms of this covenant found in Paragraphs 6, 7 and 8 are reasonable and necessary for the protection of the Employer's unique and national business, and shall survive the termination of this Agreement.

(e)     The provisions of the covenants found in Paragraphs 6, 7 and 8, as well as the period of time, geographical areas and types and scope of restrictions of Employee's activities specified herein are intended to be divisible; and, in the event any provision herein shall be deemed invalid or unenforceable in any respect, as to any one or more periods of time, geographical areas, business or activities, the remaining provisions shall not thereby be effected but shall, to the extent allowed by law, remain in full force and effect; and this Agreement shall, to the extent allowed by law, be deemed to be amended without further action by the parties hereto to the extent necessary to render it valid and enforceable.

(f)     Employee acknowledges that the covenants in Paragraphs 6, 7 and 8 are independent of the existence of any agreement, claim or cause of action that Employee may ever have against Employer, whether predicated on this Agreement or otherwise and shall not constitute a defense to the enforcement by Employer of this Agreement not to compete.

9.     DEVOTION BY EMPLOYEE OF FULL-TIME TO BUSINESS

(a)     Except as otherwise agreed to by Employer in writing, Employee shall devote all of his time, attention, knowledge and skills solely and exclusively to the business and interests of Employer during normal working hours. Employer shall retain all of the benefits, emoluments, profits or other returns from or incidental to any and all work, services, advice and mental efforts of Employee that arise during the term of this Agreement, or such other amount as agreed to in writing by Employer's Board of Directors.

(b)     Employee shall not directly or indirectly, act as a partner, officer, director, stockholder, adviser, employee, or affiliate in any other business or trade that is related to that of Employer, except as otherwise agreed to in writing. Employee may invest his funds in the capital stock of a direct or indirect competitor of Employer only if said holdings represent less than five percent (5%) of the total number shares or principal amount of the securities of said issuer outstanding.

(c)     Employee shall provide Employer a confidential list of all current business and commercial interests, other than holdings inside of an ERISA qualified retirement account or any holdings of any kind or nature that are less than five percent (5%) of the value of any enterprise or venture (whether such holdings are held directly or indirectly by Employee).

(d)     Any future business and commercial interests, other than those set forth under Paragraphs 9(b) and 9(c) hereinabove, must be disclosed to Employer at least thirty (30) days prior to Employee acquiring any such interests. Employee acknowledges that the reason for the disclosure of such interests is because Employer and its affiliates have diverse holdings and are subject to various federal and state securities laws, as well as certain contractual vendor obligations with both public and private companies, making it necessary to disclose such information so that Employer does not violate any contracts, covenants, federal or state laws.

(e)     Failure of Employee to provide Employer with a list of all current business and commercial interests and/or failure of Employee to disclose any future business and commercial interests in accordance with Paragraph 9 shall subject Employee to default under this Agreement, resulting in the immediate termination of this Agreement and Employee's forfeiture of all benefits, compensation and interests held pursuant to this Agreement, at the time of termination.

## 10.     INDEMNIFICATION OF EMPLOYER AND INDEMNIFICATION OF EMPLOYEE

(a)     Unless acting under the direction of Employer, Employee shall hold harmless, indemnify and defend Employer from any and all claims, demands, damages, losses, expenses, attorneys' fees, causes of action, judgments and liability arising out of or in connection with Employee's breach of any representation, warranty, or agreement made under this Agreement, or arising out of any fraudulent or deliberate wrongful acts of Employee during Employee's engagement or representation to others as an Employee, independent contractor, or other affiliate of Employer.

(b)     Employer shall hold harmless, indemnify and defend Employee from any and all claims, demands, damages, losses, expenses, attorneys fees, causes of action, judgments and liability arising out of any fraudulent or deliberate wrongful acts of Employer, independent contractor or other affiliate of Employer and further for any acts or omissions arising out of Employee's employment with Employer unless caused by the active gross negligence of Employee.

## 11.     RELEASE OF PRIOR CLAIMS

Employee, for and in consideration of the payment of One Dollar ($1.00), and other good and valuable consideration, in hand paid, the receipt and sufficiency of which is hereby acknowledged, hereby agrees, to release, cancel, forgive and forever discharge Employer, each of its predecessors, parent corporations or companies, holding companies, subsidiaries, affiliates, divisions, successors and assigns, and all of its/their officers, directors, members and employees from all actions, claims, demands, damages, obligations, liabilities, controversies and executions, of any kind or nature whatsoever, whether known or unknown, whether suspected or not, which have arisen, or may have arisen, or shall arise by reason of the prior employment by Employer of Employee. Furthermore, Employee hereby acknowledges that Employee has no present or past claims of any nature against Employer. Employee specifically waives any claim or right to assert any cause of action or alleged cause of action or claim or demand which has, through oversight or error, intentionally or unintentionally or through a mutual mistake, been omitted from this section. This release shall be effective from the beginning of time until the date hereof.

## 12.     ALTERNATIVE DISPUTE RESOLUTION

All claims, duties, disputes and other matters in question by and between Employee and Employer shall be decided by final binding Arbitration under and in accordance with the provisions of Chapter 682, Florida Statutes, with exclusive venue for such Arbitration, and for any judicial proceedings to enforce the terms and conditions of this provision requiring Arbitration, or to confirm such Arbitration Award, to

Initials_____          Common Paymaster Corp Employment Agreement – Frank Hailstones          Initials_____
         Employer                              Page 7 of 15                                                          Employee

(Ver H05)

MVI/Palaxar - PI
128

be only in the Court of appropriate jurisdiction in Orange County, Florida. Provided further, that in the event for any reason a dispute under this Agreement is not subject to the Florida Arbitration Code, then in such event such dispute shall be decided by final binding Arbitration under and in accordance with the provisions of the Federal Arbitration Code, with exclusive venue likewise to be in Orange County, Florida, in the same manner as provided above. If there is no jurisdiction for such dispute under the Federal Arbitration Code, then such disputes shall be decided by Arbitration in accordance with Rules of the American Arbitration Association then in effect, with exclusive venue likewise to be in Orange County, Florida, in the same manner as provided above. The prevailing party in any Arbitration under this Agreement, including in any litigation required to enforce the terms and conditions of this Arbitration Provision, including to confirm an Arbitration Award, shall be entitled to recover their reasonable attorney's fees and consulting fees, and in addition, any taxable costs (including Arbitrator compensation) as are otherwise allowed in the Arbitration and for litigation to enforce the terms of this Arbitration provision or to confirm any Arbitration Award. This provision specifically authorizes the Arbitrator(s), within his (their) discretion, to tax in favor of the prevailing party that fees and costs of the Arbitration proceedings, to include Arbitrator compensation, filing fees, subpoena service fees, expert witness fees and costs, and out-of-pocket costs for a hearing room to conduct the proceeding.

13. **MISCELLANEOUS PROVISIONS**

(a)     This Agreement contains the sole and entire agreement between the Parties and shall supersede any and all other agreements between the Parties except for any covenant not to compete, covenant not to solicit, confidentiality agreement, or amended compensation agreement signed by both Parties. The Parties acknowledge that they have read this Agreement in its entirety and that any oral or written statements to the contrary are void and that neither Party has relied on any such representation in connection with this Agreement.

(b)     The Parties agree that no waiver or modification of this Agreement or of any covenant, condition, or limitation contained within it is valid unless it is in writing, clearly identified as a modification or waiver of this Agreement, or one of the clauses of this Agreement, and duly executed by both Parties. The Parties further agree that neither shall submit or attempt to submit any waiver or modification into evidence in any proceeding, arbitration, or litigation between the Parties arising out of or affecting this Agreement, or the rights or obligations of any Party under it, unless such waiver or modification is in writing, clearly identified as a modification or waiver of this Agreement or one of the clauses of this Agreement, and duly executed by both Parties.

(c)     The laws of the State of Florida govern this Agreement and performance under it at the exclusion of the laws of any other forum or jurisdiction irrespective of the particular jurisdiction in which any action or proceeding is instituted.

(d)     In the event that one or more provisions in this Agreement are held invalid or unenforceable, the remaining provisions shall remain in full force and effect.

(e)     Any waiver or modification of any breach of one or several provisions contained in this Agreement shall not be considered as a waiver of any subsequent breach of the same or other provisions of this Agreement.

(f)     The headings and titles used in this Agreement are for the reference and convenience of the Parties and do not serve to limit or change the meaning of any provision contained in this Agreement. All personal pronouns used in this Agreement, whether in the masculine, feminine or neuter gender, shall include all other genders; the singular shall include the plural; and the plural shall include the singular.

Initials_____          Common Paymaster Corp Employment Agreement – Frank Hailstones          Initials_____
        Employer                              Page 8 of 15                                   Employee

(Ver H05)

MVI/Palaxar - PI
129

(g)    Any Party required to provide notice to the other Party pursuant to this Agreement may affect such notice by personal delivery in writing or by certified mail, postage prepaid, return receipt requested. A Party mailing a notice shall address it to the relevant Parties at the addresses appearing in the introductory paragraph of this Agreement, but any Party may change its notice address in accordance with this paragraph. The Parties hereby deem any personally delivered notice as delivered on the date of actual receipt, provided the notice is signed by the person named in the notice or if the receipt refuses to sign such notice, then by the date of a notation as the delivering Party may show that communicates an attempted, but unclaimed or refused, delivery.

(h)    Failure to insist upon strict compliance with any of the terms, covenants or conditions hereof, shall not be deemed a waiver of such terms, covenants or conditions, nor shall any waiver or relinquishment of any right or power hereunder, at any one time or more times, be deemed a waiver or relinquishment of such right or power at any other time or times.

(i)    This Agreement shall be binding on, and inure to the benefit of, the successors and assigns of Employer. Employee shall have no right to assign this Agreement, but Employer, at its sole discretion, shall have the right to assign it.

(j)    This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which together shall comprise but a single instrument.

(k)    No provision of this Agreement shall be construed against, or interpreted to the disadvantage of, any Party hereto by any court or other governmental or judicial authority by reason of such party having or being deemed to have drafted, structured, dictated or required such provision.

**EMPLOYEE CERTIFIES THAT EMPLOYEE READ THE ENTIRE CONTENTS OF THIS AGREEMENT BEFORE EXECUTING SAME; THAT EMPLOYEE FULLY UNDERSTANDS ALL THE TERMS, CONDITIONS AND PROVISIONS SET FORTH IN THIS AGREEMENT, PARTICULARLY INCLUDING, BUT NOT LIMITED TO, EMPLOYEE'S FIDUCIARY AND CONFIDENTIAL RELATIONSHIP WITH EMPLOYER AND EMPLOYEE'S PROTECTIVE COVENANTS AND AGREEMENTS; THAT EMPLOYEE HAS RECEIVED A COPY OF THIS AGREEMENT AS SIGNED BY EMPLOYEE; AND THAT EMPLOYEE BEING BOUND BY THIS AGREEMENT IS A CONDITION PRECEDENT TO EMPLOYER'S ENGAGEMENT OF EMPLOYEE'S SERVICES AND EMPLOYER'S EXECUTION OF THIS AGREEMENT.**

**BY SIGNING BELOW AND INITIALING THE BOTTOM OF EACH OF THE PRECEDING EIGHT (8) PAGES, AS WELL AS THE ATTACHED SCHEDULES, THE PARTIES AGREE TO THE TERMS AND CONDITIONS HEREOF.**

**EMPLOYER:**
Common Paymaster Corp
A Florida corporation

**EMPLOYEE:**

By:_____

By:_____

Print Name:    Martin C. Flynn, Jr.

Print Name: _____

Print Title:            President

Print Title: _____

Date:_____

Date:_____

Social Security Number:_____

Initials_____
　　Employer

Common Paymaster Corp Employment Agreement – Frank Hailstones
Page 9 of 15

Initials_____
　　Employee

(Ver H05)

MVI/Palaxar - PI
130

## Schedule "A"
## JOB DESCRIPTION

Employee's duties and responsibilities shall include, but not be limited to:

- The business development and/or management of any current or prospective client-related activities.
- Other responsibilities to be assigned.

Initials _____
Employer

Common Paymaster Corp Employment Agreement – Frank Hailstones
Page 10 of 15

Initials_____
Employee

(Ver H05)

MVI/Tahiraar – PI
131

**Schedule "B"**

## POLICIES

Employee agrees to use Employee's best efforts to do the following:

- Identify and schedule work related to Employee's businesses.

- Make a weekly report to Employer regarding the status of any significant projects on which Employee is working.

- Make a full disclosure of any existing business.  All future business will be run through Employer's screening processes.

- Complete and turn in weekly timesheets.

- Deliver all PIN numbers and pass codes relating to the business financial account, along with full disclosure of any activities on any business account to Employer.

- Deliver personal biographical materials to Employer to be published in advertising, marketing or promotional materials and on company websites of Employer and its affiliates.  By delivering such biographical materials to Employer, Employee hereby expressly grants Employer and its affiliates the nonexclusive right to use Employee's name, biographical materials and likeness in connection with advertising, marketing or promotional materials, and websites of Employer and its affiliates.

- Employee agrees that any communication received or sent by Employee at his employment location, whether voice, email, or regular mail shall be subject to review and inspection by Employer at any time.

Initials_____ .
     Employer

(Ver H05)

Common Paymaster Corp Employment Agreement – Frank Hailstones
Page 11 of 15

Initials_____
          Employee

MVD/Palaxar – P1
132

Schedule "C"
## COMPENSATION

Employee shall be compensated in accordance with Schedule "C-1a" or "C-1b" in accordance with Employee's then current Primary Classification.   Such compensation shall consist of "Base Compensation" and "Incentive Compensation" as identified in Schedule "C-1a" or "C-1b" attached hereto and incorporated by reference herein.

Incentive Compensation shall consist of the grant to Employee on an annual basis of preferred shares of Mirabilis Ventures, Inc., a Nevada corporation ("Mirabilis"), each preferred share (a "Preferred Share") having a face value of One Thousand Dollars ($1,000), and bearing a coupon rate of six percent (6%) (the "Coupon").   Preferred Shares shall be granted to Employee on the basis of the formula (position and longevity) set forth in Schedule "C-2," attached hereto and incorporated by reference herein, whenever there are Employer net revenues sufficient to enable grants to all employees eligible for such grants (the "Formula").   The Preferred Shares shall not be granted to Employee until Employee completes their second full year of employment, after which Employee shall receive Employee's Preferred Shares in accordance with Schedule "C-2."  Thereafter, Employee shall continue to receive their Preferred Shares, in accordance with Schedule "C-2", on the yearly anniversary of the date of execution of this Agreement. The Coupon shall be paid annually to Employee.  Incentive Compensation may also consist of yearly discretionary monetary bonuses and yearly discretionary stock bonuses.  Both bonuses shall be determined by the Board of Directors of Employer and shall be based upon certain performance goals of Employer as set by the Board of Directors.

Based on the Formula, whenever three thousand (3,000) Preferred Shares have been granted to Employee, Employee shall be eligible to be a Preferred Member, and as a Preferred Member, shall have the right to vote, with other Preferred Member, on the admission of new Preferred Members.  Employee becomes a Preferred Member whenever one-half (1/2) of all current Preferred Members' vote to grant preferred membership status to Employee.

Based on the Formula, whenever five thousand (5,000) Preferred Shares have been granted to Employee, Employee shall be eligible to have "Tenure," and as such a "Tenured Member," shall have the right to vote, with other Tenured Members, on the admission of new Tenured Members.  An Employee has Tenure and becomes a Tenured Member whenever two-thirds (2/3) of all current Tenured Members vote to grant Tenure to Employee, and the permission of a majority in ownership of the common stock of Mirabilis vote to allow Employee to be granted Tenure also.  Tenured Members shall have such other rights and privileges as Mirabilis shall determine from time to time.  The maximum number of Preferred Shares that Employee may earn shall be five thousand (5,000).

Tenured Members shall select the boards of directors of Mirabilis' various affiliated companies that Employee shall serve on, and Employee shall thereby be entitled to receive the additional compensation listed in the Formula for such services.

All voting rights granted under this Agreement shall be subject to Mirabilis' Shareholders Agreement.

Initials_____
Employer
(Ver H05)

Common Paymaster Corp Employment Agreement – Frank Hailstones
Page 12 of 15

Initials_____
Employee

MVI/Palaxar – PI
133

Schedule "C-1a"
## EMPLOYEE COMPENSATION RANKS, TITLES & COMPENSATION

*Vice President* – Officer performing primarily professional and advisory services for clients.

*Administrative Vice President* – Officer in a regional office who performs primarily management functions instead of client services.

*Senior Vice President* – Officer in charge of client selection and case assignments in a geographic region.

*Senior Regional Officer (SRO)* – Professional in charge of managing regional organization operations by directing and coordinating activities consistent with established goals, objectives, and policies.

