UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MIRABILIS VENTURES, INC. and

NEXIA STRATEGY CORPORATION,

       Plaintiffs,

vs.                   Case No. 6:07-CV-1788-ORL-28-GJK

PALAXAR GROUP, LLC;

PALAXAR HOLDINGS, LLC;

FRANK HAILSTONES; EDITH CURRY

a/k/a EDITH BROADHEAD; and
TERENCE CHU,

       Defendants,

vs.

MIRABILIS VENTURES, INC., et al.

FRANK L. AMODEO, et al.

       Third Party Defendant,
       Third Party Plaintiff

_____/

AMENDED COUNTERCLAIM

Comes Now Frank L. Amodeo and files this counterclaim against Edith Curry Broadhead and Frank Hailstones showing the Court in support of which as follows:

## BACKGROUND

(1)

Amodeo has cross filed in this case documents prepared for other cases; these documents bear directly on this action, but also provide an extensive background for understanding the instant action.

(2)

Amodeo incorporates by reference and repeats herein the Declaration including the Declaration Statement of Facts and the Edith Curry notebook. Further, Amodeo incorporates Amodeo's initial appellate brief with appendix including videotapes also cross filed into this case.

## UNPAID TAXES

(3)

This case is about unpaid taxes, who owes the taxes and why the taxes went UNPAID.

(4)

The Sunshine companies while under ownership and control of Presidion Corporation owed $52 million in payroll taxes inclusive of penalties and interest during 2004.

(5)

Professional Benefits Solution, Inc. a/k/a as Presidion Solutions VII; hereinafter referred to as PBS accrued $71 million in payroll tax liability exclusive of interest and penalties during 2005.

(6)

From August 2005 to December 2005, PBS was putatively under the management of AEM, although control of the finances and operations was maintained with the same controlling persons, officers and directors of Presidion: James Baiers and Craig Vanderburg.  (Sue Schumacher was an officer only.)

(7)

In January of 2006, PBS sold substantially all of PBS' assets to Mirabilis Ventures, Inc. or one of Mirabilis' subsidiaries.

(8)

In particular, AEM, Inc. acquired ownership of all the contracts; hereinafter referred to as the PBS book of business.

(9)

As of January of 2006, PBS began to wind up PBS' affairs.

(10)

PBS no longer had any customer contact, PBS did not issue paychecks, PBS had no employees, PBS made no purchases, PBS filed no UTC-6 (Florida employee reporting form), PBS filed no income tax returns, PBS did not produce or generate any financial statements, PBS closes all PBS' bank accounts and PBS filed formal papers to dissolve the corporation with the State of Florida and was formally dissolved.

(11)

The foregoing list is not exclusive but is representative of PBS going out of business but the sale of PBS' assets in January 2006.

(12)

AEM, Inc. was a wholly owned subsidiary of Mirabilis Ventures, Inc. in 2006.

(13)

Previously, AEM, Inc. was owned by Fred Sandlin an officer, director and shareholder of each of the Sunshine companies.

(14)

For purposes of obtaining professional employer organization licenses ('PEO') AEM, Inc. was owned in part by Laurie Andrea and Yaniv Amar during a portion of 2005.

(15)

As of January 2006, AEM was owned exclusively by Mirabilis Ventures, Inc.

(16)

Mirabilis Ventures, Inc. was responsible for appointing the directors and officers of AEM, Inc. and approving AEM's controlling persons.

(17)

AEM, Inc.'s original President and Director was Yaniv Amar.

(18)

AEM, Inc.'s original controlling persons were Laurie Anerea and Yaniv Amar.

(19)

By the end of February 2006, when it became apparent Mirabilis was going to (still) need to utilize the payroll taxes of the PBS book of business to complete the reorganization and build Mirabilis Ventures, Inc. into the public vehicle to house the PEO business (in order for the business to be sold paying back the accrued taxes and hopefully making a significant profit as well). Yaniv Amar decided to resign.

(20)

Amar wanted to resign not out of fear the tax strategy was illegal but because of potential responsible person status for the unpaid taxes.

(21)

Mirabilis replaced Amar with Mike Stanley who became President and Director.

(22)

The controlling person license qualifying AEM was expanded to include Frank Hailstones, Paul Glover and Mike Stanley; Yaniv Amar was dropped as qualifying controlling person.

(23)

Between February 2006 and December 2006, AEM, Inc. accrued approximately $101,000,000 in additional unpaid taxes.

(24)

The Sunshine companies owe approximately 52 million dollars in unpaid taxes for 2004 and possibly certain periods in 2003.

(25)

PBS owes approximately $71 million in taxes for 2005.

(26)

PBS based on tax returns filed for disclosure and social security purposes owes approximately $101 million for 2006.

(27)

PBS did not actually collect, did not invoice and did not have control over any of the 2006 dollars.

