## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| MIRABILIS VENTURES, INC. and <br> NEXIA STRATEGY CORPORATION, <br><br> Plaintiffs, <br> -vs.- <br><br> PALAXAR GROUP, LLC; <br> PALAXAR HOLDINGS, LLC; <br> FRANK HAILSTONES; EDITH CURRY <br> a/k/a EDITH BROADHEAD; and <br> TERENCE CHU, <br><br> Defendants, <br><br> vs. <br><br> MIRABILIS VENTURES, INC., et al. <br><br> Counterclaim and Third <br> Party Defendants. | Case No.: 6:07-CV-1788-ORL-28-GJK <br><br><br><br><br><br><br><br><br><br><br><br><br> **DEFENDANTS' JOINT MOTION TO** <br> **DISMISS THE AMENDED COUNTER-** <br> **CLAIMS OF THIRD PARTY** <br> **COUNTERCLAIM PLAINTIFF** <br> **FRANK AMODEO** |

After conferring with Third Party Defendant/Third Party Counterclaim Plaintiff Frank Amodeo via letter, Defendants Edie Curry ("Ms. Curry") and Frank Hailstones ("Mr. Hailstones"), Palaxar Holdings, LLC and Palaxar Group, LLC ("Palaxar") (collectively "Defendants") hereby move to dismiss the amended counterclaims of Third Party Defendant/Counterclaim Plaintiff Frank Amodeo ("Mr. Amodeo") filed March 11, 2010.

### I. INTRODUCTION

On January 29, 2010, Mr. Amodeo filed his Answer to the Third Party Complaint along with Third Party Counterclaims against Ms. Curry and Mr. Hailstones (Dkt. 185). On February 15, 2010, Ms. Curry and Mr. Hailstones filed a Motion to Dismiss Mr. Amodeo's

Counterclaims (Dkt. 192). Rather than responding to Defendants' Motion to Dismiss, on March 11, 2010, Mr. Amodeo filed Amended Counterclaims against Ms. Curry and Mr. Hailstones (Dkt. 214).[1]

Pursuant to Fed. R. Civ. P. 12(b)(6), Mr. Hailstones and Ms. Curry respectfully urge this Court to deny Mr. Amodeo's Amended Third Party Counterclaims against them on the same grounds that supported their original motion to dismiss: (1) the counterclaims fail to state claims upon which relief can be granted and Mr. Hailstones and Ms. Curry are entitled to judgment as a matter of law; (2) neither Mr. Hailstones nor Ms. Curry ever owed any duty personally to Mr. Amodeo, and certainly none sufficient to support a claim of negligence against either of them for any breach of duty; and (3) Mr. Amodeo is barred by the doctrine of collateral estoppel by his own guilty plea and sentencing in this Court from arguing any theory contrary to his sworn testimony and plea agreement, in which Mr. Amodeo acknowledged that he knowingly and willfully caused the harms he now alleges were caused by Mr. Hailstones and Ms. Curry.

## II.     THE STANDARD FOR GRANTING A MOTION TO DISMISS.

In evaluating a plaintiff's pleadings pursuant to Fed. R. Civ. P. 12(b)(6), the Court must make reasonable inferences in Plaintiff's favor, "but [is] not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.,* 416 F.3d 1242, 1248 (11th Cir. 2005). Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal,* 556 U.S. __, 129 S.Ct. 1937, 1949 (2009) (noting "***the tenet that a court must accept as true all of the allegations contained in a complaint is***

---

[1] To Defendants' surprise, Mr. Amodeo asserts in his Amended Counterclaims that "[t]his case is about unpaid taxes, who owes the taxes, and why the taxes went UNPAID [sic]." *See* Amodeo Amended Counterclaims at ¶ 3. In Mr. Amodeo's view, these issues are at the heart of the case. Defendants have been under the impression that this case was about Ms. Curry's invention, its development, and potential remuneration arising from any resulting product commercialization.

