IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA,
ORLANDO DIVISION

| | |
|---|---|
| MIRABILIS VENTURES, INC, and<br>NEXIA STRATEGY CORPORATION,<br><br>Plaintiffs,<br><br>-vs.-<br><br>PALAXAR GROUP, LLC;<br>PALAXAR HOLDINGS, LLC;<br>FRANK HAILSTONES;<br>EDITH CURRY a/k/a EDITH<br>BROADHEAD; AND TERENCE CHU,<br><br>Defendants,<br><br>-vs.-<br><br>MIRABILIS VENTURES,INC.,et al.<br><br>Counterclaim and<br>Third Party Defendants | Case No.: 6:07-CV-1788-ORL-28-GJK |

## DEFENDANT TERENCE CHU'S MOTION FOR SANCTIONS AND INCORPORATED MEMORANDUM OF LAW.

Without waiving his defense of lack of personal jurisdiction, Defendant Terence Chu ("Chu"), *pro se*, respectfully files this Motion pursuant to Fed. R. Civ. P. 11, 28 U.S.C. § 1927, Local Rule 4.18, and this Court's inherent authority and files this Motion for an order monetary sanctions against Allen Estes, Esq. ("Attorney Estes"), J. Russell Campbell, Esq. ("Attorney Campbell"), the law firm of Balch & Bingham, Aaron Bates ("Attorney Bates"), Matthew Mokwa ("Attorney Mokwa") the law firm of BatesMokwa, PLL, Nicolette Vilmos, Esq.

("Attorney Vilmos"), Todd K. Norman, Esq. ("Attorney Norman"), Roy Scott Kobert, ("Attorney Kobert"), and the law firm of Broad and Cassel, for the frivolous and baseless amended complaint they filed on behalf of Mirabilis Ventures, Inc. ("MVI"). Attorneys Estes, Campbell, Vilmos, Norman, and Kobert are collectively referred to as "MVI Attorneys." Terence Chu seeks sanctions pursuant to Fed. R. Civ. P. 11, 28 U.S.C. § 1927, Local Rule 4.18, and the Court's inherent authority.

I. **PROCEDURAL BACKGROUND**

On October 12, 2007, Plaintiffs Mirabilis Ventures, Inc. ("MVI") and Nexia Strategy Corporation ("Nexia") (collectively "Plaintiffs"), by their counsel Attorneys Estes and Campbell (together with Aaron Bates, Esq., and Matthew Mokwa, Esq. who have since been replaced by Broad and Cassel attorneys Vilmos, Korbert and Norman) filed the instant case, the entire basis of which was the written testimony of a single affiant, Jodi Jaiman, MVI's then President. On September 16, 2008, Ms. Jaiman recanted the previous written testimony contained in her affidavit in this matter when in an affidavit filed as part of Assistant U.S. Attorney I. Randall Gold's ("AUSA Gold") Motion to Dismiss the Mirabilis Venture's Bankruptcy based on its Bad Faith Filing, she stated:

> Although [her prior] affidavits and documents may have stated otherwise...Amodeo was the person who controlled [Mirabilis and Nexia]. Amodeo knew he was the target of a federal grand jury investigation and he thought that if he paid the trust fund taxes to the IRS, a sentencing judge would be lenient with him. When seizure warrants were served on law firms which handled legal matters for [Amodeo-controlled companies] there was a concern by Amodeo about how to save the litigation cases to make sure the IRS received the funds referenced above for his benefit in the potential criminal case.

