IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA,
ORLANDO DIVISION

|  |  |  |
|---|---|---|
| MIRABILIS VENTURES,INC, and | ) | Case No.: 6:07-CV-1788-ORL-28-GJK |
| NEXIA STRATEGY CORPORATION, | ) | |
|  | ) | |
| Plaintiffs, | ) | |
|  | ) | |
|  | ) | |
| -vs.- | ) | |
|  | ) | |
|  | ) | |
| PALAXAR GROUP, LLC; | ) | |
| PALAXAR HOLDINGS, LLC; | ) | |
| FRANK HAILSTONES; | ) | |
| EDITH CURRY a/k/a EDITH | ) | |
| BROADHEAD; AND TERENCE CHU, | ) | |
|  | ) | |
| Defendants, | ) | |
|  | ) | |
| -vs.- | ) | |
|  | ) | |
| MIRABILIS VENTURES,INC.,et al. | ) | |
|  | ) | |
| Counterclaim and | ) | |
| Third Party Defendants | ) | |

_____/

**DEFENDANTS' MOTION FOR RECONSIDERATION OF ORDER GRANTING IN
PART AND DENYING IN PART BALCH & BINGHAM'S MOTION TO SUBSTITUTE
COUNSEL AND INCORPORATED MEMORANDUM OF LAW**

After conferring with Third Party Defendant/Third Party Counterclaim Plaintiff Frank

Amodeo via letter, and all remaining parties via email, Defendants Edith Curry ("Curry") and

Frank Hailstones ("Hailstones"), Palaxar Holdings, LLC and Palaxar Group, LLC ("Palaxar")

(collectively "Defendants") respectfully move this Court to reconsider its order (Dkt. 238)

granting in part and denying in part the motion of Balch & Bingham ("Balch") to withdraw as

counsel for Mirabilis Ventures, Inc. ("MVI") and Nexia Strategy Corporation ("Nexia") (Dkt.

209). In particular, Defendants seek reconsideration of the Court's denial of Defendants' request

that it maintain jurisdiction over Balch.   As grounds for this motion, Defendants state that, should Defendants prevail in this action, they intend to move for an award of monetary sanctions against Allen Estes, Esq. ("Estes"), J. Russell Campbell, Esq. ("Campbell"), and  Balch, for their respective conduct in bringing and or maintaining this lawsuit the frivolous and baseless complaint, amended complaint and motions filed on behalf of MVI and Nexia (collectively "Plaintiffs") in this Court, despite actions in the Bankruptcy Court that triggered affirmative duties to dismiss this lawsuit at various stages of the litigation.   Defendants intend to seek sanctions pursuant to Fed. R. Civ. P. 26(g), 26(e), 37(c)(1) (A) and (C); 28 USC §1927, the Florida Rules of Professional Conduct, and the Court's inherent authority.   Defendants further intend specifically to request that the Court issue a show-cause order under Fed. R. Civ.P. 11(c)(3).[1]

## I.     BALCH'S MISCONDUCT IN THIS ACTION

This saga began, on or about October 11, 2007, when Plaintiffs—by their counsel Balch (through Estes and Campbell) together with then-co-counsel (and then-current or former MVI in-house counsel) Aaron Bates, Esq. ("Bates") and Scott Goldberg, Esq. ("Goldberg"), reinstated Nexia, a defunct corporation, for the sole purpose of allowing it (along with MVI) to pursue this litigation—although the litigation is in direct conflict with the provisions of MVI's own Articles of Incorporation, Curry's Employment Agreement, Curry's Separation Agreement, and the provisions of two Assignment Agreements.   In Defendants' view—as subsequently verified in related court filings—the underlying motives for this litigation were: (1) to seek money by invoking various Directors' and Officers' Liability insurance policies; (2) to assist Amodeo in his

---

[1] Defendants were procedurally precluded from seeking Rule 11 sanctions after the case was stayed.  After the stay, Defendants have been further precluded by circumstances within the MVI Bankruptcy case.  Finally, in order effectively to market the Palaxar product, Defendants are convinced that they must prevail—not simply be dismissed—in this action.

efforts to receive leniency at his sentencing; (3) to seek information to assist Amodeo in his then-ongoing criminal investigation and plea negotiations; and (4) to issue a series of inflammatory press releases reporting that Curry and Hailstones had been accused of "abscond[ing] with [Plaintiffs'] corporate assets" in an effort to retaliate against and discredit and harm Defendants because they were cooperating with the federal grand jury investigation.[2]

Balch's bad acts *in this case alone* include the following:

At the time that this litigation was commenced, Balch was aware that Amodeo's plea negotiations were ongoing, and that his lead criminal counsel Harrison Slaughter (together with assisting criminal counsel, Bates and MVI in-house counsel Matthew Mokwa, Esq ("Mokwa") had possession of and were then reviewing the documents of MVI and related companies. Accordingly, Estes, Campbell and Balch knew, but failed to disclose—either to this Court or to Defendants—that Balch would be unable to produce certain documents to Defendants that might incriminate Mr. Amodeo, in violation of Florida Rules of Professional Conduct 4-3.4(a), and that discovery would thus be incomplete and inevitably prejudicial to Defendants.

