# BAILEY CAVALIERI LLC
### ATTORNEYS AT LAW

One Columbus   10 West Broad Street, Suite 2100   Columbus, Ohio 43215-3422
telephone 614.221.3155   facsimile 614.221.0479
www.baileycavalieri.com

direct dial: 614.229.3213
e-mail: Dan.Bailey@BaileyCavalieri.com

March 5, 2008

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Attached Distribution List

    Re:   Insurer:   Arch Insurance Group, Inc.
            Insured:   Mirabilis Ventures, Inc.
            Policy:   PCD0019469-00
            Claimants:   AQMI Strategy Corp. et al.
            Claim No:   34127

Dear Sirs and Madams:

      As you know, this firm represents Arch Insurance Group, Inc. ("Arch") in connection with the above-referenced matter. By letter dated January 24, 2008, Arch acknowledged receipt of demand letters purportedly made against you in your capacity as former directors and officers of Mirabilis Ventures, Inc. ("Mirabilis" or the "Company") or AEM, Inc. ("AEM") from (i) Michael Maher of Maher Guiley and Maher, P.A.; and (ii) Michael L. Edwards of Balch & Bingham LLP (collectively, the "Demand Letters").[1] In addition, our January 24, 2008 letter requested certain information from you in connection with Arch's evaluation of the Demand Letters and Draft Complaint and potential defense arrangements for this matter. Based on the information and materials we have received in response to our January 24, 2008 letter, this letter summarizes the results of Arch's preliminary investigation of this matter and identifies for you various actual and potential coverage defenses that now appear applicable to the Demand Letters and Draft Complaint.

      We are directing this letter to you as an Insured or potential Insured under Arch's Private Company Management Liability Insurance Policy No. PCD0019469-00 (the "Policy"), or as the authorized representative of an Insured or potential Insured under the Policy. To the extent you are not an Insured or acting on behalf of an Insured for insurance coverage purposes, we ask that you advise us of that information so we can remove you from our distribution list.

      Based on the information currently known to Arch and for the reasons summarized below, it appears that no coverage is available for this matter under the Policy. If, after

---

[1] The demand letters from Michael L. Edwards of Balch & Bingham LLP enclosed copies of a draft complaint styled <u>AQMI Strategy Corporation, et al. v. Richard E. Berman, et al.</u> (the "Draft Complaint"), which names each of you as a defendant. To our knowledge, though, no complaint has been filed to date.

# BAILEY CAVALIERI LLC

To the Attached Distribution List
March 5, 2008
Page 2

reviewing this letter, you disagree with this analysis, we invite you to provide us with any additional materials or information that you believe support a contrary conclusion. We also generally invite you to contact us if you have any questions regarding this analysis.

Absent receipt of persuasive information or materials demonstrating that the bases for denying coverage as summarized below are incorrect or inapplicable here, Arch will not be funding any loss incurred by any Insured in this matter, including without limitation any defense costs. As indicated in our January 24, 2008 letter to you, Arch understands that the Akerman Senterfitt law firm remains available to serve as defense counsel for some or all of the Insured Persons in this matter, but the Insureds will need to make appropriate arrangements with that law firm regarding payment of the law firm's fees and expenses if you wish to retain that law firm.

    A.    The Demand Letters and Draft Complaint

        1.    The Balch & Bingham Demand Letters and Draft Complaint

The Balch & Bingham Demand Letters made a demand on behalf of AQMI Strategy Corporation ("AQMI") and Titanium Technologies, Inc. ("Titanium") against thirty-three individuals who are purportedly former directors and officers of Mirabilis and AEM. The Draft Complaint alleges that Frank Amodeo and AQMI created and capitalized Mirabilis and Mirabilis subsidiary AEM to help reorganize and preserve the Professional Employer Organization ("PEO") assets of Presidion Solutions, Inc. ("PSI"), a subsidiary of Presidion Corporation (collectively, "Presidion"). According to the Draft Complaint, AEM entered into a management agreement with PSI to oversee the processing of Presidion's PEO assets. AEM also allegedly utilized AEM's bank accounts to process the payroll of Presidion's PEO Assets. The Draft Complaint alleges that while PSI's subsidiaries – Paradyme, Inc. ("Paradyme") and Professional Benefits Solutions, Inc. ("PBS") – collected payroll taxes under their federal employer identification number ("FEIN"), Mirabilis and AEM began to apply these payroll tax payments to the AEM FEIN. The Draft Complaint further alleges that Mirabilis and AEM failed to make daily tax payments on behalf of Presidion's subsidiaries, which significantly increased Presidion's tax liability. According to the Draft Complaint, AEM's remittance of tax payments under the AEM FEIN resulted in an erroneous tax credit for AEM. The Draft Complaint also alleges these wrongful acts led to an investigation of Frank Amodeo, Presidion, PSI, Mirabilis, AEM and others by the United States Internal Revenue Service ("IRS") and United States Attorney's Office for alleged tax evasion. The Draft Complaint sets forth causes of action for (1) breach of fiduciary duty, and (2) recklessness and negligence.

