# TAB 7

Board of Directors
Mirabilis Ventures, Inc.

December 28, 2006

I am enclosing a certificate for 4750 shares
to be returned to the Treasury of the Company.


Respectfully,

James E. Sadeq



NUMBER: 0009

SHARES 4750

# MIRABILIS VENTURES, INC., a Nevada Corporation

## NON-ASSESSABLE, NO PAR VALUE

THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE FEDERAL SECURITIES LAWS OR THE SECURITIES LAWS OF ANY STATE, AND SUCH SECURITIES MAY ONLY BE SOLD IN COMPLIANCE WITH SUCH LAWS AND ANY OTHER APPLICABLE LAWS. THE SALE, PLEDGE, HYPOTHECATION OR TRANSFER OF THE SECURITIES REPRESENTED BY THIS CERTIFICATE IS SUBJECT TO, AND IN CERTAIN CASES PROHIBITED BY, THE TERMS AND CONDITIONS OF A CERTAIN SHAREHOLDERS AGREEMENT BY AND AMONG THE SHAREHOLDERS OF THE CORPORATION AND THE CORPORATION. COPIES OF SUCH SHAREHOLDERS AGREEMENT MAY BE OBTAINED UPON WRITTEN REQUEST TO THE SECRETARY OF THE CORPORATION

*This Certifies that* _____ *Laurie Holtz* _____

registered holder of _____ *4750 green* _____ Shares

is the

transferable only on the books of the Corporation by the holder hereof in person or by Attorney upon surrender of this Certificate properly endorsed.

*In Witness Whereof,* the said Corporation has caused this Certificate to be signed by its duly authorized officers and its Corporate Seal to be hereunto affixed

this _____ *2nd* _____ day of _____ *August* _____ A.D. 20 *05*

_____
*Frank Hailstones, President*

_____
*Richard E. Berman, Secretary*

Board of Directors
Mirabilis Ventures, Inc

With regard to the financial viability
and funding difficulties facing Mirabilis
for 2007, I wish to forego any
compensation payable to me, effective immediately,
at least until any such doubts can be
satisfied.

I currently plan to continue to participate
in the task of trying to turn the
Company around.

Respectfully,

James Sadoltz

TO:        **Board of Directors**
           **Mirabilis Ventures, Inc.**

DATE:      December 28, 2006

RE:        Shares held in Mirabilis Ventures, Inc.

---

Gentlemen:

I hereby surrender to the corporate treasury, all of my stock in Mirabilis Ventures, Inc., effective immediately.  These shares are represented by certificate #1 and represent 4,750 shares.

Thank you,

Richard E. Berman

REB/en

ASSIGNMENT SEPARATE FROM CERTIFICATE

# STOCK POWER

FOR VALUE RECEIVED, *Richard E. Berman* hereby sells, assigns and transfers unto *Mirabilis Ventures, Inc* , *4750* (*750*) shares of common stock of *Mirabilis Ventures, Inc* Corporation (the "Corporation") standing in his name on the books of said Corporation represented by Certificate number ___, and hereby irrevocably constitutes and appoints the Corporation's attorney to transfer said stock on the books of the Corporation with full power of substitution in the premises.

Dated this *28* day of *Dec* 2006.

_____
[insert name]

Witnessed by:

*Elizabeth Neebling*

Name:

```
ELIZABETH NEEBLING
MY COMMISSION # DD821396
EXPIRES December 11 2010
(407)398-0153   FloridaNotaryService.com
```

**Richard E. Berman**
2101 W. Commercial Blvd.
Suite 2800
Fort Lauderdale, FL 33300

December 26, 2007

Board of Directors
Mirabilis Ventures, Inc
Orlando, Florida

Gentleman:

I think that in view of the current financial circumstances that any salary payments to me from Mirabilis Ventures, Inc. should be terminated at this time. Thus, effective immediately I should receive no further salary payments from Mirabilis Ventures, Inc.

I believe that these funds can be better used by those who are working for the Company on a daily basis making efforts to govern the Company.

Thank you.

Very truly yours,

Richard E. Berman

### Richard E. Berman
2101 W. Commercial Blvd.
Suite 2800
Fort Lauderdale, FL 33300

December 26, 2007

Board of Directors
Mirabilis Ventures, Inc
Orlando, Florida

Gentleman:

I hereby tender my resignation, effective immediately, as the Corporate Secretary for Mirabilis Ventures, Inc. as well as any other corporate office that I made be deemed to hold in this company. Those present in Orlando and working full time for the Company should fulfill corporate offices.

Please notify the Secretary of State of the foregoing and please remove all reference to me as an officer or a person holding any position other than as a director of Mirabilis Ventures, Inc. from corporate materials and corporate web sites.

Thank you.

Very truly yours,

Richard E. Berman



## MIRABILIS VENTURES, INC., a Nevada Corporation

### NON-ASSESSABLE, NO PAR VALUE

THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE FEDERAL SECURITIES LAWS OR THE SECURITIES LAWS OF ANY STATE, AND SUCH SECURITIES MAY ONLY BE SOLD IN COMPLIANCE WITH SUCH LAWS AND ANY OTHER APPLICABLE LAWS. THE SALE, PLEDGE, HYPOTHECATION OR TRANSFER OF THE SECURITIES REPRESENTED BY THIS CERTIFICATE IS SUBJECT TO, AND IN CERTAIN CASES PROHIBITED BY, THE TERMS AND CONDITIONS OF A CERTAIN SHAREHOLDERS AGREEMENT BY AND AMONG THE SHAREHOLDERS OF THE CORPORATION AND THE CORPORATION. COPIES OF SUCH SHAREHOLDERS AGREEMENT MAYBE OBTAINED UPON WRITTEN REQUEST TO THE SECRETARY OF THE CORPORATION

*This Certifies that* _____ *Laurie Holtz* _____ *is the*

*registered holder of* _____ *4750 green* _____ *Shares*

*transferable only on the books of the Corporation by this holder hereof in person or by Attorney upon surrender of this Certificate properly endorsed.*

*In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and its Corporate Seal to be hereunto affixed.*

*this* _____ *2nd* _____ *day of* _____ *August* _____ *A.D. 20 06*

*Frank Hailstones, President*                    *Richard E. Berman, Secretary*

## MIRABILIS VENTURES, INC.
### A NEVADA CORPORATION

### UNANIMOUS WRITTEN CONSENT OF BOARD OF DIRECTORS

The undersigned persons, constituting all of the members of the Board of Directors (the "Board") of **MIRABILIS VENTURES, INC.**, a Nevada corporation (the "Corporation"), hereby adopt the following written resolutions in accordance with NRS 78.035, 78.195 and 78.196.

### NOW, THEREFORE, BE IT HEREBY:

**RESOLVED,** that the Board hereby accepts the election thereof by the shareholders and authorizes the following persons to serve as Directors of the Company commencing January 1, 2007 and continuing thereafter until such time as their successors have been nominated, qualified, and appointed:

| | |
|---|---|
| Laurie Holtz | Chairman of the Board |
| Richard Berman | Director |
| Jason Carlson | Director |
| Frank Hailstones | Director |
| Fernando Simo | Director |
| Bill Walsh | Director |

and be it;

**RESOLVED,** that the Articles of Incorporation Article IV be amended as follows:

Mirabilis Ventures, Inc. (the "Company") has been authorized to issue seventy-five thousand (75,000) shares of Class A capital common stock ("Black Stock" or "Black Shares") with no par value, six million (6,000,000) shares of Class B preferred stock ("Green Stock" or "Green Shares") with no par value, one million (1,000,000) shares of Class P preferred stock ("Gold Stock" or "Gold Shares") with no par value, four hundred thousand (400,000) shares of Class T preferred stock ("Platinum Stock" or "Platinum Shares") with no par value, and twelve million (12,000,000) shares of Class Z preferred stock ("Blue Stock" or "Special Preferred Stock" or "Blue Shares") with no par value; (collectively, the "Shares"), and be it

**FURTHER RESOLVED,**

**IN WITNESS WHEREOF,** the members of the Board of Directors of the Corporation have executed this Unanimous Written Consent of the Board of Directors of Mirabilis Ventures, Inc., a Nevada corporation, effective as of the 15th day of December, 2006.

_____
Laurie S. Holtz

_____
Jason W. Carlson

_____
Frank Hailstones

_____
Robert Pollack

_____
James V. Sadrianna

_____
Richard Berman

_____
Tom Broadhead

_____
Bruce Walko

12/04/2006  16:32    3854162700                    WE FAX                              PAGE  03/03

**MIRABILIS VENTURES, INC.**

111 North Orange Ave., Suite 2000
Orlando, FL 32801

NOVEMBER 30, 2006

---

**NOTICE OF ANNUAL MEETING OF SHAREHOLDERS**

To Our Shareholders:

NOTICE IS HEREBY GIVEN that the Annual Meeting of Shareholders of Mirabilis Ventures, Inc. (the "*Annual Meeting*") will be held at 1:00 p.m. Eastern Standard Time on December 15, 2006 at the offices of Mirabilis Ventures, Inc., 111 North             Orange             Ave.,             Suite             2000 Orlando, FL 32801, for the following purpose:

1. To elect directors to serve on the Board of Directors of Mirabilis Ventures, Inc. as more fully described in the Exhibit "A" accompanying this notice.

2. To present and consider the reports on the affairs of the Corporation.

3. To approve the increase of authorized shares that can be issued by Mirabilis Ventures, Inc. as more fully described in the Exhibit "B" accompanying this notice.

4. To consider and act upon such other matters as may properly come before the meeting or any postponement thereof.

Only shareholders of record at the close of business on the date of this Notice, November 30, 2006, are entitled to notice of and to vote at the Annual Meeting or any adjournment or postponement thereof.

By Order of the Board:

MIRABILIS VENTURES, INC.

Frank Holz

Frank S. Holtz, Chairman

-1-

*If you are not planning to attend the meeting, please complete, date, sign and promptly return the accompanying proxy in the enclosed postage-prepaid envelope so that your shares will be represented at the meeting.*

### MIRABILIS VENTURES, INC.

**Proxy for the Annual Meeting of Shareholders to be held on December 15, 2006**

### THIS PROXY IS SOLICITED BY THE BOARD OF DIRECTORS

The undersigned hereby appoints Laurie S. Holtz, Chairman of Mirabilis Ventures, Inc., a Nevada corporation ("*Mirabilis*"), with full power of substitution, as the attorney and proxy of the undersigned to attend the Annual Meeting of Shareholders of Mirabilis (the "*Special Meeting*"), to be held at 1:00 p.m. Eastern Standard Time on December 15, 2006 at the offices of and any adjournment thereof, and to vote, if then and there personally present, on all matters set forth in the Notice of Annual Meeting of Shareholders, copies of which have been received by the undersigned, as follows:

**Approval of Increase in Authorized Shares of Stock.** Resolved, that (i) the Amended and Restated Articles of Incorporation of Mirabilis Ventures, Inc. be accepted and authorized to increase the authorized number of shares as reflected in that Amended and Restated Articles of Incorporation; (ii) that the Shareholders' Agreement be amended and restated to reflect the authorized increase and (iii) to authorize the corporation by its officers or directors to exercise all such powers to do all such acts and things as may be exercised or done to perform the obligations of Mirabilis to effect the Increase in Authorized Shares of Stock and hereby are authorized and approved.

For  (  )            Against  (  )            Withhold Vote  (  )

**Election of Board of Directors.** Resolved, that the standing slate of names for the positions on the Board of Directors be accepted and authorized pursuant to the annual election as stated in the Bylaws of Mirabilis.

For  (  )            Against  (  )            Withhold Vote  (  )

This Proxy is solicited by the Board of Directors of Mirabilis. If not otherwise directed, this Proxy will be voted FOR the Approval of Increase in Authorized Shares of Stock and the standing slate of names for the positions on the Board of Directors. With regard to any other matters properly raised at the Special Meeting, the shares represented by this Proxy will be voted in accordance with the discretion of the holder of this Proxy.

**[SIGNATURE PAGE FOLLOWS]**

By: _____
     (sign here)

Name: _____
     (please print)

Dated: _____


I plan to attend the meeting:  Yes _____     No _____

Please date this proxy and please sign exactly as your name(s) appear(s) on the stock certificate(s).  A corporation is requested to sign its name by its President or authorized officer, with the office held designated.  Executors, administrators, trustees, etc. are requested to indicate the capacity in which they are signing.  If a stock certificate is registered in two names, both parties named therein should sign.

## EXHIBIT "A"

**The slate of names for election to the position of Directors as follows:**

1.  Richard Berman
2.  Jason Carlson
3.  Frank Hailstones
4.  Laurie Holtz
5.  Fernando Simo
6.  Bill Walsh

## BIOGRAPHIES OF PROPOSED BOARD MEMBERS OF MIRABILIS VENTURES, INC.

### Fernando Simo

Mr. Simo is President and CEO of Mirabilis Ventures, Inc., and is a highly versatile financial management professional with strong leadership skills in all facets of strategic planning and financial operations for entrepreneurial firms, as well as for global organizations. With a Bachelor of Science in Accounting from the University of Arizona, Mr. Simo possesses more than 33 years proven experience that includes mergers and acquisitions, capital and operating budgeting, manufacturing, cost reduction and internal controls compliance. Additionally, Mr. Simo's talents have been instrumental in helping businesses worldwide successfully control costs, improve earnings and enhance operational efficiency. Most recently, Mr. Simo served as Executive Vice President and Chief Financial Officer for the Caribbean Division of Cable & Wireless, a $1 billion telecommunications company. In this capacity, Mr. Simo managed the financial operations of 12 major telco organizations serving the diverse needs of this region. Mr. Simo brings significant expertise through an expansive and diverse career with Motorola, Inc., successfully progressing through the organization for more than 30 years. During his seasoned tenure, he held a number of prominent executive financial management positions as well as key operational positions with the company, within the U. S. as well as working globally to support various interests in the Far East, Europe, Latin America and in the Caribbean. Mr. Simo has also completed post-graduate coursework in finance at Arizona State University.

