## AFFIDAVIT OF ROBERT W. POLLACK, MD

FILED
SECRETARY OF STATE
DIVISION OF CORPORATIONS
2005 OCT 24  PM 1:52

STATE OF FLORIDA          )
COUNTY OF ORANGE          )

I, Robert W. Pollack, MD being first duly sworn, deposes and states:

1.      My name is Robert W. Pollack, MD.  I am an Executive Vice President and Director or Mirabilis Ventures, Inc., a Nevada corporation authorized to transact business in the state of Florida.

2.      As of October 1, 2005 the following is the proper list of officers for Mirabilis Ventures, Inc.:

| | |
|---|---|
| James V. Sadrianna | President |
| Robert W. Pollack, MD | EVP Strategy |
| James Vandevere | EVP Operations |
| Horton "Woody" Johnson | EVP Development |
| Dan Myers | Treasurer |
| Tom Broadhead, Esq. | Secretary/General Counsel |

3.      As of October 1, 2005 the following are the proper list of directors for Mirabilis Ventures, Inc.:

Bruce Walko, Chairman of the Board
James V. Sadrianna
Robert W. Pollack, MD
Jason Carlson
Edie Curry

4.      Recognizing the limit of 6 individuals being posted on the internet, the following individuals are intended to be identified by their name and respective title(s) on Sunbiz.org:

| | |
|---|---|
| Bruce Walko | Chairman/D |
| James V. Sadrianna | P/D |
| Robert W. Pollack, MD | EVP/D |
| Dan Myers | T |
| Tom Broadhead | S/General Counsel |
| Edie Curry | D |

5.     I have personally reviewed and have personal knowledge of the foregoing.

**FURTHER AFFIANT SAYETH NOT.**

Robert W. Pollack, MD, EVP

STATE OF FLORIDA          )
COUNTY OF ORANGE     )

The foregoing instrument was acknowledged before me this 21st day of October 2005, by Robert W. Pollack, MD, as EVP of Mirabilis Ventures, Inc. ☑ who is personally known to me or ☐ who has produced his/her State of Florida Driver's License No. _____ as identification and who did/did not take of oath.

Philip S. Kaprow, Notary Public

Philip S. Kaprow
Commission # DD311765
Expires June 28, 2008
Bonded Thru Fain - Insurance, Inc. 800-432-7019

## AFFIDAVIT OF ROBERT W. POLLACK, MD

STATE OF FLORIDA      )
COUNTY OF ORANGE    )

      I, Robert W. Pollack, MD being first duly sworn, deposes and states:

    1.    My name is Robert W. Pollack, MD.  I am an Executive Vice President and Director or Mirabilis Ventures, Inc., a Nevada corporation authorized to transact business in the state of Florida.

    2.    As of October 1, 2005 the following is the proper list of officers for Mirabilis Ventures, Inc.:

| | |
|---|---|
| James V. Sadrianna | President |
| Robert W. Pollack, MD | EVP Strategy |
| James Vandevere | EVP Operations |
| Horton "Woody" Johnson | EVP Development |
| Dan Myers | Treasurer |
| Tom Broadhead, Esq. | Secretary/General Counsel |

    3.    As of October 1, 2005 the following are the proper list of directors for Mirabilis Ventures, Inc.:

Bruce Walko, Chairman of the Board
James V. Sadrianna
Robert W. Pollack, MD
Jason Carlson
Edie Curry

    4.    Recognizing the limit of 6 individuals being posted on the internet, the following individuals are intended to be identified by their name and respective title(s) on Sunbiz.org:

| | |
|---|---|
| Bruce Walko | Chairman/D |
| James V. Sadrianna | P/D |
| Robert W. Pollack, MD | EVP/D |
| Dan Myers | T |
| Tom Broadhead | S/General Counsel |
| Edie Curry | D |

5.      I have personally reviewed and have personal knowledge of the foregoing.

**FURTHER AFFIANT SAYETH NOT.**

_____/s/_____

Robert W. Pollack, MD, EVP

STATE OF FLORIDA          )
COUNTY OF ORANGE     )

The foregoing instrument was acknowledged before me this 21st day of October 2005, by Robert W. Pollack, MD, as EVP of Mirabilis Ventures, Inc. ☑ who is personally known to me or ☐ who has produced his/her State of Florida Driver's License No. _____ as identification and who did/did not take of oath.

_____

Philip S. Kaprow, Notary Public

F05000004040

FILED
SECRETARY OF STATE
DIVISION OF CORPORATIONS
2005 OCT 24 PH 1: 52

900060815009

_____
(Requestor's Name)

_____
(Address)

_____
(Address)

_____
(City/State/Zip/Phone #)

☐ PICK-UP    ☐ WAIT    ☐ MAIL

_____
(Business Entity Name)

_____
(Document Number)

Certified Copies_____   Certificates of Status_____

10/24/05--01051--014   **35.00

Special Instructions to Filing Officer:

Office Use Only

*Affidavit Changing O/D*

√B
10/27



# MIRABILIS

**111 NORTH ORANGE AVENUE, SUITE 2000
ORLANDO, FLORIDA 32801
PH: 407.517.7779 / FX: 407.426.9191**

*Senders direct extension: 407/517-7776*
*Senders email: pkaprow@nextostrategy.com*

October 21, 2005

Department of State
Division of Corporations
Clifton Building
2661 Executive Center Circle
Tallahassee, FL 32301

Dear Sir or Madam:

Enclosed please find the Affidavit of Robert W. Pollack, MD, EVP of Mirabilis Ventures, Inc., a Nevada corporation authorized to transact business in the State of Florida and our check in the amount of Thirty-Five Dollars ($35.00).

Please have the modifications reflected in the Affidavit to the sunbiz.org webpage at your earliest convenience. Please note that paragraph 4 of the Affidavit identifies the parties we wish to have listed on the website.

Please do not hesitate to contact me at the phone number above if you have any questions.

Very truly yours,

Philip S. Kaprow
In House Counsel

## SHAREHOLDERS' AGREEMENT

THIS SHAREHOLDERS' AGREEMENT, dated as of this 22nd day of September, 2005, between and among each and every Shareholder identified on Schedule 1, attached hereto and incorporated by reference herein, as modified from time to time (each and together with any transferee, assignee or other Shareholder of the Company's shares who has agreed to be bound hereby, a "Shareholder") and Mirabilis Ventures, Inc., a Nevada Corporation (the "Company").

## WITNESSETH:

WHEREAS, the Company has previously issued 100 shares of Class A capital common stock, and is currently contemplating the contemporaneous issuance of additional shares of several of stock to the Shareholders; and

WHEREAS, the Company has been authorized to issue seventy-five thousand (75,000) shares of Class A capital common stock ("Black Stock" or "Black Shares"), one million (1,000,000) shares of Class B preferred stock ("Green Stock" or "Green Shares"), one million (1,000,000) shares of Class P preferred stock ("Gold Stock" or "Gold Shares"), four hundred thousand (400,000) shares of Class T preferred stock ("Platinum Stock" or "Platinum Shares"), and twenty-five thousand (25,000) shares of Class Z preferred stock ("Blue Stock" or "Special Preferred Stock" or "Blue Shares") (collectively, the "Shares"), all of which have no par value; and

WHEREAS, the Shareholders each own and hold the number of shares of Black Stock of the company as identified on Schedule 2, Green Stock of the company as identified on Schedule 3, Gold Stock of the company as identified on Schedule 4, Platinum Stock of the company as identified on Schedule 5, and Blue Stock of the company as identified on Schedule 6, attached hereto and incorporated by reference herein, as modified from time to time; and

WHEREAS, the Shareholders wish to enter into this Agreement to set forth their mutual understandings regarding the operation and control of the Company and the disposition of the Shares held by them.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants and conditions set forth herein, the parties hereto agree as follows:

## Article I
## Class A Common Stock: Black Stock

1.01   Black Stock Defined.   The Company shall issue, to each Recipient of Class A Common Stock, shares of Black Stock as a means of evidencing ownership interest and participation in the business of the Company.   As used in this Agreement, the term "Recipient" shall mean any individual who purchases or receives any class or classes of Company Stock.

1.02   Non Registration and Illiquidity of Black Stock.   Black Stock has not been and will not be registered under the laws or regulations of any jurisdiction for offer or sale to any of the Shareholder or subsequent third parties. Each party hereby represents and warrants that he or she

has acquired such Black Shares for his or her own account, for investment only, and without a view
to any transfer, redistribution or resale of any of the Black Shares to be acquired by such party. The
parties acknowledge that the Company has relied upon such representations in issuing such Black
Shares without prior registration. The parties recognize that their investment in the Company will
be illiquid, and that applicable securities laws and regulations may require them to hold their Black
Shares indefinitely unless they can affect a registration of such stock or obtain an exemption from
such registration.

1.03   Waiver of Transfer Rights of Black Stock. Each party forever waives, denounces,
foregoes, and yields any right they may have pursuant to current state or federal law to transfer their
Black Shares.

1.04   Additional Distributions. Shareholders of Black Stock shall be entitled to share, pro-
rata, one-third (1/3) of the total sum of any additional distribution approved pursuant to Section
6.05 of this Agreement.

1.05   Limited Alienability of Black Stock. Each party understands, upon accepting the
Black Shares, that such shares are non-alienable other than to the AQMI Trust which shall become
funded immediately upon the incapacity, death, or disability of a Shareholder of Black Stock, as
those terms are defined in said AQMI Trust; provided, however, that if seventy-five (75%) percent
of the Shareholder of Platinum Shares (each such Shareholder hereinafter referred to individually as
"Tenured Shareholder" or jointly as "Tenured Shareholder") and fifty (50%) percent of the
Shareholders of Gold Shares (each such Shareholder hereinafter referred to individually as
"Preferred Shareholder" or jointly as "Preferred Shareholder") approve, then said Black Shares may
be transferred to any such identified and approved party. Each party agrees, as a condition to any
transfer of stock permitted by this Agreement, other than to the AQMI Trust, to obtain an opinion
of legal counsel, in form and substance reasonably satisfactory to the Company and its legal
counsel, that such transfer will not result in a violation of any securities law or regulation stock will
bear the legend set forth in Section 6, below, as notice to any prospective transferee that such
common stock is unregistered.

1.06   Veto Rights of Black Stock. Except as provided herein, any Shareholder of at least
twenty-five thousand (25,000) Black Shares shall have the ability to veto of any decision made by
the other classes of Shareholders, within twenty (20) days of notice of said decision ("Veto
Power"). Notice may be satisfied by posting a copy of said modification to the Company webpage
in a clearly designated location where Shareholders can access the information. Notwithstanding
the foregoing, the Veto Power shall not extend to:

    A.    Veto the issuance of Gold Shares;
    B.    Veto the issuance of Platinum Shares; or
    C.    Veto the authorization of an additional distribution.

1.07   Amendments to Bylaws or Articles of Incorporation. Other than to amend the
number of shares authorized for distribution, Black Shares may not amend the bylaws or articles of
incorporation of the Company without the consent of 1/3 of the Preferred Shareholder and a
majority of the Tenured Shareholders; provided however, that Black Shares may cause an

amendment to the bylaws or articles without consent if there is sufficient funds to cause the redemption of all Green Shares, Gold Shares, and Platinum Shares at seventy-five (75%) percent of their face value of One Thousand Dollars ($1,000) per share (hereinafter "Face Value"). In the event that the Black Shares cause the amendment to the bylaws or articles without consent, notice shall be given to the Shareholder of said change within seventy-two (72) hours. Notice may be satisfied by posting a copy of said modification to the Company webpage in a clearly designated location where Shareholder can access the information. For a period of thirty (30) days thereafter, any Shareholder of Green Shares, Gold Shares or Platinum Shares may present to the Company their shares for redemption in accordance with the terms of this Agreement. After said thirty (30) day period has lapsed, no further requests for redemption resulting from the modification shall be entertained by the Company and each such remaining Shareholder shall be deemed to have waived any objection to said modification, and shall be further deemed to have given their tacit approval to said modification.

1.08   <u>Redemption of Black Stock Upon Bankruptcy or Marital Dissolution.</u>   Upon the filing by any Shareholder of Black Stock for Marital Dissolution (whether as a Petitioner or Respondent) or for Bankruptcy, whether voluntary or involuntary, or the attachment, seizure by legal process, or other involuntary transfer of any Black Stock, the Company may, but is not required to, transfer to the AQMI Trust any such shares to which a spouse would be entitled had Schedule 7 hereto not been executed waiving any and all such rights, or to which a bankruptcy trustee or insolvency or judgment could attach, with such transfer being made for the sum of One Hundred Thousand Dollars (100,000). Any such transfer, if made within ninety (90) days of the triggering event described above, shall relate back to midnight on the date of the triggering event. Said payment by the AQMI Trust shall be made in the form of a promissory note for the full redemption price, plus simple interest accruing at a rate of three (3%) percent per annum, payable by the Company in a lump sum payment of all principal and accrued interest at the end of one year; provided, however, that there shall be no prepayment penalty under the terms of the promissory note. Nothing in this paragraph shall be deemed to give any ownership interest in the Black Stock to any spouse. It is specifically acknowledged that it is the intention of the Company that each such share given to an individual is given as their sole and separate property, and was given or sold to the individual based on their unique and individual contribution to the Company. In furtherance hereof, at the time the Black Shares are distributed, each such non-Shareholder spouse shall be required to execute an acknowledgement and waiver of any claim that any interest in the Black Shares constitutes marital property or communal property under the laws of any state or any claim to the equitable distribution thereof which acknowledgment and waiver shall be attached to this Agreement as Schedule 7.

## Article II
### Class B Standard Preferred Stock:  Green Stock

2.01   <u>Green Stock Defined.</u>   The Company shall issue, to each Recipient of Class B Standard Preferred Stock, shares of Green Stock as a means of evidencing ownership interest and participation in the business of the Company.

2.02   <u>Non Registration and Illiquidity of Green Stock.</u>   Green Stock has not been and will not be registered under the laws or regulations of any jurisdiction for offer or sale to any of the

- 3 -

Shareholder or subsequent third parties. Each party hereby represents and warrants that he or she has acquired such Green Shares for his or her own account, for investment only, and without a view to any transfer, redistribution or resale of any of the Green Shares to be acquired by such party. The parties acknowledge that the Company has relied upon such representations in issuing such Green Shares without prior registration. The parties recognize that their investment in the Company will be illiquid, and that applicable securities laws and regulations may require them to hold their Green Shares indefinitely unless they can affect a registration of such stock or obtain an exemption from such registration.

