TAB 9



# MIRABILIS

111 NORTH ORANGE AVENUE, SUITE 2000
ORLANDO, FLORIDA 32801
PH: 407.517.7779 / FX: 407.426.9191

July 17, 2006

James Moore & Co., P.L.
Certified Public Accountants
5931 NW 1st Place
Gainesville, FL 32607-2063

We are providing this letter in connection with your audit of the consolidated balance sheets of Mirabilis Ventures, Inc. and subsidiaries (the Company) as of December 31, 2005 and 2004, and the related consolidated statements of income, stockholders' equity, and cash flows for the years then ended for the purpose of expressing an opinion as to whether the consolidated financial statements present fairly, in all material respects, the financial position, results of operations, and cash flows of the Company in conformity with accounting principles generally accepted in the United States of America. We confirm that we are responsible for the fair presentation in the financial statements of financial position, results of operations, and cash flows in conformity with generally accepted accounting principles. We are also responsible for adopting sound accounting policies, establishing and maintaining internal control, and preventing and detecting fraud.

We confirm, to the best of our knowledge and belief, as of July 17, 2006, the following representations made to you during your audit.

1. The financial statements referred to above are fairly presented in conformity with accounting principles generally accepted in the United States of America.

2. We have made available to you all—

    (a) Financial records and related data.
    (b) Minutes of the meetings of stockholders, directors, and committees of directors, or summaries of actions of recent meetings for which minutes have not yet been prepared.

3. There have been no communications from regulatory agencies concerning noncompliance with, or deficiencies in, financial reporting practices.

4. There are no material transactions that have not been properly recorded in the accounting records underlying the financial statements.

5. We believe the effects of the uncorrected financial statement misstatements summarized in the attached schedule are immaterial, both individually and in the aggregate, to the financial statements taken as a whole. In addition, you have recommended adjusting journal entries that have been posed to the Company's accounts. We are in agreement with those adjustments. No adjustments have been proposed.

6. We acknowledge our responsibility for the design and implementation of programs and controls to prevent and detect fraud.

7. We have no knowledge of any fraud or suspected fraud affecting the company involving—

    (a) Management,

    (b) Employees who have significant roles in internal control, or

    (c) Others where the fraud could have a material effect on the financial statements.

8. We have no knowledge of any allegations of fraud or suspected fraud affecting the company received in communications from employees, former employees, regulators, or others.

9. In regards to any nonattest services performed by you, if any, we have:

    (a) Made all management decisions and performed all management functions.

    (b) Designated a competent employee to oversee the services.

    (c) Evaluated the adequacy and results of the services performed.

    (d) Accepted responsibility for the results of the services.

    (e) Established and maintained internal controls, including monitoring ongoing activities.

10. The company has no plans or intentions that may materially affect the carrying value or classification of assets and liabilities.

11. The following have been properly recorded or disclosed in the financial statements:

    (a) Related party transactions and related accounts receivable or payable, including sales, purchases, loans, transfers, leasing arrangements, and guarantees.

    (b) Guarantees, whether written or oral, under which the company is contingently liable.

12. There are no—

    (a) Violations or possible violations of laws or regulations whose effect should be considered for disclosure in the financial statements or as a basis for recording a loss contingency.

(b) Unasserted claims or assessments that our lawyer has advised us are probable of assertion and must be disclosed in accordance with Statement of Financial Accounting Standards No. 5.

(c) Other liabilities or gain or loss contingencies that are required to be accrued or disclosed by Statement of Financial Accounting Standards No. 5.

13. The company has satisfactory title to all owned assets, and there are no liens or encumbrances on such assets nor has any asset been pledged, except as made known to you and disclosed in the notes to the financial statements.

14. We have complied with all aspects of contractual agreements that would have a material effect on the financial statements in the event of noncompliance.

15. We have identified all accounting estimates that could be material to the financial statements, including the key factors and significant assumptions underlying those estimates, and we believe the estimates are reasonable in the circumstances.

16. We have identified all accounting estimates that could be material to the financial statements, including the key factors and significant assumptions underlying those estimates, and we believe the estimates are reasonable in the circumstances. There are no estimates that may be subject to material change in the near term that have not been properly disclosed in the financial statements. We understand that *near term* means the period within one year of the date of the financial statements.

