IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| MIRABILIS VENTURES, INC. and NEXIA STRATEGY CORPORATION, <br><br> Plaintiffs, <br><br> vs. <br><br> PALAXAR GROUP, LLC; PALAXAR HOLDINGS, LLC; FRANK HAILSTONES; EDITH CURRY a/k/a EDITH BROADHEAD; TERENCE CHU, et al., <br><br> Defendants, <br><br> vs. <br><br> MIRABILIS VENTURES, INC., et al. <br><br> Counterclaim and Third Party Defendants. | Case No. 6:07-CV-1788-ORL-28-KRS <br> 6:07-CV-1788-ORL-28-GJK |

**B&B'S RESPONSE TO THE HAVENER DEFENDANTS'
<u>MOTION FOR RECONSIDERATION</u>**

Balch & Bingham LLP ("B&B") submits the following response to the Motion for Reconsideration ("Motion"), filed May 10, 2010, by Defendants Edith Curry ("Curry"), Frank Hailstones ("Hailstones"), Palaxar Group, LLC and Palaxar Holdings, LLC ("Palaxar") (collectively referred to as "Havener Defendants").

**INTRODUCTION**

On March 9, 2010, Plaintiffs Mirabilis Ventures, Inc. ("MVI") and Nexia Strategy Corporation ("Nexia") (collectively referred to as "Plaintiffs") filed a Motion for Substitution of Counsel. The Motion for Substitution of Counsel was based on Plaintiffs decision to replace B&B with Broad & Cassel in October/November 2009 – more than five months before the filing

of the Motion for Substitution – at which time Plaintiffs relieved B&B of any further authority to act on their behalf. Since then, Broad & Cassel has served as lead counsel. (*See* Attachment A, Declaration of J. Russell Campbell, ¶¶ 9-10; *see also* Attachment B (11/19/09 e-mail from R.W. Cuthill, Jr., to Eric Langley) ("You can close your files. Broad & Cassel has taken over the cases.")). All parties were made aware of Plaintiffs' substitution of counsel. (Dkt. #167). On April 29, 2010, this Court issued an order substituting Broad & Cassel (in place of B&B) as counsel for MVI. As a result of pending bankruptcy proceedings, the ownership of and representation of Nexia has yet to be determined.[1] The Havener Defendants are unable to identify any legitimate prejudice. The Court's April 29, 2010 Order should stand and the Motion should be denied.

Regardless of its style, the Motion has one purpose: the Havener Defendants want the Court to "maintain jurisdiction over Balch until a final judgment has been entered" so that they ***might*** later seek monetary sanctions ***if*** they prevail on the merits. (Motion, p. 20). The Motion is flawed in both purpose and theory.

Putting aside the wild allegations and wholly unsubstantiated conspiracy theories, ***the Motion raises no new law, facts, arguments or evidence*** relating to the issue before the Court. All of the information set forth as support for the Motion occurred before the Havener Defendants filed their initial objection to the second Motion for Substitution of Counsel (on March 11, 2010). Most of the events upon which they rely occurred either while the case was stayed and/or after B&B was no longer authorized to act on Plaintiffs' behalf.

Under this Court's precedent, the Havener Defendants have failed to present sufficient grounds for this Court to even consider the Motion, let alone grant it. *See, e.g., Sec. and Exc.*

---

[1] See Response of Allen Estes, Russ Campbell and Balch & Bingham LLP to Defendant Terence Chu's Motion for Sanctions ("Sanctions Response"), pp. 8-9, filed contemporaneously herewith.

*Comm'n v. Seahawk Deep Ocean Tech., Inc.*, 74 F.Supp. 2d 1188, 1192 (M.D. Fla. 1999)(internal citations omitted)(denying motion to reconsider on grounds that the motion offered no new arguments, issues, caselaw or evidence and presented no basis on which the court should reconsider its order except that the party disagreed with the result).

