IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MIRABILIS VENTURES, INC. and
NEXIA STRATEGY CORPORATION,

       Plaintiff,

v.

PALAXAR GROUP, LLC.;
PALAXAR HOLDINGS, LLC;
FRANK HAILSTRONES; EDITH CURRY
a/k/a EDITH BROADHEAD; and TERENCE
CHU,

       Defendants.

v.

MIRABILIS VENTURES, INC. and
NEXIA STRATEGY CORPORATION,

And THIRD PARTY CORPORATION,
WELLINGTON CAPITAL GROUP, INC.,
YANIV AMAR, FRANK AMODEO,
AARON BATES, MATTHEW MOKWA,
ROBERT POLLACK, JAMES SADRIANNA.

       Third Party Defendants.

Case No. 6:07-CV-1788-ORL-28-KRS

## PLAINTIFF MIRABILIS VENTURES, INC. RESPONSE TO DEFENDANT TERENCE CHU'S MOTION FOR SANCTIONS

       Plaintiff, MIRABILIS VENTURES, INC. ("MVI")[1] and its undersigned attorneys, hereby respond to *Defendant Terence Chu's Motion for Sanctions* and in opposition thereto state as follows:

---

[1] Chu's motion is only filed against Plaintiff MVI and its attorneys and not Co-Plaintiff, Nexia Strategy Corporation,

## I.   PROCEDURAL HISTORY

1.      On or about February 19, 2008, the Plaintiffs, Mirabilis Ventures, Inc. and Nexia Strategy Corporation filed a Second Amended Complaint against the Defendants, Palaxar Group, LLC, Palaxar Holdings, LLC, Frank Hailstones ("Hailstones") Edith Curry a/k/a Edith Broadhead ("Curry") and Terence Chu ("Chu") (D.E. #56) ("Complaint").   This Complaint, which appears to be the subject of the present motion, alleges that Chu conspired with Hailstones and Curry to misappropriate trade secrets and confidential information of Plaintiffs known as the "Nexia Certification" to Defendants' company, Palaxar.

2.      On or about June 5, 2008, this Court ordered this matter stayed pending further order of this Court (D.E. #151) and denied all pending motions as moot.

3.      On or about November 6, 2009, this Court granted the undersigned law firm of Broad and Cassel's Amended Unopposed Motion for Substitution of Counsel on behalf of Plaintiff Mirabilis Ventures, Inc.  (D.E. #169).

4.      On or about December 2, 2009, this Court granted the Defendants' Motion to reinstate case and lift stay.

5.      On or about May 6, 2010, the Defendant, Chu, filed its Motion for Sanctions with Memorandum of Law (D.E. #242).

## II.   CHU'S MOTION FOR SANCTION SHOULD BE DENIED AS IT IGNORES THE VAST AMOUNT OF EVIDENCE WHICH ESTABLISHES PLAINTIFFS' CLAIMS

6.      Chu's motion primarily asserts that the Complaint is "full of false allegations that have no evidentiary basis." Chu, who is an attorney, fails to identify which allegations of the

---

thus this response is only on behalf of MVI.  It should be noted that the Bankruptcy Court (In re: Mirabilis Ventures, Inc., Case No. 6:08-bk-04327-KSJ), is considering the ownership of the chosen action held by Nexia Strategy Corporation in this lawsuit.  An evidentiary hearing on this matter was held in front of Judge Jennemann on May 19, 2010, and a ruling is imminently expected.

2

Complaint[2] are false or to present contrary proof.  Thus, in this response the undersigned will

identify those allegations against Chu and direct the Court's attention to the considerable

evidentiary basis which has already been established to support those allegations.

7.    The Complaint alleges that Hailstones and Curry were employed by Plaintiff to

develop a confidential trade secret technique known as the Nexia Certification.  Hailstones and

Curry acknowledge that such a certification process exists but assert that they own it and not

Plaintiffs, either because Plaintiffs never owned it or because Plaintiffs sold it to Hailstones and

Curry.  Plaintiffs assert that the employment agreements of Hailstones and Curry expressly gave

Plaintiffs ownership of such inventions created during their employment.  Hailstones and Curry

have acknowledged in deposition their signatures upon these employment agreements. (Curry

Deposition, P. 69 -77). (Hailstones Deposition, P. 33-34).  Curry's employment agreement states:

> **Devotion By Employee of Full-Time To Business**
> (a)      Except as otherwise agreed to by Employer in writing, Employee shall
> devote all of her time, attention, knowledge and skills solely and exclusively to
> the business and interests of Employer during normal working hours. Employer
> shall retain all the benefits, emoluments, profits or other returns from or incidental
> to ay and all work, services, advice and mental efforts of Employee that arise
> during the term of this Agreement, or such other amount as agreed to in writing
> by Employer's Board of Directors or set out in the Employee Handbook.

