IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MIRABILIS VENTURES, INC. and
NEXIA STRATEGY CORPORATION,

   Plaintiff,

v.

PALAXAR GROUP, LLC.;
PALAXAR HOLDINGS, LLC;
FRANK HAILSTONES; EDITH CURRY
a/k/a EDITH BROADHEAD; and
TERENCE CHU,

   Defendants.

v.

MIRABILIS VENTURES, INC. and
NEXIA STRATEGY CORPORATION,

And THIRD PARTY CORPORATION,
WELLINGTON CAPITAL GROUP, INC.,
YANIV AMAR, FRANK AMODEO,
AARON BATES, MATTHEW MOKWA,
ROBERT POLLACK, JAMES SADRIANNA.

   Third Party Defendants.

Case No. 6:07-CV-1788-ORL-28-KRS

## NOTICE OF FILING MEMORANDUM OPINION AND ORDER OF BANKRUPTCY COURT REGARDING THE OWNERSHIP OF THE NEXIA STRATEGY CORPORATION'S CLAIMS

Plaintiff, Mirabilis Ventures, Inc. ("Mirabilis"), by and through its undersigned counsel, hereby files the Bankruptcy Court's Memorandum Opinion Granting Debtor's Motion to Confirm Property of the Estate Under the Court Approved Compromise With the United States of America (Bankruptcy D.E. 562) and the Bankruptcy Court's Order Granting Debtor's

Motion to Confirm Property of The Estate Under The Court Approved Compromise With The United States of America (Bankruptcy D.E. 563) and states as follows:

1. On June 2, 2010, the Bankruptcy Court for the Middle District of Florida, Orlando Division granted Mirabilis' Motion to Confirm Property of the Estate Under the Court Approved Compromise With The United States of America. (Bankruptcy D.E. 562 & 563). Copies of which are attached hereto as Composite Exhibit "1."

2. The Bankruptcy Court found that "the debtor retains control over Nexia's claim in the Palaxar Litigation."

3. As a result of the Bankruptcy Court's ruling Mirabilis intends on renewing its Motion for Substitution of Counsel as to Nexia and its Motion and Supporting Memorandum of Law to Extend the Deadline to File An Amended Complaint and Add Parties or In the Alternative For Lease to File Amended Complaint and Add Parties (D.E. 217).

/s/ Nicolette Corso Vilmos
Florida Bar No,: 0469051
**BROAD AND CASSEL**
390 N. Orange Ave., Suite 1400
Orlando, FL 32801
Phone: 407-839-4200
Fax: 407-425-8377

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by either CM/ECF notice or U.S. Mail this 7th day of June, 2010 to Kathleen B. Havener, Esq., The Havener Law Firm, LLC, 15511 Russell Road, Chagrin Falls, OH 44022; Frank Amodeo, FCC-Low, B3, P.O. Box 1031, Coleman, FL 33521-1031; Terence Chu, 5637 Country Hills Lane, Glen Allen, VA 23059; Martin R. Raskin and Jane Serene Raskin, Raskin & Raskin, P.A., 2601 South Bayshore Drive, Suite 725, Miami, Florida 33133; Kathleen S. Davies, The Davies Law Firm, 126 E Jefferson St, Orlando, FL 32801; James Vincent Sadrianna, 10025 Chatham Oaks Court, Orlando, FL 32836, James Robert Lussier, Mateer & Harbert, PA, 225 E Robinson St., Ste 600, Orlando, FL 32802-2854; James Everett Shepherd, Pohl & Short, PA, 280 W Canton Ave., Ste 410, Winter Park, FL 32790; John Edwin Fisher, Fisher, Rushmer, Werrenrath,

Dickson, Talley & Dunlap, PA, 20 N Orange Ave., Ste 1500, Orlando, FL 32802-0712; and US Attorney's Office, Suite 300, 501 W Church St, Orlando, FL 32805..

/s/ *Nicolette Corso Vilmos*

Nicolette Corso Vilmos
Florida Bar No: 0469051

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| In re ) | |
| ) | |
| MIRABILIS VENTURES, INC., ) | Case No. 6:08-bk-04327-KSJ |
| ) | Chapter 11 |
| Debtor. ) | |
| ) | |

MEMORANDUM OPINION GRANTING DEBTOR'S MOTION
TO CONFIRM PROPERTY OF THE ESTATE UNDER THE COURT
APPROVED COMPROMISE WITH THE UNITED STATES OF AMERICA

In settling a dispute raised by the United States of America challenging the debtor's entitlement to file this Chapter 11 case, the parties agreed to divide assets of the debtor into two categories: assets that would remain part of the debtor's bankruptcy estate and those the debtor would forfeit to the government in resolution of the government's civil forfeiture claim.[1] The settlement agreement is ambiguous, however, as to who retains control over one specific asset— the claims of Nexia Strategy Corporation, a wholly owned subsidiary of the debtor, asserted in litigation pending against Palaxar Group, LLC (the "Palaxar Litigation").[2] Finding parol evidence was needed to resolve this ambiguity in the settlement agreement,[3] on May 19, 2010, the parties presented evidence on the sole issue of their intent as to who obtained Nexia's claims. Upon considering the evidence presented at the hearing, including the testimony of three key drafters of the key settlement agreement, the Court finds that the parties intended that the debtor's estate would retain Nexia's claims in the Palaxar Litigation.

