IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA,
ORLANDO DIVISION

| | |
|---|---|
| MIRABILIS VENTURES, INC, and<br>NEXIA STRATEGY CORPORATION,<br><br>Plaintiffs,<br><br>-vs.-<br><br>PALAXAR GROUP, LLC;<br>PALAXAR HOLDINGS, LLC;<br>FRANK HAILSTONES;<br>EDITH CURRY a/k/a EDITH<br>BROADHEAD; AND TERENCE CHU,<br><br>Defendants,<br><br>-vs.-<br><br>MIRABILIS VENTURES, INC., et al.<br><br>Counterclaim and<br>Third Party Defendants | Case No.: 6:07-CV-1788-ORL-28-GJK |

## SUPPLEMENT TO DEFENDANT'S MOTION FOR SANCTIONS
## AND INCORPORATED MEMORANDUM OF LAW

COMES NOW the Defendant, without waiving his defense of lack of personal jurisdiction, Terence Chu, ("Chu") *pro se,* and pursuant to Fed. R. Civ. P. 26(g), 26(e), 37(c)(1) (A) and (C); hereby files this supplement to his Motion for Sanctions (Dk. 242). Pursuant to 28 USC §1927, Fla. R. Prof. Conduct, 4-3.3 and the Court's inherent authority and requests that the Court issue a show-cause order under Fed. R. Civ.P. 11(c)(3) seeking monetary sanctions against Allen Estes, Esq. ("Attorney Estes"), J. Russell Campbell, Esq. ("Attorney Campbell"), the law firm of Balch & Bingham, Nicolette Vilmos, Esq. ("Attorney Vilmos"), Todd K. Norman, Esq. ("Attorney Norman"), Roy Scott Kobert, ("Attorney Kobert"), and the law firm of Broad and Cassel, for the frivolous and baseless amended

complaint they filed on behalf of Mirabilis Ventures, Inc., and Nexia Strategy Corporation and (Collectively "Plaintiffs") for propounding false and misleading statements to the Court. Attorneys Estes, Campbell, Vilmos, Norman, and Kobert are collectively referred to as "MVI Attorneys." Terence Chu seeks sanctions pursuant to Fed. R. Civ. P. 11 and Local Rule 4-3.3, and the Court's inherent authority.

## I. PROCEDURAL BACKGROUND

On May 6, 2010, Chu filed a Motion for Sanctions (Dkt. 242.) May 11, 2010, Co-Defendants Edith Curry, Frank Hailstones, Palaxar, et. al. filed a Motion for Reconsideration (Dkt. 243). May, 24, 2010, Campbell and Estes filed their response to Chu's Motion for Sanctions on May 24, 2010 (Dkt. 252); Bates and Mokwa filed a limited notice of appearance to appear personally (Dkt. 250) and responded (Dkt. 251); Korbert, Vilmos and Norman responded (Dkt. 254). After Chu's inquiry (Exhibit A) about false and misleading statements in Estes' affidavit, only Campbell and Estes amended their response (Dkt. 255) on May 25, 2010, correcting only some errors.

## II. MVI WAS AWARE IN JUNE 2008 BOARD MINUTES MAY HAVE BEEN DOCTORED AND SUES CREDITORS FOR RETALIATION

On or about June 2, 2010 Chu became aware of Plaintiffs Mirabilis Ventures, Inc. ("MVI") and Nexia Strategy Corporation ("Nexia") (collectively "Plaintiffs"), president, R. W. (Bill) Cuthill's ("Cuthill") deposition in a related case conducted on April 21, 2010. In his deposition, Cuthill testified, among other things, that in June, 2008:

> Most of my meetings with Mr. Slaughter were in the beginning of the case. And most of them had to do with the custody of the -- what I'm going to call the Mirabilis documents. The -- when I got into the case, I couldn't tell who was in charge of the Mirabilis documents. And since I was Mirabilis, or representing Mirabilis at that point in time, if the documents belonged to Mirabilis, I wanted to take possession of them.[1],[2]
>
> ...because I had been told[3] that the board minutes may have been doctored. And -- in other words, maybe there were subsequent board minutes written and substituted for previous board minutes. Surprise, surprise. ...the document production [from the Moore

---

[1] Exhibit B, Cuthill Deposition, Volume 1, page 68 - 69, lines 20 - 25 and 1 - 3 respectively.
[2] Notably, Mr. Cuthill did not take possession of all MVI related documents. Frank Amodeo's brother Dean Amodeo had possession of documents as late as August, 2009. See Exhibit C.
[3] Exhibit B, Cuthill Deposition at Volume 1, beginning at page 88. Cuthill testified he interviewed, Jodi Jaiman, James Sadrianna, Barry Lynch, Aaron Bates, Matt Mokwa, Amodeo's attorneys.

