UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MIRABILIS VENTURES, INC. and )   Case No.: 6:07-CV-1788-ORL-28-GJK
NEXIA STRATEGY CORPORATION, )
)
Plaintiffs, )
)
-vs.- )
)
PALAXAR GROUP, LLC; )
PALAXAR HOLDINGS, LLC; )
FRANK HAILSTONES; EDITH CURRY )
a/k/a EDITH BROADHEAD; and )
TERENCE CHU, )
)
Defendants, )
)
vs. )   **DEFENDANT TERENCE CHU'S**
)   *OPPOSITION TO* **PLAINTIFF'S**
MIRABILIS VENTURES, INC., et al. )   **MOTION FOR SUBSTITUTION OF**
)   **COUNSEL**
Counterclaim and Third )
Party Defendants. )
)
)

Defendant Terence Chu ("Chu"), *pro se*, files this *opposition to*
Plaintiff's Motion for Substitution of Counsel and Incorporated Memorandum of Law.

**PROCEDURAL BACKGROUND**

On December 15, 2009, Chu sent notice of his intent to file a Rule 11 motion

against Plaintiff's counsel to Broad and Cassel ("B&C"), Balch & Bingham ("Balch")

and Bates Mokwa ("Bates") (Collectively "MVI Counsel") (Doc. 220 at 10-11) to which

only Balch replied stating, contrary to court records, they "no longer represent[ed]

Mirabilis Ventures, Inc., ("MVI") (Doc. 220 at 12). Two days later, Chu responded to all

MVI Counsel seeking clarification (Doc. 220 at 15 - 16) and noting that pursuant to Local

Rule 2.03 (b) "No attorney, having made a general appearance under subsection (a) of this rule, shall thereafter abandon the case or proceeding in which the appearance was made, or withdraw as counsel for any party therein, except by written leave of Court obtained *after giving ten (10) days notice to the party or client affected thereby*, and to opposing counsel." To date, Chu has never received a response from MVI Counsel.[1]

On March 9, 2010, B&C filed a *Motion to Substitute Counsel* (Doc. 209), once again without conferring with Chu. Chu was directed by Balch that "all communication related to MVI/Nexia litigation should be directed to B&C." A *pro se* party is subject to the same law and rules of conduct as a party who is represented by counsel, including adherence to the Federal Rules of Civil Procedure and the Local Rules of the Middle District of Florida. *Steward v. Int'l Longshoreman's Ass'n, Local 1408*, No. 3:05-cv-1094, 2007 U.S. Dist. LEXIS 91985, *3 (M.D. Fla. Dec. 14, 2007). This rule applies equally to the *pro se* party himself and to other counsel in the case.

On May 6, 2010, Chu filed his Motion for Sanctions (Doc. 242), and a *Motion to Supplement Motion for Sanction* on June 8, 2010 (Doc. 259 - Stricken Doc. 277) a *Motion to Compel Initial Disclosures and Production of Documents* on August 2, 2010 (Doc 282 - denied as Moot, Doc. 292).

On August 9, 2010, this Court *sua sponte* granted Chu Summary Judgment (Doc. 287). Chu's *Motion for Judgment* (Doc. 304) and *Motion for Leave to File Supplemental Sanctions* (Doc. 305) are pending.

---

[1] If, as Balch represents to this Court (oc. 311, footnote 1) that their original Motion for Substitution (Doc. 167) was "complimentary to B&C's Motion for Substitution of BatesMokwa (Doc. 168). MVI counsel had ample notice and time to correct the record, yet they waited four months to re-file. (Doc. 209)

On October 22, 2010, this Court denied (Doc. 309) co-defendants Motion for

Reconsideration (Doc. 243) citing co-defendants assertions of [MVI Counsel, including

Balch] misconduct[2]:

> 1. They reinstated Nexia "for the sole purpose of allowing it . . . to pursue this litigation – although the litigation is in direct conflict with the provisions of [Mirabilis'] Articles of Incorporation, Curry's Employment Agreement, Curry's Separation Agreement, and the provisions of two Assignment Agreements" (Doc. No. 243 at 2);

> 2. The underlying motives for this litigation were: to seek money by invoking various Directors" and Officers" Liability insurance policies; to assist Frank Amodeo in his efforts to receive leniency at this criminal sentencing; to seek information to assist Mr. Amodeo in his criminal investigation and plea negotiations; and to issue inflammatory press releases regarding Curry and Hailstones;

> 3. At the time this litigation commenced, Balch was aware that Mr. Amodeo's criminal plea negotiations were ongoing and that his criminal counsel along with Mirabilis' in-house counsel were in possession of and reviewing documents concerning Mirabilis and other related companies;

> 4. Estes, Campbell and Balch "knew, but failed to disclose – either to this Court or to Defendants – that Balch would be unable to produce certain documents to Defendants that might incriminate Mr. Amodeo, in violation of Florida Rules of Professional Conduct 4-3.4(a), and that discovery would thus be incomplete and inevitably prejudicial to Defendants" (Doc. No. 243 at 3);

> 5. Balch continued to accept Mirabilis' funds to prosecute this case despite knowing that Mirabilis' then president, Jodi Jaiman, had offered deposition testimony in a related case, stating that Assistant United States Attorney I. Randall Gold had informed Jaiman and other Mirabilis officers that "further disbursement of [Mirabilis'] funds would amount to money laundering" (Doc. No. 243 at 3);

> 6. Pursuant to Rule 4-3.1, Florida Rules of Professional Conduct, Balch had a duty to dismiss the claims against Defendants on January 25, 2008, when it knew that Mirabilis and Nexia lack standing to bring their claims against the Defendants under either the patent law or under Florida's Uniform Trade Secrets Act;

---

[2] Depositions of Aaron Bates, Matthew Mokwa and MVI President R.W. Cuthill were conducted on August 3, August 10, and September 22, 2010 respectively. Further, after months of requests, Plaintiffs produced e-discovery to co-defendants on September 9, 2010.

7. On May 14, 2008, Estes knew that Mirabilis' bankruptcy counsel, Elizabeth Green, Esq., informed the Government that she was retained by Mr. Amodeo "as the controlling debtor of [Mirabilis]." Doc. No. 243 at 5. However, on January 25, 2008, in a hearing before this Court, Estes stated that "Mr. Amodeo had no authority to assign away the rights of Mirabilis or Nexia [and] at no point in time did Mr. Amodeo own more than about half a percent of Mirabilis'"" (Doc. No. 243 at 5);

8. "At the May 14, 2008 meeting, Ms. Green further stated that the sole reason for filing the bankruptcy petition was to use the bankruptcy to continue civil litigation which, if settled or won, would provide funds for Amodeo (who was then facing criminal indictment for conspiracy, failure to remit payroll taxes, wire fraud, and obstruction of an agency investigation, and who subsequently pled guilty to five counts of the 27-count indictment) to repay the IRS the approximately $220 [million] he admitted to stealing" (Doc. No. 243 at 5-6);

9. Balch propounded discovery upon Curry and Hailstones seeking information to aid Mr. Amodeo in his criminal proceedings which caused the Government to intervene and seek a stay of this case;

10. Balch failed to disclose to this Court or the Defendants its appointment as Special Counsel to Mirabilis in the Bankruptcy Court. Moreover, in the bankruptcy proceedings, on September 8, 2008, Campbell filed a verified statement providing that Balch and its attorneys do not represent Mirabilis;

11. Balch failed to disclose Nixie's September 2008 dissolution;

12. Balch failed to disclose that Jaiman recanted her affidavit that Amodeo had no authority over Mirabilis or Nexia; and

13. Balch has committed misconduct on behalf of Amodeo and Mirabilis in other cases.

## SUPPORTING MEMORANDUM OF LAW

On September 28, 2010, MVI Counsel again moved the Court for *Substitution of Counsel* (Doc. 311). Chu objects not only because he has Motions pending before the Court, but also because recent depositions and Plaintiffs' September 2010 document production disclosed the following[3]:

---

[3] Each exhibit in this Motion was produced by Plaintiffs on or about September 2010. With the exception of Exhibits F and H, all were included or referred to in MVI's President, R. W. Cuthill's, September 22, 2010 deposition. With regard to these documents, no objection was raised. Cuthill's deposition is not

1. In July 2007, MVI Counsel (Goldberg and Bates) notified various courts, multiple creditors and opposing counsel that "Mirabilis' primary secured creditor [AQMI Strategy - Frank Amodeo] had taken control of all assets." (Exhibit A) This was not disclosed to this Court, nor to Defendants.

2. Balch was retained and paid not by Plaintiffs Mirabilis Ventures, Inc. and/or Nexia Strategy Corporation, but rather by AQMI Strategy and Frank Amodeo[4]. (Exhibit B)

3. On July 24, 2007 Amodeo notified Balch, Bates, Mateer & Harbert of the "Causes of Action" including the amounts in controversy. (Exhibits C and D)

4. On August 14, 2007, Amodeo notified Maher, Guiley and Maher, together with his criminal counsel Harrison Slaughter ("Slaughter") of the "revised litigation plan which lumps the contingency cases together" with a diagram most aptly illustrating the actions, goals, objectives and intent of Plaintiffs, MVI Counsel, Amodeo and his criminal counsel months before the present action was filed. (Exhibits E and F)

---

currently available, but will be provided to the Court in a subsequent cause of action. Further, Chu is unable to opine how Cuthill, "A former Certified Fraud Examiner, former Certified Public Accountant, and "a renowned trustee/liquidator who was appointed by the Honorable Karen Jennemann, of the U.S. Bankruptcy Court for the Middle District of Florida. . . .[and]] the trustee/liquidator in the Evergreen Security, Ltd. action, Case No. 6:01-00533-KSJ, [and] who was approved by the Bankruptcy Court [], because of his past successes, to liquidate Mirabilis, et al.," *See U.S. v. Mirabilis*, Case No. 6:08-CR-00216-JA-KRS (Doc. 139 at pp. 8, 14) was unable after more than two years and "extensive review of the causes of action against" (at a salary of $400/hour plus expenses totaling over $600K to date) was unable to locate and produce these documents before September 2010.

[4] "Maintenance is an officious intermeddling in a suit which in no way belongs to the intermeddler, by maintaining or assisting either party to the action, with money or otherwise, to prosecute or defend it." 9 Fla.Jur.2d Champerty and Maintenance § 1 (1979). Under the modern view, "it is the act of one improperly, and for the purpose of stirring up litigation and strife, encouraging others either to bring [an] action or to ... defend [a suit] which they have no right to make...." Id. Champerty is a form of maintenance wherein one will carry on a suit in which he has no subject-matter interest at his own expense or will aid in doing so in consideration of receiving, if successful, some part of the benefits recovered. 14 C.J.S. Champerty and Maintenance § 1a (1991). Chu recognizes maintenance and champerty have been supplanted by the causes of action of malicious prosecution and abuse of process coupled with other remedies. The Florida Legislature has passed an assortment of statutes that effectively combat speculation in groundless lawsuits and the filing of frivolous suits that were the evils intended to be curtailed by allowing causes of action for champerty and maintenance. Particularly, section 57.105 of the Florida Statutes (1997), as amended in 1999, as well as 28 USC §1927 as well as this Court's inherent authority permits courts to sanction litigants and attorneys for filing frivolous lawsuits. Also, rule 4-3.1 of the Florida Rules of Professional Conduct prohibits attorneys from bringing or defending a proceeding, unless there is a basis for doing so that is not frivolous.

5.  On August 31, 2007, in preparation of Amodeo's "Causes of Action," Balch assisted in the drafting of Amodeo's[5] false and misleading press releases. (Exhibit G)

6.  In February 2008, after having sole care, custody and control of all Plaintiffs' documents in preparation of Amodeo's criminal defense (rendering Defendant's civil discovery virtually impossible without compromising Amodeo's criminal defense), Slaughter and civil counsel Mateer & Harbert enter into a fee-sharing arrangement awarding Slaughter 20% of civil counsel's 45-55% contingency fee. (Exhibit H)

Whether or not to allow the withdrawal of counsel falls within the Court's discretion. *j2 Global Communications, Inc. v. Blue Jay, Inc.*, No. C08-4254 PJH, 2009 U.S. Dist. LEXIS 19027, at *3 (N.D. Cal. Feb. 24, 2009) (citing *LaGrand v. Stewart*, 133 F.3d 1253, 1269 (9th Cir. 1998)). The withdrawal of counsel is governed, like all matters of counsel's conduct, "by the standards of professional conduct required of members of the State Bar." *Schueneman v. 1st Credit of Am., LLC*, No. C05-4505 MHP, 2007 U.S. Dist. LEXIS 48981, at *23 (N.D. Cal. July 6, 2007). "In addressing motions to withdraw as counsel, district courts have typically considered whether 'the prosecution of the suit is [likely to be] disrupted by the withdrawal of counsel." Whiting v. Lacara, 187 F.3d 317, 320-21 (2nd Cir. 1999), quoting Brown v. National Survival Games, Inc., 1994 WL 660533 at *3 (N.D.N.Y., November 18, 1994); see also, Vachula v. General Electric Capital Corp., 199 F.R.D. 454, 458 (D. Conn. 2000).

