# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

| | | |
|---|---|---|
| MIRABILIS VENTURES, INC. and<br>NEXIA STRATEGY CORPORATION, | ) | Case No.: 6:07-CV-1788-ORL-28-GJK |
| | ) | |
| Plaintiffs, | ) | |
| -vs.- | ) | |
| | ) | |
| PALAXAR GROUP, LLC; | ) | |
| PALAXAR HOLDINGS, LLC; | ) | |
| FRANK HAILSTONES; EDITH CURRY | ) | |
| a/k/a EDITH BROADHEAD; and | ) | |
| TERENCE CHU, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MIRABILIS VENTURES, INC., et al. | ) | |
| | ) | |
| Counterclaim and Third | ) | |
| Party Defendants. | ) | |

## JOINT OPPOSITION OF THIRD PARTY PLAINTIFFS EDITH CURRY AND FRANK HAILSTONES AND EDITH CURRY TO BATES AND MOKWA'S MOTION TO DISMISS AMENDED THIRD PARTY COMPLAINT BASED ON FED. RULE. CIV. PRO. 12(b)(1)

Third Party Plaintiffs Edith Curry and Frank Hailstones, by and through undersigned counsel, hereby oppose Third Party Defendants' Joint Motion to Dismiss Pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

Third Party Defendants Bates and Mokwa ("Bates/Mokwa") have twice moved to sever Counts 5, 6, 7, 8 and 9 of the First Amended Counterclaims and Third Party Case Claims (Dkts. 88, 240), first claiming that the counts arise out of separate transactions and occurrences and

involve completely unrelated questions of law and fact from the original action.  When that

failed, their second attempt stated:

> Third Party Defendants [were] suffering from extreme financial
> hardship and severe prejudice due to their joinder in the present
> action. The significant legal fees associated with monitoring this
> very complex docket has forced . . . Bates and Mokwa . . . to
> substitute counsel and take on the burden of handling a significant
> amount of the legal work in this action themselves.[1]

Twice their motions have been denied.  This time, Bates/Mokwa move this Court to dismiss the

counterclaims against them based on an alleged absence of subject matter jurisdiction.  Yet

another effort to delay adjudication of this matter is unconscionable.[2]

## I.  <u>MOTION TO DISMISS UNDER FED. RULE CIV. PRO. 12(b)(1).</u>

A motion to dismiss for lack of subject matter jurisdiction pursuant Federal Rule of Civil

Procedure 12(b)(1) attacks the federal court's jurisdiction either facially or factually.  *Morrison*

*v. Amway Corp.,* 323 F.3d 920, 924, n. 5 (11th Cir.2003).   Where the jurisdictional attack is

based on the ***face*** of the pleading, the court merely looks to determine whether the plaintiff has

sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the plaintiff's

---

[1] Bates/Mokwa maintain this position although each has since added a second lawyer to his defense team; Mokwa's is located in Texas.  Bates, moreover, failed to disclose to the Court his new position with the Maher Law Firm - where his friends celebrated his ability to "get that money$."

In the meantime, as Third Party Defendants are certainly aware (based on conversations), three of the four law firms who have represented Defendants in this matter have received no more than a fraction of their fees and costs. Nevertheless, the three defense attorneys that have remained involved in the case are committed officers of the court, and persevere in the hope that those who have abused the judicial system will be held accountable.  They are determined to see the case through its rightful conclusion.

[2] A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered ***without prejudice***. *Stanley ex rel U.S. v. Orlando Regional Health Care System, Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (emphasis added).  Accordingly, a Rule 12(b)(1) challenge at this stage, with attorneys' fees mounting with every one of Third Party Defendants' delay tactics, is frivolous at best and likely amounts to bad faith.  Bates/Mokwa's motion is riddled with efforts to mislead the Court.  Accordingly, Third Party Plaintiffs believe the motion is sanctionable under 28 U.S.C. § 1927 in that it plainly exhibits "conduct ***tantamount*** to bad faith." *Avirgan v. Hull,* 932 F.2d 1572, 1582 (11th Cir.1991) (emphasis added); *Roadway Express Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).  Moreover, the Eleventh Circuit has agreed with the Ninth Circuit that "[a] finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument." *Barnes v. Dalton,* 158 F.3d 1212, 1214 (11th Cir.1998) (*quoting Primus Automotive Fin. Servs., Inc. v. Batarse,* 115 F.3d 644, 649 (9th Cir.1997)).

