**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**MIRABILIS VENTURES, INC. and
NEXIA STRATEGY CORPORATION,**

     **Plaintiffs,**

**v.**                                **Case No. 6:07-CV-1788-Orl-28KRS**

**PALAXAR GROUP, LLC;**               **DISPOSITIVE MOTION**
**PALAXAR HOLDINGS, LLC;
FRANK HAILSTONES; EDITH CURRY
a/k/a EDITH BROADHEAD; and
TERENCE CHU,**

     **Defendants,**

**v.**
**MIRABILIS VENTURES, INC.,
NEXIA STRATEGY CORPORATION,
AQMI STRATEGY CORPORATION,
WELLINGTON CAPITAL GROUP, INC.,
YANIV AMAR, FRANK AMODEO,
AARON BATES, MATTHEW MOKWA,
ROBERT POLLACK, and JAMES SADRIANNA,**

     **Third-Party Defendants.**

_____

**THIRD-PARTY DEFENDANT MATTHEW S. MOKWA'S MOTION FOR
SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

     COMES NOW, Third-Party Defendant Matthew S. Mokwa ("Mokwa" or "Third-

Party Defendant"), by and through his undersigned counsel and pursuant to Fed. R. Civ.

P. 56 moves this Court for summary judgment on all claims filed by Third-Party

Plaintiffs, Frank Hailstones ("Hailstones") and Edith Curry ("Curry") (collectively

"Third-Party Plaintiffs").  The grounds for this motion are set forth in the following

memorandum of law.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 3

STATEMENT OF FACTS .................................................................................. 3

   A. BACKGROUND ......................................................................................... 3

   B. CURRY'S ALLEGATIONS ........................................................................ 5

   C. HAILSTONES' ALLEGATIONS ................................................................ 6

   D. TESTIMONY OF ZOLLERS ...................................................................... 7

   E. TESTIMONY OF CLINTON GROOMES, JR. ............................................. 7

   F. TESTIMONY OF JOEL KRAMER ............................................................. 7

   G. TESTIMONY OF CONFERENCE ATTENDEES ....................................... 8

   F. TESTIMONY OF MOKWA, BATES AND AMAR........................................ 8

LEGAL STANDARD.......................................................................................... 8

ARGUMENT AND AUTHORITIES................................................................. 9

   A. SLANDER PER SE ................................................................................... 9

      1. The alleged statement is not defamation...................................... 10

      2. Third-Party Plaintiffs cannot prove the alleged statement was published.... 12

      3. Third-Party Plaintiffs cannot prove damages ..........................14

   B. TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS.......... 15

      1. Third-Party Plaintiffs cannot prove there was a business relationship............18

      2. Third-Party Plaintiffs cannot prove knowledge of the relationship ................. 19

      3. Third-Party Plaintiffs cannot prove interference ...................................20

      4. Third-Party Plaintiffs cannot prove damages ..........................21

   C. FLORIDA LITIGATION PRIVILEGE.......................................................... 22

   D. CONSPIRACY ......................................................................................... 23

CONCUSION ...................................................................................................... 25

<u>INTRODUCTION</u>

Curry and Hailstones brought this lawsuit against Mokwa alleging (1) slander per se; (2) intentional interference with business relationships; and (3) conspiracy.  All of the claims in this lawsuit arise from a conversation that occurred during the service of process of Mirabilis Ventures, Inc. ("Mirabilis") and Nexia Strategy Corporation's ("Nexia") lawsuit against Curry and Hailstones (the "Original Lawsuit").

As demonstrated by the facts and argument below, the admissible, relevant evidence falls far short of the legal standard necessary to maintain each of Third-Party Plaintiffs' claims.  Curry and Hailstones have attempted to obscure the record in this case with an avalanche of speculation, gossip, rumor, anecdotes of unrelated improprieties, and wild and conclusory allegations.  When the **actual claims** of Hailstones and Curry are measured against the **actual evidence**, each claim is fundamentally deficient.

Third-Party Plaintiffs have failed to produce any relevant admissible evidence supporting their claims of defamation and intentional interference of business relationships.  The undisputed material facts demonstrate that the alleged defamatory statement does not meet the legal definition of defamation; was not published to a third-party; and did not cause any damages.  Moreover, Third-Party Plaintiffs have failed to identify a single business relationship that Mokwa interfered with.  As a result, Third-Party Plaintiffs' claims fail as a matter of law and this Court must grant summary judgment in favor of Mokwa.

<u>STATEMENT OF FACTS</u>

A.      <u>Background</u>.

3

Hailstones and Curry are both former officers and directors of Mirabilis.[1] Hailstones is a resident of the United Kingdom.  Def. Ex. 1, Oct. Dep. of Hailstones 18:25-19:1.  Aaron C. Bates ("Bates") was the attorney of record for Mirabilis and Nexia in the Original Lawsuit.[2]  Mokwa was employed by Bates' law firm Goldberg Bates, PLLC n/k/a Bates Mokwa, PLLC.  Def. Ex. 2, Dep. of Mokwa 66:5-7.  Yaniv Amar ("Amar") was a former Mirabilis employee.  Def. Ex. 3, Dep. of Amar 25:3-7.

