AEM, INC.

FINANCIAL STATEMENTS

DECEMBER 31, 2005

---

# JAMES MOORE & CO., P.L.

### CERTIFIED PUBLIC ACCOUNTANTS AND CONSULTANTS

## INDEPENDENT AUDITORS' REPORT

To the Stockholder,
AEM, Inc:

We have audited the accompanying balance sheet of AEM, Inc. (a wholly owned subsidiary of Mirabilis Ventures, Inc.) as of December 31, 2005, and the related statements of income, stockholder's equity, and cash flows for the year then ended. These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these financial statements based on our audit.

We conducted our audit in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audit provides a reasonable basis for our opinion.

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of AEM, Inc. as of December 31, 2005, and the results of its operations and its cash flows for the year then ended in conformity with accounting principles generally accepted in the United States of America.

James Moore & Co., P.L.

Gainesville, Florida
April 26, 2006

-1-

**AEM, INC.**
**BALANCE SHEET**
**DECEMBER 31, 2005**

### ASSETS

| | | |
|---|---|---:|
| **Current assets** | | |
| Cash and cash equivalents | $ | 465,715 |
| Accounts receivable | | 4,475,000 |
| Due from related party | | 629,181 |
| Prepaid expenses | | 608,462 |
| Total current assets | | 6,178,358 |
| **Other assets** | | |
| Goodwill | | 13,000 |
| **Total Assets** | $ | 6,191,358 |

### LIABILITIES AND STOCKHOLDER'S EQUITY

| | | |
|---|---|---:|
| **Current liabilities** | | |
| Related party loan payable | $ | 1,262,643 |
| Accounts payable and accrued expenses | | 29,479 |
| Income taxes payable | | 1,910,186 |
| Total current liabilities | | 3,202,308 |
| **Stockholder's equity** | | |
| Common stock, $1 par value;100 shares authorized, | | |
| issued and outstanding, | | 100 |
| Additional paid in capital | | 35,428 |
| Retained earnings | | 2,953,522 |
| Total stockholder's equity | | 2,989,050 |
| **Total Liabilities and Stockholder's Equity** | $ | 6,191,358 |

The accompanying notes to the financial statements
are an integral part of this statement.

-2-

---

**AEM, INC.**
**STATEMENT OF INCOME**
**FOR THE YEAR ENDED DECEMBER 31, 2005**

| | | |
|---|---|---:|
| **Revenues** | | |
| Payroll services | $ | 5,001,000 |
| Management services | | |
| Total revenues | | 5,001,000 |
| Selling, general and administrative expenses | | 104,364 |
| Income from operations | | 4,896,636 |
| Income tax provision | | 1,910,186 |
| Net income | $ | 2,986,450 |

The accompanying notes to the financial statements
are an integral part of this statement.

-3-

## AEM, INC.
## STATEMENT OF CASH FLOWS
## FOR THE YEAR ENDED DECEMBER 31, 2005
### Increase (Decrease) in Cash and Cash Equivalents

| | |
|---|---:|
| **Cash flows from operating activities** | |
| Net income | $ 2,986,450 |
| Adjustments to reconcile net income to net cash used in operating activities: | |
| Changes in assets and liabilities: | |
| Accounts receivable | (4,475,000) |
| Prepaid expenses | (608,462) |
| Accounts payable and accrued expenses | 29,422 |
| Income taxes payable | 1,910,186 |
| Total adjustments | (3,143,854) |
| Net cash used in operating activities | (157,404) |
| **Cash flows from investing activities** | |
| Increase in due from related party | (629,181) |
| Net cash used in investing activities | (629,181) |
| **Cash flows from financing activities** | |
| Proceeds from related party loan advances | 1,252,100 |
| Net cash provided by financing activities | 1,252,100 |
| Net increase in cash and cash equivalents | 465,515 |
| Cash and cash equivalents, beginning of year | 200 |
| Cash and cash equivalents, end of year | $ 465,715 |

The accompanying notes to financial statements
are an integral part of this statement.

- 5 -

- 4 -

The accompanying notes to financial statements
are an integral part of this statement.

## AEM, INC.
## STATEMENT OF STOCKHOLDER'S EQUITY
## FOR THE YEAR ENDED DECEMBER 31, 2005

| | Common Stock | Additional Paid-in Capital | Retained Earnings (Deficit) | Total |
|---|---:|---:|---:|---:|
| Balance, January 1, 2005 | $ 100 | $ 35,428 | $ (32,928) | $ 2,600 |
| Net Income | | | 2,986,450 | 2,986,450 |
| Balance, December 31, 2005 | $ 100 | $ 35,428 | $ 2,953,522 | $ 2,989,050 |

AEM, INC.
NOTES TO FINANCIAL STATEMENTS
DECEMBER 31, 2005

**(1)  Summary of Significant Accounting Policies:**

The following is a summary of the more significant accounting policies of AEM, Inc. (the Company), which affect significant elements of the accompanying financial statements:

**(a)  Business activity**—The Company was incorporated on October 7, 2001 with the state of Florida and is headquartered in Orlando, Florida. The Company provides management services to businesses in the employee leasing industry. Also, the Company plans to provide comprehensive solutions for the employment, benefit, and human resource related concerns of small to medium sized businesses. The Company is licensed with the State of Florida Department of Business and Professional Regulation Board of Employee Leasing Companies effective June 26, 2003 and the license expires on April 30, 2008.

The Company's stock was acquired on April 29, 2005 by Mirabilis Ventures, Inc. (the Parent Company) and as of that date the Company was a wholly owned subsidiary of the Parent Company except for the period from July 6, 2005 to September 5, 2005. During this period, 51% of the Company stock was owned by another party. The Company has obtained a fictitious name filing to use the name Mirabilis HR from the state of Florida effective August 4, 2005.

**(b)  Use of estimates**—The preparation of financial statements in conformity with accounting principles generally accepted in the United States of America requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period. Significant estimates and assumptions include the recoverability of goodwill. Actual results could differ from these estimates.

**(c)  Revenue recognition**—The Company accounts for its revenues using the accrual method of accounting. Under the accrual method of accounting, the Company's policy is to recognize revenue and record a receivable when services are rendered.

**(d)  Sales and Marketing Commissions and Client Referral Fees**—Sales and marketing commissions and client referral fees are expensed as incurred. Such expenses are classified as selling, general and administrative in the statement of income.

**(e)  Workers' Compensation Costs**—The Company entered into a workers' compensation insurance program on August 1, 2005. The program is with SUNZ Insurance Company (SUNZ) through August 1, 2006. The program provides workers compensation coverage for workers compensation claims incurred during the plan year. The Company added Presidion Solutions, Inc. (Presidion) as an additional insured to this policy (see Note 3). The Company did not have employees during 2005 that were covered under this policy. All liabilities incurred under this policy were by Presidion.

