# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

MIRABILIS VENTURES, INC. and NEXIA
STRATEGY CORPORATION,

                **Plaintiffs,**

-vs-                                  Case No.  6:07-cv-1788-Orl-28GJK

PALAXAR GROUP, LLC; PALAXAR
HOLIDNGS, LLC; FRANK HAILSTONES;
EDITH CURRY a/k/a EDITH BROADHEAD;
and FICTITIOUS DEFENDANTS 1-8,

                **Defendants,**

_____

## REPORT AND RECOMMENDATION

### TO THE UNITED STATES DISTRICT COURT:

This cause came on for consideration without oral argument on the following motions:

| | |
|---|---|
| **MOTION:** | **DEFENDANT TERENCE CHU'S MOTION FOR SANCTIONS (Doc. No. 242)** |
| **FILED:** | **May 6, 2010** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

| | |
|---|---|
| **MOTION:** | **DEFENDANT TERENCE CHU'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL MOTION FOR SANCTIONS AND PERMISSION TO EXCEED PAGE LIMITS (Doc. No. 305)** |
| **FILED:** | **September 7, 2010** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.


I.   <u>BACKGROUND.</u>

On February 19, 2008, Mirabilis Ventures, Inc. ("Mirabilis") and Nexia Strategy Corporation ("Nexia") (collectively, the "Plaintiffs") filed a Second Amended Complaint (the "Complaint") against Palaxar Group, LLC ("Palaxar Group"), Palaxar Holdings, LLC ("Palaxar Holdings"), Edith Curry ("Curry"), Frank Hailstones ("Hailstones"), and Terence Chu ("Chu") (collectively, the "Defendants").   Doc. No. 56.[1]   The Complaint alleged the following seven counts: breach of contract against Curry and Hailstones (Count I); breach of fiduciary duty against Curry and Hailstones (Count II); violation of Florida's Uniform Trade Secrets Act, Section 688.001, Florida Statutes, against Curry and Hailstones (Count III); conversion against Curry and Hailstones (Count IV); civil conspiracy against the Defendants (Count V); injunctive relief (Count VI); and unjust enrichment against Curry and Hailstones (Count VII).   Doc. No. 56.[2]

---

[1] Prior to filing the Complaint, Plaintiffs filed a Motion for Preliminary Injunction.  Doc. No. 3.  On January 25, 2008, the Court held a hearing on the Motion for Preliminary Injunction and, ultimately, entered an order denying the motion for failing to show a substantial likelihood of success on the merits.  Doc. Nos. 47, 48.  Chu was not added as a party defendant until February 19, 2008.  Doc. No. 56.

[2] The Complaint was signed by Aaron C. Bates, Esq.  Doc. No. 56 at 14.

The case concerns the development and marketing of an anti-fraud certification program known as Nexia Certification, which Plaintiffs alleged they own.  *See* Doc. Nos. 56, 285 at 1. The Complaint alleged that Curry and Hailstones, while employed by Plaintiffs, formed Palaxar Group and Palaxar Holdings to "implement and market" Nexia Certification for their own personal gain and benefit.   Doc. No. 56 at ¶¶ 27-28.   Plaintiffs claimed that Curry and Hailstones, while employed by Plaintiffs, converted Nexia Certification and misappropriated Plaintiffs' trade secrets and confidential information regarding Nexia Certification.  Doc. No. 56 at ¶¶ 48-60.  Plaintiffs alleged that Chu, as a founding member and manager of Palaxar Group and Palaxar Holdings, conspired with Hailstones and Curry to establish Palaxar Group and Palaxar Holdings for the sole purpose of using and marketing Nexia Certification.  *Id.*  at ¶¶ 27-28, 32.   Thus, Plaintiffs claimed that the Defendants, including Chu, engaged in drafting and signing documents to transfer the rights of Nexia Certification to Hailstones and Curry without the approval, authorization, or ratification of Plaintiffs' board of directors or the shareholders of Nexia.  Doc. No. 56 at ¶ 63.

On March 6, 2008, Palaxar Group, Palaxar Holdings, Curry and Hailstones filed a Joint Answer, Affirmative Defenses, Counterclaims, and Third-Party Claims (the "Counterclaim and Third-Party Claim").  Doc. No. 59.  On March 19, 2008, Chu, proceeding pro se, filed a Motion to Dismiss the Complaint for lack of personal jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted.  Doc. No. 79, reinstated at Doc. No. 197.  On August 3, 2010, Plaintiffs filed a Motion for Voluntary Dismissal Without Prejudice requesting that the Court dismiss the Complaint in its entirety without prejudice.  Doc. No. 280.

On August 6, 2010, the Court entered an order granting summary judgment in favor of Palaxar Group, Palaxar Holdings, Curry and Hailstones as to all of Plaintiffs' claims against them. Doc. No. 285. On August 9, 2010, the Court entered an order denying Chu's Motion to Dismiss for lack of personal jurisdiction (finding personal jurisdiction over Chu) but, sua sponte, entered summary judgment for Chu on Plaintiffs' civil conspiracy claim against him (Count V). Doc. No. 287 at 2. In its order the Court stated:

> The Court recently granted summary judgment for all Defendants except Chu on Plaintiffs' civil conspiracy claim, having found no evidence in the record creating a genuine issue of material fact of an agreement to do an unlawful act or an overt act in furtherance of a tort or other wrong. An actionable conspiracy requires an agreement between two or more persons. Plaintiffs allege that Defendants conspired with each other and not with any third parties. Because Plaintiffs had an opportunity to produce evidence to show an agreement between Defendants and failed to do so, and because Chu alone cannot be liable for civil conspiracy as pled, summary judgment will be granted for Chu on Plaintiffs' civil conspiracy claim.

