UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MIRABILIS VENTURES, INC. and
NEXIA STRATEGY CORPORATION,
        Plaintiffs,

v.               CASE NO.: 6:07-CV-1788-ORL-28-JA-GJK

PALAXAR GROUP, LLC;
PALAXAR HOLDINGS, LLC;
FRANK HAILSTONES; EDITH CURRY
a/k/a EDITH BROADHEAD; and
TERRENCE CHU,
        Defendants,

v.

MIRABILIS VENTURES, INC., et al.
        Counterclaim and Third
          Party Defendants.
_____/

## PRELIMINARY ANSWER OF FRANK L. AMODEO TO SECOND AMENDED COUNTERCLAIM AND THIRD PARTY CLAIMS

COMES NOW, FRANK L. AMODEO, and files this Answer to the Second Amended Counterclaims and Third Party Claims ("SAC") of the Defendants, Edith Curry and Frank Hailstones.

In order to avoid the typical delaying and posturing anties of litigation Mr. Amodeo will endeavor to provide factual answers not just blanket denials, but time constraints will prevent such exposition for the entirety of this preliminary answer.

Also, Mr. Amodeo will number the paragraphs in the this preliminary Answer to correspond to the paragraphs in the SAC.

Next, Mr. Amodeo incorporates Mr. Amodeo's previously filed declaration into each and every count by reference, as if fully restated; especially the Edith Curry's Notebook contained in the Declaration's adendumn.



## GENERAL ANSWER

**(1)**

Amodeo admits the allegations contained in paragraph 1 of SAC.

**(2)**

Amodeo admits the allegations contained in paragraph 2 of SAC.

**(3)**

Amodeo admits the allegations contained in paragraph 3 of SAC.

**(4)**

Amodeo admits the allegations contained in paragraph 4 of the SAC, except Amodeo is unaware of the reason for the dismissal of Mirabilis Ventures, Inc. (The bankruptcy stay does not generally affect litigation involving nondebtors, thus the reason stated for the dismissal is suspect.)

**(5)**

Mr. Amodeo admits, Mr. Amar was an officer of a Mirabilis affiliate and at one time possessed the single issued common share of Mirabilis Ventures, Inc. Stock; however sometime in early 2006, Mr. Amar surrendered the share of stock to Richard Berman, Esq. (Mr. Amar's recollection of this is different as to the timing and recipient of the stock.)
   Mr. Amar was disgusted with the spending habits of the directors and officers of Mirabilis Ventures, Inc.
   Mr. Amar could not believe the officers and directors were approving millions of dollars in expenses and investments while not making any money.
   Mr. Amar, further, feared the Mirabilis' directors and officers would again raid the PEO's (AEM,Inc.) taxes to cover the operating losses; especially for their own compensation.
   Consequently, at some period in early 2006, Mr. Awar was not even arguably, a shareholder.
   I don't recall Mr. Amar ever being a director or officer of Mirabilis, although early on Mr. Amar have had a title, but Mr. Amar did not want to be associated with "those people" (Mirabilis Directors and Officers); despite the Mirabilis executives' credentials.

**(6)**

Mr. Amodeo admits the allegations contained in paragraph 6 of "SAC."

**(7)**

Mr. Amodeo admits that Mr. Bates was a counsel for Mirabilis, possibly a counsel for Nexia Strategy Corporation, although such representation probably only occurred upon cessation of business operation. To the extent of any other inference, Mr. Amodeo denies this allegation.

**(8)**

Mr. Amodeo admits the allegations in paragraph 8 of SAC with the same qualifications as set forth in paragraph 7 above.

**(9)**

Mr. Amodeo admits the jurisdictional and venue allegations of SAC paragraph 9.

**(10)**

Mr. Amodeo denies the allegations in paragraph 10 as Ms. Curry was involved without title in Nexia from at least May 2005. Ms. Curry was instrumental in developing the Presidion Reorganization Plan and negotiating the contract between Nexia and Presidion. This contract and the fee-value of the contract is what caused Ms. Curry, to want to be an officer of Nexia; as well as Mirabilis Ventures, Inc.
   Mr. Amodeo admits Ms. Curry employment with Nexia ended on or about October 31, 2010.