*Executive Vice President* – Officer at corporate office performing primarily management functions, such as Business Development, Operations, Corporate Relations, Controller, Treasurer, Corporate/General Counsel, and Secretary.

| Classification | Hourly Rate | Base Compensation | Directors Fee (Incentive Compensation) |
|---|---|---|---|
| 1. General Analyst | 75 | 48,000 | -- |
| 2. Senior Analyst | 80 | 54,000 | -- |
| 3. Expert Analyst | 90 | 60,000 | 25% |
| 4. General Advisor | 100 | 66,000 | 25% |
| 5. Senior Advisor | 125 | 72,000 | 33.33% |
| 6. Expert Advisor | 150 | 84,000 | 33.33% |
| 7. Expert Advisor II | 150 | 90,000 | 33.33% |
| 7. General Strategist | 200 | 96,000 | 40% |
| 8. General Strategist II | 200 | 108,000 | 40% |
| 8. Senior Strategist | 250 | 120,000 | 40% |
| 10. Senior Strategist II | 250 | 132,000 | 40% |
| 11. Senior Strategist III | 250 | 144,000 | 40% |
| 9. Expert Strategist | 300 | 150,000 | 40% |
| 10. Master Strategist | 400 | 180,000 | 50% |
| 11. Grand Strategist | 500 | 240,000 | 50% |
| 12. Grand Strategist II | 500 | 300,000 | 50% |
| 12. Nexial Strategist | ∞ | ∞ | N/A |

1. All professional staff are also entitled to receive referral, sourcing and other fees or commissions on work referred to the firm as if professional was an independent representative.

2. All professionals except General Analyst and Senior Analyst are eligible for selection by Mirabilis' "Tenured Members" as directors for which additional compensation is paid.

3. All professionals shall receive performance bonus should personal billings exceed 3 times base compensation.

4. All professionals shall receive retention consideration as set forth in retention program.

5. All professionals shall be eligible for discretionary bonuses awarded by Employer's BOD or designate.

Initials_____
        Employer

Common Paymaster Corp Employment Agreement – Frank Hailstones
Page 13 of 15

Initials_____
        Employee

(Ver H05)

MVI/Palaxar - PI
134

Schedule "C-1b"
## SALES COMPENSATION RANKS, TITLES & COMPENSATION

*Sales Regional Manager* – Officer, with sales supervising and management experience, who shall control and direct Sales Managers, Sales Specialists and Sales Representatives in a geographic region.

*Sales Manager* – Officer in a regional office who performs primarily general sales management functions over Sales Specialists and Sales Representatives instead of client services.

*Sales Specialist* – Individual who has formal training in selling Mirabilis', and its affiliates', products and services.

*Sales Representative* -- Individual who is designated to sell a specific product and/or service for the benefit of Mirabilis and its affiliates.

| | Classification | Hourly Rate | Base Compensation |
|----|----------------------|--------|--------|
| 1. | Sales Representative | 35.00 | 24,000 |
| 2. | Sales Specialist | 50.00 | 36,000 |
| 3. | Sales Manager | 75.00 | 48,000 |
| 4. | Sales Regional Manager | 125.00 | 72,000 |

1. All sales professional staff are also entitled to receive referral, sourcing and other fees or commissions on work referred to the firm as if sales professional was an independent representative.

2. Sales Regional Manager is eligible for selection by Mirabilis' "Tenured Members" as directors for which additional compensation is paid.

3. All sales professionals shall receive retention consideration as set forth in retention program.

4. All sales professionals shall be eligible for discretionary bonuses awarded by Employer's Board BOD or designate.

Initials_____
Employer

Common Paymaster Corp Employment Agreement – Frank Hailstones
Page 14 of 15

Initials_____
Employee

(Ver H05)

MVII/Polaxar - P1
135

# Schedule "C-2"
## PREFERRED STOCK SCHEDULE

| Staff | Annual Shares | Cumulative Shares |
|---|---|---|
| Year 1 | - | - |
| Year 2 | 50 | 50 |
| Year 3 | 50 | 100 |
| Year 4 | 100 | 200 |
| Year 5 | 100 | 300 |
| Year 6 | 100 | 400 |
| Year 7 | 150 | 550 |
| Year 8 | 150 | 700 |
| Year 9 | 150 | 850 |
| Year 10 | 150 | 1,000 |
| Year 11 | 100 | 1,100 |
| Year 12 | 100 | 1,200 |
| Year 13 | 100 | 1,300 |
| Year 14 | 100 | 1,400 |
| Year 15 | 100 | 1,500 |
| Year 16 | 100 | 1,600 |
| Year 17 | 100 | 1,700 |
| Year 18 | 100 | 1,800 |
| Year 19 | 100 | 1,900 |
| Year 20 | 100 | 2,000 |
| | | |
| Executive | | |
| Year 1 | - | - |
| Year 2 | 100 | 100 |
| Year 3 | 200 | 300 |
| Year 4 | 300 | 600 |
| Year 5 | 400 | 1,000 |
| Year 6 | 200 | 1,200 |
| Year 7 | 200 | 1,400 |
| Year 8 | 200 | 1,600 |
| Year 9 | 200 | 1,800 |
| Year 10 | 200 | 2,000 |
| Year 11 | 200 | 2,200 |
| Year 12 | 200 | 2,400 |
| Year 13 | 200 | 2,600 |
| Year 14 | 200 | 2,800 |
| Year 15 | 200 | 3,000 |
| Year 16 | 200 | 3,200 |
| Year 17 | 200 | 3,400 |
| Year 18 | 200 | 3,600 |
| Year 19 | 200 | 3,800 |
| Year 20 | 200 | 4,000 |
| Year 21 | 200 | 4,200 |
| Year 22 | 200 | 4,400 |
| Year 23 | 200 | 4,600 |
| Year 24 | 200 | 4,800 |
| Year 25 | 200 | 5,000 |

Initials_____
   Employer

Common Paymaster Corp Employment Agreement – Frank Hailstones
Page 15 of 15

Initials_____
   Employee

(Ver H05)

MVf/Polaxar – P1
136

# EXHIBIT 6

**Edie Curry**

From:          Frank Hailstones (M)
ont:           Friday, March 03, 2006 8:11 PM
To:            Edie Curry
Subject:       RE: FW: RE: Richmond Task Assignments


Yep....just got in and having read a few emails ....well

-----Original Message-----
From:      Edie Curry
Sent: Fri Mar 03 19:00:55 2006
To:    Frank Hailstones (M)
Subject:    FW: RE: Richmond Task Assignments

Ditto.

-----Original Message-----
From:      Tessah Ivey
Sent: Fri Mar 03 18:47:17 2006
To:    Edie Curry
Subject:    RE: Richmond Task Assignments

Hello,


Frank answered:


ad Walters will be sending you a memo describing the Secured Solution Collections and
turning it over to you.


Everyone reports to Marty except Lori who is assigned to Edie.


Re: Smithfield Foods brochure: Edie, as President of Nexia it is your decision but Woody
should review for network consistencies.


Brian Taylor & Bill Eplin are handling assignments on the Gibraltar reporting and other
issues.


Mike cannot work on the Nexia Certification.


No crossover at non-senior levels except for emergency.


Thanks,


Tessah

6

DEFENDANTS_000268

Tessah Marie Ivey

International Coordinator

Nexia Strategy Corporation

111 N. Orange Avenue

20th Floor

Orlando, FL 32801

407-517-7779

tivey@nexiastrategy.com

This e-mail contains PRIVILEGED AND CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this e-mail, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify us by reply e-mail and delete this e-mail from your records. Thank you for your cooperation.

---

From: Edie Curry
Sent: Thursday, March 02, 2006 9:56 PM
To: Tessah Ivey; Marty Flynn
Cc: Frank Hailstones (M)
Subject: RE: Richmond Task Assignments

Folks:

From whom do I seek responses? Tessah or Marty? Please let me know so I don't crowd your inbox with unnecessary emails! I didn't receive any daily reporting forms; are those forthcoming? Please mark the past two days, Wednesday and Thursday as sick days although I have worked 4.6 hours today, but not during normal work hours. I couldn't find guidance in the employee handbook so please advise if I have missed it.

Also, what is the status of the Solution Collections? I have received no information about that assignment, is it forthcoming and from whom shall I expect it? Did you get the information from Charlie Brady? Do you have everything you need for your files, or is there something else I can provide to close out that situation?

I assume all the folks here in Richmond are exempt, but if not, please let me know, I never received a copy of their signed employment contracts to know for sure. Or, do they all report through Marty and I need not be involved?

Also, because there was not a brochure for Nexia Strategy Corporation, I developed one to give Smithfield Foods. Frank Hailstones saw it and approved it since it was designed for a specific client. Should I send that to Woody for additional consideration?

7

DEFENDANTS_000269

The Procuri contract is to be terminated. Shall I send the file to Mr. Berman to send the cancellation letter or perhaps Scott or Chad? I am not sure who would handle that, we have time though, it's paid through August. Shall we cancel it sooner or use it as long as possible?

The Gibraltar gentlemen report to whom? How do I task them when we need something for the Nexia Certification process; i.e., white paper review, strategy sessions, etc.? What is the proper chain of command?

...

Incidentally, you do realize that Nexia Strategy owns the patent for Nexia Certification and the three inventors are Edie Curry, Frank Hailstones and Mike Dement. It was Mike's concept to underwrite the product which gave it the perfect platform to launch this idea.

Folks here are asking if they can assist in each other's tasks or must Catherine be purely Absolute Packaging and Dale be purely Tireflys. etc. The conversation around "suing" and "picketing" has them wanting to be cautious concerning boundaries. Please clarify. We've looked in the employee handbook and could not find specific guidance.

Thanks!

-----Original Message-----
From: Tessah Ivey
Sent: Tuesday, February 28, 2006 12:52 PM
To: Edie Curry
Subject: RE: Richmond Task Assignments

Solutions Collection is a new project that Bank of America is signing off on.

You are the best Nexialist to handle this project.

This e-mail contains PRIVILEGED AND CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this e-mail, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify us by reply e-mail and delete this e-mail from your records. Thank you for your cooperation.

From: Edie Curry
Sent: Tuesday, February 28, 2006 12:45 PM
To: Tessah Ivey
Subject: RE: Richmond Task Assignments

What is Solution Collections?

8

-----Original Message-----
From: Tessah Ivey
Sent: Tuesday, February 28, 2006 12:42 PM
To: Edie Curry
Subject: Richmond Task Assignments

Hello Edie,

Here are the assignments for the personnel in Richmond, VA:

Edie:

1.      Solution Collections

2.      Nexia Certification

3.      Manufacturing Consolication (Cushing)

4.      Richmond Region Development

5.      Advantis Contract

Katherine King- Absolute Packaging

Dale Mitchell- Tire Flys

Lori Eberhardt- Nexia/Mirabilis Admin

Mike Demant- Smithfield Contract and other sales

                No more involvement in Certification —not one second until sales hav
been completed and collections made on the above. Report directly to Archer only.

Tom Broadhead:

1.      Regulated Industries

2.   -  Empire Broker

3.      Titanium Technologies

4.      Absolute Packaging

Changes in assignment by direction of Common Paymaster only. Please acknowledge receipt

9

DEFENDANTS_000271

and understanding.

Thank you,

Marty Flynn

This e-mail contains PRIVILEGED AND CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this e-mail, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify us by reply e-mail and delete this e-mail from your records. Thank you for your cooperation.

DEFENDANTS_000272

# EXHIBIT 7

July 28, 06

Because Eric Curry is the Earth Goddess Mirabilis and Nexia Strategy Corp surrenders its successors and affigios all rights, ownership interest in Nexia Certification effective this date subject to subsequent economic negotiation of ecosambah reflecting actual employment and no disclosure Cartel public Mirabilis _____ Nexia shareholders on 1/1/07 _____
7/28/06
Date

43

# EXHIBIT 8

From: Edie Curry
Sent: Thursday, March 09, 2006 8:23 PM
To: Allen Archer
Subject: FW: Richmond Task Assignments

Allen:
FYI

-----Original Message-----
From: Tessah Ivey
Sent: Friday, March 03, 2006 6:47 PM
To: Edie Curry
Subject: RE: Richmond Task Assignment:

Hello,

Frank answered:

Chad Walters will be sending you a memo describing the Secured Solution Collections and turning it over
to you.

Everyone reports to Marty except Lori who is assigned to Edie.

Re: Smithfield Foods brochure: Edie, as President of Nexia it is your decision but Woody should review for
network consistencies.

Brian Taylor & Bill Eplin are handling assignments on the Gibraltar reporting and other issues.

Mike cannot work on the Nexia Certification,

n crossover at non-senior levels except for emergency.

Thanks,

Tessah

Tessah Marie Ivey
International Coordinator
Nexia Strategy Corporation
111 N. Orange Avenue
20th Floor
Orlando, FL 32801
407-517-7779
tivey@nexiastrategy.com

This e-mail contains PRIVILEGED AND CONFIDENTIAL information intended only for the
use of the addressee(s) named above. If you are not the intended recipient of this e-mail, or the
employee or agent responsible for delivering it to the intended recipient, you are hereby notified
that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-
mail in error, please notify us by reply e-mail and delete this e-mail from your records. Thank you
for your cooperation.

From: Edie Curry
Sent: Thursday, March 02, 2006 9:56 PM
To: Tessah Ivey; Marty Flynn
Cc: Frank Hailstones (M)
Subject: RE: Richmond Task Assignments

Folks:

From whom do I seek responses? Tessah or Marty? Please let me know so I don't crowd your inbox with unnecessary emails! I didn't receive any daily reporting forms; are those forthcoming? Please mark the last two days, Wednesday and Thursday as sick days although I have worked 4.6 hours today, but not during normal work hours. I couldn't find guidance in the employee handbook so please advise if I have missed it.

Also, what is the status of the Solution Collections? I have received no information about that assignment, is it forthcoming and from whom shall I expect it? Did you get the information from Charlie Brady? Do you have everything you need for your files, or is there something else I can provide to close out that situation?

I assume all the folks here in Richmond are exempt, but if not, please let me know, I never received a copy of their signed employment contracts to know for sure. Or, do they all report through Marty and I need not be involved?

Also, because there was not a brochure for Nexia Strategy Corporation, I developed one to give Smithfield Foods. Frank Hailstones saw it and approved it since it was designed for a specific client. Should I send that to Woody for additional consideration?

The Procuri contract is to be terminated. Shall I send the file to Mr. Berman to send the cancellation letter or perhaps Scott or Chad? I am not sure who would handle that, we have time though, it's paid through August. Shall we cancel it sooner or use it as long as possible?

The Gibraltar gentlemen report to whom? How do I task them when we need something for the Nexia Certification process, i.e., white paper review, strategy sessions, etc.? What is the proper chain of command?

Incidentally, you do realize that Nexia Strategy owns the patent for Nexia Certification and the three inventors are Edie Curry, Frank Hailstones and Mike Dement. It was Mike's concept to underwrite the product which gave it the perfect platform to launch this idea.

Folks here are asking if they can assist in each other's tasks or must Catherine be purely Absolute Packaging and Dale be purely Tireflys. etc. The conversation around "suing" and "picketing" has them wanting to be cautious concerning boundaries. Please clarify. We've looked in the employee handbook and could not find specific guidance.

Thanks!

> -----Original Message-----
> From: Tessah Ivey
> Sent: Tuesday, February 28, 2006 12:52 PM
> To: Edie Curry
> Subject: RE: Richmond Task Assignment

> Solutions Collection is a new project that Bank of America is signing off on.
> You are the best Nexialist to handle this project.

> This e-mail contains PRIVILEGED AND CONFIDENTIAL information intended only
> for the use of the addressee(s) named above. If you are not the intended recipient of this e-
> mail, or the employee or agent responsible for delivering it to the intended recipient, you
> are hereby notified that any dissemination or copying of this e-mail is strictly prohibited.
> If you have received this e-mail in error, please notify us by reply e-mail and delete this e-
> mail from your records. Thank you for your cooperation.

> From: Edie Curry
> Sent: Tuesday, February 28, 2006 12:45 PM
> To: Tessah Ivey
> Subject: RE: Richmond Task Assignments

> What is Solution Collections?

DEFENDANTS_000299

-----Original Message-----
From: Tessah Ivey
Sent: Tuesday, February 28, 2006 12:13 PM
To: Edie Curry
Subject: Richmond Task Assignments

Hello Edie,

Here are the assignments for the personnel in Richmond, VA:

Edie:
1. Solution Collections
2. Nexia Certification
3. Manufacturing Consolidation (Cushing)
4. Richmond Region Development
5. Advantis Contract

Katherine King- Absolute Packaging

Dale Mitchell- Tire Flys

Lori Eberhardt- Nexia/Mirabilis Admin

Mike Dement- Smithfield Contract and other sales
No more involvement in Certification –not one second until sales have been completed and collections made: on the above. Report directly to Archer only.

Tom Broadhead:

1. Regulated Industries
2. Empire Broker
3. Titanium Technologies
4. Absolute Packaging

Changes in assignment by direction of Common Paymaster only. Please acknowledge receipt and understanding.

Thank you,

Marty Flynn


This e-mail contains PRIVILEGED AND CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this e-mail, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify us by reply e-mail and delete this e-mail from your records. Thank you for your cooperation.

DEFENDANTS_000300

# EXHIBIT 9



| Home | Contact Us | E-Filing Services | Document Searches | Forms | H |

Previous on List    Next on List    Return To List                          Entity Na

Events              No Name History                                          Su

# Detail by Entity Name

## Foreign Profit Corporation

MIRABILIS VENTURES, INC.