(28)

AEM had sole control of the 2006 monies.

## EDIE CURRY - BROADHEAD'S INVOLVEMENT

(29)

Edie Curry was in charge of due diligence for the consultants planning to assist Presidion Corporation, beginning in September 2004.

(30)

Edie Curry was part of the legal team which confirmed the 'Sunshine Divestiture Plan' in November and December or 2004.

(31)

Edie Curry was part of the consulting team which implemented the Sunshine Divestiture Plan between December 2004 and March 2005.

(32)

Edie Curry in her capacity as an attorney reviewed the Sunshine Divestiture Plan.

(33)

Edie Curry in her capacity as an attorney drafted and reviewed minutes or proposals for board meetings meant to effectuate the Sunshine Divestiture Plan.

(34)

Edie Curry represented Amodeo in negotiations with various stakeholders of Presidion.

(35)

Edie Curry was at all times between January 2005 and November 2006 an officer and director of Mirabilis Ventures, Inc.

(36)

Edie Curry negotiated the acquisition of AEM, Inc. by Mirabilis Ventures, Inc.

(37)

Edie Curry reviewed as counsel the Haber tax memorandum prepared for AQMI Strategy Corporation and Frank L. Amodeo.

(38)

Edie Curry reviewed as a member of the tax consulting team the tax memorandum prepared by Elaina Wildemuth of Bevman, Keane and Riguera in and about April 2005.

(39)

Edie Curry was placed in charge of the PBS Reorganization plan in May 2005.

(40)

Edie Curry advised Amodeo of the legality of not paying taxes and using the funds to pay other expenses.

(41)

Edie Curry advised Amodeo of the effect of Mirabilis Ventures, Inc. acquiring a senior, perfected security interest in the assets of PBS.

(42)

Edie Curry advised it was not illegal to delay paying payroll taxes; although she advised such an action would result in civil penalties for Craig.

(43)

Edie Curry advised that a properly perfected security interest had priority over an unsecured payroll tax obligation.

(44)

As such any monies were encumbered and properly belonged to the secured creditor not to the government or the corporate taxpayer.

(45)

Edie Curry knew or should have known Mirabilis Ventures, Inc. was insolvent.

(46)

Edie Curry knew or should have known AEM, Inc. was violating AEM, Inc.'s management contract with PBS by not paying taxes.

(47)

Edie Curry knew or should have known Frank L. Amodeo had potential personal liability because of AEM's breach.

(48)

Edie Curry knew Amodeo was a creditor of Mirabilis Venture's Inc.

(49)

As a director and officer of an insolvent corporation (Mirabilis), Edie Curry had a fiduciary duty to the corporation's creditors.

(50)

Edie Curry breeched that duty by permitting AEM, Inc. to continue to use PBS book of business payroll taxes.

(51)

Edie Curry breeched that duty by permitting Mirabilis to continue to utilize the unpaid payroll taxes.

(52)

Edie Curry was at all times between December 2004 and November 2006 in a position of status which would make her a responsible person within the meaning of 6672.

(53)

Edie Curry was at all material times aware of the unpaid taxes.

(54)

Edie Curry knew or should have known of the use of the unpaid taxes.

(55)

Edie Curry at sometime in 2006 discovered the potential exposure of the unpaid taxes to herself, Amodeo and others.

(56)

Edie Curry instead of fulfilling her duties as counsel or as a corporate fiduciary chose instead to cover up her mistaken advice and subject Amodeo and others to increased exposure.

(57)

Edie Curry was willing to allow this to happen in order for her to continue to have access to the monies.

(58)

Edie Curry was using the monies to develop the software and systems which would become Palaxar's product.

(59)

Edie Curry was using the monies to increase her personal status in Richmond, Virginia by hiring personnel from Edie Curry's former employer Capital One.

(60)

Edie Curry was utilizing the monies directly and indirectly to buy access to Virginia political circles.

(61)

Edie Curry continued during this time to render placating advice to the officers of the various taxpayers.

(62)

The advice was designed to lull these officers and Amodeo into not aborting the tax strategy; thereby cutting off Curry's access to the monies.

(63)

Edie Curry as part of such advice was instrumental in developing the presentations to the IRS.

(64)

Even though Amodeo made sure the IRS was notified of the increasing liability for unpaid payroll taxes; thus Amodeo does not believe the IRS can claim to be misled.

(65)

If any misleading occurred it was initiated and planned by Curry.

(66)

The detriment of such activity was Amodeo's exposure for the tax liability increased.

(67)

Edie Curry's advise to James Baiers of Presidion affirming the opinion IRS Special Agent Patterson, also resulted in the tax exposure of Amodeo being increased.

(68)

From the time of Edie Curry's initial advice in November 2004, all the tax liability occurred which resulted in Amodeo's $181 million liability.