*inapplicable to legal conclusions*") (emphasis added). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true. *Id.*

A complaint should be dismissed if the facts as pled do not state a claim upon which relief may be granted. *See Iqbal,* 129 S.Ct. at 1950 (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 561-62, 570, 127 S.Ct. 1955, 1968-69, 1974 (2007) (retiring the prior "unless it appears beyond doubt that the plaintiff can prove no set of facts" standard). In *Twombly,* the Supreme Court emphasized a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1965. Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555, 127 S.Ct. at 1964-65 (internal citations and emphasis omitted).

More recently, in *Iqbal,* the Supreme Court reiterated that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 129 S.Ct. at 1949. The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss. *Id.* The well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974.

Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume

their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 29 S. Ct. at 1937. In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 1949 (internal quotation marks and citation omitted).

### III.    MR. AMODEO'S COUNTERCLAIMS AGAINST MS. CURRY AND MR. HAILSTONES.

Mr. Amodeo's Amended Counterclaims are a barrage of unfounded allegations that seek somehow to establish the existence of a duty owed by either Ms. Curry or Mr. Hailstones where none exists. Mr. Amodeo's Amended Counterclaims are as unfocused and "scatter-shot" as his original claims against Defendants. As *Iqbal* provides, these "unwarranted deductions of fact" in Amodeo's complaint need not be admitted as true. *Ashcroft v. Iqbal,* 556 U.S. __, 129 S.Ct. 1937, 1949 (2009). Conclusory allegations, unwarranted factual deductions, and conclusions of law need not be accepted as true, and such allegations, masquerading as facts, will not prevent dismissal. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183,1185 (11th Cir. 2003). Mr. Amodeo's unsupported conclusion of law that Curry and Hailstones had "a duty to Amodeo" is simply not supported by the facts or the law and therefore his claim fails.

Mr. Amodeo's allegations amount to the following:

- Ms. Curry was negligent as an attorney (Count I);

- Ms. Curry and Mr. Hailstones were negligent as consultants (Counts II and VI);

- Ms. Curry and Mr. Hailstones breached their fiduciary duties to Mr. Amodeo (Counts IV and VII);

- Ms. Curry and Mr. Hailstones tortiously conspired to divert funds to Palaxar and leave Amodeo with the tax liability (Count III); and

- Ms. Curry and Mr. Hailstones are liable to Mr. Amodeo in contribution (Counts V and VIII).

4

### A. Neither Ms. Curry nor Mr. Hailstones Ever Had any Duty to Mr. Amodeo Personally.

#### 1. Plaintiff cannot establish negligence.

First, to maintain an action for negligence under Florida law, a plaintiff must establish three things: 1) that the defendant owed a duty to the plaintiff; 2) that the defendant breached that duty; and 3) that the breach caused the plaintiff damages. *Fla. Dep't of Corrs. v. Abril,* 969 So.2d 201, 203 (Fla.2007). A duty of care is "a minimal threshold legal requirement for opening the courthouse doors." *McCain v. Fla. Power Corp.,* 593 So.2d 500, 502 (Fla.1992) (footnote and emphasis omitted).

The existence of a duty poses a question of law that the court must answer **before** permitting a negligence claim to proceed before the trier of fact. *See Williams v. Davis,* 974 So.2d 1052, 1057 n. 2 (Fla.2007) (emphasis added) (citing *McCain,* 593 So.2d at 504); *see also* Restatement (Second) of Torts § 328B. A duty of care requires that the defendant "conform to a certain standard of conduct . . . . for the protection of others against unreasonable risks." *Clay Elec. Co-op, Inc, v. Johnson,* 873 So.2d 1182, 1185 (Fla.2003) (quoting *Prosser and Keeton on the Law of Torts* § 30, at 164-65 (W. Page Keeton, et al. eds., 5th ed.1984) (footnotes omitted).