On January 25, 2008, this Court ruled from the bench and denied Plaintiffs' Motion for Preliminary Injunction, based on Plaintiffs' *failure to establish a likelihood of success on the merits*. During this hearing, Attorney Estes stated,

> If Nexia's not in the antifraud business, what business is it in? Nexia is in the liquidation business. Nexia exists today to marshal its assets and liquidate them for the benefit of its creditors. Unless you've been not paying attention to the media, I believe it is well established in the public domain that at least one of the creditors of Mirabilis or Nexia or any of the other subsidiaries is most likely going to be the IRS. There are tax issues. So Mirabilis is liquidating assets which will most likely end up at least a portion of being paid to the IRS...*there is no patent*. We're dealing with Florida Trade Secrets Law. They took a trade secret. *There is no patent*. Patent law, you must have a written assignment of the patent. It's not applicable here. We're dealing with the Florida trade secrets, uniform trade secrets act.[1]

On March 17, 2008, Defendants filed their Joint Motion for Summary Judgment. On April 24, 2008, The United States of America issued a civil cause for forfeiture in rem[2] in which $253,487.45 was seized from the trust fund of Balch & Bingham; $20,754.19 from the trust fund of Latham, Shuker, Eden & Beaudine, LLP; and $12,528.51 from Broad and Cassel.

On May 27, 2008 Plaintiff Mirabilis filed for bankruptcy protection in the case styled *In re: Mirabilis Ventures, Inc.*, Case No. 6:08-BK-04327[3] (the Bankruptcy Case) stating the reason for the bankruptcy:

> The Chapter 11 filing comes primarily as a result of an *in rem* civil forfeiture action filed by the United States of America against certain assets MVI, which effectively caused the Debtor to be unable to pursue claims and litigation against various third parties.

Mirabilis' bankruptcy counsel, Elizabeth Green "suggested" to this Court that all proceedings should be stayed *for 60 days*. (Dkt. 143). On June 3, 2008, the United States Attorney for the Middle District of Florida filed an unopposed motion for a stay of discovery (Dkt 146). As AUSA Gold stated:

> A surface reading of the complaint and counterclaim might suggest that the criminal investigation and the civil case do not substantially overlap. A review of

---

[1] The Florida Uniform Trade Secrets Act 688.001 et seq., requires a company to continue to be in the same line of business in order to sustain a claim. Not defunct then reinstated for the sole purpose of "pursuing litigation." See Nexia Board Minutes October 11, 2007. Exhibit 1.
[2] See United States of America vs. Real Property - Case 6:08-cv-00670-MSS-KRS Exhibit 2.
[3] Jason Klein, counsel for AQMI Strategy in this case withdrew only days before MVI filed bankruptcy and now, on behalf of Latham, Shuker and Beaudine represents MVI in the bankruptcy.

the discovery requests in the civil case, however, reflect that there is: 1) evidence being sought that is irrelevant to the civil case...

On June 10, 2008, this Court issued a stay of discovery (Dkt. 150) and two days later the Court stayed the entire case (Dkt. 151), denying all pending motions as moot and administratively closing the case. (Dkt. 152).

## II. THE BANKRUPTCY WAS FILED FOR REASONS OTHER THAN THAT THE DEBTOR WAS INSOLVENT.

On May 14, 2008, two weeks prior to filing MVI's bankrupcy, Ms. Green, MVI's bankruptcy counsel, with others, met with representatives of the office of the United States Attorney for the Middle District of Florida and the Internal Revenue Service. At that meeting, Ms. Green stated that she had been engaged by Frank L. Amodeo, as the controlling person of debtor MVI, and together they were considering filing for bankruptcy protection for MVI under Chapter 11 (see Bankruptcy Court transcript). Ms. Green further stated that the *sole* reason for filing the bankruptcy petition was to "use" the bankruptcy to continue civil litigation which, if settled or won, would provide funds for Frank Amodeo (who was then facing indictment for conspiracy, failure to remit payroll taxes, wire fraud, and obstruction of an agency investigation, and subsequently pled guilty to five counts of the 27-count indictment) to pay back the IRS. This would enable Amodeo to present this fact to the sentencing judge in the imminent criminal case against him. It was Amodeo's hope that he would be granted leniency if he repaid all the trust fund money he stole; or that he might be able to receive the same sentencing arrangement that Lou Pearlman did, whereby Mr. Pearlman was given one month off his sentence for every $1M he returned to investors.[4]

The MVI entered into an offer and compromise with the U.S. government which was

---

[4] *See* United States Motion to Dismiss [Bankruptcy] Case Based Upon its Bad Faith Filing (with accompanying exhibits) filed September 23, 2008, in the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, Case No. 6:08-bk-o4327-KSJ, collectively attached hereto as Exhibit 3.

accepted by the Bankruptcy Court on March 4, 2009, without conducting an evidentiary hearing.