Balch knowingly continued to accept laundered fees to prosecute this case,[3] despite then-President of MVI Jodi Jaiman's deposition testimony (in a related case)—where she was prepared and *defended by Estes* —only twelve days after this case had been filed—that Assistant United States Attorney I. Randall Gold had informed Jaiman and other officers of MVI (including Mokwa) that further disbursement of MVI funds would amount to money laundering.

---

[2] See Balch's billing records, attached hereto as Exhibit 1, 1-A,B,and C.

[3] Indeed, in part because of these payments and others, on April 24, 2008, the United States of America issued a civil cause for forfeiture *in rem*, as part of which $253,487.45 was seized from Balch's trust account.

Balch had a duty, pursuant to Florida Rules of Professional Conduct 4-3.1, to dismiss the claims against Defendants when on January 25, 2008, during the hearing on MVI's Motion for Preliminary Injunction, Estes stated as follows:

> If Nexia's not in the antifraud business, what business is it in? Nexia is in the liquidation business. Nexia exists today to marshal its assets and liquidate them for the benefit of its creditors. Unless you've been not paying attention to the media, I believe it is well established in the public domain that at least one of the creditors of Mirabilis or Nexia or any of the other subsidiaries is most likely going to be the IRS. There are tax issues. So Mirabilis is liquidating assets which will most likely end up at least a portion of being paid to the IRS . . . . there is no patent. We're dealing with Florida Trade Secrets Law. They took a trade secret. There is no patent. Patent law, you must have a written assignment of the patent. It's not applicable here. We're dealing with the Florida trade secrets, uniform trade secrets act.[4]

Given that Estes insisted that this was a not a patent law case,[5] and because neither MVI nor Nexia was then in the anti-fraud business,[6] neither had standing to bring the claims against Defendants either under the patent law or under Florida's version of the Uniform Trade Secrets Act (F.S.A. § 688.001 ff.). Lacking basis upon which Plaintiffs could legally proceed, the claims should have been dismissed.

---

[4] Defendants disagree with Plaintiffs and maintain that this case is based in intellectual property and controlled by patent law. Defendants' position on this point, however, is irrelevant to Balch's conduct.

[5] Statements made by an attorney during oral argument are binding judicial admissions and may form the basis for deciding summary judgment. *See,* Fed.R.Civ.P. 56(c) ("The judgment shall be rendered forthwith if the pleadings depositions, answers to interrogatories, and *admissions on file,* together with the affidavits, if any, show that there is no genuine issues as to any material fact....") (emphasis added); *Crowe v. Coleman,* 113 F.3d 1536, 1542 (11th Cir.1997) (unequivocal concessions and admissions of counsel at oral argument in appellate courts can count against the party represented by counsel); *Kohler v. Inter-Tel, Inc.,* 244 F.3d 1167, 1170 n. 3 (9th Cir.2001) ( *citing United States v. Wilmer,* 799 F.2d 495, 502 (9th Cir.1986) (attorney's statement during oral argument constitutes judicial admission); McCaskill v. SCI Mgmt. Corp., 298 F.3d 677, 680 (7th Cir.2001) (verbal admission by counsel is a binding judicial admission, the same as any other formal concession made during the course of proceedings).

[6] To support a claim under the Florida Uniform Trade Secrets Act the complainant company must continue to be in the same line of business as the defendant. Certainly a defunct company that was reinstated for the sole purpose of "pursuing litigation [to assist Amodeo as he negotiates his second criminal plea agreement.]" is not a proper plaintiff. Nexia, according to MVI's current president, R. W. Cuthill, "was administratively dissolved in September, 2008." (Dkt. 199). Nexia's dissolution was information that was not disclosed to Defendants or to this Court - nor to the Florida Department of State, Division of Corporations.