        2.    The Maher Demand Letters

The Maher Demand Letters made a demand on behalf of Paradyme and PBS against the same thirty-three individuals named as defendants in the Draft Complaint. The Maher Demand Letters set forth allegations concerning AEM's mismanagement of Paradyme and PBS co-employer client contracts and payroll tax liability. Like the Draft Complaint, the Maher Demand

#542548v2
77963.04280

# BAILEY CAVALIERI LLC

To the Attached Distribution List
March 5, 2008
Page 3

Letters allege that Mirabilis and AEM misrepresented that daily tax payments had been made for Paradyme and PBS. According to the Maher Demand Letters, Paradyme and PBS incurred additional liability due to AEM's non-payment of Paradyme and PBS tax obligations. The Maher Demand Letters allege breach of fiduciary duty, breach of statutory duty and negligence and seeks monetary relief for losses allegedly associated with those wrongful acts and omissions.

    B.    <u>The Policy</u>

The Policy is a claims made and reported policy effective for the period from January 1, 2007 to January 1, 2008 (the "Policy Period").[2]

<u>Coverage A</u> of the Policy provides that Arch will pay on behalf of the Insured Persons certain Loss for which the Insured Persons are not indemnified and which the Insured Persons shall become legally obligated to pay as a result of a Claim first made during the Policy Period against the Insured Persons for a Wrongful Act which takes place during or prior to the Policy Period. <u>Coverage B</u> provides that Arch will pay on behalf of the Private Company certain Loss for which the Private Company has, to the extent permitted or required by law, indemnified the Insured Persons, and which the Insured Persons have become legally obligated to pay as a result of a Claim first made during the Policy Period against the Insured Persons for a Wrongful Act which takes place during or prior to the Policy Period.[3] <u>Coverage C</u> of the Policy provides that Arch will pay on behalf of the Private Company certain Loss for which the Private Company shall become legally obligated to pay as a result of a Claim first made during the Policy Period

---

[2] At least one of the individuals named as a defendant on the Draft Complaint provided notice of the Demand Letters and Draft Complaint under Private Company Management Liability Insurance Policy No. PCD001206100, which was effective for the period January 1, 2006 to January 1, 2007 (the "2006-2007 Policy Period"). However, because the Demand Letters and Draft Complaint were first made and reported during the current Policy Period and Arch is unaware of any related Claim first made and reported during the 2006-2007 Policy Period, Arch is provisionally treating the Demand Letters and Draft Complaint as a Claim first made and reported during the January 1, 2007 to January 1, 2008 Policy Period.

[3] Section VII of the Policy provides that if Mirabilis (1) is permitted or required by common or statutory law to indemnify the Insured Persons for Loss or to advance Defense Costs on their behalf, and (2) fails or refuses, other than for reason of Financial Impairment, to indemnify the Insured Persons for such Loss or to advance such Defense Costs, then, any payment of such Loss or advancement of such Defense Costs by Arch shall be subject to the applicable Coverage B Retention amount. The Policy further provides that Mirabilis shall be deemed to provide indemnification to the Insured Persons for such Loss or advancement of such Defense Costs to the fullest extent permitted or required by law and Mirabilis agrees to indemnify the Insured Persons for such Loss and to advance such Defense Costs to the fullest extent permitted or required by law. Section II(g) of the Policy defines the term Financial Impairment as the status of the Private Company resulting from (1) the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of manage or liquidate the Private Company, or (2) the Private Company becoming a Debtor-In-Possession. To our knowledge, none of these Financial Impairment events have taken place with respect to Mirabilis, and therefore Arch presumes that Mirabilis is prepared to and will indemnify the Insured Persons for any Loss and will advance Defense Costs on their behalf with respect to this matter. As a result, the $100,000 Retention for Coverage B applies to this matter. If that presumption is incorrect, please provide to us at your earliest convenience any materials or information that you believe supports a contrary conclusion.