### William Walsh

Mr. Walsh is Executive Vice President and CFO for Mirabilis Ventures, Inc. William Walsh is a distinguished senior level financial and management professional with proven leadership skills in operations, finance and administration. His areas of expertise include organization restructuring, financial and strategic planning, high growth situations, and investor relations. Mr. Walsh earned his Bachelor of Science in Accounting at The Pennsylvania State University. He was Vice President and Chief Financial Officer of The Commonwealth Group, Ltd., a regional real estate management, development and construction firm. Mr. Walsh reengineered all accounting and financing processes, and established a compliance monitoring model for debt and partnership instruments. As Vice President, Chief Financial Officer and Treasurer, he provided financial leadership for Internet Cable Corporation, an international broadband infrastructure services firm. Mr. Walsh raised initial capital and was a key member of the team that reorganized the company from a non-SEC reporting shell to a fully compliant public company. Previously, he was Founder and Sole Proprietor of William F. Walsh, CPA—a firm providing a full range of accounting services to manufacturing, real estate, health care and publicly held companies. Mr. Walsh recruited and led M&A teams for a

Fortune 100 clients and provided turnaround services and SEC reporting consultation for a variety of clients.

## Jason Carlson

Mr. Carlson is Executive Vice President and Chief Operating Officer for Mirabilis Ventures, Inc.  With an MBA from Duke University Fuqua School of Business and a Bachelor of Arts from Carleton College, Jason Carlson is adept at leading organizations toward increased profits and revenues as well as helping them expand into global markets. As Partner and Lead Strategist for Trafalgar Capital Group, Mr. Carlson advised small to mid-sized businesses on exit strategies, re-branding initiatives, and mergers and acquisitions. He successfully guided the acquisition of an international software company requiring negotiations with corporate leaders in Europe, North America and Asia/Pacific. A skilled technologist, Mr. Carlson led the development of a technology roadmap as well as major technology projects, such as CRM and ERP, at American Spirit Graphics where he served as Vice President and Chief Technology Officer. Mr. Carlson was also instrumental in the turnaround of Carlson Print Group, that became one of the fastest growing printers in the U.S. Additionally, Mr. Carlson is active in his community, coaching youth sports and volunteering with service organizations including the American Cancer Society and the United Way

## Frank Hailstones

As a Chartered Accountant (CA-Scotland), Frank Hailstones is a highly credentialed, seasoned professional with extensive audit and consulting experience in all aspects of governance. He spent 18 years with PricewaterhouseCoopers (PwC), the last 10 as a senior partner. He ran the PwC Internal Audit Practice, building the Europe, Middle East and Africa (EMEA) teams and network in 12 countries. He also led numerous outsourced internal audit engagements and conducted performance reviews of internal audit in diverse industries worldwide. Mr. Hailstones led the PwC Global Team that developed the PwC Internal Audit Methodology and supporting technologies before moving into Business Risk Management, where he led the firm's Business Risk Assessment approach. Mr. Hailstones is a member of the CPFA (Chartered Institute of Public Finance Accountancy) and the ACA (Association of Chartered Accountants, England & Wales) as well as the Institute of Internal Auditors and the International Board of the Institute of Directors (IOD) in the UK. Additionally, Mr. Hailstones is an internationally recognized speaker on a wide range of business governance issues, and has presented to organizations worldwide including the Institute for Intergovernmental Research and the MIS Training Institute. He has also published numerous articles and whitepapers on governance and risk management topics.

**Richard Berman.**

Mr. Berman is Executive Vice President and General Counsel of Mirabilis Ventures, Inc.  Richard Berman is an AV rated attorney with more than 30 years experience in successfully representing clients in the areas of complex commercial, corporate, real estate, business, construction, probate, trust, cemetery, eminent domain, professional liability and insurance litigation. For in excess of 10 years, Mr. Berman served as Creditor Counsel in numerous significant bankruptcy proceedings. Mr. Berman background includes training in the real estate and the corporate transactional areas. Mr. Berman earned a Juris Doctor degree from Syracuse University College of Law in 1975, graduating magna cum laude, and a Bachelor of Arts degree from the University of Buffalo. He is a member of the Florida Bar, New York State Bar Association, Broward County Bar Association and Academy of Florida Trial Lawyers. He is also a member of the Trial Bar Section of the United States District Court, Southern District of Florida. Additionally, Mr. Berman is admitted to practice in the State of New York and the U. S. District Court for the Western and Southern Districts of New York as well as the U. S. District Court for the Southern and Middle Districts of Florida. He is also admitted to the U. S. Court of Appeals for the Eleventh and Fifth Circuit, the Supreme Court of the United States and the United States Tax Court. Prior to forming his own law firm with long term partners, Mr. Berman was a senior partner with Ruden, McClosky, Smith, Schuster & Russell, P. A. for 19 years, one of the largest law firms in Florida providing a full range of services throughout the state and Latin America, and at that firm served as a Senior Litigation Partner, member of its Management Committee and Chair of its Risk Management and Ethics Committee. He was also a Named Partner at Katz, Barron, Squitero, Faust & Berman, P.A. and the Managing Partner of its Ft. Lauderdale office. Throughout his career, Mr. Berman has represented a number of prominent clients including former U. S. President Gerald R. Ford, the former Chairman of Metropolitan Life, former President of Citicorp and the retired Dean of the Harvard Business School of Florida. Mr. Berman is a Supreme Court Certified Mediator and Circuit Court Arbitrator. He has recently been recognized in Florida Trend Magazine as one of Florida top 1.5% of attorneys. He is also a member of the Order of the Coif and Justinian Honor Society. Mr. Berman served as the Associate Editor of the Syracuse University Law Review. His firm is a boutique comprised of attorneys from larger firms who have excellent academies and significant experience in major litigation and complex transactional matters.

**Lauri S. Holtz**

Mr. Laurie Holtz possesses more than 45 years experience as a certified public accountant with nationally recognized expertise in investigative and forensic accounting. Mr. Holtz obtained a Bachelor of Arts in Accounting from the University of Rhode Island as well as a Master of Business Administration with a major in Accounting from the University of Miami. With extensive experience in litigation support, Mr. Holtz's clientele ranged from law firms representing

corporations in complex litigation as well as government agencies including the Securities and Exchange Commission (SEC), the Federal Bureau of Investigations (FBI), the Federal Deposit Insurance Corporation (FDIC), the Florida Department of Insurance and the United States Department of Justice. Mr. Holtz has also served as consultant and accountant in support of numerous law firms and legal representatives including trustees, receivers and similar judicially appointed officials. Additionally, he has been an expert witness in state and federal courts, bankruptcy courts and administrative proceedings as well as testified before grand juries and legislative committees. Mr. Holtz served as Senior Partner of Holtz & Company for more than 30 years. Through merger, he later joined Rachlin, Cohen & Holtz, the largest independent accounting firm in Florida. Mr. Holtz is a member of the American and Florida Institutes of Certified Public Accountants, the National Association of Certified Fraud Examiners, the Advisory Board for the College of Urban and Public Affairs at Florida International University and the Editorial Board of the Journal of Forensic Accounting. He is also a recognized speaker at continuing education seminars on such topics as forensic accounting, fraud investigation, civil recovery in bank failures, professional negligence and general litigation support. Mr. Holtz was a commissioned officer in the United States Army assigned to the Army Audit Agency.

## EXHIBIT "B"

It is proposed to amend the Articles of Incorporation in relevant parts, as follows:

Mirabilis Ventures, Inc. (the "Company") has been authorized to issue seventy-five thousand (75,000) shares of Class A capital common stock ("Black Stock" or "Black Shares") with no par value, six million (6,000,000) shares of Class B preferred stock ("Green Stock" or "Green Shares") with no par value, one million (1,000,000) shares of Class P preferred stock ("Gold Stock" or "Gold Shares") with no par value, four hundred thousand (400,000) shares of Class T preferred stock ("Platinum Stock" or "Platinum Shares") with no par value, and twelve million (12,000,000) shares of Class Z preferred stock ("Blue Stock" or "Special Preferred Stock" or "Blue Shares") with no par value; (collectively, the "Shares")

### Class A Common Stock: Black Stock

1.01   Black Stock Defined. The Company shall issue, to each Recipient of Class A Common Stock, shares of Black Stock as a means of evidencing ownership interest and participation in the business of the Company. As used in this Agreement, the term "Recipient" shall mean any individual who purchases or receives any class or classes of Company Stock.

1.02   Non Registration and Illiquidity of Black Stock. Black Stock has not been and will not be registered under the laws or regulations of any jurisdiction for offer or sale to any of the Shareholder or subsequent third parties. Each party hereby represents and warrants that he or she has acquired such Black Shares for his or her own account, for investment only, and without a view to any transfer, redistribution or resale of any of the Black Shares to be acquired by such party. The parties acknowledge that the Company has relied upon such representations in issuing such Black Shares without prior registration. The parties recognize that their investment in the Company will be illiquid, and that applicable securities laws and regulations may require them to hold their Black Shares indefinitely unless they can affect a registration of such stock or obtain an exemption from such registration.

1.03   Waiver of Transfer Rights of Black Stock. Each party forever waives, denounces, foregoes, and yields any right they may have pursuant to current state or federal law to transfer their Black Shares.

1.04   Additional Distributions. Shareholders of Black Stock shall be entitled to share, pro-rata, one-third (1/3) of the total sum of any additional distribution approved pursuant to Section 6.05 of this Agreement.

1.05   Limited Alienability of Black Stock. Each party understands, upon accepting

the Black Shares, that such shares are non-alienable other than to the AQMI Trust which shall become funded immediately upon the incapacity, death, or disability of a Shareholder of Black Stock, as those terms are defined in said AQMI Trust; provided, however, that if seventy-five (75%) percent of the Shareholder of Platinum Shares (each such Shareholder hereinafter referred to individually as "Tenured Shareholder" or jointly as "Tenured Shareholder") and fifty (50%) percent of the Shareholders of Gold Shares (each such Shareholder hereinafter referred to individually as "Preferred Shareholder" or jointly as "Preferred Shareholder") approve, then said Black Shares may be transferred to any such identified and approved party. Each party agrees, as a condition to any transfer of stock permitted by this Agreement, other than to the AQMI Trust, to obtain an opinion of legal counsel, in form and substance reasonably satisfactory to the Company and its legal counsel, that such transfer will not result in a violation of any securities law or regulation stock will bear the legend set forth in Section 6, below, as notice to any prospective transferee that such common stock is unregistered.

    1.06   Veto Rights of Black Stock. Except as provided herein, any Shareholder of at least twenty-five thousand (25,000) Black Shares shall have the ability to veto of any decision made by the other classes of Shareholders, within twenty (20) days of notice of said decision ("Veto Power"). Notice may be satisfied by posting a copy of said modification to the Company webpage in a clearly designated location where Shareholders can access the information. Notwithstanding the foregoing, the Veto Power shall not extend to:

        A.      Veto the issuance of Gold Shares;

        B.      Veto the issuance of Platinum Shares; or

        C.      Veto the authorization of an additional distribution.

    1.07   Amendments to Bylaws or Articles of Incorporation. Other than to amend the number of shares authorized for distribution, Black Shares may not amend the bylaws or articles of incorporation of the Company without the consent of 1/3 of the Preferred Shareholder and a majority of the Tenured Shareholder; provided however, that Black Shares may cause an amendment to the bylaws or articles without consent if there is sufficient funds to cause the redemption of all Green Shares, Gold Shares, and Platinum Shares at seventy-five (75%) percent of One Thousand Dollars ($1,000) per share. In the event that the Black Shares cause the amendment to the bylaws or articles without consent, notice shall be given to the Shareholder of said change within seventy-two (72) hours. Notice may be satisfied by posting a copy of said modification to the Company webpage in a clearly designated location where Shareholder can access the information. For a period of thirty (30) days thereafter, any Shareholder of Green Shares, Gold Shares or Platinum Shares may present to the Company their shares for redemption in accordance with the terms of this Agreement. After said thirty (30) day period has lapsed, no further requests for redemption resulting from the modification shall be entertained by the Company and each such remaining Shareholder shall be deemed to have waived any objection to said modification, and shall be further deemed to have given their tacit approval to said

modification.

      1.08   Redemption of Black Stock Upon Bankruptcy or Marital Dissolution.  Upon the filing by any Shareholder of Black Stock for Marital Dissolution (whether as a Petitioner or Respondent) or for Bankruptcy, whether voluntary or involuntary, or the attachment, seizure by legal process, or other involuntary transfer of any Black Stock, the Company shall automatically transfer to the AQMI Trust any such shares to which a spouse would be entitled, or to which a bankruptcy trustee or insolvency or judgment could attach, with such transfer being made for the sum of One Hundred Thousand Dollars ($100,000). Said payment by the AQMI Trust shall be made in the form of a promissory note for the full redemption price, plus simple interest accruing at a rate of three (3%) percent per annum, payable by the Company in a lump sum payment of all principal and accrued interest at the end of one year; provided, however, that there shall be no prepayment penalty under the terms of the promissory note. Nothing in this paragraph shall be deemed to give any ownership interest in the Black Stock to any spouse. It is specifically acknowledged that it is the intention of the Company that each such share given to an individual is given as their sole and separate property, and was given or sold to the individual based on their unique and individual contribution to the Company. In furtherance hereof, at the time the Black Shares are distributed, each such non-Shareholder spouse shall be required to execute an acknowledgement and waiver of any communal interest in the Black Shares.

      1.09   Redemption of Black Shares Upon Death of Shareholder.  Upon the death of any Shareholder, the Company shall redeem all of such deceased Shareholder's Black Shares at a price computed pursuant to a separate Black Shares acquisition agreement previously entered by and between a Shareholder of Blue Shares and the Company, which specifically addresses the issue of the redemption price for said Shareholder of Black Shares. Said payment shall be distributed to the decedent's estate and or its beneficiaries pursuant to the will of a deceased Shareholder or laws of intestacy. Said redemption shall occur according to the following payout schedule:

      A.   Twenty-five (25%) percent of the total redemption price shall be paid within forty-five (45) days of death;

      B.   Twenty-five (25%) percent of the total redemption price shall be paid on the first anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest;

      C.   Twenty-five (25%) percent of the total redemption price shall be paid on the second anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest; and

      D.   Twenty-five (25%) percent of the total redemption price shall be paid on the third anniversary of the date of death, plus interest on the total outstanding

redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest.