2.03    Waiver of Transfer Rights of Green Stock.  Each party forever waives, denounces, foregoes, and yields any right they may have pursuant to current state or federal law to transfer their Green Shares, other than as specifically provided for in this Agreement.

2.04    Non-Alienability of Green Stock.  Each party understands, upon accepting the Green Shares that such shares are non-alienable; provided, however, that upon acceptance as a Preferred Shareholder, any such Green Stock held by said Preferred Shareholder shall be assumed by the Company as treasury shares and shall be exchanged in accordance with the terms of Article III of this Agreement.

2.05    Voting Rights of Green Stock.  Green Stock shall have limited voting rights. Holders of Green Stock shall have the right to vote their shares only on the approval of an additional distribution or any such vote which, by state law, requires the approval of each class of shares. No other voting rights shall be conferred on to the Green Shares.

2.06    Additional Distributions.  Holders of Green Stock shall be entitled to share, in conjunction with all Holders of Gold Stock, pro-rata, one-third (1/3) of the total sum of any additional distribution approved pursuant to Section 6.05 of this Agreement.

2.07    Redemption Upon Departure from the Company.  Upon the termination, retirement, resignation, or legal determination of incompetence (hereinafter collectively referred to as "Triggering Event") of a Shareholder of Green Shares, then said Green Shares may, but are not required to, be redeemed by the Company at fifty (50%) percent of Face Value, with such payment being made to the shareholder or his duly appointed legal guardian in the form of an unsecured promissory note payable in equal installments, over a period of sixty (60) months, and accruing simple interest at the rate of three (3%) percent per annum. Said note shall be delivered to said Shareholder of Green Shares within thirty (30) days of the occurrence of a Triggering Event.

2.08    Redemption of Green Stock Upon Bankruptcy or Marital Dissolution.  Upon the filing by any Shareholder of Green Stock for Marital Dissolution (whether as a Petitioner or Respondent) or for Bankruptcy, whether voluntary or involuntary, or the attachment, seizure by legal process, or other involuntary transfer of any Green Stock, the Company may, but is not required to, redeem any such shares to which a spouse would be entitled had Schedule 7 hereto not been executed waiving any and all such rights, or to which a bankruptcy trustee or insolvency or judgment could attach, with such redemption being made at a price equal to fifty (50%) percent of Face Value multiplied by the number of Green Shares. Said payment shall be made in the form of a promissory note for the full redemption price, payable by the Company over a period of sixty (60)

-4-

months, and which shall accrue interest at a rate of three (3%) percent per annum. Any such transfer, if made within ninety (90) days of the triggering event described above, shall relate back to midnight on the date of the triggering event. Nothing in this paragraph shall be deemed to give any ownership interest in the Green Stock to any spouse which has been expressly waived as a condition precedent to the issuance of such stock. It is specifically acknowledged that it is the intention of the Company that each such share given to an individual is given as their sole and separate property, and was given or sold to the individual based on their unique and individual contribution to the Company. In furtherance hereof, at the time the Shares are distributed, each such non-Shareholder spouse shall be required to execute an acknowledgement and waiver of any claim that any interest in the Shares constitutes marital property or communal property under the laws of any state or any claim to the equitable distribution thereof, which acknowledgment and waiver shall be attached to this Agreement as Schedule 7.

2.09    <u>Redemption of Green Shares Upon Death of Shareholder</u>. Upon the death of any Shareholder, the Company may, but is not required to redeem all of such deceased Shareholder's Green Shares at one hundred (100%) percent face vale and distribute said value to the decedent's estate and or beneficiaries by paying one-half (1/2) of the money to the spouse of the Shareholder, and one-half (1/2) of the money to all of the Shareholder's issue, *per stirpes*. If the deceased Shareholder dies without a surviving spouse or without issue then the said value shall be distributed in accordance with the terms of the deceased Shareholder's will, or if the Shareholder dies intestate, then in accordance with the laws of intestacy prevailing in the deceased Shareholder's domicile. Said redemption shall occur according to the following payout schedule:

A.    Twenty-five (25%) percent of the total redemption price shall be paid within forty-five (45) days of death;

B.    Twenty-five (25%) percent of the total redemption price shall be paid on the first anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest;

C.    Twenty-five (25%) percent of the total redemption price shall be paid on the second anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest; and

D.    Twenty-five (25%) percent of the total redemption price shall be paid on the third anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest.

### ARTICLE III
### Class P Preferred-Status Preferred Stock: Gold Stock

3.01    <u>Gold Stock Defined</u>. The Company shall issue, to each Recipient of Class P Preferred-Status Preferred Stock, shares of Gold Stock as a means of evidencing ownership interest and participation in the business of the Company.

3.02    <u>Eligibility for Gold Stock</u>.    In order to be eligible for Gold Stock, an individual

must hold at least three thousand (3,000) Green Shares. Thereafter, at the next convened regular Gold Stock Committee meeting or special Gold Stock Committee meeting convened for the purpose of considering the same, any such eligible Shareholder of Green Shares shall be considered for Gold Stock. Said regular meeting shall occur not less than once in every twelve month period. The determination of the Gold Stock Committee shall be final, and approval for Gold Stock may be withheld in the Gold Stock Committee's sole and unfettered discretion. Any individual not granted approval for Gold Stock shall be reconsidered during subsequent Gold Stock Committee meetings which consider the extension of invitations for the issuance of Gold Stock.

3.03   <u>Gold Stock Committee.</u>   As used in this Agreement, the "Gold Stock Committee" refers to any individual who holds Gold Stock. Decisions of the Gold Stock Committee shall be based on majority vote. Gold Stock Committee members may appear in person, via phone, or other communication method to actively participate in the meeting. Members holding Gold Stock as of the date of this Agreement shall not require Gold Stock Committee approval.

3.04   <u>Issuance of Gold Stock.</u>   Each individual who has been authorized to receive Gold Stock shall surrender three thousand (3,000) shares of their Green Stock to the Company, which shall be assumed as treasury shares. · In exchange for the surrendered Green Stock, the Company shall issue on a 1:1 basis Gold Stock to the individual. Nothing in this Section 3.04 shall preclude a Gold Shareholder from obtaining additional shares of Green Stock, however, no individual shall, in any case, own greater than 5,000 shares of Gold Stock.

3.05   <u>Non Registration and Illiquidity of Gold Stock.</u>   Gold Stock has not been and will not be registered under the laws or regulations of any jurisdiction for offer or sale to any of the Shareholder or subsequent third parties. Each party hereby represents and warrants that he or she has acquired such Gold Shares for his or her own account, for investment only, and without a view to any transfer, redistribution or resale of any of the Gold Shares to be acquired by such party. The parties acknowledge that the Company has relied upon such representations in issuing such Gold Shares without prior registration. The parties recognize that their investment in the Company will be illiquid, and that applicable securities laws and regulations may require them to hold their Gold Shares indefinitely unless they can affect a registration of such stock or obtain an exemption from such registration.

3.06   <u>Waiver of Transfer Rights of Gold Stock.</u>   Each party forever waives, denounces, foregoes, and yields any right they may have pursuant to current state or federal law to transfer their Gold Shares, other than as specifically provided for in this Agreement.

3.07   <u>Non-Alienability of Gold Stock.</u>   Each party understands, upon accepting the Gold Shares that such shares are non-alienable; provided, however, that upon acceptance as a Tenured Shareholder, any such Gold Stock held by said Tenured Shareholder, shall be assumed by the Company as treasury shares and shall be exchanged in accordance with the terms of Article IV of this Agreement.

3.08   <u>Voting Rights of Gold Stock.</u>   Gold Stock shall vote on the following matters: all matters put to a vote of the Shareholders pursuant to statute or the Company bylaws, subscription invitations to Shareholders of Green Shares for their exchange into Gold Stock, subject to the

minimum requirements set forth in this Agreement, and for the authorization of additional distributions. No other voting rights shall be conferred on to the Gold Shares.

3.09   Additional Distributions.   Holders of Gold Stock shall be entitled to share, in conjunction with all Holders of Green Stock, pro-rata, one-third (1/3) of the total sum of any additional distribution approved pursuant to Section 6.05 of this Agreement.

3.10   Redemption Upon Departure from the Company.   Upon the termination, retirement, resignation, or legal determination of incompetence (hereinafter collectively referred to as "Triggering Event") of a Shareholder of Gold Shares, then said Gold Shares may, but are not required to, be redeemed by the Company at eighty (80%) percent of Face Value, with such payment being made to the Shareholder or his duly appointed legal guardian in the form of an unsecured promissory note payable in equal installments, over a period of sixty (60) months, and accruing simple interest at the rate of three (3%) percent per annum. Said note shall be delivered to said Shareholder of Gold Shares within thirty (30) days of the occurrence of a Triggering Event.

3.11   Redemption of Gold Stock Upon Bankruptcy or Marital Dissolution.   Upon the filing by any Shareholder of Gold Stock for Marital Dissolution (whether as a Petitioner or Respondent) or for Bankruptcy, whether voluntary or involuntary, or the attachment, seizure by legal process, or other involuntary transfer of any Gold Stock, the Company may, but is not required, to redeem any such shares to which a spouse would be entitled had Schedule 7 hereto not been executed waiving any and all such rights, or to which a bankruptcy trustee or insolvency or judgment could attach, with such redemption being made at a price equal to fifty (50%) percent of Face Value multiplied by the number of Gold Shares. Said payment shall be made in the form of a promissory note for the full redemption price, payable by the Company over a period of sixty (60) months, and which shall accrue interest at a rate of three (3%) percent per annum. Any such transfer, if made within ninety (90) days of the triggering event described above, shall relate back to midnight on the date of the triggering event. Nothing in this paragraph shall be deemed to give any ownership interest in the Gold Stock to any spouse which has been expressly waived as a condition precedent to the issuance of same. It is specifically acknowledged that it is the intention of the Company that each such share given to an individual is given as their sole and separate property, and was given or sold to the individual based on their unique and individual contribution to the Company. In furtherance hereof, at the time the Shares are distributed, each such non-Shareholder spouse shall be required to execute an acknowledgement and waiver of any claim that any interest in the Shares constitutes marital property or communal property under the laws of any state or any claim to the equitable distribution thereof, which acknowledgment and waiver shall be attached to this Agreement as Schedule 7.

3.12   Redemption of Gold Shares Upon Death of Shareholder.   Upon the death of any Shareholder, the Company may, but is not required to redeem all of such deceased Shareholder's Gold Shares at one hundred (100%) percent face vale and distribute said value to the decedent's estate and or beneficiaries by paying one-half (1/2) of the money to the spouse of the Shareholder, and one-half (1/2) of the money to all of the Shareholder's issue, *per stirpes*. If the deceased Shareholder dies without a surviving spouse or without issue then the said value shall be distributed in accordance with the terms of the deceased Shareholder's will, or if the Shareholder dies intestate, then in accordance with the laws of intestacy prevailing in the deceased Shareholder's domicile.

Said redemption shall occur according to the following payout schedule:

        A.    Twenty-five (25%) percent of the total redemption price shall be paid within forty-five (45) days of death;

        B.    Twenty-five (25%) percent of the total redemption price shall be paid on the first anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest;

        C.    Twenty-five (25%) percent of the total redemption price shall be paid on the second anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest; and

        D.    Twenty-five (25%) percent of the total redemption price shall be paid on the third anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest.

## ARTICLE IV
### Class T Tenured-Status Preferred Stock: Platinum Stock

4.01    Platinum Stock Defined.  The Company shall issue, to each Recipient of Class T Preferred-Status Preferred Stock, shares of Platinum Stock as a means of evidencing ownership interest and participation in the business of the Company.

4.02    Eligibility for Platinum Stock. In order to be eligible for Platinum Stock, an individual must hold five thousand (5,000) Gold Shares. Thereafter, at the next convened regular Platinum Stock Committee meeting or special Platinum Stock Committee meeting convened for the purpose of considering the same, any such eligible Shareholder of Gold Shares shall be considered for Platinum Stock. Said regular meeting shall occur not less than once in every twelve month period. The determination of the Platinum Stock Committee shall be final, and approval for Platinum Stock may be withheld in the Platinum Stock Committee's sole and unfettered discretion. Any individual not granted approval for Platinum Stock shall be reconsidered during subsequent Platinum Stock Committee meetings which consider the extension of invitations for the issuance of Platinum Stock.

4.03    Platinum Stock Committee.  As used in this Agreement, the "Platinum Stock Committee" refers to any individual who holds Platinum Stock. Decisions of the Platinum Stock Committee shall require two-thirds (2/3) of the Committee's affirmative vote. Platinum Stock Committee members may appear in person, via phone, or other communication method to actively participate in the meeting. Until such time as there are six (6) Shareholders of Platinum Shares, decisions reserved for the Platinum Stock Committee shall be made by a majority vote of the Shareholders of Black Stock.

4.04    Issuance of Platinum Stock.  Each individual who has been authorized to receive Platinum Stock shall surrender all five thousand (5,000) shares of their Gold Stock to the Company, which shall be assumed as treasury shares. In exchange for the surrendered Gold Stock, the

Company shall issue on a 1:1 basis Platinum Stock to the individual. Nothing in this Section 4.04 shall preclude a Platinum Shareholder from obtaining additional shares of Green Stock, however, no individual shall, in any case, own greater than 5,000 shares of Platinum Stock.

4.05   Non-Registration and Illiquidity of Platinum Stock. Platinum Stock has not been and will not be registered under the laws or regulations of any jurisdiction for offer or sale to any of the Shareholder or subsequent third parties. Each party hereby represents and warrants that he or she has acquired such Platinum Shares for his or her own account, for investment only, and without a view to any transfer, redistribution or resale of any of the Platinum Shares to be acquired by such party. The parties acknowledge that the Company has relied upon such representations in issuing such Platinum Shares without prior registration. The parties recognize that their investment in the Company will be illiquid, and that applicable securities laws and regulations may require them to hold their Platinum Shares indefinitely unless they can affect a registration of such stock or obtain an exemption from such registration.