17. We have no knowledge of concentrations existing at the date of the financial statements that make the company vulnerable to the risk of a near-term severe impact that have not been properly disclosed in the financial statements. We understand that concentrations include individual or group concentrations of customers, suppliers, lenders, products, services, sources of labor or materials, licenses or other rights, or operating areas or markets. We further understand that severe impact means a significant financially disruptive effect on the normal functioning of the company.

18. Except as disclosed in the notes to the financial statements, no events have occurred subsequent to the balance sheet date that would require adjustment to, or disclosure in, the financial statements.

19. The Company (including Nexia and Siren) sold certain fixed assets to Tenshi in exchange for a loan receivable. The Company subsequently entered into a lease agreement effective April 1, 2006 related to the sale transactions. The Company has reported the obligation associated with these operating leases in the notes to the financial statements.

20. The entire book of business and assets of STF Corp. was transferred to Synergy Technology Fabricators, LLC without any consideration. The 100 outstanding member units of Synergy Technology Fabricators, LLC were issued to Mirabilis on 12/1/05 as the sole owner of Synergy Technology Fabricators, LLC.

21. Presidion Solutions, Inc. (Presidion) is owned indirectly by a minority stockholder, Frank Amodeo, of the Mirabilis Ventures, Inc. (Mirabilis) as of December 31, 2005.

3

22. Mirabilis provided advances to the certain subsidiaries during the year ended December 31, 2005 without interest and these loans are due on demand and uncollateralized. These amounts have been eliminated in consolidation.

23. Mirabilis provided certain services, support and overhead to subsidiaries without cost. All charges between entities have been recorded and outstanding balances have been eliminated in consolidation.

24. Mirabilis has provided a collateralized letter of credit for $6,750,000 for the benefit of SUNZ Insurance Company (SUNZ) as required by the workers' compensation agreement with AEM. This has been provided without charge to AEM and no future compensation or reimbursement is due under this arrangement at December 31, 2005.

25. Presidion has paid all amounts due under the AEM policy with SUNZ except the recorded receivables from Presidion or the amounts reimbursed by Presidion at December 31, 2005.

26. All of the AEM stock was acquired on April 29, 2005 by Mirabilis and the stock was owned 100% by Mirabilis through the current date except for the period from July 6, 2005 through September 5, 2005 when 51% of the Company stock was owned by another party.

27. The only fictitious name owned by AEM is Mirabilis HR at December 31, 2005.

28. AEM earned $5,000,000 as a result of services rendered in connection with the Contract for Management Services dated July 28, 2005. While the term of the agreement was for one month, this agreement was extended through December 31, 2005 under the same agreement and monthly compensation of $1,000,000 per month to AEM, Inc. All services required under this agreement have been provided as required and the Presidion receivables are fully collectible. We also understand that any amounts owed under the Assignment Agreement dated July 28, 2005 (including the $4,475,000 due on December 31, 2005) shall be offset, at our option, by the amount due under the Contract for Management Services rather than paid as scheduled under the Assignment Agreement and this receivable will reduce the $12,000,000 due under the Assignment Agreement.

29. AEM advanced $750,000 to the cash loss fund at the inception of the policy and $2,279,181 for the deposit premium to SUNZ. AEM was reimbursed for $2,400,000 of these amounts leaving a balance due of $629,181 due from Presidion to AEM that is fully collectible. The receivable from Presidion would be reduced by any refund from SUNZ. All other amounts required under this policy have been paid by Presidion and there are no amounts due as required by this policy at December 31, 2005. There are no losses under this policy requiring additional amounts from AEM, Presidion or Mirabilis, including any claim against the letter of credit provided by Mirabilis. Any future losses would be reimbursed by Presidion. The Presidion customers were transferred to AEM in May 2006. The receivable of $629,181 and any additional amounts owed by AEM or Mirabilis to SUNZ shall be offset, at the Company's option, by the amount owed as scheduled under the Assignment Agreement and this receivable and future receivables will reduce the $12,000,000 due under the Assignment Agreement.