Further, even if this Court retained jurisdiction over B&B (which it should not), the Havener Defendants would not be entitled to the monetary sanctions even *if* they ultimately prevail on the merits. As set forth more fully in the contemporaneously filed Sanctions Response, B&B conducted a reasonable inquiry of the facts and law before filing the original complaint (or any other pleading). (*See* Sanctions Response, pp. 2-3). Among other things, B&B participated in numerous meetings with Plaintiffs' representatives, reviewed thousands of pages of documents (including audio/video evidence) and researched applicable law. (*See* Attachment A, Campbell Declaration, ¶¶ 5-6; *see also* Sanctions Response, pp. 2-3). B&B's investigation may not prove to be 100% accurate, but it certainly substantiated, or at the very least appeared to substantiate, the facts and allegations set forth in the Complaint. (*Id.*) Because Rule 11 sanctions are not warranted against B&B, the Motion is predicated upon an unattainable goal.

The Motion should be denied.

## PROCEDURAL HISTORY

The procedural history of this matter is set forth in detail in the Sanctions Response (pp. 5-9) and need not be repeated herein. For convenience, B&B merely incorporates its Sanction Response by reference as if set forth fully herein.

## STANDARD FOR MOTION FOR RECONSIDERATION

"A Court will not alter a prior decision absent a showing of clear and obvious error where 'the interest of justice' demand correction." *Parry v. Outback Steakhouse of Florida, Inc.*, No. 8:06-CV-00804-T-17TBM, 2006 WL 3313352, *2 (M.D. Fla. Nov. 14, 2006)(denying motion to

reconsider because it did not present new case law and simply attempted to relitigate the same argument the court had previously rejected). The burden is on the moving party to "demonstrate why the court should reconsider its decision and 'set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Seahawk*, 74 F.Supp. 2d at 1192 (internal citations omitted)(denying motion to reconsider on grounds that the motion offered no new arguments, issues, caselaw or evidence and presented no basis on which the court should reconsider its order except that the party disagreed with the result); *see also Parry*, 2006 WL 3313352 at *2. "In the interest of finality and conservation of scarce judicial resources, reconsideration of a previous order is an extraordinary remedy to be employed sparingly." *Seahawk*, 74 F.Supp. 2d at 1192.

This Court has recognized three grounds justifying reconsideration of an order: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice. *Id.* "With regard to the third ground, the Court cautions that any litigant considering bringing a motion to reconsider based upon that ground should evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant." *Id.*

The Court cannot reconsider a previous ruling "when the party's motion fails to raise new issues and, instead, only relitigates what has already been found lacking." *Id.* "[M]otions for reconsideration 'should not be used to raise arguments which could, and should, have been made earlier. … Thus, a party who fails to present its strongest case in the first instance generally has no right to raise new theories or arguments in a motion for reconsideration." *Parry*, 2006 WL 3313352 at *2 (internal citations omitted). "The failure of a party to include arguments or evidence in its original motion is not a ground to reconsider a prior order. The Court will correct

4

its own mistakes, not those of the parties." *Coleman v. Lazy Days RV Center, Inc.*, No. 8:05-CV-00930-T-17TBM, 2007 WL 2021832, *3 (M.D. Fla. July 12, 2007)(internal citations omitted)(denying motion for reconsideration for plaintiff's failure to present a proper basis).

## ARGUMENT

### I. The Motion Fails To Set Forth Any Justifiable Reason For Reconsideration.

The Motion fails to set forth any justifiable reason for reconsideration. Specifically, the Motion fails to either articulate or demonstrate: (1) an intervening change in controlling law; (2) newly available evidence; or (3) the need to correct clear error or manifest injustice. ***In fact, the Motion fails to even state that any one of these reasons is the grounds upon which the Havener Defendants seek reconsideration***. Having failed to identify or support one of the only three reasons recognized by this Court as justifiable grounds for seeking reconsideration of a previous order, the Motion is facially deficient and fails to "set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Seahawk*, 74 F.Supp. 2d 1188 at 1192 (denying motion to reconsider on grounds that the motion offered no new arguments, issues, caselaw or evidence and presented no basis on which the court should reconsider its order except that the party disagreed with the result).