8.    The employment agreement for Curry also provides:

> Unless done within the normal course and scope of the duties of Employee, and in
> a good faith effort to serve the best interests of Employer, Employee shall not, at
> an time or in any manner, directly or indirectly communicate to any person,
> business, or corporate entity, any confidential information of any kind concerning
> any matters affecting or relating to the business of Employer. Such matters
> include ... the manner of any aspect of Employer's operations, Employer's plans
> or processes, and other information of any kind, nature or description that relates
> to Employer's operations, customers, suppliers, products, or financial condition
> ... Employee hereby agrees to refrain from disseminating, in any manner,
> information related to the affairs of Employer, its parent, subsidiary, or affiliate

---

[2] As noted below, Chu cites to one allegation in his 14 page motion and it is not found in the Complaint.

4849-6203-2134.2
43582/0007 DG dg

corporations or the customers of any of them without the receipt of written consent of the legal counsel of Employer in advance of such dissemination.

9.      Hailstone's employment agreement states:

**Devotion By Employee of Full-Time To Business**
(a)      Except as otherwise agreed to by Employer in writing, Employee shall devote all of her time, attention, knowledge and skills solely and exclusively to he business and interests of Employer during normal working hours. Employer shall retain all the benefits, emoluments, profits or other returns from or incidental to ay and all work, services, advice and mental efforts of Employee that arise during the term of this Agreement, or such other amount as agreed to in writing by Employer's Board of Directors or set out in the Employee Handbook.

10.      Hailstones' employment agreement additionally states:

[T]he Confidential Information and all physical, tangible and intangible embodiments or other repositories of the Confidential Information shall be and at all times remain the sole and exclusive property of Employer…Employee acknowledges that during the Employment Term, from time to time, Employee may have access to (directly or indirectly), or receive information from or regarding the Employer or its affiliates in the nature of trade secrets, the release of which may be damaging to Employer or its affiliates.

Employee agrees to hold in strict confidence any information it receives regarding the Employer or its affiliates that is considered a trade secret and shall not disclose such information to any other person or entity, and will take all necessary steps to prevent any other person or entity from discovering the trade secrets. (Section 6(b)(d) of Mr. Hailstones' Employment Agreement).

11.      The employment contracts for Mr. Hailstones and Ms. Curry also provide that upon the employees' termination, they are prohibited from disclosing or making available any confidential information to any person or entity within a specific period of time after their termination without Plaintiffs' consent.

Specifically, the employment contract for Hailstones provides:

For the period of the Employment Term through the date which is three (3) years after termination of employment, Employee agrees that Employee will not, without the prior written consent of Employer, which consent may be withheld in the Employer's sole and absolute discretion, disclose or make available any

4

Confidential Information to any person or entity (verbally or in writing), nor shall Employee make or cause to be made, or permit or allow, either on Employee's own behalf or on the behalf of others, any use of the Confidential Information then in Employee's knowledge, custody, control or possession. Employee further agrees that immediately upon termination of Employee's employment with Employer for any reason … Employee shall promptly deliver to Employer and/or its affiliates any and all property belonging to Employer and/or its affiliates, including without limitation, all Confidential Information (including all physical, electronic, or other repositories thereof) in Employee's custody, control or possession.

12.     The employment contract for Curry provides:

Upon termination, Employee shall immediately provide to Employer all documents and items of any nature or description, including computer files, that pertain to actual potential customers or leads that Employee developed or obtained during employment, any phase or aspect of Employer's operations, any phase or aspect of Employer's future operations or plans, and any other items, lists, documents, or the like, that in any way may pertain to employer's business … [F]or a period of two (2) years following Employee's termination under this Agreement, Employee agrees that Employee shall not (a) contact or solicit any customer or employee of Employer for any matter; (b) divulge or use any information regarding Employer to any business in the same industry as Employer; or (c) advise any competitor of Employer regarding any aspect of the business operations of Employer.

13.     Plaintiffs further allege that the purported sale of the Nexia Certification to Curry was perpetrated by her co-conspirator, Hailstones, and that the alleged action of ratification were done without authority.  The alleged promissory note assigning rights from Nexia to Curry and Hailstones was never finalized, executed or agreed to by Mirabilis or Nexia.

Q. Was a note ever executed?

A. No, because Mirabilis or Nexia never set up the company. At that time, October, November, I believe is when the sale of the PEO's to Jevity failed and subpoenas started hitting employees, various employees. So I think they got – they never honored the terms of the agreement. They never set up NewCo. I was never -- a couple drafts had been sent back and forth, but nothing ever materialized, because the company was shut down (Curry Deposition, P. 235, L. 4-14).

*See also,* Section 3.16 of Nexia bylaws, Exhibit "12," of Plaintiffs' Memorandum of Law in Opposition to Defendants Motion for Summary Judgment, which prohibit self dealing (D.E.

4849-6203-2134.2
43582/0007 DG dg

#193); *See also*, Affidavit of Bill Cuthill and the Composite Exhibits attached to his Affidavit, Exhibit "1"of Plaintiffs' Memorandum of Law in Opposition to Defendants Motion for Summary Judgment (D.E. #193).

14.     The allegations against Chu are that (a) he was a founding member and a manager of Palaxar, (b) that Palaxar was organized during the terms of Hailstones and Curry's employment with Plaintiffs, (c) that Chu conspired with and aided Hailstones and Curry in incorporating Palaxar to market the Nexia Certification and (d) upon information and belief, that Chu had actual knowledge of Plaintiffs' ownership of the Nexia Certification. *See*, Second Amended Complaint, ¶ 28 and ¶ 32 (D.E. #56).