---

[1] The settlement agreement, titled the "Compromise of Controversy By and Among Debtors and The United States of America," arose out the government's *in rem* civil forfeiture complaint against certain assets owned by the debtor. The complaint was filed on April 25, 2008, and subsequently amended on September 4, 2008. Case No. 6:08-cv-00067-MSS-KRS in the District Court for the Middle District of Florida, Orlando Division. This Court approved the Compromise on March 4, 2009 (Doc. No. 145).
[2] The full style of the Palaxar Litigation is: *Mirabilis Ventures, Inc., and Nexia Strategy Corp. v. Palaxar Group, LLC, et al*, pending in the Florida state court as Case No. 7-CO-13191(37).
[3] Order Setting Evidentiary Hearing on Debtor's Motion to Confirm Property of the Estate under the Court Approved Compromise with The United States of America (Doc. No. 538).

Mirabilis Memo opinion on Motion to Confirm Property 08-4327.doc / / Revised: 6/2/2010 8:30:00 AM   Printed: 6/2/2010
Page: 1 of 7

EXHIBIT
1

Under the settlement agreement, Exhibit A lists property forfeited to the United States; Exhibit B lists property the debtor retained. Both lists contain a subsection identifying the various corporate entities each party will retain. Both lists use this following common preamble to divide up the corporate interests between the parties: "[t]he assets of the following corporations, including *but not limited to* the below listed lawsuits and/or settlements." The government's property list in subsection (cc) includes Nexia Strategy Corporation but does not include the Palaxar Litigation. Conversely, the debtor's property list in subsection (d) includes the Palaxar Litigation but does not otherwise mention Nexia.

Because the parties now dispute who controls Nexia's claims in the Palaxar Litigation, the debtor filed its Motion to Confirm Property of the Estate (Doc. No. 526) arguing that, because the lawsuit is specifically listed on its property list, the debtor controls the claims asserted by *both* the debtor and Nexia in the pending litigation. The government argues to the contrary that, because the assets of Nexia were forfeited to the government, it, not the debtor, controls Nexia's claims in the Palaxar Litigation (Doc. No. 534). (Neither party disputes that the debtor controls the debtor's claims asserted in the Palaxar Litigation.)

Both parties' arguments are persuasive and plausible interpretations of the settlement agreement. On one hand, Nexia's claims in the Palaxar Litigation are specifically listed on the debtor's list. On the other hand, Nexia's corporate entity, and all of its assets and lawsuits, is listed on the government's list. As the debtor points out, this is a battle between a specific and a general contract term. Because both sides put forth plausible, yet incompatible, interpretations of the agreement, the Court found the drafting ambiguous on this point and requested an evidentiary hearing on the issue of the parties' intent when drafting the agreement.[4]

---

[4] Where a contract is ambiguous, courts may use parol evidence to discern the intent of the parties in making the agreement. *Key v. Allstate Insurance Company*, 90 F.3d 1546, 1549 (11th Cir. 1996).

At the evidentiary hearing, the parties examined three key drafters of the compromise. The debtor called R.W. Cuthill, Jr., the liquidating trustee, as a witness. Mr. Cuthill was present at both the October 8, 2008, and October 31, 2008, negotiations between the parties, and was the primary decision maker for the debtor's estate. He testified that he did not recall having any discussion with any of the government's representatives at any time concerning the Palaxar Litigation. Mr. Cuthill's handwritten notes from the two settlement meetings bolster his testimony. Nowhere in these notes do the words "Palaxar" or "Nexia" appear. On the other hand, both Mr. Cuthill's notes and his testimony reflect that the parties discussed certain other of the debtor's claims in ongoing criminal or civil forfeiture litigation, including the WinPar claim, certain malpractice claims, and the Amodeo related litigation (Debtor's Ex. F and H).