firm in early 2009] really helped me solidify the corporate minutes, and who the owners were, and who the officers were, at least up through...June or July of '06."[4]

Mr. Cuthill's April 21, 2010 testimony directly contradicts his previous affidavits (Dkt. 193, 198, and 205) as well as those submitted by Estes, Campbell, and Bates (Dkt 251, 252, 254 and 255.) The MVI Attorneys and Cuthill have previously certified to this Court that all relevant documents were available and properly reviewed as of October, 2007 - yet in his aforementioned deposition, Cuthill swore he was unable to determine whether board minutes & other documents were altered until after he "received production from The Moore Firm [an accounting firm MVI sued in early 2009 - and subsequently received document production] ...and looked at other documents that weren't in the corporate books, the corporate minute books...looking at *some* of the video..."[5] (Emphasis added.)

Finally, it should be noted that Mr. Cuthill stated in his deposition that he "sued [a creditor] in retaliation for [the creditor] filing claims in the bankruptcy against Mirabilis...not as primary reason, but certainly, it was one of his reasons."[6]

> Q Okay. And ... if I got it right, you sued Glover in retaliation for him filing claims in the bankruptcy against Mirabilis, right?
>
> A That was not my primary reason, but, certainly, it was one of my reasons.

### III. BALCH REPRESENTED FRANK AMODEO, AQMI STRATEGY, TITANIUM TECHNOLOGIES CONCURRENTLY WITH REPRESENTATION OF MIRABILIS VENTURES ET. AL.

Balch represented Amodeo individually in the purchase of property in Alabama on or about January 2006 (Doc 243-5). Balch also represented Amodeo individually in March, 2007 in Alabama in the case styled Chaviers, et. al v MVI and Frank Amodeo CV-07-00442-CLS (Doc 243-6). Balch represented MVI in March, 2007 in Alabama in the case styled Chaviers, et. al v MVI and Frank Amodeo CV-07-00442-CLS (Doc 243-6). Balch also represented MVI in October, 2007 (with co-counsel Aaron Bates who also represented AQMI) in Hendricks et al v. Mirabilis Ventures, Inc., AQMI, et al 8:07-cv-00661-VMC-AEP. Further, Balch represented AQMI Strategy and Titanium Technologies (both 100%

---

[4] Id., Volume 2 at 233 - 234, lines 1-25 and 1-6 respectively
[5] Id.
[6] Id., at Volume 2, page 382 at lines 21-25.

Amodeo-owned companies) in October, 2007 and prepared the draft complaint (Doc 243-7) which sought $10,000,000 in Directors & Officers Insurance coverage.

In the instant case, all MVI attorneys have repeatedly certified to this Court that a reasonable investigation of all corporate documents was undertaken by them and following which, they concluded that: [7]

> Mr. Amodeo had no authority...they make a lot of arguments about Mr. Amodeo and he told them to do this, and he told them to do that, and that he can choose to disregard the corporate formalities.

However, in a draft complaint prepared by Balch (Doc 243-7) in December, 2007 (on behalf of their client AQMI Strategy and Titanium Technologies; both wholly owed Frank Amodeo companies), Balch asserted in the very first paragraph:

> Mirabilis and AEM were tasked with this job by Frank Amodeo and AQMI, a consulting organization hired by Presidion to resolve Presidion's outstanding problems, including mounting payroll tax liabilities...Amodeo and AQMI developed a plan...The plan involved creating successor companies, Mirabilis and AEM, to acquire the Presidion PEO assets...Mirabilis and AEM were capitalized by Plaintiffs Titanium and AQMI, resulting in Plaintiffs being the primary secured creditors of Mirabilis.

The draft complaint was never filed with a tribunal, but it was sent to thirty-three of MVI's former executives and officers as well as MVI's Directors & Officers Liability insurance carriers seeking to recover $10,000,000. Their effort was unsuccessful. (Dkt 243-8). What this draft complaint clearly illustrates is that the MVI attorneys and law firms knew Amodeo controlled MVI *at the time the instant case was filed*. Yet, concurrently, the same MVI attorneys were asserting to this Court, the exact opposite: that Mr. Amodeo had no authority. Both assertions cannot be correct.

## IV.    DISCUSSION OF AUTHORITY

MVI Attorneys are, once again, in violation of the Federal Rules of Civil Procedure and the Florida Rules of Professional Conduct.

<u>Federal Rule of Civil Procedure 26(e)</u> Supplementation of Disclosures and Responses provides:

---

[7] Estes oral testimony to the Court on January, 25, 2008 Dkt: 206, Exhibit 1.