In ruling on a withdrawal motion, the Court weighs four factors: "(1) the reasons why withdrawal is sought; (2) the prejudice withdrawal may cause to other litigants; (3) the harm withdrawal might cause to the administration of justice; and (4) the degree to

---

[5] At the time of this email, Amodeo had been in plea negotiations with AUSA I. Randall Gold for 7 months, and despite his five day sentencing hearing efforts, Amodeo neither asserted nor claimed the defense of "advice of counsel" in his plea agreement.

which withdrawal will delay the resolution of the case." *Irwin v. Mascott*, No. C97-4737 JL, 2004 U.S. Dist. LEXIS 28264, at *4 (N.D. Cal. Dec. 1, 2004). Under the law, "Bad faith may be inferred where the specific shortcomings of the case are identified by opposing counsel, and the decision is made to go forward despite the inability to respond to the arguments raised." *Gemini Aluminum Corp. v. California Custom Shapes, Inc.* (2002) 95 Cal.App.4th 1249, 1262, 116 Cal. Rptr. 2d at 369 (citation omitted). Here however, bad faith need not be inferred because of the clear and uncontroverted evidence that MVI Counsel planned, prepared, and executed this action, against Chu and others, in complete and utter disregard of their duties to this Court and more broadly, the judicial process.

WHEREFORE, Defendant Terence Chu respectfully request the Court to deny MVI Counsel's Motion for Substitution of Counsel, retain jurisdiction over Balch for purposes of various motions against Balch and MVI Counsel for their subjective bad-faith conduct, and grant such further relief as the Court deems just and proper.

Respectfully submitted,

October 7, 2010

Terence Chu, pro se
5637 Country Hills Lane
Glen Allen, VA 23059
804-363-2666
terencchu@yahoo.com

7

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 7, 2010, Defendant delivered the foregoing via

first class mail to the Clerk of the Court which will send notice of electronic filing to all

parties named on the attached Service List or in some other authorized manner for those

counsel or parties who are not authorized to receive notices electronically.

Frank Amodeo, FCC-Low, B3, P.O. Box 1031, Coleman, FL 33521-1031
Yaniv Amar 3475 Mystic Point Drive, TH #10, Aventura, FL 33180

Respectfully submitted,

Date: October 7, 2010

Terence Chu, *pro se*
5637 Country Hills Lane
Glen Allen, VA 23059
804-363-2666
terencchu@yahoo.com

# GOLDBERG BATES, PLLC
## ATTORNEYS AT LAW

Scott M. Goldberg, Esq.
Aaron C. Bates, Esq.

3660 Maguire Boulevard
Suite 102
Orlando, FL 32803
Office: (407) 893-3776
Facsimile: (407) 893-3779
www.goldbergbates.com

July 9, 2007

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**AND FACSIMILE TO: (816) 753-9201**

John R. Weisenfels, Esq.
White, Goss, Bowers, March,
Schulte & Weisenfels, PC
· 4510 Belleview, Suite 300
Kansas City, Missouri 64111

    **RE:    Lease Agreement between Briarcliff Village, LLC and Mirabilis Ventures, Inc.**

Dear Mr. Weisenfels:

        I am writing in response to your letter dated June 28, 2007, on behalf of my client, Mirabilis Ventures, Inc. ("Mirabilis"). Mirabilis is not in a position to make payment to your client, Briarcliff Village, LLC ("Briarcliff"), per your demand for payment of $564,474.78. As you and/or your client may be aware, Mirabilis is currently not able to pay any claims due to superseding and intervening factors and is no longer a going concern.

        As of June 30, 2007, Mirabilis' primary secured creditor has taken control of all assets, which are substantially below the outstanding obligation due from Mirabilis. Currently, it has been determined that Mirabilis' primary secured creditor and the Internal Revenue Service hold priority positions over all other creditors of Mirabilis. Moreover, it has been determined that Mirabilis received capital through potentially illegal means, thus any payments from Mirabilis may be subject to seizure.

        Mirabilis has already surrendered the premises under the Lease Agreement, dated April 13, 2006, to Briarcliff. If Briarcliff will agree to liquidate damages allegedly owed by Mirabilis and negotiate an amount which the parties determine to be reasonable in light of the circumstances, Mirabilis will be happy to do so and avoid unneeded costs of litigation. Please be advised, however, that Briarcliff will not be able to recover any agreed damages until all amounts outstanding and owed to Mirabilis' secured creditor and the Internal Revenue Service have been resolved and satisfied. Also, please be

GOLDBERG BATES, PLLC
www.goldbergbates.com

## Exhibit A

John R. Weisenfels, Esq.
July 9, 2007 - Page 2 of 2

advised that if your client is in possession of any deposits made by Mirabilis under the Lease Agreement, it would be advisable to have your client submit such funds for the benefit of the Internal Revenue Service.

Please contact me at your earliest convenience, so that we may discuss a resolution to this matter.

Very truly yours,

Scott M. Goldberg

cc: Jodi Jaiman

# GOLDBERG BATES, PLLC
### ATTORNEYS AT LAW

Scott M. Goldberg, Esq.
Aaron C. Bates, Esq.

3660 Maguire Boulevard
Suite 102
Orlando, FL 32803
Office: (407) 893-3776
Facsimile: (407) 893-3779
www.goldbergbates.com

July 10, 2007

**VIA US MAIL & FACSIMILE: (904) 798-3730**

Jacob A. Brown, Esq.
Akerman Senterfitt
50 North Laura Street, Suite 2500
Jacksonville, Florida 32202

     **RE:**   **Liberty Property Ltd. Partnership v. Mirabilis Ventures, Inc., et al.**
            **Case No.: 2007-003642-CA**

Dear Mr. Brown:

     Further to our conversation yesterday, I am writing on behalf of my client, Mirabilis Ventures, Inc. ("Mirabilis"), to provide further clarification as to Mirabilis' position relevant to the above-referenced matter. As you and/or your client may be aware, Mirabilis is currently not able to pay any unsecured claims due to superseding and intervening factors, and is no longer a going concern.

     As of June 30, 2007, Mirabilis' primary secured creditor has taken control of all assets, which are substantially below the outstanding obligation due from Mirabilis. Currently, it has been determined that Mirabilis' primary secured creditor and the Internal Revenue Service hold priority positions over all other creditors of Mirabilis. Moreover, it has been determined that Mirabilis received capital through potentially illegal means, thus any payments from Mirabilis may be subject to seizure.

     In this matter, Mirabilis never occupied the premises and never received any benefit for the same. Moreover, Mirabilis does not own, nor control, Solutions Funding, Inc. Nevertheless, Mirabilis is a party to the lease and realizes that a court will find damages flowing therefrom. If your client will agree to liquidate damages allegedly owed by Mirabilis, however, and negotiate an amount which the parties determine to be reasonable in light of the circumstances, Mirabilis will be happy to do so and avoid incurring further unneeded costs of litigation. Please be advised, however, that your client will not be able to recover any agreed damages until all amounts outstanding and owed to Mirabilis' secured creditor and the Internal Revenue Service have been resolved and satisfied. Also, please be advised that if your client is in possession of any deposits made by Mirabilis under the relevant Lease Agreement, it would be advisable to have your client submit such funds for the benefit of the Internal Revenue Service.

Jacob A. Brown, Esq.
July 10, 2007 • Page 2 of 2

_____

Additionally, I have spoken to Mrs. Jaiman, and she would be available on the 19th of July for the previously scheduled deposition. If that date meets with your approval, and we determine that the deposition is still necessary, please let me know.

Please contact me at your earliest convenience, so that we may discuss a potential resolution to this matter.

Very truly yours,

Aaron C. Bates

```
TRANSMISSION VERIFICATION REPORT
```

```
                              TIME  : 01/05/2005 21:52
                              NAME  :
                              FAX   :
                              TEL   :
                              SER.# : 000E5J239395
```

```
DATE,TIME          01/05  21:52
FAX NO./NAME       19047983730
DURATION           00:00:44
PAGE(S)            03
RESULT             OK
MODE               STANDARD
                   ECM
```

# GOLDBERG BATES, PLLC
## ATTORNEYS AT LAW

Scott M. Goldberg, Esq.
Aaron C. Bates, Esq.

3660 Maguire Boulevard
Suite 102
Orlando, FL 32803
Office: (407) 893-3776
Facsimile: (407) 893-3779
www.goldbergbates.com

# FACSIMILE TRANSMITTAL SHEET

**TO:**
Jacob A. Brown, Esq.

**FROM:**
Aaron C. Bates, Esq.

**COMPANY:**
Akerman Senterfit

**DATE:**
07/10/07

**FAX NUMBER:**
(904) 798- 3730

**TOTAL NO. OF PGS.:**
3, including cover

**RE:**
Liberty Property Ltd. Partnership v.
Mirabilis Ventures, Inc., et al

**CASE NO:**
2007-003642-CA

*If you have any questions or do not receive the complete fax, please call 407-893-3779*

NOTES/COMMENTS:

Dear Mr. Brown:

Please see attached correspondence regarding the above referenced case.

# GOLDBERG BATES, PLLC
## ATTORNEYS AT LAW

Scott M. Goldberg, Esq.
Aaron C. Bates, Esq.

3660 Maguire Boulevard
Suite 102
Orlando, FL 32803
Office: (407) 893-3776
Facsimile: (407) 893-3779
www.goldbergbates.com

---

# FACSIMILE TRANSMITTAL SHEET

**TO:**
Jacob A. Brown, Esq.

**FROM:**
Aaron C. Bates, Esq.

**COMPANY:**
Akerman Senterfit

**DATE:**
07/10/07

**FAX NUMBER:**
(904) 798- 3730

**TOTAL NO. OF PGS.:**
3, including cover

**RE:**
Liberty Property Ltd. Partnership v.
Mirabilis Ventures, Inc., et al

**CASE NO:**
2007-003642-CA

---

*If you have any questions or do not receive the complete fax, please call 407-893-3779*

NOTES/COMMENTS:

Dear Mr. Brown:

Please see attached correspondence regarding the above referenced case.

Should you have any questions or comments regarding the attached, please do not hesitate to contact me.

Thank you,

Aaron C. Bates, Esq.

---

*NOTICE: This facsimile, including attachments, if any, is intended only for the person to whom, or entity to which, it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender, destroy all copies of the original message, and do not disseminate it further*

 IN THE CIRCUIT COURT OF THE
FOURTH JUDICIAL CIRCUIT,
IN AND FOR DUVAL COUNTY, FLORIDA

CASE NO.: 2007-003642-CA
DIVISION CV-H

LIBERTY PROPERTY LIMITED
PARTNERSHIP, a Pennsylvania limited
Partnership, by Liberty Property Trust,
its sole General partner,
        Plaintiff,

vs.

MIRABILIS VENTURES, INC., a Nevada
corporation, and SOLUTIONS FUNDING,
INC., a Florida corporation, and SACHS &
SAX, P.A., a Florida corporation,
        Defendants.

_____/

## DEFENDANT, MIRABILIS VENTURES, INC.'S, ANSWER TO PLAINTIFF'S 1ST SET OF INTERROGATORIES

**COMES NOW**, the Defendant, Mirabilis Ventures, Inc. ("Mirabilis"), by and through its undersigned counsel, and files its Response to Interrogatories 1 through 11 propounded by the Plaintiff, under oath in writing, and states:

**INTERROGATORY NO. 1:**    Identify the individual(s) answering these interrogatories including full name, date of birth, residence and business addresses, social security number and occupation.

**ANSWER:**

Full Name: Jodi Lynn Jaiman
Occupation: President of Mirabilis Ventures, Inc.
Date of Birth: 01/28/1971
Social Security No.: 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

Home Address:
533 Tuten Trail
Orlando, FL 32828

1

<u>Business Address:</u>
3660 Maguire Boulevard, Suite 103
Orlando, FL 32803

**INTERROGATORY NO. 2:**      Identify all persons supplying any information used in preparing and compiling the answers to these interrogatories and state for which interrogatories each person identified supplied information.

**ANSWER:**

Jodi Lynn Jaiman is supplying any and all information used in preparing and compiling the answers to Interrogatories No. 1 through 11.

**INTERROGATORY NO. 3:**      Identify all litigation that you are currently party to in the United States or elsewhere, including the identity of the case name, the court where the action is pending, the case number, an explanation for the basis of the suit, the names of the attorneys representing the parties, and the current procedural posture of the case.

**ANSWER:**

Defendant objects to Interrogatory No. 3 on the grounds that this interrogatory is overbroad and requests information irrelevant to claims or defenses asserted in this action.   Notwithstanding its objection, the Defendant, Mirabilis, is a party to the following actions:

<u>John Burcham v. Mirabilis Ventures, Inc.</u>
Case No: 07-008432-03
Broward County Circuit Civil
Claim for Breach of Contract
Attorney for Mirabilis: Aaron C. Bates
Attorney for Burcham: J. Scott Gunn
Posture: Answer filed.