complaint are taken as true for purposes of the motion. *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir.1990). Courts may dismiss such cases pursuant to Fed. Rule Civ. Pro. 12(b)(1) *only upon finding* that the plaintiff's claims are "clearly immaterial, made solely for the purpose of obtaining jurisdiction or are wholly unsubstantiated and frivolous." *Lawrence,* 919 F.2d at 1529 (quoting *Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727, 732 (11th Cir.1982); *see also Bell v. Hood,* 327 U.S. 678, 682-683, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Such is by no means the circumstance with respect to the Third Party Counterclaims in this case.

In a factual attack where the amount in controversy is challenged, Third Party Defendants are correct that a Third Party Plaintiff bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds $75,000. However, the claimant *satisfies* the amount in controversy required to invoke a federal court's jurisdiction on the basis of diversity by claiming a sufficient sum in good faith. *St. Paul Mercury Indem. Co. v. Red Cab. Co.,* 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938). Indeed, to justify dismissal for lack of diversity jurisdiction on the ground that the amount in controversy requirement has not been satisfied requires that a court find "*to a legal certainty* that the claim is really for less than the jurisdictional amount." *Federated Mut. Ins. Co. v. McKinnon Motors,* 329 F.3d 805, 807 (11th Cir. 2003) (*citing St. Paul Mercury Indem. Co. v. Red Cab Co..,* 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938)). Such a finding is all but impossible here.

To the extent their attack is a facial one, first, Bates/Mokwa have admitted to the jurisdictional facts sufficient to establish diversity. *See* Answer of Bates and Mokwa (¶¶ 1-5, 10-11). Second, with respect to each count, the amount in controversy concerning the counterclaims is stated as "an amount to be determined at trial." In *Leavitt v. Cole*, 291 F.Supp.2d 1338, 1342 (M.D. Fla. 2003), Judge Presnell allowed a claim of slander *per se* to proceed despite the absence

of a specific damages amount.  Although Third Party Plaintiffs made no specific demand in the Amended Third Party Complaint, the documents produced and the testimony in discovery has been more than sufficient to establish a jurisdictional amount in controversy, thus morphing Bates/Mokwa's attack into a factual one.[3]

Third Party Plaintiffs and others can and will certainly testify to the amounts of contracts forgone and opportunities lost, and the jury is free to assess the credibility of their testimony. Counsel has informed Third Party Defendants that Third Party Plaintiffs' damages, based—at least in part—on Third Party Defendants' slander and interference with advantageous business relations is in the millions; certainly documents produced by plaintiffs demonstrate they were seeking at least $2M in "contract" opportunities that Third Party Plaintiffs believe Third Party Defendants' conduct "closed."  If the law of slander *per se* is to have any meaning, Third Party Plaintiffs' claims should be heard.

---

[3] In an apparent act of desperation, Bates/Mokwa use a letter from Third Party Plaintiffs' counsel to Third Party Defendants' counsel—in which the author (admittedly) left out a single word—to suggest that Third Party Plaintiffs intend to put on no proof of damages at trial (Dkt. 316-4).  The subject of the letter in question was, however, the absence of **production of documents** to support Third Party Plaintiffs' damages claims.  Counsel stated, admittedly incorrectly, that "damages will not be based upon proof."  The sentence was obviously intended to say, "damages will not be based on **documentary** proof."  Indeed, the paragraphs on either side of that highlighted by Third Party Defendants provide further explanation—and counsel has painstakingly done the same orally to counsel for Third Party Defendants on countless occasions—that many of Palaxar's lost opportunities are subject to non-disclosure agreements and, in some cases, involve matters that Palaxar **cannot** disclose due to legal restrictions concerning contract bids with the government, whether planned or completed.  This fact—which has been repeatedly explained to Third Party Defendants' counsel—explains the deposition responses in which Mr. Hailstones responded that he was "not at liberty to give you a specific relationship" when asked to specify the advantageous business relationships with which Third Party Defendants had interfered."  *See* Motion (Dkt. 316 at 8).  Ms. Curry **underestimated** (at $20 million) the damages she has suffered, but that too failed to satisfy Third Party Defendants. Third Party Plaintiffs are free to offer testimony concerning their damages at trial—and where the boundaries of such testimony are will be explored upon direct and cross-examination—that the jury may then decide to accept or disregard.  Third Party Plaintiffs' damages are not speculative.  Rather, they are subject to information restrictions that the parties cannot explicitly discuss.  Although Third Party Defendants fail to acknowledge it, the nondisclosure agreements to which Third Party Plaintiffs are subject have been both produced (in Initial Disclosures to Mirabilis and Nexia) and repeatedly explained to counsel for Third Party Defendants.