In or about October 2007, Bates and Mokwa flew to Scottsdale, Arizona to service process on Hailstones, a nonresident alien living in the United Kingdom, who was in town (with Curry) for a one-time speaking engagement on anti-fraud.  Dep. of Mokwa 147:13-18, Def. Ex. 4, Dep. of Bates 93:17-94:22.  Amar also flew to Scottsdale, AZ because he wanted to see if it was actually true that the former CEO and Treasurer (Hailstones and Curry, respectively) of Mirabilis were lecturing on antifraud during a federal investigation into Mirabilis for the largest payroll tax fraud in history.[3]  Dep. of

---

[1]  Hailstones served as President or CEO of Mirabilis from January 2, 2006 until December 31, 2006 and he served as a member of Mirabilis' Board of Directors from January 26, 2006 until January 31, 2007.  (Doc. 75-20 ¶19).  Curry served as Secretary and Treasurer of Mirabilis from October 2005 until October 31, 2005 and Board of Directors' member from October 2005 until October 31, 2006.  (Doc. 41-7 ¶4).  Curry served as the President of Nexia from January 1, 2005 until October 31, 2006.  (Id.)

[2]  Bates of the law firm Goldberg Bates, PLLC k/n/a Bates Mokwa, PLLC was counsel of record in the Original Action along with Russ Campbell ("Campbell") of Balch & Bingham, LLP (Doc. 2).  Bates was substituted for Todd Norman ("Norman") and Roy Kobert ( "Kobert") of Broad and Cassell pursuant to this Court's November 6, 2009 Order.  (Doc. 169).

[3] Curry and Hailstones were featured speakers at the 58th Annual Directors & Managers Symposium in Scottsdale, AZ, October 14-18, 2007 ("58th Annual Directors & Managers Symposium").  Curry and Hailstones hosted a workshop titled: Dealing with a Likely Fraud Situation: Audit Management's Responsibilities.  The symposium brochure described the workshop as follows:

> In this intensive one-day workshop you will examine in-depth Audit's roles and responsibilities as a major player in your organization's defense against fraud.  You will learn how to enhance your existing audit programs to help uncover fraud and master proven techniques for conducting effective fraud investigations.  You will cover key fraud evidence requirements and gain an understanding of the complex organizational, civil, and criminal factors you must consider to guide your company to the best possible outcome.

Def. Ex. 5.

Amar 55:7-56:5; 94:23-95-23.   Bates, Mokwa and Amar each traveled on different days and each stayed at different locations.   Dep. of Bates 100:12-23; Dep. of Amar 118:1-5. Moreover, Mokwa is from Arizona and his family lives in the Scottsdale area.   Dep. of Mokwa 148:6-14.   A large motivation for Mokwa going to Arizona was to visit his family. Dep. of Mokwa 148:6-14.

Curry and Hailstones allege that during the service of process Mokwa and Amar slandered them by accusing them of thievery.   (Doc. 59 ¶¶ 91-100; ¶¶ 101-110).   Curry and Hailstones are the only witnesses to the allegedly slanderous statement.   Oct. Dep. of Hailstones 28:11-16; Def. Ex. 6, Oct. Dep. of Curry 92:4-94:13.   Moreover, Curry and Hailstones are both hearing impaired.   Oct. Dep. of Curry 5:13-6:14; (Doc. 317 p. 9, FN 10).   In fact, Ms. Curry is functionally deaf and reads lips.   Id.   Mr. Hailstones underwent reconstructive surgery to his eardrum in August of 2010 in order to "restore his hearing." (Doc. 263 p. 2).

Furthermore, this is Curry's second federal defamation lawsuit.   In Curry v. Nestle, 2000 U.S. App. LEXIS 18743 (6th Cir. 2000), Curry alleged that Nestle employees "defamed her by stating to other Nestle employees that she had misappropriated funds and was a thief."   Id. at 18.   Judgment was entered in favor of Nestle on all counts at summary judgment. Id. at 1-2.

B.   Curry's allegations.

Curry's specific allegations are crystallized in her handwritten notes which were drafted minutes after the alleged incident.   Def. Ex. 7.   Curry read her notes into the record at her deposition.   They read as follows:

> [I]t is 8:20 a.m. on the 15th of October 2007.   Frank
> Hailstones and I were walking from our rooms to the

Scottsdale Renaissance conference center.  We approached the conference center just as three former Mirabilis and/or Mirabilis HR employees approached us in the *middle of the street*.  Matt Mokwa, Aaron Bates and Yaniv Amar were with a fourth person who approached Frank and me saying he was a process server.  He gave us the filings and I noticed Aaron Bates either videoing or audio taping the event.  I then recognized Yaniv and said Yaniv, is that you and hugged him hello.

[Amar] spoke and said I can't believe this.  I asked if he was part of Mirabilis and he replied he was only here as a witness … He said loudly enough to attract attention in front of approximately thirty conference attendees; you and Frank were officers of a company where two hundred and twenty million dollars is missing and now you have the nerve to market an anti-fraud product.

I then said there are three agreements, which will resolve this.  He cut me off and said, again, very loudly look, you were on the front page of Saturday's Orlando Sentinel.  And Matt [Mokwa] held up a copy to show the conference attendees.  I exclaimed we were on the front, great.

Yaniv made another comment about the two hundred and twenty million missing.  And I said I'll let Randy Gold sort that out.  I said we'll see you later and walked into the conference room.  Yaniv said to Frank, I guess you have to leave to go back to the UK now.  I asked Frank why he'd have to go back.

Oct. Dep. of Curry 104:3-105:11 (emphasis added); Def. Ex. 7.