**(f)  Cash and cash equivalents**—The Company considers cash on hand and highly liquid investments, which have original maturities of three months or less, to be cash and cash equivalents.

**(g)  Accounts receivable**—Accounts receivable are stated at the amount management expects to collect from outstanding balances. Management provides for probable uncollectible amounts through a charge to earnings and a credit to a valuation allowance based on its assessment of the current status of individual accounts. The Company does not charge interest or late payment fees on past due accounts. Recoveries are recognized in the period they are received. The ultimate amount of accounts receivable that become uncollectible could differ from that estimated. At December 31, 2005, there is no balance in the valuation allowance account as management expects the receivables to be fully collectible.

The Company does not intend to have significant trade receivables as a professional employer organization (PEO), as the Company intends to process advance funding for client payroll. In 2005, all revenues were earned under a single management service agreement.

**(h)  Goodwill**—Goodwill is the excess of cost of an acquired entity over the amounts assigned to assets acquired and liabilities assumed in business combination. Goodwill is not amortized. In accordance with Statement of Financial Accounting Standards ("SFAS") No. 142, the Company will evaluate goodwill on an annual basis for potential impairment and between annual tests if an event occurs or circumstances change that would indicate the carrying amount may be impaired. The Company has concluded that there was no impairment of goodwill as of December 31, 2005.

**(i)  Income taxes**—Effective with the Company stock being sold by the former sole shareholder on April 29, 2005 as discussed in Note 1, the Company became a taxable entity. Prior to April 29, 2005, no provision was made for income taxes because earnings and losses were included in the personal tax return of the sole stockholder, and were taxed based on his personal tax strategies. After incorporation, provision has been made for the tax effects of transactions reported in the financial statements, and consists of taxes currently due. As discussed in Note 6, a current tax liability was provided. Deferred tax assets and liabilities are recognized for the estimated future tax consequences attributable to differences between the financial statement carrying amounts of existing assets and their respective income tax bases. Deferred tax assets and liabilities are measured using enacted and statutory rates expected to apply to taxable income in the years in which those temporary differences are expected to be recovered or settled. A valuation allowance is provided against the future benefit of deferred tax assets if it is determined that it is more likely than not that the future tax benefits associated with the deferred tax asset will not be realized. Income tax expense is the tax payable for the period and the change during the period in deferred tax assets and liabilities.

**(j)  Advertising costs**—Advertising costs, included in selling, general and administrative expenses, are expensed as incurred. Advertising expenses were approximately $12,025 for the year ended December 31, 2005.

**(k)  Prepaid expenses**—Prepaid expenses consist of advance payments for worker compensation policies with an effective policy date after December 31, 2005.

- 6 -

- 7 -

AEM, INC.
NOTES TO FINANCIAL STATEMENTS
DECEMBER 31, 2005

**(2) Concentrations of Credit Risk:**

Financial instruments, which potentially subject the Company to concentrations of credit risk consist primarily of cash, workers' compensation insurance and accounts receivable.

The Company maintains cash in demand deposit accounts with federally insured banks. At times, the balances in the accounts may be in excess of federally insured limits. The Company does not believe that it is exposed to significant credit risk in connection with cash.

The Company has a $4,475,000 accounts receivable balance at December 31, 2005. The Company routinely assesses the financial strength of its customers. Management believes than the Company's trade accounts receivable credit exposure is limited. The Company has no policy requiring collateral or other security to support its accounts receivable.

The Company has a due from related party of $629,181 at December 31, 2005. Management believes that the Company's due from related party credit risk exposure is limited. The Company has no policy regarding collateral or other security to support its due from related party.

The Company's risk related to workers' compensation is discussed in Note 3.

**(3) Related Party Transactions:**

During the year ended December 31, 2005, 100% of the Company's revenue was from Presidion. Presidion is composition indirectly owned by a minority stockholder of the Parent Company. Effective August 1, 2005, the Company entered into a contract with Presidion for management services including assistance with obtaining workers compensation insurance coverage upon the expiration of its existing coverage. Under the terms of this agreement, the Company earns $1,000,000 a month for the management services and at December 31, 2005, is due $4,475,000.

The Company obtained workers' compensation coverage on behalf of Presidion as discussed in Note 1. The Company advanced SUNZ $3,029,181 for amounts due under this policy and was reimbursed by Presidion for $2,400,000 and is due $629,181 by Presidion at December 31, 2005 and this amount is recorded as due from related party. Presidion was responsible for paying all amounts due under the SUNZ policy in 2005.

The Company had provided a collateralized letter of credit for $6,750,000 for the benefit of SUNZ under the workers' compensation coverage provided by SUNZ. The Parent Company has collateralized the letter credit on behalf of the Company with $6,750,000 in certificates of deposit.

The SUNZ insurance policy is a loss sensitive program that provides insurance coverage for claims incurred in each plan year but which may be paid out over future periods dependent upon the nature and extent of the workside injury. The fully insurance loss sensitive programs provide for a sharing of risk between the insurance company and the Company or Presidion whereby the Company or Presidion is responsible for paying the first $1 million deductible per occurrence of claim and the insurance company is responsible for amounts in excess of the Company's per occurrence amount. If the Company or Presidion were to fail to make premium payments to the insurance carrier as scheduled, then the carrier

AEM, INC.
NOTES TO FINANCIAL STATEMENTS
DECEMBER 31, 2005

**(3) Related Party Transactions: (Continued)**

would be responsible for the payment of all losses under the terms of the policy. A portion of the premium payments to SUNZ is deposited into a loss fund to pay claims. The total cost of claims to be paid by Presidion are determined based on claims paid and estimated liabilities outstanding on actual claims reported and an estimate of claims incurred but not reported. Since the Company is the insured under the SUNZ policy, it assumes the risk should Presidion not adequately fund the loss fund.

The Company has entered into an assignment agreement with Presidion to acquire the book of business of Presidion for $12,000,000 upon effective transfer of the client service/subscriber agreements paid in monthly payments in an amount equal to one-half of one percent (0.50%) of the monthly gross payroll collected. The transfer originally was to occur in 2005, but it is now anticipated to occur in May 2006. Presidion has agreed to allow the Company to offset these payments with amounts owed to the Company, at the option of the Company.

The related party loan payable is for several advances from the Parent Company. The advance has no set repayment terms and is due on demand. In addition, the Parent Company has provided certain services and overhead for the Company without charge.

The Company's employees are paid through a related company, Common Paymaster Corp.