Doc. No. 287 at 6-7 (internal citations omitted). In its August 9, 2010 order, the Court denied Plaintiff's Motion for Voluntary Dismissal Without Prejudice as moot due to summary judgment having been granted in favor of Defendants as to all counts. Doc. No. 287 at 2.

On November 17, 2010, the Court entered an order vacating its August 6, 2010 summary judgment order (Doc. No. 285) in favor of defendants Palaxar Group, Palaxar Holdings, Curry and Hailstones, and entered an order granting Plaintiffs' Ore Tenus Motion to Voluntarily Dismiss their claims with prejudice against those defendants. Doc. No. 339. Therefore, the claims against Palaxar Group, Palaxar Holdings, Curry and Hailstones have been voluntarily dismissed with prejudice (Doc. No. 339) and summary judgment has been entered in favor of

Chu (Doc. No. 287) as to the civil conspiracy claim (Count V).  On December 1, 2010, Curry and Hailstones filed their Second Amended Counterclaims and Third Party Claims (the "Amended Counterclaims and Third-Party Claims").  Doc. No. 346.  Chu has not asserted any counterclaims or third-party claims.  Therefore, the only remaining claims in the case are the Curry and Hailstones's Amended Counterclaims and Third-Party Claims.  Doc. No. 346.

### A.  Chu's Motion for Sanctions.

On March 9, 2010, Plaintiffs filed a Motion for Substitution of Counsel (the "Motion for Substitution").  Doc. 209.  The Motion for Substitution requested an order permitting the withdrawal of Allen M. Estes, Esq. and John Russell Campbell, Esq. of Balch & Bingham LLP ("Balch") as Plaintiffs' counsel and substituting Todd K. Norman, Esq. and Nicolette Vilmos, Esq. of Broad and Cassel as Plaintiffs' counsel.  Doc. No. 209.

On March 18, 2010, Chu filed a response in opposition ("Chu's Response").  Doc. No. 220.  Chu argued that the Motion for Substitution should be denied because: 1) substituting counsel will unduly delay the case; 2) Chu intended to file a Rule 11 motion against Estes and Campbell; and 3) no attorney representing Mirabilis made an attempt to confer with Chu prior to filing the Motion for Substitution.    Doc. No. 220 at ¶ ¶ 1, 4, 8.  Attached to Chu's Response was a December 15, 2009 letter he sent to Messrs Estes, Norman, and others, advising that he would file a motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure unless the claims against him in this case were dismissed.  Doc. No. 220 at 10-11.  From what was stated in his letter, it appeared that Chu did enclose a copy of his proposed Rule 11 motion, but the motion was not attached to Chu's Response and, at that time, Chu had not filed a Rule 11

motion. *See* Doc. No. 220 at 12. Thus, the Court declined to retain jurisdiction over Estes and Campbell. *See* Doc. No. 236 at 2-3.

On April 29, 2010, the Court entered an order granting in part and denying in part the Motion for Substitution. Doc. No. 236. Estes and Campbell (the Balch attorneys) were permitted to withdraw as counsel of record for Mirabilis, and Norman and Vilmos (the Broad and Cassel attorneys) were substituted as counsel of record for Mirabilis. Doc. No. 236 at 3. The Motion for Substitution of Counsel was otherwise denied. Doc. No. 236 at 3-4. The Court stated:

> Pursuant to Local Rule 2.03(e), a corporation may not proceed pro se. Therefore, Nexia is directed to retain substitute counsel and have substitute counsel file a notice of appearance on behalf of Nexia within fourteen (14) days. After the expiration of fourteen days or after substitute counsel makes an appearance, Estes and Campbell will be permitted to renew their motion to withdraw as counsel of record for Nexia.

Doc. No. 236 at 4. Thus, due to the issues surrounding the ownership of Nexia, the Motion for Substitution was denied as to Nexia. Doc No. 309.[3]

---

[3] On May 13, 2010, Balch filed a notice with the Court stating it would renew its Motion for Substitution as to Nexia "upon an affirmative determination by the Bankruptcy Court regarding the ownership rights to the claims held by Nexia in this federal litigation." Doc. No. 246 at 3. On June 7, 2010, the Government and Mirabilis filed separate notices with the Court stating that the Bankruptcy Court found that "the claims of Nexia . . . in this litigation remain the property of the debtor's estate in the Chapter 11 bankruptcy and, as such, can be litigated by Mirabilis." Doc. Nos. 257 at 1, 258. However, on June 16, 2010, the Government filed a notice of appeal in the Bankruptcy Court regarding its order that Mirabilis may litigate the interests of Nexia in this case. *See* Doc. No. 266 at 6; *see also In re Mirabilis Ventures, Inc.*, Case No. 6:08-bk-4327-KSJ, Doc. No. 569 (Jun. 16, 2010). On June 28, 2010, Norman and Vilmos (the Broad and Cassel attorneys) filed a notice of appearance on behalf of Nexia in this case. Doc. No. 263. On August 25, 2010, the Government filed a Motion for Voluntary Dismissal of Appeal regarding its appeal of the Bankruptcy Court's order finding that Mirabilis may litigate the interests of Nexia in this case. *See In re Mirabilis Ventures, Inc.*, Case No. 6:10-cv-1189-GAP, Doc. No. 7 (M.D. Fla. Aug. 25, 2010). On August 26, 2010, the District Court entered an order dismissing the Government's appeal. *Id*. at Doc. No. 8. Accordingly, Mirabilis was entitled to litigate the interests of Nexia in this case. On September 28, 2010, Balch renewed its Motion for Substitution as to Nexia. Doc. No. 311.