**(11)**

The allegations in paragraph 11 are denied Mr. Hailstones began working with Mirabilis much earlier in 2005. The project involved modeling Presidion Corporation, then a Mirabilis subsidiary, for the purpose of developing antifraud and Sarbanes-Oxley software.
   Mr. Amodeo denies the allegations of paying Axena's expenses or breaking any promises, but further discussion of Axena is unneeded at this stage of the litigation.
   Mr. Amodeo would like to note to the extent Mirabilis broke an agreement, Mr. Hailstones was Mirabilis' Chief Executive Officer, thus responsible for any such breach. All other allegations are denied.

**(12)**

Mr. Amodeo denies the allegations of the similarly numbered paragraph of SAC and specifically points out Mr. Amodeo was always happy with being president of AQMI Strategy Corporation and <u>never</u> wanted or planned to be president of Mirabilis Ventures, Inc.

**(13)**

Mr. Amodeo, with Ms. Curry's agreement, sold the "shell" corporation of Nexia Strategy Corporation to Mirabilis in or about May 2005. Mr. Amodeo was not a shareholder, let alone the sole shareholder of Nexia after that date. As Mr. Amodeo has not been provided a copy of Doc 24-2, Mr. Amodeo is unable to answer specifically, therefore denies this and other allegations, generally.

## COUNT I
**(14)**

This allegation is self-evident and does not require admittance or denial, but to the extent a response is required the allegation is denied.

**(15)**

The allegation in this paragraph is admitted but allegation is under inclusive as to Brookmeade's duties and objectives so the allegation is denied.

**(16)**

This allegation is again only partially true Ms. Curry was aware of the Presidion Corporation stock's market value and told Mr. Amodeo the stock is worthless unless, "we turn this *pile* of dog---- around." The allegation is denied as being limited.

**(17)**

Mr. Amodeo admits the description of the documents sounds correct, at least to the best of Mr. Amodeo's knowledge. The purpose was to provide a layer of protection in case the Presidion Reorganization failed and the IRS and others creditors came after the Presidion assets.

**(18)**

In June of 2005, an agreement was made for an Amodeo owned company to buy and close-down Presidion Solution, Inc. and its subsidiaries. The operating assets were to be transferred to AEM, Inc., a company owned by Mirabilis, AEM, Inc. The company (AEM) was acquired by Mirabilis at Ms. Curry's direction and with Ms. Curry negotiating the purchase.

In effect Ms. Curry's company controlled the income producing assets and Ms. Curry simply chose not to pay herself, at least as of July 28, 2005. The allegation are otherwise denied.

**(19)**

Mr. Amodeo admits the agreement existed, but such agreements were prepared by or at the direction of Ms. Curry. Ms. Curry was an officer or director of Mirabilis and Mr. Amodeo as did everyone else, then at Mirabilis, relied on Ms. Curry's knowledge and expertise; especially regarding corporate governance and contract compliance.

If anything, Mr. Amodeo relied on Ms. Curry, and Mr. Amodeo needs to bring an additional claim against Ms. Curry because of these "facts."

Other than as specified the allegations of paragraph 19 are denied.

**(20)**

These allegations are denied Ms. Curry signed the contract with Nexia so she could handle the reorganization of Presidion into AEM, Inc. and Mirabilis and get paid from a solvent entity.

Ms. Curry insisted upon these representations and commitments for Richmond, Virginia. However, a prerequisite was the projects would only be effectuated when Ms. Curry arranged over ten million dollars in grants. Amongst lots of other promises, which now suggest Ms. Curry was as crazy as Mr. Amodeo. Ms. Curry just seems to have known how to hide it better; the allegations are denied.

**(21)**

Ms. Curry may have begun developing a business plan, but otherwise the allegations are denied.

**(22)**

Mr. Amodeo only pledged to "takeover the world and make it a better place," any other "Pledge" was Ms. Curry's plan; the allegations are denied.

**(23)**

Ms. Curry was trying to make it appear Mr. Amodeo was making these decisions in order to cover Ms. Curry's receipt and use of the tax funds. Neither Mirabilis, nor Nexia, needed Mr. Amodeo to turn on the telephone or to conduct day to day operations. The allegations are denied.