## Filing Information

**Document Number** F05000004040
**FEI/EIN Number** 201833196
**Date Filed** 07/14/2005
**State** NV
**Status** ACTIVE
**Last Event** ARTICLES OF CORRECTION
**Event Date Filed** 07/21/2005
**Event Effective Date** NONE

## Principal Address

341 N. MAITLAND AVENUE
SUITE 210
MAITLAND FL 32751 US

Changed 04/15/2009

## Mailing Address

341 N. MAITLAND AVENUE
SUITE 210
MAITLAND FL 32751 US

Changed 04/15/2009

## Registered Agent Name & Address

LSEB AGENT SERVICES, INC.
390 N. ORANGE AVENUE
SUITE 600
ORLANDO FL 32801 US

Name Changed: 04/15/2009

Address Changed: 04/15/2009

## Officer/Director Detail

**Name & Address**

Title D

**MOECKER, MICHAEL**
**341 N. MAITLAND AVENUE, SUITE 210**
**MAITLAND FL 32751 US**

Title PRES

**CUTHILL, R. W JR.**
**341 N. MAITLAND AVENUE, SUITE 210**
**MAITLAND FL 32751 US**

## Annual Reports

| Report Year | Filed Date |
|---|---|
| 2007 | 04/23/2007 |
| 2008 | 01/21/2008 |
| 2009 | 04/15/2009 |

## Document Images

| | |
|---|---|
| 04/15/2009 -- ANNUAL REPORT | View image in PDF format |
| 06/05/2008 -- Off/Dir Resignation | View image in PDF format |
| 06/05/2008 -- Off/Dir Resignation | View image in PDF format |
| 06/05/2008 -- Off/Dir Resignation | View image in PDF format |
| 01/21/2008 -- ANNUAL REPORT | View image in PDF format |
| 10/19/2007 -- Off/Dir Resignation | View image in PDF format |
| 09/26/2007 -- Reg. Agent Change | View image in PDF format |
| 04/23/2007 -- ANNUAL REPORT | View image in PDF format |
| 05/30/2006 -- ANNUAL REPORT | View image in PDF format |
| 10/24/2005 -- AFFIDAVIT | View image in PDF format |
| 07/21/2005 -- Articles of Correction | View image in PDF format |
| 07/21/2005 -- Reg. Agent Change | View image in PDF format |
| 07/14/2005 -- Foreign Profit | View image in PDF format |

**Note:** This is not official record. See documents if question or conflict.

Previous on List    Next on List    Return To List                          Entity Na

Events              No Name History

| Home | Contact Us | Document Searches | E-Filing Services | Forms | Help |

Copyright and Privacy Policies
Copyright © 2007 State of Florida, Department of State.

# EXHIBIT 10

Virginia State Corporation Commission

Commonwealth
of Virginia



**State
Corporation
Commission**

WEB#805                                    CIS                            09/1
TCP00039    LLCM3220            LLC DATA INQUIRY                          13:2

    LLC ID:  S198938 ‾
                        5   STATUS: 00  ACTIVE              STATUS DATE:
    LLC NAME:  Palaxar Group, LLC

Enter

DATE OF FILING: 09/11/2006  PERIOD OF DURATION:                INDUSTRY
STATE OF FILING:  VA VIRGINIA            MERGER INDICATOR:
                              CONVERSION/DOMESTICATION INDICATOR:
                P R I N C I P A L   O F F I C E   A D D R E S S
        STREET:  951 E BYRD ST

Signoff

Help

         CITY:  RICHMOND            STATE:  VA  ZIP:  23219-0000
              R E G I S T E R E D    A G E N T   I N F O R M A T I O N
       R/A NAME:  GARY D LECLAIR
                  LECLAIR RYAN
         STREET:  951 EAST BYRD ST
                  RIVERFRONT PLAZA EAST TOWER
         CITY:  RICHMOND            STATE:  VA  ZIP:  23219-0000
       R/A STATUS: 4 MEMBER OF VSB    EFF DATE:  09/11/06 LOC: 216  RICHMOND
              YEAR      FEES      PENALTY      INTEREST      BALANCE
               07        50.00                               50.00

Print

COMMAND:  |..........................................................

NOTE: Function Key usage varies depending on the Application Screen.
For specifics, refer to Function Key Documentation.

MVI/Palaxar - Pl
286

Virginia State Corporation Commission

Commonwealth
of Virginia



State
Corporation
Commission

| WEB#805 | | CIS | 09/1 |
| TCP00039 | LLCM3220 | LLC DATA INQUIRY | 13:2 |

LLC ID: S207937 - 6   STATUS: 00  ACTIVE                    STATUS DATE:

LLC NAME: Palaxar Holdings, LLC

**Enter**

DATE OF FILING: 12/18/2006  PERIOD OF DURATION:                    INDUSTRY
STATE OF FILING:  VA VIRGINIA          MERGER INDICATOR:

**Signoff**

CONVERSION/DOMESTICATION INDICATOR:
P R I N C I P A L   O F F I C E   A D D R E S S
STREET:  5637 COUNTRY HILLS LN

**Help**

CITY:  GLEN ALLEN                  STATE:  VA  ZIP:  23059-0000
R E G I S T E R E D   A G E N T   I N F O R M A T I O N
R/A NAME:  GARY D LECLAIR

**Print**

LECLAIR RYAN A PROFESSIONAL CORPORATION
STREET:  951 E BYRD ST

CITY:  RICHMOND                  STATE:  VA  ZIP:  23219-0000
R/A STATUS: 4 MEMBER OF VSB    EFF DATE:  12/18/06  LOC: 216  RICHMOND

| YEAR | FEES | PENALTY | INTEREST | BALANCE |
|------|------|---------|----------|---------|
| 07   | 50.00 | | | 50.00 |

COMMAND:

NOTE: Function Key usage varies depending on the Application Screen.
For specifics, refer to Function Key Documentation.

MVI/Palaxar - PI
287

# EXHIBIT 11

# Contact Us

If you have any questions regarding PALAXAR, CONTINUOUS MONITORING™, or any other of our products and services, please contact us through e-mail and we'll get back to you as soon as possible. We look forward to hearing from you.





Name:

Company:

Phone:

E-mail:

Please confirm your e-mail:

Please tell us how you found our website:

Please Select One ---->

Comments/Questions:

Send Information    Clear Form

**PALAXAR, LLC**
201 West 7th Street
Richmond, Virginia
FAX: 206.984.1353

**PALAXAR, LIMITED**
1-2 Universal House
Wentworth Street
London, UK E17SA
FAX: 206.984.1353

inquiries@palaxar.com





## Cost of Fraud

At least 5% of Corporate Revenue is lost to fraud each year. What is it costing you?
Contact us...

## Risk

Most corporate fraud is uncovered by accident or through tips. Is it worth the risk?
Contact us...

## Conviction Rate

82% of those who commit corporate fraud have never been charged or convicted of a crime.
Contact us...

Advisory Council

59

Affiliates

©Copyright 2006 PALAXAR, LLC. All Rights Reserved

PALAXAR & Continuous Monitoring™ © 2006

# PALAXAR's Anti-Fraud Solutions

PALAXAR offers a new and unique end to end solution to help organizations better combat fraud. Our team's significant domain experience, combined with our patent pending approach of both methodology and technology, and our premier partner network enables us to offer a more holistic solution to help companies better prevent and detect fraud.

PALAXAR Anti-Fraud Solutions suite covers

- Occupational Fraud

- Insurance Fraud

- Mortgage Fraud

- Healthcare Fraud

- Broker / Securities Fraud

# PALAXAR's Occupational Fraud Methodology (Patent-Pending)

PALAXAR offers a revolutionary new patent-pending process to combat occupational fraud. We employ a sophisticated blend of data modeling, artificial intelligence, social networking analysis, and state-of-the-art information technology to help companies ensure their trusted employees are in fact trustworthy.

PALAXAR evaluates the risk of occupational fraud within a client-agreed scope and identifies employees in "positions at risk" – those in positions which would enable them to commit fraud. This might either be as a result of the seniority of the position and their ability, for example, to override controls, or for less senior positions, such as cashiers, loans or inventory staff where they have the ability to extract significant value from the organization in the form of cash or other assets.

For those trusted employees, identified in positions at risk, and who permissively subscribe to this process, PALAXAR collects, corroborates, analyzes and continually monitors their personal financial data and related behaviors to ensure that their financial performance (based on our unique algorithm), and changes in it over a period of time, are consistent with the appropriate standards. This process allows us to assess their propensity to commit occupational fraud. PALAXAR is able to automate most of its review process, by employing public and commercially available data sources allowing it to provide clients with virtually instantaneous results.





**Cost of Fraud**

At least 5% of Corporate Revenue is lost to fraud each year. What is it costing you?
Contact us...

**Risk**

Most corporate fraud is uncovered by accident or through tips. Is it worth the risk?
Contact us...

**Conviction Rate**

82% of those who commit corporate fraud have never been charged or convicted of a crime.
Contact us...

Advisory Council

Affiliates



When disparate, relational data are identified, it is verified for accuracy before referred for manual follow-up and further investigative review, if necessary. Tolerance limits can be set according to industry, position, or individualized corporate preferences. Anomalous behaviors or transactions are automatically flagged for immediate notification.

Companies have the option of simply incorporating PALAXAR services as one of a number of factors in their overall fraud risk-assessment evaluation or they can outsource that function to PALAXAR and elect to receive periodic individualized reports containing facts upon which to base final decisions on actions where anomalies in financial behaviors have been identified.

' [Note: that any personal financial information data used by PALAXAR is only obtained following the employee's granting of full and informed consent and is not used or made available to anyone [even client companies] for any purpose other than that described in the consent form.]

# Client Benefits

Using social network link analyses, industry or corporate-specific patterns of behavior can be further developed, based on the client's individualized, specific needs or interests. PALAXAR's process also has an advantage through the ability to provide actionable data to support a client's risk-assessment or decision making needs. In addition, all information provided to a client by PALAXAR reflects actual and actionable behaviors should the client company need to pursue legal remedies.

The PALAXAR Solution enables large enterprises to achieve better results in their governance, risk and compliance (GRC) management functions by delivering the following benefits:

• Reduce Cost - Improved efficiencies by integration, automation and standardization of processes

• Transparency - Enterprise-wide, real-time visibility of GRC processes

• Risk Management - Surety of process, resulting in reduced risk

• Security - Security, certainty and integrity of GRC information

• Governance - Increased stakeholder and investor confidence translating into market premium

• Accountability - Improved corporate accountability

©Copyright 2006 PALAXAR, LLC. All Rights Reserved

PALAXAR & Continuous Monitoring™ © 2006

# EXHIBIT 12

BYLAWS

OF

NEXIA STRATEGY CORPORATION (THE "CORPORATION")

## ARTICLE I - OFFICES

1.01   REGISTERED OFFICE.   The registered office of the Corporation shall be as provided in the Articles of Incorporation, or such other location as may be determined from time to time by the Board of Directors.

1.02   OTHER OFFICES.   The Corporation may also have offices at such other places, both within and without the state of incorporation, where the Corporation is qualified to do business, as the Board of Directors may from time to time designate or the business of the Corporation may require.

## ARTICLE II - SHAREHOLDERS

2.01   PLACE OF MEETINGS.   Meetings of shareholders shall be held at 20 North Orange Avenue-Suite 1400, Orlando, Florida 32801, at the date and time stated in the notice of meeting or in a waiver of notice.

2.02   ANNUAL MEETINGS.   The annual meeting of the Stockholders of the Corporation shall be held at 20 North Orange Avenue-Suite 1400, Orlando, Florida 32801 at such time and on such date as the President or any Director of the Corporation shall determine; provided, however, such date must be within the first or last month of each fiscal year of the Corporation beginning with the last month of the first fiscal year or the first month of the second fiscal year, and not more than thirteen months shall elapse between each such annual meeting. At the annual meetings, directors shall be elected, reports of the affairs of the Corporation shall be considered, and any other business may be transacted that is within the power of the Stockholders.

2.03   SPECIAL MEETINGS.   Special meetings of the shareholders shall be held when called by the President or the Board of Directors, or when requested in writing by the holders of not less than twenty-five (25%) percent of all of the issued and outstanding shares entitled to vote at such meetings. Any written request for a special meeting by the holders of the requisite number of issued and outstanding shares, or officers, or directors as prescribed in this Section 2.03 shall be signed, dated, and delivered to the Corporation's Secretary, with a copy to Berman, Keane, & Riguera, P.A., and shall describe the purpose or purposes for which such special meeting is to be held. A meeting requested by Stockholders shall be called for a date not less than fourteen (14) nor more than sixty (60) days after the written request setting forth the purpose of the meeting is made. The call for the meeting shall be issued by the Secretary unless

-1-

the President, Board of Directors, or Stockholders requesting the call of the meeting shall designate another person to do so.

2.04   NOTICE.   Written notice setting forth the date, time and place of the meeting and, in the case of a special meeting, the purpose or purposes for which the meeting is called, shall be delivered not less than fourteen (14) nor more than sixty (60) days before the meeting, either personally or by first class mail-certified return receipt requested, by or at the direction of the President, the Secretary, or the officer or persons calling the meeting, to each shareholder of record entitled to vote at the meeting; provided, however, that in the event the Corporation is required by law to give notice to persons other than the shareholders entitled to vote at the meeting, the Corporation shall give notice to such persons in accordance with the provisions of this Section 2.04. Notwithstanding the foregoing, no notice of a shareholders' meeting need be given to a shareholder if either of the following have been sent by first-class United States mail-certified return receipt requested, addressed to such shareholder at such shareholder's address as it appears on the stock transfer books of the Corporation, and has been returned undelivered to the Corporation: (a) an annual report and proxy statement for two (2) consecutive annual meetings of the shareholders; or (b) all, and at least two (2), checks in payment of dividends or interest on securities during a twelve (12) month period. The obligation of the Corporation to give notice of a shareholders' meeting to any such shareholder shall, however, be reinstated once the Corporation has received a new address for such shareholder for entry on its stock transfer books.

If notice is mailed by the Secretary of the Corporation, the notice shall be deemed to be delivered when deposited in the United States mail addressed to a shareholder at such shareholder's address as it appears on the stock transfer books or other records of the Corporation, with postage prepaid. If notice is mailed by anyone other than the Secretary of the Corporation, the notice shall be deemed to be delivered when received by the shareholder, or when the post office returns said mail as undeliverable. Nothing in this paragraph shall require proof of delivery to occur prior to the meeting which is the subject of the notice.

Notice of a meeting of the shareholders need not be given to any shareholder who signs a waiver of notice either before or after the meeting. The attendance of a shareholder at a meeting shall constitute a waiver of notice of such meeting and a waiver of any and all objections to the place of the meeting, the time of the meeting, or the manner in which such meeting has been called or convened, except when a shareholder objects at the beginning of the meeting to holding the meeting or transacting business at the meeting. Additionally, the attendance of a shareholder at a meeting shall constitute a waiver to consideration of a particular matter at the meeting that is not within the purpose or purposes described in the meeting notice, unless the shareholder objects to considering the matter when such matter is presented for consideration.

2.05   NOTICE OF ADJOURNED MEETINGS.   When a meeting of the shareholders is adjourned to a different date, time or place, it shall not be necessary to give any notice of the new date, time or place of such meeting, if the new date, time or place of such meeting is announced at such meeting before an adjournment is taken, and any business may be transacted

MVD/Palaxor - PI
057

at the adjourned meeting that might have been transacted on the original date of such meeting. If a new record date for the adjourned meeting is or must be fixed in accordance with Section 2.06 hereof, however, notice of the adjourned meeting shall be given as provided in Section 2.04 hereof to persons who are shareholders as of the new record date and who are entitled to notice of such meeting.

2.06   FIXING RECORD DATE.   For purposes of determining the shareholders entitled to notice of a shareholders' meeting, to demand a special meeting, to vote or take any other action, the Board of Directors may fix in advance a date as the record date for any such determination; provided, however, that in no event shall the record date fixed by the Board of Directors be more than seventy (70) days before the meeting or action requiring a determination of shareholders, or a date preceding the date upon which the resolution fixing the record date is adopted.

If not otherwise fixed by resolution of the Board of Directors, the record date for determining shareholders entitled to demand a special meeting is the date the first shareholder delivers such shareholder's demand to the Corporation.

If not otherwise fixed by the Board of Directors, where no prior action is required by the Board of Directors, the record date for determining shareholders entitled to take action without a meeting is the date the first signed written consent is delivered to the Corporation pursuant to Section 2.12 hereof.  If a record date has not been fixed by the Board of Directors, but prior action is required by the Board of Directors, the record date for determining shareholders entitled to take action without a meeting is at the close of business on the date on which the Board of Directors adopts a resolution taking such prior action.

If not otherwise fixed by the Board of Directors, the record date for determining shareholders entitled to notice of and to vote at an annual or special shareholders' meeting is the close of business on the day before the first notice is delivered to the shareholders.

A determination of a record date pursuant to this Section 2.06 shall be effective for any adjournment of a meeting, unless the Board of Directors fixes a new record date, which it must do if the meeting is adjourned to a date more than one hundred twenty (120) days after the date fixed for the original meeting.  In the event that a court of competent jurisdiction orders a meeting adjourned to a date more than one hundred twenty (120) days after the date fixed for the original meeting, such court may provide that the original record date continues in effect or it may fix a new record date.

2.07   VOTING LIST.   After a record date has been fixed in accordance with the provisions of Section 2.06 hereof, the Corporation shall prepare an alphabetical list of the names of all of its shareholders that are entitled to notice of a shareholders' meeting arranged by voting group with the address of each shareholder, and the number and class and series, if any, of shares held by each such shareholder.