(69)

From the time of Edie Curry's advice with regard to the lien priming theory for the second time in June 2005, Amodeo incurred liability for $172 million of the $181 million.

(70)

From the time a company under Curry's legal control was responsible for management of the book of business in August 2005, $160 million of the $181 million dollars tax obligation was incurred.

(71)

And from the time an Edie Curry company was exclusively in control of the funds available to pay the taxes in January of 2006, a $101 million of the $181 million dollar liability was incurred.

(72)

Edie Curry's breech of fiduciary duty resulted in Amodeo being liable for at least $101 million of the tax obligation.

(73)

Edie Curry's bad advice as an attorney resulted in the entire liability accruing from December 2004 through December 2006.

(74)

Edie Curry's bad advice as a consultant was responsible for at least half the Sunshine liabilities and all the PBS and AEM liabilities.


FRANK HAILSTONES' INVOLVEMENT

(75)

Frank Hailstones became aware of the unpaid taxes when Hailstones and Axena bargained to develop Sarbanes-Oxley software and Business Risk software for the PEO industry.

(76)

The agreement involved using Presidion Corporation's subsidiaries as the source for the PEO model.

(77)

Amongst the consideration to be received was a risk analysis.

(78)

Neither Hailstones nor Axena ever warned Amodeo the nonpayment of tax issue would expose Amodeo to civil or criminal liability.

(79)

Hailstones was apparently so confident in the legitimacy of the business that Hailstones became chief executive officer and president of Mirabilis Ventures.

(80)

Hailstones also became a controlling person of AEM, Inc.

(81)

A controlling person has a duty under Florida law to ensure the PEO (the controlling person qualified) is in compliance with all state and federal laws.

(82)

Because Hailstones did not fulfill this duty, Amodeo has become liable for $101 million in taxes.

(83)

Hailstones a director and chief executive officer of Mirabilis knew or should have known Mirabilis was insolvent.

(84)

As a director or officer of an insolvent corporation, Hailstone's had a duty to protect the interests of the corporation's creditors.

(85)

Hailstones knew Amodeo was a creditor of Mirabilis and AEM, yet, Hailstones permitted the insolvent Mirabilis to continue in a course of business detrimental to Amodeo.

(86)

Hailstones did this in order to keep Hailstones' lucrative compensation package.

(87)

Hailstones, also, did this to benefit Hailstones interest in Axena Corporation and Axena's products.

(88)

Hailstones was able to divert directly and indirectly more than a million dollars to develop the Axena software in which Hailstones had a separate interest.

(89)

Hailstones also used the Mirabilis funds diverted from the PBS book of business to satisfy hostile creditors and investors of Axena.

(90)

Including those threatening legal action against Hailstones personally.

(91)

Hailstones provided accounting and auditing advice with regards to certain contracts which in effect transferred (apparent) liability for the taxes from AEM to PBS.

(92)

This action resulted in Amodeo having responsible person status instead of Hailstones and the other controlling persons of AEM.

(93)

Or at the very least adding Amodeo to the list of co responsible persons.

## PALAXAR CONSPIRACY

(94)

Curry and Hailstones determined by April of 2006 that Mirabilis was in serious debt on the taxes at least $144 million with interest and penalties.

(95)

Curry and Hailstones were both directors and officers of Mirabilis.

(96)

Instead of causing Mirabilis and AEM to cease the practice Curry and Hailstones decided to let it continue so they could fund their new project which would become Palaxar.

(97)

As a result of this conspiracy, the tax liability soared.

(98)

In order to ensure the continued access to the monies, Curry and Hailstones facilitated the development of a transaction structure likely to place several 'bumpers' between themselves and civil liabilities for the taxes; there is still no indication that either Curry or Hailstones were aware of the criminal implications.

(99)

Amongst the bumpers were Amodeo, Dan Myers, Craig Vanderburg and Mike Stanley.

(100)

Curry and Hailstones benefited from the scheme and Amodeo was made responsible for the monies Curry and Hailstones diverted from the tax payments.

## COUNT I:  CURRY NEGLIGENCES AS AN ATTORNEY

### (101)

Paragraphs 1 through 100 are incorporated herein by reference and repeated as if fully set forth.

### (102)

Curry represented Amodeo with regards to the Sunshine Divestiture Plan and the preparation of corporate governance documents in 2004 and 2005.

### (103)

As a result of such representation, she rendered advice which resulted in Amodeo being liable for $9,000,000 received as a fee.

### (104)

A significant portion of which went to Curry and her associates.

### (105)

Amongst the corporate governance documents there were suppose to be documents which insured Amodeo had no personal liability for PBS plan or the use of taxes to fund the reorganization.

### (106)

This advice was incorrect and beyond the prevailing norm for competent counsel.