#### 2. Ms. Curry never acted as an attorney for Mr. Amodeo.

Among the changes that appear in Mr. Amodeo Amended Counterclaims with respect to Ms. Curry are his multiple intimations that Ms. Curry was acting as an attorney or providing legal advice to Mr. Amodeo. *See* Amended Counterclaims at ¶¶ 30, 32, 33, 37, 40, 42, 43, 56, 61, 68, 69, 70, 73, 102. In none of the foregoing does Mr. Amodeo allege outright that Ms. Curry was acting **on behalf of Mr. Amodeo**. Accordingly, nothing in these paragraphs give rise to even a suggestion that Ms. Curry owed a duty to Mr. Amodeo personally.

In other paragraphs of his complaint, Mr. Amodeo asserts or insinuates that "Edie Curry represented Amodeo in negotiations with various stakeholders of Presidion."[2] Amended Counterclaims at ¶ 34, 109, 110, 111. Not only do these "representation" statements fail to allege that Ms. Curry had an attorney-client relationship with Mr. Amodeo or that Ms. Curry was acting in her capacity as an attorney in her dealings with him, but the statements are also false.

Ms. Curry never "represented" nor was she "retained by" Mr. Amodeo in any capacity. With respect to Presidion Solutions, Inc., the only acts Ms. Curry ever performed were within the context of the consulting contract between Ms. Curry's consulting firm—Brookmeade Group, LLC—and Presidion Solutions, Inc., a wholly-owned subsidiary of Presidion Corporation, as documented in the Consulting Agreement (attached hereto as Exhibit 1). Brookmeade Group, LLC, is and always has been a financial consulting entity *only*; Ms. Curry has provided no legal services of any kind, and certainly not to Mr. Amodeo, personally or otherwise.[3]

Mr. Amodeo cannot rightfully allege that there was ever an attorney-client relationship between Ms Curry and himself, much less that—in such a relationship—Ms. Curry committed negligence. Mr. Amodeo cannot put forward a scrap of evidence suggesting that Ms. Curry owed a duty to him personally. Nowhere does Mr. Amodeo allege that Ms. Curry was ever engaged by him as an attorney; and Mr. Amodeo's August 2006 sworn statement asserts otherwise:[4]

---

[2] Among other defects in this allegation, there were a number of "Presidion" entities. There were (at least) Presidion Corporation, Presidion Benefits Solutions, Presidion Solutions, and others.

[3] It is true that Ms. Curry has a law degree from the University of Akron, which she obtained while she was working full time in Ohio in an accounting function for Nestle Company. The only legal position she has ever held was at Capital One, a position she left in 2002. Ms. Curry is licensed to practice only in Ohio, does not have a law office, and does not carry malpractice insurance. Aware that the rules regarding the unlicensed practice of law in Florida are quite strict, Ms. Curry was very careful to leave the lawyering functions at MVI and related entities to others.

[4] *See* Exhibit 2, page 40 at lines 12-22.

> Q. Was Presidion Corporation as the owner of these subsidiaries responsible for the payment of these 941 taxes?
>
> A. No they're not.
>
> Q. Did you make an investigation to determine whether or not that's the law?
>
> A. There have been three sets of lawyers who have rendered opinions on that matter. Two firms hired by Presidion directly and one hired by me [none of which included Ms. Curry].

*See also Frank L. Amodeo v. Berman, Kean & Riguerra, PA*, Case No.: 48-2008-CA-31333-O, (Orange County, Florida) (in which the Court ordered that Amodeo was collaterally estopped from the identical claims he is now alleging against Ms. Curry.)[5]

There is no engagement letter or any other document to support Mr. Amodeo's allegation. Ms. Curry's employment agreement with Nexia clearly illustrates that she was not hired as an attorney. On the other hand, as reflected in Exhibit 2, the transcript of Mr. Amodeo's sworn statement dated August 26, 2006, Mr. Amodeo explains throughout that it was he who was responsible for the purported resolution of any issues involving the Presidion tax matters. Exhibit 3 is an excerpt from Ms. Curry's cross-examination on May 14, 2009 by Mr. Sands during Mr. Amodeo's sentencing hearing, in which she explains that she was not engaged as an attorney at any time during her involvement with either Presidion or Amodeo, nor did she provide the advice Mr. Amodeo alleges. Ms. Curry's role in relation to Mr. Amodeo was never that of an attorney to her client.