The attorneys and single affiant in this case are guilty of express misrepresentations to this Court for denying on the record that Frank Amodeo had *any* authority within MVI and/or Nexia or involvement in this matter, while also swearing on the record to the Bankruptcy Court that Frank Amodeo was the person who controlled MVI all along.[5]

The MVI Attorneys should be sanctioned because they filed an amended complaint that has no factual basis. On information and belief, they also filed the complaint and amended complaint for an improper purpose. The U.S. Attorney's Office, MVI's officers and directors, the IRS Special Agent and scores of others, including Frank Amodeo himself, have filed affidavits stating the sole express purpose of filing this (and other) complaints was to acquire funds that Amodeo could use to pay restitution in an effort to get a "Lou Pearlman deal"[6]

## III. LAW AND ARGUMENT

The most fundamental ethical duties an attorney has, as an officer of the court, are the duties of candor to the court and the duty not to misuse the judicial system. These duties are well established in case law, statute and rules of procedure, as well as enumerated in the Rules of Professional Conduct. In the absence of these fundamental duties, the judicial system cannot and will not work.

### A. Rule 11

Federal Rule of Civil Procedure 11(b) provides: By presenting to the court a pleading, written motion, or other paper ... an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

---

[5] *Compare* Transcript of Proceedings before this Court on January 25, 2008 at p. 12, attached hereto as Exhibit 4, *with* Affidavit of Jodi Jaiman to the Bankruptcy Court executed September 16, 2008 and attached as Exhibit A to the filing that constitutes Exhibit 3.
*See also* Frank Amodeo's sentencing hearing testimony and his sworn statements filed in this case. (Dkt. 179)
[6] See U.S. v Amodeo, Case 6:08-cr-00176-JA-GJK, Notice of Filing Affidavits, Exhibits and Memorandum (Doc 164) p. 4.

1) *it is not being presented for any improper purpose*, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

2) the claims, defenses, and other legal contentions are warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law; and

3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed.R.Civ.P. 11(b) (2008). Rule 11 provides further that if a motion for sanctions is warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion. Fed.R.Civ.P. 11(c)(2). "The sanction may include non-monetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed.R.Civ.P. 11(c)(4).

In deciding the propriety of Rule 11 sanctions, a Court first determines whether the party's claims are objectively frivolous and then, if so, whether the signatory to the pleading should have been aware that they were frivolous-whether he would have been aware of the frivolousness if he had made a reasonable inquiry. *Worldwide Primates,* 87 F.3d at 1254; *Jones,* 49 F.3d at 695. Relevant factors into the reasonableness of the inquiry include:

- how much time was available for investigation;
- whether reliance upon representations of the client was necessary;
- whether the paper was based upon a plausible view of the law; and
- the extent to which factual development requires discovery.

*Jones,* 49 F.3d at 695. Because Rule 11 is only violated if the paper is "signed in violation of this rule," the Court's inquiry focuses only on the merits of the pleading from ***facts known or available to the attorney at the time of filing.*** *Jones,* 49 F.3d at 694-5 (*citing Souran v. Travelers Ins. Co.,* 982 F.2d 1497, 1507, 1508 (11th Cir.1993).

## B. 28 U.S.C. § 1927

28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

The word "vexatious" is not defined in the statute. In such circumstances, courts typically read statutory terms to convey their ordinary meaning. *See Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Servs.*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (relying on definition of "prevailing party" in Black's Law Dictionary).