Balch did nothing to correct the record in this case when, on May 14, 2008, two weeks prior to MVI's filing for Chapter 11 bankruptcy protection, Estes, together with MVI's bankruptcy counsel, Elizabeth Green met with AUSA for the Middle District of Florida and the Internal Revenue Service.  Ms. Green stated she had been engaged by Frank L. Amodeo, ***as the controlling person of debtor MVI*** (and she had been retained by AQMI— not MVI), and was considering filing bankruptcy on behalf of MVI.  This information directly contradicted Estes' statements to this Court at the January 25, 2008 hearing that, "Mr. Amodeo had no authority to assign away any rights of Mirabilis or Nexia."  and "at no point in time did Mr. Amodeo own more than about a half a percent of Mirabilis." *See Transcript of Proceedings of January 25, 2008*, p. 11, lines 9-10; p. 13, lines 3-4.

Balch knew that the litigation against Defendants was being pursued for an improper purpose unrelated to the position that Plaintiffs might actually recover in this case, yet it did nothing to advise this Court or Defendants, and failed to dismiss the case or disclose the information to the tribunal or to Defendants, in violation of Florida Rules of Professional Conduct 4-3.1 and 4-3.3(a).  At the May 14, 2008 meeting, Ms. Green further stated that the ***sole*** reason for filing the bankruptcy petition was to "use" the bankruptcy to continue civil litigation which, if settled or won, would provide funds for Amodeo (who was then facing criminal indictment for conspiracy, failure to remit payroll taxes, wire fraud, and obstruction of an agency investigation, and who subsequently pled guilty to five counts of the 27-count indictment) to repay the IRS the approximately $220M he admitted to stealing.  Amodeo hoped for leniency if he repaid the IRS, or at the very least, that he would get the same "deal" as Lou Pearlman had

received (another Green client), whereby Mr. Pearlman was given one month off his sentence for every $1M he returned to investors.[7]

Balch, as MVI's counsel, propounded upon Defendants in this case discovery seeking information not for the case against Defendants but to aid Mr. Amodeo in his criminal proceedings, thereby forcing AUSA to intervene.  On June 3, 2008, the United States Attorney for the Middle District of Florida filed an unopposed motion for a stay of discovery (Dkt. 146) stating:

> A surface reading of the complaint and counterclaim might suggest that the criminal investigation and the civil case do not substantially overlap.  A review of the discovery requests in the civil case, however, reflect that there is: **1) *evidence being sought that is irrelevant to the civil case,* 2) *a significant overlap between the allegations in the criminal investigation and the civil case,* and 3)** substantial prejudice that the United States would suffer if the requested relief is not granted. The potential for discovery in the civil case will serve to undermine the limited discovery permitted in the criminal investigation, resulting in unfair prejudice to the United States . . . . (emphasis added).

Moreover, Balch did not disclose its appointment as Special Counsel to MVI in the Bankruptcy either to this Court or Defendants.  Furthermore, Balch denied representing MVI in *this and other* cases to the Bankruptcy Court, although it had never withdrawn from this proceeding as counsel to MVI.  On September 8, 2008, in the U.S. Bankruptcy Court for the Middle District of Florida, in Case No. 6:08-bk-04327-KSJ, Mr. Campbell, on behalf of Balch, filed a verified statement, under penalty of perjury, pursuant to Fed. R. Bk. P. Rule 2014, as part of Balch's request to be Special Counsel to Debtor MVI (*nunc pro tunc* to May 27, 2008), stating:

---

[7] *See* United States Motion to Dismiss [Bankruptcy] Case Based Upon its Bad Faith Filing (with accompanying exhibits) filed September 23, 2008, in the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, Case No. 6:08-bk-04327-KSJ, collectively attached hereto as Exhibit 2; and Amodeo's affidavit (Dkt 179 at p. 14)

> *. . . . **Balch and its individual attorneys do not represent Mirabilis Ventures, Inc**. ("Debtor")…any creditors or other parties-in-interest in this case, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the Unites States trustee. [] The factual statements set forth in this verified statement have been made based on (1) a personal review by me and my staff of the list of creditors of Mirabilis, (2) a computer search of Balch's client list, an (3) a memorandum circulated to all of Balch's attorneys requesting information as to whether a conflict would exist if this representation were undertaken. These efforts did not reveal any conflicts.*

As of the date the certified statement was executed, and back to its effective date, May 27, 2008, Balch was and indeed, until April 29, 2010, when the Court issued the Order of which Defendants now seek reconsideration, Balch remained counsel of record for MVI in this case.[8] The Bankruptcy Code requires that a professional must be disinterested in order to be retained and must thereafter ***remain*** disinterested. *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L. No. 109-8, 119 Stat. 23. Balch's appointment as Special Counsel to MVI in the bankruptcy was a flagrant conflict of interest.