#542548v2
77963.04280

# BAILEY CAVALIERI LLC

To the Attached Distribution List
March 5, 2008
Page 4

against the Private Company for a Wrongful Act which takes place during or prior to the Policy Period.

Subject to the Policy's terms, conditions, and exclusions, the Policy provides an aggregate Limit of Liability of $10 million for all Loss arising from Claims first made against the Insureds during the Policy Period. The Limit of Liability is subject to a per Claim Retention of $100,000 for Claims covered under Coverage B and Coverage C of the Policy. Arch shall not be liable for any Loss, including Defense Costs, which are within the applicable Retention or in excess of the Limit of Liability.

C.      Coverage Issues

Arch believes it is prudent to identify for you at this time actual and potential coverage defenses that are now known to Arch with respect to the Demand Letters and Draft Complaint. Arch recognizes that the allegations in the Demand Letters and Draft Complaint have not been proven at this time, and you should not interpret the following discussion as a suggestion that any of the allegations have any legal or factual merit. The following coverage analysis is based upon the unsubstantiated allegations in the Demand Letters and Draft Complaint as well as information and materials recently discovered by Arch in its preliminary investigation of this matter.

1.    No Coverage Appears to be Available for the Demand Letters or Draft Complaint Under the Policy

As summarized below, it now appears that one or both of the following exclusions apply to this matter, and thus no coverage appears to be available for the Demand Letters or Draft Complaint under the Policy. If you disagree with this analysis, we invite you to provide us with any materials or information that you believe support a contrary conclusion. If one or both of these exclusions are applicable to this matter (as they appear to be), Arch shall not be liable for any settlement, judgment, defense costs, or other loss incurred by the Insureds in connection with this matter.

First, as a condition to renewal of the Policy, the Insureds were required to complete and submit to Arch an executed Renewal Application for Directors and Officers Liability Insurance (the "Application"), which was signed by William Walsh on behalf of the Insureds on January 22, 2007. Item No. 4a of the Past Activities Part of the Application inquired, and the Insureds answered, as follows:

> 4   Since the execution of the Prior Application, has [Mirabilis Ventures, Inc.] or any Subsidiary or any other proposed Insured(s) been involved in, or are they currently involved in, or have they been threatened to be named in any of the following:

#542548v2
77963.04280

# BAILEY CAVALIERI LLC

To the Attached Distribution List
March 5, 2008
Page 5

      a   civil or criminal action, administrative proceeding, formal or informal inquiry, questioning, probing, investigation, inspection, examination, review, whether preliminary or otherwise, by any federal, state, or local or foreign administrative agency, including but not limited to the Securities Exchange Commission? __Yes _x_ No

                        *     *     *

      If Yes to any question in 1 through 4 above, please attach complete details including any loss payments by insurance carriers.

The Draft Complaint alleges that in September 2006 (i.e., three months prior to the inception of the Policy and four months prior to the Application being signed and submitted to Arch), the IRS and U.S. Department of Justice ("DOJ") began investigating Frank Amodeo, Presidion, PSI, Mirabilis, AEM and others for potential civil and criminal liability arising from the alleged tax evasion involving, among others, Paradyme and PBS. Moreover, Arch understands that in December of 2006 certain Insured Persons received target letters from the DOJ in relation to this investigation. The issuance of these target letters was discussed at a Mirabilis Board of Directors meeting on December 28, 2006.[4] Accordingly, it appears that as of the effective date of the Application (January 22, 2007) and as of the inception of the Policy (January 1, 2007), certain Insureds were "involved in, or had been threatened to be named in . . . a civil or criminal action, administrative proceeding, formal or informal inquiry, questioning, probing, investigation, inspection, examination, or review" by the DOJ and/or the IRS. It appears that such information and details of the target letters and the DOJ or IRS investigation should have been disclosed in the Application in response to the above-quoted Item No. 4a. However, despite the well-documented knowledge by many of the Insureds of the DOJ or IRS investigations (including receipt by some of the Insureds of target letters), the Application failed to identify those investigations or target letters in response to Item No. 4a in the Application. The Insureds' failure to disclose that requested information constituted a misrepresentation of material facts to Arch in connection with Arch's underwriting of the Policy.