### Class B Standard Preferred Stock:  Green Stock

2.01   Green Stock Defined.  The Company shall issue, to each Recipient of Class B Standard Preferred Stock, shares of Green Stock as a means of evidencing ownership interest and participation in the business of the Company.

2.02   Non Registration and Illiquidity of Green Stock.  Green Stock has not been and will not be registered under the laws or regulations of any jurisdiction for offer or sale to any of the Shareholder or subsequent third parties.  Each party hereby represents and warrants that he or she has acquired such Green Shares for his or her own account, for investment only, and without a view to any transfer, redistribution or resale of any of the Green Shares to be acquired by such party.  The parties acknowledge that the Company has relied upon such representations in issuing such Green Shares without prior registration.  The parties recognize that their investment in the Company will be illiquid, and that applicable securities laws and regulations may require them to hold their Green Shares indefinitely unless they can affect a registration of such stock or obtain an exemption from such registration.

2.03   Waiver of Transfer Rights of Green Stock.  Each party forever waives, denounces, foregoes, and yields any right they may have pursuant to current state or federal law to transfer their Green Shares, other than as specifically provided for in this Agreement.

2.04   Non-Alienability of Green Stock.  Each party understands, upon accepting the Green Shares that such shares are non-alienable; provided, however, that upon acceptance as a Preferred Shareholder, any such Green Stock held by said Preferred Shareholder shall be assumed by the Company as treasury shares and shall be exchanged in accordance with the terms of Section 3.04 of this Agreement.

2.05   Voting Rights of Green Stock.  Green Stock shall have limited voting rights.  Holders of Green Stock shall have the right to vote their shares only on the approval of an additional distribution or any such vote which, by state law, requires the approval of each class of shares.  No other voting rights shall be conferred on to the Green Shares.

2.06   Additional Distributions.  Holders of Green Stock shall be entitled to share, in conjunction with all Holders of Gold Stock, pro-rata, one-third (1/3) of the total sum of any additional distribution approved pursuant to Section 6.05 of this Agreement.

2.07   Redemption Upon Departure of the Company.  Upon the termination,

retirement, resignation, or legal determination of incompetence (hereinafter collectively referred to as "Triggering Event") of a Shareholder of Green Shares, then said Green Shares shall be redeemed by the Company at a price of $1,000.00, per Green Share with such payment being made in the form of an unsecured promissory note payable in equal installments, over a period of sixty (60) months, and accruing simple interest at the rate of three (3%) percent per annum.  Said note shall be delivered to said Shareholder of Green Shares within thirty (30) days of the occurrence of a Triggering Event.

    2.08   <u>Redemption of Green Stock Upon Bankruptcy or Marital Dissolution.</u>  Upon the filing by any Shareholder of Green Stock for Marital Dissolution (whether as a Petitioner or Respondent) or for Bankruptcy, whether voluntary or involuntary, or the attachment, seizure by legal process, or other involuntary transfer of any Green Stock, the Company shall redeem any such shares to which a spouse would be entitled, or to which a bankruptcy trustee or insolvency or judgment could attach, with such redemption being made at a price of $1,000.00, per Green Share.  Said payment shall be made in the form of a promissory note for the full redemption price, payable by the Company over a period of sixty (60) months, and which shall accrue interest at a rate of three (3%) percent per annum.  Nothing in this paragraph shall be deemed to give any ownership interest in the Green Stock to any spouse.  It is specifically acknowledged that it is the intention of the Company that each such share given to an individual is given as their sole and separate property, and was given or sold to the individual based on their unique and individual contribution to the Company.  In furtherance hereof, at the time the Shares are distributed, each such non-Shareholder spouse shall be required to execute an acknowledgement and waiver of any communal interest in the Shares.

    2.09   <u>Redemption of Green Shares Upon Death of Shareholder.</u>  Upon the death of any Shareholder, the Company shall redeem all of such deceased Shareholder's Green Shares at a price of $1,000.00, per Green Share and distribute them to the decedent's estate and or beneficiaries pursuant to the will of a deceased Shareholder or laws of intestacy.  Said redemption shall occur according to the following payout schedule:

    A.    Twenty-five (25%) percent of the total redemption price shall be paid within forty-five (45) days of death;

    B.    Twenty-five (25%) percent of the total redemption price shall be paid on the first anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest;

    C.    Twenty-five (25%) percent of the total redemption price shall be paid on the second anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest; and

D.      Twenty-five (25%) percent of the total redemption price shall be paid on the third anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest.

### Class P Preferred-Status Preferred Stock: Gold Stock

3.01    Gold Stock Defined.  The Company shall issue, to each Recipient of Class P Preferred-Status Preferred Stock, shares of Gold Stock as a means of evidencing ownership interest and participation in the business of the Company.

3.02    Eligibility for Gold Stock.      In order to be eligible for Gold Stock, an individual must hold at least three thousand (3,000) Green Shares.  Thereafter, at the next convened regular Gold Stock Committee meeting or special Gold Stock Committee meeting convened for the purpose of considering the same, any such eligible Shareholder of Green Shares shall be considered for Gold Stock.  Said regular meeting shall occur not less than once in every twelve month period.  The determination of the Gold Stock Committee shall be final, and approval for Gold Stock may be withheld in the Gold Stock Committee's sole and unfettered discretion.  Any individual not granted approval for Gold Stock shall be reconsidered during subsequent Gold Stock Committee meetings which consider the extension of invitations for the issuance of Gold Stock.

3.03    Gold Stock Committee.  As used in this Agreement, the "Gold Stock Committee" refers to any individual who holds Gold Stock.  Decisions of the Gold Stock Committee shall be based on majority vote.  Gold Stock Committee members may appear in person, via phone, or other communication method to actively participate in the meeting.  Members holding Gold Stock as of the date of this Agreement shall not require Gold Stock Committee approval.

3.04    Issuance of Gold Stock.  Each individual who has been authorized to receive Gold Stock shall surrender three thousand (3,000) shares of their Green Stock to the Company, which shall be assumed as treasury shares.  In exchange for the surrendered Green Stock, the Company shall issue on a 1:1 basis Gold Stock to the individual.  Nothing in this Section 3.04 shall preclude a Gold Shareholder from obtaining additional shares of Green Stock, however, no individual shall, in any case, own greater than 5,000 shares of Gold Stock.

3.05    Non Registration and Illiquidity of Gold Stock.  Gold Stock has not been and will not be registered under the laws or regulations of any jurisdiction for offer or sale to any of the Shareholder or subsequent third parties.  Each party hereby represents and warrants that he or she has acquired such Gold Shares for his or her own account, for investment only, and without a view to any transfer, redistribution or resale of any of the Gold Shares to

be acquired by such party. The parties acknowledge that the Company has relied upon such representations in issuing such Gold Shares without prior registration. The parties recognize that their investment in the Company will be illiquid, and that applicable securities laws and regulations may require them to hold their Gold Shares indefinitely unless they can affect a registration of such stock or obtain an exemption from such registration.

3.06   <u>Waiver of Transfer Rights of Gold Stock.</u>   Each party forever waives, denounces, foregoes, and yields any right they may have pursuant to current state or federal law to transfer their Gold Shares, other than as specifically provided for in this Agreement.

3.07   <u>Non-Alienability of Gold Stock.</u>   Each party understands, upon accepting the Gold Shares that such shares are non-alienable; provided, however, that upon acceptance as a Tenured Shareholder, any such Gold Stock held by said Tenured Shareholder, shall be assumed by the Company as treasury shares and shall be exchanged in accordance with the terms of Section 4.04 of this Agreement.

3.08   <u>Voting Rights of Gold Stock.</u>   Gold Stock shall vote on the following matters: all matters put to a vote of the Shareholders pursuant to statute or the Company bylaws, subscription invitations to Shareholders of Green Shares for their exchange into Gold Stock, subject to the minimum requirements set forth in this Agreement, and for the authorization of additional distributions. No other voting rights shall be conferred on to the Gold Shares.

3.09   <u>Additional Distributions.</u> Holders of Gold Stock shall be entitled to share, in conjunction with all Holders of Green Stock, pro-rata, one-third (1/3) of the total sum of any additional distribution approved pursuant to Section 6.05 of this Agreement.

3.10   <u>Redemption Upon Departure of the Company.</u>   Upon the termination, retirement, resignation, or legal determination of incompetence (hereinafter collectively referred to as "Triggering Event") of a Shareholder of Gold Shares, then said Gold Shares shall be redeemed by the Company at the amount computed pursuant to a separate Gold Shares acquisition agreement previously entered by and between a Shareholder of Gold Shares and the Company, which specifically addresses the issue of the redemption price for said Shareholder of Gold Shares. Any payments made under this section shall be made in the form of an unsecured promissory note payable in equal installments, over a period of sixty (60) months, and accruing simple interest at the rate of three (3%) percent per annum. Said note shall be delivered to said Shareholder of Gold Shares within thirty (30) days of the occurrence of a Triggering Event.

3.11   <u>Redemption of Gold Stock Upon Bankruptcy or Marital Dissolution.</u> Upon the filing by any Shareholder of Gold Stock for Marital Dissolution (whether as a Petitioner

or Respondent) or for Bankruptcy, whether voluntary or involuntary, or the attachment, seizure by legal process, or other involuntary transfer of any Gold Stock, the Company shall redeem any such shares to which a spouse would be entitled, or to which a bankruptcy trustee or insolvency or judgment could attach, with such redemption being made at the amount computed pursuant to a separate Gold Shares acquisition agreement previously entered by and between a Shareholder of Gold Shares and the Company, which specifically addresses the issue of the redemption price for said Shareholder of Gold Shares.  Said payment shall be made in the form of a promissory note for the full redemption price, payable by the Company over a period of sixty (60) months, and which shall accrue interest at a rate of three (3%) percent per annum. Nothing in this paragraph shall be deemed to give any ownership interest in the Gold Stock to any spouse. It is specifically acknowledged that it is the intention of the Company that each such share given to an individual is given as their sole and separate property, and was given or sold to the individual based on their unique and individual contribution to the Company. In furtherance hereof, at the time the Shares are distributed, each such non-Shareholder spouse shall be required to execute an acknowledgement and waiver of any communal interest in the Shares.

3.12    Redemption of Gold Shares Upon Death of Shareholder.  Upon the death of any Shareholder, the Company shall redeem all of such deceased Shareholder's Gold Shares at the amount computed pursuant to a separate Gold Shares acquisition agreement previously entered by and between a Shareholder of Gold Shares and the Company, which specifically addresses the issue of the redemption price for said Shareholder of Gold Shares and distribute them to the decedent's estate and or beneficiaries pursuant to the will of a deceased Shareholder or laws of intestacy.  Said redemption shall occur according to the following payout schedule:

A.    Twenty-five (25%) percent of the total redemption price shall be paid within forty-five (45) days of death;

B.    Twenty-five (25%) percent of the total redemption price shall be paid on the first anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest;

C.    Twenty-five (25%) percent of the total redemption price shall be paid on the second anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest; and

D.    Twenty-five (25%) percent of the total redemption price shall be paid on the third anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest.

### Class T Tenured-Status Preferred Stock; Platinum Stock

4.01    Platinum Stock Defined.   The Company shall issue, to each Recipient of Class T Preferred-Status Preferred Stock, shares of Platinum Stock as a means of evidencing ownership interest and participation in the business of the Company.

4.02    Eligibility for Platinum Stock.   In order to be eligible for Platinum Stock, an individual must hold five thousand (5,000) Gold Shares.  Thereafter, at the next convened regular Platinum Stock Committee meeting or special Platinum Stock Committee meeting convened for the purpose of considering the same, any such eligible Shareholder of Gold Shares shall be considered for Platinum Stock.   Said regular meeting shall occur not less than once in every twelve month period.   The determination of the Platinum Stock Committee shall be final, and approval for Platinum Stock may be withheld in the Platinum Stock Committee's sole and unfettered discretion. Any individual not granted approval for Platinum Stock shall be reconsidered during subsequent Platinum Stock Committee meetings which consider the extension of invitations for the issuance of Platinum Stock.

4.03    Platinum Stock Committee.   As used in this Agreement, the "Platinum Stock Committee" refers to any individual who holds Platinum Stock.  Decisions of the Platinum Stock Committee shall require two-thirds (2/3) of the Committee's affirmative vote. Platinum Stock Committee members may appear in person, via phone, or other communication method to actively participate in the meeting.  Until such time as there are six (6) Shareholders of Platinum Shares, decisions reserved for the Platinum Stock Committee shall be made by a majority vote of the Shareholders of Black Stock.

4.04    Issuance of Platinum Stock.   Each individual who has been authorized to receive Platinum Stock shall surrender all five thousand (5,000) shares of their Gold Stock to the Company, which shall be assumed as treasury shares.  In exchange for the surrendered Gold Stock, the Company shall issue on a 1:1 basis Platinum Stock to the individual. Nothing in this Section 4.04 shall preclude a Platinum Shareholder from obtaining additional shares of Green Stock, however, no individual shall, in any case, own greater than 5,000 shares of Platinum Stock.

4.05    Non Registration and Illiquidity of Platinum Stock.   Platinum Stock has not been and will not be registered under the laws or regulations of any jurisdiction for offer or sale to any of the Shareholder or subsequent third parties.  Each party hereby represents and warrants that he or she has acquired such Platinum Shares for his or her own account, for investment only, and without a view to any transfer, redistribution or resale of any of the Platinum Shares to be acquired by such party.  The parties acknowledge that the Company has relied upon such representations in issuing such Platinum Shares without prior registration.  The parties recognize that their investment in the Company will be illiquid, and that applicable securities laws and regulations may require them to hold their Platinum Shares indefinitely unless they can affect a registration of such stock or obtain an exemption from such registration.

**4.06   Waiver of Transfer Rights of Platinum Stock.**  Each party forever waives, denounces, foregoes, and yields any right they may have pursuant to current state or federal law to transfer their Platinum Shares.

**4.07   Non-Alienability of Platinum Stock.**   Each party understands, upon accepting the Platinum Shares that such shares are non-alienable.