4.06   Waiver of Transfer Rights of Platinum Stock. Each party forever waives, denounces, foregoes, and yields any right they may have pursuant to current state or federal law to transfer their Platinum Shares.

4.07   Non-Alienability of Platinum Stock. Each party understands, upon accepting the Platinum Shares that such shares are non-alienable.

4.08   Voting Rights of Platinum Stock. Platinum Stock shall vote on the following matters: subscription invitations to Shareholders of Gold Shares for their exchange into Platinum Stock, subject to the minimum requirements set forth in this Agreement, for the authorization of additional distributions, and any such vote which, by state law, requires the approval of each class of shares. No other voting rights shall be conferred on to the Platinum Shares.

4.09   Additional Distributions. Holders of Platinum Stock shall be entitled to share, pro-rata, one-third (1/3) of the total sum of any additional distribution approved pursuant to Section 6.05 of this Agreement.

4.10   Redemption Upon Departure from the Company. Upon the termination, retirement, resignation, or legal determination of incompetence (hereinafter collectively referred to as "Triggering Event") of a Shareholder of Platinum Shares, then said Platinum Shares may, but are not required to be redeemed by the Company at one hundred (100%) percent of Face Value, with such payment being made in the form of an unsecured promissory note payable to the Shareholder or his duly appointed legal guardian in equal installments, over a period of sixty (60) months, and accruing simple interest at the rate of three (3%) percent per annum. Said note shall be delivered to said Shareholder of Platinum Shares within thirty (30) days of the occurrence of a Triggering Event.

4.11   Redemption of Platinum Stock Upon Bankruptcy or Marital Dissolution. Upon the filing by any Shareholder of Platinum Stock for Marital Dissolution (whether as a Petitioner or Respondent) or for Bankruptcy, whether voluntary or involuntary, or the attachment, seizure by legal process, or other involuntary transfer of any Platinum Stock, the Company may, but is not required to redeem any such shares to which a spouse would be entitled had Schedule 7 hereto not been executed waiving any and all such rights, or to which a bankruptcy trustee or insolvency or

-9-

judgment could attach, with such redemption being made at a price equal to fifty (50%) percent of Face Value multiplied by the number of Platinum Shares. Said payment shall be made in the form of a promissory note for the full redemption price, payable by the Company over a period of sixty (60) months, and which shall accrue interest at a rate of three (3%) percent per annum. Any such transfer, if made within ninety (90) days of the triggering event described above, shall relate back to midnight on the date of the triggering event. Nothing in this paragraph shall be deemed to give any ownership interest in the Platinum Stock to any spouse which has been expressly waived as a condition precedent to the issuance of same. It is specifically acknowledged that it is the intention of the Company that each such share given to an individual is given as their sole and separate property, and was given or sold to the individual based on their unique and individual contribution to the Company. In furtherance hereof, at the time the Shares are distributed, each such non-Shareholder spouse shall be required to execute an acknowledgement and waiver of any claim that any interest in the Shares constitutes marital property or communal property under the laws of any state or any claim to the equitable distribution thereof, which acknowledgment and waiver shall be attached to this Agreement as Schedule 7.

4.12    _Redemption of Platinum Shares Upon Death of Shareholder._ Upon the death of any Shareholder, the Company may, but is not required to redeem all of such deceased Shareholder's Platinum Shares at one hundred (100%) percent face vale and distribute said value to the decedent's estate and or beneficiaries by paying one-half (1/2) of the money to the spouse of the Shareholder, and one-half (1/2) of the money to all of the Shareholder's issue, _per stirpes_. If the Shareholder dies without a spouse or without issue then the value shall be distributed pursuant the deceased Shareholder's will or if the Shareholder dies without a will then in accordance with the laws of intestacy of the deceased Shareholder's domicile. Said redemption shall occur according to the following payout schedule:

A.    Twenty-five (25%) percent of the total redemption price shall be paid within forty-five (45) days of death;

B.    Twenty-five (25%) percent of the total redemption price shall be paid on the first anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest;

C.    Twenty-five (25%) percent of the total redemption price shall be paid on the second anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest; and

D.    Twenty-five (25%) percent of the total redemption price shall be paid on the third anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest.

## ARTICLE V
## Class Z Special Preferred Stock: Blue Stock

5.01    _Blue Stock Defined._ The Company shall issue, to each Recipient of Class Z Special Preferred Stock, shares of Blue Stock as a means of evidencing ownership interest and participation in the business of the Company.

- 10 -

5.02    Issuance of Blue Stock.   Blue Stock shall be special stock issued from time to time by the Company, at the direction of the Board of Directors.

5.03    Non Registration and Illiquidity of Blue Stock.   Blue Stock has not been and will not be registered under the laws or regulations of any jurisdiction for offer or sale to any of the Shareholder or subsequent third parties.   Each party hereby represents and warrants that he or she has acquired such Blue Shares for his or her own account, for investment only, and without a view to any transfer, redistribution or resale of any of the Blue Shares to be acquired by such party.   The parties acknowledge that the Company has relied upon such representations in issuing such Blue Shares without prior registration.   The parties recognize that their investment in the Company will be illiquid, and that applicable securities laws and regulations may require them to hold their Blue Shares indefinitely unless they can affect a registration of such stock or obtain an exemption from such registration.

5.04    Waiver of Transfer Rights of Blue Stock.   Each party forever waives, denounces, foregoes, and yields any right they may have pursuant to current state or federal law to transfer their Blue Shares, other than as specifically provided for in this Agreement.

5.05    Non-Alienability of Blue Stock.   Each party understands, upon accepting the Blue Shares that such shares are non-alienable.

5.06    Voting Rights of Blue Stock.   Blue Stock shall have no voting rights other any such vote which, by state law, requires the approval of each class of shares.

5.07    Distributions.   Holders of Blue Stock shall not be entitled to any distributions whatsoever.

5.08    Redemption Upon Departure from the Company.   Upon the termination, retirement, resignation, or legal determination of incompetence (hereinafter collectively referred to as "Triggering Event") of a Shareholder of Blue Shares, then said Blue Shares may, but are not required to be redeemed by the Company at fifty (50%) percent of Face Value, with such payment being made to the Shareholder or his duly appointed legal guardian in the form of an unsecured promissory note payable in equal installments, over a period of sixty (60) months, and accruing simple interest at the rate of three (3%) percent per annum.   Said note shall be delivered to said Shareholder of Blue Shares within thirty (30) days of the occurrence of a Triggering Event.

5.09    Redemption of Blue Stock Upon Bankruptcy or Marital Dissolution.   Upon the filing by any Shareholder of Blue Stock for Marital Dissolution (whether as a Petitioner or Respondent) or for Bankruptcy, whether voluntary or involuntary, or the attachment, seizure by legal process, or other involuntary transfer of any Blue Stock, the Company may, but is not required to redeem any such shares to which a spouse would be entitled had Schedule 7 hereto not been executed waiving any and all such rights, or to which a bankruptcy trustee or insolvency or judgment could attach, with such redemption being made at a price equal to fifty (50%) percent of Face Value multiplied by the number of Blue Shares.   Said payment shall be made in the form of a promissory note for the full redemption price, payable by the Company over a period of sixty (60) months, and which shall accrue interest at a rate of three (3%) percent per annum.   Any such

- 11 -

transfer, if made within ninety (90) days of the triggering event described above, shall relate back to midnight on the date of the triggering event. Nothing in this paragraph shall be deemed to give any ownership interest in the Blue Stock to any spouse which has been expressly waived as a condition precedent to the issuance of same. It is specifically acknowledged that it is the intention of the Company that each such share given to an individual is given as their sole and separate property, and was given or sold to the individual based on their unique and individual contribution to the Company. In furtherance hereof, at the time the Shares are distributed, each such non-Shareholder spouse shall be required to execute an acknowledgement and waiver of any claim that any interest in the Shares, constitutes marital property or communal property under the laws of any state or any claim to the equitable distribution thereof which acknowledgment and waiver shall be attached to this Agreement as Schedule 7.

5.10   Redemption of Blue Shares Upon Death of Shareholder. Upon the death of any Shareholder, the Company may, but is not required to redeem all of such deceased Shareholder's Blue Shares at one hundred (100%) percent face vale and distribute them to the decedent's estate and or beneficiaries by paying one-half (1/2) of the money to the spouse of the Shareholder, and one-half (1/2) of the money to all of the Shareholder's issue, *per stirpes*. If the Shareholder dies without a spouse or without issue than the Shares will be distributed as directed in his will, or if the Shareholder dies without a will, then in accordance with the laws of intestacy of the deceased Shareholder's domicile. Said redemption shall occur according to the following payout schedule:

A.   Twenty-five (25%) percent of the total redemption price shall be paid within forty-five (45) days of death;

B.   Twenty-five (25%) percent of the total redemption price shall be paid on the first anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest;

C.   Twenty-five (25%) percent of the total redemption price shall be paid on the second anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest; and

D.   Twenty-five (25%) percent of the total redemption price shall be paid on the third anniversary of the date of death, plus interest on the total outstanding redemption price from the date of death through the date the payment is made, accruing at six (6%) percent, simple interest.

## ARTICLE VI
### Ministerial Matters

6.01   Precondition to Issuance of Stock. Before issuing any new stock, the Company must have funds sufficient after the proposed issuance. Sufficiency shall be presumed if two-thirds (2/3) Net Book Value equals or exceeds the cost to redeem all of the Green, Gold, Platinum, and Blue stock then issued and outstanding. The Net Book Value shall be published on the Company web page. For purposes of this Section 6.01, the Net Book Value to be used in determining the ability to issue new stock shall be the Net Book Value effective on the last day of the prior year.

- 12 -

6.02   <u>Stock Transfer Records.</u>   The Company shall maintain at its office records relating to the current ownership of the various classes of stock. This information may be viewed during reasonable business hours by any Company Shareholder.   Notwithstanding the foregoing, the shareholders all recognize and agree that the shares of the Company are Bearer Shares, and any name issued on a certificate is indicative only of the individual to whom the stock was initially issued, and not indicative of current ownership.   Additionally, each Shareholder agrees that while they are eligible to bear the shares of the Company, at no time are they entitled to own more than 5% of the outstanding shares. In the event that the Bearing Shareholder bears in excess of 5% of the outstanding shares, the Shareholder shall identify another eligible shareholder or shareholders, the benefit for whom the Bearing Shareholder is holding the stock, which is equal to the number of shares in excess of 5%.

6.03   <u>Legends on Share Certificates.</u>   The Secretary of the Company is hereby authorized and directed to write on the face or reverse side of such stock certificate representing the Shares the following legend:

> "The shares represented by the within certificate are subject to certain restrictions regarding transfer and voting rights under the terms of a Shareholder Agreement dated as of September 1, 2005, as amended, a copy of which is on file at the principal office of the Company, and available for inspection during regular business hours. Upon payment of duplication expenses, the Company will furnish a copy of such agreement to any party upon receipt of a direction to do so from the Shareholder of these shares.   These shares have not been registered under the securities laws or regulations of any jurisdiction, and may not be transferred in any manner.   These shares may only be redeemed at the request of the Company, and thereon only subject to the terms and conditions set forth in the Shareholder Agreement dated as of September 1, 2005."

6.04   <u>Time Delay for Items Subject to Vote.</u>   Any issue voted on by the Shareholder's; other than by a vote or veto of the Black Shares, shall not become effective for a period of thirty (30) days thereafter.

6.05   <u>Distributions.</u>   The Green, Gold, and Platinum Stock have a unique benefit which allows the Shareholder of Class Green, Gold, and Platinum Stock to participate, on an annual basis, in a six (6%) percent non-cumulative dividend.   In the event that there are insufficient funds to pay a six (6%) dividend to the Green, Gold, and Platinum Shareholder, then a pro-rata distribution of available funds shall be made to the Green, Gold, and Platinum Shareholder. Nothing in this paragraph, however, shall give any carryover rights to a future year, to any Shareholder, for a distribution made in an amount less than the full six (6%) percent identified herein.

Additionally, a vote by a majority of the Preferred Shareholder and a majority of the Tenured Shareholder may result in additional dividend distributions beyond six (6%) percent, contingent on sufficient funds to make said additional distribution.   Any such additional distribution shall be paid out in accordance with Sections 1.04, 2.06, 3.09, and 4.09 of this Agreement. As used in this Section 6.05, sufficient funds exist when, after the Company makes the additional distribution the Company will (i) not be insolvent and (ii) will have enough funds to cover the costs of redemption of all of the authorized and outstanding Shares.

- 13 -

## ARTICLE VII
### Management

7.01    Management of the Company. The Board of Directors of the Company shall consist of not less than three (3) or more than fifteen (15) Directors who shall govern the Company by majority rule, subject to the Black Stock Veto Power, unless otherwise agreed in writing with respect to a particular action. The number of Directors shall be identified at the annual meeting of the Shareholder or on an interim basis. The number of Directors shall be voted on by two-thirds (2/3) of existing Directors and the majority of the Black Shares. The election of such Shareholder as Directors shall be deemed to have occurred annually as provided in the Bylaws without the requirement of a specific Shareholder resolution to that effect. Pursuant to the bylaws of the Company, Tenured Shareholder shall be entitled to vote for officers and directors as needed for Company subsidiaries and for the directors of the Company; provided, however that if any Shareholder holds more than twenty-five thousand (25,000) thousand shares of Black Stock, then the Tenured Shareholder shall have no voting rights as to the Directors of the Company.

7.02    Officers. The Company may have the following statutory officers: a chairman, a president, executive vice presidents, a secretary, and a treasurer. Said statutory officers shall have the sole ability to bind the Company. From time to time, additional titles may be appointed from time to time for the respective operative positions being filled, however, no such authority to bind the Company shall be bestowed upon them at any time. The statutory officers shall be elected by the Board of Directors at the annual meeting of the Board and shall hold office for the term of one year, and until their successors are elected and qualified, unless sooner removed by the Board of Directors. Any person may hold two or more offices. The failure to elect a president, secretary or treasurer shall not affect the existence of the Company. The functions and descriptions of the officers shall have the meaning ascribed to them in the Bylaws of the Company. Nothing in this Section 7.02 shall preclude the same individual from serving in more than one capacity.