4

30. The carrying value of goodwill and other intangibles on the books has not been impaired at December 31, 2005.

31. AEM entered into an assignment agreement with Presidion to acquire their entire book of business for $12,000,000 effective May 2006. This payable may be offset by any Presidion receivables recorded. The agreement was subsequently rescinded on May 9, 2006.

32. The Human Resource Enterprise Corporation (HR Enterprise) was incorporated on September 15, 2005 and is wholly owned since inception by Mirabilis Ventures, Inc. Mirabilis contributed $50,000 to HR Enterprise for common stock of $100 and additional paid in capital of $49,900 on September 29, 2005. These represent all capital contributions to HR Enterprise at December 31, 2005.

33. HR Enterprise is licensed with the State of Florida Department of Business and Professional Regulation Board of Employee Leasing Companies effective November 5, 2005 and expires on April 30, 2006.

34. The HR Enterprise related party loan is payable to Mirabilis and is non-interest bearing, uncollateralized, and due on demand.

35. The Company has no guarantees for an unconsolidated entity's debt or obligation, there are no requirements to fund the cash flow needs of an unconsolidated entity, there are no letters of credit issued for the benefit of an unconsolidated entity, or any other explicit or implicit variable interest in an unconsolidated entity.

36. Siren has a loan receivable from FYI for $1,000,000. This obligation is guaranteed by Frank Amodeo. This receivable is fully collectible, noninterest bearing and uncollateralized.

37. Mirabilis did not complete the transaction under the Preferred Securities Purchase Agreement dated December 9, 2004 as amended on March 23, 2005 with Presidion Corporation regarding the transfer of precious metals by Mirabilis in exchange for 2,500 shares of Presidion's preferred stock under the terms of the agreement.

38. The subsidiaries and the applicable acquisition dates included in the financial statements are complete and accurate. There are no other subsidiaries that should be included in these financial statements that were either owned directly or indirectly during the period or that should be included otherwise under FIN 46(R) or other requirements.

39. As to the question as to whether the Company was a going concern at December 31, 2005, Frank Amodeo and related entities have and will support the operations of the Company for at least one year and have the ability to provide this support irrespective of the operations of the Company.

40. We have provided you with all documents that have any audit significance and all documents provided were the fully executed versions that are executed and maintained by the Company and have not been amended or rescinded in any way. All unsigned documents provided are the same as the executed documents. Management and the Company's general counsel have reviewed all documents maintained in your permanent file.

41. The Company shares of stock outstanding are as disclosed in the financial statements. The Company is operating in accordance with both the articles of incorporation and bylaws.

42. The Company is in compliance with all debt covenants at December 31, 2005. The current and noncurrent amounts are properly recorded and disclosed.

43. Receivables recorded in the financial statements represent valid claims against debtors for sales or other charges arising on or before the balance sheet dates and have been reduced to their estimated net realizable value.

44. Arrangements with financial institutions involving compensating balances or other arrangements involving restrictions on cash balances, lines of credit, or similar arrangements have been properly disclosed.

45. Agreements to repurchase or lease assets previously sold have been properly disclosed.

46. Capital stock repurchase options or agreements or capital stock reserved for options, warrants, conversions, or other requirements have been properly disclosed.

47. Note 1 to the financial statements discloses all of the matters of which we are aware that are relevant to the Company's ability to continue as a going-concern, including significant conditions and events, and management's plans.

48. We have reviewed long-lived assets and certain identifiable intangibles to be held and used for impairment whenever events or changes in circumstances have indicated that the carrying amount of assets might not be recoverable and have appropriately recorded the adjustment.

49. All employee benefit plans have been disclosed in the notes to the financial statements including contributions to those plans.

50. We have reviewed securities classifications under SFAS No. 115 reflecting management's ability and intent to hold investments and have disclosed those investments at the appropriate amount in accordance with our intent.

51. We have no knowledge of any IRS examinations of the Company and all tax obligations have been recorded and disclosed properly in the financial statements.

52. We have provided you with the stock ownership including the Class A shares owned by Yaniv Amar, the Class B shares owned by Frank Amodeo and subsequently the shareholders on the approved list of shareholders, and the Class Z shares owned by Frank Amodeo.

| Frank Hailstones, | Paul Glover, | Dan Myers, |
|---|---|---|
| President | Chief Financial Officer | Vice President |

6