### A. The Motion Fails To Present Any Intervening Change In Controlling Law.

The Motion fails to set forth any change in controlling law and makes absolutely no argument that there has been an intervening change in controlling law since the Court entered its Order on April 29, 2010.

### B. The Motion Fails To Present Any Newly Available Evidence.

The Motion does not cite a single piece of evidence, or even an allegation of the existence of such evidence, that was not known or available at the time the Havener Defendants

filed their Objection to the Motion for Substitution or when the Court entered its April 29, 2010 Order.

On November 6, 2009, Plaintiffs filed an Unopposed Motion for Substitution of Counsel requesting that Broad & Cassel be substituted as counsel of record for Plaintiffs and that B&B be "relieved of any further responsibility for representation of the Plaintiff in this District Court proceeding." (Dkt. #167). The Havener Defendants did not object. After the stay was lifted, Plaintiffs filed another Motion for Substitution on March 9, 2010. The second motion was filed in an abundance of caution to make clear what appeared to be some confusion in the Court's November 6, 2009 Order (Dkt. #169). (*See* Sanctions Response, pp. 6-9). Despite having failed to do so just four months earlier, this time, the Havener Defendants objected. The Havener Defendants argued that B&B failed to comply with the withdrawal procedures and "[t]here has been no notice of Balch & Bingham's intent to withdraw at any time to opposing counsel." (Dkt. 215). The objection is belied by the first Unopposed Motion to Substitute Counsel (Dkt. #167) and by counsel for the Havener Defendants' own words. Just *three months earlier*, Ms. Havener acknowledged in an e-mail that she knew that Plaintiffs' representation had been "outsourced to Broad & Cassel." (*See* Attachment C, Havener e-mail). Clearly, there was ample notice that B&B intended to withdraw and that Broad & Cassel was now in charge.

The Havener Defendants assert that the Court should reconsider its denial of their previous request that the Court maintain jurisdiction over B&B. Specifically, the Motion states that the Havener Defendants intend to move for monetary sanction for B&B's "respective conduct in bringing and or maintaining this lawsuit the frivolous and baseless complaint, amended complaint and motions" filed on behalf of Plaintiffs. (Motion, p. 2). The Havener Defendants refer to alleged "misconduct" by B&B beginning in October 2007 and continuing

from the time this case was filed (October 12, 2007) through the filing of the first Unopposed Motion for Substitution on November 6, 2009, and until the filing of the March 9, 2010, Motion for Substitution for which they now seek reconsideration

First, the information set forth in the Motion is inaccurate at its best, misleading at its worst. Second, all of the so-called misconduct occurred prior to the filing of the Havener Defendants' objection to the Motion for Substitution and are, therefore, not new. Third, the vast majority of the alleged acts occurred after B&B had been displaced by Plaintiffs and had no authority to act. Finally, the vast majority of the alleged misconduct relates to things B&B allegedly failed to do while the case was stayed and administratively closed.[2] By the time the stay was lifted (December 2009), B&B was no longer representing Plaintiffs in this matter and the Havener Defendants were aware that Broad & Cassel were representing Plaintiffs. (*See* Attachment A, Campbell Declaration, ¶¶ 9-10; *see also* Attachment C (Havener e-mail); Sanctions Response, pp. 6-7).

The Havener Defendants simply seek to relitigate the precise issue this Court has already considered and ruled upon – they simply do not like the result. This is an abuse of the purpose and application of a motion for reconsideration. *Seahawk*, 74 F.Supp. 2d 1188 at 1192. Every single allegation and argument set forth in the Motion could have been raised – and to the extent they rely on it now, should have been raised – when they chose not to object to the first Unopposed Motion for Substitution filed November 6, 2009, or when they first objected to the Motion for Substitution made the basis of this Motion on March 11, 2010. (Dkt. #215). Simply

---

[2] For example, the Havener Defendants claim that B&B failed to disclose that Nexia was administratively dissolved in September, 2008. (Motion, p. 4 n. 6). However, the case was stayed, including all discovery, on June 5, 2008 – **more than three months earlier**. Defendants further argue that B&B has failed to supplement disclosures and discovery responses. However, by the time the stay was lifted, B&B was no longer actively representing Plaintiffs and lacked any authority to act on behalf of Plaintiffs. Consistent with Mr. Cuthill's instructions, B&B had effectively closed the books on this matter. (*See* Attachment A, Campbell Declaration, ¶ 10).