15.     The evidence thus far includes admissions that Palaxar was organized during the employment of Hailstones and Curry to compete with Plaintiffs and sell the Nexia Certification. *See* Affidavit of Chu, attached hereto as Exhibit "A."  Defendants Edith Curry and Frank Hailstone admit that while they were still employed by Plaintiffs, they organized a competing entity, Palaxar Group, LLC and/or Palaxar Holdings, LLC, which would in turn implement and market the patent-pending fraud solution program referred to as Nexia Certification. *See* Paragraph 19 of Defendants Joint Motion for Summary Judgment (D.E. #75).

16.     The evidence further establishes that Chu is the **founding member** of Palaxar Group LLC, and/or Palaxar Holdings, LLC. *See,* Affidavit of Chu, attached hereto as Exhibit "A." Defendant Curry testified that Chu is her partner in Palaxar. (Curry Deposition, P. 9, Lines 8-10).

17.     Since its formation on September 11, 2006, Chu has managed the ongoing operations of Palaxar Group LLC, and/or Palaxar Holdings LLC, including, but not limited to,

4849-6203-2134.2
43582/0007 DG dg

establishing and maintaining its bank accounts and financial records.  *See*, Affidavit of Chu, attached hereto as Exhibit "A."

18.     Defendants have admitted at deposition that the business of Palaxar has been to market and sell the Nexia Certification. (Hailstones Deposition, P. 88-87).

19.     While Chu attempts to rely upon one clarification by a witness, Jodi Jaiman, who was the president and sole director of Plaintiffs, Chu utterly ignores the substantial evidentiary support she provides for these claims.   That evidence is wholly unimpeached and stands unchallenged except by Mr. Chu's self-serving declarations.   That evidence included sworn testimony that "Curry and Hailstones were tasked with developing and managing Nexia", that "Hailstones and Curry . . . gather[ed] confidential and proprietary information and trade secrets" in development of the Nexia Certification.  *See* Declarations of Jodi Jaiman, attached hereto as Composite Exhibit "B."  Evidence was further presented that "Hailstones and Curry, conspired to use . . . [the] Nexia Certification [in] . . .a competing entity, Palaxar . . . . ."  *See* Declarations of Jodi Jaiman, attached hereto as Composite Exhibit "B."

20.     In addition, the evidence presented also establishes the sale of the Nexia Certification "prohibit[ed] the transactions [for the sale of the Nexia Certification] without "approval . . . of the Board of Directors for Mirabilis and Nexia."  *See* Declarations of Jodi Jaiman, attached hereto as Composite Exhibit "B."  Further, the evidence presented stated that no such approvals were given.  *See* Declarations of Jodi Jaiman, attached hereto as Composite Exhibit "B."

21.     The witness' clarification of one point makes no reference to the actions taken by the Defendants and/or the Nexia Certification.[3]  It should also be noted that the United States of

---

[3] The only fact clarified by Jodi Jamin in her affidavit attached to the United States of America Motion to Dismiss in Case No.: 6:08-bk-04327-KSJ was the ownership rights of certain entities.  This ownership is established in the

America's Motion to Dismiss, which the Defendant so greatly relies upon in his Motion for Sanctions, has since been withdrawn with prejudice as set forth in the Motion for Approval of Compromise of Controversy by and between Debtors and the United States of America (Case No.: 6:08-bk-04327-KSJ, D.E. #101), which was approved by the Bankruptcy Court on March 4, 2009 (D.E. #145).

22.     Thus, Plaintiffs believe that the underlying claims have been established.  As for Chu's participation in the conspiracy, there is again substantial evidence in support of that claim.

23.     Thus, despite Chu's sweeping, self serving declarations that the Complaint is "full of false allegations that have no evidentiary basis," there is substantial evidentiary support already in the record which establishes virtually all of the allegations against Chu.   It is noteworthy, that of the four (4) allegations listed against Chu, two of those identified as (a) and (b) above are admitted by all Defendants.  They do not contest that Chu was a founding member of Palaxar which was set up to market the Nexia Certification during the employment of Hailstones and Curry.  Thus, the only issue related to Chu relates to whether he knew the Nexia Certification was obtained without authority and conspired in these efforts.  Such issues of mental state are typically left to a trier of fact to determine based on the totality of the evidence. Further, Plaintiffs are entitled to take further discovery to support these allegations during the pendency of this case.  Mr. Chu plainly "doth protest too much" in the face of this substantial evidence against him.

24.     Interestingly, in the section of Chu's motion titled "The False Allegations in the Complaint", Chu only describes one such allegation he claims is in the Amended Complaint.  He states it "alleges that it has personal jurisdiction over me because I was an invited guest to MVI's

---

documents and Plaintiffs subsequent filings without being refuted by competent evidence.

4849-6203-2134.2
43582/0007 DG dg

offices once in 2006, at Frank Amodeo's invitation, and as a result became part of the conspiracy." Surprisingly, that allegation is not even in the pending Complaint. Nonetheless, as Chu feels this allegation is noteworthy for it's lack of support, the undersigned will address it.