Mr. Cuthill also testified that Nexia's claims in the Palaxar Litigation were placed on the debtor's list because it was always his understanding that the debtor's bankruptcy estate would retain all pending litigation involving Mirabilis *and* its wholly owned subsidiaries. This understanding is reflected on a spreadsheet Mr. Cuthill prepared on October 8, 2008, and revised two days later (Debtor's Ex. E). The spreadsheet is a breakdown of the debtor's various assets, their value (if known), and which party would retain or assume ownership of such asset. The asset titled "Litigation by Mirabilis Ventures, Inc. *& its subs*" (emphasis added) is assigned an "Unknown" value and placed in the "Bankruptcy" column of the spreadsheet, indicating that Mr. Cuthill thought the parties agreed such litigation was an asset of the bankruptcy estate. Mr. Cuthill testified that the negotiating parties did not at any time discuss any specific claims that fell under this designation, including Nexia's claims in the Palaxar Litigation; however, Mr. Cuthill's schedule used by the parties in dividing up the debtor's assets strongly supports the debtor's interpretation that the debtor would retain the litigation claims asserted by the debtor's subsidiaries, such as Nexia's claims in the Palaxar Litigation.

Mr. Cuthill further testified that he spent significant time evaluating whether Mirabilis or Nexia held more valuable claims against Palaxar, and that, in his estimation, Nexia held the more valuable claims. Mr. Cuthill stated that, for this reason, he always intended to retain Nexia's claims. In short, Mr. Cuthill's testimony established that he had evaluated the value of Nexia's claims, referenced the claims on his schedule shared with the government, and believed the parties agreed the debtor would retain control of Nexia's claims in the Palaxar Litigation, even though no specific discussion occurred.

Neither of the government's witnesses contradicted Mr. Cuthill's testimony. The government examined Elizabeth Green, an attorney for the debtor during the settlement negotiations, and Anita Cream, an Assistant United States Attorney. Both witnesses were present at the October 8, 2008, and October 31, 2008, settlement meetings. Neither witness recalled having any discussion at any time concerning Nexia's claims in the Palaxar Litigation. Indeed, the only litigation claims both witnesses recall discussing were the WinPar litigation, the malpractice litigation, and the Amodeo related litigation. Both recalled having extensive, sometimes heated, negotiations concerning these pieces of litigation.

Despite not recalling any discussion of the Palaxar Litigation, Ms. Cream testified that she believed the government retained control over Nexia's claims in the Palaxar Litigation because Nexia was listed on the government's property list. Contrary to Mr. Cuthill, however, she offered no concrete evidence that would support such a belief. Moreover, Ms. Cream testified that the main purpose for requesting turnover of Mirabilis' subsidiary entities, such as Nexia, was to prevent any further criminal misuse of the entities by Mr. Amodeo. This purpose comports with Mr. Cuthill's testimony. He believed the government was only receiving Nexia's corporate shell, and that he understood that the government had little or no interest in pursuing any of Mirabilis' or its subsidiaries' civil claims. He testified that the government never expressed any interest in any of the ongoing litigation involving Mirabilis and its subsidiaries.

In sum, the government provided no evidence of its intention—during the settlement discussions with Mr. Cuthill and Ms. Green, or at any other time—to allow the government now to assert Nexia's claims in the Palaxar Litigation. The only testimony that tends to support the government's position is Ms. Cream's statement that she never intended to allow the debtor to assert Nexia's claims. The whole of the government's presentation seemed to argue simply that it should get Nexia's claims because its representatives interpreted the contract to say what they wanted it to say. But actions speak louder than words. And in this case, the government's actions belie any actual, expressed interest in Nexia's claims at the time the settlement agreement was drafted.

The government's failure to assert its interest in Nexia's claims is striking considering that the parties divided up other assets between them. For example, the parties split claims to a piece of real property located at 509 Riverfront Parkway, Chattanooga, TN.[5] The government received proceeds from the sale of the property, while the debtor's estate retained the right to any funds generated by the fraudulent transfer lawsuit. The parties likewise split rights to a promissory note dated May 27, 2007, between Mirabilis Ventures, Inc. and Conrad D. Eigenmann, Jr.[6] Like these splits, the government could have suggested that the parties split the Palaxar Litigation to allow the government to pursue Nexia's claims, while allowing the debtor's estate to pursue Mirabilis' claims. They did not.

Because the government failed to raise the issue at any time prior to the execution of the settlement agreement, the Court must conclude one of three things: (1) the government intended to obtain Nexia's claims but failed to voice its intention; (2) the government never considered the issue; or (3) the government actually agreed that the debtor could pursue Nexia's claims. None

---

[5] See Exhibit A, ¶ (d) and Exhibit B, ¶ (b).
[6] See Exhibit A, ¶ (bb) and Exhibit B, ¶ (c).

of the testimony or evidence supports the first proposition. And, although it is possible the government never focused on the debtor retaining Nexia's claims, the more likely result is that, at the time of the settlement agreement, they agreed, at least tacitly, that the debtor could pursue Nexia's claims.