> A party who has made a disclosure under Rule 26(a) — or who has responded to an interrogatory, request for production, or request for admission — *must supplement or correct its disclosure or response:*
>
> *in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or*
>
> *(B) as ordered by the court. (Emphasis added.)*

Florida Rules of Professional Conduct: Rule 4-3.3 Candor toward the tribunal provides:

**(a) False Evidence; Duty to Disclose.** A lawyer shall not knowingly:

> (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
>
> (2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;
>
> (3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or
>
> (4) offer evidence that the lawyer knows to be false. A lawyer may not offer testimony that the lawyer knows to be false in the form of a narrative unless so ordered by the tribunal. If a lawyer, the lawyer's client, or a witness called by the lawyer has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.

## SANCTIONS ARE NECESSARY AND APPROPRIATE IN THIS CASE

Again, Plaintiffs have failed to supplement their disclosures and more importantly, to *correct* them, unfairly placing Chu in the position of having to continually disprove statements submitted by Plaintiffs when Plaintiffs (and their counsel) knew or should have known the statements to be blatantly false.

The invocation of the court's inherent power to sanction requires a finding of bad faith after the party is afforded a due process opportunity to be heard. *See Chambers, 501 U.S. at 49; In re Mroz, 65 F.3d 1567, 1575-76 (11th Cir.1995).* Inherent powers must be exercised with restraint and discretion. *Barnes, 158 F.3d at 1214.* A primary aspect of that discretion is the ability to fashion an appropriate

sanction for conduct which abuses the judicial process. *Chambers, 501 U.S. at 44-45; see also Amsted Indus. Inc. v. Buckeye Steel Castings Co., 23 F.3d 374, 377-78 (Fed.Cir.1994)* (recognizing that under certain circumstances a court can award expert witness fees as a sanction pursuant to its inherent power).

After ample notice, MVI and MVI Attorneys continue to *knowingly* make false representations to the Court and failed to meet their duties under Federal Rules of Civil Procedure and Florida Rules of Professional Conduct. Their actions are similar to actions found sanctionable in *Cooper v. Litton Loan Servicing*, 253 B.R. 295 (Bankr. N.D. Fla. 2000). In *Cooper*, the Court imposed sanctions because the lawyer(s) pursued "a scorched earth approach, suing anyone remotely connected to the case and threatening to keep piling on allegations if they even attempted to respond." MVI and MVI attorneys failed to conduct a reasonable investigation and failed to correct prior false statements made to the Court. Most notably; MVI's liquidating president testified he "sues in retaliation."

MVI and its attorneys have had multiple opportunities to dismiss this action when their tenuous claims were proven to be false by their own filings and testimony, yet they persist. This motion supplements Chu's Motion for Sanctions (Dkt 242) and seeks monetary sanctions against MVI Attorneys and their law firms under Fed. R. Civ. P. 11(b), 28 U.S.C. § 1927, Local Rule 4.18, and this Court's inherent authority.

## NOTICE REGARDING SERVICE AND FILING

This motion seeks sanctions under Fed. R. Civ. P. 11(b), 28 U.S.C. § 1927, Local Rule 4.18, and this Court's inherent authority.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. mail this ___ day of _____, 2010 to Kathleen B. Havener, Esq., The Havener Law Firm, LLC, 15511 Russell Road, Chagrin Falls, OH 44022; Frank Amodeo, FCC-Low, B3, P.O. Box 1031, Coleman, FL 33521-1031; Martin R. Raskin and Jane Serene Raskin, Raskin & Raskin, P.A., 2601 South Bayshore Drive, Suite 725, Miami, Florida 33133; Kathleen S. Davies, The Davies Law Firm, 126 E Jefferson St, Orlando, FL 32801; James Vincent Sadrianna, 10025 Chatham Oaks Court, Orlando, FL 32836; US Attorney's Office, I. Randall Gold, Suite 300, 501 W Church St, Orlando, FL 32805; John Russell Campbell, Balch & Bingham, LLP Suite 600, 1901 Sixth Ave N, Birmingham, AL 35203; Allen M. Estes, Balch & Bingham, LLP, Suite 1500, 1901 Sixth Ave N, Birmingham, AL 35203; Todd K. Norman, Nicolette Vilmos and Roy Scott Kobert, Broad and Cassel, Suite 1400, 390 N. Orange Avenue, Orlando, FL 32801, and Elizabeth A. Green, Baker & Hostetler, LLP, 200 S Orange Ave - Ste 2300, PO Box 112, Orlando, FL 32802-0112; Yaniv Amar 3475 Mystic Point Drive, TH #10, Aventura, FL 33180.

Respectfully submitted,

Date: June 7, 2010

Terence Chu, *pro se*
5637 Country Hills Lane
Glen Allen, VA 23059
804-363-2666
terencchu@yahoo.com