<u>David Chaviers, et al v. Mirabilis Ventures, Inc., et al</u>
Case No.: CV-07-S-0442-M
US District Court- Northern District of Alabama
Claim for Enforcement of Promissory Notes, etc.
Attorney for Mirabilis: Charles Burkhart
Attorney for Chaviers, et al: Philip W. Williams, Jr.
Posture: Corporate Disclosure Statement filed.

Eric Coleman, et al v. Mirabilis Ventures, Inc.
Case No.: 07-02615
Court of Common Pleas, Chester County PA
Claim for Breach of Contract / Rescission
Attorney for Mirabilis: Jami B. Nimeroff
Attorney for Coleman, et al: Patricia Sons-Biswanger
Posture: Preliminary Objections (Motion to Dismiss) to Plaintiff's Second Amended Complaint filed.

Kenneth A. Hendricks, et al v. Mirabilis Ventures, Inc., et al
Case No.: 8:07-CV-661-T 17EAJ
US Middle District of Florida
Claim for Breach of Purchase Agreement, Note, Loan and Security Agreement(s)
Attorney for Mirabilis: Aaron C. Bates
Attorney for Hendricks, et al: Charles Carlson
Posture: Case Management Conference held; Scheduling Order entered.

HKS, Inc. d/b/a HKS Architects v. Mirabilis Ventures, Inc., et al
Case No.: DC-07-01764
District Court, Dallas County TX
Claim for Breach of Contract, etc.
Attorney for Mirabilis: Kent Krause
Attorney for HKS: Holley C. Friske
Posture: Motion to Dismiss filed

Sanjiv Matta v. Mirabilis Ventures, Inc. et al
Case No.: 06-CA-10139
Orange County Circuit Civil
Claim for Breach of Agreement
Attorney for Mirabilis: Aaron C. Bates
Attorney for Matta: Damon A. Chase
Posture: Mediation coordination in process

Mirabilis Ventures, Inc. v. JC Services, et al
Case No.: 6:06-CV-1957
US Middle District of Florida
Claim for Breach of Contract, etc.
Attorney for Mirabilis: Aaron C. Bates
Attorney for JC Services: N/A
Posture: Defendants recently filed for bankruptcy in the State of Texas

Mirabilis Ventures, Inc. v. Robert Lowder, et al
Case No.: 06-CA-5742
Orange County Circuit Civil
Claim for Fraudulent Inducement, Breach of Contract, etc.
Attorney for Mirabilis: Aaron C. Bates

3

Attorney for Lowder, et al: Patrick J. McNamara
Posture: Defendants' Motion to Dismiss, or in the alternative, Motion for More Definite
Statement filed

<u>Mirabilis Ventures, Inc., et al v. Jeffrey Reichel</u>
Case No.: 0711827
Broward County Circuit Civil
Claim for Negligent Misrepresentation, Tortious Interference, etc.
Attorney for Mirabilis: Aaron C. Bates
Attorney for Reichel: David Lichter
Posture: Complaint filed

<u>PaySource, Inc., et al v. Mirabilis Ventures, Inc., et al</u>
Case No.: 3:07CV0129
US Southern District of Ohio
Claim for Breach of Contract,, Rescission, Declaratory Judgment, etc.
Attorney for Mirabilis: Joe Oehlers
Attorney for PaySource, et al: Brain Sullivan
Posture: Answer filed

<u>Louis Ricci, Jr., et al v. Mirabilis Ventures, Inc., et al</u>
Case No.: 07-001213
Hillsborough County Circuit Civil
Claim for Breach of Contract
Attorney for Mirabilis: Thomas J. Roehen
Attorney for Ricci, et al: Thomas G. Long
Posture: Answer filed

<u>Sycamore Investments, LLC, et al v. Mirabilis Ventures, Inc., et al</u>
Case No.: 07L24
Dekalb County, Illinois, Circuit Civil
Claim for Breach of Guaranty
Attorney for Mirabilis: Scott Becker
Attorney for Sycamore, et al: Mark P. Doherty
Posture: Answer due July 11, 2007

**INTERROGATORY NO. 4:**        Identify each and every person who is believed or
known by you to have personal knowledge concerning any of the allegations in the
Complaint, the Answer, the denials to allegations in the Complaint set forth in the
Answer, or the affirmative defenses set forth in the Answer. For each such person,
specify the subject matter about which the witness has knowledge.

**ANSWER:**

Upon information and belief, the following individuals have personal knowledge concerning any and all allegations contained in the Complaint, the information and defenses asserted in the Answer filed by Mirabilis, and the denials to allegations in the Complaint set forth in the Answer:

William Walsh; Fernando Simo; James V. Sadrianna; Jason Carlson; Rodger Rees; Joseph Bryant; Robert Moreyra; Peter Collins; Jodi Jaiman; Mark Bernet; Daniel Barks.

**INTERROGATORY NO. 5:**        Identify any and all documents that are related to this action.

**ANSWER:**

Please see all documents referenced in Defendant, Mirabilis Ventures, Inc.'s Response to Plaintiff's First Request for Production filed contemporaneously with Defendant, Mirabilis Ventures, Inc.'s Answer to Plaintiff's First Set of Interrogatories.

**INTERROGATORY NO. 6:**        Identify any and all facts that are related to your First Affirmative Defense asserted in your Answer.

**ANSWER:**

Plaintiff was made aware that Defendant, Mirabilis, would not be occupying the Leased Premises at any time and/or paying any portion of the monthly amounts owed pursuant to the Lease Agreement. Moreover, Plaintiff was made aware that Mirabilis does not own any interest in Defendant, Solutions Funding, Inc. nor has any basis to assert control over the daily operations of the same.

**INTERROGATORY NO. 7:**        Identify any and all facts that are related to your Second Affirmative Defense asserted in your Answer.

**ANSWER:**

In or about November of 2006, Mirabilis was served with subpoenas as part of a Grand Jury investigation related to outstanding taxes allegedly owed to the United States Internal Revenue Service by Mirabilis and/or various entities which Mirabilis provided services on behalf of. Moreover, on or about June 30, 2007, Mirabilis' first priority

secured creditor, AQMI Strategy Corporation ("AQMI"), secured its position via the assets of Mirabilis after Mirabilis' default on repayment of obligations owed to AQMI. Mirabilis has taken the position that all amounts allegedly outstanding and owed to its priority secured creditors, namely the IRS and AQMI, must be assessed and resolved before any other alleged obligations are satisfied.

**INTERROGATORY NO. 8:**      Identify any and all facts that are related to your Third Affirmative Defense asserted in your Answer.

**ANSWER:**

Defendant, Mirabilis, never received any value or consideration as part of the Lease Agreement. Mirabilis never occupied the Leased Premises nor could occupy the same.

**INTERROGATORY NO. 9:**      Identify any and all facts that are related to your Fourth Affirmative Defense asserted in your Answer.

**ANSWER:**

Defendant Mirabilis currently has no facts to support this defense.

**INTERROGATORY NO. 10:**      Identify all personal property, tangible or intangible, that was located on the Leased Premises during your occupancy of the Lease Premises in which Defendant asserts as interest.

**ANSWER:**

Defendant Mirabilis does not and can not assert an interest over any and all personal property, tangible or intangible, that was located on the Leased Premises prior to eviction of Defendant Solutions Funding, Inc. from the same.

**INTERROGATORY NO. 11:**      Identify all bases on which Defendant asserts it is not liable under the Lease and identify and describe all facts supporting each such basis.

**ANSWER:**

Please see Answers to Interrogatories No. 5 through 8.

6

MIRABILIS VENTURES, INC.

By: JODI LYNN JAIMAN
Its: PRESIDENT

STATE OF FLORIDA      )
COUNTY OF ORANGE    )

SWORN TO AND SUBSCRIBED BEFORE ME, the undersigned authority, on this ____ day of July, 2007, personally appeared JODI LYNN JAIMAN, who first being duly sworn, under oath, deposes and says that she has executed the foregoing Answer to Plaintiff's First Set of Interrogatories to Defendant, Mirabilis Ventures, Inc., on behalf of Defendant, Mirabilis Ventures, Inc., and knows the contents thereof, and that the answer therein contained are true and correct to the best of her knowledge, information and belief. She is personally known to me.

(SEAL)

NOTARY PUBLIC-STATE OF FLORIDA
Nichole Marie Beamer
Commission # DD405551
Expires: MAR. 10, 2009
Bonded Thru Atlantic Bonding Co., Inc.

NOTARY PUBLIC, STATE OF FLORIDA

Nichole M. Beamer
PRINT NAME

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served via overnight delivery this 10th day of July, 2007 to: Jacob A. Brown, Akerman Senterfit, 50 N. Laura Street, Suite 2500, Jacksonville, FL 32202; Mark S. Mitchell, Akerman Senterfit, 50 N. Laura Street, Suite 2500, Jacksonville, FL 32202.

Aaron C. Bates, Esq.

7



**BALCH & BINGHAM** LLP

Alabama • Georgia • Mississippi • Washington, DC

Eric B. Langley
(205) 226-8772

Attorneys and Counselors
1710 Sixth Avenue North
P.O. Box 306 (35201-0306)
Birmingham, AL 35203-2015
(205) 251-8100
(205) 226-8798 Fax
www.balch.com

(205) 488-5680 (direct fax)
elangley@balch.com

April 6, 2007

<u>**VIA U.S. MAIL AND E-MAIL**</u>

Mr. Frank Amodeo
c/o Mr. Shane Williams
AQMI Strategy Corporation
200 S. Orange Avenue
28th Floor
Orlando, FL 32801

Dear Mr. Amodeo:

Chuck Burkhart and I are pleased to confirm our firm's engagement to represent you in the lawsuit styled <u>Chaviers, et al. v. Mirabilis Ventures, Inc., et al.</u>, In the Northern District of Alabama, Civil Action No: CV-00442-CLS.

Our fees for professional services will be based upon hourly rates for time actually devoted to representation of you by members and employees of the firm. Our firm's hourly rates currently range (for the most part) from $195 to $425 for attorneys and from $125 to $140 for legal assistants. My hourly rate is $290; Chuck's rate is $310. We anticipate involving other lawyers as circumstances require.

In addition to our charges for professional services, we will also charge your account for expenses and disbursements incurred on your behalf in connection with the representation. Such items include filing and court reporting fees, long distance telephone charges, facsimile, and photocopy charges and travel expenses. Statements detailing time, in-house charges, and disbursements will be rendered monthly unless no time has been devoted, or no expenses or disbursements have been incurred, in a particular month.

Our statements will itemize time charges with narratives of the work performed, as well as itemize expenses and disbursements. We received your $20,000 wire transfer (for our retainer) on April 5, 2007. The retainer will be applied against our monthly statements. We ask that you render payments sufficient to maintain the retainer at all times. If you have any particular format you prefer for invoices, for fees or expenses, please let me know and we will do our best to accommodate you.

You may terminate our engagement at any time. In the event this engagement is terminated, you will remain responsible for payment of outstanding statements and any other fees or expenses incurred before termination or thereafter in connection with an orderly transition of the case. If termination occurs, any papers and property of yours will be returned

**Exhibit B**

BALCH & BINGHAM LLP

Mr. Frank Amodeo
April 6, 2007
Page 2

promptly upon receipt of payment for outstanding fees and expenses, but we will retain our firm's files pertaining to the matter.

We may withdraw from this representation if you fail to fulfill obligations under this agreement or if we believe we are required to withdraw under any applicable standards of professional conduct or rules of court.

Our firm also is representing Mirabilis Ventures, Inc. in this lawsuit. We understand you have authorized Aaron Bates of Mirabilis to work with us in coordinating your defense in this case. While we do not presently foresee a conflict developing between you and Mirabilis, if a conflict does develop we may be required to withdraw and you agree to waive any conflicts so that we may continue our representation of Mirabilis.

Please review this letter carefully and, if you agree that it accurately reflects the terms of our firm's engagement, sign and date it in the spaces provided and return it to me. If you believe any significant terms of our representation of you are not set forth in this letter, please let me know.

We appreciate your confidence in us, and we will do our best to resolve this matter as expeditiously as possible. We look forward to working with you.

Very truly yours,

Eric B. Langley

EBL:lk

Accepted and Agreed to:

Frank Amodeo

Dated: _____ 4/7/07 _____

## MEMORANDUM

TO:          Aaron Bates

CC:          J. Russ Campbell; Eric B. Langley

FROM:        Frank Amodeo

DATE:        July 24, 2007

RE:          *Causes of Action*

---

Dear Sirs:

      The causes of action have been divided into three areas: Collection, Professional and D & O.

### Collection

      The collection actions involve companies which have received deposits, investments or loans and have refused to account for or repay the money.

      Our belief is that all these companies but National Paymaster and Lowder are collectable for actual amounts, plus consequential damages and costs.