## II. **SLANDER PER SE**

On October 15, 2007, brandishing a copy of the Orlando Sentinel of October 13, 2007 bearing the banner headline, "Mirabilis Lost At Least $220 Million," Mokwa loudly declared, "See? You are on the front page of the paper for stealing assets."  A co-conspirator, Amar said, "$220 million is missing while you were in charge and now you are here selling anti-fraud solutions. Where the [expletive deleted] did the money go?"  Both Mokwa and Amar accused Curry and Hailstones of stealing money about the theft of which their employer, Frank Amodeo, with Bates and Mokwa's assistance, had been in plea negotiations for more than 10 months.

Third Party Plaintiffs' primary claim is conspiracy to commit slander *per se*, which alleges that Third Party Defendants conspired to confront Third Party Plaintiffs and make statements that they had engaged in conduct that was criminal or involved great moral turpitude, and which would—if true—have made them unfit to operate in their chosen professions.  Under Florida law, when the offense is slander *per se*, malice is presumed and need not be proved. Nevertheless, Third Party Plaintiffs have the following evidence to support malice:

- Asked in deposition his purpose in traveling to Arizona, Mokwa testified, "To serve Mr. Hailstones and Ms. Curry."  *See* Mokwa Depo. (Exhibit 1) p. 147, lns. 13-14.  Bates testified that he "needed to go out and see that [Hailstones] was served while he was in the [S]tates." Bates Depo. (Exhibit 2) p. 94, lns. 14-15.

- Process server Thomas Zollars testified that he met with Bates/Mokwa and Amar in advance of the service of process in a hotel suite at the resort where Curry and Hailstones were participating in a conference, that they planned to serve Ms. Curry at the entrance to the conference center, and that attorneys involved in a case had ***never*** exhibited conduct like that of Bates and Mokwa during his 22 years as a process server.  *See* Affidavit of Thomas Zollars (Exhibit 3) at ¶¶ 5, 9, 10, and 14.

- At the time of the service of process in Arizona, the complaint had been filed two days before; there was at most an allegation of "stealing assets" (which was intellectual property and certainly not $220 million), not an adjudication. Nevertheless, Mokwa uttered the words as a conclusion, not an allegation.

- The $220 million discussed in the article Mokwa waved about concerned stolen payroll tax funds from Presidion Solutions ("Solutions"), not Mirabilis; and had nothing to do with "Nexia Certification" or the claims against Curry and Hailstones, neither of whom had anything to do with Solutions.

- Bates, however was counsel for Solutions at the time the news article was released and he and his law firm had affirmatively stated to others that the missing payroll tax money was unrelated to Mirabilis.[4]

- At the time of the slanderous statement, both Mokwa and Bates had been acting as criminal counsel for Frank Amodeo and *knew* that Amodeo was then negotiating a plea agreement in which he admitted to the unlawful taking of the $220 million referenced in the Orlando Sentinel news article.[5]

- Bates/Mokwa knew at the time the article was released that Amodeo intended to plead guilty to diverting for his own use the $220 million mention in the headline.

- Mokwa, as in-house counsel for Common Paymaster Corporation at the time of Curry and Hailstones' separation, was well aware of Curry's well-negotiated separation agreement, having communicated in late 2006 with then-board member and general counsel Richard Berman seeking clarification and validation - which Mokwa received.  *See* Mokwa email of November 14, 2006 and Berman response, attached as Exhibit 6.