Moreover, at her deposition, Curry was asked **four** times to state exactly what Mokwa said.  All **four** times, Curry testified that Mokwa held up a newspaper and said *look you made the front page*.  Oct. Dep. of Curry 47:24-48:1; 58:23-25; 50:16-17; 106:16-17.

C.    Hailstones allegations.

At his deposition, Hailstones was asked to stand up and state exactly what Mokwa said.  Hailstones testified that Mokwa held up the front page of The Orlando Sentinel and

said, S*ee, you made the front page, where's the 220 million?* Oct. Dep. of Hailstones 30:20-31:12. Hailstones further acknowledged that he was the CEO of Mirabilis while the company was engaged in fraud. Oct. Dep. of Hailstones 32:12-33:22.

D. Testimony of Thomas Zollers.

Thomas Zollers was the process server who served Curry and Hailstones with the Complaint in Arizona. Def. Ex. 8, Aff. of Zollers at ¶1. Zollers testified that immediately after he served Curry and Hailstones in the parking lot they walked up to Mokwa, Bates and Amar and had a cordial conversation. Id. at ¶7. Zollers further testified that he was several feet away and could not hear the substance of the conversation and that the conversation was not within earshot of anyone else. Id. at ¶¶9-10.

E. Testimony of Clinton Groomes, Jr.

Clinton Groomes Jr. ("Groomes") is Bates' personal care attendant. Dep. of Bates 96:3-21. Bates is disabled and requires Groomes to assit him with his tasks of daily living. Dep. of Bates 96:3-21. Groomes testified that he witnessed Curry, Hailstones, Bates, Mokwa and Amar have a cordial conversation. Def. Ex. 9, Aff. of Groomes at ¶ 4. Groomes further testified that he was several feet away and could not hear the substance of the conversation and that the conversation was not within earshot of anyone else. Id. at ¶ 5.

F. Testimony of Joel Kramer.

Joel Kramer ("Kramer") is the Managing Director, Internal Audit Division of the MIS Training Institute. Def. Ex. 10, Aff. of Kramer at ¶3. He has been friends with Hailstones for the past 25 years. Oct. Dep. of Curry 126:18-127:8. Kramer testified that

he witnessed Curry and Hailstones engage in a very intense and animated conversation with two men and that one of the men was waiving a newspaper in front of Curry and Hailstones.  Aff. of Kramer at ¶11.  Kramer further testified that he could not hear what was being said but there were 10-15 people within approximately 20 feet who might have heard the conversation.  Aff. of Kramer at ¶¶12-13.

> G. <u>Testimony of Eric Sork, Sargon Youmara, David Benami, Todd Stewart, Sandy O'Connor, Ken Conway, Bill Jackson, Cecily Fink, Erica Kartak, Matthew Raudenbush, Larry Davis, Robert W. Rudloff, Jr, John Winters, Rebecca Lai and Timothy Wardlow.</u>

Eric Sork ("Sork"), Sargon Youmara ("Youmara"), David Benami ("Benami"), Todd Stewart ("Stewart"), Sandy O'Connor ("O'Connor"), Ken Conway ("Conway"), Bill Jackson ("Jackson"), Cecily Fink ("Fink"), Erica Kartak ("Kartak"), Matthew Raudenbush ("Raudenbush"), Larry Davis ("Davis"), Robert W. Rudloff, Jr. ("Rudloff") John Winters ("Winters"), Rebecca Lai ("Lai") and Timothy Wardlow ("Wardlow") all testified that they attended the 58th Annual Audit Directors & Managers Symposium in Scottsdale, AZ and did not see Curry and/or Hailstones served with the Original Action or overhear Mokwa, Bates or Amar accuse Curry and/or Hailstones of thievery or dishonesty.  Composite Def. Ex. 11.

> E. <u>Testimony of Mokwa, Bates and Amar.</u>

Mokwa, Bates and Amar each testified that the conversation that took place was cordial; nobody was speaking in loud voices and there was no third-party within earshot.  Dep. of Bates 107:8-111:5; Dep. of Amar 119:20-124:14; Dep. of Mokwa 144:7-25.

<u>LEGAL STANDARD</u>

"[R]ule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  "When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  <u>Id</u>. at 324-35.

Summary judgment is required against the non-moving party who does not make a showing sufficient to establish a genuine issue of fact for trial.  <u>Celotex Corp.</u>, 477 at 322, 324-25.  The party opposing a motion for summary judgment must provide more than a mere "scintilla" of evidence to avoid summary judgment.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).  Moreover, the non-moving party "must rely on more than conclusory statements or allegations unsupported by facts."  <u>Williams v. U.S.</u>, No. 6:08-cv-1771-Orl-31GJK, 2009 WL 3200687 at *2 (M.D. Fla. Sept. 29, 2009); <u>see also</u> <u>Evers v. Gen. Motors Corp.</u>, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").  Thus, if the non-moving party's response consists nothing more "than a repetition of [its] conclusional allegations," summary judgment is not only proper, but required.  <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981).