**(4) Income Taxes:**

Provision for income taxes consists of the following:

| | | |
|---|---|---:|
| Current tax expense | | |
| Federal | $ | 1,664,856 |
| State of Florida | | 245,330 |
| Total current tax expense | | 1,910,186 |
| Deferred tax expense | | |
| Federal | $ | - |
| State of Florida | | - |
| Total deferred tax expense | | - |
| Total income tax provision | $ | 1,910,186 |

There were no significant temporary differences giving rise to a deferred tax liability as of December 31, 2005. The tax provision for the year ended December 31, 2005, was computed based on statutory federal and state tax rates.

ADM, INC.
NOTES TO FINANCIAL STATEMENTS
DECEMBER 31, 2005

(5)  **Risks and Uncertainties:**

The Company's business is concentrated in one industry. In addition, the Company's receivables and revenue are from one major customer. The future of the Company is dependent on this major customer and an effective transition of Presidion's book of business.

The Company is subject to certain risks associated with the workers' compensation policy and the actual loss incurred under the policy.

(6)  **Subsequent Events:**

The Company has entered into an assignment agreement with Presidion to acquire the book of business of Presidion for $12,000,000 upon effective transfer of the client service/subscriber agreements. The transfer is anticipated to occur in May 2006.

# JAMES MOORE & CO., P.L.

CERTIFIED PUBLIC ACCOUNTANTS
AND CONSULTANTS

## INDEPENDENT AUDITORS' REPORT

To the Director and Stockholder,
The Human Resource Enterprise Corporation:

We have audited the accompanying balance sheet of The Human Resource Enterprise Corporation (a wholly owned subsidiary of Mirabilis Ventures, Inc.) as of December 31, 2005, and the related statements of operations, stockholder's equity, and cash flows for the period from September 15, 2005 (inception) to December 31, 2005. These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these financial statements based on our audit.

We conducted our audit in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audit provides a reasonable basis for our opinion.

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of The Human Resource Enterprise Corporation as of December 31, 2005, and the results of its operations and its cash flows for the period from September 15, 2005 (inception) to December 31, 2005, in conformity with accounting principles generally accepted in the United States of America.

James Moore & Co., P.L.

Gainesville, Florida
April 28, 2006

-1-

THE HUMAN RESOURCE
ENTERPRISE CORPORATION

FINANCIAL STATEMENTS

DECEMBER 31, 2005

THE HUMAN RESOURCE ENTERPRISE CORPORATION
BALANCE SHEET
DECEMBER 31, 2005

## ASSETS

| | | |
|---|---|---|
| **Current assets** | | |
| Cash and cash equivalents | $ | 45,614 |
| Total current assets | | 45,614 |
| | | |
| **Total Assets** | $ | 45,614 |

## LIABILITIES AND STOCKHOLDERS EQUITY

| | | |
|---|---|---|
| **Current liabilities** | | |
| Related party loan | $ | 1,650 |
| Total current liabilities | | 1,650 |
| | | |
| **Stockholder's equity** | | |
| Common stock, $1 par value; 1,000 shares authorized, | | |
| 100 shares issued and outstanding | | 100 |
| Additional paid-in capital | | 49,900 |
| Retained deficit | | (6,036) |
| Total stockholder's equity | | 43,964 |
| | | |
| **Total Liabilities and Stockholder's Equity** | $ | 45,614 |

The accompanying notes to the financial statements
are an integral part of this statement.

- 2 -

---

THE HUMAN RESOURCE ENTERPRISE CORPORATION
STATEMENT OF OPERATIONS
FROM SEPTEMBER 15, 2005 (INCEPTION) TO DECEMBER 31, 2005

| | | |
|---|---|---|
| **Revenues** | $ | - |
| | | |
| Selling, general and administrative expenses | | 6,036 |
| | | |
| **Net loss** | $ | (6,036) |

The accompanying notes to the financial statements
are an integral part of this statement.

- 3 -

THE HUMAN RESOURCE ENTERPRISE CORPORATION
STATEMENT OF CASH FLOWS
FROM SEPTEMBER 15, 2005 (INCEPTION) TO DECEMBER 31, 2005
Increase (Decrease) in Cash and Cash Equivalents

| | |
|---|---:|
| Cash flows from operating activities | |
| Net loss | $ (6,036) |
| Net cash used in operating activities | (6,036) |
| | |
| Cash flows from financing activities | |
| Proceeds from related party loan | 1,650 |
| Proceeds from issuance of common stock | 50,000 |
| Net cash provided by financing activities | 51,650 |
| | |
| Net increase in cash and cash equivalents | 45,614 |
| | |
| Cash and cash equivalents, beginning of period | |
| | |
| Cash and cash equivalents, end of period | $ 45,614 |

The accompanying notes to financial statements
are an integral part of this statement.

- 4 -

THE HUMAN RESOURCE ENTERPRISE CORPORATION
STATEMENT OF STOCKHOLDER'S EQUITY
FROM SEPTEMBER 15, 2005 (INCEPTION) TO DECEMBER 31, 2005

| | Common Stock | Additional Paid-in Capital | Retained Deficit | Total |
|---|---:|---:|---:|---:|
| Balance, September 15, 2005 | $ - | $ - | $ - | $ - |
| Issuance of common stock | 100 | 49,900 | - | 50,000 |
| Net Income | - | - | (6,036) | (6,036) |
| Balance, December 31, 2005 | $ 100 | $ 49,900 | $ (6,036) | $ 43,964 |

The accompanying notes to financial statements
are an integral part of this statement.

- 5 -

THE HUMAN RESOURCE ENTERPRISE CORPORATION
NOTES TO FINANCIAL STATEMENTS
DECEMBER 31, 2005

**(1) Summary of Significant Accounting Policies:**

The following is a summary of the more significant accounting policies of The Human Resource Enterprise Corporation (the Company), which affect significant elements of the accompanying financial statements:

(a) **Business activity**—The Company was incorporated with the State of Florida on September 15, 2005. The Company plans to provide comprehensive solutions for the employment, benefit, and human resource related concerns of small to medium sized businesses. The Company is licensed with the State of Florida Department of Business and Professional Regulation Board of Employee Leasing Companies effective November 4, 2005 and the license expires on April 30, 2006. The Company is a wholly owned subsidiary of Mirabilis Ventures, Inc. (the Parent Company).

(b) **Use of estimates**—The preparation of financial statements in conformity with accounting principles generally accepted in the United States of America requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period. Actual results could differ from those estimates.

(c) **Revenue recognition**—It is the Company's policy to recognize revenue and record a receivable when services are rendered.