On May 6, 2010, Chu filed a Motion for Sanctions (the "Motion").   Doc. No. 242.

Pursuant to Rule 11, Federal Rules of Civil Procedure, 28 U.S.C. 1927, Local Rule 4.18, and the

Court's inherent authority, Chu requests monetary sanctions against Estes, Campbell, and their

law firm – Balch; as well as Norman, Vilmos, Roy Scott Kobert, Esq. ("Kobert") and their law

firm - Broad and Cassel; and Aaron Bates, Esq. ("Bates"), Matthew Mokwa, Esq. ("Mokwa"),

and their law firm - Bates Mokwa, PLLC ("Bates Mokwa"), "for the frivolous and baseless

[Complaint] they filed on behalf of Mirabilis. . . ."  Doc. No. 242 at 2.[4]

In the Motion, Chu generally states the following:

> The court should and must impose sanctions in this case because
> the [Mirabilis attorneys] knowingly filed a pleading full of false
> allegations that have no reasonable evidentiary basis. . . . They
> further compounded that breach by using said pleading to launch a
> false and vicious attack on me as an accomplished and respected
> member of the Delaware Bar.  Even if the [Mirabilis] Attorneys
> could make a meritorious claims [sic] against my fellow
> defendants (which they cannot), they were fully aware (or should
> have been) that I have neither worked for the Plaintiff(s) nor had
> anything to do with any patented or trademarked property or
> material rightfully belonging to them. . . . The [Complaint] alleges
> that it has personal jurisdiction over me because I was an invited
> guest of [Mirabilis's] offices once in 2006, at Frank Amodeo's
> invitation, and as a result became part of a conspiracy.   The
> [Complaint] was signed by [Mirabilis] attorneys who had actual
> knowledge at the time the [C]omplaint was filed, that the
> allegations were false. . . . Virtually all of the allegations in the
> [Complaint] are false and have no reasonable evidentiary basis;
> quite the contrary, they are directly contradicted in various filings
> by [Mirabilis] attorneys in other court actions. . . . The nature of
> the [Complaint] suggests that [Mirabilis] Attorneys conducted no

---

[4]In the Motion, Chu specifically defines Estes, Campbell, Vilmos, Norman, and Kobert as the "MVI Attorneys." *See* Doc. No. 242 at 2.  However, it appears that Chu also complains about the conduct of Bates and Mokwa in the Motion and seeks monetary sanctions against them.  *See* Doc. No. 242 at 2 ("On October 12, 2007, [Mirabilis and Nexia], by their counsel Attorneys Estes and Campbell (together with Aaron Bates, Esq. and Matthew Mokwa, Esq. who have since been replaced by Broad and Cassel attorneys Vilmos, Korbert [sic] and Norma) filed the instant case. . . ." ).

> factual investigation whatsoever before filing the [Complaint] and
> in fact, filed contradictory motions in other cases.  During the past
> 27 months, the [Mirabilis attorneys] did not even read, much less
> verify the accuracy of their allegations, their exhibits or their
> transcripts at various hearings.

Doc. No. 242 at 10-12.   More specifically, Chu argues that Mirabilis's attorneys, described

above,  violated  Rule  11(b)  by:  1)  conducting  no  factual  investigation  before  filing  the

Complaint; 2) knowingly filing a pleading which contained false allegations; and 3) pursuing this

lawsuit for an improper purpose.  Doc. No. 242 at 2-5, 10-13.

As to the first allegation, Chu merely states that "[t]he nature of the [C]omplaint suggests

that the [Mirabilis] Attorneys conducted no factual investigation whatsoever before filing the

[C]omplaint and in fact, filed contradictory motions in other cases."  Doc. No. 242 at 12.   Chu

submits no supporting his allegation that Mirabilis's attorneys conducted no factual investigation

before filing the Complaint.

As to the second allegation, Chu states that "[v]irtually all of the allegations in the

[Complaint] are false and have no reasonable evidentiary basis."  Doc. No. 242 at 12.  However,

Chu only points to one specific allegation in the Complaint as being false – that the Court has

personal jurisdiction over Chu.  Doc. No. 242 at 12; *see also* Doc. No. 56 at ¶ 10 ("This Court

has personal jurisdiction over all named defendants.").   Chu further alleges, but without citation

to the record or to the exhibits attached to the Motion, that "[s]worn affidavits submitted by Jodi

Jaiman, Jay Stollenwerk, Steve McCabe and Amodeo all attest to the fact that the [Mirabilis

Attorneys] knew that the allegations were false at the time they filed the [original] complaint and

most certainly by the time they filed the [Complaint]."  Doc. No. 242 at 12.[5]  With the exception

of Ms. Jaiman's affidavit (*see* Doc. No. 242 at 2), Chu does not state which portions of the

affidavits indicate that the allegations contained in the Complaint are false.