**(24)**

Ms. Curry was the lawyer, and Mirabilis was under Ms. Curry's guidance as an officer and director, she did not rely on Mr. Amodeo. The allegations are denied.

**(25)**

The allegations are denied, Ms. Curry sending an email to her own company may have happened; but this was not sent to Mr. Amodeo.

**(26)**

Ms. Curry was in a position to have made Nexia fulfill the agreements, if they were actually not fulfilled, it was Ms. Cuury's fault. The allegations are denied.

**(27)**

The allegation is conclusory and the allegation is illogical because Ms. Curry was Nexia. Otherwise the allegations are denied.

**(28)**

The allegation is denied, the assets of Presidion and Nexia both were transferred to Mirabilis, where Ms. Curry stood to benefit from Mirabilis' success to an amount in excess of 30 million dollars. Ms. Curry was intimately involved in every Presidion, Nexia, and Mirabilis' decision.

**(29)**

The allegation is denied Ms. Curry, inadvertently or intelligently, took advantage of Mr. Amodeo's mental health problem for personal gain. Any other allegations are denied.

## COUNT 2

Mr. Amodeo believes it preferable to answer all the allegations in great detail, but constraints currently exist on Mr. Amodeo's time and such an exposition requires more time than is available. Mr. Amodeo will; therefore, revert to the traditional format for answering the complaint, but hopefully will *be* allowed to amend promptly. The paragraphs continue to correspond to those of the SAC.

### (30)

The allegations are denied.

### (31)

The allegations are denied, Ms. Curry wanted Mr. Amodeo's permission to take some assets, Mr. Amodeo told her, Mr. Amodeo could not agree until the IRS was paid.

### (32)

The allegations are denied, especially as to awareness and approval.

### (33)

Mr. Amodeo admits Ms. Curry signed the agreement, the allegations are otherwise denied.

### (34)

The allegations are denied.

### (35)

Mr. Amodeo does not have a copy of the agreement so Mr. Amodeo must deny the allegations.

### (36)

All allegations contained in paragraphs: 36, 37, 38, and 39, are denied.

## COUNT III

The allegations contained in paragraphs: 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, and 75, are denied.

One comment is appropriate, the defendant conveniently omits Mr. Amodeo's primary involvement with the lawsuit was informing the USAO of the intent to sue, and confirming the government did not oppose the lawsuit.

## COUNT IV

The allegations set forth in paragraphs: 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, and 86, are denied.

## COUNT V

The allegations set forth in paragraphs: 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, and 97, are denied.

### COUNT VI

The allegations set forth in paragraphs: 98, 99, 100, 101, 102, 103, and 104, are denied.

### COUNT VII

The allegations set forth in paragraphs: 105, 106, 107, 108, 109, 110, and 111, are denied.

### COUNT VIII

The allegations set forth in paragraphs: 112, 113, 114, and 115, are denied.

### COUNT IX

The allegations set forth in paragraphs: 116, 117, 118, 119, 120, 121, 122, and 123, are denied.

### COUNTERCLAIMS, CROSSCLAIMS, AFFIRMATIVE DEFENSES

All previously filed counterclaims, crossclaims, and affirmative defenses are restated as if fully set forthhere.

**WHEREFORE,** Mr. Amodeo respectfully requests the Court deny all relief requested by Ms. Curry and Mr. Hailstones; award Mr. Amodeo compensatory, consequential, exemplary and punitive damages as determine by a jury and such other relief as the court deems appropriate or fair.

Respectfully submitted this __20th__ day of December 2010 under the penalty of perjury, pursuant to 28 U.S.C. §1746 by:

FRANK L. AMODEO #48883-019
FEDERAL CORRECTIONAL COMPLEX-(LOW)
POST OFFICE BOX 1031     UNIT-(B/3)
COLEMAN, FLORIDA         [33521-1031]

### CERTIFICATE OF SERVICE

This motion was mailed with postage prepaid to the court and deemed filed on December 20, 2010, a copy will be served on all other parties or their counsels of record by U.S. Mail on or about December 22, 2010.

FRANK L. AMODEO