-3-

MVI/Palaxar - P1
058



The list of shareholders shall be available for inspection by any shareholder for a period of ten (10) days prior to the meeting or such shorter time as may exist between the record date and the date of the meeting and continuing through the meeting, at the Corporation's principal office, at a place identified in the meeting notice in the city where the meeting will be held or at the office of the Corporation's transfer agent or registrar. A shareholder or a shareholder's agent or attorney shall be entitled on written demand to inspect such list, subject to the provisions of Section 6.02 hereof, during normal business hours and at such shareholder's expense during the period the list of shareholders is available for inspection by the shareholders under these Bylaws.

The Corporation shall make the list of shareholders available at the shareholders' meeting, and any shareholder or such shareholder's agent or attorney shall be entitled to inspect the list of shareholders at any time during the meeting or any adjournment of such meeting.

The list of shareholders shall be prima facie evidence of the identity of the shareholders entitled to examine such list or to vote at a meeting of the shareholders.

In the event there has been a failure to substantially comply with the provisions of this Section 2.07, or if the Corporation refuses to allow a shareholder or a shareholder's agent or attorney to inspect the list of shareholders before or at the meeting as provided in this Section 2.07, such meeting shall be adjourned until such requirements are met on the demand of any shareholder in person or by proxy who failed to get such access, or, if such meeting is not adjourned after such a demand has been made and such requirements are not met, the circuit court of the circuit where the Corporation's principal office (or, if none in this state, its registered office) is located, on application of any shareholder, may summarily order the inspection or copying at the corporation's expense and may postpone the meeting for which the list was prepared until the inspection or copying is complete.

Notwithstanding anything contained in this Section 2.07 to the contrary, the refusal or failure to comply with the requirements of this Section 2.07 shall not affect the validity of any action taken at such meeting.

2.08. SHAREHOLDER QUORUM AND VOTING; GREATER OR LESSER VOTING REQUIREMENTS. A majority of the issued and outstanding shares entitled to vote, represented in person or by proxy, shall constitute a quorum at a meeting of shareholders. When a specified item of business is required to be voted on by a class or series of stock, a majority of the shares of such class or series shall constitute a quorum for the transaction of such item of business by that class or series.

Any amendment to the Articles of Incorporation that adds, changes or deletes a greater or lesser quorum or voting requirement must meet the same quorum requirement and be adopted by the same vote and voting groups required to take action under the quorum and voting requirements then in effect or proposed to be adopted, whichever is greater.

-4-

MV1/Palaxar - P1
059

If a quorum is present, the affirmative vote of a majority of the shares represented at the meeting and entitled to vote on the subject matter thereof shall be the act of the shareholders unless otherwise provided by law.

After a quorum has been established at a shareholders' meeting, the subsequent withdrawal of shareholders so as to reduce the number of shares entitled to vote at the meeting below the number required for a quorum, shall not affect the validity of any action taken at the meeting or any adjournment thereof.

2.09   VOTING OF SHARES.  Except as otherwise provided by law, each outstanding share, regardless of class, shall entitle the owner thereof to one vote on each matter submitted to a vote at a meeting of shareholders.

A shareholder, other person entitled to vote on behalf of a shareholder pursuant to the relevant provisions of state law, or a shareholder's attorney-in-fact, may vote either in person or by proxy in accordance with the provisions of Section 2.10 hereof.

At each election of directors, every shareholder of record shall have the right to vote, in person or by proxy, the number of shares owned by him for as many persons as there are directors to be elected at that time and for whose election such shareholder has a right to vote. Shares standing in the name of a deceased person, a minor ward, or an incompetent person, may be voted by his personal representative, administrator, executor, court appointed guardian, or conservator, either in person or by proxy, without a transfer of such shares into the name of such personal representative, administrator, executor court appointed guardian or conservator.

There shall be no cumulative voting for the election of directors.

2.10   PROXIES.  A shareholder, other person entitled to vote on behalf of a shareholder pursuant to the relevant provisions of state law, or a shareholder's attorney-in-fact, may vote such shareholder's shares either in person or by proxy as provided in this Section 2.10.

A shareholder may appoint a proxy to vote or otherwise act for such shareholder by signing an appointment form either personally or by such shareholder's attorney-in-fact. No proxy shall be valid after the expiration of eleven (11) months from the date thereof unless otherwise provided in the proxy. Every proxy shall be revocable by the shareholder, except where the appointment form conspicuously states that it is irrevocable and the appointment is coupled with an interest.

The authority of the holder of a proxy to act shall not be revoked by the incapacity or death of the shareholder who executed the proxy unless, before the authority is exercised, notice of such death or incapacity is received by the secretary of the Corporation or other officer or agent authorized to tabulate votes.

If a proxy for the same shares confers authority upon two or more persons and does not otherwise provide, a majority of them present at the meeting, or if only one is present, then that

-5-

MVE/Palaxar - PI
060

one, may exercise all the powers conferred by the proxy; but if the proxy holders present at the meeting are equally divided as to the right and manner of voting in any particular case, the voting of such shares shall be equally divided among such proxies.

If the appointment form expressly provides, any proxy holder may appoint, in writing, a substitute to act in his place.

2.11   SHAREHOLDERS' AGREEMENTS.   Agreements among the shareholders of the Corporation or between the Corporation and its shareholders may include the following as valid matters of contract: the non-alienability of the shares of stock of the Corporation; obligations or first refusal rights, to redeem or purchase shares of stock of the Corporation under a designated set of circumstances; and the manner in which shareholders of the Corporation will vote their shares of stock of the Corporation; provided, however, that such agreements shall be made in accordance with the applicable provisions of state law. Copies of any stock restriction agreement between the Corporation and its shareholders shall be maintained at the principal office of the Corporation and shall be open to inspection by any shareholders of the Corporation or any party to the agreement during normal business hours.

2.12   ACTION BY SHAREHOLDERS WITHOUT A MEETING.   Any action required or permitted to be taken at an annual or special meeting of shareholders may be taken without a meeting, without prior notice, and without a vote if the action is taken by holders of two-thirds (2/3) of the outstanding shares. Within seventy-two (72) hours of any such action taken pursuant to this Section 2.12, notice of the action shall be sent to all non-acting shareholders via first class mail-certified return receipt requested. Any non-acting shareholder objecting to the action taken may state their objection in writing and delivered to the Secretary of the Corporation within twenty (20) days of said action. Upon receipt of any such notice by the Secretary of the Corporation, the shareholder shall have his or her shares redeemed by the Corporation at fair market value, payable over 5 years with no interest. In the event any such redemption would cause the Corporation to become insolvent, then no such redemption shall be required.

## ARTICLE III - DIRECTORS

3.01   MANAGEMENT.   All corporate power shall be exercised by or under the authority of, and the business and affairs of the Corporation shall be managed under the direction of, the Corporation's Board of Directors.

3.02   QUALIFICATION.   Directors must be natural persons who are eighteen (18) years of age or older but need not be residents of this state or shareholders or employees of the Corporation.

3.03   COMPENSATION.   By resolution of the Board of Directors, the directors may be paid their expenses, if any, of attendance at each meeting of the Board of Directors and may be paid a fixed sum, in an amount not to exceed One Thousand ($1,000) Dollars, for attendance at each meeting of the Board of Directors. Any salary for the Board of Directors shall be set forth

-6-

by a vote of two-thirds (2/3) of the issued and outstanding shares of the Corporation. No such payment shall preclude any director from serving the Corporation in any other capacity and receiving compensation therefore. Members of any Executive Committee or special or standing committees may, by resolution of the Board of Directors, be allowed like compensation, in an amount not to exceed One Thousand ($1,000) Dollars, for attending committee meetings; provided however, absent approval by two-thirds (2/3) of the issued and outstanding shares of the Corporation, that payment shall not be authorized for more than twenty (20) days per fiscal year. In the absence of a resolution of the Board of Directors authorizing the reimbursement of expenses or the payment of fees or salaries, the directors and members of any Executive Committee and special committees shall serve as such without compensation.

3.04   VACANCIES.   Any vacancy occurring on the Board of Directors, including a vacancy created by reason of an increase in the number of directors, may be filled by the affirmative vote of two-thirds (2/3) of the issued and outstanding shares of the Corporation. A director elected to fill a vacancy shall hold office only until the next election of directors by the shareholders.

3.05   PLACE OF MEETINGS.   Meetings of the Board of Directors, regular or special, shall be held at 20 North Orange Avenue-Suite 1400, Orlando, Florida 32801.

3.06   REGULAR ANNUAL MEETING.   A regular annual meeting of the Board of Directors shall be held immediately following the annual meeting of the shareholders of the Corporation as prescribed in Section 2.02 hereof.

3.07   REMOVAL OF DIRECTORS.   At a meeting of shareholders called expressly for the purpose of removing one or more directors, any director or the entire Board of Directors may be removed, with or without cause, by a vote of the holders of two-thirds (2/3) of the shares then entitled to vote at an election of directors.

3.08   QUORUM AND VOTING.   A majority of the number of directors shall constitute a quorum for the transaction of business. The act of a majority of the directors present at a meeting at which a quorum exists shall be the act of the Board of Directors.

3.09   DUTIES OF DIRECTORS.   A director shall discharge such director's duties as a director, including duties as a member of any committee of the Board on which such director may serve, in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner such director reasonably believes to be in the best interests of the Corporation.

In performing his or her duties, a director is entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, prepared or presented by:

(a)   one or more officers or employees of the Corporation whom such director reasonably believes to be reliable and competent in the matters presented;

-7-

MVUPalaxar - PI
062

      (b)    legal counsel, public accountants or other persons as to matters such director reasonably believes are in such person's professional or expert competence; or

      (c)    a committee of the Board of Directors of which such director is not a member if such director reasonably believes such committee merits confidence.

In discharging his or her duties, a director may consider such factors as the director deems relevant, including the long-term prospects and interests of the Corporation and its shareholders, and the social, economic, legal or other effects of any action on the employees, suppliers, customers of the Corporation or its subsidiaries, the communities and society in which the Corporation or its subsidiaries operate, and the economy of the state and the nation.

A director shall not be deemed to be acting in good faith if such director has knowledge concerning the matter in question that makes reliance on the information, opinions, reports or statements, including financial statements and other financial data, of others, as described in this Section 3.09, unwarranted.

A director shall not be liable for any action taken as a director, or any failure to take any action, if such director has performed the duties of his or her office in compliance with the provisions of this Section 3.09.

3.10   PRESUMPTION OF ASSENT. A director of the Corporation who is present at a meeting of the Board of Directors or a committee of the Board of Directors where corporate action is taken is deemed to have assented to the action taken at such meeting unless such director objects at the beginning of the meeting (or promptly upon his arrival) to holding such meeting or transacting specified business at such meeting or such director votes against or abstains from the action taken.

3.11   NUMBER OF DIRECTORS. The initial number of directors of the Corporation shall be ONE (1). The number of directors may be increased or decreased from time to time by resolution of two-thirds (2/3) of the issued and outstanding shares; provided, however, that the Board of Directors shall consist of not less than one (1) director and no decrease in the number of directors shall have the effect of shortening the term of an incumbent director.

3.12   ELECTION AND TERM. Each person named in the Articles of Incorporation as a member of the initial Board of Directors shall hold office until the first annual meeting of the shareholders, and until his or her successor shall have been elected and qualified or until his or her earlier resignation, removal from office or death.

At the first annual meeting of the shareholders and at each annual meeting thereafter, the shareholders shall elect the directors to hold office until the next succeeding annual meeting. Each director shall hold office for the term for which such director is elected and until his or her successor shall have been elected and qualified or until such director's earlier resignation, removal from office or death.

-8-

MVU/Palaxar - P[
063

3.13   NOTICE OF MEETINGS.  Regular meetings of the Board of Directors may be held without notice of the date, time, place or purpose of the meeting.  Written notice of the date, time and place of special meetings of the Board of Directors shall be given to each director at least fourteen (14) days before the meeting.

Notice of a meeting of the Board of Directors need not be given to any director who signs a waiver of notice either before or after the meeting.  The attendance of a director at a meeting shall constitute a waiver of notice of such meeting and a waiver of any and all objections to the place of the meeting, the time of the meeting, or the manner in which the meeting has been called or convened, except when a director states, at the beginning of the meeting or promptly upon arrival at the meeting, any objection to the transaction of business because the meeting is not lawfully called or convened.

The purpose of any regular or special meeting of the Board of Directors need not be specified in the notice or waiver of notice of such meeting.

A majority of the directors present, whether or not a quorum exists, may adjourn any meeting of the Board of Directors to another time and place.  Notice of such adjourned meeting shall be given to the directors who were not present at the time of the adjournment and, unless the time and place of the adjourned meeting are announced at the time of the adjournment, to the other directors.

Meetings of the Board of Directors may be called by the chairman of the Board of Directors, by the President of the Corporation or by any two (2) directors.

3.14   ACTION WITHOUT A MEETING.  Any action required or permitted by the Articles of Incorporation, these Bylaws or applicable law to be taken at a Board of Directors meeting or a committee meeting, may be taken without a meeting if the action is taken by all members of the Board or Directors or of such committee.  Such action must be evidenced by one or more written consents describing the action taken and signed by each director or committee member.

Action taken under this Section 3.14 shall be effective when the last director signs the consent, unless the consent specifies a different effective date.

A consent signed under this Section 3.14 has the same effect as a meeting vote and may be described as such in any document.

3.15   TELEPHONE AND SIMILAR MEETINGS.  The directors may participate in, and hold meetings by means of, conference telephone or similar communications equipment such that all persons participating in the meeting can hear each other.  A director participating in a meeting by such means shall be deemed to be present in person at such meeting.

3.16   DIRECTOR CONFLICTS OF INTEREST.  No contract or other transaction between the Corporation and one or more of its directors or any other corporation, firm,

-9-

MVI/Palaxar - P1
064

association, or entity in which one or more of its directors are directors or officers or are financially interested, shall be either void or voidable because of such relationship or interest because such director or directors are present at the meeting of the Board of Directors or a committee thereof which authorizes, approves, or ratifies such contract or transaction, or because such director's or directors' votes are counted for such purposes, provided:

      (a)    the fact of such relationship or interest is disclosed or known to the Board of Directors or committee which authorizes, approves, or ratifies the contract or transaction by a vote or consent sufficient for the purpose without counting the votes or consents of such interested director or directors; or

      (b)    the fact of such relationship or interest is disclosed or known to the shareholders entitled to vote and the shareholders authorize, approve or ratify such contract or transaction by a vote or written consent; or

      (c)    the contract or transaction is fair and reasonable as to the Corporation at the time it is authorized by the Board of Directors, a committee, or the shareholders.

Interested directors may be counted in determining the presence of a quorum at a meeting of the Board of Directors or a committee thereof, which authorizes, approves or ratifies such contract or transaction.

A conflict of interest transaction is authorized, approved or ratified by the shareholders if such conflict of interest transaction receives the vote of a majority of the shares entitled to be counted under this Section 3.16. Shares owned by or voted under the control of the director who has a relationship or interest in the transaction may not be counted in a vote of shareholders to determine whether to authorize, approve or ratify a conflict of interest transaction. The vote of such shares, however, shall be counted in determining whether the transaction is approved for other purposes. A majority of the shares, whether or not present, that are entitled to be counted in a vote on the transaction under this Section 3.16 constitutes a quorum for the purpose of taking action hereunder.

3.17   EXECUTIVE AND OTHER COMMITTEES.   The Board of Directors, by resolution adopted by a majority of the full Board of Directors, may designate from among its members an executive committee and one or more other committees each of which, to the extent provided in such resolution, shall have and may exercise all the authority of the Board of Directors, except that no such committee shall have the authority to:

      (a)    approve or recommend to shareholders actions or proposals required by law to be approved by the shareholders;

      (b)    fill vacancies on the Board of Directors or any committee thereof;

      (c)    adopt, amend or repeal the Bylaws;

10

(d)     authorize or approve the reacquisition of shares unless pursuant to a general formula or method specified by the Board of Directors; or

(e)     authorize or approve the issuance or sale or contract for the sale of shares, or determine the designation and relative rights, preferences, and limitations of the voting group, except that the Board of Directors may authorize a committee (or a senior executive officer of the Corporation) to do so within limits specifically prescribed by the Board of Directors.

The provisions of these Bylaws governing meetings, notice, waiver of notice and quorum and voting requirements for the Board of Directors shall also apply to executive and other committees and their members.

Each committee established pursuant to this Section 3.17 must have two (2) or more members who shall serve at the pleasure of the Board of Directors. The Board of Directors by resolution adopted by a majority of the full Board of Directors, may designate one (1) or more directors as alternate members of any such committee who may act in the place and stead of any absent member or members at any meeting of such committee.

Neither the designation of any executive or other committee pursuant to this Section 3.17, the delegation thereto of authority, nor action by such committee pursuant to such authority, shall alone constitute compliance by any member of the Board of Directors who is not a member of such committee with such director's responsibility to act in good faith, in a manner such director reasonably believes is in the best interests of the Corporation, and with such care as an ordinarily prudent person in a like position would use under similar circumstances.

3.18    DISALLOWANCE OF EXPENSE.  Any payments made to a director of the Corporation, such as a salary, commission, bonus, interest, or rent, or entertainment expense incurred by him, which shall be disallowed in whole or in part as a deductible expense by the Internal Revenue Service, shall be reimbursed by such director to the Corporation to the full extent of such disallowance. It shall be the duty of the Directors, as a board, to enforce payment of each such amount disallowed. In lieu of payment by the director, subject to the determination of the Directors, proportionate amounts may be withheld from future compensation payments until the amount owed to the corporation has been recovered.