### (107)

As a result of the advice Amodeo has become liable for $181 million in taxes as a responsible person.

## COUNT II:  CURRY'S NEGLIGENCE AS A CONSULTANT

### (108)

Paragraphs 1 through 100 are incorporated herein by reference as if fully restated.

(109)

Curry and the Brookmeade Group, LLC were retained to advise and assist Amodeo with the Divestiture of the Sunshine companies and the reorganization of Presidion.

(110)

As a result of the advice rendered during the development of Sunshine Divestiture Plan and the PBS reorganization plan, Amodeo suffered damages in excessive of $181 million in vicarious liability.

(111)

Amodeo also lost assets of greater than $40 million as a consequence of the advice.

COUNT III:  CURRY-HAILSTONES TORTIOUS CONSPIRACY

(112)

Paragraphs 1 through 100 are repeated here by reference and incorporated into this count as if fully stated.

(113)

Curry and Hailstones knowingly and voluntarily diverted funds to the Palaxar project with the intent of expropriating the assets and imposing the economic loss on Amodeo.

(114)

As a result of this conduct, Amodeo has suffered losses from devaluation of assets or increased debt of at $221,000,000.

## COUNT IV:  CURRY LIABLE FOR BREACH OF FIDUCIARY DUTY

### (115)

Paragraphs 1 through 100 are repeated herein by reference and incorporated into this count as if fully stated.

### (116)

Curry failed in her duty to Amodeo as a creditor of Mirabilis, when Mirabilis was insolvent.

### (117)

As a result, Amodeo has suffered damages in excess of $221,000,000.

## COUNT V:  CURRY LIABLE TO AMODEO IN CONTRIBUTION

### (118)

Paragraphs 1 through 100 are repeated here by reference and incorporated into this count as if fully stated.

### (119)

At all times between January 2005 and November 2006, Curry was in a position to impede the flow of funds to recipients other than the government.

### (120)

As such, Curry has the status necessary to be a responsible person and is thus liable to Amodeo in equal part of the $164,000,000 due from this time period.

### (121)

Including an equal part of the approximately $10 million paid to date for this period.

## COUNT VI:  HAILSTONES NEGLIGENCE AS A CONSULTANT

### (122)

Paragraphs 1 through 100 are repeated here by reference and incorporated into this count as if fully restated.

(123)

Hailstones failed to identify the risks associated with PEO's use of the payroll taxes.

(124)

As a result of such failure, Amodeo suffered losses in excess of $221,000,000.

## COUNT VII:  HAILSTONES' LIABILITY FOR BREACH OF FIDUCIARY DUTY

(125)

Paragraphs 1 through 100 are restated here by reference and incorporated into this count as if fully restated.

(126)

Hailstones was a director and officer of Mirabilis Ventures, Inc. and a controlling person of AEM, Inc.

(127)

As a result of Mirabilis and AEM's insolvency, Hailstones had a duty to Amodeo as a creditor.

(128)

Because of Hailstones breach of the duty Amodeo has losses in excess of $141,000,000.

## COUNT VIII:  HAILSTONES LIABLE TO AMODEO IN CONTRIBUTION

(129)

Paragraphs 1 through 100 are repeated here by reference and incorporated into this count as if fully restated.

(130)

Hailstones was a director and officer of Mirabilis Ventures, Inc. and a controlling person of AEM, Inc. for the year 2006.

(131)

Hailstones in those positions of the authority as well as being a signer on the corporate bank accounts was in a position to impede the flow of funds to recipients other than the government.

(132)

As such, Hailstones was within the ambit of the responsible person doctrine and co responsible for the unpaid taxes.

(133)

Hailstones is liable in equal part to Amodeo for the $101,000,000 in taxes arising in 2006 and $4,000,000 Amodeo caused to be paid against AEM's deficiency.

## GENERAL DENIAL

As Amodeo does not yet have any of the original pleadings in the case, Amodeo denies all allegations. Further, Amodeo has submitted a sworn declaration of facts which would contravene most allegations.

WHEREFORE Amodeo respectfully request the court to award actual, consequential, exemplary and punitive damages; including attorney fees and costs, as subsequently determined by a jury as follows:

1) For Amodeo and against Curry with regards to Counts I, II, IV and V;

2) For Amodeo and against Curry and Hailstones jointly for Count III;

3) For Amodeo and against Hailstones for Count VI, VII and VIII;

And such other and further relief as the Court deems appropriate or fair.


Submitted this 10th day of March, 2010.

Frank L. Amodeo
Federal Correction Complex-Low
P.O Box 1031
Coleman, Fl. 33521
Unit B3; 48883-019

## CERTIFICATE OF SERVICE

This amended counterclaim has been sent to all parties in this action by U.S. Mail on or before the 11th day of March, 2010.

Frank L. Amodeo