### 3. Defendants are not liable to Mr. Amodeo as "Controlling Persons."

Although Mr. Amodeo alleges that Ms. Curry and Mr. Hailstones were controlling persons in various entities and that they knew or should have known that MVI was insolvent—thus giving rise to certain duties—there is substantial evidence to the contrary, and in particular,

---

[5] *See* Exhibit 4, Order dated December 8, 2009.

substantial evidence that Mr. Amodeo hid the actual financial circumstances of MVI (and its subsidiaries) from Ms. Curry and Mr. Hailstones and repeatedly assured them that its tax status was solid.

Mr. Amodeo nevertheless alleges that Ms. Curry and Mr. Hailstones owed a fiduciary duty to him as one of the creditors of MVI. According to Florida law, however, so long as the organization is a going concern, the idea of the officers and shareholders owing a duty to its creditors is an unusual one at best. *See Orlinsky v. Patraka*, 971 So.2d 796 (Fla. 3rd DCA 2007), *citing Skinner v. Hulsey,* 138 So. 769, 773 (Fla.1931) ("in a solvent going concern directors are considered the agents or fiduciaries of the corporation, not of its creditors."). *See also Flight Equip. & Eng'g Corp. Shelton,* 103 So.2d 615, 626 (Fla.1958) (describing corporate officer's assertion that his first duty was to creditors, as opposed to the corporation or its stockholders, as "both strange and unfounded in law.").

### 4. Neither Defendant owed a fiduciary duty to Mr. Amodeo.

Any allegation that Ms. Curry or Mr. Hailstones owed a fiduciary duty to Mr. Amodeo is absurd. First, a fiduciary relationship must be established by competent evidence, and the burden of proving such a relationship is on the party asserting it. *Kislak v. Kreedian,* 95 So.2d 510, 514-15 (Fla.1957). No document in this case even suggests that Ms. Curry or Mr. Hailstones owed Mr. Amodeo a duty of any kind. Second, fiduciary relationships implied in law are premised upon the specific factual situation surrounding the transaction and the relationship of the parties. Courts have found a fiduciary relationship implied in law "when confidence is reposed by one party and a trust accepted by the other." *Capital Bank v. MVB, Inc.,* 644 So.2d 515, 518 (Fla. 3d DCA 1994) (citations omitted). Nothing in Mr. Amodeo's allegations even suggests such a relationship between Amodeo and either Defendant.

### 5.  Neither Defendant was a consultant to Mr. Amodeo.

Neither Defendant had a consulting agreement with Amodeo, or any agreement that gave rise to a duty to Amodeo in their role as consultants.[6] The only consulting agreement involving either Defendant with anyone even remotely related to this case is the consulting agreement between Brookmeade Group, LLC and Presidion Corporation (Exhibit 1) which was in no way related to Amodeo. Neither Defendant had any consulting agreement of any kind as an individual or as an entity to Mr. Amodeo as an individual or to any of his entities.

In *Downs v. Coastal Systems Intern., Inc.*, 972 So.2d 258 (Fla. 3rd DCA 2008), a young man took a shallow dive at a swimming area in Miami-Dade County, landed on submerged rocks, causing injuries that resulted in his quadriplegia. He sued the consulting firm that had provided information to the County on the erosion of its beaches (among other things), arguing that the consultant, Coastal Systems,

> H]aving actual or constructive knowledge of the dangerous conditions to swimmers, and having been asked by the County to review the condition of the erosion of the beach, had a general duty, independent from any professional duty and a duty not requiring any specific skills or qualifications, to advise the County of the dangerous conditions that had been previously reported in the literature upon which Coastal Systems relied in its study of erosion and in drafting its reports . . . .