Black's Law Dictionary defines the term "vexatious" to mean "without reasonable or probable cause or excuse; harassing; annoying." Black's Law Dictionary 1559 (7th ed.1999). It further defines "vexatious suit" to mean a "lawsuit instituted maliciously and without good cause." *Id.* Standard English-language dictionaries give the term similar meaning. *See, e.g.,* Webster's Third New International Dictionary 2548 (3d ed.1961) (defining "vexatious" to mean "lacking justification and intended to harass"); 19 Oxford English Dictionary 596 (2d ed.1989) (defining "vexatious" for legal purposes as follows: "Instituted without sufficient grounds for the purpose of causing trouble or annoyance to the defendant").

There is little case law in the United States Court of Appeals for the Eleventh Circuit articulating the standard applicable to an award of attorneys' fees under Section 1927. *Peterson v. BMI Refractories*, 124 F.3d 1386, 1395 (11th Cir.1997). Moreover, decisions from other circuits are not in agreement on the governing principles. Some circuits have held that subjective bad faith is required for an award under Section 1927. *S. Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir.1986); *Hackman v. Valley Fair*, 932 F.2d 239, 242 (3d Cir.1991). Other circuits have

held that it is not. See *Wilson-Simmons v. Lake County Sheriff's Dep't*, 207 F.3d 818, 824 (6th Cir.2000); *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1342 (10th Cir.1998).

While the Eleventh Circuit has not specifically required a finding of subjective bad faith, it has stated that Section 1927 allows district courts to **assess attorneys' fees against counsel and law firms** who willfully abuse the judicial process by "conduct *tantamount* to bad faith." *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir.1991) (emphasis added); *Roadway Express Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). Additionally, the Eleventh Circuit has agreed with the Ninth Circuit that: "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir.1998) *(quoting Primus Automotive Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir.1997)). The Eleventh Circuit has also warned: "When it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest." *Avirgan*, 932 F.2d at 1582.

The purpose of Section 1927 is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs bear them. *O'Rear v. American Family Life Assurance Co. of Columbus, Inc.*, 144 F.R.D. 410, 413 (M.D.Fla.1992). Section 1927 "does not distinguish between winners and losers, or between plaintiffs and defendants.... It is concerned only with limiting the abuse of court processes." *Roadway Express*, 447 U.S. at 762.

## C. The Bad Faith Standard

Courts in the Eleventh Circuit apply a standard for vexatious litigation that is tied to the standard for "bad faith"- *i.e.*, the willful abuse of the judicial process by conduct tantamount to bad faith. Therefore, the law establishing the "bad faith" standard provides insight.

The American Rule prohibits fee shifting as a general rule. *See Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 257, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). As an exception to the American Rule, however, the district court may award attorneys' fees when a losing party has "acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Alyeska Pipeline*, 421 U.S. at 258-59; *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir.1998); *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir.1995); *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1543 (11th Cir.1985); *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1320 (11th Cir.2002). A federal court may exercise its *inherent power* to sanction bad faith misconduct even if that conduct could be sanctioned under a statute or procedural rule. *See Chambers*, 501 U.S. at 49-51. However, when bad faith conduct in the course of litigation could be adequately sanctioned under the rules, the court ordinarily should rely on the rules and not on its inherent power. *Id.*

The bad faith exception to the American Rule is not limited to conduct at the moment of filing, but also incorporates bad faith acts preceding and during litigation. *See* 775 F.2d at 1543. A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. *Barnes*, 158 F.3d at 1214. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order. *Barnes*, 158 F.3d at 1214. In assessing whether an award is proper under the bad faith standard, "the inquiry will focus primarily on the conduct and motive of a party, rather than on the validity of the case." *See Rothenberg v. Security Management Co., Inc.*, 736 F.2d 1470, 1472 (11th Cir.1984).

The invocation of the court's inherent power to sanction requires a finding of bad faith after the party is afforded a due process opportunity to be heard. *See Chambers*, 501 U.S. at 49;

*In re Mroz,* 65 F.3d 1567, 1575-76 (11th Cir.1995). Inherent powers must be exercised with restraint and discretion. *Barnes,* 158 F.3d at 1214. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process. *Chambers,* 501 U.S. at 44-45; *see also Amsted Indus. Inc. v. Buckeye Steel Castings Co.,* 23 F.3d 374, 377-78 (Fed.Cir.1994) (recognizing that under certain circumstances a court can award expert witness fees as a sanction pursuant to its inherent power).