Furthermore, although Nexia, according to MVI's current president, R. W. Cuthill, "was administratively dissolved in September, 2008" (Dkt. 199), Balch failed to disclose Nexia's dissolution to Defendants or to this Court, a fact that undoubtedly disqualified Nexia from continuing to pursue its claim against the Defendants pursuant to Florida's Trade Secrets Act.

Despite the Federal Rules of Civil Procedure, Florida and Alabama Bar Rules requirements, Balch remained silent following the September 16, 2008 filing of a Motion to Dismiss MVI's Bankruptcy based on its Bad Faith Filing by the AUSA, which included an

---

[8] Bankruptcy Rule 2014 provides in pertinent part: "an order approving employment ... shall be made only on application... stating the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services rendered, any proposed arrangement for compensation, ***and to the best of the applicant's knowledge, all of the person's connections with the debtor,*** creditors, or any other party in interest, their respective attorneys and accountants. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants."

affidavit from Jaiman stating that she knew "through conversations with Amodeo, . . . Green, Bates, and Mokwa" the following:

> Although [her prior] affidavits and documents may have stated otherwise...Amodeo was the person who controlled [Mirabilis and Nexia]. Amodeo knew he was the target of a federal grand jury investigation and he thought that if he paid the trust fund taxes to the IRS, a sentencing judge would be lenient with him. When seizure warrants were served on law firms which handled legal matters for [Amodeo-controlled companies] there was a concern by Amodeo about how to save the litigation cases to make sure the IRS received the funds referenced above for his benefit in the potential criminal case.

Thus, although ***Jaiman recanted the affidavit which served as the basis of this case***,[9] Balch did not disclose Jaiman's new and contradictory testimony to this Court or to the Defendants, and has neglected to do so to this day. Balch has known literally for years that the claims against Defendants in this case are baseless, and yet (until the Motion as to which Defendants now seek reconsideration) it has not withdrawn from representation of MVI and Nexia. Rather, ***after*** Jaiman's recanted testimony, Balch spent three months engaging local counsel in Henrico County, Virginia to obtain the files from Defendant Curry's 2000 divorce and custody case, billing an additional 40-plus hours to the bankrupt estate. (*See* Exhibit 3). Those files and that information was not relevant to the bankruptcy and was sought solely for the purpose of further intimidating Defendant Curry from opposing Plaintiffs' claims in this case.

Although still counsel of record for MVI and Nexia, Balch failed to appear at the December 2, 2009 status conference at which this Court lifted the stay. More importantly, Balch failed to notify the Court and the Defendants of the many developments in which Balch had been directly involved during the stay which negated the validity of Plaintiffs' claims or compromised Balch's ability to go forward.

---

[9] In ***this*** case, Jaiman's affidavit stated that Amodeo had ***no*** authority within MVI and/or Nexia or involvement this matter; testimony expressly contradicted by her later affidavits. (*See* Exhibit 4).

## II.   EXAMPLES OF BALCH'S BAD ACTS ON BEHALF OF AMODEO AND MVI IN OTHER CASES

Balch & Bingham's relationship with MVI, Nexia, and Amodeo—and its pattern of misconduct on those clients' behalf—are not new to this case.

On or about January 18, 2006, Amodeo purchased property in Huntsville, Alabama for approximately $1,850,000.  To accomplish the transaction, Amodeo transferred $1,754,685.57 to Balch's client trust account as Balch was Amodeo's closing agent for the property.[10]  Fourteen months later, on March 28, 2007, while Balch represented **both** Amodeo and MVI in *Chaviers, et. al. v. Mirabilis Ventures, Inc. et al.*, Case No.: 04:04-cv-00442-CLS (N.D. Ala.) it knowingly filed a motion to dismiss supported by perjured affidavit (notarized by MVI's in-house counsel Goldberg) alleging that "Alabama lacked personal jurisdiction over Amodeo."  In his false affidavit, Amodeo swore: "I do not now and have never owned or leased property in Alabama;" and "I do not have any current business dealings with Alabama.  I have had no business dealings involving Alabama. . . ."  *See* Exhibit 6 (submitted herewith).  Balch did not disclose Amodeo's holdings in Alabama for which **Balch had served as closing agent just 14 months before.**