      Section XX of the Policy states that if any Insured had knowledge or information, as of the effective date of the Application, of any act, error, omission or circumstance which may give rise to a Claim and which is required to be disclosed in the Application, whether or not actually disclosed in the Application, any Claim subsequently arising therefrom shall be excluded from coverage under the Policy. This exclusion appears to apply here because the Demand Letters and Draft Complaint arise from the same acts, errors, omissions or circumstances which should have been but were not disclosed to Arch in response to Item No. 4a in the Application.

---

[4] Attached hereto is a copy of the Minutes of that December 28, 2006 Board of Directors meeting, which referenced on page 1 a discussion of these target letters.

#542548v2
77963.04280

# BAILEY CAVALIERI LLC

To the Attached Distribution List
March 5, 2008
Page 6

In addition, Arch reserves its right to rescind the Policy as void *ab initio* based upon these misrepresentations and omissions in the Application.

Second, Section IV.1(f) of the Policy provides that Arch shall not be liable under any Coverages to make any payment for Loss as a result of a Claim made against an Insured which is brought or maintained by, or on behalf of, or in the right of (whether such right is transferred or assigned by operation of law or otherwise) the Private Company or any Insured Person in any capacity, or which is brought or maintained by any security holder or member of a Private Company, whether directly or derivatively, unless such security holder's or member's Claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any Insured Person or any Private Company (the "Insured v. Insured Exclusion"). Based on information now known by Arch, it appears that Frank Amodeo is an Insured Person under the Policy. Among other things, Arch understands that Frank Amodeo is a former director of Nexia Strategy Corporation ("Nexia"), a wholly-owned Subsidiary of Mirabilis.[5]

As set forth above, the Balch & Bingham Demand Letters were sent on behalf of AQMI and Titanium, and the Maher Demand Letters were sent on behalf of Paradyme and PBS. According to the Draft Complaint, AQMI and Titanium are entities wholly-owned by Frank Amodeo. Likewise, Arch understands that Paradyme and PBS are wholly-owned subsidiaries of the Wellington Capital Group, Inc., which is also an entity wholly-owned by Frank Amodeo. Accordingly, it appears that the claims being asserted in the Demand Letters are completely controlled by and are brought on behalf of and for the benefit of Frank Amodeo. Because Mr. Amodeo is an Insured Person under the Policy and a security holder of Mirabilis, no coverage appears to be afforded under the Policy for this matter based on the Policy's Insured v. Insured Exclusion.

2.  Additional Actual or Potential Coverage Defenses

In addition to the bases for denying coverage as discussed above, Arch believes it is prudent to identify for you other actual and potential coverage defenses which may, depending upon further developments, ultimately result in a limitation or loss of coverage under the Policy with respect to this matter. This discussion is not intended to be exhaustive or exclusive.

First, as discussed above, the Insureds were required to submit the Application to Arch as a condition to renewal of the Policy. Item Nos. 1 and 2 of the Stock Ownership Part of the Application inquired, and the Insureds answered, in relevant part as follows:

---

[5] In addition, Arch understands that throughout the relevant period, Frank Amodeo was the sole Class A shareholder of Mirabilis and had exclusive control over Mirabilis and Nexia. Arch further understands that Frank Amodeo exercised his complete control over Mirabilis and Nexia by, among other things, appointing or replacing officers and directors, vetoing board decisions, and controlling the day-to-day affairs and operations of Mirabilis and Nexia.

#542548v2
77963.04280

# BAILEY CAVALIERI LLC

To the Attached Distribution List
March 5, 2008
Page 7

    1   Total number of Applicant's common shares outstanding <u>156,750</u>.

    2   Total number of Applicant's common shareholders <u>79</u>.

In addition to the Insureds' response to Item Nos. 1 and 2, the Insureds submitted to Arch in connection with Arch's underwriting of the Policy, an "Official List As of 02/27/2006" of "Mirabilis Class B Shareholders" (hereinafter, the "Shareholder List"). The Shareholder List listed Mirabilis' purported 79 Class B shareholders and their purported 156,750 total shares in Mirabilis. Based on information now known by Arch, it appears that Mirabilis did not have 79 Class B shareholders who owned 156,750 total shares of Mirabilis. Instead, Arch has received certain information and materials indicating that, as of February 27, 2006 and January 1, 2007, Frank Amodeo was Mirabilis' sole shareholder. Although some or all of the individuals listed as shareholders on the Shareholder List may have been promised certain stock ownership in Mirabilis, Arch understands that most, if not all, of those individuals never actually received any shares in Mirabilis. If in fact the answers to Item Nos. 1 and 2 of the Stock Ownership Part of the Application were materially false, Arch may have an additional basis to exclude coverage and/or rescind the Policy as void *ab initio*, as explained above.