**4.08   Voting Rights of Platinum Stock.**   Platinum Stock shall vote on the following matters:  subscription invitations to Shareholders of Gold Shares for their exchange into Platinum Stock, subject to the minimum requirements set forth in this Agreement, for the authorization of additional distributions, and any such vote which, by state law, requires the approval of each class of shares.   No other voting rights shall be conferred on to the Platinum Shares.

**4.09   Additional Distributions.**   Holders of Platinum Stock shall be entitled to share, pro-rata, one-third (1/3) of the total sum of any additional distribution approved pursuant to Section 6.05 of this Agreement.

**4.10   Redemption Upon Departure of the Company.**   Upon the termination, retirement, resignation, or legal determination of incompetence (hereinafter collectively referred to as "Triggering Event") of a Shareholder of Platinum Shares, then said Platinum Shares shall be redeemed by the Company at the amount computed pursuant to a separate Platinum Shares acquisition agreement previously entered by and between a Shareholder of Platinum Shares and the Company, which specifically addresses the issue of the redemption price for said Shareholder of Platinum Shares. Any payments made under this section shall ·be made in the form of an unsecured promissory note payable in equal installments, over a period of sixty (60) months, and accruing simple interest at the rate of three (3%) percent per annum.   Said note shall be delivered to said Shareholder of Platinum Shares within thirty (30) days of the occurrence of a Triggering Event.

**4.11   Redemption of Platinum Stock Upon Bankruptcy or Marital Dissolution.**  Upon the filing by any Shareholder of Platinum Stock for Marital Dissolution (whether as a Petitioner or Respondent) or for Bankruptcy, whether voluntary or involuntary, or the attachment, seizure by legal process, or other involuntary transfer of any Platinum Stock, the Company shall redeem any such shares to which a spouse would be entitled, or to which a bankruptcy trustee or insolvency or judgment could attach, with such redemption being made at the amount computed pursuant to a separate Platinum Shares acquisition agreement previously entered by and between a Shareholder of Platinum Shares and the Company, which specifically addresses the issue of the redemption price for said Shareholder of Platinum Shares. Said payment shall be made in the form of a promissory note for the full redemption price, payable by the Company over a period of sixty (60) months, and which

shall accrue interest at a rate of three (3%) percent per annum. Nothing in this paragraph shall be deemed to give any ownership interest in the Platinum Stock to any spouse. It is specifically acknowledged that it is the intention of the Company that each such share given to an individual is given as their sole and separate property, and was given or sold to the individual based on their unique and individual contribution to the Company. In furtherance hereof, at the time the Shares are distributed, each such non-Shareholder spouse shall be required to execute an acknowledgement and waiver of any communal interest in the Shares.

4.12   _Redemption of Platinum Shares Upon Death of Shareholder._  Upon the death of any Shareholder, the Company shall redeem all of such deceased Shareholder's Platinum Shares at the amount computed pursuant to a separate Platinum Shares acquisition agreement previously entered by and between a Shareholder of Platinum Shares and the Company, which specifically addresses the issue of the redemption price for said Shareholder of Platinum Shares and distribute them to the decedent's estate and or beneficiaries pursuant to the will of a deceased Shareholder or laws of intestacy.   Said redemption shall occur according to the following payout schedule:

        A.   Twenty-five (25%) percent of the total redemption price shall be paid within forty-five (45) days of death;

        B.   Twenty-five (25%) percent of the total redemption price shall be paid on the first anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest;

        C.   Twenty-five (25%) percent of the total redemption price shall be paid on the second anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest; and

        D.   Twenty-five (25%) percent of the total redemption price shall be paid on the third anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest.

### Class Z Special Preferred Stock: Blue Stock

5.01   _Blue Stock Defined._  The Company shall issue, to each Recipient of Class Z Special Preferred Stock, shares of Blue Stock as a means of evidencing ownership interest and participation in the business of the Company.

5.02   _Issuance of Blue Stock._  Blue Stock shall be special stock issued from time to time by the Company, at the direction of the Board of Directors.

5.03    Non Registration and Illiquidity of Blue Stock. Blue Stock has not been and will not be registered under the laws or regulations of any jurisdiction for offer or sale to any of the Shareholder or subsequent third parties. Each party hereby represents and warrants that he or she has acquired such Blue Shares for his or her own account, for investment only, and without a view to any transfer, redistribution or resale of any of the Blue Shares to be acquired by such party. The parties acknowledge that the Company has relied upon such representations in issuing such Blue Shares without prior registration. The parties recognize that their investment in the Company will be illiquid, and that applicable securities laws and regulations may require them to hold their Blue Shares indefinitely unless they can affect a registration of such stock or obtain an exemption from such registration.

5.04    Waiver of Transfer Rights of Blue Stock. Each party forever waives, denounces, foregoes, and yields any right they may have pursuant to current state or federal law to transfer their Blue Shares, other than as specifically provided for in this Agreement.

5.05    Non-Alienability of Blue Stock. Each party understands, upon accepting the Blue Shares that such shares are non-alienable.

5.06    Voting Rights of Blue Stock. Blue Stock shall have no voting rights other any such vote which, by state law, requires the approval of each class of shares.

5.07    Distributions. Holders of Blue Stock shall not be entitled to any distributions whatsoever.

5.08    Redemption Upon Departure of the Company. Upon the termination, retirement, resignation, or legal determination of incompetence (hereinafter collectively referred to as "Triggering Event") of a Shareholder of Blue Shares, then said Blue Shares shall be redeemed by the Company at the amount computed pursuant to a separate Blue Shares acquisition agreement previously entered by and between a Shareholder of Blue Shares and the Company, which specifically addresses the issue of the redemption price for said Shareholder of Blue Shares. However, under no circumstances the redemption amount shall exceed $1,000.00 per Blue Share. Any payments made under this section shall be made in the form of an unsecured promissory note payable in equal installments, over a period of sixty (60) months, and accruing simple interest at the rate of three (3%) percent per annum. Said note shall be delivered to said Shareholder of Blue Shares within thirty (30) days of the occurrence of a Triggering Event.

5.09    Redemption of Blue Stock Upon Bankruptcy or Marital Dissolution. Upon the filing by any Shareholder of Blue Stock for Marital Dissolution (whether as a Petitioner or Respondent) or for Bankruptcy, whether voluntary or involuntary, or the attachment,

seizure by legal process, or other involuntary transfer of any Blue Stock, the Company shall redeem any such shares to which a spouse would be entitled, or to which a bankruptcy trustee or insolvency or judgment could attach, with such redemption being made at a price computed pursuant to a separate Blue Shares acquisition agreement previously entered by and between a Shareholder of Blue Shares and the Company, which specifically addresses the issue of the redemption price for said Shareholder of Blue Shares.  However, under no circumstances the redemption amount shall exceed $1,000.00 per Blue Share.  Said payment shall be made in the form of a promissory note for the full redemption price, payable by the Company over a period of sixty (60) months, and which shall accrue interest at a rate of three (3%) percent per annum.  Nothing in this paragraph shall be deemed to give any ownership interest in the Blue Stock to any spouse.  It is specifically acknowledged that it is the intention of the Company that each such share given to an individual is given as their sole and separate property, and was given or sold to the individual based on their unique and individual contribution to the Company.  In furtherance hereof, at the time the Shares are distributed, each such non-Shareholder spouse shall be required to execute an acknowledgement and waiver of any communal interest in the Shares.

5.10    Redemption of Blue Shares Upon Death of Shareholder.  Upon the death of any Shareholder, the Company shall redeem all of such deceased Shareholder's Blue Shares at a price computed pursuant to a separate Blue Shares acquisition agreement previously entered by and between a Shareholder of Blue Shares and the Company, which specifically addresses the issue of the redemption price for said Shareholder of Blue Shares.  However, under no circumstances the redemption amount shall exceed $1,000.00 per Blue Share.  Said payment shall be distributed to the decedent's estate and or beneficiaries pursuant to the will of a deceased Shareholder or laws of intestacy.  Said redemption shall occur according to the following payout schedule:

A.    Twenty-five (25%) percent of the total redemption price shall be paid within forty-five (45) days of death;

B.    Twenty-five (25%) percent of the total redemption price shall be paid on the first anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest;

C.    Twenty-five (25%) percent of the total redemption price shall be paid on the second anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest; and

D.    Twenty-five (25%) percent of the total redemption price shall be paid on the third anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest.

**MINUTES OF THE NOVEMBER 20, 2006**
**SPECIAL MEETING OF BOARD OF DIRECTORS OF**
**MIRABILIS VENTURES, INC.**

A special meeting of the Board of Directors of Mirabilis Ventures, Inc., a Florida corporation (the "Corporation"), was convened at 2:00 p.m. on November 20, 2006.

Present at the meeting were Chairman Laurie Holtz, James V. Sadrianna, Jason Carlson (via telephone), Frank Hailstones (via telephone), and Richard E. Berman, Esq. (via telephone), which constituted a quorum of the Directors of the Corporation. All directors have waived notice of the meeting. Also present were Fernando Simo (via telephone), William Walsh (via telephone), Frank L. Amodeo, Thomas A. Sadaka, Esq. and Scott M. Goldberg, Esq. Chairman Holtz headed the meeting and, at the request of Chairman Holtz, Scott M. Goldberg, Esq. acted as Secretary.

The Chairman called the meeting to order and stated that a quorum of the Board of Directors was present for the conduct of business.

Thereafter, Mr. Amodeo, guest speaker and consultant to the Corporation, made a presentation to the Board of Directors on strategic recommendations for the election and removal of certain officers and directors of the Corporation to allow for the Corporation's continued growth and prosperity through next year. Mr. Amodeo also recommended that if the Board of Directors approves such removal and election of officers, that a transition period of at least thirty (30) days be implemented between the outgoing and incoming officers.

Furthermore, Mr. Amodeo recommended that the Corporation allow for a press release to be issued shortly after the authorization and appointment of the new officers to inform the general public of the new changes to the Corporations officers and Board of Directors.

NOW, THEREFORE, upon motion duly made, seconded, and approved by the Board of Directors, the following resolutions were unanimously adopted:

RESOLVED, that the Board of Directors authorize and appoint the following individuals as officers of the Company with such appointment effective as of the date of these resolutions on the date hereof and continuing thereafter until such time as their successors have been nominated, qualified, elected and/or appointed:

| | |
|---|---|
| Fernando Simo | CEO & President |
| William Walsh | CFO & Executive Vice President |
| Jason Carlson | COO & Executive Vice President |
| Richard E. Berman, Esq. | Secretary & Executive Vice President |

and be it;

FURTHER RESOLVED, that the officers listed above shall be transitioned into their new office position over the next thirty (30) days and that such officers shall serve as officers commencing on January 1, 2007; and be it,

**FURTHER RESOLVED,** that Board of Directors shall present a list of recommended directors to the Shareholders at the Corporation's Shareholders' Meeting on December 15, 2006 for consideration, approval and appointment to the Board of Directors, which shall be composed of a nine (9) member board.  On the proposed list of directors shall be the following individuals:

Fernando Simo
William Walsh
Jason Carlson
Richard E. Berman, Esq.
Frank Hailstones

In addition to the directors listed above, the Board of Directors will recommend that four (4) additional independent directors be appointed to the Board of Directors with Mr. Laurie Holtz to serve as one (1) of the independent directors (and continue to serve as Chairman) together with three (3) additional directors who shall be named by the Board of Directors prior to the Corporation's Shareholders' Meeting; and be it,

**FURTHER RESOLVED,** that the Board of Directors authorizes the Corporation to issue a press release informing the general public of the new officers and new Board of Directors as soon as possible; and be it,

**FURTHER RESOLVED,** that Fernando Simo, President, or any of the other officers of the Corporation, are hereby authorized and directed to take any and all such actions and to execute and deliver any and all such additional agreements, documents and instruments as they may deem necessary and appropriate to carry out the foregoing resolutions.

The next meeting of the Board of Directors was then scheduled for December 15, 2006.

There being no further business before the meeting, the meeting was adjourned at 2:30 p.m.

Respectfully submitted,

Scott M. Goldberg, Esq., Acting Secretary

Approved:

Laurie Holtz, Chairman

## WAIVER OF NOTICE OF THE SPECIAL MEETING OF
## THE BOARD OF DIRECTORS OF MIRABILIS VENTURES, INC.

The undersigned, constituting a quorum of the directors of Mirabilis Ventures, Inc., do hereby waive notice and call of the time, place and purpose of the Special Meeting of the Board of Directors, and hereby consent that the time and place for holding said meeting shall be 2:00 p.m. on the 20th day of November 2006, at 111 North Orange Avenue, Suite 2000, Orlando, Florida 32801, and do hereby further consent to all actions taken thereat.

**DIRECTORS:**

By:   Laurie Holtz, Chairman

By:   Richard E. Berman, Esq.

By:   Frank Hailstones

By:   James V. Sadrianna

By:   Jason Carlson

## WAIVER OF NOTICE OF THE SPECIAL MEETING OF THE BOARD OF DIRECTORS OF MIRABILIS VENTURES, INC.

The undersigned, constituting a quorum of the directors of Mirabilis Ventures, Inc., do hereby waive notice and call of the time, place and purpose of the Special Meeting of the Board of Directors, and hereby consent that the time and place for holding said meeting shall be 2:00 p.m. on the 20th day of November 2006, at 111 North Orange Avenue, Suite 2000, Orlando, Florida 32801, and do hereby further consent to all actions taken thereat.

**DIRECTORS:**

By: _____
    Laurie Holtz, Chairman

By: _____
    James V. Sadrianna

By: _____
    Richard E. Berman, Esq.