## ARTICLE VIII
### Miscellaneous Matters

8.01    Superseding Agreements. In the event of a dispute between the terms of this Shareholder's Agreement and the terms of any employment agreement, solely as it relates to redemption price, the employment agreement shall prevail. Further, any legend on a Company stock certificate which has been approved in writing by 2/3rds of the directors and a majority of the Black Stock Shareholders, shall supersede this Agreement. In all other matters, the Shareholder's Agreement shall prevail.

8.02    Specific Performance. The Shares of the Company cannot be readily purchased or sold in the open market, and for that reason, among others, the parties will be irreparably damaged in the event that this Agreement is not specifically enforced. Should any dispute arise concerning the sale or disposition of any Shares, an injunction may be issued restraining any sale of disposition pending the determination of such controversy.

8.03    Amendment. This Agreement may be terminated or amended in whole or in part by an instrument in writing signed by the Company, and a majority of the Shareholder of each class.

- 14 -

Notwithstanding the foregoing, if any section, paragraph, sentence, clause, phrase or any part of this Agreement is declared to be voidable or void, or if for any reason is declared to be invalid or of no effect, the remaining sections, paragraphs, sentences, clauses, phrases or parts thereof shall be in no manner affected thereby but shall remain in full force and effect.

8.04   Term of Agreement. This Agreement shall continue in full force and effect until the dissolution of the Company.

8.05   Agreement Binding and Counterparts. This Agreement shall be binding upon the parties hereto, and upon the successors and assigns of each of them, and said parties do hereby agree for themselves and their successors and assigns, to execute any instruments in writing, and to do any and all acts which may be necessary, convenient or expedient to carry out the purposes and intent of this Agreement. In addition, this agreement may be executed in Counterparts, with each shareholder signing as the "SHAREHOLDER" for the Agreement.

8.06   Governing Law – Arbitration. This Agreement shall be subject to and governed by the laws of the State of Florida. The parties agree, except as otherwise expressly set forth herein, that all disputes involving the construction or enforcement of this Agreement and any disputes between the Shareholder regarding the management or operation of the Company shall be resolved by binding arbitration in accordance with arbitration procedures established by the Company. Pursuant to those procedures, a arbitration panel shall be designated by the Black Shareholders which shall consist of three shareholders who are tenured. If there are less than three tenured shareholders than the Black Shareholders shall designate the composition of the arbitration panel. The rules of evidence shall not apply, but the arbitration panel established pursuant hereto shall take evidence including documentary and oral testimony. Its decision shall be binding and not subject to review by any court. The parties agree that the location of any such arbitration shall be Orlando, Florida. Any party may apply to any court of competent jurisdiction to compel arbitration in accordance with this subsection or to enforce any award rendered by the arbitration panel established hereby

8.07   Jurisdiction and Venue. The laws of the State of Florida shall govern any disputes in connection with this Agreement. Venue shall be in Orange County, Florida, for the arbitration proceeding described in Paragraph 8.06 hereof.

8.08   Marriage After Receipt of Shares. The parties specifically recognize that after the receipt of Company Shares, a Shareholder may choose to enter into a marital, life-mate, or other arrangement which may result in attachment of any of the Company Stock as a portion of the assets, which may be divided upon the separation of the parties in situations including without limitation, the division of community property, equitable distribution, palimony, alimony, or separation of a life partner. The parties further acknowledge and agree that prior to entering into any such arrangement, a waiver in full compliance with the laws of the State of Florida with each party thereto having made full disclosure to the other of the value of any and all such shares held by the Shareholder or that could be obtained by the shareholder pursuant to the provisions of this Agreement and each such party having had the advice of independent counsel as set forth and in full compliance with the requirements of Exhibit 7 hereto all of which shall be obtained from the Shareholder's significant other. Failure to obtain such waiver shall result in the complete liquidation of the Shareholder's Shares in accordance with the terms of this Agreement as applied

- 15 -

to a Shareholder of Gold Shares whose Shares are redeemed pursuant to Paragraph 3-10 of the Agreement.

IN WITNESS WHEREOF, the undersigned have hereunto set their hands and seals as of the date first set forth above.

Mirabilis Ventures, Inc.,
a Nevada corporation


By: _____
Dan Myers, Treasurer


**SHAREHOLDER**


_____
Frank Amodeo, Shareholder by _____

**SCHEDULE 1**
**Shareholder List**

| Printed Name | Address | Signature |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

- 17 -

**SCHEDULE 2**
**Black Stock List (Names and Numbers of Shares)**

Mirabilis Ventures, Inc. Shareholder Agreement

## SCHEDULE 3
### Green Stock List (Names and Numbers of Shares)

**SCHEDULE 4**
**Gold Stock List (Names and Numbers of Shares)**

Mirabilis Ventures, Inc. Shareholder Agreement

**SCHEDULE 5**
**Platinum Stock List (Names and Numbers of Shares)**

Mirabilis Ventures, Inc. Shareholder Agreement

### SCHEDULE 6
**Blue Stock List (Names and Numbers of Shares)**

### SCHEDULE 7
### WAIVER OF INTEREST

      As the spouse/life-mate/partner of _____, a Shareholder of Class ___ Stock (hereinafter the "Shareholder") of Mirabilis Ventures, Inc., a Nevada corporation ("Mirabilis"), and in consideration of the issuance of said shares of Stock (the "Stock") or any future Mirabilis Stock that may be issued to Shareholder, and for other good an valuable consideration, the receipt of sufficiency of which is acknowledged by the undersigned, and after full disclosure and advice of counsel that I have independently chosen, I hereby represent, warrant and covenant to Mirabilis and to Shareholder, as follows:

      I hereby acknowledge and agree to the treatment of any Stock in Mirabilis now or hereafter titled in the name of Shareholder, as his/her sole and separate and non-marital property. To the extent that any communal property interest attaches to the Stock, I hereby waive any such rights that I may have, including those rights known as "Community Property Rights." Moreover, and as aforesaid, I acknowledge and agree that the Stock shall constitute the Shareholder's sole and separate non-marital property which shall not be subject to laws of Equitable Distribution. I acknowledge and agree that full disclosure has been made to me of the Shareholder's interest in the Stock and the potential that additional Stock may be issued to the Shareholder in the future, and of the contents of this Shareholder's Agreement. I have been advised to obtain the advice of independent counsel to advise me in conjunction with this full disclosure of my waiver of all rights to claim an interest in the Stock or any future Stock that may be issued to Shareholder by Mirabilis, including the value that the Stock now has or may have in the future and the impact of my waiver of any right to claim an interest in the Stock or any future Stock as my recognition and agreement that same shall constitute non-marital property of the Shareholder, not subject to the laws of equitable distribution and as to which no community property interest shall attach.

      I hereby attest and affirm that I shall not assert or enforce or seek to assert or enforce and have hereby waived any right to assert that the Stock or any future Stock issued under this Shareholder's Agreement to Shareholder constitutes property subject to equitable distribution or as community property of any marital estate, and waive after advice of counsel of my choosing, the right to claim such an interest or a claim to palimony, alimony, or division of life-mate assets status with respect to the Stock or any Stock issued in the future to Shareholder.

      Not withstanding the foregoing, should any Final Judgment of Dissolution contemplate value being provided to me for the Stock, then I acknowledge and agree that said value shall be given as a cash payout in accordance with the terms of the relevant portions of Sections 1.08, 2.08, 3.11, 4.11 or 5.09 of the Shareholder's Agreement dated September 22, 2005. In no event shall any stock be issued to me pursuant to any Final Judgment of Dissolution or Marriage or other distribution of assets.

      I acknowledge receipt and review of a copy of the Shareholder's Agreement, and have had the opportunity to have full disclosure of the Stock interest or potential future Stock interest of Shareholder as well as advice from independent counsel prior to the execution of this Waiver of Interest.

- 23 -

Dated:_____

Print Name:_____

STATE OF _____
COUNTY OF _____

The foregoing instrument was acknowledged before me this ___ day of _____, 2006 by _____.   She/he is personally known to me or produced _____ as identification and did (did not) take an oath.

NOTARY PUBLIC:

SIGN:_____
PRINT:_____

State of _____ at Large

My Commission Expires:

## SCHEDULE 7
## WAIVER OF INTEREST

As the spouse/life-mate/partner of _____ , a Shareholder of Class ___ Stock (hereinafter the "Shareholder") of Mirabilis Ventures, Inc., a Nevada corporation ("Mirabilis"), and in consideration of the issuance of said shares of Stock (the "Stock") or any future Mirabilis Stock that may be issued to Shareholder, and for other good an valuable consideration, the receipt of sufficiency of which is acknowledged by the undersigned, and after full disclosure and advice of counsel that I have independently chosen, I hereby represent, warrant and covenant to Mirabilis and to Shareholder, as follows:

I hereby acknowledge and agree to the treatment of any Stock in Mirabilis now or hereafter titled in the name of Shareholder, as his/her sole and separate and non-marital property. To the extent that any communal property interest attaches to the Stock, I hereby waive any such rights that I may have, including those rights known as "Community Property Rights." Moreover, and as aforesaid, I acknowledge and agree that the Stock shall constitute the Shareholder's sole and separate non-marital property which shall not be subject to laws of Equitable Distribution. I acknowledge and agree that full disclosure has been made to me of the Shareholder's interest in the Stock and the potential that additional Stock may be issued to the Shareholder in the future, and of the contents of this Shareholder's Agreement. I have been advised to obtain the advice of independent counsel to advise me in conjunction with this full disclosure of my waiver of all rights to claim an interest in the Stock or any future Stock that may be issued to Shareholder by Mirabilis, including the value that the Stock now has or may have in the future and the impact of my waiver of any right to claim an interest in the Stock or any future Stock as my recognition and agreement that same shall constitute non-marital property of the Shareholder, not subject to the laws of equitable distribution and as to which no community property interest shall attach.

I hereby attest and affirm that I shall not assert or enforce or seek to assert or enforce and have hereby waived any right to assert that the Stock or any future Stock issued under this Shareholder's Agreement to Shareholder constitutes property subject to equitable distribution or as community property of any marital estate, and waive after advice of counsel of my choosing, the right to claim such an interest or a claim to palimony, alimony, or division of life-mate assets status with respect to the Stock or any Stock issued in the future to Shareholder.

Not withstanding the foregoing, should any Final Judgment of Dissolution contemplate value being provided to me for the Stock, then I acknowledge and agree that said value shall be given as a cash payout in accordance with the terms of the relevant portions of Sections 1.08, 2.08, 3.11, 4.11 or 5.09 of the Shareholder's Agreement dated September 22, 2005. In no event shall any stock be issued to me pursuant to any Final Judgment of Dissolution or Marriage or other distribution of assets.

I acknowledge receipt and review of a copy of the Shareholder's Agreement, and have had the opportunity to have full disclosure of the Stock interest or potential future Stock interest of Shareholder as well as advice from independent counsel prior to the execution of this Waiver of Interest.

Dated:_____                    _____

                                        Print Name:

STATE OF _____
COUNTY OF _____

The foregoing instrument was acknowledged before me this __ day of _____, 2006 by _____.   She/he is personally known to me or produced _____ as identification and did (did not) take an oath.


NOTARY PUBLIC:

SIGN:_____
PRINT:_____.

State of _____ at Large

My Commission Expires:

# MIRABILIS VENTURES, INC.

## SPECIAL MEETING OF THE BOARD OF DIRECTORS

### September 1, 2005

A special meeting of the Board of Directors of Mirabilis Ventures, Inc., was held at 20 N. Orange Avenue, Orlando, Florida 32801 on September 1, 2005, at 2:00 pm. All of the directors were present, having waived notice of the meeting. Robert Pollack, MD acted as Chairman of the meeting.

Upon motion duly made, seconded and approved by the Board of Directors, the following resolutions were unanimously adopted:

**RESOLVED,** that Bruce Walko is hereby removed as President of the Corporation.

**RESOLVED,** that James V. Sadrianna is hereby appointed as President of the Corporation.

**RESOLVED,** that Bruce Walko is hereby appointed as Chairman of the Corporation.

**RESOLVED FURTHER,** that the appropriate officers of the Company are hereby authorized and directed to take all such actions as they shall deem necessary or advisable to carry out the foregoing resolutions.

There being no further business, the meeting was adjourned at 2:30 pm.

Signature:
Name: Robert Pollack, MD
Its:    Director

Signature:
Name: Jason W. Carlson
Its:    Director

Signature:
Name: Edie Curry
Its:    Director

## WAIVER AND CONSENT

The undersigned, being all of the directors of Mirabilis Ventures, Inc., hereby waive notice of the Special Meeting of the Board of Directors held on September 1, 2005, and consent to all actions taken thereat.

Signature:
Name: Robert Pollack, MD
Its:     Director

Signature:
Name: Jason W. Carlson
Its:     Director

Signature:
Name: Edie Curry
Its:     Director



### WRITTEN ACTION OF THE DIRECTORS
### OF
### MIRABILIS VENURES, INC.

#### August 31, 2005

The undersigned, being and constituting all of the Directors of **MIRABILIS VENTURES, INC.**, a Nevada corporation (the "Corporation" or "MVI"), do hereby consent to the following actions to be taken without a meeting of the Board of Directors of this Corporation:

**BE IT RESOLVED THAT** this Corporation is authorized to issue to 2,000 shares of Class B Preferred Stock to Frank Amodeo, Jr., in exchange for One Million Five Hundred Thousand Dollars ($1,500,000) in cash contribution plus 1,000 common shares of Nexia Strategy Corporation common stock, representing 100% of the Nexia Strategy Corporation common stock issued and outstanding.

Jason Carlson, Director

Robert Pollack, MD, Director

Edie Curry, Director



# M I R A B I L I S
## IRREVOCABLE PROXY OF MIRABILIS

I, Jason Carlson, Vice President and authorized agent of Mirabilis Ventures, Inc., a Nevada Corporation, a shareholder of Thirty-Five Million Four Hundred Seventy-Six Thousand Three Hundred Fourteen (35,476,314) shares in PRESIDION CORPORATION (the "Company") hereby appoint, instruct, authorize and give an irrevocable power to:

> FRANK AMODEO
> 2875 S. Orange Avenue
> P.M.B. 1800, Suite 500
> Orlando, Florida 32806

To represent the undersigned and to participate on the undersigned's behalf in all deliberations and votes, and to approve, disapprove, or abstain on, any proposal relating to the undersigned's shares in the Company or any shares Mirabilis is entitled to vote and any new resolution, as the proxy holder deems fit.