7

because the Havener Defendants failed to submit to the Court all of the information they now contend supports their position does not entitle them to reconsideration. *Parry*, 2006 WL 3313352 at *2 (internal citations omitted)("[M]otions for reconsideration 'should not be used to raise arguments which could, and should, have been made earlier. … Thus, a party who fails to present its strongest case in the first instance generally has no right to raise new theories or arguments in a motion for reconsideration."); *see also Coleman*, 2007 WL 2021832 at *3 ("The failure of a party to include arguments or evidence in its original motion is not a ground to reconsider a prior order. The Court will correct its own mistakes, not those of the parties.").

### C. The Motion Fails To Demonstrate A Need To Correct Clear Error Or Manifest Injustice.

As discussed above, the Motion fails to establish that the Havener Defendants are entitled to reconsideration based on an intervening change in controlling law or on any newly admissible evidence. Therefore, the final ground upon which the Havener Defendants could possibly reply is an assertion that reconsideration is necessary to correct clear error or manifest injustice. Of course, the Motion does not mention the need to correct clear error or manifest injustice. Nonetheless, for purposes of argument, B&B addresses some of the most obvious reasons there is no clear error or manifest injustice to the Havener Defendants.

Substantively, the Havener Defendants gloss over critical facts that form the basis of this lawsuit. The essence of the complaint is that, while employees of MVI and with MVI money (ironically, money they now contend in their Motion for Reconsideration was "laundered" (Dkt. #243)), the Havener Defendants created Nexia Certification, a product intended to be for the exclusive benefit of Plaintiffs. (Dkt. #2). As part of the development of Nexia Certification, a patent application was submitted. (*Id.*) Plaintiffs allege that Defendants Curry and Hailstones failed to name Nexia as the "owner" or "title-holder" on the patent application, as agreed to by

8

the parties. Instead, Defendants used the confidential and proprietary information gathered at MVI's expense for their own personal benefit and gain, or for the benefit and gain of others. (*Id.*)

Plaintiffs further allege that Hailstones and Curry drafted and signed documents purporting to transfer rights to Nexia Certification to themselves – without the requisite authorization, approval or ratification of the Board of Directors for MVI. (*Id.*) Plaintiffs also allege that while Hailstones and Curry were still employed by MVI and/or Nexia, they organized a competing entity, Palaxar Group LLC and/or Palaxar Holdings LLC, which in turn implemented and marketed Nexia Certification. (*Id.*) The allegations set forth in the original complaint are supported by the documents filed on November 11, 2007, in support of Plaintiffs' Motion for Preliminary Injunction, among others. (Dkt. #3).

Nowhere in the Motion do the Havener Defendants address or provide any evidence on these issues or attempt to explain them away. For all it appears, these facts remain the principal underpinning of the lawsuit. In fact, the Havener Defendants admit in their Motion that they are in possession of what has been referred to throughout this litigation as Nexia Certification. (Motion, p. 2 ("Finally, in order effectively to market the Palaxar product, Defendants are convinced they must prevail – not simply be dismissed in this action."), p. 20 (claiming that Defendants are prevented from "marketing the intellectual property at issue")).