25.     Chu has admitted that he visited Defendant Edith Curry, in Florida, *while she was employed by Nexia Strategy Corporation. See*, Affidavit of Chu, attached to his Motion to Dismiss (D.E. #79).

26.     By the Defendant's own admission, Chu traveled to Florida—at the specific request of his co-conspirator Curry—and met with members of Mirabilis and Nexia. *See*, Affidavit of Chu, attached to his Motion to Dismiss (D.E. #79).     The Second Amended Complaint alleges, *inter alia*, that:

> While Hailstones and Curry were still employed by Plaintiffs, Chu conspired with and aided Hailstones and Curry with the establishment and incorporation of Palaxar Group LLC and Palaxar Holdings LLC with actual knowledge that the sole purpose for the establishment and incorporation of both Palaxar entities was to use and/or market the product referred to as Nexia Certification for personal gain and/or benefit. Upon information and belief, Chu had actual knowledge that the product referred to as Nexia Certification was owned by and paid for by Plaintiffs.

*See* Second Amended Complaint ¶ 28. Personal jurisdiction is established by Chu's admission that he traveled to Florida to meet with Mirabilis and Nexia at the request of the very people that Mirabilis and Nexia claim are his co-conspirators regarding the misappropriation of the Nexia Certification program.

27.     Thus, the only sentence which Chu specifically alleges is false, while not actually in the Complaint, is also demonstrably true.

III.     **DEFENDANT  CHU'S REQUEST FOR SANCTIONS IS BASELESS UNDER THE APPLICABLE LEGAL STANDARDS**

28.     Chu is requesting the Court to impose Rule 11 sanctions against the attorneys for Mirabilis Ventures, Inc. because they allegedly "filed an amended complaint that has no factual

9

basis...[and] for an improper purpose." Chu misguidedly believes that this Court "...must impose sanction in this case because the [Mirabilis Ventures, Inc.] Attorneys knowingly filed a pleading full of false allegations that have no reasonable evidentiary basis...They further compounded that breach by using said pleading to launch a vicious attack on me as an accomplished and respected member of the Delaware Bar."

29.     As described in part above, Chu's Motion for Sanctions is simply ill-founded because the allegations against him are adequately supported by admissible evidence.

30.     Chu is mistaken in his belief that the sole basis of the instant case is the affidavit of Jodi Jaiman, Mirabilis Ventures, Inc.'s former President.  Not only is this litigation supported by two affidavits of Jodi Jaiman, it is also supported by the by-laws and board meetings of the Plaintiffs, the employment contracts of Defendant Curry and Hailstones and the actions taken by all Defendants as it relates to the Nexia Certification.  Chu's reference to a subsequent affidavit from Ms. Jaiman, which was filed as an attachment to the United States of America's Motion to Dismiss the Mirabilis Ventures, Inc. bankruptcy (Case No.: 6:08-bk-04327-KSJ), is irrelevant, taken out of context, and misguided.

31.     Chu claims that he had nothing to do with any patented or trademarked property or material that belonged to the Plaintiff.  However, the exhibits attached hereto and the depositions of Curry and Hailstones show compelling evidence that Chu established and managed Palaxar which was formed and used to market and sell the Nexia Certification.  As indicated above, Plaintiffs believe they can prove that this property with which Chu is clearly involved is owned by Plaintiffs.

32.     The purpose of Rule 11 is to reduce frivolous claims, defenses or motions and to deter costly maneuvers, which the filing attorney should know are **absolutely meritless**, thereby

10

avoiding unnecessary delay and expense in litigation. *See Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987). "Thus, in order to find a Rule 11 violation, it should be '**patently clear**' to the court that a claim [or motion] had '**absolutely no chance of success**.' *Id.; see, e.g., Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 444 (5th Cir. 1992)("In this regard, sanctions are appropriate only where the legal argument is patently wrong and where there is no chance of extension or modification of current law")(internal cites omitted); *Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1005 (2d Cir.); *Healey v. Chelsea Resources, Ltd.*, 132 F.R.D. 346, 352 (S.D.N.Y. 1990); *see also Brasport, S.A. v. Hoechst Celanese Corp.*, 134 F.R.D. 45 (S.D.N.Y. 1991). This standard clearly does not require the filing party to be proven correct in its assertions, in fact Courts have specifically held that a party's "erroneous interpretation of the law and facts does **not** warrant Rule 11 sanctions." *See Hillsborough County v. A & e Rd. Oiling Serv.*, 160 F.R.D. 655, 659 (M.D. Fla., March 7, 1995)(emphasis added); *See also O'Neal v. DeKalb County, Ga.*, 850 F.2d 653, 658 (11th Cir. 1988) (action not frivolous merely because the requested relief was denied); *see also Duke v. Smith*, 141 F.R.D. 348 (S.D. 1992). "The central issue in evaluating reasonableness [of the filing] is whether a pleading states a colorable claim, not whether the pleader is ultimately correct in his interpretation of the facts and applicable law." *See Duke*, 141 F.R.D. at 348.

33.    It is well established that in order to find the Plaintiff's conduct inappropriate, the Plaintiff must have had no factual basis to make such assertions. *See Donaldson v. Clark*, 819 F.2d 1551, 1561 (11th Cir. 1987). As described above, there is a substantial factual basis for bringing these claims. Given the affidavits, depositions and other evidence filed with the Court, most of which Chu ignores in his motion, Chu cannot meet this high standard.