Here, Mr. Cuthill credibly testified that he listed his interest in pursuing the litigation claims of the debtor's subsidiaries, including Nexia, on the schedules shared with the government on October 8 and 31, 2008. He diligently investigated the value of Nexia's claims in the Palaxar Litigation before agreeing to the settlement. Further, the Palaxar Litigation was specifically listed on the debtor's property list and the government never asked for any clarification as to whether the debtor controlled only Mirabilis' claims or also Nexia's claims. Rather than establish that it took a position at this time, the government now makes what seems to be a post hoc explanation for its failure to inquire earlier.

The government has not persuaded the Court that it intended, nor even contemplated, that Nexia's claims in the Palaxar Litigation be forfeited to the government as part of the settlement. The debtor's estate, on the other hand, has produced ample evidence that its principal, Mr. Cuthill, analyzed Nexia's claims and intended to pursue them in the Palaxar Litigation. Mr. Cuthill's testimony also explains why he did not see a conflict between listing Nexia's corporate shell on the government's list, and Nexia's claims in the Palaxar Litigation on the debtor's list: he believed the government was only interested in Nexia's corporate shell to prevent any future criminal misconduct, and that it had no interest in pursuing any ongoing civil litigation claims of Mirabilis or its subsidiaries. Mr. Cuthill's understanding and his intentions with regard to Nexia's claims sheds the best light on the parties' intentions at the time they drafted the settlement agreement. Read in this light, and taking into account all of the testimony presented at trial, the Court concludes that, to the extent the parties intended anything with regard to

Nexia's claims in the Palaxar Litigation, the parties intended that the debtor would retain possession.

The debtor's Motion to Confirm Property of the Estate under the Court Approved Compromise with the United States of America (Doc. No. 526) is granted. The debtor retains control over Nexia's claims in the Palaxar Litigation. A separate order consistent with this Memorandum Opinion will be entered.

DONE AND ORDERED in Orlando, Florida, on June 2, 2010.

KAREN S. JENNEMANN
United States Bankruptcy Judge

Copies furnished to:

Debtor: Mirabilis Ventures, Inc., c/o R.W. Cuthill, Jr., 341 N. Maitland Ave. #210, Maitland, FL 32751

Debtor's Attorney: Latham Shuker Eden & Beaudine LLP, Attn. Justin Luna, 390 N. Orange Ave. Suite 600, Orlando FL 32801

Special Counsel for Debtor: Broad and Cassel, Attn. Roy Kobert, 390 N. Orange Ave., Suite 1400, Orlando, FL 32801

Attorney for USA: Scott H. Park, Assistant U.S. Attorney, ID No. USA084, 501 W. Church St., Suite 300, Orlando, FL 32805

United States Attorney, Attn: Elena L. Escamilla, 135 W. Central Blvd., Suite 620, Orlando, FL 32801

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re                                                )
                                                     )
MIRABILIS VENTURES, INC.,                            )   Case No. 6:08-bk-04327-KSJ
                                                     )   Chapter 11
              Debtor.                                )
                                                     )
_____                )

ORDER GRANTING DEBTOR'S MOTION
TO CONFIRM PROPERTY OF THE ESTATE UNDER THE COURT
APPROVED COMPROMISE WITH THE UNITED STATES OF AMERICA

This case came on for hearing on May 19, 2010, to consider the debtor's Motion to Confirm Property of the Estate under the Court Approved Compromise with the United States of America (Doc. No. 526). Consistent with the Memorandum Opinion Granting Debtor's Motion to Confirm Property of the Estate under the Court Approved Compromise with the United States of America, entered simultaneously herewith, it is

ORDERED:

1. The debtor's Motion to Confirm Property of the Estate under the Court Approved Compromise with the United States of America (Doc. No. 526) is granted.

2. The debtor retains control over Nexia's claims in the Palaxar Litigation.

DONE AND ORDERED in Orlando, Florida, on June 2, 2010.

                                          KAREN S. JENNEMANN
                                          United States Bankruptcy Judge

Copies furnished to:

Debtor: Mirabilis Ventures, Inc., c/o R.W. Cuthill, Jr., 341 N. Maitland Ave. #210, Maitland, FL 32751

Debtor's Attorney: Latham Shuker Eden & Beaudine LLP, Attn. Justin Luna, 390 N. Orange Ave. Suite 600, Orlando FL 32801

Special Counsel for Debtor: Broad and Cassel, Attn. Roy Kobert, 390 N. Orange Ave., Suite 1400, Orlando, FL 32801

Attorney for USA: Scott H. Park, Assistant U.S. Attorney, ID No. USA084, 501 W. Church St., Suite 300, Orlando, FL 32805

United States Trustee, Attn: Elena L. Escamilla, 135 W. Central Blvd., Suite 620, Orlando, FL 32806