      Further, certain of the companies which have tortious activities particularly Atlantic American, Roberts and Kelly, Palaxar, Paysource and Lighthouse are able to afford substantially greater damage claims.

| Collection | Minimum Amount in Controversy (in millions) |
|---|---|
| 1. Atlantic American | 10.8 |
| 2. Palaxar Group | 5.0 |
| 3. R. Roberts; D. Kelly | 5.8 |
| 4. Stratis Authority | 5.0 |
| 5. Secure Solutions | 5.2 |
| 6. R. Leib; M. O'Sullivan | 1.0 |
| 7. D. Robinson; M. Moore | 1.0 |
| 8. N. Gugliuzza | 1.0 |
| 9. Lowder | 0.5 |
| 10. Southwest Doctors; JC Svs | 1.0 |
| 11. E. Files | 0.5 |
| 12. Lake Town Wharf | 0.5 |
| 13. Tireflys; Barber | 1.0 |
| 14. Withrow Block | 0.2 |
| 15. I-3 Media/Growing Bolder | 0.5 |
| 16. Tranmere Rovers | 0.3 |
| 17. Hancock Group | 0.5 |

1

**Exhibit C**

| | |
|---|---|
| 18. Alliance; M. Mapes | 3.0 |
| 19. Jeff Reichel | 0.2 |
| 20. BCA; E. Coleman | 0.3 |
| 21. Paysource; R. Sacco | 2.0 |
| 22. National Paymaster | 1.0 |
| 23. Progressive | 1.0 |
| 24. Lighthouse; SUA Ins. Co. | 7.0 |
| 25. Lake Suites | 2.0 |
| **Total** | **56.3** |

## Professional

The following professional firms were engaged to perform audit (James Moore & Co.), provide advice on PEO licences, PEO structure and PEO regulatory compliance (Foley, Jackson, Nugent and Miller) and review corporate governance and corporate compliance (Berger).

Also, First Southern Bank performed a complete financial review for the Patriot Act and money laundering; however, the Bank seems to have been persuaded by the bank's (and Mirabilis') general counsel to soften or not reveal the finding.

We believe the PEO losses are in the range of $104 million, which is the difference between the value of the company in July 2005 by appraisal, and the ultimate selling price in May 2007. In addition, the failure to identify the risk of utilizing proceeds from the PEO's created further damages of at least $52,828,251.00.

| Professional | |
|---|---|
| 1. James Moore & Co. | Auditor |
| 2. Berger Singerman | Attorney |
| 3. Foley Lardner | Attorney |
| 4. Jackson Lewis | Attorney |
| 5. The Nugent Law Firm | Attorney |
| 6. Kunkel Miller & Hament | Attorney |
| 7. First Southern Bank | Bank |

## Directors & Officers

The directors and officers actions are for negligent operation of investment funds and PEO subsidiaries, as well as self-dealing, plus conversion. The directors and officers have $35 million of corporate error and omission insurance coverage, plus several have personal policies and several have significant net worth.

| D & O |
|---|
| 1. Mirabilis directors and officers |
| 2. AEM directors and officers |

**MIRABILIS VENTURES, INC. ACTIONS**
MANAGING COUNSEL: BALCH & BINGHAM

## POTENTIAL & PENDING CASE SUMMARIES

Mirabilis D&O

Summary: See attached.

AEM D&O

Summary: See attached.


Lighthouse / SUA

Summary:
Paul Hughes ("Hughes") was an insurance agent associated with the Risk Transfer Group. Hughes has been a part of Presidion going back to the days when the Sunshine Companies operated as PEOs. He and his company were responsible for procuring the Sunshine health care plan. Moreover, Hughes was expressly aware of the unpaid payroll "trust fund" taxes dating back to pre-Amodeo. Furthermore, Hughes assisted in developing the workers compensation prong of the PBS Plan, specifically, he was responsible for developing the portion of PBS Plan by which Presidion PEO clients would have workers comp coverage through AEM, even though AEM did not own the Presidion PEO Assets. Hughes also sought to convince the principals of AEM of the advantages of using an offshore captive for workers compensation premium deposits. However, AEM never utilized Hughes' proposed offshore captive and it was later determined that Hughes' proposed use of this captive was *per se* illegal and could be construed as income tax evasion.

Hughes further facilitated the nonpayment of taxes relevant to the Presidion PEO Assets so as to continue premium and collateral payments for AEM's workers compensation coverage of the Presidion PEO Assets. In total, between January of 2005 and December of 2006, Hughes and his company received approximately $22 million.

Potential Causes of Action:

1. Hughes WAS negligent in developing, validating and facilitating the nonpayment of payroll taxes so as to continue insurance coverage.

2. Conversion of workers compensation premiums and collateral due to the fact that AEM continued to pay claims and received little to no value for the coverage it supported.

3. Equitable Accounting of all payments made by AEM.

4. Breach of Contract (failed to comply with applicable state and federal insurance regulations).

5. Hughes and Lighthouse were the knowing recipients of monies from a potentially illegal source[1].

### RKT Constructors

Summary:
Mirabilis acquired 80% of this company on or about December 13, 2005.  At the time of purchase, the financial statements of the company were grossly misrepresented.  After acquisition, the original owners remained as officers and subsequently diverted business opportunities, materials, equipment, and labor to a new company that they formed. Furthermore, they failed to provide any consideration for same.

The officers also failed to collect outstanding expenses incurred on various projects, and there still remain significant amounts of uncollected labor and time owed to RKT. Additionally, the officers of the company intentionally refused business opportunities and contracts, thereby contributing to RKT's failure.  The underlying reasons for this was that they hoped to re-acquire the company for a price far less than they had originally sold it for.

Potential Causes of Action:

1. Negligent misrepresentation
2. Intentional misrepresentation
3. Breach of Fiduciary Duty
4. Intentional interference with business relations
5. Conversion
6. Conspiracy

### Centerpoint

Summary:
Mirabilis invested $749,629.00 and made available a $30m Line of Credit in return for a 25% equity interest in Centerpoint CS, LLC ("Centerpoint CS").  The principals of Centerpoint, LLC ("Centerpoint"), particularly Steve Zadrick ("Zadrick") and Michael Herring ("Herring") grossly misrepresented the financial condition of Centerpoint and the pipeline of business that Centerpoint had.  Moreover, Zadrick and Herring converted multiple business opportunities and resources belonging Centerpoint CS for the benefit of entities of which they wholly owned, in direct violation of the relevant Centerpoint CS agreements.  Furthermore, Zadrick failed to disclose that the first amount of funding

---

[1] Research whether insurance agent (broker) had duty to investigate source of payment in this instance.

provided by Mirabilis was actually used to complete a condominium project which was used to fund his personal legal fees owed to Richard Berman (who was given a condominium as consideration for the legal services).

Potential Causes of Action:

1. Negligent misrepresentation
2. Intentional misrepresentation
3. Breach of Fiduciary Duty
4. Intentional interference with business relations
5. Conversion
6. Conspiracy

## MVI v. SecureSolutions, LLC, et al

Summary:

Mirabilis purchased a Promissory Note which was secured by the assets of Secure Solutions, LLC ("Secure") giving Mirabilis a first position security interest in the assets of Secure. Moreover, Mirabilis made available a Line of Credit which Secure is currently in default under.

Potential Causes of Action:

1. Breach of Contract
2. Foreclosure

## Stratis Authority

Summary:

Stratis Authority, Inc. ("Stratis") was responsible for integration for all Mirabilis acquired PEOs from May 2006 through December 2006. During this time, they failed to properly integrate any of the newly acquired Mirabilis PEOs into the Mirabilis network which resulted in significant loss of profits and value of the acquired businesses.

Potential Causes of Action:

1. Negligence
2. Breach of Contract
3. Breach of Implied Duty of Good Faith and Fair Dealing

MVI v. Robert Lowder, et al

Summary:
See relevant pleadings and information previously provided and provided herewith.

Lake Town Wharf

Summary:
Mirabilis invested $450,000.00 into the project which was secured by mortgage on certain real property located in Mississippi. Thye failed to repay the investment pursuant to the terms of the agreement.

Potential Causes of Action:

1.      Foreclosure on the Mortgage


2 Wheel Tunes

Summary:
Mirabilis purchased the 2 Wheel Tunes ("2WT") from Edward M. Files ("Files") for $ payable as follows: $500,000.00 at the time of closing, $250,000.00 in January 2007 and 2008. Files remained as sole officer and operational manager of 2WT. In the process, he wasted and squandered the value and assets of the company, created intellectual property belonging to 2WT, but registered in the name of entities wholly owned by him, in violation of his agreements with Mirabilis. Moreover, he received the $250,000.00 payment in January of 2007 directly from Titanium Technologies, Inc. with knowledge that such funds were un-remitted payroll taxes owed by Presidion. Furthermore, in March 2007, Files misrepresented the purpose and use of a loan to be obtained from Blue Ridge Bank which required that Mirabilis release its first position UCC on the assets of 2WT. Subsequent thereto, Files abandoned 2WT without notifying Mirabilis in any way thereby causing 2WT to default under said loan.

Potential Causes of Action:

1.      Breach Fiduciary Duty.
2.      Negligence
3.      Conversion
4.      Misappropriation of Trade Secrets
5.      Intentional Interference with Business Relations
6.      Negligent Misrepresentation

<u>Robert Moreyra, Peter Collins, Atlantic American Capital Advisors, Moreco Partners, et al.</u>

Summary:

Robert Moreyra ("Moreyra") and Peter Collins ("Collins") were registered securities brokers hired and funded by Mirabilis. Moreyra was a party to the original planning leading to the PBS Plan, particularly using the interim unremitted payroll taxes to fund operations moving forward. Mirabilis and its affiliate, Pacific Atlantic Capital Corporation ("PACC"), entered into an agreement with Moreco Partners, LLC ("Moreco"), owned by Moreyra and Collins, to operate Coastal Equity Partners, LLC ("Coastal"), and made a capital contribution of $1.2m designated for operating expenses so as to produce and foster business. Moreco, as Managing Member, utilized such funds to capitalize projects which they received the benefit, as opposed to Mirabilis.

Additionally, Moreyra and Collins, via AACA, introduced the Bison Mortgage ("Bison") deal to Mirabilis and represented that for an $890,000 investment, Coastal would receive 87% of Bison, subject to dilution upon AACA securing additional funding for Bison. Mirabilis and PACC provided an additional $3.5m, $3m of which was to be a loan, to Bison when the additional funding could not be secured. AACA and Bison never provided the equity promised.

Potential Causes of Action:

1. Negligent misrepresentation
2. Intentional misrepresentation
3. Breach of Fiduciary Duty
4. Intentional interference with business relations
5. Conversion
6. Conspiracy


<u>David Chaviers, et al v. Mirabilis, et al</u>

Summary:

See relevant pleadings and information previously provided and provided herewith.


<u>National Paymaster:</u>

Summary:

Mike Barbee ("Barbee") and Shane Cooper ("Cooper") were officers of Siren Resources, Inc. ("Siren").  Siren was a Mirabilis affiliate responsible for all sales relevant to the Mirabilis PEOs.  Barbee and Cooper left the company in late 2006 and subsequently formed a new PEO called National Paymaster. Additionally, they took all of the Mirabilis PEO sales data and contacts with them to National Paymaster, and began soliciting business of the Mirabilis PEOs all of which was in direct violation of their employment

agreements with Common Paymaster and Mirabilis. Furthermore, Cooper was hired by Barbee at Mirabilis but Barbee failed to disclose that Cooper was Barbee's son in violation of Mirabilis' corporate policies prohibiting nepotism.

Potential Causes of Action:
  1.  Breach Fiduciary Duty.
  2.  Negligence
  3.  Conversion
  4.  Misappropriation of Trade Secrets
  5.  Intentional Interference with Business Relations
  6.  Breach of Contract


<u>AEM v. Progressive, et al</u>

Summary:
See relevant pleadings and information to be provided.


<u>Palaxar:</u>

Summary:
Palaxar, LLC was formed by the former CEO and Chairman of Mirabilis, along with the President of Nexia Strategy Corporation, a wholly owned subsidiary of Mirabilis[2], while they were still employed by Mirabilis. The business model for Palaxar is based on an anti-fraud / Sarbanes- Oxley compliance certification program for large business and financial institutions. This certification program was a staple of the work Edie Curry was tasked with while she was President of Nexia, and as evidenced by her extensive work on the Nexia certification program and accompanying patent. Mirabilis has voluminous information showing that the Nexia certification was developed by Hailstones, Holtz and Curry for the benefit of Mirabilis and, furthermore, Mirabilis paid all legal fees associated therewith. However, Mirabilis has discovered that the patent is owned by Palaxar and the individual inventors, not Mirabilis. Moreover, while employed by Mirabilis Curry and Hailstones negotiated a deal for Nexia or "Holtz" certification with Wachovia Securities for approximately $2m and immediately exited Mirabilis and, upon information and belief, closed the deal for the benefit of Palaxar

Potential Causes of Action:

  1.  Breach Fiduciary Duty.
  2.  Negligence
  3.  Conversion
  4.  Misappropriation of Trade Secrets
  5.  Intentional Interference with Business Relations

---

[2] See www.palaxar.com

Tireflys:

Summary:
As part of Mirabilis' purchase of twenty-five percent (25%) of the total equity of Tireflys, Mirabilis provided a credit facility of $500,000.00 to Tireflys. Additionally, Edie Curry negotiated a sale of this equity interest back to the original owners of Tireflys in late-2006. She failed to provide an executed promissory note or security agreement, as required by the terms of the agreement.