- At the time Mokwa made the statement, he knew it to be false.

- Bates and Mokwa had information from Palaxar's website since June 2007 (provided in their initial disclosures) - a full four months prior to their trip to Scottsdale, Arizona - and yet they made no attempt to contact Palaxar, Curry or Hailstones prior to Bates/Mokwa's actions the morning of October 15, 2007.[6]

---

[4] See Exhibit 6 (Goldberg letter pointing out that Mirabilis is not Presidion).

[5] Astonishingly, in their Joint Answer and Affirmative Defenses to First Amended Counterclaims Against Mirabilis and Nexia (Doc 72, at ¶ 131), Bates/Mokwa *expressly denied* being "aware of an ongoing criminal investigation by the United States Attorney for the Middle District of Florida involving Mirabilis and Amodeo…"  Bates/Mokwa's statement was demonstrably false, as evidenced by a February 7, 2007 letter from Mirabilis general counsel Mark Bernet (Exhibit 5).  Moreover, Bates acknowledged providing information to Mr. Slaughter to assist in Amodeo's criminal defense.  *See* Exhibit 2 (Bates Depo.) at p. 83, line 15 through p. 85, line 5.  Indeed, Bates, while still employed at Mirabilis and afterward, was "looking at" (although he denied "reviewing") Amodeo's plea agreement in its various iterations.  *See id.* at p. 123, line 23 through p. 125, line 7.  Amodeo has repeatedly stated Bates "rewrote" the entire [plea] agreement… (Doc. 179, pp 6-7).

[6] Mr. Sadrianna testified that was asked by Amodeo to begin researching a potential lawsuit against Curry in *February or March 2007*.  *See* Sadrianna Depo. (Exhibit 7) at p. 51, line 11—p. 52, line 5, and that he knew (and informed Amar) that Curry and Hailstones would be speaking at a symposium in October at least by June and probably by March. *See id.*, p. 86, ln. 20-p. 87, ln. 4.  Mr. Amar testified that he only learned about the conference a few weeks in advance from Mr. Amodeo (Exhibit 8) Yaniv Amar Depo., p. 94, lns. 3-8)) and that, after he learned about it—

- There could be no legitimate reason for two licensed attorneys (while representing a criminal defendant facing 305 years in prison on 27 felony counts), to fly across the country, carrying a local hometown newspaper, in order to attend the "service of process" that they need not have had anything to do with.[7]

In a case of slander *per se*, the complaining parties need not prove general damages. Such damages are assumed. In addition, under Florida law, a finding of liability for slander *per se*, coupled with an express finding that the slander was intended to injure plaintiff and did in fact cause injury, authorizes the jury to consider and assess punitive damages without any finding of an amount of compensatory damages.  To sustain a cause of action for slander under Florida law, a plaintiff must demonstrate that: (1) the defendant published a false statement; (2) about the plaintiff; (3) to a third party; and (4) the party suffered damages as a result of the publication. *Fun Spot of Florida, Inc. v. Magical Midway of Central Florida, Ltd.*, 242 F.Supp.2d 1183, 1187 (M.D. Fla. 2002) (Antoon, J.) (*citing Valencia v. Citibank Int'l*, 728 So.2d 330 (Fla.3d D.C.A.1999)).

A statement that a person has committed a crime or done something illegal is one of the classic slander *per se* categories—that is, the pleader need not allege specific damages to state a cause of action.  Further, even statements that fall short of accusing another of a serious crime,

---

I had spoken with Matt and Aaron, and we were just kind of laughing about it, to be quite honest. I was like -- I just -- really, I thought it was some elaborate hoax.  And then when I realized it wasn't a hoax, I was like, I think I'm going to fly out and see this for myself.

*Id.*, p. 97, lns. 10-16.  On the other hand, Bates insisted that *he* found Mr. Hailstones' name in a brochure for a speaking engagement sometime in late September.  *See* Exhibit 2 (Bates' Depo.) p. 93, lns. 23-24.  Indeed, although Mr. Bates testified, "I didn't touch this case [] until September" (and elsewhere he testified that he was unaware of the litigation until Decmber 2007, *see* Bates Depo. (Exhibit 2) at p. 52, ln 22—p.53, ln. 4), he was the addressee of a memorandum from Mr. Amodeo dated July 24, 2007 (with a cc to Balch & Bingham) in which "Palaxar Group" is the second on Amodeo's list of target entities sent to Balch with a "minimum amount in controversy" of $5 million. *See* Exhibit 9.