## ARGUMENT AND AUTHORITIES

A.      <u>Slander Per Se</u>.

To sustain a cause of action for slander under Florida law, a plaintiff must demonstrate that: (1) the defendant published a false statement; (2) about the plaintiff; (3) to a third-party; (4) the party suffered damages as a result of the publication. <u>Fun Spot of Florida, Inc. v. Magical Midway of Central Florida, Ltd.</u>, 242 F.Supp.2d 1183, 1187 (M.D. Fla. 2002) (<u>citing</u> <u>Valencia v. Citibank Int'l</u>, 728 So.2d 330, (Fla. 3d DCA 1999)). In an action for defamation the plaintiff has the burden of proving: (1) the defamatory character of the communication; (2) its publication; (3) its application to the plaintiff; (4) the recipient's understanding of its defamatory meaning; (5) special harm resulting to the plaintiff from its publication; and (6) the defendant's negligence or malice in making the false communication. <u>See</u> Restatement (Second) of Torts § 613 (1977).

1.      <u>The alleged statement is not defamation</u>.

Curry and Hailstones are the only witnesses who heard the allegedly defamatory communication made by Mokwa. Oct. Dep. of Hailstones 28:11-16; Oct. Dep. of Curry 92:4-94:13. All of the other witnesses in this matter testified that Mokwa did not say anything or that they could not hear what Mokwa said. Aff. of Zollers at ¶9-10; Aff. of Groomes at ¶5; Aff. of Kramer at ¶12-13; Aff. of Sork at ¶¶ 4-5, Aff. of Youmara at ¶¶4-5, Aff. of Benami at ¶¶ 4-5, Aff. of Stewart at ¶¶ 3-4, Aff. of O'Connor at ¶¶ 4-5, Aff. of Conway at ¶¶ 4-5, Aff. of Jackson at ¶¶ 4-5, Aff. of Fink at ¶¶ 4-5, Aff. of Kartak at ¶¶ 4-5, Aff. of Raudenbush at ¶¶ 4-5, Aff. of Davis at ¶¶ 4-5, Aff. of Rudloff at ¶¶ 4-5, Aff. of Lai at ¶¶ 4-5; Aff. of Wardlow at ¶¶ 4-5; Dep. of Bates 107:8-111:5; Dep. of Amar 119:20-124:14; Dep. of Mokwa 144:7-25.

Under oath, Hailstones described the defamatory communication as follows:

> [HAILSTONES]:  [Mokwa] said, Have you seen the front page of the Orlando Sentinel, where's the missing 220 million – or words to that effect.
>
> [COUNSEL]:   And this is what Matt Mokwa allegedly said?
>
> [HAILSTONES]:  Correct.

Oct. Dep. of Hailstones 7:16-21.

Under oath, Curry described the defamatory communication as follows:

> [CURRY]:  At that point is when Mr. Mokwa held up the newspaper and said look you made the front page.

Oct. Dep. of Curry 47:24-48:1.

> [CURRY]:   At that point is when Mr. Mokwa said look, you made the front page of the Orlando Sentinel and he held up the newspaper.

Oct. Dep. of Curry 48:23-25.

> [CURRY]:  That's when Matt said look, you're on the front page of the Orlando Sentinel.

Oct. Dep. of Curry 50:16-17.

> [CURRY]:   Matt showed the paper and he said what he said; look you were on the front page.

Oct. Dep. of Curry 106:16-17.

Whether the alleged communication is capable of bearing a particular meaning and whether that meaning is defamatory is a question of law to be determined by the court.  See Restatement (Second) of Torts § 614 (1977).

As a matter of law, Mokwa's alleged communication cannot reasonably be susceptible to a defamatory interpretation and is not slander per se.  Curry alleges that

Mokwa held up a news paper and said "you're on the front page of the Orlando Sentinel." Oct. Dep. of Curry 50:16-17.  Hailstones alleges that Mokwa held up a news paper and said "Have you seen the front page of the Orlando Sentinel, where's the missing 220 million?"  Oct. Dep. of Hailstones 7:16-21.

First, the aforementioned statement that "you're on the front page of the Orlando Sentinel" does not subject them to distrust, hatred, contempt, ridicule or obloquy.  See Keller v. Miami Herald Pub. Co., 778 F.2d 711, 716 (11th Cir. 1985).  Simply put: referencing an article in a public newspaper is not defamation; it is a constitutionally protected liberty enjoyed by citizens of the United States of America.

Second, asking Hailstones "where's the missing 220 million?" is not a defamatory communication.  The tort of defamation requires the plaintiff to prove a false statement of fact.  Fun Spot of Florida, Inc., 242 F.Supp.2d at 1187.  As a matter of law, asking a question regarding a public newspaper article is not a false statement of fact.

Finally, Curry and Hailstones were featured in an article on the front page of the October 13, 2010 Orlando, Sentinel.[4]  Def. Ex. 12.  As a matter of law, the alleged statement is true.

2.      Third-Party Plaintiffs cannot prove publication.

"In order for a defamatory communication to be actionable it must be communicated to someone other than the person defamed."      American Ideal Management, Inc. v. Dale Village, Inc., 567 So. 2d 497, 498 (Fla. 4th DCA 1990).  The

---

[4]  This Court may take judicial notice of the October 13, 2007 Orlando Sentinel Article pursuant to Rule 201, Federal Rules of Evidence.

principle underlying this element is that without publication to a third-party, the plaintiff's reputation has not suffered any damages and therefore there is no defamation.

In the present case, Third-Party Plaintiffs have attempted to skirt the fact that no publication occurred by fabricating a story that other third-parties where "within earshot" of the conversation between Hailstones, Curry, Bates, Mokwa and Amar. In the three years Curry and Hailstones have prosecuted this case, they have failed to produce **any** evidence of publication.