(d) **Cash and cash equivalents**—The Company considers cash on hand and highly liquid investments, which have original maturities of three months or less, to be cash and cash equivalents.

(e) **Income taxes**—The provision for income taxes is based on the net income reported for financial reporting purposes by the Company. At December 31, 2005, there were no deferred income taxes.

**(2) Concentrations of Credit Risk:**

(a) **Demand deposits**—The Company had demand deposits with a bank amounting to $45,614 at December 31, 2005. The Company has no policy requiring collateral or other security to support its deposits, although all demand deposits with banks are federally insured up to $100,000 under FDIC protection.

**(3) Related Party Transactions:**

The related party loan is for an advance from the Parent Company. The advance has no set repayment terms and is due on demand.

-6-

THE HUMAN RESOURCE ENTERPRISE CORPORATION
NOTES TO FINANCIAL STATEMENTS
DECEMBER 31, 2005

**(4) Income Taxes:**

The components of the Company's net deferred tax asset and the tax effects of the primary temporary differences giving rise to the Company's deferred tax asset are as follows as of December 31, 2005:

| | |
|---|---|
| Deferred tax asset due to net operating loss | $ 1,800 |
| Valuation allowance | (1,800) |
| Net deferred tax asset | $ — |

Any tax benefits for the year ended December 31, 2005, computed based on statutory federal and state rates, are completely offset by valuation allowances established since realization of the deferred tax benefits are not considered more likely than not to be realized.

At December 31, 2005, the Company has a federal net operating loss carryforward of approximately $6,000 available to reduce future taxable income, which expires in 2025.

Under the provisions of the Internal Revenue Code, certain substantial changes in the Company's ownership may result in a limitation on the amount of net operating loss carryforwards, which can be used in future years.

**(5) Subsequent Event:**

The Parent Company contributed an additional $10,000 of additional paid-in capital on April 28, 2006, to increase the stockholder's equity of the Company. The pro-forma stockholder's equity of the Company as of December 31, 2005, would be as follows if the capital contribution had been made at the time of the original issuance of common stock:

| | |
|---|---|
| Common stock | $ 100 |
| Additional paid-in capital | 59,900 |
| Retained deficit | (6,036) |
| | $ 53,964 |

-7-

**From:**       Scott Goldberg
**Sent:**       Tuesday, June 21, 2005 10:14 AM
**To:**         Michelle Hladky
**Subject:**    RE: Yaniv Resolutions
**Attachments:** Resolution of BOD-Yaniv-Ratify(062105).doc

Michelle,

Attached are the Minutes for the Board of Directors, with Yaniv signing.  Please have Jim review and let me know what changes he wants.

Thank you ever so kindly,

Scott M. Goldberg, Esq.
20 N. Orange Ave., Ste. 1400
Orlando, Florida  32801
Ph:  (407) 318-8000
Fx:  (407) 426-9191

**From:** Michelle Hladky
**Sent:** Tuesday, June 21, 2005 9:27 AM
**To:** Scott Goldberg
**Subject:**

Hi Scott,

Jim needs you to draw up Minutes that Yaniv can sign to ratify the Resolution from yesterday. List Yaniv as Director. You do not need to include the notary.

Thanks,
Michelle



# MINUTES OF

# MIRABILIS VENTURES, INC.

## SPECIAL MEETING OF BOARD OF DIRECTORS

A special meeting of the Board of Directors of Mirabilis Ventures, Inc., was held at 20 N. Orange Avenue, Ste. 1400, Orlando, Florida 32801, on June 21, 2005, at 11:00 am.  All of the directors were present, having waived notice of the meeting.  Yaniv Amar acted as Chairman of the meeting.

Upon motion duly made, seconded and approved by the Board of Directors, the following resolutions were adopted:

RESOLVED, that the form and content of the Resolutions executed by the officers of the corporation, dated June 20, 2005 (as presented to the Board of Directors), are hereby ratified.

RESOLVED, that the officers of this corporation are, and each acting alone is, hereby authorized to do and perform any and all such acts, including execution of any and all documents and certificates, as such officers shall deem necessary or advisable, to carry out the purposes and intent of the foregoing resolution.

The meeting was adjourned at 12:00 pm.

Signature: _____
Name:  Yaniv Amar
Its:     Director, Chairman


## WAIVER AND CONSENT

The undersigned, being all the directors of Mirabilis Ventures, Inc., hereby waive notice of the Special Meeting of the Board of Directors held on June 21, 2005, and do hereby consent to all actions taken thereat.

Signature: _____
Name:  Yaniv Amar
Its:     Director

# MINUTES OF

## MIRABILIS VENTURES, INC.

### SPECIAL JOINT MEETING OF THE BOARD OF DIRECTORS AND SHAREHOLDERS

#### July 6, 2005

A special joint meeting of the shareholders and directors of Mirabilis Ventures, Inc., was held at 20 N. Orange Avenue, Orlando, Florida 32801 on July 6, 2005, at 1:00 pm. All of the shareholders and directors were present, having waived notice of the meeting. Yaniv Amar acted as Chairman of the meeting.

Upon motion duly made, seconded and approved by the Shareholders and Board of Directors, the following resolutions were unanimously adopted:

RESOLVED, that the Company is authorized and directed to issue One Million (1,000,000) shares of Preferred Stock of $0.00 par value each.

RESOLVED FURTHER, that the appropriate officers of the Company are hereby authorized and directed to take all such actions as they shall deem necessary or advisable to carry out the foregoing resolution and to execute and file Articles of Amendment with the Secretary of State of the State of Nevada reflecting the aforementioned amendment to the Articles of Incorporation.

There being no further business, the meeting was adjourned at 2:00 pm.


Yaniv Amar, Chairman


### WAIVER AND CONSENT

The undersigned, being all the shareholders and directors of Mirabilis Ventures, Inc., hereby waive notice of the Special Joint Meeting of the Board of Directors and Shareholders held on July 6, 2005, and consent to all actions taken thereat.


Yaniv Amar, Director and Sole Shareholder

MINUTES OF

MIRABILIS VENTURES, INC.

SPECIAL JOINT MEETING OF THE BOARD OF
DIRECTORS AND SHAREHOLDERS

July 6, 2005

A special joint meeting of the shareholders and directors of Mirabilis Ventures, Inc., was held at 20 N. Orange Avenue, Orlando, Florida 32801 on July 6, 2005, at 2:00 pm. All of the shareholders and directors were present, having waived notice of the meeting. Yaniv Amar acted as Chairman of the meeting.