Chu also alleges that Mr. Estes committed an express misrepresentation to the Court

during the January 25, 2008 hearing on the Motion for Preliminary Injunction.  Doc. No. 242 at 5

(citing Doc. No. 242-7 at 12).   At the hearing, the following exchange occurred between the

Court and Mr. Estes:

| | |
|---|---|
| Mr. Estes: | It is my understanding that the sole shareholder of Nexia was Mirabilis.  Mirabilis had 70 some odd shareholders at this time.  Their claim is that Mr. Amodeo was the sole class A shareholder, which I don't have any documentary evidence that he was. The only evidence that I've seen is that there were 70 or 80 shareholders- - |
| Court: | What evidence do I have, if any? |
| Mr. Estes: | I'm going to say I don't know, Judge.  I don't know that that was an issue that we felt needed to be addressed. |
| Court: | I didn't think it did either, but you just brought it up. |
| Mr. Estes: | It was addressed by the [D]efendants in their filing. |
| Court: | Well, they said he was the sole shareholder. |
| Mr. Estes: | She said he was the sole class A shareholder, and what I would point out is even if he was the sole class A shareholder, the statute doesn't say only class A shareholders, the majority of them need to approve it, it says all shareholders.  My understanding is there were four different classes of Mirabilis stock at that time and there were 70 or 80 people and that at no point in time, I don't know that there's any evidence right now to support this, but my understanding is at no point in time did Mr. |

---

[5] Attached to the Motion are two-hundred eighty (280) pages of exhibits.  Doc. No. 242-1 – 242-8.  The Court was able to locate the affidavits of Ms. Jaiman (Doc. No. 242-4), Jay Stollenwerk (Doc. No. 242-6), and Steve McCabe (Doc. No. 242-5) in the exhibits.  Earlier in the Motion, Chu cites to an eighteen (18) page affidavit filed by Amodeo on December 3, 2009 (Doc. No. 179).  *See* Doc. No. 242 at n. 5.

Amodeo  own  more  than  about  a  half  percent  of
Mirabilis.

Doc. No. 242-7 at 12-13 (emphasis added).  Chu alleges that counsel for Mirabilis are "guilty of

express misrepresentation to this Court for denying on the record that Frank Amodeo had any

authority within [Mirabilis] and/or Nexia or involvement in this matter, while also swearing on

the  record  to  the  Bankruptcy  Court  that  Frank  Amodeo  was  the  person  who  controlled

[Mirabilis] all along."  Doc. No. 242 at 5.  The basis for Chu's argument is the September 16,

2008 affidavit of Jodi Jaiman, who was the president of Mirabilis from March 14, 2007 to May

23, 2008, and the president of Nexia from October 11, 2007 to May 23, 2008.  Doc. No. 242 at 5

n. 5.  In her September 16, 2008 affidavit, Ms. Jaiman states that "[a]lthough affidavits and

documents  may  have  stated  otherwise,  as  a  result  of  my  observations  and  interaction  with

Amodeo and others, Amodeo was the person who controlled [Mirabilis and Nexia]. . . ."  Based

upon these alleged misrepresentations, Chu concludes that the Complaint "has no factual basis."

Doc. No. 242 at 5.

        As to the third allegation contained in the Motion, Chu states that "[o]n information and

belief, [the Mirabilis attorneys] also filed the . . . [Complaint] for an improper purpose."  Doc.

No. 242 at 5.  Chu alleges that the Complaint was knowingly filed for the "sole express purpose

of . . . acquir[ing] funds that Amodeo could use to pay restitution in an effort to get a 'Lou

Pearlman deal.'"  *Id*.  Chu maintains that the Mirabilis attorneys propounded discovery in this

case "solely for the purpose of helping Amodeo determine what information the [D]efendants

may have voluntarily provided to [the United States] during the course of his federal grand jury

investigation."  Doc. No. 242 at 12.  At the same time, Chu argues that Mirabilis filed the

10

Complaint in order to launch a false personal attack on Chu.  Doc. No. 242 at 10.  Based upon the allegations detailed above, Chu requests monetary sanctions against the Mirabilis attorneys. Doc. No. 242 at 1.

**B.  Bates, Mokwa, and Bates Mokwa's Response.**

On May 24, 2010, Bates, Mokwa, and their law firm Bates Mokwa filed a response ("Bates Mokwa's Response") to the Motion.  Doc. No. 251.  Generally, Bates Mokwa argue that the Motion should be denied because "Chu does not state with any particularity which portions of the [Complaint] are sanctionable or which attorneys are liable.  The [Motion] is a blanket disparagement of all attorneys who have participated in this matter and consists primarily of misrepresentations and conclusory statements."  Doc. No. 251 at 2.  Attached to Bates Mokwa's Response is the affidavit of Bates which provides that prior to filing the Complaint, counsel conducted a thorough investigation to determine whether or not there was a sufficient evidentiary basis to make the allegations in the Complaint.   Doc. No. 251-1 at 2-3.  In the affidavit, Bates states that prior to filing the Complaint Balch and Bates Mokwa: "[Spoke] to former and current officers and directors of Mirabilis and Nexia; Review[ed] all of the corporate governance of Mirabilis and Nexia; Review[ed] thousands of pages of documents related to Mirabilis and Nexia; Review[ed] hours of audio/video of former officers and directors of Mirabilis and Nexia; Review[ed] [f]inancial records of Mirabilis and Nexia; and Review[ed] certain promotional documents of Palaxar."  Doc. No. 251-1 at 2.  Thus, Bates Mokwa argues that there is no basis for sanctions.  Doc. No. 251 at 1-2, 4-9.  Moreover, Bates Mokwa maintains that an award of monetary sanctions, in the form of an award of attorneys' fees to a pro se party, is not appropriate under Rule 11 or Section 1927.  Doc. No. 251 at 2 (citing *Massengale v. Ray*, 267,

F.3d 1298, 1302-03 (11th Cir. 2001); *Pickholt v. Rainbow Technologies, Inc.*, 284 F.3d 1365, 1374-76 (Fed. Cir. 2002)).  Accordingly, Bates Mokwa request that the Motion be denied.