## ARTICLE IV - OFFICERS

4.01    OFFICERS.  The officers of the Corporation shall consist of a President and a Secretary, and may also consist of a Chairman of the Board, a Chief Executive Officer, one or more Executive Vice-Presidents, one or more Vice-Presidents, a Treasurer, one or more Assistant Secretaries or Treasurers and such other officers as the Board of Directors may from time to time consider necessary for the proper conduct of the business of the Corporation. The same person may simultaneously hold more than one office.

4.02    ELECTION, TERM OF OFFICE AND QUALIFICATION.  Each officer shall be elected by the Board of Directors. Each such officer (whether elected at an annual meeting of

-11-

MVDTalasar - PI
066

the Board of Directors or to fill a vacancy or otherwise) shall hold his or her office until the next annual meeting of the Board of Directors and until his or her successor shall have been elected and qualified, or until his or her death, resignation or removal.

4.03   RESIGNATIONS.   An officer may resign at any time by delivering written notice to the Corporation. A resignation shall be effective when the notice is delivered unless the notice specifies a later effective date. If a resignation is made effective at a later date and the Corporation accepts the future effective date, the Board of Directors of the Corporation may fill the pending vacancy before the effective date if the Board of Directors provides the successor does not take office until such effective date.

4.04   REMOVAL.   The Board of Directors may remove any officer at any time with or without cause.

4.05   VACANCIES.   Any vacancy in any office occurring by reason of death, resignation, removal, disqualification, or any other cause shall be filled in the manner prescribed in these Bylaws for regular election or appointment to such office.

4.06   CONTRACT RIGHTS.   The appointment of an officer does not itself create contract rights. An officer's removal does not affect the officer's contract rights, if any, with the Corporation, nor does an officer's resignation affect the Corporation's contract rights, if any, with such officer.

4.07   CHAIRMAN OF THE BOARD.   If one is appointed or elected, the Chairman of the Board shall preside at all meetings of the Board of Directors, the shareholders, and any executive or other committees, as established by the Board of Directors under the provisions of these Bylaws. In addition, the Chairman of the Board shall perform such other duties as are given to him by these Bylaws or as may be prescribed from time to time by the Board of Directors. If one is not appointed or elected, the above description shall, to the extent applicable, be incorporated into the role of the Chief Executive Officer; if no Chief Executive Officer is appointed or elected, then the above description shall, to the extent applicable, be incorporated into the role of the President.

4.08   CHIEF EXECUTIVE OFFICER.   If one is appointed or elected, the Chief Executive Officer shall have authority over the general and active management of the business and affairs of the Corporation, and shall have such powers and duties as are usually incident to the office of chief executive officer. The Chief Executive Officer, with any other officer thereunto duly authorized, may sign and execute, in the name of the Corporation, deeds, mortgages, bonds, contracts, agreements and other instruments duly authorized by the Board of Directors (or the shareholders, as the case may be). In addition, the Chief Executive Officer shall perform such other duties as are given to him by these Bylaws or as may be prescribed from time to time by the Board of Directors. If one is not appointed or elected, the above description shall, to the extent applicable, be incorporated into the role of the President.

-12-

4.09  PRESIDENT.  The President shall serve as the assistant to the Chief Executive Officer and shall perform such duties as may be delegated to the President by the Chief Executive Officer, subject to the direction of the Board of Directors, and shall perform such other duties and have such other authority and power as may be prescribed from time to time by the Board of Directors.  If the Chief Executive Officer is absent or disabled, the President shall perform the duties and have the authority and the power of the Chief Executive Officer.  The President, with any other officer thereunto duly authorized, may sign certificates of stock of the Corporation, the issuance of which has been duly authorized, and may sign and execute, in the name of the Corporation, deeds, mortgages, bonds, contracts, agreements and other instruments duly authorized by the Board of Directors (or the shareholders, as the case may be).  In addition, the President shall perform such other duties as are given to him by these Bylaws or as may be prescribed from time to time by the Board of Directors or the Chief Executive Officer.

4.10  EXECUTIVE VICE PRESIDENT.  The Executive Vice President, if they are appointed or elected, shall serve as assistant to the President, and shall have such powers and duties as directed by the Board of Directors from time to time.  If the President is absent or disabled, an Executive Vice President shall perform the duties of the President, and when so acting, shall have all the authority of and be subject to all the restrictions upon the President.  Executive Vice President(s) shall perform such other duties as from time to time may be prescribed by the Board of Directors, the Chief Executive Officer, or the President.

4.11  VICE PRESIDENT(S).  The Vice President(s), if they are appointed or elected, shall serve as assistant(s) to the President.  If an Executive Vice President is absent or disabled, the Vice President designated as such by the Board of Directors and thereafter, or in the absence of such designation, the Vice President(s) in the order otherwise designated by the Board of Directors, or in the absence of such other designation, in the order of their election, shall perform the duties of an Executive Vice President, and when so acting, shall have all the authority of and be subject to all the restrictions upon the Executive Vice President.  The Vice President(s) shall perform such other duties as from time to time may be prescribed by the Board of Directors, the Chief Executive Officer or the President.

4.12  SECRETARY.  The Secretary shall be responsible for the custody and maintenance of all corporate records except the financial records, shall record the minutes of all meetings of the shareholders, Board of Directors, and executive and other committees, if any, shall send out all notices of meetings where required under these Bylaws or otherwise required by law, and shall perform such other duties and have such other authority and power as may be prescribed from time to time by the Board of Directors or the President.

4.13  ASSISTANT SECRETARY.  The Assistant Secretary, if any, shall, in the absence or disability of the Secretary, perform the duties and have the authority and exercise the powers of the Secretary.  The Assistant Secretary shall perform such other duties and have such other authority and power as may be prescribed from time to time by the Board of Directors or the President.

43

MVI/Palaxar - Pl
868

4.14  TREASURER.  The Treasurer, if one is appointed or elected, shall have custody of all corporate funds and financial records, shall keep full and accurate records of receipts and disbursements and render accounts thereof whenever required by the Board of Directors, and shall perform such other duties and have such other authority and power as may be prescribed from time to time by the Board of Directors or the President.  If a Treasurer is not appointed or elected, then the description provided above shall, to the extent applicable, be incorporated into the description of the Secretary.

4.15  ASSISTANT TREASURER.  The Assistant Treasurer, if any, shall, in the absence or disability of the Treasurer, perform the duties and have the authority and exercise the powers of the Treasurer.  The Assistant Treasurer shall perform such other duties and have such other authority and power as may be prescribed from time to time by the Board of Directors or the President.

4.16  COMPENSATION.  The determination of compensation to be paid to the officers of the Corporation shall be made by the Board of Directors, or if authorized by resolution of the Board of Directors, by the President.

4.17  DISALLOWANCE OF EXPENSE.  Any payments made to an officer of the Corporation, such as a salary, commission, bonus, interest, or rent, or entertainment expense incurred by him, which shall be disallowed in whole or in part as a deductible expense by the Internal Revenue Service, shall be reimbursed by such officer to the Corporation to the full extent of such disallowance.  It shall be the duty of the Directors, as a board, to enforce payment of each such amount disallowed.  In lieu of payment by the officer, subject to the determination of the Directors, proportionate amounts may be withheld from future compensation payments until the amount owed to the corporation has been recovered.

## ARTICLE V - STOCK CERTIFICATES

5.01  ISSUANCE.  The Board of Directors of the Corporation may authorize shares of the Corporation to be issued for the consideration set forth in Section 5.03 hereof.  All shares of the Corporation issued to shareholders must be represented by certificates in the form prescribed in Section 5.02 hereof.

5.02  FORM AND CONTENT OF CERTIFICATES.  Every certificate representing shares issued by the Corporation shall state the following:

(a)  the name of the Corporation and that it is organized under the laws of the state in which it is incorporated;

(b)  the name of the person to whom the stock certificate is issued; and

(c)  the number and class of shares and the designation of the series, if any, the stock certificate represents.

44

If the Corporation is authorized to issue different classes of shares or different series within a class, the designation, relative rights, preferences, and limitations applicable to each class and the variations and rights, preferences, and limitations determined for each series (and the authority of the Board of Directors to determine variations for future series) shall be summarized on the front or back of each certificate. Alternatively, each certificate may state conspicuously on its front or back that the Corporation will furnish to the shareholder a full statement of this information on request and without charge.

Every certificate representing shares issued by the Corporation must be signed by the President and the Secretary or the Assistant Secretary of the Corporation and may bear the corporate seal. In the event any officer who signed a certificate no longer holds office when the certificate is issued, the certificate shall nevertheless be valid.

Every certificate representing shares which are restricted as to their sale, disposition or other transfer shall conspicuously state on the front or back of the stock certificate that such shares are so restricted and shall set forth or fairly summarize upon the certificate, or shall state that the Corporation will furnish to any shareholder upon request and without charge, a full statement of such restrictions.

5.03  CONSIDERATION.  The Board of Directors may authorize shares to be issued for consideration consisting of any tangible assets (including real property) which are readily convertible into cash.  For any other consideration, including without limitation, in-kind services, promissory notes, or services performed, approval shall be required by two-thirds (2/3) of the issued and outstanding shares prior to authorization by the Board of Directors.

Prior to the issuance of shares of the Corporation, the Board of Directors shall determine that the consideration received or to be received for shares to be issued is adequate.  The determination made by the Board of Directors shall be conclusive insofar as the adequacy of consideration for the issuance of shares relates to whether the shares are validly issued, fully paid, and non-assessable.  When it cannot be determined that outstanding shares are fully paid and non-assessable, there shall be a conclusive presumption that such shares are fully paid and non-assessable if the Board of Directors makes a good faith determination that there is no substantial evidence that the full consideration for such shares has not been paid. Notwithstanding any other provision to the contrary, approval by two-thirds (2/3) of the issued and outstanding shares shall be a conclusive presumption that that the consideration is adequate.

When the Corporation receives the consideration for which the Board of Directors authorized the issuance of such shares, the shares issued therefore shall be fully paid and non-assessable.  Consideration in the form of a promise to pay money or the promise to perform services is deemed received by the Corporation at the time of the making of the promise, unless the agreement specifically provides otherwise.

The Corporation may place in escrow shares issued for a contract for future services or benefits or a promissory note, or make other arrangements to restrict the transfer of such shares,

-15-

MVI/Talexor - PI
070

and make credit distributions in respect of such shares against their purchase price, until the services are performed, the promissory note is paid, or the benefits are received. If the services are not performed, the shares escrowed or restricted and the distributions credited may be canceled in whole or part.

5.04   LOST, STOLEN, OR DESTROYED CERTIFICATES.  The Corporation shall issue a new stock certificate in place of any certificate for shares previously issued if the holder of record of the certificate:

(a)     makes proof in affidavit form that such certificate has been lost, destroyed or wrongfully taken;

(b)     requests the issuance of a new certificate before the Corporation has notice that the certificate has been acquired by a purchaser for value in good faith and without notice of any adverse claim; and

(c)     satisfies any other reasonable requirements imposed by the Corporation.

## ARTICLE VI - BOOKS AND RECORDS

6.01   CORPORATE RECORDS.  The Corporation shall keep as permanent records, minutes of all meetings of its shareholders and Board of Directors, a record of all actions taken by its shareholders or Board of Directors without a meeting, and a record of all actions taken by a committee of the Board of Directors in place of the Board of Directors on behalf of the Corporation. Additionally, the Corporation shall maintain accurate accounting records.

The Corporation or its agents shall maintain a record of its shareholders in a form that permits preparation of a list of the names and addresses of all shareholders in alphabetical order by class of shares showing the number and series of shares held by each.

The Corporation shall maintain its records in written form or in another form capable of conversion into written form within a reasonable time.

The Corporation shall keep a copy of the following records:

(a)     its Articles or Restated Articles of Incorporation and all amendments to the Articles or Restated Articles of Incorporation currently in effect;

(b)     its Bylaws or Restated Bylaws and all amendments to the Bylaws or Restated Bylaws currently in effect;

(c)     resolutions adopted by the Board of Directors creating one or more classes or series of shares and fixing their relative rights, preferences and limitations, if shares issued pursuant to those resolutions are outstanding;

-46-

(d)     the minutes of all shareholders' meetings and records of all actions taken by shareholders without a meeting for the past three (3) years;

(e)     written communications to all shareholders generally or all shareholders of a class or series within the past three (3) years, including the financial statements furnished to the shareholders for the past three (3) years as required under Section 6.03 hereof;

(f)     a list of the names and business street addresses of its current directors and officers; and

(g)     the most recent annual report of the Corporation delivered to any state entity as required under relevant provisions of state law.

Copies of all documents identified in this Section 6.01 shall be copied to any owner(s) of at least twenty-five (25%) percent of the issued and outstanding stock of the Corporation. In addition, the Corporation shall send to any owner(s) of at least twenty-five (25%) percent of the issued and outstanding stock monthly accounting records for the Corporation.

6.02   SHAREHOLDERS' INSPECTION RIGHTS.    Any shareholder of the Corporation shall be entitled to inspect and copy, during regular business hours at the Corporation's principal office, the corporate records of the Corporation as set forth in Sections 6.01(a) through 6.01(f) hereof, if such shareholder gives the Corporation written notice of his demand at least five (5) business days before the date on which such shareholder desires to inspect and copy the corporate records of the Corporation.

Any shareholder of the corporation shall be entitled to inspect and copy, during regular business hours at a reasonable location specified by the Corporation, the records of the Corporation set forth in Sections 6.02(a) through 6.02(d) hereof, if such shareholder's demand for inspection is made in good faith and for a proper purpose, the shareholder describes with reasonable particularity such shareholder's purpose and the records such shareholder desires to inspect, the records are directly connected with such purpose and such shareholder gives the Corporation written notice of such shareholder's demand at least five (5) business days before the date on which such shareholder desires to inspect and copy such corporate records:

(a)     excerpts from minutes of any meeting of the Board of Directors, records of any actions of a committee of the Board of Directors while acting in place of the Board of Directors on behalf of the Corporation, minutes of any meeting of the shareholders, and records of actions taken by the shareholders or Board of Directors without a meeting, to the extent not otherwise subject to inspection as set forth above in this Section 6.02;

(b)     accounting records of the Corporation;

(c)     the record of shareholders; and

(d)     any other books and records of the Corporation.



-17-

MVU/Palaxar - P1
072

Any shareholder of the Corporation shall be entitled to inspect and copy, during regular business hours at a reasonable location specified by the Corporation, a copy of the Bylaws or Restated Bylaws and all amendments to the Bylaws or the Restated Bylaws of the Corporation currently in effect and a list of the names and business street addresses of the Corporation's current directors and officers if such shareholder gives the Corporation written notice of such shareholder's demand at least fifteen (15) business days before the date on which such shareholder desires to inspect and copy such corporate records.

This Section 6.02 shall not affect: the right of any shareholder to inspect and copy records under Section 2.07 hereof; the right of a shareholder to inspect and copy records to the same extent as any other litigant if the shareholder is in litigation with the Corporation; or the power of a court to compel the production of corporate records for examination.

The Corporation shall have the right to deny any demand for inspection requiring the shareholder to have a proper purpose to inspect and copy the corporate records, if the shareholder's demand is made for an improper purpose, or if the demanding shareholder has within two (2) years preceding such shareholder's demand sold or offered for sale any list of shareholders of the Corporation or any other corporation, has aided or abetted any person in procuring any list of shareholders for any such purpose, or has improperly used any information secured through any prior examination of the records of the Corporation or any other corporation.

6.03   FINANCIAL INFORMATION.   Unless modified by resolution of the shareholders within one hundred twenty (120) days after the close of each fiscal year of the Corporation, the Corporation shall furnish to its shareholders annual financial statements which may be consolidated or combined statements of the Corporation and one or more of its subsidiaries, as appropriate, that include a balance sheet as of the end of the fiscal year, an income statement for such year, and a statement of cash flows for such year. If the financial statements of the Corporation are prepared on the basis of generally accepted accounting principles, the annual financial statements must also be prepared on such basis.

If the annual financial statements of the Corporation are reported upon by a public accountant, the public accountant's report must accompany the annual financial statements. If the annual financial statements are not reported upon by a public accountant, the annual financial statements must be accompanied by a statement of the President or the Treasurer of the Corporation:

(a)   stating such officer's reasonable belief whether such statements were prepared on the basis of generally accepted accounting principles and, if not, describing the basis of preparation; and

(b)   describing in what respects the statements were not prepared on a basis of accounting consistent with the statements prepared for the immediately preceding year.

18

The Corporation shall mail the annual financial statements to each shareholder within one hundred twenty (120) days after the close of each fiscal year of the Corporation or within such additional time thereafter as is reasonably necessary to enable the Corporation to prepare its financial statements if, for reasons beyond the corporation's control, it is unable to prepare its financial statements within the prescribed period.   Thereafter, on written request from a shareholder who was not mailed the annual financial statements of the Corporation, the Corporation shall mail such shareholder the latest financial statements.

For any notice required, pursuant to this Section 6.03, to be delivered to any shareholder owning less than twenty-five (25%) percent of the total authorized and outstanding shares, then such notice can be completed by posting said documents to the Corporation's website and providing notice to the shareholder of the documents location.

## ARTICLE VII - DIVIDENDS

The Board of Directors may authorize the Corporation to make distributions upon the direction of the shareholders indicated by an affirmative vote of two-thirds (2/3) of the total authorized and outstanding shares of the Corporation.

Dividends shall not be cumulative.

## ARTICLE VIII - INDEMNIFICATION

The Corporation shall indemnify any officer or director, or any former officer or director, to the full extent permitted under relevant provisions of state law.