*Id.*, 972 So.2d at 260. The court found that the consultant had no duty to the swimmer and had breached no common law duty based on foreseeable harm. In view of both the trial and appellate court in *Coastal Systems*,

> Nowhere in the record before us is there a contractual requirement on the part of Coastal Systems to inspect the beach areas for any potentially hazardous rocks and inform anyone of such potential hazards. The contract between Coastal Systems and DERM does

---

[6] See Amodeo's sworn testimony of August 26, 2006 at page 15, lines 6-13.  Q. "You hired a consulting company to help you analyze the facts and circumstances?  A. Yes.  Q. What consulting company was that?  A.  It was Matrix Network Orlando."

9

>not include this duty upon which Downs relies. The contract indicates, for example, that Coastal Systems was to develop plans aimed at the enhancement of the coastline. This included the development of conceptual designs and construction plans, and assistance in the preparation of studies, reports, and models. The reports Coastal Systems produced pursuant to its contractual obligations, namely the March 2000 report, also do not create a contractual duty on Coastal Systems to inform anyone of any potential hazards.

*Id.*, 972 So. 2d at 261. Thus, unless the consultant negligently performed the work it was engaged to do, and the failure properly to perform *those functions* was the proximate cause of the injuries to the plaintiff, plaintiff could not recover. Amodeo cannot claim that any actions of either Defendant as a consultant was the result of his loss.

Mr. Amodeo can produce nothing to contradict Defendants' assertions that neither of them ever owed a duty to him personally, and therefore, they had no duty to him which they could have breached. That either Defendant was in a relationship with Amodeo that gave rise to a duty to him personally is simply implausible. Accordingly, his counterclaims against them based on their alleged duties to Mr. Amodeo must be dismissed.

### B. Amodeo's Allegations of Conspiracy Between Ms. Curry and Mr. Hailstones are Legally Insufficient to State a Claim.

A civil conspiracy requires: (1) an agreement between two or more parties, (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the doing of some overt act in pursuance of the conspiracy, and (4) damage to plaintiff as a result of the acts done under the conspiracy. *Charles v. Florida Foreclosure Placement Center, LLC*, 988 So.2d 1157 (Fla. 3rd DCA 2008). Mr. Amodeo alleges that Ms. Curry and Mr. Hailstones "knowingly and voluntarily diverted funds to the Palaxar project with the intent of expropriating the assets and imposing the economic loss on Amodeo."

None of these assertions amount to (1) an agreement, (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the commission of some overt act in pursuance of the conspiracy, and (4) damage to plaintiff caused by the acts of the Defendants. Whatever Mr. Amodeo intended to accuse Defendants of doing, he has failed adequately to allege a conspiracy.

### C. Defendants are Not Liable to Mr. Amodeo in Contribution.

In order to maintain a claim for contribution, the claimant *must* have paid more than his pro rata share of the debt and the party against whom the claim for contribution be held liable in common along with the claimant for the debt at issue. *See* Section 768.31(2)(b) of Florida's version of the Uniform Contribution among Tortfeasors Act. It is wildly implausible that Ms. Curry will be held jointly liable with Mr. Amodeo for the unpaid payroll taxes even *if* Amodeo paid more than his pro rata share, which—of course—he has not, and which accomplishment is even more unlikely.

### D. Mr. Amodeo's Third Party Counterclaims are Inconsistent With the Circumstances of his Criminal Case and Should be Dismissed.