## SANCTIONS ARE NECESSARY AND APPROPRIATE IN THIS CASE

The court should and must impose sanctions in this case because the MVI Attorneys *knowingly* filed a pleading full of false allegations that have no reasonable evidentiary basis. Incredibly, they filed such pleading not once, but twice in the same adversary proceeding. They further compounded that breach by using said pleading to launch a false and vicious attack on me as an accomplished and respected member of the Delaware Bar. Even if the MVI Attorneys could make a meritorious claims against my fellow defendants (which they cannot), they were fully aware (or should have been) that I have neither worked for the Plaintiff(s) nor had anything to do with any patented or trademarked property or material rightfully belonging to them. Indeed, the very attorneys who propounded this case by seeking an unmerited stay as a result of MVI filing bankruptcy are very familiar with Rule 11 sanctions. The Latham firm sought and obtained an award of sanctions *In re Evergreen Security, Ltd.,* No. 6:01-BK-00533 ABB, 2008 WL 4716777 (Bankr. M.D. Fla. Feb. 8, 2008). The Court in *Evergreen* described the offending pleading in that case with language that applies with equal validity to both the complaint and amended complaint in this case:

> ***The pleading is a conglomeration of gossip, intentional misrepresentations, and untruths. It had no evidentiary or legal support at the time it was filed, or at any time.*** Not a single claim had factual basis or legal merit. (emphasis added)

Id. at *2.

At the same time the MVI Attorneys filed the original complaint against Palaxar et al, they filed four lawsuits against twelve parties claiming Amodeo's criminal tax scheme was the product of bad professional advice. In this regard, their actions are similar to actions found sanctionable in *Cooper v. Litton Loan Servicing*, 253 B.R. 295 (Bankr. N.D. Fla. 2000). In *Cooper*, the Court imposed sanctions because the lawyer(s) pursued "a scorched earth approach, suing anyone remotely connected to the case and threatening to keep piling on allegations if they even attempted to respond." This is consistent with Amodeo's threats in his February 28, 2006 company-wide telephone conference call during which he threaten to "bury any one who didn't follow his orders under such a flurry of paper [litigation] that they would never see daylight."[7]

## THE FALSE ALLEGATIONS IN THE COMPLAINT

The amended complaint alleges that it has personal jurisdiction over me because I was an invited guest to MVI's offices once in 2006, at Frank Amodeo's invitation, and as a result became part of a conspiracy. The complaint, like the amended complaint was signed by MVI attorneys who had actual knowledge at the time the complaint was filed, that the allegations were false. When documents were provided by Palaxar, and co-defendants in two document productions of over 400 documents as well as court filings in other related cases that evidenced the knowingly false allegations in the amended complaint, MVI attorneys, using laundered money remitted to the law firms by another Amodeo company, AQMI Strategy (on behalf of MVI - an unrelated company - according to MVI's Attorneys) responded by submitting Interrogatory requests that had nothing to discovering relevant evidence related to this instant case, but instead were propounded solely for the purpose of helping Amodeo determine what information defendants

---

[7] See, Amodeo Sentencing Transcript, Day 1, 5/13/09, pg 34 -80. Exhibit 5.

may have voluntarily provided to AUSA Gold during the course of his federal grand jury investigation. Most importantly, such discovery requests had absolutely nothing to do with me.

When AUSA Gold learned in November 2007 that Amodeo, et al had absconded with $5.5M in funds that rightfully belonged to the IRS and funneled that money to various law firms across the country, including Balch & Bingham, Broad and Cassell, and Bates Mokwa, the U.S. Attorney's Office filed an in rem civil forfeiture and seizure action on April 25, 2008 and recovered funds from the trust fund accounts of said law firms.