On or about December 27, 2007, Balch, on behalf of AQMI (owned by Amodeo), Titanium, and Amodeo personally ("MVI's Primary Secured Creditors,")) made a formal demand of Curry and Hailstones (and others) seeking monetary damages in excess of $125,000,000.00. (*See* Exhibit 7).  Balch included its draft complaint, as well as MVI's insurance carriers' name, contact information and policy number and instructed the recipients to contact the carrier.  (*See id.*).  On March 5, 2008, Bailey Cavilieri, counsel for Arch Insurance Group, responded to MVI (and others), denying all coverage under several exclusions: (1) the 2007 insurance renewal

---

[10] See *US v. Real Property*, Case No. 6:08-CR-176-ORL-28GJG (M.D. Fla. (Exhibit 5 (McCabe Affidavit) a) p. 33 ¶¶ 49-50).

application failed to disclose the AUSA's issuance of target letters resulting from the federal grand jury investigation, and (2) "throughout the relevant period, Frank Amodeo was the sole Class A shareholder of MVI and had exclusive control over Mirabilis and Nexia."  (Exhibit 8 attached hereto).  Notably, to date, neither Balch, MVI nor Amodeo have responded to or challenged the Bailey letter.

## III.   <u>LAW AND ARGUMENT</u>

The duties of attorneys as officers of the Court are well established in the common law, statutes and rules of procedure, and clearly set forth in the applicable Rules of Professional Conduct.  Lawyers ***must*** act with honesty, integrity, and candor, correct any statement they subsequently discover to be wrong, and ensure that their clients are aware of their mutual ongoing duty of full and frank disclosure.  Lawyers ***must not*** mislead the Court, abuse the Court's processes, or misuse the judicial system.  In the absence of these fundamental duties, the judicial system cannot and will not work.  Tolerance of abuses can corrupt the judicial process.  Balch is demonstrably guilty of ***at least*** these transgressions.

This Court certainly retains jurisdiction to impose sanctions on an attorney even after an underlying proceeding is no longer pending.  *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395, 110 S. Ct. 2447, 2455 (1990).

> Like the imposition of costs, attorney's fees, and contempt sanctions, the imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate. Such a determination may be made after the principal suit has been terminated.

*Id.*; *see also Miller v. Morris Communications Co.*, LLC, 234 Fed. Appx. 881 (11th Cir. 2007) (district court retained jurisdiction to consider sanctions after entry of summary judgment); *Cofield v. Alabama Public Service Com'n*, 936 F.2d 512 (11th Cir.1991) (district court retained

jurisdiction to issue order to show cause why plaintiff should not be sanctioned for his overly litigious behavior more than ten days after grant of summary judgment).

## A.  **Federal Rule of Civil Procedure 11**

Federal Rule of Civil Procedure 11(b) provides:

> By presenting to the court a pleading, written motion, or other paper ... an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Rule 11 further provides that:

> The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed.R.Civ.P. 11(c)(4).

In deciding the propriety of Rule 11 sanctions, a Court first determines whether the party's claims are objectively frivolous and then, if so, whether the signer of the pleading should have been aware that they were frivolous—that is, whether a reasonable inquiry would have revealed that a particular claim was frivolous.  *Worldwide Primates, Inc. v. McGreal,* 87 F.3d

1252, 1254 (11th Cir. 1996); *Jones v. Int'l Riding Helmets, Ltd.,* 49 F.3d 692, 695 (11th Cir.

1995).  Factors relevant to the reasonableness of the inquiry include:

> • how much time was available for investigation;
>
> • whether reliance upon representations of the client was necessary;
>
> • whether the paper was based upon a plausible view of the law; and
>
> • the extent to which factual development requires discovery.

*Jones,* 49 F.3d at 695.  Because Rule 11 is violated only if the paper is "signed in violation of

this rule," the Court's inquiry focuses only on the merits of the pleading from ***facts known or***

***available to the attorney at the time of filing.***  *Jones,* 49 F.3d at 694-95 (*citing Souran v.*

*Travelers Ins. Co.,* 982 F.2d 1497, 1507, 1508 (11th Cir.1993)).

On its own, the court may order an attorney, law firm, or party to show cause why

conduct specifically described in the order has not violated Rule 11(b) and may impose monetary

sanctions provided it has issued a show-cause order against the attorney or party to be

sanctioned. Fed.R.Civ.P. 11(c)(3).   This is a case in which the Court should retain jurisdiction

and sanction bad faith conduct.