    <u>Second</u>, the Policy only provides coverage to Insureds, which is defined in relevant part in Endorsement No. 5 of the Policy as Insured Persons and, with respect to Coverages B and C, the Private Company. Section II(h) of the Policy defines Insured Persons in relevant part as any person who has been, now is or shall become a duly elected or appointed director, officer, general counsel, risk manager, and in the case of a limited liability company, member of the management board (or equivalent position) of the Private Company. The Policy defines Private Company at Section II(n) as the Named Company (i.e., Mirabilis) and any Subsidiary thereof.[6] Although the Draft Complaint asserts that the thirty-three individuals named as defendants were directors and officers of Mirabilis and/or AEM, Arch now understands that some of the individuals named as defendants in the Draft Complaint were not, and have never been, duly elected or appointed directors, officers, general counsel, or risk managers of Mirabilis, AEM or any other Subsidiary. No coverage shall be available under the Policy for any Loss incurred by any individual or entity other than an Insured Person or, with respect to Coverages B and C, the Private Company.

    <u>Third</u>, Section IV.1(a) of the Policy states that Arch shall not be liable under any Coverages to make any payment for Loss as a result of a Claim made against an Insured arising out of, based upon or attributable to the gaining of any profit, remuneration or financial advantage to which such Insured was not legally entitled, as evidenced by a written statement or written admission by such Insured or a judgment or other final adjudication in the underlying action or in a separate action, alternative dispute resolution process (including one pursuant to

---

[6] The Policy defines Subsidiary in relevant part as a corporate organization with respect to which the Named Company owns, either directly or indirectly through one or more of its Subsidiaries, more than 50% of the outstanding securities representing the present right to vote for election of directors or equivalent positions.

# BAILEY CAVALIERI LLC

To the Attached Distribution List
March 5, 2008
Page 8

Section XVI of the Policy) or other proceeding. No coverage shall be available under the Policy for any Insured with respect to whom such a written statement, admission, judgment or adjudication occurs.

Fourth, Section IV.1(b) of the Policy states that Arch shall not be liable under any Coverages to make any payment for Loss as a result of a Claim made against an Insured Person arising out of, based upon or attributable to the committing of any deliberate criminal or deliberate fraudulent act by such Insured as evidenced by a written statement or written admission by such Insured Person or a judgment, ruling or other finding of fact in the underlying action or in a separate action, alternative dispute resolution process (including one pursuant to Section XVI of the Policy) or other proceeding. No coverage shall be available under the Policy for any Insured with respect to whom such a written statement, admission, judgment or adjudication occurs.

Fifth, Section II(k) of the Policy states that Loss does not include, among other things, the following: (1) civil or criminal fines or penalties imposed by law, (2) any amount that represents or is substantially equivalent to disgorgement or restitutionary or rescissionary damages, or forfeiture of any profits or remuneration, (3) costs incurred by the Private Company to comply with any injunctive or other non-monetary relief or an agreement to provide such relief, or (4) matters which may be deemed uninsurable under the law pursuant to which this Policy shall be construed. Therefore, no coverage will be afforded under the Policy for any such loss incurred by the Insureds in connection with the Demand Letters, Draft Complaint, or any subsequent lawsuit.

Sixth, Section XV of the Policy provides that this Policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is written only as specific excess insurance over the Limit of Liability provided by this Policy. This Policy shall also be specifically excess over any other valid and collectible insurance pursuant to which any other Insurer has a duty to defend a Claim for which this Policy may be obligated to pay Loss. Arch requests your prompt advice as to whether any other policy or policies potentially afford coverage for the Lawsuit. Arch further requests that you provide us with copies of any policies of insurance which may provide coverage for the Lawsuit and copies of any correspondence sent to and/or received from other insurers related to coverage under those policies.