By: _____
    Jason Carlson

By: _____
    Frank Hailstones

**UNANIMOUS WRITTEN CONSENT**
**OF THE BOARD OF DIRECTORS**
**MIRABILIS VENTURES, INC.**
**IN LIEU OF A SPECIAL MEETING**

The undersigned, being a Director of Mirabilis Ventures, Inc., a Nevada corporation (the "Company"), hereby makes the following written statement in lieu of holding a special meeting, pursuant to the terms of Nevada Law:

**RESOLVED,** that the following individual is appointed as sole representative on behalf of Mirabilis Ventures, Inc. to secure the building located at 3801 Carolina Ave., Richmond, VA:

Allen Archer

**FURTHER RESOLVED,** that any acting member of the Company be, and hereby is, authorized, empowered, and directed, in the name and on the behalf of the Company, to take such additional action and to execute and deliver such additional agreements, documents and instruments as he may deem necessary or appropriate to implement the provisions of the foregoing resolutions, the authority for the taking of such action and the execution and delivery of such agreements, documents, and instruments to be conclusively evidenced thereby.

Dated: October 18, 2006

**MIRABILIS VENTURES, INC.,**
a Nevada corporation

James V. Sadrianna, Director

## MIRABILIS VENTURES, INC.
## OFFICER'S CERTIFICATE

The undersigned, Richard Berman, being the duly elected, qualified and acting Secretary of Mirabilis Ventures, Inc., a Nevada corporation (the "Company"), does hereby certify as follows:

1.     Attached hereto as **Exhibit A** is a true and correct copy of resolutions duly adopted by the Board of Directors of the Company approving the terms of, and authorizing the execution and delivery of that certain Agreement for the Purchase and Sale of Common Stock, entered into this 31st day of August and having an effective date of January 1, 2007, by and among, the Company, Avant Services, Inc., a Nevada corporation, BCA Professional Services, Inc., a Pennsylvania corporation, BCA Employee Management Group, Inc., a Pennsylvania corporation, and James Vandevere, Individually, (the "Purchase Agreement") and any and all agreements, documents, certificates or instruments executed in connection therewith (collectively the "Transaction Documents"), and authorizing the Company's officers to take any and all actions necessary to execute and deliver the Transaction Documents and to consummate the transactions contemplated thereby.

2.     Attached hereto as **Exhibit B** is a true and correct copy of the Company's By-Laws, as amended, in full force and effect on the date hereof.

3.     The persons named below are duly elected, qualified and acting officers of the Company, holding the offices set forth opposite their names below, and their respective genuine signatures appear opposite their names below.

| Name | Office | Signature |
|------|--------|-----------|
| Frank Hailstones | President | |
| Richard Berman | Secretary | |

IN WITNESS WHEREOF, I have executed this certificate this 31st day of August, 2006.

MIRABILIS VENTURES, INC.,
a Nevada corporation

Richard Berman, Secretary

# MIRABILIS VENTURES, INC.
## OFFICER'S CERTIFICATE

The undersigned, Richard E. Berman, being the duly elected, qualified and acting Secretary of Mirabilis Ventures, Inc., a Nevada corporation (the "Company"), does hereby certify as follows:

1.   Attached hereto as Exhibit A is a true and correct copy of resolutions duly adopted by the Board of Directors of the Company approving the terms of, and authorizing the execution and delivery of that certain (i) Agreement for the Purchase and Sale of Stock, dated contemporaneously, by and between, the Company and Wellington Capital Group, Inc., a Nevada corporation ("Wellington") (the "Purchase Agreement"); (ii) Term Note of even date herewith in the original principal amount of Five Million and 00/100 Dollars ($5,000,000.00), made by the Company in favor of Wellington; and (iii) any and all agreements, documents, certificates or instruments executed in connection therewith, (collectively the "Transaction Documents"), and authorizing the Company's officers to take any and all actions necessary to execute and deliver the Transaction Documents and to consummate the transactions contemplated thereby.

2.   Attached hereto as Exhibit B is a true and correct copy of the Company's By-Laws, as amended, in full force and effect on the date hereof.

3.   The persons named below are duly elected, qualified and acting officers of the Company, holding the offices set forth opposite their names below, and their respective genuine signatures appear opposite their names below.

| Name | Office | Signature |
|------|--------|-----------|
| Frank Hailstones | President |  |
| Richard E. Berman | Secretary |  |

IN WITNESS WHEREOF, I have executed this certificate this 31st day of August, 2006.

MIRABILIS VENTURES, INC.,
a Nevada corporation

Richard E. Berman, Secretary

## MINUTES OF THE MAY 19, 2006 MEETING OF BOARD OF DIRECTORS OF MIRABILIS VENTURES, INC.

The meeting of the Board of Directors of Mirabilis Ventures, Inc. convened at 12:25 p.m. on May 19, 2006.

Present at the meeting were Chairman Laurie Holtz, Vice-Chair Edie Curry, Dr. Robert Pollack, James V. Sadrianna, Jason Carlson (via telephone), Bruce Walko, Frank Hailstones, Richard Berman, and Tom Broadhead constituting all of the Directors of the Corporation. Chairman Holtz headed the meeting and, at the request of Chairman Holtz, Philip S. Kaprow acted as Secretary. Also present were Fernando Simo, Frank Amodeo, Glenn Thompson, Linda Thompson, and Philip S. Kaprow.

The Chairman called the meeting to order and stated that a quorum of the Board of Directors was present for the conduct of business.

Upon motion duly made, seconded and unanimously carried, the Minutes from the March 23, 2006 Board of Director meeting were approved.

The Chairman then provided a report regarding the Nexia Certification Program.

Thereafter, Frank Amodeo, guest speaker made a presentation to the Board of Directors on the importance of performance in addition to loyalty as corporate factors in retention.

Thereafter progress on the projects which had May 19, 2006 deadlines were discussed, and upon motion duly made, seconded, the following resolution was unanimously carried:

RESOLVED, that at the next board meeting, the following committees shall give reports on their respective projects: Risk/Audit, Compensation/Hiring, Executive;

BE IT FURTHER RESOLVED, that the budget schedule shall be discussed as an agenda item for the next board meeting;

BE IT FURTHER RESOLVED, that copies of the contracts with Berman, Kean, & Riguera, P.A. shall be provided to the Board at the next board meeting; and that the Executive Committee prior to the board meeting shall convene, and if appropriate, recommend ratification of the contracts to the Board;

Thereafter the composition of the standing committees were discussed, and upon motion duly made, seconded, the following resolution was unanimously carried:

BE IT RESOLVED, that the Executive Committee shall add the following individuals to the Committee: Fernando Simo, Richard Berman, Edie Curry-Broadhead;

BE IT FURTHER RESOLVED, that the Investment Committee shall remove the

following individuals from the Committee:  Paul Glover, Dan Myers;

      **BE IT FURTHER RESOLVED,** that the Investment Committee shall add the following individuals to the Committee:  Shane Williams, Jim Vandevere;

      Thereafter the board discussed the schedule for the issuance of shares and issuance of bonus monies, to be completed by the next Board Meeting.

      Thereafter the board discussed acquisitions, new entities, exception letters, and directors actions, and upon motion duly made, seconded and unanimously carried:

      **RESOLVED,** that the following acquisitions undertaken by Mirabilis Ventures, Inc. are hereby ratified, affirmed, and approved:

| Corporate Name | Month/Year | Capital Contribution |
|---|---|---|
| It's Your Move | 3/06 | $20,000.00 |
| Venture Resources, Inc. | 3/06 | $800,000.00 |
| The Lieb Group, LLC | 3/06 | $463,933.14 |
| Winpar Hospitality Chattanooga, LLC | 3/06 | $3,100,000.00 |
| Carolina Avenue Building, Richmond | 5/06 | $1,400,000.00 |

      **BE IT FURTHER RESOLVED,** that the following are entities created by Mirabilis Ventures, Inc., the creation and maintenance of which are hereby ratified, affirmed, and approved:

| Corporate Name | Month/Year |
|---|---|
| CHS of America, Inc. | 3/06 |
| HR Remedies, Inc. | 4/06 |
| SIPS Team USA, Inc. | 4/06 |
| Kevin Munroe Consulting, LLC | 5/06 |

      **BE IT FURTHER RESOLVED,** that the following exception letters, tentatively approved by the Executive Committee are hereby ratified, affirmed, and approved:

| Name | Date |
|---|---|
| Robert E. Lieb | 04/01/06 |
| Michael A. O'Sullivan | 04/01/06 |
| Marc Plaisted | 04/01/06 |
| Laurie S. Holtz | 04/01/06 |
| Larry Childers | 04/05/06 |
| Tony Bruno | 04/12/06 |

| Jeffrey Burns | 04/12/06 |
|---|---|
| Dana Allen | 04/12/06 |
| Felix Alvardo | 04/18/06 |
| Kelly Tomeo | 04/19/06 |
| Angela West | 04/25/06 |
| Shane Cobb | 04/25/06 |
| Thomas M. Batchelor | 05/03/06 |
| Natalia Warren | 05/03/06 |
| Georges Vilches | 05/03/06 |
| Dr. Walter F. Smith, Jr. | 05/05/06 |
| Charles Saba*** | 05/05/06 |
| Matthew Jennings | 05/11/06 |
| Gary E. Oksutcik*** | 05/14/06 |

*** still being negotiated

**BE IT FURTHER RESOLVED**, that the actions taken by each director of Mirabilis Ventures, Inc. between March 23, 2006 and May 19, 2006 are hereby ratified and affirmed.

The Board then discussed the merits of seeking an outside valuation of the shares of stock to determine (i) its currently stated value, (ii) its actual value, and (iii) reasonable expectations for a stock recipient. Richard Berman and Frank Hailstones volunteered to speak with an outside valuation firm and report back at the next meeting.

The next meeting of the Board of Directors was then scheduled for June 13, 2006.

There being no further business before the meeting, the meeting was adjourned at 2:31 p.m.

*After the meeting and prior to the completion of minutes, the Board of Directors canceled the June 13, 2006 meeting, and it will be rescheduled for July 2006, at a date, time, and location to be determined.*

Respectfully submitted,

Philip S. Kaprow, Acting Secretary

Approved:

Laurie Holtz, Chairman

## WAIVER OF NOTICE OF THE 5-19-06 MEETING

### OF THE BOARD OF DIRECTORS

### OF

### MIRABILIS VENTURES, INC.

The undersigned, being all of the Directors of Mirabilis Ventures, Inc., a corporation organized under the laws of the State of Nevada, do hereby waive all of the statutory requirements as to notice of the time, place and purpose of the 5-19-06 meeting of the Board of Directors of said Corporation, and the publication thereof, and consent that the meeting shall be held at the Florida offices of the Corporation on May 19, 2006 at Orlando, Florida at 12:00 p.m.

_____
Laurie Holtz, Chairman

_____
Frank Hailstones, Director

_____
Edie Curry, Director

_____
Jason Carson, Director

_____
James V. Sadrianna, Director

_____
Robert Pollack, MD, Director

_____
Richard E. Berman, Director

_____
Bruce Walko, Director

_____
Tom Broadhead, Director

MINUTES OF THE MARCH 23, 2006 MEETING
OF BOARD OF DIRECTORS OF
MIRABILIS VENTURES, INC.

The meeting of the Board of Directors of Mirabilis Ventures, Inc. convened at 11:16 a.m. on March 23, 2006.

Present at the meeting were Edie Curry, Dr. Robert Pollack, James V. Sadrianna, Jason Carlson, Bruce Walko, and Frank Hailstones constituting all of the Directors of the Corporation. Chairman Walko headed the meeting and, at the request of Chairman Walko, Philip S. Kaprow acted as Secretary. Also present was Fernando Simo, Paul Glover, Alan Archer, Richard Berman, Frank Amodeo, Laurie Holtz, Shane Williams, Tom Broadhead, and Philip S. Kaprow.

The Chairman called the meeting to order and stated that a quorum of the Board of Directors was present for the conduct of business.

Upon motion duly made, seconded and unanimously carried, the Minutes from the February 15, 2006 Board of Director meeting were approved.

The board first reviewed the status of all committee work to be completed no later than April 1, 2006.

Thereafter, Frank Amodeo, guest speaker made a presentation to the Board of Directors on the subject of Corporate Governance, Acquisition, and Case Absolute Un-retractable Parameters.

Upon motion duly made, seconded and unanimously carried, the following resolution was carried:

RESOLVED, that on or before May 19, 2006, the Risk/Audit Committee present the board with proposed committee members and standard operating procedure for the selection and retention of legal counsel for each region of the Company;

BE IT FURTHER RESOLVED, that on or before May 19, 2006, the Compensation/Hiring Committee present the board with proposed changes to the Common Paymaster Employee Handbook and base pay and bonus compensation schedules;

BE IT FURTHER RESOLVED, that on or before May 19, 2006, the Executive Committee present the board with proposed standard operating procedure and guidelines for the use of corporate assets and vehicles;

BE IT FURTHER RESOLVED, that on or before May 19, 2006, the budgets for the remainder of fiscal year 2006 and a proposed rolling eighteen (18) month budget for Mirabilis Ventures, Inc. and each affiliate and subsidiary companies be presented to the board; and

BE IT FURTHER RESOLVED, that, on or before April 15, 2006 Mirabilis Ventures, Inc. shall either enter into a long-term contract with Berman, Kean, & Riguera, P.A. or in

the alternative to identify alternate legal counsel for the provision of general counsel services to Mirabilis Ventures, Inc. and all affiliate and subsidiary companies, and that said contract shall be presented to the board on or before May 19, 2006 for ratification.

The Board then considered the membership of various committees.

Upon motion duly made, seconded and unanimously approved, it was

RESOLVED, that the below committees of Mirabilis Ventures, Inc. are comprised of the following individuals and no other:

Executive Committee:   Laurie Holtz, Frank Hailstones, James Sadrianna
Audit/Risk Committee:  Richard Berman, Frank Hailstones, Edie Curry-Broadhead
Compensation/Hiring Committee:  Larry Haber, Marty Flynn, Shane Cobb, Tom Broadhead
Investment Committee:  Robert Pollack, MD, Tom Broadhead, Jason Carlson, Frank Hailstones, Paul Glover, Fernando Simo, Horton Johnson, Dan Myers, Richard Berman

BE IT FURTHER RESOLVED, that pursuant to the direction of the Class A Common Shareholders, subject to any preferred shareholders rights pursuant to the Company bylaws or shareholders agreement, that the following individuals shall comprise the Board of Directors, with their tenure commencing upon adjournment of this meeting:

· Laurie Holtz           Bruce Walko
Richard Berman         Tom Broadhead
Jason Carlson ·        Edie Curry-Broadhead
James V. Sadrianna     Robert W Pollack, MD
Frank Hailstones

BE IT FURTHER RESOLVED, that effective the adjournment of this meeting that Bruce Walko shall remain on the board, but shall yield his position as chairman to Laurie Holtz who shall thereafter be the new, full voting and participant chairman of the Board.