Anything to the contrary notwithstanding, Frank Amodeo agrees he will in all cases vote the shares covered by this Proxy in favor of electing Jason Carlson and Bob Pollack to the Company's Board of Directors, will take no action to expand the current number of directors without Jason Carlson or Bob Pollack's consent, or take any action to terminate Jason Carlson or Bob Pollack as a director, officer or employee of the Company during the term of this Proxy.

This Proxy shall become effective on June 6, 2005.

This Proxy shall expire by its own terms upon the Company filing its Form 10-K for the year ending December 31, 2005, June 1, 2006, or upon the written revocation of Frank Amodeo, whichever occurs first.

Given on ___June 6___ , 2005.          Signed: _____
                                        Jason Carlson
                                        Mirabilis Ventures, Inc.
                                        Vice President

| Form **W-9**<br>(Rev. October 2004)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer<br>Identification Number and Certification** | Give form to the<br>requester. Do not<br>send to the IRS. |
|---|---|---|

**Name (as reported on your income tax return)**
MIRABILIS VENTURES, INC

**Business name, if different from above**

**Check appropriate box:** ☐ Individual/Sole Proprietor  ☒ Corporation  ☐ Partnership  ☐ Other ▶ ............................  ☐ Exempt from backup withholding

**Address (number, street, and apt. or suite no.)**
20 N. ORANGE AVENUE, SUITE 1400

**City, state, and ZIP code**
ORLANDO, FL 32801

**Requester's name and address (optional)**
FIRST SOUTHERN BANK
7301 PALMETTO PARK ROAD
BOCA RATON, FL 33433

**List account number(s) here (optional)**

### Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on Line 1 to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 3.

**Note:** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number | | | | | | | |
or
Employer identification number
2 0 1 8 9 3 1 8

### Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. person (including a U.S. resident alien).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 4.)

| Sign<br>Here | Signature of<br>U.S. person ▶  _signature_  V.P. | Date ▶ 8-4-05 |
|---|---|---|

### Purpose of Form

A person who is required to file an information return with the IRS, must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

U.S. person. Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee.

**Note:** If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

For federal tax purposes you are considered a U.S. person if you are:

♦ an individual who is a citizen or resident of the United States,

♦ a partnership, corporation, company, or association created or organized in the United States or under the laws of the United States, or

♦ any estate (other than a foreign estate) or trust. See Regulation section 301.7701-6(a) for additional information.

Foreign person. If you are a foreign person, use the appropriate Form W-8 (see Pub. 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

Nonresident alien who becomes a resident alien. Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the recipient has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

Bankers Systems, Inc., St. Cloud, MN  Form W-9  12/13/2004                          Cat. No. 10231X                          (page 1 of 4)                          Form **W-9** (Rev. 10-2004)

**MINUTES OF**

**MIRABILIS VENTURES, INC.**

**SPECIAL JOINT MEETING OF DIRECTORS AND SHAREHOLDERS**

**July 11, 2005**

A special joint meeting of the directors and shareholders of MIRABILIS VENTURES, INC. was held at 20 N. Orange Avenue, Orlando, Florida 32801 on July 11, 2005, at 9:30 am. All of the directors and shareholders were present.  Frank Amodeo acted as Chairman of the meeting.

Upon motion duly made and seconded, the following resolutions were unanimously adopted:

RESOLVED, James V. Sadrianna, of Orlando, Florida, is authorized to open a bank account in the name of Mirabilis Ventures, Inc.

RESOLVED, James V. Sadrianna is authorized to be the sole signer for the above-referenced bank account.

There being no further business, the meeting was adjourned at 10:00 am.

Robert Pollack, M.D.
Executive Vice President

## ASSIGNMENT AND ACCEPTANCE

**ASSIGNOR:**      Mirabilis Ventures, Inc., a Nevada corporation

**ASSIGNEE:**      Laurie Andrea, an Individual

For good and valuable consideration, the receipt of which is hereby acknowledged, and in consideration of the covenants contained herein, Assignor does hereby agree to assign, transfer and convey all rights, title and interests in and to fifty-one percent (51%) of Assignor's total controlling interest in AEM, INC., a Florida corporation (the "Interest"), to Assignee upon the following terms and conditions:

1.     Assignor hereby assigns the Interest for a Term of sixty (60) days from the date of this Assignment and Acceptance Agreement, or until the Florida Department of Business and Professional Regulations has approved Assignor's purchase of one hundred percent (100%) controlling interest in AEM, INC., whichever is sooner.

2.     Upon the occurrence of either event set forth in number 1 hereinabove, all rights title and interests in and to the Interest, assigned pursuant to this Assignment and Acceptance Agreement, shall automatically and immediately revert back to Assignor.  If for any reason such reversion rights are held invalid or unenforceable, Assignee does hereby agree that Assignee will execute and deliver such further instruments and do such further acts and things as may be reasonably required to carry out the intent and purpose of this Assignment and Acceptance Agreement.

3.     This Assignment will be effective when signed by all parties.

IN WITNESS WHEREOF, the parties have executed this assignment on this the 6th day of July, 2005.

ASSIGNOR:                ASSIGNEE:

**MIRABILIS VENTURES, INC.**     **LAURIE ANDREA**

By: _____     By: _____

Name: _Yaniv Amar_____

Its: _Chairman_____

## MINUTES OF

## MIRABILIS VENTURES, INC.

### SPECIAL JOINT MEETING OF THE BOARD OF DIRECTORS AND SHAREHOLDERS

#### July 6, 2005

A special joint meeting of the shareholders and directors of Mirabilis Ventures, Inc., was held at 20 N. Orange Avenue, Orlando, Florida 32801 on July 6, 2005, at 1:00 pm. All of the shareholders and directors were present, having waived notice of the meeting. Yaniv Amar acted as Chairman of the meeting.

Upon motion duly made, seconded and approved by the Shareholders and Board of Directors, the following resolutions were unanimously adopted:

RESOLVED, that the Company is authorized and directed to issue One Million (1,000,000) shares of Preferred Stock of $0.00 par value each.

RESOLVED FURTHER, that the appropriate officers of the Company are hereby authorized and directed to take all such actions as they shall deem necessary or advisable to carry out the foregoing resolution and to execute and file Articles of Amendment with the Secretary of State of the State of Nevada reflecting the aforementioned amendment to the Articles of Incorporation.

There being no further business, the meeting was adjourned at 2:00 pm.

_____
Yaniv Amar, Chairman

#### WAIVER AND CONSENT

The undersigned, being all the shareholders and directors of Mirabilis Ventures, Inc., hereby waive notice of the Special Joint Meeting of the Board of Directors and Shareholders held on July 6, 2005, and consent to all actions taken thereat.

_____
Yaniv Amar, Director and Sole Shareholder

## MINUTES OF

## MIRABILIS VENTURES, INC.

### SPECIAL JOINT MEETING OF THE BOARD OF DIRECTORS AND SHAREHOLDERS

### July 6, 2005

A special joint meeting of the shareholders and directors of Mirabilis Ventures, Inc., was held at 20 N. Orange Avenue, Orlando, Florida 32801 on July 6, 2005, at 2:00 pm. All of the shareholders and directors were present, having waived notice of the meeting. Yaniv Amar acted as Chairman of the meeting.

Upon motion duly made, seconded and approved by the Shareholders and Board of Directors, the following resolutions were unanimously adopted:

RESOLVED, that the Company is authorized and directed to enter into an Assignment Agreement, to transfer fifty-one percent (51%) of Company's total interest in AEM, INC., a Florida Corporation, to Laurie Andrea upon approval of a definitive agreement on terms acceptable to the Board of Directors.

RESOLVED FURTHER, that the appropriate officers of the Company are hereby authorized and directed to take all such actions as they shall deem necessary or advisable to carry out the foregoing resolution.

There being no further business, the meeting was adjourned at 3:00 pm.

_____
Yaniv Amar, Chairman

### WAIVER AND CONSENT

The undersigned, being all the shareholders and directors of Mirabilis Ventures, Inc., hereby waive notice of the Special Joint Meeting of the Board of Directors and Shareholders held on July 6, 2005, and consent to all actions taken thereat.

_____
Yaniv Amar, Director and Sole Shareholder

# RESOLUTIONS

## MIRABILIS VENTURES, INC.

The following resolutions were adopted by Mirabilis Ventures, Inc., and the undersigned officers do herby authorize the following:

RESOLVED, that Company has authorized James V. Sadrianna to open a new banking account at SunTrust Bank on behalf of the Company.

RESOLVED, that James V. Sadrianna shall be the sole authorized and appointed signatory on this new Company banking account, and shall maintain and control this new Company banking account.

RESOLVED, that James V. Sadrianna is hereby authorized and directed to take all such actions as he shall deem necessary or advisable to carry out the foregoing resolutions.

Dated on this the 20th day of June, 2005.


Signature: _____
Name: Robert Pollack, MD
Its:     Vice President


Signature: _____
Name: Jason Carlson
Its:     Vice President

**UNANIMOUS WRITTEN CONSENT OF BOARD OF DIRECTORS
OF MIRABILIS VENTURES, INC., A NEVADA CORPORATION,
AT A SPECIAL MEETING OF THE BOARD OF DIRECTORS ON JUNE 9, 2005**

A special meeting of the Board of Directors of Mirabilis Ventures, Inc., a Nevada corporation (the "Company"), was held at 20 North Orange Avenue, Suite 1400, Orlando, Florida 32801, on June 9, 2005, at 2:00 pm. All of the directors of the Company were present, having waived notice of the meeting.

Upon motion duly made and seconded, and approved by the Board of Directors, the following resolution was unanimously adopted:

RESOLVED, that the Company hereby authorizes Mirabilis Ventures, Inc. to purchase Fifty Thousand ($50,000) Dollars worth of common stock in Legend Holdings of America, Inc., a Florida corporation, at a price of One ($1.00) Dollar per share. Payment shall be made on or before July 31, 2005, however, the effective date of the purchase shall be June 9, 2005.

FURTHER RESOLVED, that the Board of Directors is hereby authorized and directed to take all such actions as they shall deem necessary or advisable to carry out the foregoing resolution.

The meeting was adjourned at 3:00 pm.

Signature:
Name: Robert Pollack, MD
Its:   Director

Signature:
Name: Jason W. Carlson
Its:   Director

Signature:
Name: Edie Curry
Its:   Director



**MINUTES OF**

**MIRABILIS VENTURES, INC.**

**SPECIAL JOINT MEETING OF DIRECTORS AND SHAREHOLDERS**

**APRIL 7, 2005**

A special joint meeting of the directors and shareholders of MIRABILIS VENTURES, INC. was held at 20 N. Orange Avenue, Orlando, Florida 32801 on April 7, 2005, at 9:30 am. All of the directors and shareholders were present. Frank Amodeo acted as Chairman of the meeting.

WHEREAS, at a special joint meeting of the directors and shareholders held on February 15, 2005, the Company adopted certain resolutions for the creation of employee positions, and the payment of base compensation and additional compensation to such employees. A copy of the Minutes of such meeting is attached hereto as Exhibit "A" (the "February 15, 2005 Minutes").

WHEREAS, the directors and shareholders desire to now modify and further expand the additional compensation payable to such employees.

Upon motion duly made and seconded, the following resolutions were unanimously adopted:

RESOLVED, the February 15, 2005 Minutes are hereby ratified and confirmed, and the defined terms therein apply herein.

RESOLVED, the preferred shares which are to be granted to such employees and consultants whenever Company revenues are sufficient to do so, on the basis of the Formula, shall be granted based on the new formula set forth in revised Schedule "A" attached hereto (the "New Formula").

RESOLVED, based on the New Formula, whenever 30 preferred shares have been granted, such person shall be eligible to be a Partner, as set forth in the New Formula, and as a Partner, shall have the right to vote, with other Partners, on the admission of new Partners. A person can become a Partner whenever 1/2 of all current Partners vote to grant partnership status to such person.

RESOLVED, the maximum number of preferred shares that any person may earn shall be fifty (50).

RESOLVED, that eligibility for Tenured Member status shall automatically be granted to any Partner who has served continuously as a Senior Regional Partner (as such position shall be further defined and established by the Company) for three (3) years, regardless of the number of preferred shares held by such Partner.

RESOLVED, that Tenured Members shall select which persons of the Company shall serve as directors on the boards of directors of various companies affiliated with the Company, and thereby be entitled to receive the additional compensation listed in the Formula for such services.

RESOLVED, that Frank Amodeo is hereby authorized and directed to take all such actions as he shall deem necessary or advisable to carry out the foregoing resolutions.

There being no further business, the meeting was adjourned at 11:00 am.

_____
Frank Amodeo, Chairman

## WAIVER AND CONSENT

The undersigned, being all the shareholders and directors of Mirabilis Ventures, Inc., hereby waive notice of the Special Joint Meeting of the Board of Directors and Shareholders held on April 17, 2005, and consent to all actions taken thereat.

_____
Frank Amodeo, Chairman

*Didit occur,*
*per Frank*
*Amodeo*

## MINUTES OF

## MIRABILIS VENTURES, INC.

## SPECIAL JOINT MEETING OF DIRECTORS AND SHAREHOLDERS

### April 7, 2005

A special joint meeting of the directors and shareholders of MIRABILIS VENTURES, INC. was held at 20 N. Orange Avenue, Orlando, Florida 32801, on April 7, 2005, at 9:30 am. All of the directors and shareholders were present. Yaniv Amar acted as Chairman of the meeting.

WHEREAS, at a special joint meeting of the directors and shareholders held on February 15, 2005, the Company adopted certain resolutions for the creation of employee positions, and the payment of base compensation and additional compensation to such employees. A copy of the Minutes of such meeting is attached hereto as Exhibit "A" (the "February 15, 2005 Minutes");

WHEREAS, the directors and shareholders d̶ additional compensation payable to such employees;

Upon motion duly made and seconded, the adopted:

RESOLVED, the February 15, 2005 Minute: defined terms therein apply herein.