### D. The Attacks On B&B Are Wrong.

The mud-slinging against B&B is (1) truly irrelevant to the narrow (and already-resolved) issue before Court; (2) untimely; and (3) should not be considered for purposes of this Motion. Nevertheless, B&B offers the following response to some of the more ridiculous (and borderline fraudulent) allegations:

The Motion states that "Balch continued to accept laundered fees to prosecute this case, despite then President of MVI Jodi Jaiman's deposition testimony (in a related case) – where she was prepared and *defended by Estes* – only twelve days after this case had been filed – that Assistant United States Attorney I. Randall Gold had informed Jaiman and other officer of MVI (including Mokwa) that further disbursement of MVI funds would amount to money laundering." (Motion, p. 3). First, although an attorney for B&B did attend Ms. Jaiman's deposition, Estes did not defend Ms. Jaiman concerning this deposition and, in fact, was not even present at Ms. Jaiman's deposition. (*See* Attachment D, Declaration of Allen M. Estes, ¶ 6). Second, an assertion by Mr. Gold does not establish a rule of law. Instead, it would be an opinion of Mr. Gold that he would be forced to prove (and for which there would be remedies). This is just one example where the Havener Defendants have misrepresented the facts of this case.

The Motion states that B&B had a duty to dismiss the action after stating during the preliminary injunction hearing that there was no patent in this case (and, therefore, patent law was not applicable) and that Nexia was now in the liquidation business. (Motion, p. 4). The Havener Defendants claim that Nexia, therefore, lacked standing to maintain the action and that B&B should, therefore, have dismissed all claims by Nexia. (*Id.*) First, and most telling, Defendants never moved to dismiss for lack of standing on the grounds that Nexia is no longer in

the anti-fraud business. They cannot now seek reconsideration and claim misconduct or error for relief which they have not previously sought. *See Seahawk*, 74 F.Supp. 2d at 1192 ("[M]otions for reconsideration 'should not be used to raise arguments which could, and should, have been made earlier."). Second, in addition to claims for trade secret violations, Plaintiffs nonetheless have claims for breach of contract and other possible state law torts.

The Havener Defendants claim that B&B, by Estes, together with MVI's bankruptcy counsel, "met with AUSA for the Middle District of Florida and the Internal Revenue Service," on May 14, 2008. (Motion, p. 5). The Motion alleges that information exchanged at this meeting directly contradicted certain statements made by Estes approximately four months earlier at the preliminary injunction hearing regarding Amodeo's role at MVI, and demonstrated that Frank Amodeo sas the controlling person of debtor MVI. (*Id.*). Defendants claim that B&B "did nothing to correct the record." (*Id.*) First of all, ***Estes did not participate in or attend the referenced meeting, nor did any other attorney from B&B***. (*See* Attachment D, Estes Declaration, ¶ 5). Further, the statements made by Ms. Green during the meeting do not contradict what Estes stated at the preliminary injunction hearing, as "controlling person" can have several interpretations and meanings based on applicable case law and statutory law, depending on the context in which it is used. The Havener Defendants offer no proof whatsoever that any of the statements made by Estes at the preliminary injunction hearing were inaccurate in any way.

The Havener Defendants claim that B&B sought irrelevant discovery. First, the recourse for seeking irrelevant discovery is to object (they did). Irrelevant discovery is not grounds for dismissal. Moreover, Federal Rule of Civil Procedure 26 permits broad discovery regarding any non-privileged matter relevant to the claims or any defense, regardless of whether or not the

11

evidence itself would be admissible. Fed. R. Civ. P. 26. The discovery sought by Plaintiffs while represented by B&B was reasonably calculated to lead to the discovery of admissible evidence and, therefore, satisfied Rule 26 requirements. The Motion takes particular issue with Plaintiffs' request and acquisition of pleadings regarding Curry's divorce file. (Motion, p. 8). This provides a good demonstration of the scope of Rule 26 and confirms the appropriateness of B&B's approach. It was certainly possible, at the time requested, that such documents could lead to the discovery of admissible evidence regarding (1) Curry's claim to ownership of Nexia Certification; (2) her relationship to Palaxar; and (3) any financial gain from use of Nexia Certification.