4849-6203-2134.2
43582/0007 DG dg

34.     Apparently sensing the weakness of a motion for sanctions which cannot establish that even one allegation is false, Chu then weaves together claims of his opposition's intent and motives that would make Oliver Stone proud.  Chu alleges that prior bankruptcy and criminal counsel had motivations in pursuing these claims.  None of Chu's claims can be substantiated absent rank speculation of what other persons intended.  Further, intent of anyone other than the current ownership and counsel of Plaintiffs is an utterly irrelevant diversion from Chu's inability to support his motion with evidentiary fact.  The pleadings in this matter are not for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation. The claims and legal contentions in this matter are warranted by the evidence submitted and existing law.  The factual contentions have evidentiary support and will have further evidentiary support after a reasonable opportunity for further investigation or discovery.

35.     Additionally, pro se defendants are generally not entitled to attorney fees pursuant to Rule 11, even if the pro se litigant is, in fact, an attorney.   As such, Chu is not entitled to an award of attorney fees.  *See, Massengale v. Ray*, 267 F.3d 1298, 1302-1303 (11th Cir. 2001)(holding that because a party proceeding *pro se* cannot have incurred attorney's fees as an expense, a district court cannot order a violating party to pay a *pro se* litigant a reasonable attorney's fee as part of a sanction).

36.     While it is clear that this lawsuit had significant merit from the day it was filed, it should be noted that the undersigned counsel of Broad and Cassel did not appear as the attorney of record on behalf of Mirabilis Ventures, Inc., until November 6, 2009, more than two (2) years after this case was filed.  Thus, even if Chu's fanciful allegations had merit, they cannot be the basis for a motion for sanctions against the undersigned.  The undersigned has immunity from all prior alleged litigation conduct. *See Florida Evergreen I*, 135 F. Supp.2d 1271, 1278-1279 (S.D.

4849-6203-2134.2
43582/0007 DO dg

Fla. 2001), *citing Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co.,* 639 So. 2d 606 (Fla. 1994).

WHEREFORE, the Plaintiff, Mirabilis Ventures, Inc., respectfully request that the Defendant, Terence Chu's Motion for Sanctions be denied with prejudice, along with an award of attorney fees and any other relief deemed just and proper.

/s/ Todd K. Norman
Todd K. Norman
Florida Bar No.: 62145
Nicolette Corso Vilmos
Florida Bar No.: 0469051
**BROAD AND CASSEL**
390 N. Orange Ave., Suite 1400
Orlando, FL 32801
Phone: 407-839-4200
Fax: 407-425-8377

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by either CM/ECF notice or U.S. Mail this 24th day of May, 2010 to Kathleen B. Havener, Esq., The Havener Law Firm, LLC, 15511 Russell Road, Chagrin Falls, OH 44022; Frank Amodeo, FCC-Low, B3, P.O. Box 1031, Coleman, FL 33521-1031; Chu, 5637 Country Hills Lane, Glen Allen, VA 23059; Martin R. Raskin and Jane Serene Raskin, Raskin & Raskin, P.A., 2601 South Bayshore Drive, Suite 725, Miami, Florida 33133; Kathleen S. Davies, The Davies Law Firm, 126 E Jefferson St, Orlando, FL 32801; James Vincent Sadrianna, 10025 Chatham Oaks Court, Orlando, FL 32836, James Robert Lussier, Mateer & Harbert, PA, 225 E Robinson St., Ste 600, Orlando, FL 32802-2854; James Everett Shepherd, Pohl & Short, PA, 280 W Canton Ave., Ste 410, Winter Park, FL 32790; John Edwin Fisher, Fisher, Rushmer, Werrenrath, Dickson, Talley & Dunlap, PA, 20 N Orange Ave., Ste 1500, Orlando, FL 32802-0712; Darryl M. Bloodworth & L. Reed Bloodworth, Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, PA, 800 N Magnolia Ave., Ste 1500, Orlando, FL 32802-2346 and the US Attorney's Office, Suite 300, 501 W Church St, Orlando, FL 32805.

*/s/ Todd K. Norman*
Todd K. Norman
Florida Bar No.: 62145
Nicolette Corso Vilmos
Florida Bar No: 0469051

13

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

MIRABILIS VENTURES, INC. and ) 
NEXIA STRATEGY CORPORATION, )
                                )
          Plaintiffs, )
-vs- )   CASE NO.: 6:07-CV-1788-ORL-28-KRS
                                )
PALAXAR GROUP, LLC; )
PALAXAR HOLDINGS, LLC; )
FRANK HAILSTONES; EDITH )
CURRY a/k/a EDITH BROADHEAD; )
and FICTITIOUS DEFENDANT 1; )
FICTITIOUS DEFENDANT 2; )
FICTITIOUS DEFENDANT 3; )
FICTITIOUS DEFENDANT 4; )
FICTITIOUS DEFENDANT 5; )
FICTITIOUS DEFENDANT 6; )
FICTITIOUS DEFENDANT 7; )
FICTITIOUS DEFENDANT 8 )
                                )
          Defendants. )
_____ )