Causes of Action:
1. Breach of Contract (as to Loan Agreement)

Tranmere Rovers Football Club v. MVI:

Summary:
Mirabilis agreed to provide bridge financing to Tranmere Rovers Football Club ("TRFC"), until a purchase and sale agreement could be finalized. Mirabilis provided approximately $300,000.00 in loans. The purchase option of TRFC by Mirabilis was referenced in drafts of the Loan Agreement, but not present in the final agreement. Mirabilis never received the promised draft sale documents from the owner of TRFC. Mirabilis ceased funding TRFC until copies of the sale documents were tendered. TRFC has subsequently sued for breach of the loan agreement in the UK. Mirabilis is not defending the action in the UK.

i3 Media / Boomer Broadcasting:

Summary:
Mirabilis invested $1.3m into i3 Media Group, which was individually owned by Horton S. Johnson ("Woody Johnson"), the Vice-President of Business Development for Mirabilis. i3 subsequently invested $600,000.00 for the purchase of Boomer Broadcasting a/k/a Growing Bolder. The original owners of Boomer Broadcasting purchased their company back for less than $100,000.00. Mirabilis wants the fair value of its investment.

Potential Causes of Action:
1. Breach of Contract
2. Fraudulent Conveyance (as to original owners of Boomer who weren't BFPs)
3. Conspiracy to Defraud Creditors (as to all).

Withrow Block:

Summary:

Mirabilis loaned $150,000.00 as operating capital. Borrowing company has failed to repay and is in default.

Potential Causes of Action:
1. Breach of Contract

## MVI, et al v. Reichel, et al

Summary:
See relevant pleadings and information previously provided and provided herewith.

## Fox Technologies, Inc. / Axena:

Summary:
Mirabilis invested approximately $4.3m into Fox Technologies, Inc.,[3] based upon a misrepresented financial status, particularly Fox misrepresented their book of business and prospective clients upon which their pro forma was based. In return for Mirabilis' investment, Mirabilis was to receive the equivalent amount of value in Fox Series E-1 preferred stock. Mirabilis also dissolved Axena, Inc., and sold the intellectual property to Fox T in return for 3.5m in Fox Series E-1 preferred stock. Mirabilis has failed to receive any of the agreed stock, despite numerous formal requests.

Causes of Action:
1. Breach of Contract
2. Negligent Misrepresentation
3. Conversion

## Lake Suites / Hayes-Reed Development:

Summary:
Mirabilis invested approximately $2m to become a 50% partner with Hayes-Reed. In January 2006, Hayes-Reed and Mirabilis were in a dispute over who controlled the Lake Suites hotel project, and a settlement agreement was entered into whereby Mirabilis received 70% interest in the project and operational control. Subsequently, it was discovered that principals of Hayes-Reed were taking money from a corporate bank account and paying themselves. They were also caught opening separate bank accounts and not reporting it. An AmSouth police report has been created discussing the events.

Causes of Action:
1. Breach of Contract
2. Breach of Fiduciary Duty
3. Negligence

---

[3] *See* http://www.foxt.com/

4. Conversion

The Leib Group:

Summary:
Original owners misrepresented the value of the company's receivables, as Mirabilis was told that their annual billings would turn out to be roughly twice their annual salaries. In fact, from the moment that they were acquired, it was discovered that they had no revenues whatsoever. We have information that they were taking fees for themselves separately out of specific deals, they repeatedly violated the handbook on travel policies and expenses, and they were responsible for the mismanagement of the Tranmere Rovers deal. Furthermore, they failed to disclose that they would receive a substantial fee from the deal.

Potential Causes of Action:
1. Negligent Misrepresentation
2. Negligence and Breach of Fiduciary Duty for handling of Tranmere deal (also as to Leib with regard to tax advice provided to Mirabilis, as he was a former global tax partner with Arthur Anderson)

Tactical Intelligence:

Summary:
Acquired by Mirabilis. Original owners ran the company. Failed to take government contracts worth several million dollars, because work was "beneath them". They were responsible for purchase of weapons, reportedly, without permits and/or licenses. They sold the same weapons, and did not account for the proceeds. They also negligently handled the management and disposition of vehicles and, as a result, the company lost approximately $5m. Total loss to Mirabilis for investment into company of approximately $1.5m.

Potential Causes of Action:
1. Breach of Fiduciary Duty
2. Negligence
3. Conversion

Nick Gugliozza:

Summary:
He misrepresented the actual ownership interest of the acquired company, Empire Brokers (represented that he had franchise agreements with certain franchisees, when in fact he did not) and the financial acumen of Empire Brokers. Upon acquisition, Gugliozza promptly began to compete with Empire within weeks of the sale through his

spouses and relatives, of which there are competitive websites evidencing this fact. Mirabilis realized an approximate loss of $750,000.00.

Causes of Action:
1. Negligent Misrepresentation
2. Breach of Contract
3. Breach of Fiduciary Duty

Ionic Systems:

Summary:
Mirabilis purchased 80% of the company. James Vandevere owns the other 20%. Mirabilis extended a Line of Credit of $600,000.00. Vandevere controls the company and wants to purchase Mirabilis' interest. Ionic, however, is in default under LOC. Total investment of approximately $733,242.00.

Southwest Doctors / JC Services:

Summary:
See relevant pleadings and information previously provided and provided herewith.

Jackson Lewis; Ted Kazagalis, Esq.; Brian Nugent, Esq.; Michael Miller, Esq.:

Summary:
Ted Kazagalis, Esq., of Jackson Lewis, Brian Nugent and Mike Miller were all hired to advise and assist Mirabilis with licensing and regulatory compliance relevant to the PEO operations of AEM, Inc., and the other Mirabilis PEOs. Kazagalis, Nugent, and Miller were fully apprised of the Presidion/PBS tax situation and the relationship between AEM and PBS. They affirmatively stated that as long as there was tax collection reporting under separate EIN numbers, there would be no civil or criminal issues inuring to the detriment of AEM or Mirabilis.

Causes of Action:
1. Negligence
2. Breach of Fiduciary Duty

PaySource, et al v. MVI, et al:

Summary:
See relevant pleadings and information previously provided and provided herewith.

Coleman, et al v. MVI, et al:

Summary:
See relevant pleadings and information previously provided and provided herewith.

Mapes, et al v. Wellington Capital Group, Inc.:

Summary:
See relevant pleadings and information previously provided and provided herewith.

## MEMORANDUM

TO:        Aaron Bates

CC:        Kurt Thalwitzer

FROM:      Frank Amodeo

DATE:      July 24, 2007

RE:        *Causes of Action*

The actions relating to "Presidion" have been divided into seven categories:

1. Actions against directors and officers
2. Actions against professionals and advisors
3. Collection actions
4. Avoidance actions
5. Fraud actions (letter of credit)
6. Fraud actions (healthcare)
7. Accounting actions (workers comp insurance)

1. The directors and officers failed to exercise due care in management of business or they wouldn't have used worthless letters of credit or have $212,000,000.00 in unpaid taxes. These individuals have significant net worth, but without insurance probably cannot afford more than $10,000,000.00 in aggregate.

2. The professional firms listed below each knew or should have known about the letter of credit worthlessness, Aldrostar fraud, unpaid payroll taxes, income tax evasion and unfunded health claims, but never disclosed the concerns or facts even when the companies were public. It appears all are insured to some degree and several have financial or insurance to cover all $250 million in damages, plus consequential damages, costs and punitives. (Amfinity – Hendricks, Forbes 400; Mercator Group; UHY Advisors; Ernst & Young; Kirkpatrick & Lockhart; Comerica Bank)

    (a) UHY Advisors – Accountants & Auditors
    (b) Ernst & Young – Accountants & Auditors
    (c) Navigant Consulting – Consultant; PEO Expert
    (d) Hourglass – Consultant; PEO Expert
    (e) Gray Robinson – Attorney
    (f) Jackson Lewis – Attorney
    (g) Kirkpatrick & Lockhart – Attorney
    (h) Kostelanetz & Fink – Attorney
    (i) Risk Transfer – Insurance Broker

1

## Exhibit D

    (j) Jerry Mancuso Agency – Insurance Broker
    (k) Mercator Advisors – Investment Banker
    (l) Capello Capital – Investment Banker
    (m) Taurus Global – Investment Banker
    (n) Amfinity Capital – Investment Banker
    (o) Comerica Bank – Commercial Banker

3. Collection actions are for companies which owe Presidion for monies invested or lent and are easily collectable. Also, account receivables from customers exist, many of which will be uncollectible. (Numbers listed below in millions)

| | |
|---|---|
| (a) Platform One - | $0.9 |
| (b) Winpar Properties - | $3.2 |
| (c) Southcom - | $0.3 |
| (d) A/R – Customers - | $45.0 |
| | $49.4 |

4. Several insiders, creditors, seller/shareholders received significant amounts of money while aware company was insolvent and to the detriment of creditors. Each of them, except John Burcham, has significant wealth and should be collectable. Burcham has a note from Mirabilis which can be reached subject to a competing IRS claim:

| | |
|---|---|
| (a) Robert Gaines – | $8.3 |
| (b) Fred Sandlin – | $7.2 |
| (c) Kenneth Hendricks – | $5.3 |
| (d) Alex Morrero and Carlos Delgado – | $3.2 |
| *(exact split between partners is unknown) | |
| (e) John Burcham – | $6.8 |
| | $30.8 |

5. Letter of Credit fraud is being criminally prosecuted but it appears "small fish" and nonprofessionals are taking most of the blame; the solvent members and advisors seem to be avoiding liability but the existing civil and criminal judgments should form basis of collection actions against culpable creditworthy parties. (Actual damages listed below in millions)

| | |
|---|---|
| (a) Leyton, Strategic Bancorp - | $3.5 |
| (b) PDR Consulting - | $1.2 |
| (c) Spinelli, Brentwood - | $3.3 |
| | $8.0 |

6. Healthcare fraud is similar to letters of credit; judgments have been obtained and restitution ordered against individual operators, but no pursuit has been made of institutions which benefited. (Numbers listed below in millions)

| | |
|---|---|
| (a) Edwards - | $5.3 |
| (b) Sierra TPA - | $3.0 |

(c) TRG/Fidelity -          $8.0
                            $16.3

7. Several insurance brokers and companies have received significant claims and collateral payments from Presidion: these companies have not accounted for the monies nor documented claim services. Also, FCIC, Aldrostar and Risk Transfer affirmatively participated in Aldrostar fraud, which cost Presidion $26,300,000.00. (Numbers listed below in millions)

| | |
|---|---|
| (a) Unicare Health Insurance - | $0.5 |
| (b) Neighborly Health Partner - | $0.0 (uncertain) |
| (c) Mancuso Insurance Agency - | $0.5 |
| (d) Lumberman Underwriters - | $2.0 |
| (e) First Commercial Insurance - | $2.0 (plus Aldrostar) |
| (f) Aldrostar - | $26.3 |
| (g) Risk Transfer - | $0.0 (plus Aldrostar) |
| | $31.3 |

August 14, 2007

Dear Mike:

Enclosed is the revised litigation plan, which lumps the contingency cases together.  This should address several issues that were raised, including the need for broad-based release for individuals who were officers and directors.  I'll be meeting with Brian Phillips this week to work out the privity issues for the particular plaintiffs.

The D&O policies are being recovered beginning today and we will deliver them to all parties as they arrive.

I'm just back in town today and should be available tomorrow if anyone has any questions.