[7] Both Bates and Mokwa testified that they never—before or since—participated in service of process except on this occasion.

but that tend to injure a person in his or her business or profession, also fall into a classic slander *per se* category.   Slander *per se* also includes falsehoods "directed at a person's professional competence or fitness to engage in a given profession."   Curry is an attorney and an accountant and Hailstones is a Chartered Public Accountant. That they would both suffer injury from an accusation of theft is inevitable.

With respect to the conspiracy, Bates and Mokwa admitted in their respective Answers to the Third Party Claims that they knew in advance that Curry and Hailstones would be in attendance at the Scottsdale conference.   That Bates, Mokwa, and Amar, all of whom had knowledge of the lawsuit and all of whom answered to Amodeo, would travel across the country, carrying with them the previous day's Orlando Sentinel with its banner headline, as well as the yet-unserved Complaint, engage a local Scottsdale, Arizona process server to assist them, and then accuse Curry and Hailstones of absconding with $220 million worth of assets **without having agreed in advance** that they intended to assemble, confront, slander, and harass Curry and Hailstones is not only absurd, it is all but impossible.[8]

Notably, while Mr. Bates in his deposition attempted to justify the entire episode in Arizona by claiming he needed to serve Mr. Hailstones in person due to Mr. Hailstones' residence in the United Kingdom, *see* Exhibit 8 (Amar Depo.) p. 98, lns 1-3; Exhibit 2 (Bates'

---

[8] Mr. Sadrianna testified that he learned—while still working at the Suntrust Building, and thus no later than early April 2007—the nature and location of the "symposium" at which Ms. Curry and Mr. Hailstones would be speaking later that year.   When he relayed that information to Mr. Amar, sometime in the spring of 2007, Mr. Amar told Mr. Sadrianna that he "wanted to go out there and see for himself Ms. Curry, and also, potentially, to serve her at the symposium."   *See* Sadrianna Depo. (Exhibit 7) at p. 60, lines 17-22.   He further testified that it was his impression that "Mr. Bates or Mr. Mokwa had spoken to Mr. Amar about the trip in advance," *see id.* at p. 84, lines 2-5, and further, when asked whether it was a "coincidence that that he was in Arizona at the same time as Mokwa and Bates where they went to serve Edie together," Mr. Sadrianna emphatically responded, "No way."   *Id.* at lines 20-23. Although both Bates and Mokwa denied that Mr. Amodeo knew anything about the trip to Arizona, Mr. Amar in his answers to Interrogatories (*see* Exhibit 10) acknowledges that he discussed the trip with Mr. Amodeo in advance and telephoned him immediately after the confrontation to relate to him what had happened while service was completed.   The Court has already heard testimony about this incident and remarked on it in open Court.   *See* Transcript of Sentencing Proceedings of May 14, 2009 (Exhibit 11) p. 180, line 17 to p. 181, line 22.

Depo.) p. 94 ln. 8—p. 95, ln. 10 (stating that Mirabilis needed to serve Mr. Hailstones while he was in the U.S. because it was "easier" than utilizing the alternative means under Rule 4 and that Bates needed to be personally present because he had no digital photograph of Mr. Hailstones— one of which was published in the online brochure Mr. Bates assertedly found). Remarkably, however, as confirmed in the Affidavit of Thomas Zollars, the summons and complaint were placed **only** in Ms. Curry's hands. *See* Exhibit 3, at ¶ 12. While Mr. Hailstones does not now raise, and would never raise, (in this case) the specious defense of defective service (just as this 12(b)(1) motion is specious in this context), in fact, Mr. Hailstones technically was never served with process in this matter, despite the cross-country treks of Amar, Bates, and Mokwa and the efforts of Mr. Zollars.[9] Moreover, the record fails to reflect service of process upon Hailstones. Despite their overwhelming efforts, if Bates/Mokwa's purpose in travelling to Arizona was to ensure service upon Hailstones, they failed.