First, it is undisputed that the conversation took place in a parking lot. Zollers Affidavit at ¶6; Groomes Affidavit at ¶4; Oct. Dep. of Curry 104:6-9; Def. Ex. 7. Second, both Curry and Hailstones admitted at deposition that they cannot name one person who heard the allegedly defamatory statement. Oct. Dep. of Hailstones 28:11-16; Oct. Dep. of Curry 92:4-94:13. Finally, and most shocking, Third-Party Defendants produced the participant list from the Audit Directors & Managers Symposium where the alleged defamation occurred.[5] Def. Ex. 13. The Participant List included the name, phone number, address and email of **every single** person who attended the Audit Directors & Managers Symposium. Id.

Thus, Third-Party Plaintiffs allege in their Complaint that the slander was published to approximately 40 of the organizers and attendees of the conference; produced the list of **all** 66 conference attendees; then admitted under oath that they could not name **one person** on the list who heard the slander. Doc. 59 at ¶96; Def. Ex. 13; Oct. Dep. of Hailstones 28:11-16; Oct. Dep. of Curry 92:4-94:13.

---

[5] The MIS Training Institute Audit Directors & Mangers Symposium was produced by Third-Party Plaintiffs and is bate stamped 100691.

Third-Party Defendants called **every single** attendee on the list and were unable to locate **one** witness who witnessed the service of process – not to mention heard the alleged slander.  The following participants provided affidavits that they attended the conference and did not witness the service of process or hear the alleged slander:  Sork, Youmara, Benami, Stewart, O'Connor, Conway, Jackson, Fink, Kartak, Raudenbush, Davis, Rudloff, Winters, Lai and Wardlow.


3.    <u>Third-Party Plaintiffs cannot prove damages</u>.

Third-Party Plaintiffs do not have a damage expert, medical bills, or any special damages.  Third-Party Plaintiffs' entire damage model is based on the doctrine of "presumed damages."  Oct. Dep. of Curry 121:14-20.  In Third-Party Plaintiffs' Answers to Interrogatories, Third-Party Plaintiffs (under oath) informed Third-Party Defendants of the following:

> We have no intention of attempting to prove damages specific to the slander that occurred at trial and therefore have nothing to produce in discovery.

Def. Ex. 14, Third-Party Plaintiffs' Answers to Interrogatories at No. 9.

In a follow up letter to Third-Party Plaintiffs, asking them to again quantify their damages, Third-Party Plaintiffs' counsel responded:

> I remind you that our allegations are all based on slander per se, which requires no proof of damages.  If our claim fails, there are no damages.  If it succeeds, the damages will not be based upon proof.

Def. Ex. 15, Letter from Havener.

Moreover, Curry and Hailstones both continue to lecture on antifraud for the MIS Internal Audit Division.  To the extent that Hailstones and Curry were slandered in the

parking lot of the 58th Audit Directors & Managers Symposium in Scottsdale, Arizona the alleged slander clearly did not damage their reputations because Hailstones and Curry regularly speak at antifraud conferences.  For example, Curry was a featured speaker at the Audit & Governance Super Strategies 2007, Fraud & Corruption Summit in Dublin, Clontarg Castle - Monday October 22, 2007 (1 week after the alleged slander). Composite Def. Ex. 16.  Curry and Hailstones were both featured speakers at the Super Strategies 2008, The Audit Best-Practices Conference - April 14-16, 2008 in Las Vegas, Nevada (6 months after the alleged slander).  Id.  Curry was a featured speaker at the 4th Annual Audit Directors & Managers Symposium on Fraud – September 23-24, 2008 in Chicago, Illinois (approximately 1 year after the alleged slander).  Id.  Hailstones was a featured speaker at the Annual Audit, Risk & Governance Conference 2008 in Copenhagen, Denmark - October 29-31, 2008 (approximately 1 year after the alleged slander).  Id.  Curry was a featured speaker at the Sarbanes-Oxley Strategic Symposium in Orlando, Florida - March 22-25, 2009 (17 months after the alleged slander).  Id. Hailstones was a featured speaker at the Audit, Risk & Governance Africa Conference 2009, in Munyonyo, Shore of Lake Victoria, Uganda - July 20-24, 2009 (20 months after the alleged slander).  Id.  Hailstones was a featured speaker at the Governance, Risk and Compliance 2009 Key Strategies for the Risk-Based Practitioner in Orlando, Florida - October 12-15, 2009 (24 months after the alleged slander).  Id.  Curry was a featured speaker at the Audit Directors & Managers' Symposium in Hilton Head, South Carolina - October 19-21, 2010 (24 months after the alleged slander).  Id.

Hailstones and Curry have failed to present any evidence of damages caused by the alleged slander.

B.     <u>Tortious Interference with Advantageous Business Relationships</u>.

The elements of tortious interference with a business relationship are (1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship. <u>Tamiami Trial Tours, Inc. v. Cotton</u>, 463 So.2d 1126, 1127 (Fla. 1985).

Third-Party Plaintiffs cannot prove **any** of the elements necessary to maintain a lawsuit for tortious interference with a business relationship.  Both Hailstones and Curry's claims for tortious interference with business relationships directly contradict their respective January 2010 depositions conducted by Mirabilis.  In their January 2010 depositions both Hailstones and Curry claim to have no source of income and no identifiable business relationships.  Def. Ex. 17, Jan. Dep. of Hailstones 8:2-11:23; Def. Ex. 18, Jan. Dep. of Curry 7:20-8:15.