Upon motion duly made, seconded and approved by the Shareholders and Board of Directors, the following resolutions were unanimously adopted:

RESOLVED, that the Company is authorized and directed to enter into an Assignment Agreement, to transfer fifty-one percent (51%) of Company's total interest in AEM, INC., a Florida Corporation, to Laurie Andrea upon approval of a definitive agreement on terms acceptable to the Board of Directors.

RESOLVED FURTHER, that the appropriate officers of the Company are hereby authorized and directed to take all such actions as they shall deem necessary or advisable to carry out the foregoing resolution.

There being no further business, the meeting was adjourned at 3:00 pm.

Yaniv Amar, Chairman

WAIVER AND CONSENT

The undersigned, being all the shareholders and directors of Mirabilis Ventures, Inc., hereby waive notice of the Special Joint Meeting of the Board of Directors and Shareholders held on July 6, 2005, and consent to all actions taken thereat.

Yaniv Amar, Director and Sole Shareholder

## MINUTES OF

## MIRABILIS VENTURES, INC.

## SPECIAL JOINT MEETING OF DIRECTORS AND SHAREHOLDERS

### APRIL 7, 2005

A special joint meeting of the directors and shareholders of MIRABILIS VENTURES, INC. was held at 20 N. Orange Avenue, Orlando, Florida 32801 on April 7, 2005, at 9:30 am. All of the directors and shareholders were present. Frank Amodeo acted as Chairman of the meeting.

WHEREAS, at a special joint meeting of the directors and shareholders held on February 15, 2005, the Company adopted certain resolutions for the creation of employee positions, and the payment of base compensation and additional compensation to such employees. A copy of the Minutes of such meeting is attached hereto as Exhibit "A" (the "February 15, 2005 Minutes").

WHEREAS, the directors and shareholders desire to now modify and further expand the additional compensation payable to such employees.

Upon motion duly made and seconded, the following resolutions were unanimously adopted:

RESOLVED, the February 15, 2005 Minutes are hereby ratified and confirmed, and the defined terms therein apply herein.

RESOLVED, the preferred shares which are to be granted to such employees and consultants whenever Company revenues are sufficient to do so, on the basis of the Formula, shall be granted based on the new formula set forth in revised Schedule "A" attached hereto (the "New Formula").

RESOLVED, based on the New Formula, whenever 30 preferred shares have been granted, such person shall be eligible to be a Partner, as set forth in the New Formula, and as a Partner, shall have the right to vote, with other Partners, on the admission of new Partners. A person can become a Partner whenever 1/2 of all current Partners vote to grant partnership status to such person.

RESOLVED, the maximum number of preferred shares that any person may earn shall be fifty (50).

RESOLVED, that eligibility for Tenured Member status shall automatically be granted to any Partner who has served continuously as a Senior Regional Partner (as such position shall be further defined and established by the Company) for three (3) years, regardless of the number of preferred shares held by such Partner.

RESOLVED, that Tenured Members shall select which persons of the Company shall serve as directors on the boards of directors of various companies affiliated with the Company, and thereby be entitled to receive the additional compensation listed in the Formula for such services.

RESOLVED, that Frank Amodeo is hereby authorized and directed to take all such actions as he shall deem necessary or advisable to carry out the foregoing resolutions.

There being no further business, the meeting was adjourned at 11:00 am.

Frank Amodeo, Chairman

## WAIVER AND CONSENT

The undersigned, being all the shareholders and directors of Mirabilis Ventures, Inc., hereby waive notice of the Special Joint Meeting of the Board of Directors and Shareholders held on April 17, 2005, and consent to all actions taken thereat.

Frank Amodeo, Chairman

**WRITTEN ACTION OF THE DIRECTORS**
**OF**
**MIRABILIS VENURES, INC.**

October 28, 2004

The undersigned, being and constituting all of the Directors of MIRABILIS VENTURES, INC., a Nevada corporation (the "Corporation" or "MVI"), do hereby consent to the following actions to be taken without a meeting of the Board of Directors of this Corporation:

**BE IT RESOLVED THAT** this Corporation is authorized to issue 1,000 shares of common stock to Yaniv Amar in exchange for the provision of $100 of in-kind services, and other good and valuable consideration.

Yaniv Amar, Director

**From:** Mark Bernet
**Sent:** Wednesday, February 07, 2007 6:02 PM
**To:** Mike Stanley; Kevin Leonard; Bill Walsh; Robert Nevill
**Cc:** Yaniv Amar
**Subject:** RE: CHS Payroll

Can AEM acquire Florida PEO assets?  What was the original intent for HRE?  I appreciate that we don't necessarily want to waste $125K, but if we're not doing anything with it and we can shut it down easily, we should consider doing so.  My guess is that the $50K isn't coming back any time soon.

**From:** Mike Stanley
**Sent:** Wednesday, February 07, 2007 5:42 PM
**To:** Mark Bernet; Kevin Leonard; Bill Walsh; Robert Nevill
**Cc:** Yaniv Amar
**Subject:** RE: CHS Payroll

MVI paid 125K for AEM as a shell.  Additionally, it takes 2-6 months to license a PEO in Florida.  To purchase a Florida Book in a asset sale you need a licensed PEO as well as approval from the board.  The total process is 3-9 months.  With a shell you can reduce the time to 1-3 months.

The DBPR needs confirmation that the PEO is in good standings before it will shut down a PEO and release the controlling person.  I am not sure if HRE needs its 2006 audit before it is shut down

I have no business with HRE and personally be more than willing to see it shut it down.

**From:** Mark Bernet
**Sent:** Wed 2/7/2007 5:15 PM
**To:** Kevin Leonard; Mike Stanley; Bill Walsh; Robert Nevill
**Cc:** Yaniv Amar
**Subject:** RE: CHS Payroll

Does it hold valuable licenses?  If not and if we don't need it any more, I'd suggest we just shut it down.

**From:** Kevin Leonard
**Sent:** Wednesday, February 07, 2007 5:08 PM
**To:** Mike Stanley; Bill Walsh; Robert Nevill
**Cc:** Mark Bernet; Yaniv Amar
**Subject:** RE: CHS Payroll

Mike,

What is the purposed of HRE?  Can/should it be closed down?



PLAINTIFF'S EXHIBIT
470
10-5-10

Kevin

Kevin Leonard
Phone: 407 517 7779
Fax: 407 426 9191

---

**From:** Mike Stanley
**Sent:** Wednesday, February 07, 2007 4:09 PM
**To:** Kevin Leonard; Bill Walsh; Robert Nevill
**Cc:** Mark Bernet; Yaniv Amar
**Subject:** RE: CHS Payroll

As a FYI.

This transaction is subject to a fine by the FL DBPR and a ruling by the DBPR that those who authorized the cash move are a controlling person.