### C.  Mirabilis's Response.

On May 24, 2010, Mirabilis filed a response ("Mirabilis's Response") to the Motion. Doc. No. 254.  Mirabilis's Response argues that the Motion fails to identify which allegations in the Complaint, other than the allegation that this Court has personal jurisdiction over Chu, are false or frivolous.  Doc. No. 254 at 3.  Thus, Mirabilis contends that the Motion is facially insufficient. Mirabilis also asserts that monetary sanctions, in the form of an award of attorneys' fees, are not available to a pro se party under Rule 11.  Doc. No. 254 at 12.  Moreover, Mirabilis asserts that its current counsel, Broad and Cassel, were not retained until two years after the Complaint was filed and, therefore, they are immune from any prior alleged misconduct by Mirabilis's former counsel.  Doc. No. 254 at 12 (citing *Florida Evergreen v. E.I. Du Pont De Nemours, Co.*, 135 F.Supp.2d 1271, 1278-79 (S.D. Fla. 2001)).[6]

### D.  Estes, Campbell, and Balch's Response.

On May 24, 2010, Estes, Campbell and Balch filed a response ("Balch's Response") to the Motion.  Doc. No. 252.  In Balch's response, it argues that the Motion "is wholly inconsistent with purpose and intent of Rule 11 and constitutes a flagrant misuse of the Rule."  Doc. No. 252 at 1.  Balch states:

> Before filing the original complaint, [Balch and others] participated in multiple meetings with representatives of Plaintiffs and reviewed thousands of pages of documents provided by Plaintiffs, audio and videotape evidence and patent records. [Balch

---

[6] Mirabilis does not address whether sanctions are appropriate under 28 U.S.C. § 1927 or the Court's inherent authority.  Doc. No. 254.

and others] also researched the applicable law and took reasonable
steps to confirm the accuracy of the factual allegations prior to
filing the complaint.  This is a typical process by which complaints
are put together and certainly satisfies Rule 11 requirements.

Doc. No. 252 at 2 (citing affidavits of Campbell (Doc. No. 252-1 at 2-6) and Bates (Doc. No.

252-1 at 8-11)).  As to Chu, Balch states:

> Chu, who is an attorney, was added as a defendant after he
> voluntarily submitted an affidavit explaining that he was "solely
> responsible for organizing and establishing Palaxar" and that he
> "managed [Palaxar Group and Palaxar Holding's] ongoing
> operation [since their formation]."  Palaxar Holdings, LLC and
> Palaxar Group, LLC were named defendants in the original
> lawsuit.  In the Plaintiffs' motion to amend the complaint to add
> Chu, his affidavit was discussed and identified as the basis upon
> which the amendment was requested.  None of the [D]efendants
> [including Palaxar Group and Palaxar Holdings] either opposed the
> motion or took the position that Chu was not a proper defendant. . .
> . The Chu Affidavit alone justified Plaintiffs' assertion of claims
> against Chu.

Doc. No. 252 at 2. (emphasis and brackets added).  Thus, Balch maintains that Chu was added as

a defendant to Plaintiff's civil conspiracy claim (Count V), based upon his affidavit, because he

managed the operations of Palaxar Group and Palaxar Holdings since their formation.  *Id.*

Balch asserts that it has complied with the requirements of Rule 11 and, in the Motion,

Chu has "failed to submit any **evidence** to the contrary."  Doc. No. 252 at 2-3 (emphasis in

original) (citing *Great Lakes Reinsurance (UK) PLC v. Blue Sea, LLC,* Case No. 6:05-cv-1660-

Orl-22KRS, Doc. No. 40 (M.D. Fla. Aug. 24, 2006)).  As to Chu's request for Rule 11 sanctions,

Balch maintains that the Motion is "insufficient on its face."  Doc. No. 252 at 11*; see also* Doc.

No. 252 at 12-17.

As to 28 U.S.C. § 1927, Balch argues that the Motion is insufficient on its face because it fails to offer any evidence or explain how Balch acted unreasonably, vexatiously, or in a manner to multiply the proceedings.  Doc. No. 252 at 16-17 (citing *Briggs v. Briggs*, 260 Fed.Appx. 164, 166 (11th Cir. 2007)).  Balch maintains that Chu has failed to present any evidence showing bad faith. *Id*.  Accordingly, Balch requests that the Court deny the Motion.  Doc. No. 252 at 17.

### E.  Chu's Motion for Leave to File Supplemental Motion for Sanctions.

On September 7, 2010, Chu filed a Motion for Leave to File Supplemental Motion for Sanctions and Permission to Exceed Page Limits (the "Motion to Supplement").  Doc. No. 305. In the Motion to Supplement, Chu states that there is "new material evidence" which warrants a supplemental motion for sanctions.  Doc. No. 305 at 1.  Chu states that on July 23, 2010, Mirabilis's former counsel in its bankruptcy proceeding, Elizabeth Green, Esq. ("Green"), filed an affidavit in that case.  Doc. No. 305 at 2 (citing *In re: Mirabilis Ventures, Inc*., Case No. 6:09-cv-1974-Orl-31DAB, Doc. No. 56-1 (M.D. Fla. Jul. 23, 2010)).  On that same day, in the bankruptcy proceeding, Chu states that the law firm of Latham, Shuker, Eden & Beaudine, LLP ("LSEB") filed a response to a motion for sanctions in that case.  Doc. No. 305 at 2 (citing *In re: Mirabilis Ventures, Inc*., Case No. 6:09-cv-1974-Orl-31DAB, Doc. No. 59 (M.D. Fla. Jul. 23, 2010)).  In the Motion to Supplement, Chu maintains that Green's affidavit and the LSEB response "contain material evidence previously not disclosed or expressly denied to this Court." Doc. No. 305 at 2.  Chu also states Mokwa's August 10, 2010 deposition revealed new information that is material to the Motion.  Doc. No. 305 at 3.  Chu does not state what new, material evidence is contained in Green's affidavit, LSED's response, or in Mokwa's deposition. In the Motion to Supplement, Chu states the supplemental motion for sanctions is "attached