## ARTICLE IX - MISCELLANEOUS

9.01   CORPORATE SEAL.   A corporate seal shall not be required to be attached to any instrument executed by or on behalf of the Corporation unless required by law, but if so required shall be of such shape and have such words thereon as may be described by law or by the Board of Directors.   The seal may be used by impressing it or reproducing a facsimile thereof, or otherwise.

9.02   AMENDMENT OF BYLAWS.

A.  The Board of Directors may amend or repeal the Corporation's Bylaws unless:

(a)   the Articles of Incorporation or other provision of law reserves the power to amend the Bylaws generally, or a particular provision of the Bylaws, exclusively to the shareholders; or

(b)   the shareholders, in amending or repealing the Bylaws generally, or a particular provision of the Bylaws, provide expressly that the Board of Directors may not amend or repeal the Bylaws or such provision of the Bylaws.

-19-

MVI/Palaxar - P1
074

B. In making an amendment or repeal pursuant to this Section 9.02, the Board of Directors shall propose the amendment or repeal to the shareholders who shall have thirty (30) days in which to object to the amendment. If twenty-five (25%) percent or greater of the total issued and outstanding shares object to the amendment or repeal, then such amendment or repeal shall but put to a vote of the shareholders.

C. Notwithstanding anything contained in these Bylaws to the contrary, the Corporation's shareholders may amend or repeal the Corporation's Bylaws. Provided, however, that any such amendment or repeal shall require an eighty (80%) percent vote of all issued and outstanding shares, in writing. No such amendment or repeal shall be valid if the effect of the amendment or repeal would be violative of any Investor Agreement or Loan Agreement between Mirabilis Ventures, Inc. or its affiliates and the Corporation.

9.03   RELATION TO ARTICLES OF INCORPORATION. These Bylaws shall be subject to, and governed by, the Corporation's Articles of Incorporation.

## ARTICLE X-SPECIAL MIRABILIS VENTURES, INC. CONDITIONS

10.01   LIMITEDAPPLICABILITY.   The Company agrees to be bound by Mirabilis Ventures, Inc.'s corporate governance rules and policies, which shall include, but is not limited to, the following:

(a)      Mirabilis shall at all times have the right to nominate representative members on the board of directors of Company. The number of directors, and the names of those individuals, shall be determined by Mirabilis; provided, however, that the total number of directors shall never be less than one (1), and that the other shareholders shall have the right to name not less than forty percent (40%) of said directors.

(b)      Mirabilis shall at all times have the right to appoint the Chief Legal Officer and the Chief Financial Officer of Company;

(c)      Company's method of doing business protocols shall be consistent with the requirements set forth under the Sarbanes-Oxley Act (SOA), by using and implementing "Axenaware" software applications;

(d)      Company shall immediately use Mirabilis' designated Professional Employment Organization (PEO), for payroll processing of all employees, and insurance company for related insurance coverage, including workers' compensation;

(e)      Company shall be responsible for and obligated to perform the day-to-day operations of Company in accordance with its corporate guidelines, policies, regulations and procedures.

20

(f)    All bank accounts for Company will be reconciled daily, and "cash" reports will be filed daily with Mirabilis' designated monitor; and,

(g)    Company will use and participate in Mirabilis' preferred vendor network. Each member of the network agrees to grant preferred vendor status to each affiliate of Mirabilis, provided that price and service are competitive with a nonaffiliated provider.

(h)    Company shall maintain adequate books and records in accordance with generally accepted accounting principles consistently applied, and permit any representative of Mirabilis, at any reasonable time, to inspect, audit and examine such books and records, to make copies of the same, and to inspect the properties of the Company.

(i)    Company warrants that it possesses, and will hereafter possess, all permits, consents, approvals, franchises and licenses required, and rights to all trademarks, trade names, patents, and fictitious names, if any, necessary to enable it to conduct the business in which it is now engaged in compliance with all applicable laws.

These Bylaws were adopted by Written Consent of the Board of Directors of the Corporation dated the _15_ day of _April_ , 2005.

Frank Amodeo, Director

21-

MVI/Palaxar - PI
076

# BYLAWS

## OF

## MIRABILIS VENTURES, INC. (THE "CORPORATION")

### ARTICLE I - OFFICES

1.01  REGISTERED OFFICE.  The registered office of the Corporation shall be as provided in the Articles of Incorporation, or such other location as may be determined from time to time by the Board of Directors.

1.02  OTHER OFFICES.  The Corporation may also have offices at such other places, both within and without the state of incorporation, where the Corporation is qualified to do business, as the Board of Directors may from time to time designate or the business of the Corporation may require.

### ARTICLE II - SHAREHOLDERS

2.01  PLACE OF MEETINGS.  Meetings of shareholders shall be held at 111 North Orange Avenue-Suite 2000, Orlando, Florida 32801, at the date and time stated in the notice of meeting or in a waiver of notice.

2.02  ANNUAL MEETINGS.  The annual meeting of the Stockholders of the Corporation shall be held at 111 North Orange Avenue-Suite 2000, Orlando, Florida 32801 at such time and on such date as the President or any Director of the Corporation shall determine; provided, however, such date must be within the first or last month of each fiscal year of the Corporation beginning with the last month of the first fiscal year or the first month of the second fiscal year, and not more than thirteen months shall elapse between each such annual meeting. At the annual meetings, directors shall be elected, reports of the affairs of the Corporation shall be considered, and any other business may be transacted that is within the power of the Stockholders.

2.03  SPECIAL MEETINGS.  Special meetings of the shareholders shall be held when called by the President or the Board of Directors, or when requested in writing by the holders of not less than twenty-five (25%) percent of all of the issued and outstanding shares entitled to vote at such meetings. Any written request for a special meeting by the holders of the requisite number of issued and outstanding shares, or officers, or directors as prescribed in this Section 2.03 shall be signed, dated, and delivered to the Corporation's Secretary, with a copy to Berman, Kean, & Riguera, P.A., and shall describe the purpose or purposes for which such special meeting is to be held.  A meeting requested by Stockholders shall be called for a date not less than fourteen (14) nor more than sixty (60) days after the written request setting forth the purpose of the meeting is made.  The call for the meeting shall be issued by the Secretary unless

-1-

MVI/Palaxar - PI
077

the President, Board of Directors, or Stockholders requesting the call of the meeting shall designate another person to do so.

2.04   NOTICE.  Written notice setting forth the date, time and place of the meeting and, in the case of a special meeting, the purpose or purposes for which the meeting is called, shall be delivered not less than fourteen (14) nor more than sixty (60) days before the meeting, either personally or by first class mail-certified return receipt requested, by or at the direction of the President, the Secretary, or the officer or persons calling the meeting, to each shareholder of record entitled to vote at the meeting; provided, however, that in the event the Corporation is required by law to give notice to persons other than the shareholders entitled to vote at the meeting, the Corporation shall give notice to such persons in accordance with the provisions of this Section 2.04.  Notwithstanding the foregoing, no notice of a shareholders' meeting need be given to a shareholder if either of the following have been sent by first-class United States mail-certified return receipt requested, addressed to such shareholder at such shareholder's address as it appears on the stock transfer books of the Corporation, and has been returned undelivered to the Corporation: (a) an annual report and proxy statement for two (2) consecutive annual meetings of the shareholders; or (b) all, and at least two (2), checks in payment of dividends or interest on securities during a twelve (12) month period.  The obligation of the Corporation to give notice of a shareholders' meeting to any such shareholder shall, however, be reinstated once the Corporation has received a new address for such shareholder for entry on its stock transfer books.

If notice is mailed by the Secretary of the Corporation, the notice shall be deemed to be delivered when deposited in the United States mail addressed to a shareholder at such shareholder's address as it appears on the stock transfer books or other records of the Corporation, with postage prepaid.  If notice is mailed by anyone other than the Secretary of the Corporation, the notice shall be deemed to be delivered when received by the shareholder, or when the post office returns said mail as undeliverable.  Nothing in this paragraph shall require proof of delivery to occur prior to the meeting which is the subject of the notice.

Notice of a meeting of the shareholders need not be given to any shareholder who signs a waiver of notice either before or after the meeting.  The attendance of a shareholder at a meeting shall constitute a waiver of notice of such meeting and a waiver of any and all objections to the place of the meeting, the time of the meeting, or the manner in which such meeting has been called or convened, except when a shareholder objects at the beginning of the meeting to holding the meeting or transacting business at the meeting.  Additionally, the attendance of a shareholder at a meeting shall constitute a waiver to consideration of a particular matter at the meeting that is not within the purpose or purposes described in the meeting notice, unless the shareholder objects to considering the matter when such matter is presented for consideration.

2.05   NOTICE OF ADJOURNED MEETINGS.  When a meeting of the shareholders is adjourned to a different date, time or place, it shall not be necessary to give any notice of the new date, time or place of such meeting, if the new date, time or place of such meeting is announced at such meeting before an adjournment is taken, and any business may be transacted

-2-

MVI/Palaxar - PI
078

at the adjourned meeting that might have been transacted on the original date of such meeting. If a new record date for the adjourned meeting is or must be fixed in accordance with Section 2.06 hereof, however, notice of the adjourned meeting shall be given as provided in Section 2.04 hereof to persons who are shareholders as of the new record date and who are entitled to notice of such meeting.

2.06  FIXING RECORD DATE.  For purposes of determining the shareholders entitled to notice of a shareholders' meeting, to demand a special meeting, to vote or take any other action, the Board of Directors may fix in advance a date as the record date for any such determination; provided, however, that in no event shall the record date fixed by the Board of Directors be more than seventy (70) days before the meeting or action requiring a determination of shareholders, or a date preceding the date upon which the resolution fixing the record date is adopted.

If not otherwise fixed by resolution of the Board of Directors, the record date for determining shareholders entitled to demand a special meeting is the date the first shareholder delivers such shareholder's demand to the Corporation.

If not otherwise fixed by the Board of Directors, where no prior action is required by the Board of Directors, the record date for determining shareholders entitled to take action without a meeting is the date the first signed written consent is delivered to the Corporation pursuant to Section 2.12 hereof.  If a record date has not been fixed by the Board of Directors, but prior action is required by the Board of Directors, the record date for determining shareholders entitled to take action without a meeting is at the close of business on the date on which the Board of Directors adopts a resolution taking such prior action.

If not otherwise fixed by the Board of Directors, the record date for determining shareholders entitled to notice of and to vote at an annual or special shareholders' meeting is the close of business on the day before the first notice is delivered to the shareholders.

A determination of a record date pursuant to this Section 2.06 shall be effective for any adjournment of a meeting, unless the Board of Directors fixes a new record date, which it must do if the meeting is adjourned to a date more than one hundred twenty (120) days after the date fixed for the original meeting.  In the event that a court of competent jurisdiction orders a meeting adjourned to a date more than one hundred twenty (120) days after the date fixed for the original meeting, such court may provide that the original record date continues in effect or it may fix a new record date.

2.07  VOTING LIST.  After a record date has been fixed in accordance with the provisions of Section 2.06 hereof, the Corporation shall prepare an alphabetical list of the names of all of its shareholders that are entitled to notice of a shareholders' meeting arranged by voting group with the address of each shareholder, and the number and class and series, if any, of shares held by each such shareholder.

-3-

The list of shareholders shall be available for inspection by any shareholder for a period of ten (10) days prior to the meeting or such shorter time as may exist between the record date and the date of the meeting and continuing through the meeting, at the Corporation's principal office, at a place identified in the meeting notice in the city where the meeting will be held or at the office of the Corporation's transfer agent or registrar. A shareholder or a shareholder's agent or attorney shall be entitled on written demand to inspect such list, subject to the provisions of Section 6.02 hereof, during normal business hours and at such shareholder's expense during the period the list of shareholders is available for inspection by the shareholders under these Bylaws.

The Corporation shall make the list of shareholders available at the shareholders' meeting, and any shareholder or such shareholder's agent or attorney shall be entitled to inspect the list of shareholders at any time during the meeting or any adjournment of such meeting.

The list of shareholders shall be prima facie evidence of the identity of the shareholders entitled to examine such list or to vote at a meeting of the shareholders.

In the event there has been a failure to substantially comply with the provisions of this Section 2.07, or if the Corporation refuses to allow a shareholder or a shareholder's agent or attorney to inspect the list of shareholders before or at the meeting as provided in this Section 2.07, such meeting shall be adjourned until such requirements are met on the demand of any shareholder in person or by proxy who failed to get such access, or, if such meeting is not adjourned after such a demand has been made and such requirements are not met, the circuit court of the circuit where the Corporation's principal office (or, if none in this state, its registered office) is located, on application of any shareholder, may summarily order the inspection or copying at the corporation's expense and may postpone the meeting for which the list was prepared until the inspection or copying is complete.

Notwithstanding anything contained in this Section 2.07 to the contrary, the refusal or failure to comply with the requirements of this Section 2.07 shall not affect the validity of any action taken at such meeting.

2.08   SHAREHOLDER QUORUM AND VOTING; GREATER OR LESSER VOTING REQUIREMENTS.  A majority of the issued and outstanding shares entitled to vote, represented in person or by proxy, shall constitute a quorum at a meeting of shareholders. When a specified item of business is required to be voted on by a class or series of stock, a majority of the shares of such class or series shall constitute a quorum for the transaction of such item of business by that class or series.

Any amendment to the Articles of Incorporation that adds, changes or deletes a greater or lesser quorum or voting requirement must meet the same quorum requirement and be adopted by the same vote and voting groups required to take action under the quorum and voting requirements then in effect or proposed to be adopted, whichever is greater.

-4-

MVI/Palaxar - PI
080

If a quorum is present, the affirmative vote of a majority of the shares represented at the meeting and entitled to vote on the subject matter thereof shall be the act of the shareholders unless otherwise provided by law.

After a quorum has been established at a shareholders' meeting, the subsequent withdrawal of shareholders so as to reduce the number of shares entitled to vote at the meeting below the number required for a quorum, shall not affect the validity of any action taken at the meeting or any adjournment thereof.

2.09   VOTING OF SHARES. Except as otherwise provided by law, each outstanding share, regardless of class, shall entitle the owner thereof to one vote on each matter submitted to a vote at a meeting of shareholders.

A shareholder, other person entitled to vote on behalf of a shareholder pursuant to the relevant provisions of state law, or a shareholder's attorney-in-fact, may vote either in person or by proxy in accordance with the provisions of Section 2.10 hereof.

At each election of directors, every shareholder of record shall have the right to vote, in person or by proxy, the number of shares owned by him for as many persons as there are directors to be elected at that time and for whose election such shareholder has a right to vote. Shares standing in the name of a deceased person, a minor ward, or an incompetent person, may be voted by his personal representative, administrator, executor, court appointed guardian, or conservator, either in person or by proxy, without a transfer of such shares into the name of such personal representative, administrator, executor court appointed guardian or conservator.

There shall be no cumulative voting for the election of directors.

2.10   PROXIES. A shareholder, other person entitled to vote on behalf of a shareholder pursuant to the relevant provisions of state law, or a shareholder's attorney-in-fact, may vote such shareholder's shares either in person or by proxy as provided in this Section 2.10.

A shareholder may appoint a proxy to vote or otherwise act for such shareholder by signing an appointment form either personally or by such shareholder's attorney-in-fact. No proxy shall be valid after the expiration of eleven (11) months from the date thereof unless otherwise provided in the proxy. Every proxy shall be revocable by the shareholder, except where the appointment form conspicuously states that it is irrevocable and the appointment is coupled with an interest.

The authority of the holder of a proxy to act shall not be revoked by the incapacity or death of the shareholder who executed the proxy unless, before the authority is exercised, notice of such death or incapacity is received by the secretary of the Corporation or other officer or agent authorized to tabulate votes.

If a proxy for the same shares confers authority upon two or more persons and does not otherwise provide, a majority of them present at the meeting, or if only one is present, then that

-5-

MVI/Palaxar - PI
081

one, may exercise all the powers conferred by the proxy; but if the proxy holders present at the meeting are equally divided as to the right and manner of voting in any particular case, the voting of such shares shall be equally divided among such proxies.

If the appointment form expressly provides, any proxy holder may appoint, in writing, a substitute to act in his place.

2.11   SHAREHOLDERS' AGREEMENTS.  Agreements among the shareholders of the Corporation or between the Corporation and its shareholders may include the following as valid matters of contract: the non-alienability of the shares of stock of the Corporation; obligations or first refusal rights, to redeem or purchase shares of stock of the Corporation under a designated set of circumstances; and the manner in which shareholders of the Corporation will vote their shares of stock of the Corporation; provided, however, that such agreements shall be made in accordance with the applicable provisions of state law.  Copies of any stock restriction agreement between the Corporation and its shareholders shall be maintained at the principal office of the Corporation and shall be open to inspection by any shareholders of the Corporation or any party to the agreement during normal business hours.

2.12   ACTION BY SHAREHOLDERS WITHOUT A MEETING.  Any action required or permitted to be taken at an annual or special meeting of shareholders may be taken without a meeting, without prior notice, and without a vote if the action is taken by holders of two-thirds (2/3) of the outstanding shares.  Within seventy-two (72) hours of any such action taken pursuant to this Section 2.12, notice of the action shall be sent to all non-acting shareholders via first class mail-certified return receipt requested.  Any non-acting shareholder objecting to the action taken may state their objection in writing and delivered to the Secretary of the Corporation within twenty (20) days of said action.  Upon receipt of any such notice by the Secretary of the Corporation, the shareholder shall have his or her shares redeemed by the Corporation at fair market value, payable over 5 years with no interest.  In the event any such redemption would cause the Corporation to become insolvent, then no such redemption shall be required.