Mr. Amodeo's allegations—taken in context—border on the preposterous. Not only did Ms. Curry and Mr. Hailstones *never* advise Mr. Amodeo concerning payroll taxes, but in two years of criminal investigation, Mr. Amodeo was unable to produce a single piece of evidence that anyone at Mirabilis ever knew that payroll tax monies were funding the operations of Mirabilis Ventures, Inc. For example, during Mr. Amodeo's sentencing hearing, Assistant U. S. Attorney Randall Gold examined IRS Special Agent Richard Smith. In response to one of Mr. Gold's questions, Agent Smith testified:

> . . . . In addition to asking about somebody's actions, we [AUSA and IRS] told Mr. Amodeo, Mr. Slaughter and Mr. Sands [Mr. Amodeo's criminal lawyers] that we were having, it was a challenge bridging the gap as it was referred to as between Presidion and Mirabilis. Presidion was the one running up the payroll tax liabilities*.* People at Mirabilis knew about it, but *did*

11

> ***they know that payroll tax funds were going to Mirabilis and funding its operations***? And again, we asked Mr. Amodeo that, he said something to the effect, now I get it, I get what you're looking for, I'll get it.
>
> Q. Did he ever get you that evidence?
>
> A. ***No.***

*See* Sentencing Hearing of Frank Amodeo in Case No. 6:08-CR-176-ORL-28-GJK, May 19, 2009, Randy Gold - Direct Examination of IRS Special Agent Richard Smith at pp. 24–25 (emphasis added). Thus, when provided with the opportunity—over a period of two years—to deliver to the United States government any evidence that any person at Mirabilis other than Amodeo himself was aware of the misuse of payroll tax funds, Amodeo failed to do so. Here, however, in the civil context, he believes that the bare allegations should stand. He is mistaken.

Moreover, according to Frank Amodeo's indictment and plea agreement (which was negotiated for over two years), his scheme began when he signed a consulting agreement with Presidion Solutions ("PSI") in October, 2004. On December 8, 2004, Amodeo was given power of attorney over PSI's bank accounts and began his criminal enterprise of diverting trust fund payroll tax funds on December 10, 2004. *See United States v. Frank Amodeo*, Case No. 6:08-CR-176-ORL-28GJK, Indictment, attached hereto as Exhibit 5, at p. 9 and Amended Plea Agreement, attached hereto as Exhibit 6, at page 29. This was a full seven months before Ms. Curry was hired by Mirabilis Ventures, Inc. and twelve months before Mr. Hailstones joined the company.

Mr. Amodeo's counterclaims against Ms. Curry and Mr. Hailstones not only fail to state a claim upon which relief can be granted, they utterly lack plausibility as required under *Twombly* to proceed. 550 U.S. at 570, 127 S.Ct. at 1974.

## **CONCLUSION**

For all the reasons set forth herein, this Motion to Dismiss should be granted and the Third Party Amended Counterclaims of Frank Amodeo against Edith Curry and Frank Hailstones should be dismissed.

Respectfully submitted,

Date: <u>March 24, 2009</u>

/s/ Kathleen B. Havener
KATHLEEN B. HAVENER
THE HAVENER LAW FIRM, LLC
15511 Russell Road
Chagrin Falls, OH 44022
Phone: 440-893-0188
Cell: 216-288-6009
Fax: 440-893-9326
kbhavener@havenerlaw.com

Attorney for Defendants Curry, Hailstones,
Palaxar Group, LLC and Palaxar Holdings, LLC

MARTIN R. RASKIN
Florida Bar No. 315206
JANE SERENE RASKIN
Florida Bar No. 848689
RASKIN & RASKIN, P.A.
866 South Dixie Highway
Coral Gables, FL 33146
Telephone: (305) 444-3400
Facsimile: (305) 445-0266
mraskin@raskinlaw.com

Attorneys for Defendant Curry,
Palaxar Group, LLC and Palaxar Holdings, LLC

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on March 24, 2010, I electronically filed the foregoing Joint Motion of Defendants to Dismiss the Amended Counterclaims of Frank Amodeo with the Clerk of Court using the CM/ECF system and have sent a notice of electric filing to the pro se parties.

Terence Chu (via email)

Frank L. Amodeo B-3 (via Priority Mail)
48883-019
Federal Correctional Complex – Low
P.O. Box 1031
Coleman, FL 33521

                                            /s/ Kathleen B. Havener
                                            KATHLEEN B. HAVENER