AUSA Gold was preparing to file a Motion to Intervene and Stay Discovery in the instant case at the same time MVI Attorneys participated in delaying this Court's proceedings while they prepared for MVI's Chapter 11 Reorganization Bankruptcy in order to "preserve the litigation to assist Amodeo at sentencing." Nearly a year and half later, this case was permitted to move forward.

## CONCLUSION

Virtually all of the allegations in the amended complaint are false and have no reasonable evidentiary basis; quite the contrary, they are directly contradicted in various filings by MVI Attorneys in other court actions. Sworn affidavits submitted by Jodi Jaiman, Jay Stollenwerk, Steve McCabe and Amodeo all attest to the fact that the MVI Attorneys knew that the allegations were false at the time they filed the complaint and most certainly at the time they filed the amended complaint. The nature of the amended complaint suggests that the MVI Attorneys conducted no factual investigation whatsoever before filing the amended complaint and in fact, filed contradictory motions in other cases. During the past 27 months, the MVI Attorneys did not even read, much less verify the accuracy of their allegations, their exhibits or their transcripts at various hearings. Moreover, the circumstances of Amodeo's criminal indictment and plea

agreement were not only well known to MVI Attorneys, they assisted Amodeo's criminal attorney with re-drafting Amodeo's plea agreement – the same plea agreement in which Amodeo took responsibility and pled guilty to taking $180M in trust fund taxes while contemporaneously sanctioning the publication of press releases and news articles that alleged the Palaxar defendant(s) and/or founders "were responsible for MVI's 'missing' $220M - of payroll tax money."

The MVI Attorneys were given multiple opportunities to dismiss this action when the falsity, and absurdity of their allegations began to appear in various court records, yet they have steadfastly refused to do so.[8]

## NOTICE REGARDING SERVICE AND FILING

This motion seeks sanctions under Fed. R. Civ. P. 11(b), 28 U.S.C. § 1927, Local Rule 4.18, and this Court's inherent authority. Fed. R. Civ. P. 11(b) provides a 21 day safe harbor that allows the MVI Attorneys to avoid sanctions under that rule if they withdraw the paper, claims, allegations, and contentions that violate the rule. This motion was sent to MVI Attorneys on December 15, 2009.

May 5, 2010                                         Respectfully submitted,

                                                    *[signature]*
                                                    Terence Chu, ***pro se***
                                                    5637 Country Hills Lane
                                                    Glen Allen, VA 23059

---

[8] For example, at the January 25, 2008 Hearing for the Preliminary Injunction, this Court cautioned MVI Attorney Estes three times to be careful in his [mis]representations to the Court, yet the MVI Attorneys have, in bad faith, persisted.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. mail this 16th day of March, 2010 to Kathleen B. Havener, Esq., The Havener Law Firm, LLC, 15511 Russell Road, Chagrin Falls, OH 44022; Frank Amodeo, FCC-Low, B3, P.O. Box 1031, Coleman, FL 33521-1031; Martin R. Raskin and Jane Serene Raskin, Raskin & Raskin, P.A., 2601 South Bayshore Drive, Suite 725, Miami, Florida 33133; Kathleen S. Davies, The Davies Law Firm, 126 E Jefferson St, Orlando, FL 32801; James Vincent Sadrianna, 10025 Chatham Oaks Court, Orlando, FL 32836; Yaniv Amar, 3475 Mystic Point Drive, TH #10, Aventura, Florida 33180; US Attorney's Office, I. Randall Gold, Suite 300, 501 W Church St, Orlando, FL 32805; John Russell Campbell, Balch & Bingham, LLP Suite 600, 1901 Sixth Ave N, Birmingham, AL 35203; Allen M. Estes, Balch & Bingham, LLP, Suite 1500, 1901 Sixth Ave N, Birmingham, AL 35203; and Elizabeth A. Green, Baker & Hostetler, LLP, 200 S Orange Ave - Ste 2300, PO Box 112, Orlando, FL 32802-0112.

Respectfully submitted,

Date: May 5, 2010

_Terence Chu_

Terence Chu, *pro se*
5637 Country Hills Lane
Glen Allen, VA 23059
804-363-2666
terencchu@yahoo.com