## B.  Federal Rules of Civil Procedure 26(b), 26(e), and 26(g)[11]

Federal Rule of Civil Procedure 26(b) (Discovery Scope and Limits) provides:

> (1) Unless otherwise limited by court order, the scope of discovery
> is as follows: Parties may obtain discovery regarding any non-
> privileged matter that is relevant to any party's claim or defense —
> including the existence, description, nature, custody, condition, and
> location of any documents or other tangible things and the identity
> and location of persons who know of any discoverable matter. For
> good cause, the court may order discovery of any matter ***relevant***
> ***to the subject matter involved in the action***.  Relevant information

---

11  Fed R. Civ. P. 26 - Sanction for Improper Certification. "If a certification violates this rule without substantial
justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on
whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses,
including attorney's fees, caused by the violation."

need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

(Emphasis added.)  In turn, Rule 26(b)(2)(C) provides:

(C) *When Required*. On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) **the party seeking discovery has had ample opportunity to obtain the information by discovery in the action;** or

(iii) **the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.**

(Emphasis added.)  This is a case in which Plaintiffs and their counsel have access to every document, every piece of information, and the entire history of what occurred (other than the Defendants' own testimony), and yet Plaintiffs repeatedly have knowingly failed to disclose to this Court or to Defendants documents and information that they and their counsel knew were fundamental to the defense—*e.g.,* the documents assigning the intellectual property in question to the Defendants—and they have sought far more from Defendants than ever Plaintiffs needed to proceed, thus placing unnecessary burdens on and requiring Defendants to expend ever-larger amounts in attorneys fees, when all the while the Plaintiffs held in their control all the information they sought.

Federal Rule of Civil Procedure 26(e) (Supplementation of Disclosures and Responses) provides:

A party who has made a disclosure under Rule 26(a) — or who has responded to an interrogatory, request for production, or request for admission — ***must supplement or correct its disclosure or response:***

***in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or***

***(B) as ordered by the court.***

(Emphasis added.)   Again, Plaintiffs have failed to supplement their disclosures and more importantly, to ***correct*** them, placing Defendants in the untenable position of having continually to disprove statements submitted by Plaintiffs when Plaintiffs (and their counsel) knew the statements were blatantly false.

Federal Rule of Civil Procedure 26(g)  (Signing Disclosures and Discovery Requests, Responses, and Objections) provides:

Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name — or by the party personally, if unrepresented — and must state the signer's address, e-mail address, and telephone number. By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:

(A) with respect to a disclosure, ***it is complete and correct*** as of the time it is made; and

(B) with respect to a discovery request, response, or objection, it is:

(i) consistent with these rules and warranted by existing law or by a ***nonfrivolous*** argument for extending, modifying, or reversing existing law, or for establishing new law;

(ii) ***not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation***; and

> (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

(Emphasis added.)   Plaintiffs' counsel has breached every one of these rules by failing to withdraw or correct testimony Balch knew was false.  Defendants' respectfully urge the Court to retain jurisdiction over Balch for purposes of issuing sanctions against it as appropriate.

**C.      28 U.S.C. § 1927.**

28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy ***personally*** the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

The word "vexatious" is not defined in the statute.  In such circumstances, courts typically read statutory terms to convey their ordinary meaning. *See, e.g., Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Servs.,* 532 U.S. 598, 121 S.Ct. 1835 (2001) (relying on definition of "prevailing party" in Black's Law Dictionary ("Black's").

Black's defines the term "vexatious" to mean "without reasonable or probable cause or excuse; harassing; annoying."  *See* Black's at p. 1559 (7th ed. 1999).  Black's further defines "vexatious suit" to mean a "lawsuit instituted maliciously and without good cause." *Id.* Standard English language dictionaries give the term similar meaning. *See, e.g.,* Webster's Third New International Dictionary 2548 (3d ed.1961) (defining "vexatious" to mean "lacking justification and intended to harass"); 19 Oxford English Dictionary 596 (2d ed.1989) (defining "vexatious" for legal purposes as: "instituted without sufficient grounds for the purpose of causing trouble or annoyance to the defendant.")

There is little case law in the United States Court of Appeals for the Eleventh Circuit

articulating the standard applicable to an award of attorneys' fees under Section 1927.  *See Peterson v. BMI Refractories,* 124 F.3d 1386, 1395 (11th Cir.1997).  Moreover, decisions from other Circuits are not in agreement on the governing principles.  Some Circuits have held that subjective bad faith is required for an award under Section 1927.  *See, e.g., Oliveri v. Thompson,* 803 F.2d 1265, 1273 (2d Cir. 1986); *Hackman v. Valley Fair,* 932 F.2d 239, 242 (3d Cir. 1991).  Others have not required that a violation rise to the level of outright bad faith to be sanctioned.  *See Wilson-Simmons v. Lake County Sheriff's Dep't,* 207 F.3d 818, 824 (6th Cir. 2000); *Miera v. Dairyland Ins. Co.,* 143 F.3d 1337, 1342 (10th Cir. 1998).