D.   Reservation of Rights

In addition to the bases for Arch's denial of coverage as summarized above, Arch expressly reserves all of its rights and defenses under the Policy and available at law with respect to this matter, including but not limited to the right to rescind the Policy or raise additional Policy terms, conditions, and coverage defenses as additional facts come to Arch's attention. Nothing herein shall be construed as a waiver of any rights or defenses that Arch now has or hereafter may have under the Policy or at law with respect to this matter. Arch acknowledges that the Insureds are similarly reserving their rights.

#542548v2
77963.04280

# BAILEY CAVALIERI LLC

To the Attached Distribution List
March 5, 2008
Page 9

*   *   *

      If you have any questions or concerns regarding Arch's coverage analysis, we invite you to contact us. If you or the Insureds believe that Arch's coverage analysis set forth in this letter is incorrect, we also invite you to submit any additional materials or information that you believe support a contrary conclusion.

                              Sincerely,

                              BAILEY CAVALIERI LLC

                              Dan A. Bailey

cc:    Marcie Rosenzweig, Esq., Arch (via e-mail)
        Jodi Jaiman, Mirabilis Ventures (via facsimile, 407-893-7339)
        Keith Loges, Swett & Crawford (via e-mail)
        James Foster, Esq., Akerman Senterfitt (via e-mail)

#542548v2
77963.04280

## Distribution List

Yaniv Amar
3475 Mystic Pointe Drive, TH#10
Aventura, FL 33180

Laurie Andrea
528 Myrtle Road
Naples, FL 34108

Allen Archer
983 Troon Trace
Winter Springs, FL 32708

Michael Barbee
7343 River Country Drive
Weeki Wochee, FL 34607

Richard E. Berman
c/o D. David Keller
Bunnell Woulfe Kirschbaum Keller
  McIntyre Gregoire & Klein, P.A.
One Financial Plaza
100 S.E. Third Avenue, Suite 900
Fort Lauderdale, FL 33394

Hans Beyer
2514 West Sunset Drive
Tampa, FL 33629

Steven Bonck
2805 Strand Loop Court
Oviedo, FL 32765

Thomas Broadhead
11916 Brookmeade Court
Glen Allen, VA 23059

Jason Carlson
13113 Hadley Circle North
White Bear Lake, MN 55110

Debra Cole
c/o John Finnigan
Finnigan Law Firm
1700 Maitland Avenue
Maitland, FL 32751

Edith Curry
c/o Thomas Broadhead
11916 Brookmeade Court
Glen Allen, VA 23059

Brian Fischer
17118 Gulf Pine Circle
Wellington, FL 33414

Paul Glover
1312 Winter Springs Boulevard
Winter Springs, FL 32708

Lawrence Haber
1579 Lake Baldwin Lane
Orlando, FL 32814

Frank Hailstones
10 Abercorn Close
Selsdon Ridge
South Croydon
CR2 8TG

Mr. Laurie S. Holtz
1826 West 23rd Street
Sunset Island #3
Miami Beach, FL 33140

Horton S. Johnson
c/o Steven R. Kutner
Steven R. Kutner, P.A.
151 Lookout Place, Suite 110
Maitland, FL 32794

Philip Kaprow
1005 Antelope Trail
Winter Springs, FL 32708

Chuck Kirkpatrick
19800 US Highway 1, #1811
Tequesta, FL 33469

Robert Konicki
23281 Water Circle
Boca Raton, FL 33486

Daniel McHenry
6851 Valhalla Way
Windemere, FL 34786

Kevin Munroe
3466 Bay Meadow Court
Windemere, FL 34786

Daniel Myers
3648 Crescent Park Boulevard
Orlando, FL 32812

Robert Pollack
8767 The Esplanade, #36
Orlando, FL 32836

Jeffrey Reichel
197 Timberlost Trail
Suwanne, GA 30024

James Sadrianna
c/o David M. Boggs
Mcfarlane Ferguson McMullen
One Tampa City Center
201 N. Franklin Street, Suite 2000
Tampa, FL 33602

Fernando Simo
815 Lake Evalyn Drive
Celebration, FL 34747

Michael Stanley
c/o T. Todd Pittenger
Lowndes Drosdick Doster
 Kantor & Reed, P.A.
450 South Orange Avenue, Suite 800
Orlando, FL 32801

Mr. Tracy Taylor
11954 Frieth Drive
Orlando, FL 32837

James Vandevere
8363 Via Verona
Orlando, FL 32836

Bruce Walko
1135 Hillsboro Mile
Hillsboro Beach, FL 33062

William Walsh
1107 Forsythe Lane
West Chester, PA 19382