BE IT FURTHER RESOLVED, that effective the adjournment of this meeting, that Edie Curry-Broadhead shall become the Vice-Chair of Mirabilis Ventures, Inc.

The board next considered, and upon motion duly made, seconded, and unanimously approved the following:

RESOLVED, that the April 3, 2006 evening meeting by Frank Hailstones, is hereby authorized, ratified and approved;

BE IT FURTHER RESOLVED, that the April 7, 2006 Orlando Magic event is hereby authorized, ratified and approved;

**BE IT FURTHER RESOLVED,** that the development of a relationship with Continuum Enterprises as a preferred vendor provider is hereby authorized, ratified, and approved;

**BE IT FURTHER RESOLVED,** that the investment committee is authorized to commit $8,000,000 for acquisitions in April, 2006 and $8,000,000 for acquisitions in May, 2006, with the closings to take place on those acquisitions in subsequent months.

Thereafter the Board considered, and upon motion duly made, seconded, and unanimously approved it was:

**RESOLVED,** that the Consulting Agreement between AQMI Strategy Corporation and Mirabilis Ventures, Inc. for the consultation on discretionary bonuses is hereby ratified and approved.

Thereafter the Board considered, and upon motion duly made, seconded, and unanimously approved it was:

**RESOLVED,** that the following exception letters, tentatively approved by the Executive Committee are hereby ratified, affirmed, and approved:

| Date | Name |
|---|---|
| 1/25/06 | Fernando Simo |
| 1/27/06 | Jason Brownell |
| 1/31/06 | Michael Stanley |
| 2/13/06 | F.S. Winsett |
| 2/22/06 | Kellie Ledbetter |
| 2/22/06 | David Chaviers |
| 2/22/06 | Tom Hancock |
| 2/26/06 | Mark Lang |
| 2/25/06 | Lyle Gluck |
| 3/1/06 | Aaron Bates |
| 3/10/06 | Scott Fender |
| 3/15/06 | Steve Zadrick |
| 3/15/06 | Michael Hering |
| 3/18/06 | Sophie Kaye |
| 3/18/06 | Caprice LaCroix |
| 3/18/06 | Michael Miller |
| 3/18/06 | Daniel Mule |
| 3/18/06 | Sheri Pasqual |
| 3/18/06 | Carol Ruiz |
| 3/20/06 | Ronald Harrigan |
| 3/21/06 | James E. Abbott |
| 3/21/06 | Angelo J. Miceli |
| 3/22/06 | Jenny Freeman |
| 3/22/06 | Gregory Wolbers |
| 3/22/06 | Kelli M. Slaughter |

| 3/22/06 | Nancy A. Adams |
|---------|----------------|

**BE IT FURTHER RESOLVED,** that future exception letters be approved by the Risk/Audit Committee and ratified by the Board of Directors.

Thereafter, the Board considered, and upon motion duly made, seconded, and unanimously approved it was:

**RESOLVED,** that the following are entities created by Mirabilis Ventures, Inc., the creation and maintenance of which are hereby ratified, affirmed, and approved:

| Corporate Name | Month/Year |
|----------------|------------|
| Centerpoint CS, LLC | 1/06 |
| Lake Suites Hotel, Inc. | 3/06 |
| Mirabilis Baseball, LLC | 1/06 |
| Common Paymaster III Corporation | 2/06 |
| Common Paymaster II Corporation | 3/06 |
| Investment Title Services, Inc. | 3/06 |
| Statim Satelite Corporation | 1/06 |

Thereafter the board considered, and upon motion duly made, seconded, and unanimously approved it was:

**RESOLVED,** that the following acquisitions and capital expenditures undertaken by Mirabilis Ventures, Inc. are hereby ratified, affirmed, and approved:

| Corporate Name | Month/Year | Capital Expenditure |
|----------------|------------|---------------------|
| Centerpoint CS, LLC | 3/06 | Non-monetary consideration |
| SecureSolutions, LLC | 3/06 | $940,000.00 |
| RF Scientific, Inc. | 3/06 | $350,000.00 |
| It's Your Move, Inc. | 3/06 | $20,000.00 |
| LTSS, LLC | 3/06 | $1,250,000.00 |
| Hancock Group, LLC | 2/06 | $2,500,000.00 |
| Auke Hempenius Enterprises, Inc. | 2/06 | $9,000.00 |
| 3801 Carolina Avenue | 3/06 | $171,512.78 |
| World Wrestling Legends, LLC | 2/06 | $200,000.00 |
| Nexia Strategy, LTD | 2/06 | $150,000.00 |
| Lake Ellen | 3/06 | $100,000.00 |
| Premier HR, Inc. | 2/06 | $600,000.00 |
| Hendricks | 2/06 | $2,347,196.39 |

Thereafter the Board considered, and upon motion duly made, seconded, and unanimously approved it was:

**RESOLVED,** that the Agreement between AQMI Strategy Corporation and Mirabilis Ventures, Inc. dated November 1; 2004 for consultation services, be restated and ratified.

Thereafter, the Board considered, and upon motion duly made, seconded, and unanimously approved it was:

**RESOLVED,** that the actions taken by each director of Mirabilis Ventures, Inc. between February 15, 2006 and March 23, 2006 are hereby ratified and approved.

Thereafter there was a presentation by the Acquisition Division regarding the status of all projects being currently considered for acquisition by the Company.

Thereafter there was a presentation by Laurie Holtz on the subject of Business Alignment and Control.

The next meeting of the Board of Directors was then scheduled for May 19, 2006 at 12:00 PM at a location to be determined not less than ten (10) days before the meeting.

There being no further business before the meeting, the meeting was adjourned at 1:13 p.m.

Respectfully submitted,

Philip S. Keprow, Acting Secretary

Approved:

Bruce Walko, Chairman

## WAIVER OF NOTICE OF THE 3-23-06 MEETING

## OF THE BOARD OF DIRECTORS

## OF

## MIRABILIS VENTURES, INC.

The undersigned, being all of the Directors of Mirabilis Ventures, Inc., a corporation organized under the laws of the State of Nevada, do hereby waive all of the statutory requirements as to notice of the time, place and purpose of the special meeting of the Board of Directors of said Corporation, and the publication thereof, and consent that the meeting shall be held at the Florida offices of the Corporation on March 23, 2006 at Orlando, Florida at 11:00 a.m.

_____
Bruce Walko, Chairman

_____
Frank Hailstones, Director

_____
Edie Curry, Director

_____
Jason Carlson, Director

_____
James V. Sadrianna, Chairman Director

_____
Robert Pollack, MD, Director

## MIRABILIS VENTURES, INC.

### CERTIFICATE OF PRESIDENT

The undersigned, Frank Hailstones, hereby certifies that he is the duly elected, qualified and acting President of Mirabilis Ventures, Inc., a Nevada corporation (the "Company"), and, to the best of his knowledge, information and belief, that:

1.      The warranties and representations made by the Company in the Agreement for the Purchase and Sale of Common Stock, and related documents by and among the Company, RF Scientific, Inc., and its Shareholders, dated contemporaneously herewith (collectively, the "Transaction Documents"), are true and correct in all material respects on and as of the date hereof as if such warranties and representations had been made on and as of the date hereof, without any additions, deletions or modifications to any of the schedules or exhibits to the Transaction Documents; and

2.      As of the date hereof, the Company has performed, in all material respects, all of the covenants and complied with all of the provisions required by the Transaction Documents to be performed and complied with by it at or before Closing (as defined in the Transaction Documents); and

3.      As of the date hereof, no statute, regulation or order of any governmental body is in effect that restrains or prohibits the transactions contemplated by the Transaction Documents, and there has not been threatened, nor is there pending, any action or proceeding by or before any governmental body challenging the lawfulness of or seeking to prevent or delay any of the transactions contemplated by the Transaction Documents or any other agreement ancillary thereto or executed and delivered in connection therewith, memorializing the transactions contemplated thereby or seeking monetary or other relief against the Company by reason of the consummation of such transactions.

IN WITNESS WHEREOF, the undersigned has executed this certificate this 21st day of March, 2006.

MIRABILIS VENTURES, INC.
a Florida corporation

By: Frank Hailstones
Its:  President

# MIRABILIS VENTURES, INC.

## OFFICER'S CERTIFICATE

The undersigned, Richard E. Berman, Esq., the duly elected, qualified and acting Secretary of Mirabilis Ventures, Inc., a Nevada corporation (the "Company"), does hereby certify as follows:

1.      Attached hereto as **Exhibit "A"** is a true and correct copy of resolutions duly adopted by the Board of Directors of the Company by written consent, approving the terms of, and the authorizing, execution and delivery of, the "Agreement for the Purchase and Sale of Common Stock," by and among the Company, RF Scientific, Inc., a Florida corporation, and its Shareholders dated contemporaneously herewith (the "Purchase Agreement"), and all other instruments and agreements incident to, and necessary and appropriate for, the consummation of the transaction contemplated by such document.

2.      The persons named below are the duly elected, qualified and acting officers of the Company, holding the offices set forth opposite their names below, and their genuine signatures appear opposite their names below.

| Name | Office | Signature |
|------|--------|-----------|
| Frank Hailstones | President | |
| Richard E. Berman, Esq. | Secretary | |

**IN WITNESS WHEREOF,** I, the undersigned, acting in my capacity as Secretary of the Company, have executed this certificate this 21st day of March, 2006.

MIRABILIS VENTURES, INC.,
a Nevada corporation

Richard E. Berman, Esq., Secretary

## EXHIBIT "A"

## RESOLUTIONS ADOPTED BY THE DIRECTORS OF
## MIRABILIS VENTURES, INC., A NEVADA CORPORATION

**RESOLVED,** that the form, terms and conditions of the "Agreement for the Purchase and Sale of Common Stock," by and among the Mirabilis Ventures, Inc., a Nevada corporation (the "Corporation"), RF Scientific, Inc., a Florida corporation, and its shareholders, dated contemporaneously herewith (the "Purchase Agreement"), the final version of which has been presented to each member of the Board of Directors of the Corporation and filed with the minutes of the Corporation, and the transactions contemplated thereby, be and hereby is in all respects approved; and be it

**FURTHER RESOLVED,** that the officers of the Corporation be, and each acting alone is, authorized, empowered and directed for and on behalf of the Corporation to execute and deliver the Purchase Agreement with such changes therein and additions thereto as such officer or officers shall in his, her or their sole discretion approve, the execution and delivery of the Purchase Agreement by such officer or officers to be conclusive evidence of approval of such document as so executed and delivered; and be it

**FURTHER RESOLVED,** that the officers of the Corporation be, and each acting alone hereby is, authorized, empowered and directed for and on behalf of the Corporation to take any and all actions necessary to consummate the transactions contemplated by the Purchase Agreement.

Dated: March 21, 2006

James V. Sadrianna, Director
Signing on behalf of all Directors
of Mirabilis Ventures, Inc.

## MIRABILIS VENTURES, INC.

### CERTIFICATE OF PRESIDENT

The undersigned, Frank Hailstones, hereby certifies that he is the duly elected, qualified and acting President of Mirabilis Ventures, Inc., a Nevada corporation (the "Company"), and, to the best of his knowledge, information and belief, that:

      1.     The warranties and representations made by the Company in the Operating Agreement, and related documents by and among the Company, Centerpoint, LLC, and Centerpoint CS, LLC, dated contemporaneously herewith (collectively, the "Transaction Documents") are true and correct in all material respects on and as of the date hereof as if such warranties and representations had been made on and as of the date hereof, without any additions, deletions or modifications to any of the schedules or exhibits to the Transaction Documents; and

      2.     As of the date hereof, the Company has performed, in all material respects, all of the covenants and complied with all of the provisions required by the Transaction Documents to be performed and complied with by it at or before Closing (as defined in the Transaction Documents); and

      3.     As of the date hereof, no statute, regulation or order of any governmental body is in effect that restrains or prohibits the transactions contemplated by the Transaction Documents, and there has not been threatened, nor is there pending, any action or proceeding by or before any governmental body challenging the lawfulness of or seeking to prevent or delay any of the transactions contemplated by the Transaction Documents or any other agreement ancillary thereto or executed and delivered in connection therewith, memorializing the transactions contemplated thereby or seeking monetary or other relief against the Company by reason of the consummation of such transactions.

      IN WITNESS WHEREOF, the undersigned has executed this certificate this $15^{TR}$ day of March, 2006.

MIRABILIS VENTURES, INC., a Nevada corporation

By: _____

Frank Hailstones, President

## MIRABILIS VENTURES, INC.

### ACTION BY WRITTEN CONSENT
### IN LIEU OF BOARD OF DIRECTORS MEETING

On this the 13th day of March, 2006, pursuant to the authority of §607.0821 "Action by directors without a meeting" of the Florida Business Corporation Act, the undersigned, on behalf of all of directors of MIRABILIS VENTURES, INC., a Nevada corporation (the "Corporation"), in lieu of their annual meeting, do hereby affirmatively vote for, consent to, adopt and approve the following resolutions by written consent:

**BE IT RESOLVED,** that Dan Myers is authorized to open any and all Special Project banking accounts on behalf of the Corporation at any financial institution(s) in his sole discretion; and be it,

**RESOLVED,** that Dan Myers is hereby appointed as signatory on any and all Special Project banking accounts, which he opens for the Corporation; and be it,

**RESOLVED,** that Dan Myers shall provide written notice of the opening of such Special Project banking account to the President of the Corporation, or to at least one (1) board member of the Corporation, within twenty-four (24) hours after such account has been opened; and be it,

**FURTHER RESOLVED,** that Dan Myers is hereby authorized and directed in the name of, and on behalf of, this Corporation to take any and all such actions as he shall deem necessary or advisable to carry out the foregoing resolutions.

Dated:  March 13, 2006.