RESOLVED, the preferred shares which : consultants whenever Company revenues are suffic shall be granted based on the new formula set fort "New Formula").

*Note: these are unexecuted docs w/ Yaniv A. as signor - there are executed versions in book/Engagement w/ Frank A. as signor.*

RESOLVED, based on the New Formula, whenever so prov̶i̶d̶e̶d̶ ____. granted, such person shall be eligible to be a Partner, as set forth in the New Formula, and as a Partner shall have the right to vote with other Partners, on the admission of new Partners. A person can become a Partner whenever ½ of all current Partners vote to grant partnership status to such person.

RESOLVED, the maximum number of preferred shares that any person may earn shall be fifty (50).

RESOLVED, that eligibility for Tenured Member status shall automatically be granted to any Partner who has served continuously as a Senior Regional partner (as such position shall be further defined and established by the Company) for three (3) years, regardless of the number of preferred shares held by such Partner.

**RESOLVED,** that Tenured Members shall select which persons of the Company shall serve as directors on the boards of directors of various companies affiliated with the Company and thereby be entitled to receive the additional compensation listed in the Formula for such services.

**RESOLVED,** that Yaniv Amar is hereby authorized and directed to take all such actions as he shall deem necessary or advisable to carry out the foregoing resolutions.

There being no further business, the meeting was adjourned at 11:00 am.

_____
Yaniv Amar, Chairman

## WAIVER AND CONSENT

The undersigned, being the sole director and shareholder of Mirabilis Ventures, Inc., hereby waives notice of the Special Meeting of the Directors and Shareholders held on April 7, 2005, and consents to all actions taken thereat.

_____
Yaniv Amar, Sole Director and Sole Shareholder

**MINUTES OF**

**MIRABILIS VENTURES, INC.**

**SPECIAL MEETING OF DIRECTORS AND SHAREHOLDERS**

**February 10, 2005**

A special meeting of the directors and shareholders of Mirabilis Ventures, Inc., a Nevada Corporation, was held at 20 N. Orange Avenue, Orlando, Florida 32801, on February 10, 2005, at 10:00 am. All of the directors and shareholders were present, having waived notice of the meeting. Yaniv Amar acted as Chairman of the meeting.

Upon motion duly made and seconded, the following resolutions were unanimously adopted:

**RESOLVED**, the Company acknowledges, ratifies, and accepts assignment of the following assets from Trafalgar Capital Group, Inc.:

1) 

| ASSAY# | Product Code | Weight | Description | Location | Lot |
|--------|-------------|--------|-------------|----------|-----|
| 5935 | Container #14 | 15,900 lbs | Seal #660751 | B-4 | 65 |
| 5935 | Container #15 | 16,600 lbs | Seal #660752 | B-4 | 65 |

   *\* See attached Exhibits A-G.*

2) 350 shares of Quantum Delta Enterprises, Incorporated, a Minnesota Corporation

3) Analytic Data Systems, Incorporated – Intellectual Property

**RESOLVED**, that the Board of Directors is hereby authorized and directed to take all such actions as they shall deem necessary or advisable to carry out the foregoing resolution.

There being no further business, the meeting was adjourned at 10:20 am.

_____

Yaniv Amar, Chairman

**WAIVER AND CONSENT**

The undersigned, being the sole director and shareholder of Mirabilis Ventures, Inc., hereby waives notice of the Special Meeting of the Directors and Shareholders held on February 10, 2005, and consents to all actions taken thereat.

_____

Yaniv Amar, Sole Director and Sole Shareholder

## MINUTES OF

## MIRABILIS VENTURES, INC.

### SPECIAL JOINT MEETING OF DIRECTORS AND SHAREHOLDERS

#### February 15, 2005

A special joint meeting of the directors and shareholders of MIRABILIS VENTURES, INC. was held at 20 N. Orange Avenue, Orlando, Florida 32801, on February 15, 2005, at 9:30 am. All of the directors and shareholders were present. Yaniv Amar acted as Chairman of the meeting.

Upon motion duly made and seconded, the following resolutions were unanimously adopted:

RESOLVED, the Company is authorized to create the employee positions, and pay the base compensation and additional compensation to such employees, as set forth in Schedule A.

RESOLVED, the Company is authorized to create a preferred class of stock, the purpose of which will be to serve as shares to be granted as compensation to various employees of the Company and its affiliates.

RESOLVED, each preferred share shall have a face value of $100,000 and shall bear a coupon rate of 6% (the "Coupon").

RESOLVED, preferred shares shall be granted to such employees and consultants whenever Company revenues are sufficient to do so, on the basis of the formula set forth in Schedule A (the "Formula").

RESOLVED, based on the Formula, whenever 50 preferred shares have been granted, such person shall be eligible to have "Tenure," and as such a "Tenured Member," shall have the right to vote with other Tenured Members on the admission of new Tenured Members. A person has Tenure and becomes a Tenured Member whenever 2/3 of all current Tenured Members vote to grant Tenure to such person, and the permission of a majority in ownership of the common stock of the Company vote to allow such person to be granted Tenure also. Tenured Members shall have such other rights and privileges as the Company shall determine from time to time.

RESOLVED, the Coupon shall be paid annually to each preferred shareholder and any annual distributions out of retained earnings of the Company to preferred shareholders in addition to the Coupon shall be determined by a vote of the preferred shareholders. One-half of the annual retained earnings of the Company may be paid as a pro rata distribution, 1/3 to the common shareholders and 2/3 to the preferred shareholders, upon the vote of a majority of the preferred shareholders, and all of the annual retained earnings of the Company may be paid as a pro rata distribution, 1/3 to the common shareholders and 2/3 to the preferred shareholders, upon the vote of 2/3 of the preferred shareholders and a majority of the common shareholders.

**RESOLVED,** that Yaniv Amar is hereby authorized and directed to take all such actions as he shall deem necessary or advisable to carry out the foregoing resolutions.

There being no further business, the meeting was adjourned at 11:00 am.

_____
Yaniv Amar, Chairman

## WAIVER AND CONSENT

The undersigned, being the sole director and shareholder of Mirabilis Ventures, Inc., hereby waives notice of the Special Meeting of the Directors and Shareholders held on February 15, 2005, and consents to all actions taken thereat.

_____
Yaniv Amar, Sole Director and Sole Shareholder

# WAIVER OF NOTICE OF SPECIAL MEETING

## OF SHAREHOLDERS

## OF

## MIRABILIS VENTURES, INC.

The undersigned, being the sole Shareholder of Mirabilis Ventures, Inc., a corporation organized under the laws of the State of Nevada, do hereby waive all of the statutory requirements as to notice of the time, place and purpose of the special meeting of the Shareholders of said Corporation, and the publication thereof, and consent that the meeting shall be held at the Florida offices of the Corporation at 10:00 a.m. on July 20, 2005.

Dated: July 20, 2005

Frank Amodeo, Sole Shareholder

Waiver Notice Special Meeting Shareholders 7-20-05

## WRITTEN ACTION OF THE DIRECTORS
## OF
## MIRABILIS VENTURES, INC.

### March 31, 2005

The undersigned, being and constituting all of the Directors of **MIRABILIS VENTURES, INC.**, a Nevada corporation (the "Corporation" or "MVI"), do hereby consent to the following actions to be taken without a meeting of the Board of Directors of this Corporation:

**BE IT RESOLVED THAT** this Corporation is authorized to issue to 2,000 shares of Class Z Preferred Stock to Frank Amodeo, Jr., which shall be treated as a repayment of Two Million Dollars ($2,000,000) in prior cash contributions.

Jason Carlson, Director

Robert Pollack, MD, Director

Edie Curry, Director

### WRITTEN ACTION OF THE DIRECTORS
### OF
### MIRABILIS VENURES, INC.

#### February 28, 2005

The undersigned, being and constituting all of the Directors of **MIRABILIS VENTURES, INC.**, a Nevada corporation (the "Corporation" or "MVI"), do hereby consent to the following actions to be taken without a meeting of the Board of Directors of this Corporation:

**BE IT RESOLVED THAT** this Corporation is authorized to issue to 2,000 shares of Class Z Preferred Stock to Frank Amodeo, Jr., which shall be treated as repayment of a Five Hundred Thousand ($500,000) prior cash contribution and the assignment of a One Million Five Hundred Thousand ($1,500,000) note receivable from AQMI Strategy Corporation.

Jason Carlson, Director

Robert Pollack, MD, Director

Edie Curry, Director

# MINUTES OF

## MIRABILIS VENTURES, INC.

### SPECIAL JOINT MEETING OF DIRECTORS AND SHAREHOLDERS

#### FEBRUARY 15, 2005

A special joint meeting of the directors and shareholders of MIRABILIS VENTURES, INC. was held at 20 N. Orange Avenue, Orlando, Florida 32801 on February 15, 2005, at 9:30 am. All of the directors and shareholders were present. Frank Amodeo acted as Chairman of the meeting.

Upon motion duly made and seconded, the following resolutions were unanimously adopted:

RESOLVED, the Company is authorized to create the employee positions, and pay the base compensation and additional compensation to such employees, as set forth in Schedule A.

RESOLVED, the Company is authorized to create a preferred class of stock, the purpose of which will be to serve as shares to be granted as compensation to various employees of the Company, and its affiliates.

RESOLVED, each preferred share shall have a face value of $100,000, and shall bear a coupon rate of 6% (the "Coupon").

RESOLVED, preferred shares shall be granted to such employees and consultants whenever Company revenues are sufficient to do so, on the basis of the formula set forth in Schedule A (the "Formula").

RESOLVED, based on the Formula, whenever 50 preferred shares have been granted, such person shall be eligible to have "Tenure", and as such a "Tenured Member", shall have the right to vote, with other Tenured Members, on the admission of new Tenured Members. A person has Tenure, and becomes a Tenured Member, whenever 2/3 of all current Tenured Members vote to grant Tenure to such person, and the permission of a majority in ownership of the common stock of the Company vote to allow such person to be granted Tenure also. Tenured Members shall have such other rights and privileges as the Company shall determine from time to time.

RESOLVED, the Coupon shall be paid annually to each preferred shareholder, and any annual distributions out of retained earnings of the Company to preferred shareholders in addition to the Coupon shall be determined by a vote of the preferred shareholders. One half of the annual retained earnings of the Company may be paid as a pro rata distribution, 1/3 to the common shareholders, and 2/3 to the preferred shareholders, upon the vote of a majority of the preferred shareholders, and all of the annual retained earnings of the Company may be paid as a pro rata distribution, 1/3 to the common shareholders, and 2/3 to the preferred shareholders, upon the vote of 2/3 of the preferred shareholders and a majority of the common shareholders.

RESOLVED, that Frank Amodeo is hereby authorized and directed to take all such actions as he shall deem necessary or advisable to carry out the foregoing resolutions.

There being no further business, the meeting was adjourned at 11:00 am.

Frank Amodeo, Chairman

## WAIVER AND CONSENT

The undersigned, being all the shareholders and directors of Mirabilis Ventures, Inc., hereby waive notice of the Special Joint Meeting of the Board of Directors and Shareholders held on February 15, 2005, and consent to all actions taken thereat.

Frank Amodeo, Sole Director and Shareholder

## Schedule A

**Compensation**

| Position | Base Monthly Compensation | Additional Compensation Based upon Percentage of Directors Fees Earned |
|---|---|---|
| **Staff** | | |
| Clerk 1 | 1,500 | 0% |
| Clerk 2 | 1,750 | 0% |
| Clerk 3 | 2,000 | 0% |
| Assistant | 2,500 | 0% |
| Senior Assistant | 2,750 | 0% |
| Para Professional | 3,000 | 0% |
| Advanced Para Professional | 3,500 | 0% |
| Senior Staff | 4,000 | 0% |
| **Executive** | | |
| Staff Consultant | 4,000 | 25% |
| Consultant | 5,000 | 25% |
| Senior Consultant | 6,000 | 25% |
| Associate | 7,000 | 33% |
| Senior Associate | 7,500 | 33% |
| Partner | 8,000 | 40% |
| Administrative Partner | 10,000 | 40% |
| Executive Partner | 12,500 | 40% |

**Ownership**

| | Annual Shares | Cumulative Shares |
|---|---|---|
| **Staff** | | |
| Year 1 | - | - |
| Year 2 | 0.25 | 0.25 |
| Year 3 | 0.25 | 0.50 |
| Year 4 | 0.25 | 0.75 |
| Year 5 | 0.25 | 1.00 |
| Year 6 | 0.25 | 1.25 |
| Year 7 | 0.25 | 1.50 |
| Year 8 | 0.25 | 1.75 |
| Year 9 | 0.25 | 2.00 |
| Year 10 | 0.25 | 2.25 |
| Year 11 | 0.25 | 2.50 |
| Year 12 | 0.25 | 2.75 |
| Year 13 | 0.25 | 3.00 |
| Year 14 | 0.25 | 3.25 |
| Year 15 | 0.25 | 3.50 |
| Year 16 | 0.25 | 3.75 |
| Year 17 | 0.25 | 4.00 |
| Year 18 | 0.25 | 4.25 |
| Year 19 | 0.25 | 4.50 |
| Year 20 | 0.50 | 5.00 |
| **Executive** | | |
| Year 1 | - | - |
| Year 2 | 1.0 | 1.0 |
| Year 3 | 2.0 | 3.0 |
| Year 4 | 3.0 | 6.0 |
| Year 5 | 4.0 | 10.0 |
| Year 6 | 5.0 | 15.0 |
| Year 7 | 5.0 | 20.0 |
| Year 8 | 4.0 | 24.0 |
| Year 9 | 3.0 | 27.0 |
| Year 10 | 3.0 | 30.0 |
| Year 11 | 2.0 | 32.0 |
| Year 12 | 2.0 | 34.0 |
| Year 13 | 2.0 | 36.0 |
| Year 14 | 2.0 | 38.0 |
| Year 15 | 2.0 | 40.0 |
| Year 16 | 2.0 | 42.0 |
| Year 17 | 2.0 | 44.0 |
| Year 18 | 2.0 | 46.0 |
| Year 19 | 2.0 | 48.0 |
| Year 20 | 2.0 | 50.0 |

## WRITTEN ACTION OF THE DIRECTORS
## OF
## MIRABILIS VENURES, INC.

### February 10, 2005

The undersigned, being and constituting all of the Directors of **MIRABILIS VENTURES, INC.**, a Nevada corporation (the "Corporation" or "MVI"), do hereby consent to the following actions to be taken without a meeting of the Board of Directors of this Corporation:

**BE IT RESOLVED THAT** this Corporation is authorized to issue to 500 shares of Class B Preferred Stock to Frank Amodeo, Jr., which shall be treated as a Five Hundred Thousand ($500,000) principal payment of a non-interest bearing note.