The Havener Defendants claim that B&B "denied representing MVI in this and other cases to the Bankruptcy Court, although it had never withdrawn from this proceeding as counsel for MVI." (Motion, p. 6). They cite to an excerpt from the verified statement filed by Campbell, on behalf of B&B, with the Bankruptcy Court on September 8, 2008. As an initial matter, B&B is very unclear as to the point attempting to be made; the Havener Defendants cannot claim any surprise (all filings were public) or prejudice in any way. Nevertheless, their characterization of *excerpts* from Mr. Campbell's statements are out of context and misrepresent the information provided to the Bankruptcy Court.

The verified statement was submitted in support of an application filed by MVI to appoint B&B as special counsel *nunc pro tunc*. MVI's motion to have B&B appointed as special counsel to the bankruptcy estate explicitly referenced B&B' prior experience and representation of MVI in this and other cases. (*See* Attachment E, Bankruptcy motion and verified statement). B&B' prior representation of MVI was specifically referenced no less than four times in the three-page motion. (*Id.*) In fact, the prior representations were one of the factors MVI relied

upon in seeking to retain B&B. (*Id.*) Specifically, the motion to appoint B&B as special counsel provides: "Mirabilis seeks authority to employ Campbell as special counsel for the purpose of continuing to pursue certain state court and federal court litigation, which Balch has been pursuing for Mirabilis. … Mirabilis desires to employ Campbell as its special counsel to continue to pursue existing commercial lawsuits against third parties. … Mirabilis seeks appointment of Campbell and Balch because they have extensive experience and expertise in commercial litigation and have preexisting experience on the very matters upon which they are to be employed." (*Id.*)

Defendants' bastardization of Campbell's verified statement provides no support for the allegation that B&B "failed to disclose" their prior work for MVI. In fact, it directly contradicts the Havener Defendants' contention. Conveniently for them, they omit the "Except as set forth below" phrase preceding Campbell's quoted language. (*Id.*) When the full declaration and accompanying motion are reviewed, there is zero doubt that B&B disclosed its prior work for MVI to the Bankruptcy Court and that there was no conflict of interest.[3]

## II. Defendants Are Not Entitled To Excess Costs Under 28 U.S.C. § 1927.

In addition to the infirmities described above, the Havener Defendants' claim for "excess costs" under 28 U.S.C. § 1927 fails because "a § 1927 fee award cannot be based solely on a frivolous complaint." *See Ellis v. All My Sons Moving & Storage of Orlando, Inc.*, No. 6:07-cv-297-Orl-19DAB, 2009 U.S. Dist. LEXIS 70668, *9-10 (M.D. Fla. July 27, 2009). "The language of § 1927 makes clear that it only applies to unnecessary filings after the lawsuit has

---

[3] Although B&B was subsequently approved by the Bankruptcy Court to serve as special counsel for MVI, by the time the stay was lifted in the pending litigation, B&B was no longer actively representing Plaintiffs. (*See* Attachment A, Campbell Declaration, ¶ 9-10; *see also* Sanctions Response, pp. 6-8).

begun and does not apply to initial pleadings." *Id.* The plain language of the statute also dooms their request:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof ***who so multiplies the proceedings in any case unreasonably and vexatiously*** may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (emphasis added).

The Motion does not even attempt to explain how B&B' conduct satisfies the standard entitling them to fees and excess cost under § 1927. In fact, the only evidence before the Court regarding the investigation and due diligence performed by B&B prior to filing any documents with the Court directly contradicts the Havener Defendants' position. (*See* Attachment A, Campbell Declaration, ¶¶ 5-6; *see also* Attachment F, Declaration of Aaron Bates, ¶¶ 6-9; Sanctions Response, pp. 2-3). Specifically, prior to filing the complaint or any other pleading in this case, B&B participated in multiple meetings with representatives of Plaintiffs and reviewed: thousands of pages of documents provided by Plaintiffs, audio and videotape evidence and patent records. (*Id.*). Respondents also researched the applicable law and took reasonable steps to confirm with Plaintiffs the accuracy of the factual allegations set forth in the complaint and any other pleading filed by B&B on behalf of Plaintiffs. (*See* Attachment A, Campbell Declaration, ¶¶ 5-6; *see also* Sanctions Response, pp. 2-3). Moreover, since the Court ordered the stay and B&B was displaced as counsel for Plaintiffs, B&B has done virtually ***nothing*** in this case – let alone anything to unreasonably and vexatiously "multiply" the proceedings. In fact, B&B's only activity has been to respond to attacks from the Havener Defendants (that started shortly after the preliminary injunction hearing in January 2008, more than 27 month ago). (*See* Attachment A, Campbell Declaration, ¶¶ 7-8). "An attorney only 'unreasonably and vexatiously' multiplies proceedings 'when the attorney's conduct is so egregious that it is tantamount to bad faith.'"