## AFFIDAVIT OF TERENCE CHU

STATE OF _Virginia_  }
                  }   ss:
COUNTY OF _Henrico_  }

Terence Chu, being duly sworn, deposes and says:

      1.    I am over the age of 21 years and competent to make the statements contained herein.

      2.    All documents attached hereto as Exhibits are true and correct copies of the originals.



EXHIBIT

A

3.      I am a founding member of both Palaxar Group, LLC ("Group"), a limited liability company organized under the laws of the Commonwealth of Virginia on September 11, 2006 and Palaxar Holdings, LLC ("Holdings") a limited liability company organized under the laws of the Commonwealth of Virginia on December 18, 2006, (hereinafter, collectively referred to as "Palaxar").

4.      I was solely responsible for organizing and establishing Palaxar.

5.      I selected, retained and paid the law firm of LeClair Ryan to assist me in organizing and establishing Palaxar Holdings, LLC.

6.      The only members of Palaxar Holding, LLC are Edith Curry Broadhead and me.  Frank Hailstones is not and has never been a member of either Palaxar Group or Palaxar Holdings.

7.      Since its formation, I have managed the ongoing operations of Palaxar, including but not limited to establishing and maintaining its bank accounts and financial records.

8.      All of the funds contained in any Palaxar bank account consist of contributed capital from the founding members.

9.      Since its inception in September of 2006, Palaxar has had no revenues, nor has it received any income or payment from any third party for services rendered, nor are any contracts or payments pending.

FURTHER AFFIANT SAYETH NAUGHT.

Terence Chu

On this ___14___ day of January, 2008, before me personally appeared Terence Chu, known to me to be the person executing the foregoing, and stated that foregoing is true and correct to the best of his knowledge, information, and belief.

_____ Notary Public

DAVID A. PASCUCCI
Notary Public
Commonwealth of Virginia
7033066
My Commission Expires Aug. 31, 2010

Case 6:07-cv-01788-JA-GJK   Document 254   Filed 05/24/10   Page 17 of 24

Case 6:07-cv-01788-JA-GJK   Document 263-4   Filed 06/20/09   Page 3 of 8
Case 6:07-cv-01788-JA-UAM   Document 24-2   Filed 01/04/2008   Page 1 of 6

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MIRABILIS VENTURES, INC. and
NEXIA STRATEGY CORPORATION,

     Plaintiffs,

v.                        CASE NO.: 6:07-CV-1788-ORL-28-KRS

PALAXAR GROUP, LLC;
PALAXAR HOLDINGS, LLC;
FRANK HAILSTONES; EDITH CURRY
a/k/a EDITH BROADHEAD; and
FICTITIOUS DEFENDANTS 1-8.

     Defendants.

_____

## DECLARATION OF JODI JAIMAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

1.    My name is Jodi Jaiman. I am a resident of Orange County, Florida. I am over the age of 19 and of sound mind.

2.    I am currently the president of Mirabilis Ventures, Inc ("Mirabilis") and Nexia Strategy Corporation ("Nexia").

3.    I am currently the sole director of Nexia.

4.    Mirabilis is the sole shareholder of Nexia.

5.    I make this declaration based both on my personal knowledge or knowledge available to me in my capacity as President of Mirabilis, and a review of business records maintained by Plaintiffs in the ordinary course of business.

6.    I have reviewed all pleadings and motions filed to date in this matter.

7.    I have also reviewed the following records in possession of Plaintiffs: the Board of Directors Meeting Minutes and Shareholders' Meeting Minutes for Mirabilis and Nexia from

1



EXHIBIT
B

Case 6:07-cv-01788-JA-GJK   Document 254   Filed 05/24/10   Page 18 of 24

Case 6:07-cv-01788-JA-GJK   Document 263-4   Filed 06/20/09   Page 4 of 8
Case 6:07-cv-01788-JA-UAM   Document 24-2   Filed 01/04/2008   Page 2 of 6

the beginning of 2006 through the present date (attached hereto as "Exhibit 1"); the Bylaws for Mirabilis and Nexia (attached hereto as "Exhibit 2"); the financial records reflecting expenses incurred and paid by Plaintiffs related to the development and creation of Nexia Certification (attached hereto as "Exhibit 3"); the employment contracts and employee handbooks for Hailstones and Curry (attached hereto as "Exhibit 4"); Hailstones' and/or Curry's notes and other documentation created while Curry and Hailstones were employed by Plaintiffs related to the creation and development of Nexia Certification (attached hereto as "Exhibit 5"); correspondence in Plaintiffs' possession from the United States Patent and Trademark Office related to the patent application for Nexia Certification (attached hereto as "Exhibit 6"); other correspondence and documentation in Plaintiffs' possession related to the positions, duties and actions of Hailstones and Curry while employed by Plaintiffs (attached hereto as "Exhibit 7"); print-outs from Palaxar's website and brochures demonstrating Defendants' use and marketing of Nexia Certification (attached hereto as "Exhibit 8"); and Exhibits A and B to Defendants' Answers which Defendants contend reflect an assignment of Nexia Certification to Curry (attached hereto as "Exhibit 9").