Thanks,
Frank

Frank Amodeo
Office: (407) 373-7440
Mobile: (407) 256-9057


Cc:  Butch Slaughter

Enclosures:
        (1) Litigation Plan (Revised)


**Exhibit E**

# Proposed Litigation Plan
*Managing Firms*



Caused more than $25 million in damages and have ability to pay
Reason for lawsuit very strong
Local co-counsel already retained
Commence with serious demand letter

| [Firm 1] | Mateer & Harbert | Latham, Shuker, et al. | Maher, Guiley & Maher |
|---|---|---|---|
| **Collection Actions** | **Collection Actions** | **Collection Actions** | **Professional Actions** |
| 1 Paysource | 1 Spinelli, Brentwood | 1 JC Services | 1 Rachlin, Cohen & Holtz |
| 2 Hancock | 2 Edwards, Sierra | 2 NACI, Gary Oksutcik | 2 Berman, Kean & Riguera |
| 3 Rajatel | 3 Leyton, Kaufman | 3 Secure Solutions | 3 Saxon, Gilmore et al. |
| 4 BCA, E. Coleman | 4 Best Transfer, CIS, Webster | | 4 Bracelwen Patterson |
| 5 Alianza | 5 Platform I | **Chapter 11** | 5 Tew Cardenas |
| 6 Atlanta Anaheim | 6 Mercato, Residences (et al.) | 4 Kennedy Funding, Inc. | 6 West Palm Properties (20) |
| 7 Palaxar | 7 Marcel or Co. | 5 Winpar Properties | |
| 8 Roberts, Kelly | 8 Taurus Capital | | **Bank Actions** |
| 9 Stratis Authority | 9 Capello Capital | | 7 Bank of America |
| 10 R. Leib, M. O'Sullivan | 10 Customer A/R | | 8 Key Bank |
| 11 D. Robinson, M. Moore | 11 PDR Consulting | | 9 Comerica |
| 12 N. Gugliuzza | 12 Amitkin Capital | | 10 First Southam |
| 13 E. Files | | | |
| 14 Lake Town Wharf | **Insurance Company Actions** | | **D&O Actions** |
| 15 Tireflys, Barber | 13 LUA | | 11 Mirabilis D&O (7.1) |
| 16 Withrow Block | 14 Unicare | | 12 AEM D&O (8) |
| 17 I-3 Media/Growing Bolder | 15 NHP | | 13 Presidion D&O (13) |
| 18 National Paymaster | 16 Mancuso Agency | | |
| | | | **Professional Actions** |
| **Insurance Company Actions** | **Pending Presidion Actions** | | 14 Lewis Model & Co. |
| 19 SUA, Unitrules | 17 Grow Credit (19) | | 15 Foley & Lardner |
| | 18 Presidion | | 16 Bomar/Stonerman |
| **Pending Actions** | 19 Joseph Rossi, Gene | | 17 Kunkel Miller, et al. |
| 20 Progressive Employer Services | 20 Accquity Corp. | | 18 Nugent Law Firm |
| 21 John Burcham | | | 19 Jackson Lewis |
| 22 Kenneth A. Hendricks, et al. | **AQMI Actions** | | 20 LeClaire Ryan |
| 23 Robert Lowder, et al. | 21 Kashala | | 21 UBS Advisors |
| 24 Sycamore Investments, LLC | | | 22 Ernst & Young |
| | **Titanium Actions** | | 23 Broad and & Lockhart |
| | 22 Thompson, Nooe | | 24 Gray Robinson |
| | | | 25 Sonnenschein & Fink |
| | **Wellington Actions** | | 26 Navigant Consulting |
| | 23 Southcom | | 27 Hourglass Consulting |

DRAFT



**Proposed Litigation Plan (DRAFT)**

| Client / Grouping | Managing Firm | Managing Attorney(s) | Trial Firm | Trial Lawyer(s) | Address | Office | Fax | E-mail | Website Address | Actual Damages (Est.) | Consequential, Punitive Damages, etc. | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AEM Strategy Corporation / Quantum Technologies, Inc. | Goldberg Bates, PLLC | Aaron C. Bates | | | 3660 Maguire Boulevard, Suite 102, Orlando, FL 32803 / 3660 Maguire Boulevard, Suite 102, Orlando, FL 32803 | (407) 893-3776 | (407) 893-3779 | abates@goldbergbates.com | | | | |
| | | Scott M. Goldberg | | | 3660 Maguire Boulevard, Suite 102, Orlando, FL 32803 | (407) 893-3776 | (407) 893-3779 | sgoldberg@goldbergbates.com | | | | |
| Mirabilis Ventures, Inc. | Bates & Bingham, LLP | Eric B. Langley | | J. Russ Campbell | 1710 Sixth Avenue North, Birmingham, AL 35203-2014 / 1710 Sixth Avenue North, Birmingham, AL 35203-2014 | (205) 226-8772 / (205) 226-3435 | (205) 488-5690 / (205) 488-5559 | elangley@bsfllp.com / rcampbell@babc.com | www.bsfllp.com / www.babc.com | | | |
| President / Wellington | Mateer & Harbert, P.A. | Kurt E. Thalwitzer | | | 225 E. Robinson Street, Suite 600, Orlando, FL 32801 | (407) 425-9044 | (407) 423-3016 | kthalwitzer@mateerharbert.com | www.mateerharbert.com | | | |
| Department of Justice | Leventhal & Slaughter, P.A. | Butch Slaughter | | | 111 N. Orange Ave., Suite 700, Orlando, FL 32801 | (407) 849-0300 | (407) 843-3738 | bslaughter@slaughterlaw.com | | | | |
| Internal Revenue Service | A. Brian Phillips, P.A. | A. Brian Phillips | | | 200 E. Robinson Street, Suite 2170, Orlando, FL 32801 | (407) 872-0777 | (407) 872-0704 | brian.phillips@phillips-lawfirm.com | | | | |
| Bankruptcy Matters | Latham, Shuker, et al. | Elizabeth E. Green | | | 390 N. Orange Ave, Suite 600, Orlando, FL 32801 | (407) 481-5800 | (407) 481-5801 | egreen@lseblaw.com | www.lseblaw.com | | | |
| Professional Malpractice | Maher, Guiley & Maher, P.A. | Michael Maher | | | 631 West Morse Boulevard, 200, Winter Park, FL 32789 | (407) 839-0866 | (407) 425-7905 | www.maherlawfirm.com | www.maherlawfirm.com | | | |
| Brachin v. Mirabilis Ventures, Inc. ... Broward County, FL | Goldberg Bates, PLLC | Aaron C. Bates | | | 3660 Maguire Boulevard, Suite 102, Orlando, FL 32803 | (407) 893-3776 | (407) 893-3779 | abates@goldbergbates.com | | | | |
| (and North Orange Lessees, LLC v. Nexia Executive Offices Corp., et al.) ... Orange County, FL | Goldberg Bates, PLLC | Scott M. Goldberg | | | 3660 Maguire Boulevard, Suite 102, Orlando, FL 32803 | (407) 893-3776 | (407) 893-3779 | sgoldberg@goldbergbates.com | | | | |
| Palaxar ... v. Nexia Ventures, Inc. and Frank Hailstones, et al. (Middletown District of Alabama) | Balch & Bingham, LLP | Charles Burkhart | | | 1710 Sixth Avenue North, Birmingham, AL 35203-2014 | | | sburkhart@bcch.com | www.bcch.com | | | |
| Womack v. Brachin Ventures, Inc. ... Hunter County, PA | Brown, Stone, Nimeroff, LLC | Jam B. Nimeroff | | | 1515 Market Street, Suite 1200, Philadelphia, PA 19103 | (267) 861-5330 | (267) 350-9050 | jnimeroff@sjnlawfirm.com | www.brownstonenimeroff.com | | | |

Proposed Litigation Plan v3 xls

**Exhibit F**

| Case / Matter | Trial Firm | Trial Lawyer(s) | Address | Office | Fax | E-mail Address | Website Address | Website Address | Website Address |
|---|---|---|---|---|---|---|---|---|---|
| Guarantee Insurance Co. v. Workers Temporary Staffing, Inc. (Seminole County, FL) | The Levine Law Group | Jose Pagan<br><br>A. Kenneth Levine | 1815 Village Square Blvd., Suite 7, Tallahassee, FL 32309<br>1013 Vintage Square Drive, Suite 7, Tallahassee, FL 32309 | (850) 841-7770<br>(850) 641-7770 | (850) 841-7778<br>(850) 641-7778 | jpagan@kennethlevine.net<br>klevine@kennethlevine.net | www.kennethlevine.net<br>www.kennethlevine.net | | |
| Cannelli A. Hendricks, et al. v. Hirata's Ventures, Inc., et al. (Toledo District of Florida) | Goldberg Bates, PLLC | Aaron C. Bates | 3800 Maguire Boulevard, Suite 102, Orlando, FL 32803 | (407) 893-3776 | (407) 893-3779 | abates@goldbergbates.com | | | |
| Kennedy Funding, Inc. v. Palm Baths Guild Trust, et al. (Osceola County, FL) | Goldberg Bates, PLLC | Aaron C. Bates | 3800 Maguire Boulevard, Suite 102, Orlando, FL 32803 | (407) 893-3776 | (407) 893-3779 | abates@goldbergbates.com | | | |
| Liberty Property Limited Partnership v. Hirata's Ventures, Inc., et al. (Duval County, FL) | Goldberg Bates, PLLC | Aaron C. Bates | 3800 Maguire Boulevard, Suite 102, Orlando, FL 32803 | (407) 893-3776 | (407) 893-3779 | abates@goldbergbates.com | | | |
| Corina Murphy, et al. v. Wessington Capital Group, Inc. (US District Court, NE) | Gross & Welch, P.C., L.L.O. | Elizabeth E. Green | 1500 Omaha Tower, Suite 500, 1.Fld St., Omaha, NE 68124 | (407) 481-5800 | (407) 481-5801 | egreen@lseitlaw.com | | | |
| Hirata's Ventures, Inc. v. A.L. Services, Inc., et al. (Middle District, FL) | Latham, Shuker, et al. | Elizabeth E. Green | 390 N. Orange Ave., Suite 600, Orlando, FL 32801 | (407) 481-5800 | (407) 481-5801 | egreen@lseitlaw.com | | | |
| Hirata's Ventures, Inc. v. Robert Thornton, et al. (Osceola County, FL) | Goldberg Bates, PLLC | Aaron C. Bates | 3800 Maguire Boulevard, Suite 102, Orlando, FL 32803 | (407) 893-3776 | (407) 893-3779 | abates@goldbergbates.com | | | |
| Hirata's Ventures, Inc. v. Jeffrey Michel (Broward County, FL) | Goldberg Bates, PLLC | Aaron C. Bates | 3800 Maguire Boulevard, Suite 102, Orlando, FL 32803 | (407) 893-3776 | (407) 893-3779 | abates@goldbergbates.com | | | |
| HIRATA VENTURE, INC. v. SIMON (Hirata's Ventures, Inc., et al.) (Orange County, FL) | Bieser, Greer & Landis, LLP | Joseph C. Oehlers | 400 National City Center, 6 N. Main St., Dayton, OH 45402 | (937) 223-3277 | (937) 223-6339 | jco@bgllaw.com | | | |
| Cornerstone Investments, L.L.C., et al. v. Hirata's Ventures, Inc., et al. (eMaxX County, FL) | | Scott Becker | | | | | | | |
| Plymouth, Inc. & Bob Swisher v. Hirata's Ventures, Inc., et al. (US District Court, SD Ohio) | | | | | | | | | |
| Christmere Bowers Football Club v. Hirata's Ventures, Inc. (Broward County, FL) | Goldberg Bates, PLLC | Aaron C. Bates | 3800 Maguire Boulevard, Suite 102, Orlando, FL 32803 | (407) 893-3776 | (407) 893-3779 | abates@goldbergbates.com | | | |
| Transition Corporation v. Arrow Creek, LLC, James DeRosa and Colin Watson (Palm Beach County, FL) | | | | | | | | | |