### III. PUBLICATION

Third Party Defendants assert in their Motion to Dismiss that—because Third Party Plaintiffs are unable to name the specific persons who overheard their shouting—Curry and Hailstones cannot recover. Bates/Mokwa are mistaken. First of all, both Ms. Curry's and Mr. Hailstones were subjected to videotaped depositions. Both are hearing impaired.[10] Thus, when

---

[9] As has been established, Mr. Hailstones is not and was never a partner in Palaxar Group or Palaxar Holdings.

[10] Although, during her deposition, Third Party Defendants' counsel openly mocked Ms. Curry's assertion that she is—for practical purposes—deaf, and asked repeatedly why Ms. Curry does not rely on Sign Language, Ms. Curry explained that she reads lips and has always done so. Functionally, this means that Ms. Curry can understand what one person is saying at a time and no more. Accordingly, when Ms. Curry repeats what she understands from the incident in Scottsdale, she cannot repeat what was said if more than one person was speaking at the same time unless they are speaking very loudly - as Amar and Mokwa were.

Mr. Hailstones' hearing problems have arisen during the progress of this case, in part due to the extensive travel required after Mirabilis' failure to honor his Termination Agreement and other contracts resulted in his loss of his visa permitting him to work in the United States and required his return to permanent residence in the United Kingdom—a cause for gleeful comment during the incident in Scottsdale. Indeed, Mr. Hailstones' hearing loss is an element of his damages in this matter.

asked by Third Party Defendants' counsel to "imitate" or "reproduce" the actions of Third Party Defendants, neither could have done so other than by their gestures and the substance of what was said, not the precise manner.

More importantly, however, Third Party Plaintiffs need not present evidence of particular persons who heard the slanderous statements made against them in order to establish publication. In the first place, the question is not one for the Court.

> Florida courts have consistently held that circumstantial evidence is admissible generally in civil actions and, in fact, may often be more probative than direct evidence. Slander actions are no less amenable to that rule. We hold, therefore, that in a slander action it is not necessary to produce witnesses who heard the slanderous words spoken. The jury may well infer publication if it is shown that the words were uttered in a loud voice in the presence of others and under conditions and circumstances in which a loud voice would likely be heard.

*Lombardi v. Flaming Fountain, Inc.*, 327 So.2d 39, 41 (Fla. 2d DCA 1976). Accordingly, under Florida law, the jury is entitled to hear testimony concerning the presence of other people, the loudness of the comments made, and whether or not circumstances were such that would allow the slanderous comments to be heard. From such testimony, the jury is free to infer, or not, whether publication occurred. *Id. See also American Ideal Management, Inc. v. Dale Village*, Inc., 567 So.2d 497, 499 (Fla 4th DCA 1990).

Other jurisdictions arrive at similar conclusions. In Rhode Island, the Supreme Court looked to the surrounding circumstances and the reasonable inferences that could be drawn from those facts. *Gaudette v. Carter,* 100 R.I. 259, 214 A.2d 197 (1965). There, the issue was whether the defendant had been overheard by a third party at a public auction after a loud and heated exchange occurred between the parties, and the defendant called the plaintiff a thief. Those close by denied hearing the slander. The trial court directed a verdict for the defendant,

but the Supreme Court reversed with these words: "Our holding is that an issue for jury determination arises if on the evidence, testimonial or otherwise, it may reasonably be inferred that the defamatory words were comprehensible to and uttered in the presence and hearing of a third person, and this even in the face of a denial by that person that he heard the words." *Id.*, 214 A.2d at 200.