> [COUNSEL]:   And how long was your period of unemployment?
>
> [HAILSTONES]:  Since leaving the Mirabilis network at the end of January 2007.
>
> [COUNSEL]:   And you did no independent consulting work during that time?
>
> [HAILSTONES]:  No.

Jan. Dep. of Hailstones 8:10-16.

*        *        *

> [COUNSEL]:   Were there specific opportunities at that time that [Palaxar EMEA] was looking to pursue?
>
> [HAILSTONES]:  Nothing specific, no.

16

[COUNSEL]:   There was no targeted clients at that moment in time?

[HAILSTONES]:  No.

January Dep. of Hailstones 11:6-8.

*       *       *

[COUNSEL]:   Did you have any specific products you were intending to market through the business?

[HAILSTONES]:  At that point in time, no.

[COUNSEL]:   You say at that point in time; did that change at some point in time?

[HAILSTONES]:  There were some ideas that Ms. Curry and I were talking about, but did not result in a defined product.

January Dep. of Hailstones 11:21- 12-3.

*       *       *

[COUNSEL]:  We couldn't say whether you would have received any income or not; we don't know?

[HAILSTONES]:  No.  Well, it would have crystallized if a client would have turned up, but none did.

January Dep. of Hailstones 19:10-13.

*       *       *

[COUNSEL]:  Okay.  You said it was set up to do that, by use of those words; do you mean it is not actively doing that at this time?

[CURRY]:  We have no clients.

[COUNSEL]:  Is that your only place of employment at this time?

[CURRY]: Yes, Sir.

[COUNSEL]:  So if you have no clients; what does your day-to-day work consist of at Palaxar?

[CURRY]:  Looking for clients and looking for a job.

January Dep. of Curry 8:9-18.

1.    <u>Third-Party Plaintiffs cannot prove the existence of a business relationship</u>.

In Florida, no cause of action exists for tortious interference with a business's relationship to the community at large.[6]  <u>Ethan Allen, Inc. v. Georgetown Manor, Inc.</u>, 647 So.2d 812, 815 (Fla. 1994); <u>North Am. Van Lines, Inc. v. Ferguson Transp., Inc.</u>, 639 So.2d 32, 33 (Fla. 4th DCA 1994), aff'd, 687 So.2d 821 (Fla. 1996) ("The business relationship must be with an identifiable person and not with the public at large.") "An action for tortious interference with a business relationship requires a business relationship evidenced by an *actual and identifiable understanding or agreement* which in all probability would have been completed if the defendant had not interfered." <u>St. Johns River Water Mgmt. Dist. v. Fernberg Geological Servs</u>, 784 So. 2d 500, 503 (emphasis added).

"Loss of future customers is not sufficient to state a claim. The tort of unjustified interference with a business relationship requires the existence of a present relationship, not prospective relationships that one hopes to have in the future." <u>Beacon Property Management, Inc. v. PNR, Inc.</u>, 785 So.2d 564 (Fla. 4th DCA 2001), <u>overruled in non-</u>

---

[6]  In <u>Dunn v. Air Line Pilots Ass'n</u>, 193 F.3d 1185 (11th Cir. 1999), the Eleventh Circuit described the distinction Florida courts draw between a relationship with the community at large and with an identifiable customer.  In <u>Dunn</u>, a group of airline pilots that continued to work during a pilot strike sued a pilots' union that placed the group on a list of "scabs" for tortious interference. <u>Id</u>. at 1189-90.  The pilots claimed that the union's "publication of the scab list prohibited them from obtaining employment with any commercial airline - in other words, that it interfered with the pilots' ability to sell their labor to the general community." <u>Id</u>. at 1191.  The Eleventh Circuit rejected the pilots' claim, holding that a tortious interference claim requires "a relationship with a particular party, and not just a relationship with the general business community." <u>Id</u>. (citing Ethan Allen, 647 So. 2d at 815).

relevant part, 842 So.2d 773 (Fla. 2003).  "The speculative hope of future business is not sufficient to sustain the tort of interference with a business relationship."  St. Johns 784 So. 2d at 505.

Third-Party Plaintiffs have failed to identify an actual identifiable business relationship which Mokwa interfered with.  Third-Party Plaintiffs' case is premised on the theory that Mokwa's alleged conduct interfered with *all* of their business relationships.  Hailstones testified in no uncertain terms that the interference was "global."  Oct. Dep. of Hailstones 42:1-16; 57:17-21.  Hailstones further testified "the actions of Mr. Mokwa and his colleagues were designed to interfere with all of my business relationships, and Ms. Curry's for that matter."  Oct. Dep. of Hailstones 53:23-54:3.  When asked to identify the actual business relationship forming the basis of this lawsuit, Hailstones refused to comply.  Oct. Dep. of Hailstones 35:14-16.

> [COUNSEL]:  And, again, can you give one example of such a business relationship that's been negatively affected?
>
> [HAILSTONES]:  I can only refer you again to my prior answer, which is I'm not at liberty to give you a specific relationship.
>
> [COUNSEL]: So let me get this straight, you've brought a lawsuit in federal court in the United States claiming that business relationships have been interfered with, and upon being questioned under oath, your answer is you can't discuss what those relationships are?
>
> [HAILSTONES]:  Yes.

Oct. Dep. of Hailstones 42:7-25; 43:1-2.

Third-Party Plaintiffs have failed to identify the actual identifiable business relationship forming the basis for tortious interference claim.