---

**From:** Debra Cole [mailto:dcole@workerstemp.com]
**Sent:** Wed 2/7/2007 4:00 PM
**To:** Mike Stanley
**Subject:** FW: CHS Payroll

Debra J. Cole
Chief Financial Officer
HR Domain, Mirabilis Ventures, Inc.
dcole@mirabilishr.com
Office Phone:  407-472-0024 x3703
Fax:  407-547-0152
Cell:  407-427-2916

-----Original Message-----
**From:** Kevin Leonard [mailto:KLeonard@nexiastrategy.com]
**Sent:** Wednesday, February 07, 2007 3:25 PM
**To:** Robert Nevill
**Cc:** Jay Stollenwerk; Bob Konicki; Debra Cole
**Subject:** RE: CHS Payroll

The attached was faxed at 16:22, confirmation received.

Kevin Leonard
Phone: 407 517 7779
Fax: 407 426 9191

---

**From:** Robert Nevill
**Sent:** Wednesday, February 07, 2007 3:06 PM
**To:** Kevin Leonard

**Cc:** Jay Stollenwerk; Bob Konicki
**Subject:** CHS Payroll

Kevin -

Here is all the information you should need.

Fax over authorization letter (on MVI letterhead if available) to Cathy at 407-420-2819

#1
FROM
Amount: $50,000.00
Acct Name: Human Resource Enterprise dba/ management
Account: 003774749490
Reference: On behalf of Cadent

TO
Bank: Sky Bank
Bank Phone: 800-574-7068
Account Name: PSI VII, Inc.
Routing Number: 041201936
Account Number: 4607000329

We will be able to cover the $16, 256.96 out of Cadent's books. Please note that will leave them extremely strapped for cash.

From:       Yaniv Amar
Sent:       Friday, December 29, 2006 1:20 PM
To:         Mike Stanley
Subject:    RE: AEM & Mirabilis

Give them my contact information.

-----Original Message-----
From: Mike Stanley
Sent: Fri Dec 29 12:01:30 2006
To:   Yaniv Amar
Subject:    RE: AEM & Mirabilis


I have the Finance/Accounting people asking for financial information from the PEO.


I am concerned that if MHR is owned by Mirabilis Ventures we will still be dancing to their whims and needs.


Mike Stanley

407-541-4898



From: Yaniv Amar
Sent: Friday, December 29, 2006 12:52 PM
To: Mike Stanley
Subject: RE: AEM & Mirabilis



The truth of the matter is that the IRS owns MHR and WTS at this point in time!!



From: Mike Stanley
Sent: Friday, December 29, 2006 12:48 PM
To: Yaniv Amar
Subject: AEM & Mirabilis




The understanding throughout the company is that Mirabilis HR and WTS are owned by Mirabilis Ventures.

1

I did not understand that to be the case.  Could you clarify with Frank?


Mike Stanley

407-541-4898


--
No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.5.446 / Virus Database: 269.4.0/762 - Release Date: 4/15/2007 4:22 PM

2

## BIOGRAPHICAL AFFIDAVIT
(Print or Type)

Full name and Address of Company (Do Not Use Group Names). _MIRABILIS VENTURES, INC._

In connection with the above-named company, I herewith make representations and supply information about myself as hereinafter set forth. (Attach addendum or separate sheet if space hereon is insufficient to answer any question fully.)

IF ANSWER IS "NO" OR "NONE", SO STATE.

1. Affiant's Full Name (Initials Not Acceptable). _YARIV AMAR_

2. a. Have you ever had your name changed? _NO_ If yes, give the reason for the change. _____

   b. Other names used at any time. _NO_

3. Affiant's Social Security Number ▮▮▮▮▮▮▮ (Disclosure of affiant's social security number is voluntary and is solicited pursuant to Section 3901.321 of the Ohio Revised Code. It will be used for identification and investigative purposes.)

4. Date and Place of Birth _07/28/74_    _BEER-SHEVA,  ISRAEL_

5. Affiant's Business Address. _20  N. ORANGE AVE  SUITE 1400  ORLANDO FL. 32874_
   Business Telephone. _(407) 426-9502_

6. List your residence for the last ten (10) years starting with your current address, giving:

| DATE | ADDRESS | CITY AND STATE |
|------|---------|----------------|
| 01/OV 2001 | 3475 N.E. 191st ST. #10 | MIAMI FL. 33180 |
| 01/OV 1999 | 6364 RALEIGH ST. #1613 | ORLANDO FL. |

7. Education: Dates, Names, Locations and Degrees.
   College _YESHIVA UNIVERSITY_
   Graduate Studies _____
   Others _____

8. List memberships in Professional Societies and Associations.



PLAINTIFF'S
EXHIBIT
472
10-5-10  JB

9. Present or Proposed Position with the Applicant Company. _____

10. List complete employment record (up to and including present jobs, positions, directorates or officerships) for the past twenty (20) years, giving:

DATES   EMPLOYER AND ADDRESS        TITLE
_____
_____
_____

11. Present employer may be contacted. Yes No  (Circle One)
  Former employers may be contacted. Yes  No. (Circle One)

12. a.  Have you ever been in a position which required a fidelity bond? _____ _____
   If any claims were made on the bond, give details. _____

  b.  Have you ever been denied an individual or position schedule fidelity bond, or had a bond cancelled or revoked? _____ _____NO_____

  If yes, give details. _____

13. List any professional, occupational, and vocational licenses issued by any public or governmental licensing agency or regulatory authority which you presently hold or have held in the past (state date license issued, issuer of license, date terminated, reasons for termination). _____
_____

14. During the last ten (10) years, have you ever been refused a professional, occupational, or vocational license by any public or governmental licensing agency or regulatory authority, or has any such license held by you ever been suspended or revoked? _____NO_____
  If yes, give details. _____

15. List any insurers in which you control directly or indirectly or own legally or beneficially 10% or more of the outstanding stock (in voting power). _____
_____

If any of the stock is pledged or hypothecated in any way, give details. _____

16. Will you or members of your immediate family subscribe to or own, beneficially or of record, shares of stock of the applicant insurance company or its affiliates? _____

If any of the shares or stock are pledged or hypothecated in any way, give details. _____

17. Have you ever been adjudged a bankrupt? _____NO_____

STATE OF OHIO

DEPARTMENT OF INSURANCE

AUTHORITY FOR RELEASE OF INFORMATION

I, _Yaniv  Amar_____ presently reside at ____Miami, FL____ and am affiliated with or proposed to be affiliated with __Mirabilis  Ventures, Inc.__ the subject of a proposed merger or acquisition for which approval has been requested under Ohio Revised Code Section 3901.321

I understand that the Department of Insurance may conduct an investigation of my background. In that regard, I hereby waive any right of confidentiality as it reasonably relates to this inquiry.