hereto as Exhibit A." Doc. No. 305 at 3. However, the supplemental motion for sanctions was not attached to the Motion to Supplement.

Chu requests leave to exceed the page limitations set forth in Local Rule 3.01(d). Doc. No. 305 at 3. Chu's Motion to Supplement does not state whether the supplemental motion for Rule 11 sanctions has been served upon Mirabilis. On September 21, 2010, Mirabilis and Nexia filed a response in opposition to the Motion to Supplement arguing that because Chu failed to comply with the safe harbor provision prior to filing a Rule 11 motion and because summary judgment has already been granted in Chu's favor, the Motion to Supplement should be denied. Doc. No. 308.

## II.  STANDARD OF REVIEW.

### A.  Rule 11.

Rule 11, Federal Rules of Civil Procedure, embodies the principle that attorneys and pro se litigants have an obligation to the court to refrain from conduct that frustrates the aims of Rule 1.[7] To accomplish this goal, Rule 11 requires litigants to reasonably inquire into the law and facts before making legal and factual contentions in a pleading or motion; it emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable and by generally providing protection against sanctions if they withdraw or correct contentions after a potential violation is called to their attention. *See* Advisory Committee Notes to Rule 11, 1993 Amendments.[8]

---

[7] Rule 1, Federal Rules of Civil Procedure, provides that the rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action." *Id.*
[8] Rule 11 does not apply to discovery. *See* Fed.R.Civ.P. 11(d) (2010).

Rule 11 sanctions may be sought by motion of an opposing party or by the Court on its own initiative.  Fed.R.Civ.P. 11(c)(2)-(3).  Rule 11 contains a safe harbor provision which must be complied with prior to a party filing a motion for Rule 11 sanctions.  *See* Fed.R.Civ.P. 11(c)(2).  The safe harbor provision requires a party to formally serve the offending party with a copy the proposed motion for sanctions at least twenty-one (21) days prior to filing the motion for sanctions with the court.  Fed.R.Civ.P. 11(c)(2).  The purpose of the safe harbor provision is to allow the party against whom sanctions are sought to withdraw the challenged document(s). *See* 5A *Wright & Miller*, Federal Practice and Procedure, § 1337.2 (2010).  "If corrective action is taken, the question of sanctions becomes moot."  *Id*.  After the expiration of twenty-one (21) days, if corrective action is not taken, the party seeking sanctions may file the motion.  *See* Fed.R.Civ.P. 11(c)(2).  A motion for Rule 11 sanctions "must describe the specific conduct that allegedly violates Rule 11(b)."  *See* Fed.R.Civ.P. 11(c)(2).

Rule 11(b), Federal Rules of Civil Procedure, provides:

> **(b) Representations to the Court**. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
>> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary

> support after a reasonable opportunity for further
> investigation or discovery; and
> (4) the denials of factual contentions are warranted on the
> evidence or, if specifically so identified, are reasonably
> based on belief or a lack of information.

Fed.R.Civ.P. 11(b) (2010).   Therefore, Rule 11(b) imposes a duty upon attorneys and pro se

parties to "refrain from filing or pursuing frivolous claims."   *Rueter v. Merrill Lynch*, 440

F.Supp.2d 1256, 1266 (N.D. Ala. 2006) (citing Fed.R.Civ.P. 11(b)).

A court has discretion to award Rule 11 sanctions:

> (1) when a party files a pleading that has no reasonable factual
> basis; (2) when the party files a pleading that is based on a legal
> theory that has no reasonable chance of success and that cannot be
> advanced as a reasonable argument to change existing law; or (3)
> when the party files a pleading in bad faith for an improper
> purpose.

*Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996).   Rule 11 "applies

only to assertions contained in papers filed with or submitted to the court.   It does not cover

matters arising for the first time during oral presentations to the court, when counsel may make

statements that would not have been made if there had been more time for study and reflection."

Advisory Committee Notes to Rule 11, 1993 Amendments.[9]

The seminal case on Rule 11 in the Eleventh Circuit provides the following standard and

a two-step inquiry for courts to utilize in determining whether sanctions are appropriate:

---

[9] The Advisory Committee Notes to Rule 11, 1993 Amendments, also state: "However, a litigant's obligations with
respect to the contents of these papers are not measured solely as of the time they are filed with or submitted to the
court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after
learning that they cease to have any merit.   For example, an attorney who during a pretrial conference insists on a
claim or defense should be viewed as 'presenting to the court' that contention and would be subject to the
obligations of subdivision (b) measured as of that time."   *Id.*

> The objective standard for testing conduct under Rule 11 is "reasonableness under the circumstances" and "what was reasonable to believe at the time" the pleading was submitted. This court requires a two-step inquiry as to (1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous. . . .  Although sanctions are warranted when the claimant exhibits a "deliberate indifference to obvious facts," they are not warranted when the claimant's evidence is merely weak but appears sufficient, after a reasonable inquiry, to support a claim under existing law. Sanctions may be appropriate when the plain language of an applicable statute and the case law preclude relief. However, the purpose of Rule 11 is to deter frivolous lawsuits and not to deter novel legal arguments or cases of first impression. The grant of summary judgment, in and of itself, does not mean that an action is frivolous or warrants the imposition of sanctions.

*Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998) (internal citations omitted).  Therefore, the Court applies an objective reasonableness standard in terms of what was and should have been known at the time, keeping in mind that Rule 11 should not have a chilling effect on zealous or novel arguments.

A court has a wide variety of possible sanctions to impose for violations of Rule 11, including both monetary and non-monetary sanctions.  *See* Fed.R.Civ.P. 11(c)(4).   Non-monetary sanctions include: striking the offending paper; issuing an admonition, reprimand or censure; requiring participation in seminars or other educational programs; and referring the matter to disciplinary authorities.  *See* Advisory Committee Notes to Rule 11, 1993 Amendments.  Monetary sanctions include: an order to pay a penalty into the Court's registry; or, "if imposed on a motion and warranted for effective deterrence, an order directing payment to

the movant of part or all of the reasonable attorneys' fees and other expenses directly resulting from the violation." *See* Fed.R.Civ.P. 11(c)(4).[10]

Regarding a pro se party's request for monetary sanctions under Rule 11, the Eleventh Circuit has held:

> While it is true that the purpose behind Rule 11 sanctions is deterrence and punishment, and not to encourage litigants to retain independent counsel, we cannot conclude that Rule 11 allows for an award of attorneys' fees to a pro se litigant as a sanction. When a district court determines that an "attorney or unrepresented party" has violated Rule 11(b), it "may ... impose an appropriate sanction upon the ... part[y] that ... violated subsection (b)...." Fed.R.Civ.P. 11(b), (c). The sanction imposed may include "an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Fed.R.Civ.P. 11(c)(2). Because a party proceeding pro se cannot have incurred attorney's fees as an expense, a district court cannot order a violating party to pay a pro se litigant a reasonable attorney's fee as part of a sanction.

*Massengale v. Ray*, 267 F.3d 1298, 1302-03 (11th Cir. 2001) (emphasis added). Therefore, Rule 11 sanctions available to a pro se party do not include payment of attorneys' fees. *Id.*

**B.   28 U.S.C. § 1927 and the Court's Inherent Authority.**

28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

---

[10]In determining the proper amount of any monetary sanction, a court must consider the financial ability of the offender. *Baker*, 158 F.3d at 529. "[A] court must not impose a monetary sanction against a represented party for violating Rule 11(b)(2). . . ." Fed.R.Civ.P. 11(c)(5(A). Rule 11(b)(2) provides that by signing, filing, submitting a pleading, motion or other paper, an attorney certifies that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new laws." *Id.*

*Id.*  There are only two requirements for sanctions under Section 1927.  First, an attorney must engage in "unreasonable and vexatious" conduct.  *See Hudson v. International Computer Negotiations, Inc.*, 499 F.3d 1252, 1261 (11th Cir. 2007).  An attorney's conduct satisfies the first requirement "only when the attorney's conduct is so egregious that it is tantamount to bad faith."  *Amlong & Amlong, P.A. v. Denny's, Inc.,* 457 F.3d 1180, 1190 (11th Cir. 2006) (internal quotation marks and citation omitted).  Second, that "unreasonable and vexatious" conduct must multiply the proceedings.  *Hudson*, 499 F.3d at 1261.  When determining the dollar amount of a sanction under Section 1927, the sanction "must bear a financial nexus to the excess proceedings, i.e., the sanction may not exceed the costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  *Id*. at 1261 (internal quotations omitted).

The Court also has the inherent authority to control the proceedings before it, which includes the authority to impose "reasonable and appropriate" sanctions.  *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir. 2002).  "To exercise its inherent power a court must find that the party acted in bad faith."  *Martin*, 307 F.3d at 1335.  "Inherent powers must be exercised with restraint and discretion."  *Footman v. Cheung*, 341 F.Supp.2d 1218, 1224 (M.D. Fla. 2004) (citing *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998)).

## III.   <u>ANALYSIS.</u>

As set forth above, in order to be entitled to sanctions under Rule 11, Section 1927, or the Court's inherent authority, a movant must show that an attorney pursued objectively untenable factual or legal positions, engaged in unreasonable and vexatious conduct that multiplied the proceedings, or acted in bad faith.  *See* supra pp. 15-20.

20

Chu alleges that Mirabilis's attorneys knowingly filed the Complaint for an improper purpose and that Mirabilis's attorneys "conducted no factual investigation whatsoever before filing the [C]omplaint.  Doc. No. 242 at 5, 10, 12.   Chu alleges that Mirabilis's attorney's conduct was wilful, deliberate, and tantamount to bad faith. *Id*.   However, Chu submitted no evidence supporting his contentions that Mirabilis's attorneys deliberately filed the Complaint for an improper purpose or that Mirabilis's attorneys conducted no factual investigation before filing the Complaint.  *See* Doc. No. 242 at 5, 10, 12.   Chu's conclusory allegation is directly contradicted by Bates's affidavit.  Doc. No. 251-1 at 2-3; *see also* supra at p. 11.   Accordingly, it is recommended that the Court find Chu's request for sanctions based on the allegations that Mirabilis's counsel failed to investigate the facts and filed a Complaint for an improper purpose should be denied.