## ARTICLE III - DIRECTORS

3.01   MANAGEMENT.   All corporate power shall be exercised by or under the authority of, and the business and affairs of the Corporation shall be managed under the direction of, the Corporation's Board of Directors.

3.02   QUALIFICATION.  Directors must be natural persons who are eighteen (18) years of age or older but need not be residents of this state or shareholders or employees of the Corporation.

3.03   COMPENSATION.  By resolution of the Board of Directors, the directors may be paid their expenses, if any, of attendance at each meeting of the Board of Directors and may be paid a fixed sum, in an amount not to exceed One Thousand ($1,000) Dollars, for attendance at each meeting of the Board of Directors.  Any salary for the Board of Directors shall be set forth

-6-

MVD/Palaxar - P1
082

by a vote of two-thirds (2/3) of the issued and outstanding shares of the Corporation. No such payment shall preclude any director from serving the Corporation in any other capacity and receiving compensation therefore. Members of any Executive Committee or special or standing committees may, by resolution of the Board of Directors, be allowed like compensation, in an amount not to exceed One Thousand ($1,000) Dollars, for attending committee meetings; provided however, absent approval by two-thirds (2/3) of the issued and outstanding shares of the Corporation, that payment shall not be authorized for more than twenty (20) days per fiscal year. In the absence of a resolution of the Board of Directors authorizing the reimbursement of expenses or the payment of fees or salaries, the directors and members of any Executive Committee and special committees shall serve as such without compensation.

3.04   VACANCIES. Any vacancy occurring on the Board of Directors, including a vacancy created by reason of an increase in the number of directors, may be filled by the affirmative vote of two-thirds (2/3) of the issued and outstanding shares of the Corporation. A director elected to fill a vacancy shall hold office only until the next election of directors by the shareholders.

3.05   PLACE OF MEETINGS. Meetings of the Board of Directors, regular or special, shall be held at 111 North Orange Avenue Suite 2000, Orlando, Florida 32801.

3.06   REGULAR ANNUAL MEETING. A regular annual meeting of the Board of Directors shall be held immediately following the annual meeting of the shareholders of the Corporation as prescribed in Section 2.02 hereof.

3.07   REMOVAL OF DIRECTORS. At a meeting of shareholders called expressly for the purpose of removing one or more directors, any director or the entire Board of Directors may be removed, with or without cause, by a vote of the holders of two-thirds (2/3) of the shares then entitled to vote at an election of directors.

3.08   QUORUM AND VOTING. A majority of the number of directors shall constitute a quorum for the transaction of business. The act of a majority of the directors present at a meeting at which a quorum exists shall be the act of the Board of Directors.

3.09   DUTIES OF DIRECTORS. A director shall discharge such director's duties as a director, including duties as a member of any committee of the Board on which such director may serve, in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner such director reasonably believes to be in the best interests of the Corporation.

In performing his or her duties, a director is entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, prepared or presented by:

(a)   one or more officers or employees of the Corporation whom such director reasonably believes to be reliable and competent in the matters presented;

-7-

MVI/Palaxar - PI
083

(b)    legal counsel, public accountants or other persons as to matters such director reasonably believes are in such person's professional or expert competence; or

(c)    a committee of the Board of Directors of which such director is not a member if such director reasonably believes such committee merits confidence.

In discharging his or her duties, a director may consider such factors as the director deems relevant, including the long-term prospects and interests of the Corporation and its shareholders, and the social, economic, legal or other effects of any action on the employees, suppliers, customers of the Corporation or its subsidiaries, the communities and society in which the Corporation or its subsidiaries operate, and the economy of the state and the nation.

A director shall not be deemed to be acting in good faith if such director has knowledge concerning the matter in question that makes reliance on the information, opinions, reports or statements, including financial statements and other financial data, of others, as described in this Section 3.09, unwarranted.

A director shall not be liable for any action taken as a director, or any failure to take any action, if such director has performed the duties of his or her office in compliance with the provisions of this Section 3.09.

3.10   PRESUMPTION OF ASSENT. A director of the Corporation who is present at a meeting of the Board of Directors or a committee of the Board of Directors where corporate action is taken is deemed to have assented to the action taken at such meeting unless such director objects at the beginning of the meeting (or promptly upon his arrival) to holding such meeting or transacting specified business at such meeting or such director votes against or abstains from the action taken.

3.11   NUMBER OF DIRECTORS. The initial number of directors of the Corporation shall be five (5). The number of directors may be increased or decreased from time to time by resolution of two-thirds (2/3) of the issued and outstanding shares; provided, however, that the Board of Directors shall consist of not less than one (1) director and no decrease in the number of directors shall have the effect of shortening the term of an incumbent director.

3.12   ELECTION AND TERM. Each person named in the Articles of Incorporation as a member of the initial Board of Directors shall hold office until the first annual meeting of the shareholders, and until his or her successor shall have been elected and qualified or until his or her earlier resignation, removal from office or death.

At the first annual meeting of the shareholders and at each annual meeting thereafter, the shareholders shall elect the directors to hold office until the next succeeding annual meeting. Each director shall hold office for the term for which such director is elected and until his or her successor shall have been elected and qualified or until such director's earlier resignation, removal from office or death.

-8-

MVI/Palaxar – PI
084

3.13  NOTICE OF MEETINGS.  Regular meetings of the Board of Directors may be held without notice of the date, time, place or purpose of the meeting.  Written notice of the date, time and place of special meetings of the Board of Directors shall be given to each director at least fourteen (14) days before the meeting.

Notice of a meeting of the Board of Directors need not be given to any director who signs a waiver of notice either before or after the meeting.  The attendance of a director at a meeting shall constitute a waiver of notice of such meeting and a waiver of any and all objections to the place of the meeting, the time of the meeting, or the manner in which the meeting has been called or convened, except when a director states, at the beginning of the meeting or promptly upon arrival at the meeting, any objection to the transaction of business because the meeting is not lawfully called or convened.

The purpose of any regular or special meeting of the Board of Directors need not be specified in the notice or waiver of notice of such meeting.

A majority of the directors present, whether or not a quorum exists, may adjourn any meeting of the Board of Directors to another time and place.  Notice of such adjourned meeting shall be given to the directors who were not present at the time of the adjournment and, unless the time and place of the adjourned meeting are announced at the time of the adjournment, to the other directors.

Meetings of the Board of Directors may be called by the chairman of the Board of Directors, by the President of the Corporation or by any two (2) directors.

3.14  ACTION WITHOUT A MEETING.  Any action required or permitted by the Articles of Incorporation, these Bylaws or applicable law to be taken at a Board of Directors meeting or a committee meeting, may be taken without a meeting if the action is taken by all members of the Board or Directors or of such committee.  Such action must be evidenced by one or more written consents describing the action taken and signed by each director or committee member.

Action taken under this Section 3.14 shall be effective when the last director signs the consent, unless the consent specifies a different effective date.

A consent signed under this Section 3.14 has the same effect as a meeting vote and may be described as such in any document.

3.15  TELEPHONE AND SIMILAR MEETINGS.  The directors may participate in, and hold meetings by means of, conference telephone or similar communications equipment such that all persons participating in the meeting can hear each other.  A director participating in a meeting by such means shall be deemed to be present in person at such meeting.

3.16  DIRECTOR CONFLICTS OF INTEREST.  No contract or other transaction between the Corporation and one or more of its directors or any other corporation, firm,

-9-

association, or entity in which one or more of its directors are directors or officers or are financially interested, shall be either void or voidable because of such relationship or interest because such director or directors are present at the meeting of the Board of Directors or a committee thereof which authorizes, approves, or ratifies such contract or transaction, or because such director's or directors' votes are counted for such purposes, provided:

(a)     the fact of such relationship or interest is disclosed or known to the Board of Directors or committee which authorizes, approves, or ratifies the contract or transaction by a vote or consent sufficient for the purpose without counting the votes or consents of such interested director or directors; or

(b)     the fact of such relationship or interest is disclosed or known to the shareholders entitled to vote and the shareholders authorize, approve or ratify such contract or transaction by a vote or written consent; or

(c)     the contract or transaction is fair and reasonable as to the Corporation at the time it is authorized by the Board of Directors, a committee, or the shareholders.

Interested directors may be counted in determining the presence of a quorum at a meeting of the Board of Directors or a committee thereof, which authorizes, approves or ratifies such contract or transaction.

A conflict of interest transaction is authorized, approved or ratified by the shareholders if such conflict of interest transaction receives the vote of a majority of the shares entitled to be counted under this Section 3.16. Shares owned by or voted under the control of the director who has a relationship or interest in the transaction may not be counted in a vote of shareholders to determine whether to authorize, approve or ratify a conflict of interest transaction. The vote of such shares, however, shall be counted in determining whether the transaction is approved for other purposes. A majority of the shares, whether or not present, that are entitled to be counted in a vote on the transaction under this Section 3.16 constitutes a quorum for the purpose of taking action hereunder.

3.17   EXECUTIVE AND OTHER COMMITTEES.   The Board of Directors, by resolution adopted by a majority of the full Board of Directors, may designate from among its members an executive committee and one or more other committees each of which, to the extent provided in such resolution, shall have and may exercise all the authority of the Board of Directors, except that no such committee shall have the authority to:

(a)     approve or recommend to shareholders actions or proposals required by law to be approved by the shareholders;

(b)     fill vacancies on the Board of Directors or any committee thereof;

(c)     adopt, amend or repeal the Bylaws;

MVI/Palaxar - P1
086

(d)     authorize or approve the reacquisition of shares unless pursuant to a general formula or method specified by the Board of Directors; or

(e)     authorize or approve the issuance or sale or contract for the sale of shares, or determine the designation and relative rights, preferences, and limitations of the voting group, except that the Board of Directors may authorize a committee (or a senior executive officer of the Corporation) to do so within limits specifically prescribed by the Board of Directors.

The provisions of these Bylaws governing meetings, notice, waiver of notice and quorum and voting requirements for the Board of Directors shall also apply to executive and other committees and their members.

Each committee established pursuant to this Section 3.17 must have two (2) or more members who shall serve at the pleasure of the Board of Directors. The Board of Directors by resolution adopted by a majority of the full Board of Directors, may designate one (1) or more directors as alternate members of any such committee who may act in the place and stead of any absent member or members at any meeting of such committee.

Neither the designation of any executive or other committee pursuant to this Section 3.17, the delegation thereto of authority, nor action by such committee pursuant to such authority, shall alone constitute compliance by any member of the Board of Directors who is not a member of such committee with such director's responsibility to act in good faith, in a manner such director reasonably believes is in the best interests of the Corporation, and with such care as an ordinarily prudent person in a like position would use under similar circumstances.

3.18   DISALLOWANCE OF EXPENSE.  Any payments made to a director of the Corporation, such as a salary, commission, bonus, interest, or rent, or entertainment expense incurred by him, which shall be disallowed in whole or in part as a deductible expense by the Internal Revenue Service, shall be reimbursed by such director to the Corporation to the full extent of such disallowance. It shall be the duty of the Directors, as a board, to enforce payment of each such amount disallowed. In lieu of payment by the director, subject to the determination of the Directors, proportionate amounts may be withheld from future compensation payments until the amount owed to the corporation has been recovered.

## ARTICLE IV - OFFICERS

4.01   OFFICERS.  The officers of the Corporation shall consist of a President and a Secretary, and may also consist of a Chairman of the Board, a Chief Executive Officer, one or more Executive Vice-Presidents, one or more Vice-Presidents, a Treasurer, one or more Assistant Secretaries or Treasurers and such other officers as the Board of Directors may from time to time consider necessary for the proper conduct of the business of the Corporation. The same person may simultaneously hold more than one office.

4.02   ELECTION, TERM OF OFFICE AND QUALIFICATION.  Each officer shall be elected by the Board of Directors. Each such officer (whether elected at an annual meeting of

-11-

MVU/Palaxar - P1
087

the Board of Directors or to fill a vacancy or otherwise) shall hold his or her office until the next annual meeting of the Board of Directors and until his or her successor shall have been elected and qualified, or until his or her death, resignation or removal.

4.03 RESIGNATIONS. An officer may resign at any time by delivering written notice to the Corporation. A resignation shall be effective when the notice is delivered unless the notice specifies a later effective date. If a resignation is made effective at a later date and the Corporation accepts the future effective date, the Board of Directors of the Corporation may fill the pending vacancy before the effective date if the Board of Directors provides the successor does not take office until such effective date.

4.04 REMOVAL. The Board of Directors may remove any officer at any time with or without cause.

4.05 VACANCIES. Any vacancy in any office occurring by reason of death, resignation, removal, disqualification, or any other cause shall be filled in the manner prescribed in these Bylaws for regular election or appointment to such office.

4.06 CONTRACT RIGHTS. The appointment of an officer does not itself create contract rights. An officer's removal does not affect the officer's contract rights, if any, with the Corporation, nor does an officer's resignation affect the Corporation's contract rights, if any, with such officer.

4.07 CHAIRMAN OF THE BOARD. If one is appointed or elected, the Chairman of the Board shall preside at all meetings of the Board of Directors, the shareholders, and any executive or other committees, as established by the Board of Directors under the provisions of these Bylaws. In addition, the Chairman of the Board shall perform such other duties as are given to him by these Bylaws or as may be prescribed from time to time by the Board of Directors. If one is not appointed or elected, the above description shall, to the extent applicable, be incorporated into the role of the Chief Executive Officer; if no Chief Executive Officer is appointed or elected, then the above description shall, to the extent applicable, be incorporated into the role of the President.

4.08 CHIEF EXECUTIVE OFFICER. If one is appointed or elected, the Chief Executive Officer shall have authority over the general and active management of the business and affairs of the Corporation, and shall have such powers and duties as are usually incident to the office of chief executive officer. The Chief Executive Officer, with any other officer thereunto duly authorized, may sign and execute, in the name of the Corporation, deeds, mortgages, bonds, contracts, agreements and other instruments duly authorized by the Board of Directors (or the shareholders, as the case may be). In addition, the Chief Executive Officer shall perform such other duties as are given to him by these Bylaws or as may be prescribed from time to time by the Board of Directors. If one is not appointed or elected, the above description shall, to the extent applicable, be incorporated into the role of the President.

-12

MVI/Palaxar - PI
088

4.09   PRESIDENT.   The President shall serve as the assistant to the Chief Executive Officer and shall perform such duties as may be delegated to the President by the Chief Executive Officer, subject to the direction of the Board of Directors, and shall perform such other duties and have such other authority and power as may be prescribed from time to time by the Board of Directors. If the Chief Executive Officer is absent or disabled, the President shall perform the duties and have the authority and the power of the Chief Executive Officer. The President, with any other officer thereunto duly authorized, may sign certificates of stock of the Corporation, the issuance of which has been duly authorized, and may sign and execute, in the name of the Corporation, deeds, mortgages, bonds, contracts, agreements and other instruments duly authorized by the Board of Directors (or the shareholders, as the case may be). In addition, the President shall perform such other duties as are given to him by these Bylaws or as may be prescribed from time to time by the Board of Directors or the Chief Executive Officer.

4.10   EXECUTIVE VICE PRESIDENT.   The Executive Vice President, if they are appointed or elected, shall serve as assistant to the President, and shall have such powers and duties as directed by the Board of Directors from time to time. If the President is absent or disabled, an Executive Vice President shall perform the duties of the President, and when so acting, shall have all the authority of and be subject to all the restrictions upon the President. Executive Vice President(s) shall perform such other duties as from time to time may be prescribed by the Board of Directors, the Chief Executive Officer, or the President.

4.11   VICE PRESIDENT(S).   The Vice President(s), if they are appointed or elected, shall serve as assistant(s) to the President. If an Executive Vice President is absent or disabled, the Vice President designated as such by the Board of Directors and thereafter, or in the absence of such designation, the Vice President(s) in the order otherwise designated by the Board of Directors, or in the absence of such other designation, in the order of their election, shall perform the duties of an Executive Vice President, and when so acting, shall have all the authority of and be subject to all the restrictions upon the Executive Vice President. The Vice President(s) shall perform such other duties as from time to time may be prescribed by the Board of Directors, the Chief Executive Officer or the President.

4.12   SECRETARY.   The Secretary shall be responsible for the custody and maintenance of all corporate records except the financial records, shall record the minutes of all meetings of the shareholders, Board of Directors, and executive and other committees, if any, shall send out all notices of meetings where required under these Bylaws or otherwise required by law, and shall perform such other duties and have such other authority and power as may be prescribed from time to time by the Board of Directors or the President.

4.13   ASSISTANT SECRETARY.   The Assistant Secretary, if any, shall, in the absence or disability of the Secretary, perform the duties and have the authority and exercise the powers of the Secretary. The Assistant Secretary shall perform such other duties and have such other authority and power as may be prescribed from time to time by the Board of Directors or the President.

MVUPalazar - PI
089

4.14   TREASURER. The Treasurer, if one is appointed or elected, shall have custody of all corporate funds and financial records, shall keep full and accurate records of receipts and disbursements and render accounts thereof whenever required by the Board of Directors, and shall perform such other duties and have such other authority and power as may be prescribed from time to time by the Board of Directors or the President. If a Treasurer is not appointed or elected, then the description provided above shall, to the extent applicable, be incorporated into the description of the Secretary.