While the Eleventh Circuit has not specifically required a finding of subjective bad faith, it has stated that Section 1927 allows district courts to ***assess attorneys' fees against counsel and law firms*** who willfully abuse the judicial process by "conduct ***tantamount*** to bad faith." *Avirgan v. Hull,* 932 F.2d 1572, 1582 (11th Cir.1991) (emphasis added); *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).  Moreover, the Eleventh Circuit has agreed with the Ninth Circuit that: "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument." *Barnes v. Dalton,* 158 F.3d 1212, 1214 (11th Cir.1998) *(quoting Primus Automotive Fin. Servs., Inc. v. Batarse,* 115 F.3d 644, 649 (9th Cir.1997)).   The Eleventh Circuit has also cautioned that: "When it becomes apparent that discoverable evidence will not bear out the claim, ***the litigant and his attorney have a duty to discontinue their quest.***"  *Avirgan,* 932 F.2d at 1582 (emphasis added).  It is perhaps this duty that Balch has "more honor'd in the breach than the observance."  Shakespeare, *Hamlet, Act 1,* scene 4, 7–16.  From the beginning of this case, Balch and its clients have known that Plaintiffs had no more stolen the IP in question than Frank Amodeo had created it.

The purpose of Section 1927 is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs bear them.  *O'Rear v. American Family Life Assurance Co. of Columbus, Inc.,* 144 F.R.D. 410, 413 (M.D.Fla.1992).  Section 1927 "does not distinguish between winners and losers, or between plaintiffs and defendants.... It is concerned only with limiting the abuse of court processes." *Roadway Express,* 447 U.S. at 762.  Defendants respectfully urge this court to retain jurisdiction over Balch such that, when and if Defendants should prevail, the Court will exercise its power over Balch to impose sanctions upon the firm and upon Estes and Campbell so as to deter their ever participating in such a bald abuse of process in future as Defendants maintain that this suit has exemplified.

**D**.   **The Bad Faith Standard.**

Courts in the Eleventh Circuit apply a standard for vexatious litigation that is at least tied to the standard for "bad faith"—*i.e.,* the willful abuse of the judicial process by conduct tantamount to bad faith.  Thus, the law establishing the "bad faith" standard provides insight.

The American Rule generally prohibits fee shifting. *See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 257, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).  As an exception to the American Rule, however, a district court may award attorneys' fees when a losing party has "acted in bad faith, vexatiously, wantonly or for oppressive reasons."  *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 44-46 (1991); *Alyeska Pipeline,* 421 U.S. at 258-59; *Thomas v. Tenneco Packaging Co.,* 293 F.3d 1306, 1320 (11th Cir.2002); *Barnes v. Dalton,* 158 F.3d 1212, 1214 (11th Cir.1998); *In re Mroz,* 65 F.3d 1567, 1575 (11th Cir. 1995); *Kreager v. Solomon & Flanagan, P.A.,* 775 F.2d 1541, 1543 (11th Cir.1985).  A federal court may exercise its inherent power to sanction bad faith misconduct even if that conduct could be sanctioned under a statute or procedural rule. *See Chambers,* 501 U.S. at 49-51.

The bad faith exception to the American Rule is not limited to conduct at the moment of filing, but also incorporates bad faith acts preceding and during litigation. *See Kreager*, 775 F.2d at 1543. A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. *Barnes*, 158 F.3d at 1214. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order. *Id.*, 158 F.3d at 1214. In assessing whether an award is proper under the bad faith standard, "the inquiry will focus primarily on the conduct and motive of a party, rather than on the validity of the case." *See Rothenberg v. Security Management Co., Inc.*, 736 F.2d 1470, 1472 (11th Cir.1984).

The invocation of the court's inherent power to sanction requires a finding of bad faith after the party is afforded a due process opportunity to be heard. *See Chambers*, 501 U.S. at 49; *In re Mroz*, 65 F.3d at 1575-76. Inherent powers must be exercised with restraint and discretion. *Barnes*, 158 F.3d at 1214. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct that abuses the judicial process. *Chambers*, 501 U.S. at 44-45; *see also Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 377-78 (Fed.Cir.1994) (recognizing that under certain circumstances a court can award expert witness fees as a sanction pursuant to its inherent power).

## IV.   SANCTIONS MAY WELL BE APPROPRIATE IN THIS CASE.

Defendants maintain MVI and the attorneys are subject to sanctions because they knowingly signed and filed the complaint, the amended complaint, motions and discovery requests for improper purposes, and further, because the case has no factual basis and this information was ***factually known and available to the attorneys at the time of filing.*** *Jones,* 49 F.3d at 694-95 (*citing Souran,* 982 F.2d at 1507, 1508).