DIRECTOR:

Frank Hailstones, President and Director

## MINUTES OF THE FEBRUARY 15, 2006 MEETING
## OF BOARD OF DIRECTORS OF
## MIRABILIS VENTURES, INC.

The meeting of the Board of Directors of Mirabilis Ventures, Inc. convened at 12:25 p.m. on February 15, 2006.

Present at the meeting were Edie Curry (appearing by telephone), Dr. Robert Pollack, James V. Sadrianna, Jason Carlson, and Frank Hailstones, consisting of all of the voting Directors of the Corporation. Also present was Philip S. Kaprow. Absent was Chairman Bruce Walko. James V. Sadrianna was asked to chair the meeting and Philip S. Kaprow acted as Secretary.

Chairman Sadrianna called the meeting to order and stated that a quorum of the Board of Directors was present for the conduct of business.

The Secretary thereafter presented and read a Waiver of Notice to the meeting signed by all of the Directors of the Corporation, which was ordered to be made a part of the Minutes of this meeting.

The minutes from the January 26, 2005 meeting were reviewed, and upon motion duly made, seconded and unanimously carried, the minutes were approved.

The Board of Directors then considered the presentment of committee members for approval, and the following motion was thereafter duly made, seconded and unanimously carried:

**RESOLVED,** that the Executive Committee shall consist of Frank Hailstones, Paul Glover, Richard Berman, and James V. Sadrianna.

**BE IT FURTHER RESOLVED,** that upon commencement of his employment with Mirabilis Ventures, Inc. that Fernando Simos shall also be a member of the Executive Committee.

**BE IT FURTHER RESOLVED,** that the Investment Committee shall consist of James Vandevere, James Sadrianna, Jason Carlson, Richard Berman, and Robert Pollack, MD.

**BE IT FURTHER RESOLVED,** that the Risk/Audit Committee shall consist of Edie Curry.

**BE IT FURTHER RESOLVED,** that the Compensation/Hiring Committee shall consist of Lawrence Haber and Tom Broadhead.

**BE IT FURTHER RESOLVED,** that the Global Development Committee shall consist of Hans Beyers and Linda Duncan.

**BE IT FURTHER RESOLVED,** that each committee shall provide, not more than seven days prior to each regularly scheduled board meeting a committee report which shall identify decisions which the committee requires from the board, issues to be advised on by the board, and

requests for information from the board. Not more than two (2) days prior to each regularly scheduled board meeting, the board of directors shall determine which, if any, of the committee chairs shall be required to be present for the committee discussions at the board meeting.

Thereafter upon motion being duly made, seconded and unanimously carried, it was

RESOLVED, that the five classes of shares (A, B, P, T, and Z) as identified in the Shareholders Agreement, along with the rights and privileges associated thereto, are hereby re-ratified and affirmed.

BE IT FURTHER RESOLVED, that the officers are authorized to issue up to the authorized and outstanding number of shares as identified with the State of Nevada, and in accordance with the limits set forth in the Shareholder's Agreement, without further action by the Board.

BE IT FURTHER RESOLVED, that any third party may expressly rely on this resolution as a representation and warranty that Mirabilis Ventures, Inc. is authorized to issue stock in connection with transactions or other agreements being entered into by Mirabilis Ventures, Inc.

Thereafter upon motion being duly made, seconded and unanimously carried, it was

RESOLVED that the following acquisitions undertaken by Mirabilis Ventures, Inc. are hereby ratified, affirmed, and approved

| Corporate Name | Month/Year | Capital Contribution |
|---|---|---|
| Absolute Packaging | 2/06 | Earnout NTE $765,000 |
| DVD Marketing Group, Inc. | 2/06 | $10,000 |

Thereafter upon motion being duly made, seconded and unanimously carried, it was

RESOLVED, that in addition to any other Board meetings which are scheduled from time to time, the Board of Directors shall meet, at a minimum on the following dates and in the following locations:

February 15, 2006    Orlando
May 19, 2006         Richmond
August 18, 2006      Minnesota
November 15, 2006    Orlando

Thereafter upon motion being duly made, seconded and unanimously carried, it was

RESOLVED, that the Board of Directors, in accordance with §3.17 of the Company Bylaws, create and establish the following committee:

Consulting & Services Committee

**BE IT FURTHER RESOLVED,** that the purpose of the Consulting & Services Committee shall be to oversee the national and international development, roll out and performance of the Mirabilis Ventures, Inc. consulting practice, in particular:

1. Determine Risk Management procedures to protect Mirabilis Ventures, Inc. interests in accepting either or both consulting clients and projects
2. Approve Engagement Guidelines for consulting projects
3. Approve the Mirabilis Ventures, Inc. Consulting Business Plan and monitor performance against it
4. Monitor quality to Mirabilis Ventures, Inc. Quality Standards in executing consulting engagements through reports/ representations from Regional Offices
5. Approve participation and potential investment in new consulting products and solutions.

**BE IT FURTHER RESOLVED,** that Jason Carlson be appointed as the Chairperson of the Consulting & Servicing Committee, and that said Chairperson serve until replaced by the Board or Directors or is otherwise removed from office.

Thereafter, upon motion being duly made, seconded, and unanimously carried, it was

**RESOLVED,** that the actions taken by each director of Mirabilis Ventures, Inc. between January 25, 2006 and February 15, 2006 are hereby ratified and affirmed.

The Board of Directors thereafter discussed and scheduled the next Board of Director's meeting for March 23, 2006 from 12:00 p.m. until 2:00 p.m. at the Orlando Offices of the Corporation.

There being no further business, the Chairman adjourned the meeting at 1:04 p.m.

Respectfully submitted,

Philip S. Kaprow, Acting Secretary

Approved:

James V. Sadrianna, Acting Chairman

## WAIVER OF NOTICE OF THE 2-15-06 MEETING

## OF THE BOARD OF DIRECTORS

## OF

## MIRABILIS VENTURES, INC.

The undersigned, being all of the Directors of Mirabilis Ventures, Inc., a corporation organized under the laws of the State of Nevada, do hereby waive all of the statutory requirements as to notice of the time, place and purpose of the special meeting of the Board of Directors of said Corporation, and the publication thereof, and consent that the meeting shall be held at the Florida offices of the Corporation on February 15, 2006 at Orlando, Florida at 12:00 p.m.

_____
Bruce Walko, Chairman

_____
Frank Hailstones, Director

_____
Edie Curry, Director

_____
Jason Carlson, Director

_____
James V. Sadrianna, Chairman

_____
Robert Pollack, MD, Director

## MINUTES OF THE ANNUAL MEETING
## OF BOARD OF DIRECTORS OF
## MIRABILIS VENTURES, INC.

The meeting of the Board of Directors of Mirabilis Ventures, Inc. convened at 12:12 p.m. on January 25, 2006.

Present at the meeting were Edie Curry (appearing by telephone), Dr. Robert Pollack, James V. Sadrianna, Jason Carlson, and Bruce Walko, constituting all of the Directors of the Corporation. Chairman Walko headed the meeting and Tom Broadhead, acted as Secretary. Also present was Philip S. Kaprow.

The Chairman called the meeting to order and stated that a quorum of the Board of Directors was present for the conduct of business.

Upon motion duly made, seconded and unanimously carried, it was:

**RESOLVED,** that Philip S. Kaprow shall act as the Secretary for the Board of Directors meeting on January 25, 2006 and shall be responsible for taking and accurately reporting the minutes.

The Secretary thereafter presented and read a Waiver of Notice to the meeting signed by all of the Directors of the Corporation, which was ordered to be made a part of the Minutes of this meeting.

The Board of Directors then considered the presentment of resignations of several officers of Mirabilis Ventures, Inc., and the following motion was duly made, seconded and unanimously carried:

**RESOLVED,** that the Company accept the resignation of James V. Sadrianna, as President of Mirabilis Ventures, Inc. effective January 25, 2006.

**BE IT FURTHER RESOLVED,** that the Company accept the resignation of Robert Pollack, MD, as EVP-Strategy of Mirabilis Ventures, Inc. effective January 25, 2006.

**BE IT FURTHER RESOLVED,** that the Company accept the resignation of James M. Vandevere as EVP-Operations of Mirabilis Ventures, Inc. effective January 25, 2006.

**BE IT FURTHER RESOLVED,** that the Company accept the resignation of Tom Broadhead as Secretary/General Counsel of Mirabilis Ventures, Inc. effective January 25, 2006.

**BE IT FURTHER RESOLVED,** that the Company accept the resignation of Daniel Myers as Treasurer of Mirabilis Ventures, Inc. effective January 25, 2006.

**BE IT FURTHER RESOLVED,** that the Company accept the resignation of Kevin Leonard as Controller of Mirabilis Ventures, Inc. effective January 25, 2006.

**BE IT FURTHER RESOLVED,** that the Company accept the resignation of Horton Johnson as EVP-Corporate Development of Mirabilis Ventures, Inc. effective January 25, 2006.

Thereafter, the meeting was suspended pending the Shareholder's meeting of Mirabilis Ventures, Inc., which was scheduled for 4:00 pm on January 25, 2006. During the Shareholder's meeting, the Board of Directors was increased to six individuals, with Bruce Walko, Robert W. Pollack, MD, Jason Carlson, James V. Sadrianna, and Edie Curry continuing on the Board, as well as the addition of Frank Hailstones.

Immediately following the annual meeting of Shareholders, the Board of Directors reconvened at 7:46 pm on January 25, 2006.

Present at the reconvened meeting were Bruce Walko, Robert W. Pollack, MD, Jason Carlson, James V. Sadrianna, and Frank Hailstones, constituting a majority of the Directors of the Corporation. Absent from the meeting was Edie Curry. Chairman Walko headed the meeting and Philip S. Kaprow, a non-director, acted as Secretary.

The reports of the affairs of the Corporation were considered, and the Chairman reviewed the resolutions adopted by the Shareholders at the annual meeting of the Shareholders.

The Board of Directors then considered the following motion, which was duly made, seconded and unanimously carried:

**RESOLVED,** that the Board of Directors welcomes the following Directors:

| | |
|---|---|
| Bruce Walko | James V. Sadrianna |
| Robert W. Pollack, MD | Frank Hailstones |
| Jason Carlson | Edie Curry |

**BE IT FURTHER RESOLVED,** that the Chairman of the Board shall be a non-voting member of the Board of Directors, other than in the event of a tie breaker. In the event of a tie-breaker, the Chairman shall cast the tie-breaking vote.

**BE IT FURTHER RESOLVED,** that the Board of Directors names Bruce Walko to be the Chairman of the Board until removed from office.

The Board of Directors then considered the following motion, which was duly made, seconded and unanimously carried:

**RESOLVED,** that the Company appoint the following officers of Mirabilis Ventures, Inc. to act in their respective capacities as set forth in the Bylaws of the Company until the earlier of the next annual meeting or removal from office:

| | |
|---|---|
| President: | Frank Hailstones |
| EVP-Operations: | Fernando Simo |

EVP-Secretary:      Richard E. Berman
EVP-Treasurer:      Paul Glover

The Board of Directors then considered the following motion, which was duly made, seconded and unanimously carried:

RESOLVED, that the Board of Directors, in accordance with §3.17 of the Company Bylaws, create and establish the following five (5) committees:

Audit/Risk Committee, Compensation/Hiring Committee, Investment Committee, Executive Committee, and Global Development Committee

BE IT FURTHER RESOLVED, that the purpose of the Audit/Risk Committee shall be to examine compliance with corporate governance and auditing procedures as well as to review the risk and impact to the Company of each investment.

BE IT FURTHER RESOLVED, that the purpose of the Compensation/Hiring Committee shall be to examine the Hiring and Compensation policies and procedures as well as to review the ongoing compensation for employees of the Company and the Company's affiliates.

BE IT FURTHER RESOLVED, that the purpose of the Investment Committee shall be to examine the economic and integrative value of each of transaction to the Company as well as to determine whether or not the Company should ultimately fund a proposed investment.

BE IT FURTHER RESOLVED, that the purpose of the Executive Committee shall be to receive reports from the top-tiered management of the Company as well as to oversee the relationship of day to day operations in light of the long terms goals of the Company.

BE IT FURTHER RESOLVED, that the purpose of Global Development Committee shall be to address the global development and expansion of the Company.

BE IT FURTHER RESOLVED, that the following individuals be appointed as the respective Chairpersons of the committees:

Audit/Risk:              Edie Curry
Compensation/Hiring:     Larry Haber
Investment:              Robert Pollack, MD
Executive:               James V. Sadrianna
Global Development:      Hans Beyer

and that said Chairpersons serve until they are replaced by the Board or Directors or are otherwise removed from office.

The Board of Directors then considered the following motion, which was duly made, seconded and unanimously carried:

**RESOLVED**, that Mirabilis Ventures, Inc. engage the services of Berman, Kean, & Riguera, P.A. as general counsel and to serve as the Florida registered agent for Mirabilis Ventures, Inc. and each Mirabilis Ventures, Inc. affiliate or subsidiary entity.

**BE IT FURTHER RESOLVED**, that Mirabilis Ventures, Inc. on or before April 1, 2006 shall either enter into a long term contract with Berman, Kean, & Riguera, P.A. or in the alternative to identify alternate legal counsel for the provision of general counsel services to Mirabilis Ventures, Inc. and all affiliate and subsidiary entities.

The Board of Directors then considered the following motion, which was duly made, seconded and unanimously carried:

**RESOLVED**, that Mirabilis Ventures, Inc. hereby ratifies, affirms, and restates its contract with AQMI Strategy Corporation to provide consultant services on the Capital Genesis model on the terms and conditions previously agreed to between the parties.

The Board of Directors then considered the following motion, which was duly made, seconded and unanimously carried:

**RESOLVED**, that Mirabilis Ventures, Inc. as the sole shareholder of Common Paymaster Corporation, recommends to the Board of Directors of Common Paymaster Corporation to approve the Common Paymaster Corporation Handbook as well as the Common Paymaster Corporation Business Practices and Ethical Standards as it has been presented to the Board of Directors of Mirabilis Ventures, Inc.