_____
Jason Carlson, Director

_____
Robert Pollack, MD, Director

_____
Eddie Curry, Director



## MINUTES OF

## MIRABILIS VENTURES, INC.

### SPECIAL MEETING OF DIRECTORS AND SHAREHOLDERS

### February 10, 2005

A special meeting of the shareholders and directors of Mirabilis Ventures, Inc., a Nevada Corporation, was held at 20 N. Orange Avenue, Orlando, Florida 32801 on February 10, 2005, at 10:00 am. All of the shareholders were present, having waived notice of the meeting. Frank Amodeo acted as Chairman of the meeting.

Upon motion duly made and seconded, the following resolutions were unanimously adopted:

RESOLVED, the Company acknowledges, ratifies, and accepts assignment of the following assets from Trafalgar Capital Group, Inc. :

| 1) | ASSAY# | Product Code | Weight | Description | Location | Lot |
|----|--------|--------------|--------|-------------|----------|-----|
|    | 5935   | Container #14 | 15,900 lbs | Seal #660751 | B-4 | 65 |
|    | 5935   | Container #15 | 16,600 lbs | Seal #660752 | B-4 | 65 |

\* See attached Exhibits A-G.

2) 350 share of Quantum Delta Enterprises, Incorporated, a Minnesota Corporation

3) Analytic Data Systems, Incorporated- Intellectual Property

RESOLVED, that the Board of Directors is hereby authorized and directed to take all such actions as they shall deem necessary or advisable to carry out the foregoing resolution.

There being no further business, the meeting was adjourned at 10:20 am.

_____
Frank Amodeo, Chairman

### WAIVER AND CONSENT

The undersigned, being all the directors and shareholders of Mirabilis Ventures, Inc., hereby waive notice of the Special Meeting of the Directors and Shareholders held on February 10, 2005, and consent to all actions taken thereat.

_____
Frank Amodeo, Sole Shareholder and Director

## WAREHOUSE RECEIVING

Customers: Glenn and Linda Thompson
520 Shadow Lane
Van Buren, AR 72956
479-474-5245
479-650-5389

TOTAL NEW MEXICO WAREHOUSE
P.O. Box 23846
Tempe, AZ 85284

Storage Receipt # 0-0014
Date Received  7-15-03

| # Pieces | Product Code | Weight | Description | Location | Comments |
|---|---|---|---|---|---|
| 1 | Container #14 | 15,900 lbs. | Seal # 660751 | B-4 | |
| 1 | Container #15 | 16,600 lbs | Seal # 660752 | B-4 | |

Operations Manager
*No one is allowed to access or move these containers except customers listed above.

# Farmers Cooperative Scales

## Weight Ticket No. 00229

### Date   7-15-2003

Time in:  1:27a.m.
Time out: 1:35 a.m.

Product:  Concentrate Precious Metal

Container #14                    Weight  15,900 lbs.

Container #15                    Weight  16,600 lbs.

Total weight in Tons                 Tons    16.25

Weigher _Kenji P. Scott_

Notary Public: _Gayle Smith_

My Commission expires 10-17-06

*[Notary seal: GAYLE SMITH, NOTARY PUBLIC, STATE OF OKLAHOMA, HASKELL]*

B
.08

## TOTAL NEW MEXICO WAREHOUSE
### P. O. Box 23846
### Tempe AZ 85284

---

## CONTAINER REPORT

| Container# | Seal# | Assay# | Lot# | Weight/lbs |
|------------|-------|--------|------|------------|
| 14 | 660751 | 5935 | 65 | 15,900 lbs. |
| 15 | 660752 | 5935 | 65 | 16,600 lbs. |
| | | | Or | 16.25 Tons |

*Operations Manager*

Notary Public *Gayle Smith*

my Commission Expires 10-17-06

c
—
M

# TOTAL NEW MEXICO WAREHOUSE
## P. O. Box 23846
## Tempe, AZ 85284

## SAFE KEEPING RECEIPT

Storage Date   7-15-03
Storage Receipt # 0-0014

The Following Precious Metal Concentrate is held in safekeeping
for Glenn and Linda Thompson.  The concentrate storage consists
of the following:

- Commodity:  Precious Metal Concentrate
- Number of Units:  2 containers  #14 and #15
- Total Weight:  32,500 lbs or 16.25 Tons
- Metal container 4' X 4' X 8' with welded lids and seals
- Seal # 660751  and  660752
- Lot # 65
- Assay # 5935
- Market Value $35,320,916.96 value in US Dollars in this inventory
- Verification will be provided upon written request to Glenn and
  Linda Thompson to any party designated in such writ.

_____
Operations Manager

Notary Public _____

my Commission expires
10-17-06

# Metallurgical Research and Assay Laboratory

22246 N. 19th Avenue
Phoenix, Az. 85027
623 587 7690

## ASSAY REPORT

Assay Number:          5935                    Date:  6/16/03

Sample Identification:  Super Con. Lot 65 of Lot 225

Customer:  Red Sands Research and Development

| Element | Oz/Ton |
|---|---|
| Au-Gold | 5709.66 |
| Ag-Silver | 891.62 |
| Pt-Platinum | 10.06 |
| Rh-Rhodium | 7.41 |
| Os-Osmium | 94.89 |
| Ru-Ruthenium | 15.35 |
| Pd-Palladium | 8.67 |
| Ir-Iridium | 17.01 |



These results are based on well known accepted analytical procedures used solely on the sample submitted by the customer. This report is prepared for the exclusive use of the customer. No warranty as to the reproducibility or extractability of the material other than the sample is given. Donald E. Jordan and/or Metallurgical Research and Assay Laboratory make no representation express or implied on material other than that represented by the sample assayed.

"NVALUE" MEANS THAT ELEMENT HAS NOT BEEN ANALYZED FOR THIS REPORT. prior arrangements are made, all samples will be discarded after 30 days

E

## Concentrate Calculations
### ASSAY #5935 – LOT #65 OF #225

| ELEMENT | OZ/TON | | VALUE/OZ | VALUE/TON |
|---|---|---|---|---|
| GOLD (AU | 5709.66 | X | $ 366.50 | $2,092,590.39 |
| SILVER (AG | 891.62 | X | 5.50 | 4,903.91 |
| PLATINUM (PT | 10.06 | X | 696.00 | 7,001.76 |
| RHODIUM (RH | 7.41 | X | 489.00 | 3,623.49 |
| OSMIUM (OS | 94.89 | X | 600.00 | 56,934.00 |
| RUTHENIUM (RU | 15.38 | X | 44.00 | 676.72 |
| PALLADIUM (PD | 8.67 | X | 191.00 | 1,655.97 |
| IRIDIUM (IR | 17.01 | X | 365.00 | 6,208.65 |
| | 6754.70 OZ | | Value / Ton | $2,173,594.89 |

NOTE:  THE ABOVE IS BASED ON MARKET PRICES ON JULY 31, 2003.

F

# FORMULA FOR VALUE OF
# CONTAINER WEIGHT

Container #14                          15,900 lbs

Container #15                          16.600 lbs

Total Weight                           32,500 lbs


Total Tons                             16.25 tons


* Assay value per ton:   $2,173,594.89
  Multiply by total tons:   X  16.25 Tons

* Total value in US Dollars = $35,320,916.96

## MINUTES OF THE ANNUAL MEETING
## OF BOARD OF DIRECTORS OF
## MIRABILIS VENTURES, INC.

Immediately following the annual meeting of Shareholders of Mirabilis Ventures, Inc., convened at 11:00 A.M. on January 3, 2005, the Directors of Mirabilis Ventures, Inc. met.

Present at the meeting were Jason Carlson, Robert Pollack, and Edie Curry, constituting all of the Directors of the Corporation. Robert Pollack presided as Chairman of the meeting and acted as Secretary.

The reports of the affairs of the Corporation were considered, and the Chairman reviewed the resolutions adopted by the Shareholders at the annual meeting of the Shareholders.

The Chairman called the meeting to order and stated that a quorum of the Board of Directors was present for the conduct of business.

The Secretary presented and read a Waiver of Notice to the meeting signed by all of the Directors of the Corporation, which was ordered to be made a part of the Minutes of this meeting.

The Board of Directors held an election for officers of the Corporation and, upon motion duly made, seconded and unanimously carried, it was:

> RESOLVED, that the persons hereinafter named be and are hereby elected to the following described offices to serve in such capacities until their successors are elected at the next annual meeting and qualified:

> President:           Jason Carlson
> Vice President:      Robert Pollack, MD
> Secretary/Treasurer: Edie Curry

Each of the officers so elected thereupon accepted the office to which he or she was elected as aforesaid.

There being no further business before the meeting, it was on motion duly made, seconded and unanimously carried, adjourned.

Respectfully submitted,

Robert Pollack, Secretary

Approved:

Robert Pollack, Chairman

Minutes of Annual Meeting of Board of Directors 1-3-05

# MINUTES OF THE ANNUAL MEETING
## OF BOARD OF DIRECTORS OF
### MIRABILIS VENTURES, INC.

Immediately following the annual meeting of Shareholders of Mirabilis Ventures, Inc., convened at 11:00 A.M. on January 3, 2005, the Directors of Mirabilis Ventures, Inc. met.

Present at the meeting were Jason Carlson, Robert Pollack, and Edie Curry, constituting all of the Directors of the Corporation. Robert Pollack presided as Chairman of the meeting and acted as Secretary.

The reports of the affairs of the Corporation were considered, and the Chairman reviewed the resolutions adopted by the Shareholders at the annual meeting of the Shareholders.

The Chairman called the meeting to order and stated that a quorum of the Board of Directors was present for the conduct of business.

The Secretary presented and read a Waiver of Notice to the meeting signed by all of the Directors of the Corporation, which was ordered to be made a part of the Minutes of this meeting.

The Board of Directors held an election for officers of the Corporation and, upon motion duly made, seconded and unanimously carried, it was:

> RESOLVED, that the persons hereinafter named be and are hereby elected to the following described offices to serve in such capacities until their successors are elected at the next annual meeting and qualified:

| | |
|---|---|
| President: | Jason Carlson |
| Vice President: | Robert Pollack, MD |
| Secretary/Treasurer: | Edie Curry |

Each of the officers so elected thereupon accepted the office to which he or she was elected as aforesaid.

There being no further business before the meeting, it was on motion duly made, seconded and unanimously carried, adjourned.

Respectfully submitted,

Robert Pollack, Secretary

Approved:

Robert Pollack, Chairman

WAIVER OF NOTICE OF THE ANNUAL MEETING
OF THE BOARD OF DIRECTORS OF
MIRABILIS VENTURES, INC.

The undersigned, being all of the Directors of Mirabilis Ventures, Inc., a Corporation organized under the laws of the State of Nevada, do hereby waive all of the statutory requirements as to notice of the time, place and purpose of the annual meeting of the Directors of said Corporation, and the publication thereof, and consent that the meeting shall be held at the Florida offices of the Corporation on January 3, 2005 at 11:00 A.M. of that day, and consent to the transaction of any and all business that may properly come before said meeting.

Dated: January 3, 2005

_____
Jason Carlson, Director

_____
Robert Pollack, MD, Director

_____
Edie Curry, Director

## WAIVER OF NOTICE OF THE ANNUAL MEETING
## OF THE BOARD OF DIRECTORS OF
## MIRABILIS VENTURES, INC.

The undersigned, being all of the Directors of Mirabilis Ventures, Inc., a Corporation organized under the laws of the State of Nevada, do hereby waive all of the statutory requirements as to notice of the time, place and purpose of the annual meeting of the Directors of said Corporation, and the publication thereof, and consent that the meeting shall be held at the Florida offices of the Corporation on January 3, 2005 at 11:00 A.M. of that day, and consent to the transaction of any and all business that may properly come before said meeting.

Dated: January 3, 2005


_____
Jason Carlson, Director


_____
Robert Pollack, MD, Director


_____
Edie Curry, Director

## WAIVER OF NOTICE OF THE ANNUAL MEETING
## OF THE BOARD OF DIRECTORS OF
## MIRABILIS VENTURES, INC.

The undersigned, being all of the Directors of Mirabilis Ventures, Inc., a Corporation organized under the laws of the State of Nevada, do hereby waive all of the statutory requirements as to notice of the time, place and purpose of the annual meeting of the Directors of said Corporation, and the publication thereof, and consent that the meeting shall be held at the Florida offices of the Corporation on January 3, 2005 at 11:00 A.M. of that day, and consent to the transaction of any and all business that may properly come before said meeting.

Dated: January 3, 2005

Jason Carlson, Director

Robert Pollack, MD, Director

Edie Curry, Director

### WAIVER OF NOTICE OF THE ANNUAL MEETING
### OF THE BOARD OF DIRECTORS OF
### MIRABILIS VENTURES, INC.

The undersigned, being all of the Directors of Mirabilis Ventures, Inc., a Corporation organized under the laws of the State of Nevada, do hereby waive all of the statutory requirements as to notice of the time, place and purpose of the annual meeting of the Directors of said Corporation, and the publication thereof, and consent that the meeting shall be held at the Florida offices of the Corporation on January 3, 2005 at 11:00 A.M. of that day, and consent to the transaction of any and all business that may properly come before said meeting.

Dated: January 3, 2005

Jason Carlson, Director

Robert Pollack, MD, Director

Edie Curry, Director

# October 28, 2004

Stellar Industries, Inc. is changed to Mirabilis Ventures, Inc. and sold to Yaniv Amar, who is issued the common stock in exchange for services.