14

*Briggs v. Briggs*, 260 Fed. Appx. 164, 166 (11th Cir. 2007). This case is completely devoid of any evidence whatsoever of bad faith regarding any conduct of B&B.

The Havener Defendants – not B&B – are causing unnecessary expense and delay to all parties in this matter. This Motion has more to do with Kathleen Havener's apparent personal vendetta against B&B than anything that has actually transpired in this case. If the Havener Defendants wish to raise an issue about the merits of the case, or anything relating to actions taken or not taken after B&B was no longer representing Plaintiffs, then they should raise that issue with counsel for MVI and Nexia (or at least someone who can do something about it).

## CONCLUSION

The Havener Defendants have failed to set forth facts or law sufficient to establish that: (1) a change in the controlling law has occurred; (2) new evidence has become available; or (3) there is a need to correct clear error or manifest injustice. Therefore, the Motion is due to be denied. *See Sherwin v. Sprint PCS Limited P'ship*, No. 98-314-CIV-FTM17D, 1999 WL 694721, *2 (M.D. Fla. Aug. 11, 1999)(denying motion to reconsider for failure to set forth sufficient law or facts).

          *s/ J. Russell Campbell*

          J. Russell Campbell
          Florida Bar No. 901423
          Allen M. Estes (admitted *pro hac vice*)
          BALCH & BINGHAM LLP
          P. O. Box 306
          Birmingham, AL  35201-0306
          Telephone:  (205) 251-80100
          Facsimile:  (205) 226-8798
          rcampbell@balch.com
          aestes@balch.com

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on May 24, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties named on the attached Service List or in some other authorized manner for those counsel or parties who are not authorized to receive notices electronically.  Service is also being provided via email and U.S Mail, postage prepaid, to *pro se* defendant Terrence Chu.

Martin R. Raskin
Jane Serene Raskin
Raskin & Raskin, PA
mraskin@raskinlaw.com
JRASKIN@RASKINLAW.COM

Frank Amodeo
FCC - Low, B3
P.O. Box 1031
Coleman, FL 33521-1031

James R. Lussier
Mateer & Harbert, P.A.
jlussier@mateerharbert.com

Todd K. Norman
Nicolette C. Vilmos
Broad and Cassel
tkn@stumplaw.com
nvilmos@broadandcassel.com

I. Randall Gold
Randy.gold@usdoj.gov,

Roy Scott Kobert
Broad and Cassel
orlandobankruptcy@broadandcassel.com

Darryl M. Bloodworth
Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, PA dbloodworth@deanmead.com

Scott H. Park
scott.park@usdoj.gov

Kathleen B. Havener
The Havener Law Firm, LLC
kbhavener@gmail.com

Craig S. Warkol
BRACEWELL & GIULIANI LLP
craig.warkol@bgllp.com

Terence Chu
5637 Country Hills Lane L
Glen Allen, Virginia  23059-5424

Yaniv Amar
3475 Mystic Point Drive, TH #10
Aventura, Florida 33180

James Vincent Sadrianna
jsadrianna@cfl.rr.com

Elizabeth A. Green
Baker Hostetler
egreen@bakerlaw.com
orlbakerdocket@bakerlaw.com

Kathleen S. Davies
The Davies Law Firm
KDavies@TheDaviesLawFirm.com

L. Reed Bloodworth
Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, PA
rbloodworth@deanmead.com

1099330.1