8.    My personal knowledge and the documents that I have reviewed which are attached hereto as Exhibits 1-9 demonstrate the following:

a.    Hailstones and Curry are former officers and/or directors of Plaintiffs. While employed by Plaintiffs, Curry and Hailstones were tasked with developing and managing Nexia, a business consulting company which focused on advising corporate clients in the areas of corporate governance, risk management and internal controls. Mirabilis and its affiliates invested significant resources into Nexia upon the recommendation and request of Curry and Hailstones. One of Nexia's core products was an anti-fraud certification program referred to as

2

Case 6:07-cv-01788-JA-GJK   Document 254   Filed 05/24/10   Page 19 of 24

Case 6:07-cv-01788-JA-GJK   Document 263-4   Filed 06/20/09   Page 5 of 8
Case 6:07-cv-01788-JA-UAM   Document 24-2   Filed 01/04/2008   Page 3 of 6

Nexia Certification. *See* Exhibit 5. During the development and management of Nexia and the creation of Nexia Certification, Hailstones and Curry had access to, and did in fact gather, confidential and proprietary information and trade secrets. In addition, Hailstones and Curry developed numerous business opportunities, contacts and relationships with potential clients through their employment with Plaintiffs and at the expense of Plaintiffs. As part of the development and management of Nexia, Curry was tasked with obtaining a patent for Nexia Certification for the benefit of Plaintiffs. Curry was aware at all pertinent times that Nexia Certification was created for and owned by Plaintiffs. *See* Exhibit 5. Mirabilis, as Nexia's parent corporation, paid all fees associated with the research and development of Nexia Certification and the accompanying patent application totaling at least of $1.5 million ($1,500,000.00). *See* Exhibit 3.

b.     During the time period made the basis of this lawsuit, Nexia was comprised of Curry, Hailstones, and a few other employees based in Richmond, Virginia, all, or most of which, upon information and belief, now hold positions with Palaxar Holdings LLC and/or Palaxar Group LLC (collectively referred to as "Palaxar"), a named defendant in this lawsuit. Also, during the time period made the basis of this lawsuit, Nexia's only assets were Nexia Certification and the significant business opportunities, contacts, and potential client relationships developed by Hailstones and Curry while employees of Plaintiffs.

c.     Hailstones and Curry each were bound by employment contracts, which contain provisions prohibiting the misappropriation of trade secrets and providing for the protection of confidential information obtained while performing their duties as employees of Plaintiffs. *See* Exhibit 4. The employment contracts for Hailstones and Curry also provide that upon the employees' termination, they are prohibited from disclosing or making available any confidential

3

Case 6:07-cv-01788-JA-GJK   Document 263-4   Filed 06/20/09   Page 6 of 8
Case 6:07-cv-01788-JA-UAM   Document 24-2   Filed 01/04/2008   Page 4 of 6

information to any person or entity within a specific period of time after their termination without Plaintiffs' consent. *See* Exhibit 4.

    d.    The Bylaws for both Nexia and Mirabilis provide a Business Ethics Code, a Business Conflicts Policy, a Professional Integrity Policy, and a Non-Disclosure of Confidential Information Policy. *See* Exhibit 2. These provisions and policies prohibit the Defendants' actions and form the basis of this lawsuit. Specifically, among other prohibitions, the provisions and policies prohibit an employee from having a personal interest that conflicts with Plaintiffs, from acting to cause conflicts with Plaintiffs, and from disclosing confidential and proprietary information gained while employed by Plaintiffs.

    e.    While employed by Plaintiffs, Hailstones and Curry, conspired to use, and subsequently thereafter used, confidential and proprietary information and Nexia Certification, which was developed at Plaintiffs' expense, for their own personal benefit and gain, and/or the benefit and gain of others. While Hailstones and Curry were still employed by Plaintiffs, they organized a competing entity, Palaxar Group LLC and/or Palaxar Holdings LLC, which would in turn implement and market Nexia Certification. Both Hailstones and Curry are founding members of Palaxar Group LLC and/or Palaxar Holdings LLC. *See* Exhibit 8.

    f.    Hailstones and Curry drafted and signed documents while employed by Plaintiffs purporting to transfer rights to Nexia Certification to themselves. *See* Exhibit 9. Hailstones and Curry drafted and signed such documents without the authorization, approval or ratification of the Board of Directors for Plaintiffs. *See* Exhibit 1. Furthermore, Mirabilis, in its capacity as the sole shareholder of Nexia, did not authorize, approve, or ratify the transactions reflected in Exhibit 9. The By-laws for both Mirabilis and Nexia prohibit the transactions reflected in Exhibit 9 without the authorization, approval or ratification of the Board of Directors. *See*

Case 6:07-cv-01788-JA-GJK   Document 254   Filed 05/24/10   Page 21 of 24

Case 6:07-cv-01788-JA-GJK   Document 263-4   Filed 06/20/09   Page 7 of 8
Case 6:07-cv-01788-JA-UAM   Document 24-2   Filed 01/04/2008   Page 5 of 6

Exhibit 2. The Board of Directors Meeting Minutes demonstrate that the Board of Directors for neither Plaintiff authorized, approved or ratified the documents attached as Exhibit 9. *See* Exhibit 1.