| Case / Matter | Trial Firm | Trial Lawyer(s) | Address | Office | Fax | Email Address | Website Address | Mailing Address | Mailing Address | Mailing Address |
|---|---|---|---|---|---|---|---|---|---|---|
| "PLM" v. Brasilia O & O | Baton & Bingham, LLP | Eric B. Langley | 1710 Sixth Avenue North, Birmingham, AL 35203-2014 1710 Sixth Avenue North, Birmingham, AL 35203-2014 | (205) 226-8772 | (205) 488-5690 | elangley@babn.com | www.babn.com | | | |
| | | J. Russ Campbell | | (205) 226-3438 | (205) 488-5859 | rcampbell@babn.com | www.babn.com | | | |
| "PLM" v. ABN O & O | Baton & Bingham, LLP | Eric B. Langley | 1710 Sixth Avenue North, Birmingham, AL 35203-2014 | (205) 226-8772 | (205) 488-5690 | elangley@babn.com | www.babn.com | | | |
| | | J. Russ Campbell | 1710 Sixth Avenue North, Birmingham, AL 35203-2014 | (205) 226-3438 | (205) 488-5859 | rcampbell@babn.com | www.babn.com | | | |
| "PLM" v. Preston O & O | Maher & Harbert, P.A. | Kurt E. Thalwitzer | 225 E. Robinson Street, Suite 600, Orlando, FL 32801 | (407) 425-9044 | (407) 423-2016 | kthalwitzer@maherlawfirm.com | www.maherlawfirm.com | | | |
| "PLM" v. Richard L. Bertram, Bertram & Bigness, P.A. | Maher, Gudley & Maher, P.A. | Michael Maher | 631 West Morse Boulevard, Suite 200, Winter Park, FL 32789 | (407) 839-0866 | (407) 425-7906 | mmaher@maherlawfirm.com | www.maherlawfirm.com | | | |
| "PLM" v. Laura Hintz, Hubner, Cross & Thatz, LLP | Maher, Gudley & Maher, P.A. | Michael Maher | 631 West Morse Boulevard, Suite 200, Winter Park, FL 32789 | (407) 839-0866 | (407) 425-7906 | mmaher@maherlawfirm.com | www.maherlawfirm.com | | | |
| "PLM" v. Jay Haight, James Moore & Company | Baton & Bingham, LLP | Eric B. Langley | 1710 Sixth Avenue North, Birmingham, AL 35203-2014 | (205) 226-8772 | (205) 488-5690 | elangley@babn.com | www.babn.com | | | |
| | | J. Russ Campbell | 1710 Sixth Avenue North, Birmingham, AL 35203-2014 | (205) 226-3438 | (205) 488-5859 | rcampbell@babn.com | www.babn.com | | | |
| "PLM" v. Michael Maher, et al., Burbonen Espinosa | Maher & Harbert, P.A. | Kurt E. Thalwitzer | 225 E. Robinson Street, Suite 600, Orlando, FL 32801 | (407) 425-9044 | (407) 423-2016 | kthalwitzer@maherlawfirm.com | www.maherlawfirm.com | | | |
| "PLM" v. Premiere Professionals (Plaintiffs) | Baton & Bingham, LLP | Eric B. Langley | 1710 Sixth Avenue North, Birmingham, AL 35203-2014 | (205) 226-8772 | (205) 488-5690 | elangley@babn.com | www.babn.com | | | |
| "PLM" v. Beszinn Professionals (Advisors) | | J. Russ Campbell | 1710 Sixth Avenue North, Birmingham, AL 35203-2014 | (205) 226-3438 | (205) 488-5859 | rcampbell@babn.com | www.babn.com | | | |
| "PLM" v. AICA Banson, etc. | Baton & Bingham, LLP | Eric B. Langley | 1710 Sixth Avenue North, Birmingham, AL 35203-2014 | (205) 226-8772 | (205) 488-5690 | elangley@babn.com | www.babn.com | | | |
| | | J. Russ Campbell | 1710 Sixth Avenue North, Birmingham, AL 35203-2014 | (205) 226-3438 | (205) 488-5859 | rcampbell@babn.com | www.babn.com | | | |
| "PLM" v. Present, Avny, Rastoksva | Baton & Bingham, LLP | Eric B. Langley | 1710 Sixth Avenue North, Birmingham, AL 35203-2014 | (205) 226-8772 | (205) 488-5690 | elangley@babn.com | www.babn.com | | | |
| | | J. Russ Campbell | 1710 Sixth Avenue North, Birmingham, AL 35203-2014 | (205) 226-3438 | (205) 488-5859 | rcampbell@babn.com | www.babn.com | | | |
| "PLM" v. Kapaolova, Baton, Vayser, | Baton & Bingham, LLP | Eric B. Langley | 1710 Sixth Avenue North, Birmingham, AL 35203-2014 | (205) 226-8772 | (205) 488-5690 | elangley@babn.com | www.babn.com | | | |
| | | J. Russ Campbell | 1710 Sixth Avenue North, Birmingham, AL 35203-2014 | (205) 226-3438 | (205) 488-5859 | rcampbell@babn.com | www.babn.com | | | |
| "PLM" v. Secured Solutions | Baton & Bingham, LLP | Eric B. Langley | 1710 Sixth Avenue North, Birmingham, AL 35203-2014 | (205) 226-8772 | (205) 488-5690 | elangley@babn.com | www.babn.com | | | |
| | | J. Russ Campbell | 1710 Sixth Avenue North, Birmingham, AL 35203-2014 | (205) 226-3438 | (205) 488-5859 | rcampbell@babn.com | www.babn.com | | | |

| Case / Matter | Trial Firm | Trial Lawyer(s) | Address | Office | Fax | E-mail Address | Website Address | Website Address | Website Address |
|---|---|---|---|---|---|---|---|---|---|
| "TLA" v. Swartz Authority | Balch & Bingham, LLP | Eric B. Langley | 1710 Sixth Avenue North, Birmingham, AL 35203-2014 | (205) 226-8772 | (205) 488-5690 | elangley@balch.com | www.balch.com | | |
| | | J. Russ Campbell | 1710 Sixth Avenue North, Birmingham, AL 35203-2014 | (205) 226-3438 | (205) 488-5859 | rcampbell@balch.com | www.balch.com | | |
| "TLA" v. Risk Transfer / FDIC, Advocate | Mateer & Harbert, P.A. | Kurt E. Thalwitzer | 225 E. Robinson Street, Suite 600, Orlando, FL 32801 | (407) 425-9044 | (407) 423-2016 | kthalwitzer@mateerharbert.com | www.mateerharbert.com | | |
| "TLA" v. Lighthouse, SMA, Hughes | Balch & Bingham, LLP | Eric B. Langley | 1710 Sixth Avenue North, Birmingham, AL 35203-2014 | (205) 226-8772 | (205) 488-5690 | elangley@balch.com | www.balch.com | | |
| | | J. Russ Campbell | 1710 Sixth Avenue North, Birmingham, AL 35203-2014 | (205) 226-3438 | (205) 488-5859 | rcampbell@balch.com | www.balch.com | | |
| "TLA" v. Roberts, Kelly, Dansby | Balch & Bingham, LLP | Eric B. Langley | 1710 Sixth Avenue North, Birmingham, AL 35203-2014 | (205) 226-8772 | (205) 488-5690 | elangley@balch.com | www.balch.com | | |
| | | J. Russ Campbell | 1710 Sixth Avenue North, Birmingham, AL 35203-2014 | (205) 226-3438 | (205) 488-5859 | rcampbell@balch.com | www.balch.com | | |
| "TLA" v. Platform I, Norton | Mateer & Harbert, P.A. | Kurt E. Thalwitzer | 225 E. Robinson Street, Suite 600, Orlando, FL 32801 | (407) 425-9044 | (407) 423-2016 | kthalwitzer@mateerharbert.com | www.mateerharbert.com | | |
| "TLA" v. Thompson, Rose | Mateer & Harbert, P.A. | Kurt E. Thalwitzer | 225 E. Robinson Street, Suite 600, Orlando, FL 32801 | (407) 425-9044 | (407) 423-2016 | kthalwitzer@mateerharbert.com | www.mateerharbert.com | | |
| "TLA" v. Kashela, UREC | Mateer & Harbert, P.A. | Kurt E. Thalwitzer | 225 E. Robinson Street, Suite 600, Orlando, FL 32801 | (407) 425-9044 | (407) 423-2016 | kthalwitzer@mateerharbert.com | www.mateerharbert.com | | |
| ...terance v. Paradyme, Inc., d/b/a Litigation Solutions VI | | | | | | | | | |
| Joseph Ronald Piepo v. United Tennessees of Southwest Florida, Inc. ... Findley Lightout and Preston ...ations, Inc. | | | | | | | | | |
| ...curity Corp f/k/a Diversified ... corporation v. Ameristar Group, LLC, | | | | | | | | | |

## MEMORANDUM

TO:       Michael Maher

CC:       Butch Slaughter

FROM:     Frank Amodeo

DATE:     August 15, 2007

RE:       Simple and Salient Timetable in Reference to the D&O Policies



1. On August 1, 2005 AEM became contractually bound to manage the Solutions' PEO's.

2. Practically, such change in management did not occur until January 1, 2006; even then the bank accounts remained in the control of Vanderburg and Schumacher, but most other functions were in AEM control including customer and vendor relations; specifically customer billing.

3. By May 1, 2006 all functions had been transferred to AEM; even though AEM on paper rescinded the contract on May 9, 2006. In fact, AEM retained complete control of the entire process from billing customers to reporting to appropriate government agencies.

4. AEM failed to properly report to government agencies as well as failed to properly make appropriate tax deposits.

## Aaron Bates

| | |
|---|---|
| **From:** | Campbell, Russ [rcampbell@balch.com] |
| **Sent:** | Thursday, August 30, 2007 6:01 PM |
| **To:** | Aaron Bates |
| **Subject:** | RE: Touching Base... |

I am finally back in the office, here are the bullet points I set forth in our meeting:

- I did it, it was my plan and I now know it was wrong.
- While it is not an excuse, there is a reason. I got bad advice.
- I am ultimately responsible, however, and I accept that responsibility.
- I am working to be sure there is no victim, I am working to be sure the government is paid.
- I will, however, go after those that help put me in this situation.

That is very rough, but I think it covers the basic core points to a press response. Talk to you soon.

**From:** Aaron Bates [mailto:ABates@goldbergbates.com]
**Sent:** Monday, August 27, 2007 3:42 PM
**To:** Campbell, Russ
**Subject:** Touching Base...

Russ:

Frank asked that I touch base on a few quick issues with you specifically. One, the 4 sentence summarization of the case relevant to Frank that you made during the meetings, Frank asked for that. Second, he'd like the best number to reach you so as to discuss some of the press issues, namely he was seeking recommendations as to a national press person (we have a Florida press firm). Also, he asked me to pass along his cell, as the number I believe you received was a number for one his attorneys, not his. His # is (407) 256-9057. Thanks and let me know if anything's needed on your end.

Aaron C. Bates, Esq.
Goldberg Bates, PLLC
3660 Maguire Boulevard, Suite 102
Orlando, FL 32803
O: (407) 893-3776 ext. 2211
F: (407) 893-3779
abates@goldbergbates.com

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

This e-mail message, including attachments, if any, is intended only for the person to whom, or entity to which, it is addressed and may contain CONFIDENTIAL and/or PRIVILEGED material. Any

 **Exhibit G**

## RETAINER AGREEMENT

This Agreement sets forth the terms and conditions under which Maher, Guiley and Maher, P.A. (MG&M) and Harrison T. Slaughter, Esq. (HTS) will provide certain legal services to the following entities: (1) Professional Benefits Solutions, Inc., a/k/a Presidion Solutions VII, Inc., a Florida corporation; (2) Paradyme, Inc., a Florida corporation. (Collectively referred to as ("CLIENTS")). Prior to bringing any action for professional and/or legal malpractice, MG&M and HTS are obligated under the Rules regulating the Florida Bar, to make an independent assessment and judgment as to the viability of such claims. Therefore, before a lawsuit is filed on your behalf, MG&M and HTS will make an independent evaluation of the claim(s) and may choose not to participate in the lawsuit for any reason they see fit. Should MG&M and/or HTS choose to do so, there will be no obligation between the CLIENTS and the withdrawing law firms.

### TYPE OF CASE

You have hired Maher, Guiley and Maher, P. A. and Harrison T. Slaughter, Esq. to be your attorneys during the initial investigation and, if we recommend proceeding, prosecution of only the following claims: (1) liability of directors and officers employed by Mirabilis Ventures, Inc. and AEM, Inc. (directors and officers liability referred to as "MALPRACTICE").

### MG&M AND HTS EVALUATION

Before we can recommend proceeding to prosecute your potential MALPRACTICE claim(s) we must conduct an evaluation. This evaluation will include, among other things, an assessment of the merit of these matters as well as the economic risks and rewards of MG&M and HTS representing the CLIENTS in these matters. Our representation of the CLIENTS is contingent upon a favorable outcome of this evaluation. This strategy may include a combination of writing demand letters and/or litigation. This Agreement does not, however, obligate MG&M and HTS to file suit or negotiate with any other potential individual or entity who may also be responsible for causing damage(s) to the CLIENTS.

If MG&M and/or HTS recommend not going forward to prosecute the CLIENTS' potential MALPRACTICE claim(s), then this Agreement shall become null and void, with no obligation to the CLIENTS to pay MG&M and HTS for any attorney fees.

### REPRESENTATIONS AND WARRANTIES

The CLIENTS represent that they have the full right and authority to enter into this Agreement for legal services for both the individual client and the additional entities as listed under paragraph one.

## Exhibit H

Our experience leads us to believe that speedy decisions are often critical. The window to reach a good settlement is sometimes quite narrow. Given that prompt decisions will be needed, we expect that one person will be our primary contact. That person will be required to actively assist us in day-to-day decision-making by being available for consultation and approval of our recommendations. Timely decisions regarding settlement and other issues are essential and any failure to cooperate could be prejudicial to the CLIENTS' interests.

We have not agreed (and this Agreement does not require us) to represent you in prosecuting or defending any other separate claims or counterclaims that might be brought by any other individual or entity (such as civil or criminal lawsuits for failure to pay taxes to the IRS) regardless of their relationship to the MALPRACTICE claims against the two entities listed above.

## SCOPE OF REPRESENTATION

Except as may otherwise be provided in a separate written agreement, you have not hired MG&M and HTS to act as your attorneys in connection with any other matter, including other claims that could be brought against you as well as other claims that you may have, unrelated to the MALPRACTICE claims listed above. You have the right to end our Agreement at anytime, but if you do so, you may owe us money for time accrued and expenses incurred for which no bill had previously been generated. A further explanation is set forth below.

## LENGTH, EXPENSE AND DIFFICULTY

Under the terms of this Agreement, MG&M and HTS may file one or more legal and/or professional malpractice suits. You understand that malpractice cases often involve extremely difficult problems and sometimes take protracted time frames to resolve thru settlement and/or trial. Therefore, MG&M and HTS make no guarantee that there will be a successful result in any such litigation. Furthermore, legal and professional malpractice cases are often expensive to litigate. Because of the complexity and nature of legal and professional litigation in general, and your subject matter in particular, the out-of-pocket expenses to litigate claims will most likely be in excess of two hundred fifty thousand dollars. The CLIENTS shall be responsible for out-of-pocket expenses as hereinafter set forth in this Agreement.