In a South Carolina case, a customer of the bank was falsely accused of "swindling" the bank by an assistant vice-president. *Duckworth v. First National Bank,* 254 S.C. 563, 176 S.E.2d 297 (1970). The plaintiff testified that he knew that other customers heard the slander because "they were looking, they couldn't help it." *Id.*, 176 S.E.2d at 300. He added that there were customers of the bank around at all times and near enough to hear what was said. The court held that the issue of publication was properly submitted to the jury.[11]

Similarly, Nevada courts hold that publication may be proven by circumstantial evidence of the utterance of a defamatory communication at a sufficient volume and in such a manner as to be comprehensible to a third party. *See M&R. Inv. Co., Inc. v. Mandarino*, 103 Nev. 711, 748 P.2d 488, 491 (Nev. 1987). Finally, in a shoplifting case, in which there was testimony of the shoplifting accusations being made within a few feet of the check-out counter and the exit where there was heavy customer traffic; there was further testimony by the plaintiff that she was sure people were listening to the argument between the store employee and herself; she was "on display in front of the whole store," and was very embarrassed. In that instance, "the circumstances . . . were both sufficient to raise a reasonable inference of publication and also

---

[11] The failure of a plaintiff in a defamation case to name third persons overheard discussing the defamatory charge is a factor affecting the weight, not the sufficiency, of the evidence of publication. *See, e.g., Agriss v. Roadway Express, Inc.*, 483 A.2d 456, 464 (Pa. Super. 1984).

constitute substantial evidence to support the jury's verdict" in plaintiff's favor. *See Wal-Mart Stores, Inc. v. Dolph,* 308 Ark. 439, 442 (Ark. 1992).

Thus, like Florida, other jurisdictions hold that circumstantial (and only circumstantial) evidence of publication is sufficient to put the issue to a jury for determination. Third Party Defendants are simply wrong in their assessment that Third Party Plaintiffs have offered (and can offer) no evidence of publication. Even Third Party Defendants' own process server acknowledged that at least ten people were within a 25 foot radius of the incident when it occurred, although he failed to admit what he heard or did not hear. *See* Exhibit 3, ¶ 11. Accordingly, Third Party Defendants distress about the absence of evidence of publication does not eliminate this Court's power to hear this case.

## <u>CONCLUSION</u>

Unless this Court concludes "***to a legal certainty*** that [Third Party Plaintiffs'] claim is really for less than the jurisdictional amount" of $75,000, *see Federated Mut. Ins. Co. v. McKinnon Motors,* 329 F.3d 805, 807 (11th Cir. 2003) ( *citing St. Paul Mercury Indem. Co. v. Red Cab Co..,* 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938)), then Third Party Defendants Motion to Dismiss Pursuant to Fed. Rule Civ. Pro. 12(b)(1) must fail and their motion be denied. Should the Court deny the Motion, Third Party Plaintiffs respectfully seek an award of the attorneys' fees and costs incurred in responding to Third Party Defendants' Motion.

Respectfully submitted,

Date: October 20, 2010

MARTIN R. RASKIN                                    /s/ Kathleen B. Havener
Florida Bar No. 315206                              KATHLEEN B. HAVENER
JANE SERENE RASKIN                                  THE HAVENER LAW FIRM, LLC
Florida Bar No. 848689                              15511 Russell Road
RASKIN & RASKIN, P.A.                               Chagrin Falls, OH 44022
866 South Dixie Highway                             Phone: 440-893-0188
Coral Gables, Florida 33146                         Cell: 216-288-6009
Telephone: (305) 444-3400                           Fax: 440-893-9326
Facsimile: (305) 445-0266                           kbhavener@havenerlaw.com
mraskin@raskinlaw.com
                                                    Attorney for Defendants Curry, Hailstones,
Attorneys for Defendants Curry,                     Palaxar Group, LLC and Palaxar Holdings, LLC
Palaxar Group, LLC and Palaxar Holdings, LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 20, 2010, I electronically filed the foregoing Joint Opposition of Third Party Plaintiffs Edith Curry, Frank Hailstones, Palaxar Group, LLC, Palaxar Holdings, LLC to Third Party Defendants Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. Pro. 12(b)(1) with the Clerk of Court using the CM/ECF system and have sent a copy of the document to the *pro se* parties and/or counsel who are not registered with the CM/ECF system.

Terence Chu (via email)

Yaniv Amar (via email)

Adam Loewy (via email)

Frank L. Amodeo B-3 (via Priority Mail)
48883-019
Federal Correctiona; Complex – Low
P.O. Box 1031
Coleman, FL 33521

/s/ Kathleen B. Havener_____
KATHLEEN B. HAVENER