2.      Third-Party Plaintiffs cannot prove knowledge of the relationship.

It is undisputed that Mokwa did not know what business relationships Third-Party

Plaintiffs were pursuing.

> [COUNSEL]:   Can you give a specific example of a
> business relationship that was conspired to be interfered
> with due to the actions of my client, Matthew Mokwa.
>
> [HAILSTONES]:  Well, your client, I presume, would not
> have been in a position to know which relationships we
> were being – we were pursuing; and, therefore conspiring
> against.  But, generally, their actions had a global effect in
> the business relationships which were being pursued.

Oct. Dep. of Hailstones 42:8-16.


3.      Third-Party Plaintiffs cannot prove interference.

To prove interference, Third-Party Plaintiffs must prove that Mokwa's actions

induced or caused a breach or termination of a business relationship or expectancy.

Smith v. Ocean State Bank, 335 So. 2d 641, 643 (Fla. 1st DCA 1976).  The interference

must be both intentional and unjustified.  Weight-Rite Golf Corp. v. United States Golf

Association, 766 F. Supp. 1104, 1112 (M.D. Fla. 1991), aff'd, 953 F.2d 651 (11th Cir.

1992).  "Under Florida law, there is no such thing as a cause of action for interference

which is only negligently or consequentially affected.  Accordingly, in order to prevail on

a tortious interference claim, a plaintiff must establish the defendant's intent to interfere,

as opposed to the defendant's mere intent to act.  To satisfy the intent requirement, the

plaintiff must show that the defendant's actions were purposely directed at the

interference."  Maxi-Taxi of Florida, Inc. v. Lee County Port Auth., 2008 U.S. App.
LEXIS 35073 *50 (M.D. Fla. 2008).

Third-Party Plaintiffs both testified that no prospective client or business contact
has ever told them that the reason for them not going forward had anything to do with
Mokwa.

> [COUNSEL]:  But again no one has ever told you that is
> why you were not getting calls back.
>
> [HAILSTONES]:  Nobody told me that that's why I wasn't
> getting calls back, but I think it's obvious.  It would be
> obvious.

Oct. Dep. of Hailstones 58:10-14.

Third-Party Plaintiffs' evidence consists entirely of their opinions and
suppositions.  They do not have any admissible evidence.


    4.    Third-Party Plaintiffs cannot prove damages.

Special damages "reasonably flowing" from Mokwa's alleged interference is an
essential element of Third-Party Plaintiffs' cause of action for tortious interference with
prospective business relationships.  Tamiami Trial Tours 463 at 1127.   Proof of nominal
damages will not suffice.  See Worldwide Primates, Inc. v. McGreal, 26 F.3d 1089, 1091
(11th Cir. 1994).

Third-Party Plaintiffs do not have a damage expert, witnesses or any other
evidence supporting their conclusory allegations of damages.   On multiple occasions
Third-Party Plaintiffs were asked to quantify their damages and refused, stating that their
damages are presumed and they do not need to prove damages.  Oct. Dep. of Curry 121:

14-20.  Because Plaintiff's have failed to offer any evidence of damages specific to their

interference claim, their claim is deficient as a matter of law.

     C.     <u>Florida Litigation Privilege</u>.

Hailstones testified that his claims against Bates and Mokwa are grounded in the

fact that their law firm represented Mirabilis.

> [COUNSEL]: What is your evidence that these individuals
> met and conspired in this way?
>
> [HAILSTONES]:  Well, number one, I've seen emails and
> documentation which are dated from about June 2007, I
> think it referenced litigation planning which includes
> myself, Ms. Curry, Palaxar.  It was one of the cases that
> was being planned and orchestrated by Mr. Amodeo
> through Bates, Mokwa.
>
> [COUNSEL]: So it is your testimony this conspiracy was
> done under the banner of litigation planning?
>
> [HAILSTONES]:  Yes ...

Oct. Dep. of Hailstones 26:16-18.

"Florida's litigation privilege affords absolute immunity for acts occurring during

the course of judicial proceedings.  The privilege initially developed to protect litigants

and attorneys from liability for acts of defamation, but has since been extended to cover

all acts related to and occurring within judicial proceedings."  <u>Jackson v. Bellsouth</u>

<u>Telecomms</u> 372 F.3d 1250, 1274 (11th Cir. 2004) (internal citations omitted).

In <u>Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United</u>

<u>States Fire Ins. Co.</u>, 639 So. 2d 606 (Fla. 1994), the Florida Supreme Court explained the

scope and rationale of the privilege:

> Absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior . . . so long as the act has some relation to the proceeding. The rationale behind the immunity afforded to defamatory statements is equally applicable to other misconduct occurring during the course of a judicial proceeding. Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct.

Id. at 608.

In the present case, the conduct forming the basis for the Third-Party Complaint occurred during the service of process of the Original Action and specifically involves a discussion regarding the merits of the Original Action. Dep. of Curry 104:3-105:11; Def. Ex. 7. Actions involved in the prosecution of a lawsuit are clearly protected under the Florida litigation privilege. See Microsoft Corp. v. Big Boy Distrib. LLC, 589 F. Supp. 2d 1308, 1322 (holding that "Big Boys' tortious interference claim is barred by Florida's litigation privilege to the extent this claim is predicated on Microsoft's conduct in pursuing its legal remedies through this lawsuit or another lawsuit").