I hereby give my permission and waive any provisions of law that forbids any court, police agency, employer, firm, or person, disclosing any knowledge or information they have concerning me which is requested by the Ohio Department of Insurance. I further consent and request that the Superintendent or his representative be provided with a certified copy of any such record concerning me which they may deem necessary in the performance of their investigation.

I recognize the right of the Ohio Department of Insurance to treat at its discretion, certain sources as confidential, and its right to withhold from me or my agent the names of such confidential sources, and information obtained therefrom.

_____               _____02/10/05_____
Signature                                                             Date

This document was executed and signed in the presence of the following witnesses:

1. _____      2. _____

State of ___FLORIDA___

County of ___DADE___

Sworn to and subscribed before me this 10th day of February 19 2005

_____
Notary Public

(Seal)                                                    Tessah Marie Ivey
                                                               My Commission DD133883
                                                               Expires July 28, 2006

My Commission Expires: _____

18. a. Have you ever been convicted of or had a sentence imposed or suspended, had pronouncement of a sentence suspended, been pardoned for conviction of a pleaded guilty or no contest to any criminal information, indictment or complaint, other than minor traffic violations? _____ NO _____
If yes, give details. _____
  b. Have you ever been subject to any disciplinary proceedings of any federal or state agency? _ NO _
If yes, give details. _____
  c. Has any company been charged as in (18)(a) or subject to proceedings as in (18)(b) allegedly as a result of any action or conduct on your part? _____ NO _____
If yes, give details. _____

19. Have you ever been an officer, director, trustee, investment committee member, key employee, or controlling stockholder of any company which, while you occupied any such position or capacity with respect to it, became insolvent or was placed under supervision or in receivership, rehabilitation, liquidation, conservatorship, or bankruptcy? _____ NO _____
If yes, give details. _____

20. Has the certificate of authority or license to do business of any insurance company of which you were an officer or director or key management person ever been suspended or revoked while you occupied such position? _____ NO _____
If yes, give details. _____

Dated and signed this _10th_ day of _February / 2005_ at _____. I hereby certify under penalty of perjury that I am acting on my own behalf, and that the foregoing statements are true and correct to the best of my knowledge and belief.

_____
(Signature of Affiant)

State of _FLORIDA_
County of _DADE_

Personally appeared before me the above named _Yaniv Amar_ personally known to me, who, being duly sworn, deposes and says that he executed the above instrument and that the statements and answers contained therein are true and correct to the best of his knowledge and belief.

Subscribed and sworn to before me this _10th_ day of _February_, 19- _2005_
(SEAL)

_____
(Notary Public)

My Commission Expires_____

Teddah Marie Ivey
My Commission DD133803
Expires July 29, 2006

-----Original Message-----
From: Tessah Ivey
Sent: Thursday, August 03, 2006 8:26 AM
To: Frank Amodeo
Subject: FW: Cash Flashes for today 8/2/06


Tessah Marie Ivey
Tri-Trust Partnership
2813  S. Hiawassee Rd
Orlando, FL 32835
407-291-2590
tivey@nexiastrategy.com


This e-mail contains PRIVILEGED AND CONFIDENTIAL information intended only
for the use of the addressee(s) named above.  If you are not the intended
recipient of this e-mail, or the employee or agent responsible for
delivering it to the intended recipient, you are hereby notified that any
dissemination or copying of this e-mail is strictly prohibited.  If you have
received this e-mail in error, please notify us by reply e-mail and delete
this e-mail from your records.  Thank you for your cooperation.


-----Original Message-----
From: Michele Claussen
Sent: Wednesday, August 02, 2006 5:09 PM
To: Yaniv Amar; Nichole Beamer; Tessah Ivey; Dan Myers; James Sadrianna;
Kevin Leonard; Paul Glover; Fernando Simo; Jay Stollenwerk; Shane Williams
Cc: Mike Stanley; Tracy Taylor
Subject: Cash Flashes for today 8/2/06