Chu also alleges: the Complaint falsely claims that this Court has personal jurisdiction over Chu (Doc. No. 242 at 11); the Complaint contains several misrepresentations of fact (Doc. No. 242 at 12); and Mr. Estes knowingly made false statements to the Court at the January 25, 2008 hearing (Doc. No. 242 at 2-3, 5).  Chu's contention that the Complaint falsely claims this Court has personal jurisdiction over him lacks merit because this Court has determined that it has personnel jurisdiction over Chu.  *See* Doc. No. 287 at 2-6.

Chu alleges that the affidavits of Jodi Jaiman (Doc. No. 242-4), Steve McCabe (Doc. No. 242-5), Jay Stollenwerk (Doc. No. 242-6), and Amodeo (Doc. No. 179) demonstrate that Mirabilis's attorneys knew that the allegations in the Complaint were false at the time the Complaint was filed.  Doc. No. 242 at 12. Chu fails to provide pinpoint citations to or otherwise state how those affidavits show Mirabilis's attorneys knew any of the allegations in the

21

Compliant were false the time the Complaint was filed.[11]   After reviewing the above affidavits, the Court finds no basis for Chu's allegation that Mirabilis's counsel knew or should have known facts alleged in the Complaint were false or acted in bad faith as to the filing of the Complaint.

Chu alleges that Mr. Estes's January 25, 2008 statements to the Court expressly misrepresented Amodeo's authority over Mirabilis and Nexia.  Doc. No. 242 at 5 ("The attorneys and [Jaiman] are guilty of express misrepresentation to this Court for denying on the record that Frank Amodeo had any authority within [Mirabilis] or Nexia . . ., while also swearing on the record to the Bankruptcy Court that Frank Amodeo was the person who controlled [Mirabilis] all along.") (internal emphasis omitted) (citing Doc. Nos. 242-7 at 12, 242-4 at ¶ 3).  Mr. Este's statements, which are quoted above (*see* supra p. 9), concern Amodeo's stock holdings or ownership in Mirabilis.  *See* Doc. No. 242-7 at 12-13.  In her affidavit, Ms. Jaiman's statements refer to Mr. Amodeo's control over Plaintiffs, not his stock holdings or ownership.  Doc. No. 242-4 at ¶ 3. The issues of stock ownership and control over the day to day operations are distinct.  Therefore, Mr. Estes's statements are not directly contradicted by Ms. Jaiman's affidavit. *Id.*

_____

[11] Therefore, Chu's Motion has serious deficiencies that justify rejecting many of his arguments. *See* Local Rule 3.01(a); *Reese v. Herbert*, 527 F.3d 1253, 1260 (11th Cir. 2008) ("judges are not like pigs, hunting for truffles buried in briefs"); *Perez v. Bureaus Inv. Group, No. II, LLC*, No. 1:09-cv-20784, 2009 WL 1973476 at *2, n. 2 (S.D. Fla. July 8, 2009).  In *Perez*, the court stated:

> In the future, all parties should thoroughly research and develop their arguments. "The premise of our adversarial system is that ... courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983). When parties do not fully develop their arguments and support them with citation to legal authority, the burden upon the Court is improperly increased. "[T]he onus is upon the parties to formulate arguments." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995). Generally, a "litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. The court will not do his research for him." *Phillips v. Hillcrest Medical Center*, 244 F.3d 790, 800 (10th Cir.2001) (internal quotation omitted).

*Id.* Simply put, it is not the Court's duty to waste its limited resources searching for something that could easily be supplied by the parties.  *Id.*

22

The Complaint contains no reference or allegation regarding Mr. Amodeo's control of Mirabilis and Nexia. *See* Doc. No. 56. When viewed objectively, Mr. Estes's statements were not part of his prepared remarks to the Court and contained words of equivocation, such as "I don't have any documentary evidence," "I don't know," and "I don't know if there's any evidence right now to support this, but my understanding is at no point in time did Mr. Amodeo own more than about a half percent of Mirabilis." Doc. No. 242-7 at 12-13. Rule 11 "does not cover matters arising for the first time during oral presentations to the court, when counsel may make statement that would not have been made if there had been more time for study and reflection." Advisory Committee Notes to Rule 11, 1993 Amendments. Moreover, Chu has failed to demonstrate that the statements were made in bad faith or were intended to multiply the proceedings. Accordingly, it is recommended that the Court find that Chu has failed to show that the Mirabilis attorneys engaged in any sanctionable misconduct. Accordingly, it is recommended that the Motion for Sanctions (Doc. No. 242) be **DENIED**.

### C.  Chu's Motion to Supplement.

Although the Motion to Supplement alleges that new, material evidence exists, Chu does not state or explain what that evidence shows. Additionally, although the Motion to Supplement states that the new motion for sanctions is attached thereto, the motion for sanctions was not attached. Chu also failed to state whether he complied with Rule 11's safe harbor provision prior to filing the Motion to Supplement. Accordingly, it is recommended that the Court find that Chu has failed to demonstrate good cause to supplement the Motion for Sanctions or to file an additional motion for sanctions, and that the Motion to Supplement (Doc. No. 305) be **DENIED**.

IV.    **CONCLUSION**.

Based on the forgoing, it is hereby **RECOMMENDED** that the Court:

1.   **DENY** Motion for Sanctions (Doc. No. 242); and

2.   **DENY** the Motion to Supplement (Doc. No. 305).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Recommended** at Orlando, Florida on December 15, 2010.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies to:
Presiding District Judge
Counsel of record
Unrepresented parties