4.15   ASSISTANT TREASURER. The Assistant Treasurer, if any, shall, in the absence or disability of the Treasurer, perform the duties and have the authority and exercise the powers of the Treasurer. The Assistant Treasurer shall perform such other duties and have such other authority and power as may be prescribed from time to time by the Board of Directors or the President.

4.16   COMPENSATION. The determination of compensation to be paid to the officers of the Corporation shall be made by the Board of Directors, or if authorized by resolution of the Board of Directors, by the President.

4.17   DISALLOWANCE OF EXPENSE. Any payments made to an officer of the Corporation, such as a salary, commission, bonus, interest, or rent, or entertainment expense incurred by him, which shall be disallowed in whole or in part as a deductible expense by the Internal Revenue Service, shall be reimbursed by such officer to the Corporation to the full extent of such disallowance. It shall be the duty of the Directors, as a board, to enforce payment of each such amount disallowed. In lieu of payment by the officer, subject to the determination of the Directors, proportionate amounts may be withheld from future compensation payments until the amount owed to the corporation has been recovered.

## ARTICLE V - STOCK CERTIFICATES

5.01   ISSUANCE. The Board of Directors of the Corporation may authorize shares of the Corporation to be issued for the consideration set forth in Section 5.03 hereof. All shares of the Corporation issued to shareholders must be represented by certificates in the form prescribed in Section 5.02 hereof.

5.02   FORM AND CONTENT OF CERTIFICATES. Every certificate representing shares issued by the Corporation shall state the following:

(a)   the name of the Corporation and that it is organized under the laws of the state in which it is incorporated;

(b)   the name of the person to whom the stock certificate is issued; and

(c)   the number and class of shares and the designation of the series, if any, the stock certificate represents.

-14-

)

If the Corporation is authorized to issue different classes of shares or different series within a class, the designation, relative rights, preferences, and limitations applicable to each class and the variations and rights, preferences, and limitations determined for each series (and the authority of the Board of Directors to determine variations for future series) shall be summarized on the front or back of each certificate. Alternatively, each certificate may state conspicuously on its front or back that the Corporation will furnish to the shareholder a full statement of this information on request and without charge.

Every certificate representing shares issued by the Corporation must be signed by the President and the Secretary or the Assistant Secretary of the Corporation and may bear the corporate seal. In the event any officer who signed a certificate no longer holds office when the certificate is issued, the certificate shall nevertheless be valid.

Every certificate representing shares which are restricted as to their sale, disposition or other transfer shall conspicuously state on the front or back of the stock certificate that such shares are so restricted and shall set forth or fairly summarize upon the certificate, or shall state that the Corporation will furnish to any shareholder upon request and without charge, a full statement of such restrictions.

5.03   CONSIDERATION. The Board of Directors may authorize shares to be issued for consideration consisting of any tangible assets (including real property) which are readily convertible into cash. For any other consideration, including without limitation, in-kind services, promissory notes, or services performed, approval shall be required by two-thirds (2/3) of the issued and outstanding shares prior to authorization by the Board of Directors.

Prior to the issuance of shares of the Corporation, the Board of Directors shall determine that the consideration received or to be received for shares to be issued is adequate. The determination made by the Board of Directors shall be conclusive insofar as the adequacy of consideration for the issuance of shares relates to whether the shares are validly issued, fully paid, and non-assessable. When it cannot be determined that outstanding shares are fully paid and non-assessable, there shall be a conclusive presumption that such shares are fully paid and non-assessable if the Board of Directors makes a good faith determination that there is no substantial evidence that the full consideration for such shares has not been paid. Notwithstanding any other provision to the contrary, approval by two-thirds (2/3) of the issued and outstanding shares shall be a conclusive presumption that that the consideration is adequate.

When the Corporation receives the consideration for which the Board of Directors authorized the issuance of such shares, the shares issued therefore shall be fully paid and non-assessable. Consideration in the form of a promise to pay money or the promise to perform services is deemed received by the Corporation at the time of the making of the promise, unless the agreement specifically provides otherwise.

The Corporation may place in escrow shares issued for a contract for future services or benefits or a promissory note, or make other arrangements to restrict the transfer of such shares,

-15-

MVI/Palaxar - PI
091

and make credit distributions in respect of such shares against their purchase price, until the services are performed, the promissory note is paid, or the benefits are received. If the services are not performed, the shares escrowed or restricted and the distributions credited may be canceled in whole or part.

5.04   LOST, STOLEN, OR DESTROYED CERTIFICATES. The Corporation shall issue a new stock certificate in place of any certificate for shares previously issued if the holder of record of the certificate:

(a)   makes proof in affidavit form that such certificate has been lost, destroyed or wrongfully taken;

(b)   requests the issuance of a new certificate before the Corporation has notice that the certificate has been acquired by a purchaser for value in good faith and without notice of any adverse claim; and

(c)   satisfies any other reasonable requirements imposed by the Corporation.

### ARTICLE VI - BOOKS AND RECORDS

6.01   CORPORATE RECORDS. The Corporation shall keep as permanent records, minutes of all meetings of its shareholders and Board of Directors, a record of all actions taken by its shareholders or Board of Directors without a meeting, and a record of all actions taken by a committee of the Board of Directors in place of the Board of Directors on behalf of the Corporation. Additionally, the Corporation shall maintain accurate accounting records.

The Corporation or its agents shall maintain a record of its shareholders in a form that permits preparation of a list of the names and addresses of all shareholders in alphabetical order by class of shares showing the number and series of shares held by each.

The Corporation shall maintain its records in written form or in another form capable of conversion into written form within a reasonable time.

The Corporation shall keep a copy of the following records:

(a)   its Articles or Restated Articles of Incorporation and all amendments to the Articles or Restated Articles of Incorporation currently in effect;

(b)   its Bylaws or Restated Bylaws and all amendments to the Bylaws or Restated Bylaws currently in effect;

(c)   resolutions adopted by the Board of Directors creating one or more classes or series of shares and fixing their relative rights, preferences and limitations, if shares issued pursuant to those resolutions are outstanding;

16

MVI/Palaxar - PI
092

(d)     the minutes of all shareholders' meetings and records of all actions taken by shareholders without a meeting for the past three (3) years;

(e)     written communications to all shareholders generally or all shareholders of a class or series within the past three (3) years, including the financial statements furnished to the shareholders for the past three (3) years as required under Section 6.03 hereof;

(f)     a list of the names and business street addresses of its current directors and officers; and

(g)     the most recent annual report of the Corporation delivered to any state entity as required under relevant provisions of state law.

Copies of all documents identified in this Section 6.01 shall be copied to any owner(s) of at least twenty-five (25%) percent of the issued and outstanding stock of the Corporation.  In addition, the Corporation shall send to any owner(s) of at least twenty-five (25%) percent of the issued and outstanding stock monthly accounting records for the Corporation.

6.02   SHAREHOLDERS' INSPECTION RIGHTS. .   Any shareholder of the Corporation shall be entitled to inspect and copy, during regular business hours at the Corporation's principal office, the corporate records of the Corporation as set forth in Sections 6.01(a) through 6.01(f) hereof, if such shareholder gives the Corporation written notice of his demand at least five (5) business days before the date on which such shareholder desires to inspect and copy the corporate records of the Corporation.

Any shareholder of the corporation shall be entitled to inspect and copy, during regular business hours at a reasonable location specified by the Corporation, the records of the Corporation set forth in Sections 6.02(a) through 6.02(d) hereof, if such shareholder's demand for inspection is made in good faith and for a proper purpose, the shareholder describes with reasonable particularity such shareholder's purpose and the records such shareholder desires to inspect, the records are directly connected with such purpose and such shareholder gives the Corporation written notice of such shareholder's demand at least five (5) business days before the date on which such shareholder desires to inspect and copy such corporate records:

(a)     excerpts from minutes of any meeting of the Board of Directors, records of any actions of a committee of the Board of Directors while acting in place of the Board of Directors on behalf of the Corporation, minutes of any meeting of the shareholders, and records of actions taken by the shareholders or Board of Directors without a meeting, to the extent not otherwise subject to inspection as set forth above in this Section 6.02;

(b)     accounting records of the Corporation;

(c)     the record of shareholders; and

(d)     any other books and records of the Corporation.

17

MVI/Palaxar - P1
093

Any shareholder of the Corporation shall be entitled to inspect and copy, during regular business hours at a reasonable location specified by the Corporation, a copy of the Bylaws or Restated Bylaws and all amendments to the Bylaws or the Restated Bylaws of the Corporation currently in effect and a list of the names and business street addresses of the Corporation's current directors and officers if such shareholder gives the Corporation written notice of such shareholder's demand at least fifteen (15) business days before the date on which such shareholder desires to inspect and copy such corporate records.

This Section 6.02 shall not affect: the right of any shareholder to inspect and copy records under Section 2.07 hereof; the right of a shareholder to inspect and copy records to the same extent as any other litigant if the shareholder is in litigation with the Corporation; or the power of a court to compel the production of corporate records for examination.

The Corporation shall have the right to deny any demand for inspection requiring the shareholder to have a proper purpose to inspect and copy the corporate records, if the shareholder's demand is made for an improper purpose, or if the demanding shareholder has within two (2) years preceding such shareholder's demand sold or offered for sale any list of shareholders of the Corporation or any other corporation, has aided or abetted any person in procuring any list of shareholders for any such purpose, or has improperly used any information secured through any prior examination of the records of the Corporation or any other corporation.

6.03   FINANCIAL INFORMATION.   Unless modified by resolution of the shareholders within one hundred twenty (120) days after the close of each fiscal year of the Corporation, the Corporation shall furnish to its shareholders annual financial statements which may be consolidated or combined statements of the Corporation and one or more of its subsidiaries, as appropriate, that include a balance sheet as of the end of the fiscal year, an income statement for such year, and a statement of cash flows for such year. If the financial statements of the Corporation are prepared on the basis of generally accepted accounting principles, the annual financial statements must also be prepared on such basis.

If the annual financial statements of the Corporation are reported upon by a public accountant, the public accountant's report must accompany the annual financial statements. If the annual financial statements are not reported upon by a public accountant, the annual financial statements must be accompanied by a statement of the President or the Treasurer of the Corporation:

(a)   stating such officer's reasonable belief whether such statements were prepared on the basis of generally accepted accounting principles and, if not, describing the basis of preparation; and

(b)   describing in what respects the statements were not prepared on a basis of accounting consistent with the statements prepared for the immediately preceding year.

-18-

The Corporation shall mail the annual financial statements to each shareholder within one hundred twenty (120) days after the close of each fiscal year of the Corporation or within such additional time thereafter as is reasonably necessary to enable the Corporation to prepare its financial statements if, for reasons beyond the corporation's control, it is unable to prepare its financial statements within the prescribed period. Thereafter, on written request from a shareholder who was not mailed the annual financial statements of the Corporation, the Corporation shall mail such shareholder the latest financial statements.

For any notice required, pursuant to this Section 6.03, to be delivered to any shareholder owning less than twenty-five (25%) percent of the total authorized and outstanding shares, then such notice can be completed by posting said documents to the Corporation's website and providing notice to the shareholder of the documents location.

## ARTICLE VII - DIVIDENDS

The Board of Directors may authorize the Corporation to make distributions upon the direction of the shareholders indicated by an affirmative vote of two-thirds (2/3) of the total authorized and outstanding shares of the Corporation.

Dividends shall not be cumulative.

## ARTICLE VIII - INDEMNIFICATION

The Corporation shall indemnify any officer or director, or any former officer or director, to the full extent permitted under relevant provisions of state law.

## ARTICLE IX - MISCELLANEOUS

9.01   CORPORATE SEAL. A corporate seal shall not be required to be attached to any instrument executed by or on behalf of the Corporation unless required by law, but if so required shall be of such shape and have such words thereon as may be described by law or by the Board of Directors. The seal may be used by impressing it or reproducing a facsimile thereof, or otherwise.

9.02   AMENDMENT OF BYLAWS.

A. The Board of Directors may amend or repeal the Corporation's Bylaws unless:

(a)   the Articles of Incorporation or other provision of law reserves the power to amend the Bylaws generally, or a particular provision of the Bylaws, exclusively to the shareholders; or

(b)   the shareholders, in amending or repealing the Bylaws generally, or a particular provision of the Bylaws, provide expressly that the Board of Directors may not amend or repeal the Bylaws or such provision of the Bylaws.

-19-

MVf/Palaxar - P1
095

B. In making an amendment or repeal pursuant to this Section 9.02, the Board of Directors shall propose the amendment or repeal to the shareholders who shall have thirty (30) days in which to object to the amendment. If twenty-five (25%) percent or greater of the total issued and outstanding shares object to the amendment or repeal, then such amendment or repeal shall but put to a vote of the shareholders.

C. Notwithstanding anything contained in these Bylaws to the contrary, the Corporation's shareholders may amend or repeal the Corporation's Bylaws. Provided, however, that any such amendment or repeal shall require an eighty (80%) percent vote of all issued and outstanding shares, in writing. No such amendment or repeal shall be valid if the effect of the amendment or repeal would be violative of any Investor Agreement or Loan Agreement between Mirabilis Ventures, Inc. or its affiliates and the Corporation.

9.03   RELATION TO ARTICLES OF INCORPORATION.  These Bylaws shall be subject to, and governed by, the Corporation's Articles of Incorporation.

## ARTICLE X-SPECIAL CONDITIONS

10.01   LIMITEDAPPLICABILITY.  The Company agrees to continue to be bound by Mirabilis Ventures, Inc.'s corporate governance rules and policies, which shall include, but is not limited to, the following:

(a)     Company's method of doing business protocols shall be consistent with the requirements set forth under the Sarbanes-Oxley Act (SOA), by using and implementing "Axenaware" software applications;

(b)     Company shall immediately use Mirabilis' designated common paymaster, for payroll processing of all employees, and insurance company for related insurance coverage, including workers' compensation;

(c)     Company shall be responsible for and obligated to perform the day-to-day operations of Company in accordance with its corporate guidelines, policies, regulations and procedures.

(d)     All bank accounts for Company will be reconciled daily, and "cash" reports will be filed daily with Mirabilis' designated monitor; and,

(e)     Company will use and participate in Mirabilis' preferred vendor network. Each member of the network agrees to grant preferred vendor status to each affiliate of Mirabilis, provided that price and service are competitive with a nonaffiliated provider.

(f)     Company shall maintain adequate books and records in accordance with generally accepted accounting principles consistently applied, and permit any

20

representative of Mirabilis, at any reasonable time, to inspect, audit and examine such books and records, to make copies of the same, and to inspect the properties of the Company.

(g)     Company warrants that it possesses, and will hereafter possess, all permits, consents, approvals, franchises and licenses required, and rights to all trademarks, trade names, patents, and fictitious names, if any, necessary to enable it to conduct the business in which it is now engaged in compliance with all applicable laws.

These Bylaws were adopted by Written Consent of the Board of Directors of the Corporation dated the 1st day of October, 2005.

_____
James V. Sadrianna, President

MVf/Palaxar - Pl
097

# EXHIBIT 13

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MIRABILIS VENTURES, INC. and                    Case No. 6:07-CV-1788-ORL-28-KRS
NEXIA STRATEGY CORPORATION,

      Plaintiffs,

v.

PALAXAR GROUP, LLC.;
PALAXAR HOLDINGS, LLC;
FRANK HAILSTRONES; EDITH CURRY
a/k/a EDITH BROADHEAD; and
TERENCE CHU,

      Defendants.

v.

MIRABILIS VENTURES, INC. and
NEXIA STRATEGY CORPORATION,

And THIRD PARTY CORPORATION,
WELLINGTON CAPITAL GROUP, INC.,
YANIV AMAR, FRANK AMODEO,
AARON BATES, MATTHEW MOKWA,
ROBERT POLLACK, JAMES SADRIANNA.

## AFFIDAVIT OF NICOLETTE VILMOS, ESQ., COUNSEL FOR PLAINTIFFS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56(f)

STATE OF FLORIDA
COUNTY OF ORANGE

      BEFORE ME, the undersigned authority, this day personally appeared Nicolette Corso Vilmos, who, being first duly sworn deposes and says:

      1.      I am Nicolette Corso Vilmos, one of the attorneys of record for Plaintiffs, in the above-styled case. In such capacity, I am authorized to make this affidavit.

2.     I have personal knowledge of all matters stated herein.

3.     Plaintiffs' counsel has obtained the Affidavit of R.W. Cuthill, Jr., which has been filed as exhibit "1" to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment.

4.     However, upon review of Mr. Cuthill's Affidavit, Counsel discovered that the affidavit was signed, but not notarized.

5.     Mr. Cuthill is currently out of the country and Plaintiffs' counsel is unable to have him re-sign, and have notarized, the Affidavit until his return.

6.     Mr. Cuthill will be returning to Central Florida the week of February 22, 2010. Upon Mr. Cuthill's return, Plaintiffs' counsel will have him execute the Affidavit, have it notarized and will immediately file the Affidavit with the Court.

**FURTHER AFFIANT SAYETH NOT.**



Nicolette Corso Vilmos

Sworn to and subscribed before me this /5 th day of February, 2010, by Nicolette Corso Vilmos, who is known to me or has produced _____ as identification.

MAGGIE INGRAM
MY COMMISSION # DD 926832
EXPIRES: September 21, 2013
Bonded Thru Notary Public Underwriters

NOTARY PUBLIC

My Commission Expires: September 21, 2013