The U.S. Attorney's Office, MVI's officers, directors, and employees, IRS Special Agents and numerous others, including Frank Amodeo himself, have filed affidavits stating the sole purpose of this (and other) complaints was for the express purpose of acquiring funds that Amodeo could use for restitution in an effort to obtain leniency at sentencing—or at least the "Lou Pearlman deal"[12]

Moreover, when MVI attorneys became aware of the perjured testimony their of sole affiant, as evidenced by Ms. Jaiman's affidavit submitted to the Bankruptcy court on September 23, 2008, Balch had a duty under Fed. R. Civ P. 37(c)(1) to disclose Ms. Jaiman's perjury to Defendants and the Court.  They failed to do so and have caused the litigation to be prolonged yet another year and eight months.

## V.     THE SEVERE HARM TO THE DEFENDANTS.

The severe and actual harm to the Defendants caused by Plaintiffs and their attorney's continuous bad faith and sanctionable conduct includes devastating personal, professional and financial hardships.  Attorneys' fees, travel and other costs associated with defending this case now exceed a million dollars.  Despite subjecting the Defendants to this 33-month ordeal and costs of this lawsuit, Plaintiffs have yet to produce a single item of credible evidence to support the fundamental element of their case—their ownership of the intellectual property at issue. Indeed, subjecting the Defendants to the humiliation and expense of this lawsuit may very well have been the primary goal of the Plaintiffs; it is consistent with statements that Frank Amodeo made to all employees of Mirabilis in February 2006 when he threatened to "destroy" and "bury under a mound of paper" anyone who failed to do as Amodeo directed.  Defendants cooperated with the investigation of United States Attorney, contrary to the wishes of Amodeo.  Using the

---

[12] See *US v Amodeo*, Case 6:08-cr-00176-JA-GJK, Notice of Filing Affidavits, Exhibits and Memorandum (Doc 164) p. 4.

vehicles of MVI, Nexia, and their attorneys, Amodeo has succeeded in punishing Defendants and their families.

Every day that Defendants are prevented from obtaining a ruling in this case is yet another day that Ms. Curry and Mr. Hailstones are prevented from rehabilitating their good names, finding suitable employment, marketing the intellectual property at issue, and making money sufficient to support themselves and their families.

## CONCLUSION

Virtually all of the allegations in the Plaintiffs' amended complaint are false and have no reasonable evidentiary basis. Quite the contrary, they are contradicted by various filings by MVI attorneys as well as by the US Attorney's Office in this and other court actions. Sworn affidavits submitted by MVI officers, directors, and employees, Jodi Jaiman, IRS Special Agent Steve McCabe, and twice-convicted felon Frank Amodeo all attest that MVI attorneys knew that the allegations were false at the time they filed the complaint and most certainly at the time they filed the amended complaint. This well-funded (with laundered funds), thinly-veiled effort to abuse the judicial system in an orchestrated endeavor to discredit and humiliate these Defendants should not go unpunished. Defendants respectfully urge the Court to retain jurisdiction over Balch until a final judgment has been reached.

Respectfully submitted,

/s/ Kathleen B. Havener_____
Kathleen B. Havener (0068906)
THE HAVENER LAW FIRM, LLC
15511 Russell Road
Chagrin Falls, OH 44022
Tel: 440-893-0188
Dir: 216-288-6009
Fax: 440-893-9326
kbhavener@havenerlaw.com

MARTIN R. RASKIN
Florida Bar No. 315206
JANE SERENE RASKIN
Florida Bar No. 848689
RASKIN & RASKIN, P.A.
866 South Dixie Highway
Coral Gables, FL 33146
Telephone: (305) 444-3400
Facsimile: (305) 445-0266
mraskin@raskinlaw.com
Attorneys for Defendant Curry,
Palaxar Group, LLC and Palaxar Holdings, LLC

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on May 10, 2010, I electronically filed the foregoing Motion for Reconsideration of Order Granting in Part and Denying in Part the Motion of Balch & Bingham to Withdraw as Counsel for Mirabilis Ventures, Inc. with the Clerk of Court using the CM/ECF system, and have sent a notice of electric filing to the pro se parties.

Terence Chu (via email)

Frank L. Amodeo B-3 (via Federal Express)
48883-019
Federal Correctional Complex – Low
P.O. Box 1031
Coleman, FL 33521


<u>/s/ Kathleen B. Havener</u>
KATHLEEN B. HAVENER