**BE IT FURTHER RESOLVED**, that Mirabilis Ventures, Inc., as the sole shareholder of Common Paymaster Corporation, recommend to Common Paymaster Corporation that each employee of Common Paymaster Corporation be required to execute the Receipt and Acknowledgement page of the Common Paymaster Employment Manual and the Receipt and Acknowledgement portion of the Common Paymaster Corporation Business Practices and Ethical Standards on or before March 1, 2006.

The Board of Directors then considered the following motion, which was duly made, seconded and unanimously carried:

**RESOLVED**, that the Risk/Audit Committee is hereby directed to establish, on or before April 1, 2006, a standard operating procedure for the selection and retention of legal counsel in each region of the Company.

The Board of Directors then considered the following motion, which was duly made, seconded and unanimously carried:

**RESOLVED**, that the Compensation/Hiring Committee is hereby directed to establish, on or before April 1, 2006, all proposed changes to the Common Paymaster Employee Handbook and base pay and bonus compensation schedules.

The Board of Directors then considered the following motion, which was duly made, seconded and unanimously carried:

RESOLVED, that the Company seek and enter into, on or before April 1, 2006, an agreement with an AQMI Strategy Corporation to act as a consultant for the award of discretionary bonuses.

The Board of Directors then considered the following motion, which was duly made, seconded and unanimously carried:

RESOLVED, that the Executive Committee is hereby directed to establish, on or before April 1, 2006, a standard operating procedure and guidelines for the use of corporate assets and vehicles.

The Board of Directors then considered the following motion, which was duly made, seconded and unanimously carried:

RESOLVED, that as a matter of corporate policy, effective immediately, Mirabilis Ventures, Inc. shall not pay for relocation costs for newly hired employees.

BE IT FURTHER RESOLVED, that nothing in this resolution shall preclude Mirabilis Ventures, Inc. from paying for relocation costs associated with a temporary or permanent relocation for existing employees, the payment and amount of which shall be considered by the Executive Committee on a case by case basis.

The Board of Directors then considered the following motion, which was duly made, seconded and unanimously carried:

RESOLVED, that as a matter of corporate policy, effective immediately, upon a company being acquired by Mirabilis Ventures, Inc., there is to be no nepotism or preferential hiring of any form, including the hiring of relatives, particularly in the same reporting lines or chains of command.

BE IT FURTHER RESOLVED, that nothing in this resolution shall require Mirabilis Ventures, Inc. to enforce this policy to previously acquired companies.

The Board of Directors then considered the following motion, which was duly made, seconded and unanimously carried:

RESOLVED, that by April 1, 2006 budgets for Mirabilis Ventures, Inc. and each affiliate or subsidiary company shall be prepared for the remainder of fiscal year 2006.

BE IT FURTHER RESOLVED, that by July 1, 2006, a policy for a rolling 18 month budget shall be established for Mirabilis Ventures, Inc. and each affiliate or subsidiary company, and updated budgets of the same shall be provided to the Mirabilis Ventures, Inc. Board of Directors on a monthly basis.

The Board of Directors then considered the following motion, which was duly made, seconded and unanimously carried:

**RESOLVED,** that effective immediately, the hiring of a Managing Director must be ratified by the Board of Directors.

**BE IT FURTHER RESOLVED,** the Executive Committee can hire, on a conditional basis, a Managing Director. Said employment is conditioned upon ratification by the Board of Directors at the next regularly scheduled meeting of the Board of Directors.

The Board of Directors then considered the following motion, which was duly made, seconded and unanimously carried:

**RESOLVED,** that the sale of all Presidion Corporation stock owned by Mirabilis Ventures, Inc. to Titanium Consulting Services, Inc., and the assumption and delegation of the Indemnification Agreement related thereto all be ratified and approved on the terms and conditions agreed upon between the parties.

The Board of Directors then considered the following motion, which was duly made, seconded and unanimously carried:

**RESOLVED,** that Mirabilis Ventures, Inc., as the sole shareholder of Common Paymaster Corporation, ratify the Employment Contract with all proposed amendments thereto approved.

**BE IT FURTHER RESOLVED,** that the Compensation/Hiring Committee is hereby charged with recommending approval of all future changes to the Employment Contract.

**BE IT FURTHER RESOLVED,** that the Executive Committee and with recommending approval for any exceptions or exception letters being sought by employees.

The Board of Directors then considered the following motion, which was duly made, seconded and unanimously carried:

**RESOLVED,** that the following acquisitions undertaken by Mirabilis Ventures, Inc. are hereby ratified, affirmed, and approved:

| Corporate Name | Month/Year | Capital Contribution |
|---|---|---|
| A Very Private Eye, Inc. | 2/05 | $120,000.00 |
| AEM, Inc. | 7/05 | $125,000.00 |
| Allstaff Management, Inc.; Allstaff Personnel Management, Inc.; and Neighborly Services, Inc. | 12/05 | $975,000.00 |
| Axena, Inc. | 10/05 | $667,000.00 |

| | | |
|---|---|---|
| Benecomp National Corp.; Cadent Administrators, Inc.; and Community Health Solutions of America, LLC | 11/05 | $25,000.00 |
| Desert Valley Aviation, Inc. | 11/05 | Non-monetary consideration |
| Empire Global Strategies, Inc. | 12/05 | $301,000.00 |
| The New Florida Industrial Electric, Inc. | 9/05 | $5,000,000.00 |
| Global Vision Group Holdings, LLC | 6/05 | $100,000.00 |
| Inline Marketing Technology, Inc. | 1/06 | $219,161.74 |
| Ionic Services, Inc. | 4/05 | $500,000.00 |
| Kevin D. Munroe, PA | 10/05 | $275,000.00 |
| FLHP-MS, LLC | 11/05 | $2,000,000.00 |
| PowerCentric, Inc.; Provider Management Group, Inc.; and Provima, Inc. | 10/05 | $264,957.78 |
| RKT Constructors, Inc. | 12/05 | $3,000,000.00 |
| Security Imaging Systems, Inc. | 11/05 | $100,000.00 |
| Tactical Intelligence & Investigations, LLC | 1/06 | $200,000.00 |
| Theory3, Inc. | 8/05 | $312,500.00 |
| Two Wheel Tunes, Inc. | 1/06 | $1,000,000.00 |
| World Wrestling Legends, LLC | 12/05 | $50,000.00 |
| Felker Construction Services Corporation | 2/05 | $125,000.00 |
| PRB Design Studio, Inc. | 11/05 | $100.00 |

The Board of Directors then considered the following motion, which was duly made, seconded and unanimously carried:

  **RESOLVED,** that the following are entities created by Mirabilis Ventures, Inc., the creation and maintenance of which are hereby ratified, affirmed, and approved:

| Corporate Name | Month/Year |
|---|---|
| Centro Executive Offices Corporation | 10/04 |
| Cerulean Graphics, Inc. | 09/05 |
| Digiteyes, Inc. | 10/05 |
| EarthSource, Inc. | 12/05 |
| Gibraltar Integrity Corporation | 12/05 |
| GMOFF, LLC | 01/06 |
| The Human Resource | |

| | |
|---|---|
| Enterprise Corporation | 09/05 |
| Information Systems, Inc. | 06/05 |
| Insurance Indemnity Investment, Inc. | 10/05 |
| Legend Holdings of America, Inc. | 06/05 |
| Nexia Strategy Corporation | 04/05 |
| Nexia Strategy, Ltd. | 12/05 |
| Pacific Atlantic STF Corporation | 12/05 |
| Pacific Atlantic Capital Corporation | 11/05 |
| Quasar Construction, Inc. | 10/05 |
| Siren Resources, Inc. | 11/04 |
| Synergy Technology Fabrication, LLC | 12/05 |
| Unex Corporation | 10/05 |
| Universal Analytics, Inc. | 11/05 |
| Ithor Capital, LLC | 12/05 |
| Hoth Holdings, LLC | 12/05 |
| ITHOR LIMITED, LLC | 12/05 |

Thereafter, the next meeting of the Board of Directors was scheduled for February 15, 2006 at 12:00 PM at 111 North Orange Avenue, 20th Floor, Orlando, Florida 32801.

There being no further business before the meeting, it was on motion duly made, seconded and unanimously carried, adjourned at 8:20 p.m.

Respectfully submitted,

Philip S. Kaprow, Acting Secretary

January 25, 2006

Dear Chairman Walko:

Please accept, effective 11:59pm this evening, my resignation as EVP-Corporate Relations of Mirabilis Ventures, Inc.

Very truly yours,

Horton "Woody" Johnson

January 25, 2006

Dear Chairman Walko:

Please accept, effective 11:59pm this evening, my resignation as President of Mirabilis Ventures, Inc.

Very truly yours,

James V. Sadriana

January 25, 2006

Dear Chairman Walko:

Please accept, effective 11:59pm this evening, my resignation as EVP Operations of Mirabilis Ventures, Inc.

Very truly yours,

James M. Vandevere

January 25, 2006

Dear Chairman Walko:

Please accept, effective 11:59pm this evening, my resignation as EVP Strategy of
Mirabilis Ventures, Inc.

Very truly yours,

Robert Pollack, MD

January 25, 2006

Dear Chairman Walko:

Please accept, effective 11:59pm this evening, my resignation as General Counsel of Mirabilis Ventures, Inc.

Very truly yours,

Tom Broadhead

January 25, 2006

Dear Chairman Walko:

Please accept, effective 11:59pm this evening, my resignation as Treasurer of Mirabilis Ventures, Inc.

Very truly yours,

Daniel Myers

## MINUTES OF THE ANNUAL MEETING
## OF THE SHAREHOLDERS OF
## MIRABILIS VENTURES, INC.

The meeting of the Shareholders of Mirabilis Ventures, Inc. convened at 4:00 p.m. on January 25, 2006.

Present at the meeting was Yaniv Amar, sole Class A shareholder, and several Class B shareholder candidates.  Also present was Philip S. Kaprow.  Yaniv Amar was elected chairman, and Philip S. Kaprow was asked to serve as acting secretary.

The Chairman called the meeting to order and stated that a quorum of the Shareholders were present for the conduct of business.

Upon motion duly made, seconded and unanimously carried, it was:

RESOLVED, to adopt the Bylaws of Mirabilis Ventures, Inc. executed by James V. Sadrianna on October 1, 2005.

BE IT FURTHER RESOLVED, to increase, pursuant to Section 3.11 of the Mirabilis Ventures, Inc. bylaws the maximum number of directors from five (5) to nine (9).

BE IT FURTHER RESOLVED, that the following individuals to serve as the Board of Directors until the next annual meeting of the Shareholders or until removed from office:

> Bruce Walko
> James V. Sadrianna
> Robert W. Pollack, MD
> Jason Carlson
> Edie Curry
> Frank Hailstones

BE IT FURTHER RESOLVED, that the Board of Directors are hereby recommended to create five Committees:

> Audit/Risk Committee
> Compensation/Hiring Committee
> Investment Committee
> Executive Committee
> Global Development Committee

and to appoint as chairpersons and members to those committees, individuals which in the Board's judgment, will best serve the needs and interests of the Company.

BE IT FURTHER RESOLVED, that the Board of Directors are hereby recommended to appoint the following slate of officers for the Company:

Frank Hailstones, President & CEO
Fernando Simo, COO
Paul Glover, CFO
Richard Berman, EVP &Corporate Secretary

**BE IT FURTHER RESOLVED,** that the shareholders hereby ratify and approve each action taken by the Board of Directors and Officers for all actions taken through January 25, 2006.

There being no further business before the meeting, it was on motion duly made, seconded and unanimously carried, adjourned at 7:15 p.m.

Respectfully submitted,

Philip S. Kaplow, Acting Secretary

**WRITTEN ACTION OF THE DIRECTORS**
**OF**
**MIRABILIS VENURES, INC.**

December 31, 2005

The undersigned, being and constituting all of the Directors of **MIRABILIS VENTURES, INC.**, a Nevada corporation (the "Corporation" or "MVI"), do hereby consent to the following actions to be taken without a meeting of the Board of Directors of this Corporation:

**BE IT RESOLVED THAT** this Corporation is authorized to issue 156,250 shares of Class B Preferred Stock to the individuals and in the amounts identified on Exhibit "A", attached hereto and incorporated by reference herein, at the price of $0.10 per share.

_____
Jason Carlson, Director

_____
Robert Pollack, MD, Director

_____
Edie Curry, Director

_____
James V. Sadrianna, Director

_____
Bruce Walko, Chairman

## MIRABILIS VENTURES, INC.

### CERTIFICATE OF PRESIDENT

The undersigned, James V. Sadrianna, hereby certifies that he is the duly elected, qualified and acting President of Mirabilis Ventures, Inc., a Nevada corporation (the "Company"), and, to the best of his knowledge, information and belief, that:

1.      The warranties and representations made by the Company in subsection 4(b) of that certain Agreement for the Purchase and Sale of Common Stock, by and among the Company, Jeffrey Reichel, an individual, Allstaff Personnel Management, Inc., a Georgia corporation, Allstaff Management, Inc., a Georgia corporation, and Neighborly Services, Inc., a Georgia corporation dated contemporaneously herewith (the "Purchase Agreement") are true and correct in all material respects on and as of the date hereof as if such warranties and representations had been made on and as of the date hereof, without any additions, deletions or modifications to any of the schedules or exhibits to the Purchase Agreement; and

2.      As of the date hereof, the Company has performed, in all material respects, all of the covenants and complied with all of the provisions required by the Purchase Agreement to be performed and complied with by it at or before Closing (as defined in the Purchase Agreement); and

3.      As of the date hereof, no statute, regulation or order of any governmental body is in effect that restrains or prohibits the transactions contemplated by the Purchase Agreement, and there has not been threatened, nor is there pending, any action or proceeding by or before any Governmental Body (as defined in the Purchase Agreement) challenging the lawfulness of or seeking to prevent or delay any of the transactions contemplated by the Purchase Agreement or any other agreement ancillary thereto or executed and delivered in connection therewith, memorializing the transactions contemplated thereby or seeking monetary or other relief against the Company by reason of the consummation of such transactions.

IN WITNESS WHEREOF, the undersigned has executed this certificate this 29th day of December, 2005.

MIRABILIS VENTURES, INC.,
a Nevada corporation

By: _____
     James V. Sadrianna, President