**DEAN HELLER**
Secretary of State
204 North Carson Street, Suite 1
Carson City, Nevada 89701-4299
(775) 684-5708
Website: secretaryofstate.biz

C28003-03

## Certificate to Accompany
## Restated Articles
(PURSUANT TO NRS)

FILED
OCT 2 8 2004

Dean Heller
Secretary of State

*Important: Read attached instructions before completing form.*                   ABOVE SPACE IS FOR OFFICE USE ONLY

This Form is to Accompany Restated Articles of Incorporation
(Pursuant to NRS 78.403, 82.371, 86.221 / 88.355 or 88A.250)
(This form is also to be used to accompany Restated Articles for Limited-Liability Companies, Certificates of
Limited Partnership, Limited-Liability Limited Partnerships and Business Trusts)

**1. Name of Nevada entity as last recorded in this office :**
STELLAR INDUSTRIES, INC.   Filed C28003-2003

**2. The articles are being ☐ Restated or ☒ Amended and Restated (check only one). Please entitle your attached articles "Restated" or "Amended and Restated" accordingly.**

**3. Indicate what changes have been made by checking the appropriate boxes:**

☐ No amendments; articles are restated only and are signed by an officer of the corporation who has been authorized to execute the certificate by resolution of the board of directors adopted on ____. The certificate correctly sets forth the text of the articles or Certificate as amended to this date of the certificate.

☒ The entity name has been amended.

☐ The resident agent has been changed. (attach Certificate of Acceptance from new resident agent)

☐ The purpose of the entity has been amended.

☐ The authorized shares have been amended.

☒ The directors, managers or general partners have been amended.

☐ IRS tax language has been added.

☒ Articles have been added.

☐ Articles have been deleted.

☒ Other. The articles or certificate have been amended as follows: (provide article numbers, if available)
1. Name Change to MIRABILIS VENTURES, INC.

*This form is to accompany Restated Articles which contain newly altered or amended articles. The Restated Articles must contain all of the requirements as set forth in the statutes for amending the articles or certificate

IMPORTANT: Failure to include any of the above information and submit the proper fees may cause this filing to be rejected.

*This form must be accompanied by appropriate fees. See attached fee schedule.*      Nevada Secretary of State (Restated) Rev. 1/03



## SECRETARY OF STATE

### STATE OF NEVADA

## CORPORATE CHARTER

I, DEAN HELLER, the duly elected and qualified Nevada Secretary of State, do hereby certify that STELLAR INDUSTRIES, INC., did on November 3, 2003 file in this office the original Articles of Incorporation; that said Articles are now on file and of record in the office of the Secretary of State of the State of Nevada, and further, that said Articles contain all the provisions required by the law of said State of Nevada.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the Great Seal of State, at my office, in Carson City, Nevada, on November 13, 2003.



DEAN HELLER
Secretary of State

By
Certification Clerk

DEAN HELLER
Secretary of State
204 North Carson Street, Suite 1
Carson City, Nevada 89701-4299
(775) 684-5708
Website: www.sos.state.nv.us

C28003-03

**Certificate of Amendment**
(PURSUANT TO NRS 78.380)

FILED
OCT 2 8 2004

Dean Heller
Secretary of State

ABOVE SPACE IS FOR OFFICE USE ONLY

Important: Read attached instructions before completing form.

**Certificate of Amendment to Articles of Incorporation**
**For Nevada Profit Corporations**
(Pursuant to NRS 78.380 - Before Issuance of Stock)

FAXED

1. Name of corporation:

STELLAR INDUSTRIES, INC.   File #C28003-2005

2. The articles have been amended as follows (provide article numbers, if available):

Name Change to MIRABILIS VENTURES, INC.
Attached new set of Articles of Incorporation.

3. The undersigned declare that they constitute at least two-thirds of the incorporators ☑, or of
the board of directors ☐   (check one box only)

4. Effective date of filing (optional): _____

5. The undersigned affirmatively declare that to the date of this certificate, no stock of the
corporation has been issued.

6. Signatures:

_Ralf Gomlin_                                    _____
Signature                                          Signature

*If more than two signatures, attach an 8 1/2x11 plain sheet with the additional signatures.

IMPORTANT: Failure to include any of the above information and submit the proper fees may
cause this filing to be rejected.

This form must be accompanied by appropriate fees. See attached fee schedule.

Nevada Secretary of State Amend Profit-Before
Revised on 01/01/03

ATTN: Ioana

561-361-3484
338-9608

## ARTICLES OF INCORPORATION

### Amended and Restated

(Pursuant to NRS, Chapter 78)

### ARTICLE I—NAME

The name of the corporation is MIRABILIS VENTURES, INC.

### ARTICLE II—RESIDENT AGENT NAME AND STREET ADDRESS

The name of the resident agent for service of process is XTREME BUSINESS SOLUTIONS, located at 3838 Raymert Drive Suite 3, Las Vegas, NV 89121-5247. The mailing address for the resident agent is P.O. Box 50729, Henderson, NV 89016.

### ARTICLE III—PURPOSE

The corporation is organized for the purpose of engaging in any lawful activity, within or without the State of Nevada.

### ARTICLE IV—SHARES OF STOCK

*Number of Shares*

The total number of shares of authorized capital stock of the corporation shall consist of seventy-five thousand (75,000) shares with no par value.

*Classes and Series*

Per NRS 78.035, the Board of Directors is authorized to fix and determine in a resolution the classes, series and numbers of each class or series as provided in NRS 78.195 and 78.196, with such voting powers, designations, preferences and rights or qualifications, limitations or restrictions thereof as shall be stated in the pertinent resolution or resolutions.

*No Preemptive Rights*

Holders of the common stock of this corporation shall not have any preference, preemptive right or right of subscription to acquire any shares of the corporation authorized, issued or sold or to be authorized, issued or sold and convertible into shares of the corporation, nor to any right of subscription thereto, other than to the extent, if any, that the Board of Directors may determine from time to time.

*Non-Assessability*

The common stock of the corporation, after the amount of the subscription price has been paid, in money, property or services, as the Board of Directors shall determine, shall not

be subject to assessment to pay the debts of the corporation, nor for any other purpose, and no stock issued as fully paid shall ever be assessable or assessed, and the Articles of Incorporation shall not be amended in this particular.

*Debt Obligations Equivalent to Stock*

The holder of a bond, debenture or other obligation of the corporation may have any of the rights of a stockholder in the corporation.

## ARTICLE V—DIRECTORS

*Governing Board*

The members of the Governing Board of the corporation shall be styled as Directors.

*Initial Board of Directors*

The initial Board of Directors shall consist of one member. The name and address of the initial member of the Board of Directors is Gallus Harman of 3938 Bayment Drive, Suite # 3 Las Vegas, NV 89121. This individual shall serve as Director until the first annual meeting of the stockholders, until successor(s) shall have been elected and qualified, or until resigned pursuant to NRS 78.150.

*Change in Number of Directors*

The number of directors may be increased or decreased by a duly adopted amendment to the Bylaws of the corporation or by a resolution representing all or a quorum of the Governing Board, pursuant to NRS 78.115.

## ARTICLE VI—DIRECTORS' AND OFFICERS' LIABILITY

A director or officer of the corporation shall not be personally liable to this corporation or its stockholders for damages for breach of fiduciary duty as a director or officer, but this Article shall not eliminate or limit the liability of a director or officer for acts or omissions which involve fraud or a knowing violation of the law.

Any repeal, modification or amendment of this Article shall be prospective only and shall not adversely affect any limitation on the personal liability of a director or officer of the corporation for acts or omissions prior to such repeal or modification.

## ARTICLE VII—INDEMNITY

Every person, who was or is a party to, or is threatened to be made a party to or is involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that he or a person of whom he is the legal representative is or was a director or officer of the corporation, or is or was serving at the

request of the corporation as a director or officer of another corporation, or as its representative in a partnership, joint venture, trust or other enterprise, shall be indemnified and held harmless to the fullest extent legally permissible under the laws of this State of Nevada against any and all expenses, liability or loss (including attorney's fees, judgments, fines and amounts paid or to be paid in settlement) reasonably incurred or suffered by him in connection therewith. Such right of indemnification shall be a contract right which may be enforced in any manner desired by such person. The expenses of officers and directors incurred in defending a civil or criminal action, suit or proceeding must be paid by the corporation as they are incurred and in advance of the final disposition of the action, suit or proceeding, upon receipt of an undertaking by or on behalf of the director or officer to repay the amount if it is ultimately determined by a court of competent jurisdiction that he is not entitled to be indemnified by the corporation. Such right of indemnification shall not be exclusive of any other right which such directors, officers or representatives may have or hereafter acquire and, without limiting the generality of such statement, they shall be entitled to their respective rights of indemnification under any bylaw, agreement, vote of stockholders, provision of law or otherwise, as well as their rights under this Article.

Without limiting the application of the foregoing, the stockholders or Board of Directors may adopt by-laws from time to time with respect to indemnification to provide at all times the fullest indemnification permitted by the laws of the State of Nevada, and may cause the corporation to purchase and maintain insurance on behalf of any person who is or was an officer or director of the corporation, or is or was serving at the request of the corporation as director or officer of another corporation, or as its representative in a partnership, joint venture, trust or other enterprise against any liability asserted against such person and incurred in any such capacity or arising out of such status, whether or not the corporation would otherwise have the power to indemnify such person.

## ARTICLE VIII—AMENDMENTS

Except with respect to amending the non-assessability of shares per Article IV, this Corporation reserves the right to amend, alter, change or repeal any provision contained in these Articles of Incorporation or its Bylaws in the manner now or hereafter prescribed by statute or by these Articles of Incorporation or by the corporation's Bylaws, and all rights conferred upon the stockholders are granted subject to this reservation.

## ARTICLE IX—POWERS OF DIRECTORS

In furtherance and not in limitation of the powers conferred by statute, the Board of Directors is expressly authorized:

1) Subject to the Bylaws, if any, adopted by the stockholders, to make, alter, or repeal the Bylaws of the corporation;

2) To authorize and cause to be executed mortgages and liens, with or without limit as to amount, upon the real and personal property of the corporation;

3) To authorize the guaranty by the corporation of securities, evidences of indebtedness and obligations of other persons, corporations and business entities;

4) To set apart out of any of the funds of the corporation available for distributions a reserve or reserves for any proper purpose and to abolish any such reserve;

5) By resolution, to designate one or more committees, each committee to consist of at least one director of the corporation, which, to the extent provided in the resolution or the Bylaws of the corporation, shall have and may exercise the powers of the Board of Directors in the management of the business and affairs of the corporation, and may authorize the seal of the corporation to be affixed to all papers which may require it. Such committee or committees shall have such name or names as may be determined from time to time by resolution adopted by the Board of Directors; and

6) To authorize the corporation by its officers or agents to exercise all such powers to do all such acts and things as may be exercised or done by the corporation, except and to the extent that any such statute shall require action by the stockholders of the corporation with regard to the exercising of any power or the doing of any such act or thing.

In addition to the powers and authorities herein or by statute expressly conferred upon them, the Board of Directors may exercise all such powers and do all such acts and things as may be exercised or done by the corporation, except as otherwise provided herein and by law.

## ARTICLE X—NAME, ADDRESS AND SIGNATURE OF INCORPORATOR

Name:    Xtreme Business Solutions Inc.   Signature:   _Rob Gillings_
Address:   P.O. Box 50729                                        for XTREME BUSINESS SOLUTIONS, INC
             Henderson, NV 89016

## CERTIFICATE OF ACCEPTANCE OF APPOINTMENT OF RESIDENT AGENT

I, XTREME BUSINESS SOLUTIONS, INC., hereby accept appointment as resident agent for the above-named corporation, as of November 3, 2003.

_Rob Gillings_
for XTREME BUSINESS SOLUTIONS, INC.

## WRITTEN ACTION OF THE DIRECTORS
## OF
## MIRABILIS VENTURES, INC.

### October 28, 2004

The undersigned, being and constituting all of the Directors of MIRABILIS VENTURES, INC., a Nevada corporation (the "Corporation" or "MVI"), do hereby consent to the following actions to be taken without a meeting of the Board of Directors of this Corporation:

BE IT RESOLVED THAT this Corporation is authorized to issue 1,000 shares of common stock to Yaniv Amar in exchange for the provision of $100 of in-kind services, and other good and valuable consideration.

Yaniv Amar, Director

| | |
|---|---|
| **From:** | tessah [tessah@matrixnetwork.net] |
| **Sent:** | Tuesday, January 18, 2005 9:39 AM |
| **To:** | Richard E. Bejman |
| **Subject:** | Amodeo Structure |
| **Attachments:** | 011805 ltr Bejman Structure.doc |

Please review the attached letter from Mr. Amodeo.

Also regarding the pending meeting----Mr. Amodeo is requesting it to be set either this Thursday or next Wednesday or Thursday.

Please advise.

Thanks for all assistance.

Tessah Ivey

This e-mail contains **PRIVILEGED AND CONFIDENTIAL** information intended only for the use of the addressee (s) named above.  If you are not the intended recipient of this e-mail, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited.  If you have received this e-mail in error, please notify us by reply e-mail and delete this e-mail from your records.  Thank you for your cooperation.

## WRITTEN ACTION OF THE DIRECTORS
## OF
## MIRABILIS VENURES, INC.

### October 28, 2004

The undersigned, being and constituting all of the Directors of **MIRABILIS VENTURES, INC.**, a Nevada corporation (the "Corporation" or "MVI"), do hereby consent to the following actions to be taken without a meeting of the Board of Directors of this Corporation:

**BE IT RESOLVED THAT** this Corporation is authorized to issue 1,000 shares of common stock to Yaniv Amar in exchange for the provision of $100 of in-kind services, and other good and valuable consideration.

Yaniv Amar, Director

# EXHIBIT 2

# Summary of Nexia Certification Investment

*This document contains a summary of the expenses incurred and/or creation of Nexia Certification, based upon the available accounting records kept in the ordinary course of business of Mirabilis Ventures, Inc.*

**Total Funds to Nexia Certification:**
Rec'd from Nexia Strategy Corp.

**1,551,292.10**



EXHIBIT 2

MVI/Palaxar - PI
099

2