While Hailstones signed the documents attached as Exhibit 9 purporting to act in his capacity as President of Mirabilis, Hailstones did not have the authority to execute the documents attached as Exhibit 9 on behalf of Mirabilis or Nexia without the authorization, approval or ratification of the Board of Directors for Mirabilis and Nexia. Additionally, Hailstones did not have the authority to execute such documents on behalf of Mirabilis or Nexia without the authorization, approval or ratification of Mirabilis, in its capacity as the sole shareholder of Nexia.

g.    After the organization of the competing entity, Palaxar, Hailstones and Curry left the employment of Plaintiffs taking with them confidential and proprietary information, trade secrets, and property belonging to Plaintiffs, including Nexia Certification. Furthermore, Hailstones and Curry took with them all business contacts developed through the creation of Nexia Certification while employed by Plaintiffs. Defendants have in effect stolen Nexia Certification and all of the intangible goodwill of Nexia from Plaintiffs. Based on the documents attached as Exhibit 8, Palaxar is currently offering for sale to others the patent-pending fraud solution program developed by Hailstones and Curry at Mirabilis' expense while employed by Plaintiffs. The property Defendants have sold, and continue to market, belongs to Plaintiffs.

9.    Defendants' use of Nexia Certification, as well as the confidential information and business contacts/relationships accessed and developed while employed by Plaintiffs, has damaged, and continues to damage, Plaintiffs and has deprived Plaintiffs of the benefit of property which they rightfully own. Such damage includes, but is not limited to, the amount

5

Case 6:07-cv-01788-JA-GJK   Document 254   Filed 05/24/10   Page 22 of 24

Case 6:07-cv-01788-JA-GJK   Document 263-4   Filed 06/26/09   Page 8 of 8
Case 6:07-cv-01788-JA-UAM   Document 24-2   Filed 01/04/2008   Page 6 of 6

invested by Plaintiffs into the development and management of Nexia at the recommendation and request of Curry and Hailstones, the amount invested by Plaintiffs into the development and creation of Nexia Certification, all fees and charges associated with the pending patent application for Nexia Certification, the use and enjoyment of Nexia Certification, and any and all profits, benefits or recognition received by Defendants as a result of Nexia Certification and their usurpation of Nexia's corporate opportunities.

10.    Plaintiffs will continue to suffer damage, deprivation and irreparable harm related to Defendants' possession and use of Nexia Certification and Nexia's confidential information unless Defendants are estopped from any further use of Nexia Certification and Nexia's confidential information.

11.    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the facts set forth in this declaration are true to the best of my knowledge.

Jodi L. Jaiman

Date: 1.4.08

6

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**MIRABILIS VENTURES, INC. and**
**NEXIA STRATEGY CORPORATION,**

     **Plaintiffs,**

**v.**                       **CASE NO.: 6:07-CV-1788-ORL-28-KRS**

**PALAXAR GROUP, LLC;**
**PALAXAR HOLDINGS, LLC;**
**FRANK HAILSTONES; EDITH CURRY**
**a/k/a EDITH BROADHEAD; and**
**FICTITIOUS DEFENDANTS 1-8.**

     **Defendants.**

---

## DECLARATION OF JODI JAIMAN

1.     My name is Jodi Jaiman. I am a resident of Orange County, Florida. I am over the age of 19 and of sound mind.

2.     I am currently the president of Mirabilis Ventures, Inc ("Mirabilis") and Nexia Strategy Corporation ("Nexia").

3.     I am currently the sole director of Nexia.

4.     Mirabilis is the sole shareholder of Nexia.

5.     I have reviewed the Complaint, Defendants' Answers, and Exhibits A and B to Defendants' Answers.

6.     I have also reviewed the meeting minutes for the Board of Directors Meetings and Shareholders' Meetings for Mirabilis and Nexia from the beginning of 2006 through the present date.



EXHIBIT

tabbies

1

944727.1

7.     Neither the Board of Directors for Mirabilis nor Nexia authorized, approved or ratified the transactions reflected in Exhibits A or B to Defendants' Answers.

8.     Mirabilis, in its capacity as the sole shareholder of Nexia, did not authorize, approve, or ratify the transactions reflected in Exhibits A or B to Defendants' Answers.

9.     Further, the By-laws for both Mirabilis and Nexia prohibit the transactions reflected in Exhibits A and B to Defendants' Answers without the authorization, approval or ratification of the Board of Directors.

10.     Frank Hailstones did not have the authority to execute Exhibits A and B to Defendants' Answers on behalf of Mirabilis or Nexia without the authorization, approval or ratification of the Board of Directors for Mirabilis and Nexia.

11.     Additionally, Frank Hailstones did not have the authority to execute Exhibits A and B to Defendants' Answers on behalf of Mirabilis or Nexia without the authorization, approval or ratification of Mirabilis, in its capacity as the sole shareholder of Nexia.

12.     The facts set forth in this declaration are based on my personal knowledge or knowledge available to me in my capacity as president of Mirabilis.

13.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the facts set forth in this declaration are true to the best of my knowledge.


Jodi Jaiman

Date: Dec. 5, 2007


944727.1                                                                                              2