## COMMUNICATIONS

We will keep you informed of developments and we will send you copies of all letters and all court papers to keep you informed of the progress of your case. We will tell you in advance when you have important decisions to make and will explain the legal issues involved. You have agreed to give us your full cooperation as we investigate and handle your case.

## LEGAL FEES

You shall pay MG&M and HTS for our services a contingent fee as follows:

a.   45% of the Total Recovery.  This includes any amount obtained before or after filing suit.

b.   An additional 5% of any recovery if my attorneys are required to pursue a bad faith claim against any defendant through additional legal matters.

c.   An additional 5% of any recovery after notice of appeal is filed or post judgment legal action is required for recovery on the judgment.

*Fees are to be divided 80% to MG&M and 20% to HTS.

The term "Total Recovery" shall mean all payments, sums, or anything of value (including cash, stock, stock options, warrants, stock appreciation rights, or any other form of non-cash payment) received by the CLIENTS as a result of any claim, demand, negotiation, license, assignment, settlement or lawsuit regarding the MALPRACTICE claims.  The term "Total Recovery" includes, without limitation, past damages, future damages, royalties and all related forms of compensation and, in addition, includes any amounts recovered as interest, costs and disbursements, attorneys' fees, enhanced damages, treble damages or punitive damages. Nothing is to be subtracted in determining the amount of the Total Recovery.

If any claim, demand or suit against anyone within the scope of this Agreement is settled by an agreement that calls for an initial payment and/or payments over a period of time, MG&M and HTS's fees, as calculated above, shall be paid out of each payment as it is received. All such payments shall be made in trust to MG&M as set forth below.

All settlement proceeds or other form of Total Recovery shall be made to MG&M, in trust and, if possible, be in the form of a check or wire transfer payment made payable to "Maher, Guiley and Maher, P .A., in Trust for Professional Benefits Solutions, Inc., a/k/a Presidion Solutions VII, Inc.and/or Paradyme, Inc. Upon receipt by MG&M, all settlement proceeds or other forms of Total Recovery will be deposited in MG&M's trust account and will be accounted for and disbursed in accordance with this Agreement to MG&M, HTS and the Trust created for the sole purpose of collecting and distributing the net proceeds (after payment of attorney fees and costs) to meet any and all United States governmental obligations of unpaid trust funds and other payroll tax obligations of the CLIENTS.

Further, you hereby grant a lien to us on any and all such recovery in order to protect our right to such funds as the source of satisfaction of our costs and fees.

## COST AND EXPENSES

MG&M and HTS must pay out-of-pocket expenses to handle the matters encompassed by this Agreement. It is difficult for MG&M and HTS to accurately predict the amount and type of expenses we will have to incur to handle the matters encompassed by this Agreement. While MG&M

and HTS will endeavor to minimize costs and expenses and to incur only such costs and expenses as are reasonably necessary, the CLIENTS acknowledge that in matters of the nature encompassed by this Agreement, the expenses can be, and often are, substantial. These out-of-pocket costs and expenses include, but are not limited to the following: court filing fees; local counsel attorney fees and expenses; court reporter fees and expenses for depositions, including video depositions, hearings, trial and otherwise; traveling and lodging expenses, including, airfare, car rental, parking, hotels, and food; consultant fees and expenses; expert witness fees and expenses; translator and translation fees and expenses, special master fees and expenses; computer service fees; charges for telephone, postage and photocopying; charges for business records; and expenses incurred in the production, copying, and management of documents, including computer storage of documents.

Furthermore, other costs and expenses include litigation support services, which include, among other things, the following: computer document and database implementation and support; visual exhibit preparation and graphics services; focus group services; courtroom logistical support; and trial consulting services. These services are available from outside vendors and are considered out-of-pocket expenses. MG&M and HTS has, however, brought many of these services in-house. If MG&M and HTS uses in-house personnel to provide these services they will be billed as an expense, just as they would be if provided by an outside vendor. MG&M and HTS's rates for these services varies from $50 to $200 per hour. By signing this agreement you consent to having MG&M and HTS provide these services with in-house personnel. Utilization of client resources will be maximized before incurring additional expenses.

Therefore, the CLIENTS shall advance MG&M and HTS funds to cover costs and expenses. The CLIENTS agree to pay MG&M and HTS a minimum REFUNDABLE RETAINER of $100,000.00 to apply toward future costs and expenses. The CLIENTS also agree to periodically advance additional funds in the future as dictated by the costs and expenses incurred. Once the balance of the retainer drops below $10,000.00 the CLIENTS will be expected to replenish the retainer to carry a balance of $100,000.00. At the conclusion of this matter, MG&M and HTS shall reimburse the remaining balance of the retainer to the CLIENTS. Additionally, should there be a recovery, the CLIENTS will be refunded the amounts advanced for costs and expenses as the total recovery allows. If there is no recovery then the MG&M and HTS are under no obligation to reimburse the CLIENTS for their advancements of the retainer.

MG&M and HTS will bill monthly for costs and expenses. The CLIENTS give the right to MG&M and HTS to withdraw money from the CLIENT'S trust account, to pay MG&M and HTS for actual costs and expenses paid by MG&M and HTS. Invoices will show all costs and expenses incurred as well as any remaining credits or money remaining on account. MG&M and HTS shall track expenses by file or matter with each target Defendant generally having a unique matter or file number. Exceptions to this general rule include lawsuits that name more than one defendant. In addition, some expenses will not be specific to any particular target; these expenses will be accounted for in a general file for the prosecution of the MALPRACTICE claims.

The CLIENTS must send in writing, by certified mail, any objections to any invoice within 30 days of the date on the invoice to MG&M and HTS. Failure to file a written objection will be deemed as a waiver of any and all objections to that invoice.



## WITHDRAWAL

MG&M and HTS cannot recommend that the CLIENTS initiate a lawsuit on any matter encompassed by this Agreement until MG&M and HTS complete the investigation of the matters. The CLIENTS personnel will give their full cooperation as may be reasonably necessary to MG&M and HTS as we investigate and handle any matter encompassed by this Agreement. This cooperation includes meeting with MG&M and HTS personnel as may be reasonably required and providing all relevant documents and information to MG&M and HTS. MG&M and HTS may discover facts during the investigation of a matter encompassed by this Agreement that may lead us to recommend that the CLIENTS not initiate a lawsuit. Even after a lawsuit is filed, MG&M and HTS may discover facts that may lead us to recommend that the CLIENTS dismiss the lawsuit or that the CLIENTS hire other lawyers to handle the matter. The CLIENTS therefore agree that MG&M and HTS may withdraw from any matter encompassed by this Agreement anytime MG&M and HTS recommend that the CLIENTS should terminate a lawsuit or that the CLIENTS should hire other lawyers to handle a matter encompassed by this Agreement.

The CLIENTS also agree that MG&M and HTS may withdraw from any matter encompassed by this Agreement if the CLIENTS do not cooperate in the investigation or handling of the matter. Such non-cooperation shall include, but is not limited to, failure to meet with MG&M and HTS personnel us is reasonably required for MG&M and HTS to handle the matter, and failure to provide to MG&M and HTS all relevant and accurate information and documents concerning the matter. In these circumstances, notwithstanding any other provision of this Agreement, the CLIENTS agree to pay MG&M and HTS for the reasonable value of our services and to reimburse MG&M and HTS for any outstanding expenses incurred in handling the matters. If MG&M and HTS intend to rely on the provisions of this paragraph, we shall first give the CLIENTS written notice detailing the lack of cooperation and allow the CLIENTS thirty (30) days to cure.

If MG&M and HTS decide to withdraw from representing the CLIENTS in any matter encompassed by this Agreement, MG&M and HTS will try to protect the interests of the CLIENTS to the extent reasonably possible by giving the CLIENTS reasonable notice. allowing the CLIENTS time to obtain other lawyers, and giving the CLIENTS any papers and property in our possession which belong to the CLIENTS. MG&M and HTS have no duty to find other lawyers for the CLIENTS in the event we withdraw from any matter.

MG&M and HTS also have the right to resign as your lawyers if the Rules of Professional Conduct which apply to lawyers permit or require us to resign. However, we agree not to stop working on your case or to resign as your attorney without first writing you and allowing you time to hire another lawyer, and giving you all of your papers and property which we are holding. MG&M and HTS have no duty to find you other lawyers if we resign from your case.

If MG&M and/or HTS withdraw because of non-cooperation by the CLIENTS. then the CLIENTS agree to pay MG&M and/or HTS for the reasonable value of our services and to reimburse MG&M and/or HTS for any outstanding out-of-pocket expenses that were incurred in handling the matter.

## RIGHT TO DISCHARGE MG&M AND/OR HTS

The CLIENTS, MG&M and HTS acknowledge that the CLIENTS have the right to fire MG&M and/or HTS at anytime, even for no reason. If the CLIENTS fire MG&M and/or HTS, the CLIENTS will have to pay for the reasonable value of MG&M and/or HTS's services and pay for any outstanding expenses. The reasonable value of MG&M and/or HTS's services under this paragraph shall not necessarily be limited to the billing value of the time MG&M and/or HTS incurred in handling the matter but rather an amount that takes into account the risks assumed by MG&M and/or HTS pursuant to this Agreement and, among other things, the following:

(1)     The amount of time invested in the case;
(2)     The responsibility assumed;
(3)     The magnitude and proportion of funds invested;
(4)     The results obtained;
(5)     The fees customarily charged for similar services;
(6)     The experience, reputation, and ability of counsel;
(7)     The expectations created by the fee arrangement;
(8)     The circumstances under which the services were rendered;
(9)     The nature and difficulty of the proposition involved;
(10)    The viability of the claim at the time of termination;
(11)    The limitation on or preclusion of other employment;
(12)    The amount of recovery realized; and,
(13)    The nature and circumstances of the termination.

Notwithstanding the foregoing, if the CLIENTS terminate MG&M and/or HTS after a settlement is reached or verdict, award, or judgment is rendered, obtained, or received in favor of the CLIENTS from a defendant, then the compensation due MG&M and/or HTS with respect to that defendant shall be computed just as if the settlement, verdict, award, or judgment had actually been collected in full by MG&M and HTS on behalf of the CLIENTS.

## STAFFING

Given the complexity and magnitude of the matters encompassed by this Agreement, MG&M and HTS will necessarily staff these matters with a number of attorneys and support personnel. The attorneys and support personnel working on these matters encompassed by this Agreement may change from time to time. It is within the sole discretion of MG&M and HTS as to what attorneys and staff work on the matters encompassed by this Agreement.

## MG&M and HTS'S AUTHORITY TO ADD ADDITIONAL LAW-FIRMS

It is contemplated that MG&M and HTS may involve other law firms for the representation of the CLIENTS in this matter. In the event another law firm is brought into represent the CLIENTS, all parties shall execute an amendment to this retainer agreement. By signing below, the CLIENTS understand and consent to allow additional legal counsel to be brought in should MG&M and HTS recommend it. Furthermore, if MG&M and HTS engage additional law firms, the amount of the



contingency fee, as stated above, shall not increase. MG&M and HTS shall share the contingency fee if it chooses to involve additional law firms.

## SEVERABILITY

In case any of the provisions contained in this Agreement shall be held to be invalid or unenforceable, in any respect, such invalidity or unenforceability shall not affect any such other provisions hereof, but this Agreement shall be construed as if such invalid or unenforceable provisions had never been contained herein.

## WHAT THIS AGREEMENT COVERS

This Agreement states the entire agreement between the CLIENTS, MG&M and HTS, and takes the place of any prior oral or written agreements. This Agreement is entered into within the State of Florida and is to be interpreted in accordance with the laws of the State of Florida. In addition, any disputes arising from or related to this agreement may only be resolved by courts located in Florida. The terms of this Agreement may only be changed by a separate written agreement signed and dated by the CLIENTS, MG&M and HTS.

Except as provided in other written agreements, MG&M and HTS only represent the CLIENTS in the matters encompassed by this Agreement. MG&M and HTS have no duty to represent the CLIENTS in any matters other than the matters described in this Agreement. If any related matters arise out of the relationship between MG&M, HTS and the CLIENTS, the CLIENTS are not obligated to retain MG&M and HTS in the related matter, nor is MG&M and HTS obligated to represent the CLIENTS. Furthermore, MG&M, HTS and the CLIENTS may agree to different terms of representation (including a different percentage of Total Recovery as a contingency) in any other matter MG&M and HTS may undertake for the CLIENTS.

THE UNDERSIGNED ACKNOWLEDGE THAT THEY HAVE RECEIVED, READ, AND UNDERSTAND THE ATTACHED STATEMENT OF CLIENT'S RIGHTS.

DATED this _11th_ day of _FEBRUARY_ , 2008.

MAHER, GUILEY and MAHER, P.A.

Michael C. Maher, Esq.

HARRISON T. SLAUGHTER, ESQ.

Harrison T. Slaughter, Esq.

PROFESSIONAL BENEFITS SOLUTIONS, INC.
A/K/A PRESIDION SOLUTIONS, VII, INC.

Frank Amodeo, Authorized Agent

PARADYME, INC.

Frank Amodeo, Authorized Agent

8