### D.   Conspiracy.

The elements of a complaint for civil conspiracy are: (1) a conspiracy between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) the doing of some overt act in pursuance of the conspiracy; and (4) damage to plaintiff as a result of the acts done under the conspiracy. Florida Fern Growers Ass'n, Inc. v. Concerned Citizens of Putnam County, 616 So.2d 562, 565 (Fla. 4th DCA 1993).

First and foremost, civil conspiracy requires proof of an underlying tort. <u>Border Collie Rescue, Inc. v. Ryan</u>, 418 F. Supp. 2d 1330, 1339 (M.D. Fla. 2005). Because Third Party Plaintiffs' underlying tort claims against Mokwa are deficient, the Court must also grant summary judgment in favor of Mokwa on Third-Party Plaintiffs' civil conspiracy claims.

Second, Third-Party Plaintiffs' conspiracy claims are barred by the intracorporate conspiracy doctrine. A corporation's officers, directors or employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation. <u>Dickerson v. Alachua Country Com'n</u>, 200 F. 3d 761, 767 (11th Cir. 2000) (holding that it is impossible for a single entity consisting of the corporation and its agents to conspire with itself, just as it is not possible for an individual person to conspire with himself). The Amended Complaint expressly alleges that:

> Mirabilis was controlled by Frank Amodeo. Amodeo was the sole individual permitted to make significant business decisions for Mirabilis, Nexia, Counterclaim Defendants AQMI Strategy, and Wellington Capital during the relevant time period.

(Doc. 59 at ¶16).

> Third-Party Defendant Yaniv Amar … at times relevant to this action was an executive at Mirabilis and/or one of its affiliates.

(<u>Id</u>. at ¶8).

> Third-Party Defendant Aaron Bates … at times relevant to this action was formally counsel to Mirabilis and/or one of its affiliates companies and is presently counsel to Plaintiffs in this case.

(<u>Id</u>. at ¶9).

> Third-Party Defendant Matthew Mokwa … at times relevant to this action was formally counsel to Mirabilis and/or one of its affiliates companies and is presently counsel to Plaintiffs in this case.

(Id. at ¶11).

The Amended Complaint further alleges that Bates, Amar and Mokwa committed the allegedly tortious acts "within their apparent authority" as "representatives" of Mirabilis and Nexia.  (Doc. 59 at ¶¶85, 98, and 108).  Accordingly, the express allegations of the complaint demonstrate that each of the parties to the conspiracy were agents of Mirabilis and were acting within their apparent authority.  Thus, Third-Party Plaintiffs' conspiracy claims fail under the intracorporate conspiracy doctrine.

Finally, Third-Party Plaintiffs' conspiracy claims lack any evidentiary support. The entire cause of action is based on conclusory allegations that are unsupported by relevant admissible evidence.

## CONCLUSION

Third-Party Plaintiffs cannot show a genuine issue of material fact requiring trial on any of their claims.  The evidence offered by Third-Party Plaintiffs offers no reasonable basis from which a reasonable jury could find that Mokwa committed slander or intentional interference with a business relationship.  For all the reasons set forth herein, Third-Party Defendant Matthew S. Mokwa respectfully asks this Court to find that there remains no genuine issue of material fact to be tried, and Third-Party Defendant Matthew S. Mokwa is entitled to summary judgment on all counts against him.

Respectfully submitted this 8th day of November, 2010.

s/ Adam J. Loewy                       KATHLEEN DAVIES
ADAM J. LOEWY                   The Davies Law Firm, LLC
Texas Bar No. 24041353          126 East Jefferson Street
BARRY & LOEWY, LLP          Orlando, FL 32801
The Frost Tower                  Ph.: (407) 540-1010
401 Congress Avenue           Fax: (407) 649-3038
Suite 1540                       kdavies@thedavieslawfirm.com
Austin, TX 78701               *Counsel for Aaron Bates and*
Ph.: (512) 852-4322            *Matthew Mokwa*
Fax: (512) 687-3441
aloewy@barryloewy.com
*Counsel for Matthew Mokwa*

## LOCAL RULE 3.01(G) CERTIFICATION

The undersigned certify that, with respect to the foregoing motion, they did not confer with counsel for Third-Party Plaintiffs, as this motion seeks to involuntarily dismiss their claims.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 8, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties named on the attached Service List or in some other authorized manner for those counsel or parties who are not authorized to receive notices electronically.

s/ Adam J. Loewy
Adam J. Loewy

26

**SERVICE LIST**

| | |
|---|---|
| Kathleen Havener<br>Havener Law Firm, LLC<br>15511 Russell Road<br>Chagrin Falls, Ohio 44022 | Yaniv Amar<br>3475 Mystic Point Drive, TH #10<br>Aventura, FL 33180<br>**Third-Party Defendant** |
| Martin R. Raskin<br>Jane S. Raskin<br>RASKIN & RASKIN, P.A.<br>2601 South Bayshore Drive<br>Suite 725<br>Miami, Florida  33133<br>mraskin@raskinlaw.com<br>**Attorneys for Edith Curry, Frank Hailstones, Palaxar Group LLC, and Palaxar Holdings LLC** | James V. Sadrianna<br>10025 Chatham Oaks Court<br>Orlando, Florida 32836<br>**Third-Party Defendant**<br><br>Frank Amodeo<br>FCC - Low, B3<br>P.O. Box 1031<br>Coleman, FL 33521-1031<br>**Third-Party Defendant** |