PLAINTIFF'S
EXHIBIT
473
10-5-10  DB

**AEM Inc. dba Mirabilis HR**
**Combined Bank Report**
Cash Codes 1523, 7019, 7051, 7093, 7132, 0190

| | bi-weekly even<br>Monday<br>7/24/2006 | bi-weekly even<br>Tuesday<br>7/25/2006 | bi-weekly even<br>Wednesday<br>7/26/2006 | bi-weekly even<br>Thursday<br>7/27/2006 | bi-weekly even<br>Friday<br>7/28/2006 | bi-weekly odd<br>Monday<br>7/31/2006 | bi-weekly odd<br>Tuesday<br>8/1/2006 | bi-weekly odd<br>Projected<br>Wednesday<br>8/2/2006 | bi-weekly odd<br>Projected<br>Thursday<br>8/3/2006 | bi-weekly odd<br>Projected<br>Friday<br>8/4/2006 |
|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Ledger Balance | 1,280,463.68 | 1,998,493.05 | 1,307,137.63 | 577,755.37 | 567,737.66 | 894,543.44 | 1,714,858.77 | 553,506.02 | 821,018.22 | 1,436,018.22 |
| **Incoming** | | | | | | | | | | |
| ACH credits - clients | 307,048.22 | 387,766.62 | 737,304.04 | 920,283.64 | 3,193,586.92 | 349,876.88 | 587,101.21 | 830,985.18 | 1,010,000.00 | 3,507,000.00 |
| Wire credits - clients | 532,035.91 | 425,010.45 | 207,642.62 | 153,834.99 | 152,146.03 | 732,399.13 | 587,684.16 | 223,000.00 | 656,000.00 | 170,000.00 |
| Deposits - clients | 1,042,364.57 | 501,597.82 | 153,209.20 | 324,379.07 | 558,386.29 | 1,105,018.77 | 160,279.01 | 256,000.00 | 349,000.00 | 797,000.00 |
| Deposits - miscellaneous | | | | | | | | | | |
| Miscellaneous credits | | | | | | | | | | |
| **Outgoing** | | | | | | | | | | |
| Tax wires - 941    for AEM | | | | (330,000.00) | | | (470,000.00) | | (320,000.00) | (352,000.00) |
| Tax wires - 941    for NMS | | | | (23,603.74) | | | (39,334.32) | | | |
| Tax wires - 941 | | | | | | | | | | |
| Transfers to Berman Kean escrow | | | | | | | | | | |
| Transfers to Suntrust | | (675,000.00) | (1,000,000.00) | | | | | | | |
| Other wires | | | | (194,355.81) | | | (333,822.43) | | | |
| Unicare claims (daily) | | | | | | | | | | |
| 401k funding (twice monthly) | | | | | | | | | | |
| WC - Providence (weekly premium, monthly claims) | | | | | | | (170,009.93) | | (175,000.00) | |
| WC - Lumbermans (monthly claims) | | | | | | | | | | |
| WC - SUN2 Insurance | | | | | | | | | | |
| WC - SUA (weekly premium & loss fund) | | | | | | | | | | |
| State taxes - online | | | | (150,000.00) | (900,000.00) | (130,000.00) | (400,000.00) | | | |
| Direct Deposits cleared & PR wires | (42,067.25) | (99,074.32) | (319,085.79) | (367,932.68) | (1,809,823.05) | (201,433.03) | (177,227.14) | (438,472.98) | (435,000.00) | (2,215,000.00) |
| Direct Deposit - settlement exceptions | | | | | | | | | | |
| Checks clearing - PR | (1,102,959.91) | (923,790.84) | (500,427.20) | (341,084.87) | (832,308.74) | (1,028,361.96) | (896,528.68) | (582,000.00) | (432,000.00) | (918,000.00) |
| Checks clearing - AP | (18,392.17) | (307,865.15) | (8,025.13) | (1,538.22) | (35,183.67) | (7,186.46) | (9,444.63) | (22,000.00) | (38,000.00) | (71,000.00) |
| NSFs | | | | | | | | | | |
| Fees | | | | | | | | | | |
| **Other** | | | | | | | | | | |
| Funding to/from Other | | | | | | | | | | |
| Funding to/from Managed Entities | | | | | | | | | | |
| Net change in cash | 718,029.37 | (691,355.42) | (729,382.26) | (10,017.71) | 326,805.78 | 820,315.33 | (1,161,352.75) | 267,512.20 | 615,000.00 | 918,000.00 |
| Total Cash per Bank | 1,998,493.05 | 1,307,137.63 | 577,755.37 | 567,737.66 | 894,543.44 | 1,714,858.77 | 553,506.02 | 821,018.22 | 1,436,018.22 | 2,354,018.22 |
| Less: One Day Float | 758,113.00 | 678,216.00 | 330,290.00 | 211,334.00 | 601,039.00 | 739,039.00 | 403,712.00 | 401,545.00 | 321,100.00 | 662,600.00 |
| Two or More Day Float | 534,143.00 | 295,058.00 | 114,354.00 | 210,169.00 | 167,515.89 | 488,628.00 | 222,345.00 | 76,800.00 | 104,700.00 | 239,100.00 |
| Closing Available | 706,237.05 | 333,863.63 | 133,111.37 | 146,234.66 | 125,988.56 | 487,191.77 | (72,550.98) | 342,673.22 | 1,010,218.22 | 1,452,318.22 |
| Less Outstanding Checks - PR and AP | | | | | | | | | | |
| Net Available Balance | 706,237.05 | 333,863.63 | 133,111.37 | 146,234.66 | 125,988.56 | 487,191.77 | (72,550.98) | 342,673.22 | 1,010,218.22 | 1,452,318.22 |

BOA

Flash-AEM 8-2.xls

DBPR EL-4594 – Quarterly Report Form

**STATE OF FLORIDA
DEPARTMENT OF BUSINESS AND
PROFESSIONAL REGULATION**
1940 North Monroe Street
Tallahassee, FL 32399-0783

NOTE – This form must be submitted as
part of an application packet

If you have any questions or need assistance in completing this application, please contact the
Department of Business and Professional Regulation, Customer Contact Center, at (850) 487-1395.

| PERSONAL INFORMATION |
|---|

For Quarter Ending: ☒ March 31   ☐ June 30   ☐ September 30   ☐ December 31   2006 Year

| Company Name AEM, Inc. dba Mirabilis HR | License Number EL270 |
|---|---|

**CEO STATEMENT:**
I hereby certify that all health insurance, life insurance, workers' compensation insurance and any other employee benefits accruing either to our employees or their dependents have been and are being paid to the proper payees as required by contract, law, or other obligatory documents, and these requirements are on a current and timely basis. I certify further that I understand that maintenance of positive working capital is required by Chapter 468.525(3)(d), Florida Statutes, and that our company is in compliance with these requirements. I certify that I understand that this periodic certification is incomplete unless the proof of valid workers' compensation insurance is attached to this form.

Signature of CEO (or its equivalent) _____   Date 06/13/06

Printed Name Yaniv Amar   Title President/CEO

**CFO STATEMENT:**
I certify that federal, state, and local payroll taxes have been paid as required by regulations of each applicable taxing authority. I further certify that all workers' compensation premiums and employee benefit payments for the quarter have been paid as due. I have attached copies of the current quarter's balance sheet and income statement.

Signature of CFO (or its equivalent) _____   Date _____

Printed Name Paul Glover   Title CFO

* NOTE: If company does not have a CEO or CFO, the CEO and CFO statements must be signed by the individual(s) responsible for ensuring that the obligations or requirements as set forth in the statements have been met.

**CONTROLLING PERSON STATEMENT:**
I have reviewed the information above and I certify that it is true and correct to the best of my knowledge and belief.

Signature of Controlling Person _____   Date 06/13/06

Printed Name Yaniv Amar   Title President/CEO

**WORKERS' COMPENSATION INSURANCE:** I have attached the following:

☒ A copy of a workers' compensation certificate clearly indicating coverage was in effect for the reporting quarter. The certificate must show that the Board of Employee Leasing Companies is listed as a certificate holder and provide a minimum of 30 days' notification of cancellation. You must attach a new copy of your certificate each quarter that a report is filed.


PLAINTIFF'S
EXHIBIT
474
10-5-10 JB

**From:** Tessah Ivey [mailto:tivey@nexiastrategy.com]
**Sent:** Friday, July 29, 2005 10:17 AM
**To:** Craig Vanderburg
**Subject:** RE: Presidion / AEM

Craig,

I have accounted for this. I will explain later.

Frank

Dictated not read.


Tessah Ivey

Executive Assistant to Frank Amodeo

Nexia Strategy Corporation

20 North Orange Avenue

Suite 1400

Orlando, FL 32801

407-318-8000 Telephone

407-426-9191 FAX


This e-mail contains **PRIVILEGED AND CONFIDENTIAL** information intended only for the use of the addressee(s) named above.  If you are not the intended recipient of this e-mail, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited.  If you have received this e-mail in error, please notify us by reply e-mail and delete this e-mail from your records.  Thank you for your cooperation.


PLAINTIFF'S EXHIBIT
475
10-5-10  JB