**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| MIRABILIS VENTURES, INC. and<br>NEXIA STRATEGY CORPORATION,<br><br>Plaintiffs,<br>-vs.-<br><br>PALAXAR GROUP, LLC;<br>PALAXAR HOLDINGS, LLC;<br>FRANK HAILSTONES; EDITH CURRY<br>a/k/a EDITH BROADHEAD; and<br>TERENCE CHU,<br><br>Defendants,<br><br>vs.<br><br>MIRABILIS VENTURES, INC., et al.<br><br>Counterclaim and Third<br>Party Defendants. | Case No.: 6:07-CV-1788-ORL-28-JA-GJK<br><br>**DEFENDANTS' OPPOSITION TO JOINT MOTION OF PLAINTIFF AND BROAD AND CASSEL, P.A., WILLIAM R. CUTHILL, JR., NICOLETTE VILMOS, TODD NORMAN, BATES MOKWA PLLC, AARON C. BATES, AND MATTHEW S. MOKWA TO BIFURCATE ISSUES RAISED IN MOTION FOR ATTORNEYS' FEES** |

Defendants Palaxar Holdings LLC, Palaxar Group, LLC, Edith Curry and Frank Hailstones, ("Defendants") hereby file their Opposition to the Motion of Mirabilis Ventures, Inc. (“Mirabilis”), R.W. Cuthill, Jr. (“Cuthill”), Broad and Cassel, P.A. (“B&C”), Nicolette Vilmos (“Vilmos”), Todd K. Norman (“Norman”), Bates Mokwa, PLLC (“Bates Mokwa”), Matthew S. Mokwa (“Mokwa”), and Aaron C. Bates (“Bates”) (collectively the “Participants”) Joint Motion to Bifurcate (D.E. 387).

The Participants incorrectly suggest that Defendant's Motion for Attorneys' Fees is pursuant to a judgment in favor of the Defendants. It is not. Rather, the Motion is for statutory attorneys' fees pursuant to Fla. Stat § 688.005,[1] which enables this Court to award attorneys' fees when a claim for misappropriation of trade secrets was brought or maintained in bad faith, as well as for attorneys' fees due to the Participants' vexatious and shocking conduct, pursuant to 28 U.S.C. § 1927. Under Fla. Stat. § 688.005, the Participants knowingly risked the entry of an attorneys' fee award against them when they pleaded and continued to press their claim of misappropriation of trade secrets knowing that the claim was false and was made in bad faith.[2] Moreover, Plaintiffs and their Attorneys were repeatedly given notice that they had a duty to abandon their pursuit, yet they willfully persisted. Finally, because Defendants' suspended their submitted billings at the end of August, 2010, bifurcation is wholly unnecessary.

## STATEMENT OF FACTS

The Participants are either confused or are obfuscating; regardless, their motion is not a useful submission to this Court. They seek to bifurcate Defendant's Motion for Attorneys' Fees into a liability phase and a "reasonable quantum" phase. In support thereof, they cite an inapplicable Federal Rule and cases that are irrelevant (including one that has been overturned).

In their motion, the Participants cite the following:

---

[1] A number of statutes provide for prevailing party attorneys' fees. *See, e.g.*, Fla. Stat. §448.08 (1995) (fees for successful litigants in unpaid wages actions); Fla. Stat. §501.621 (1995) (fees for successful litigants under Florida Telemarketing Act); Fla. Stat. §517.211 (1995) (fees for prevailing party under Florida Securities and Investor Protection Act); Fla. Stat. §559.921 (1995) (fees for prevailing party under Florida Motor Vehicle Repair Act); Fla. Stat. §641.28 (1995) (fees for prevailing party in health maintenance organization contract actions); and Fla. Stat. §688.005 (1995) (fees for prevailing party in bad faith or willful trade secret act litigation).

[2] Indeed, even "to state a claim under the Florida Trade Secrets Act, a plaintiff must show (1) that the plaintiff possessed secret information and ***took reasonable steps to protect its secrecy*** and (2) that "the secret it possessed was misappropriated." *Gardner v. Construct Corps LLC*, 2010 WL 427742, *2 (M.D. Fla. Feb. 1, 2010), (*quoting True Title, Inc. v. Blanchard*, 2007 WL 430659, *2 (M.D. Fla. 2007) (Fawsett, J.)(emphasis added)). Through three years of litigation, Plaintiffs not only made no such showing, they ***never even attempted*** to do so.

1. Fed. R. Civ P. 54(d)(2)(C), which the Participant claim "authorizes this Court to 'decide the issues of liability for fees before receiving submission on the value of services.'"

    - Defendants' Motion, however, is based on the Florida Trade Secrets Statute §688.005 and 28 U.S.C. § 1927; not on Rule 54(d). The Participants failed to note that claims made under 28 U.S.C. § 1927 are ***expressly exempted*** from application of Rule 54(d) by Rule 54(d)(2)(E).

2. Local Rule of the N. D. Fla. 54.1(d),[3] which ***requires*** parties in dispute over an attorneys' fee award sought under Fed. Rule Civ. Pro. 54(d) to make an effort to settle both the liability for and the amount of attorneys' fees to be awarded, and requiring bifurcated proceedings in the event the settlement efforts are unsuccessful.

    - This Rule is irrelevant in this case.[4]

3. Local Rule of the S.D. Fla. 7.3, which addresses "a motion for an award of attorneys' fees and/or costs arising from the entry of a final judgment or order. . . ."

    - This Rule is irrelevant.

4. *Stewart v. Town of Zolfo*, 1998 WL 776848, *1 (M.D. Fla. 1998), for the proposition that "Courts routinely bifurcate these issues in order to save the parties and the court the expense of analyzing a party's voluminous submissions of fees and costs."

    - *Stewart* ***did*** allow the Defendants' motion to bifurcate the processes of determining liability for fees and costs and determining the actual amount of fees and costs, but ***without*** discussing its reasoning of the issue. The language the Participants cited appears

---

[3] "*Bifurcated Procedure for Determining Attorneys' Fees*. If the settlement efforts are unsuccessful, the court's determination of attorneys' fees and related nontaxable expenses will be bifurcated [(see rule Fed. R. Civ. P. 54(d)(2)]."

[4] If the Participants wish to enter into negotiations with Defendants concerning the amount of attorneys' fees and costs they would be willing to pay, Defendants would be happy to enter into such negotiation, but only if the Participants are willing to waive any appeal.

nowhere in the *Stewart* case. *Stewart* involved the potential recovery of attorneys' fees under a variety of statutes and discussed at length whether a claim is "frivolous" so as to ***require*** an award of attorneys' fees under Fla. Stat. § 57.105, but the case did not deal with a motion for statutory attorneys' fees as has been made in this case.

5. *National Fire Ins. Co. of Pittsburgh, PA v. Garber*, 2006 WL 2038538, *6 (E.D. Cal. 2006) (granting motion to bifurcate because "defendants assert[ed] that [plaintiff] has presented a massive amount of paperwork, most of which would be completely irrelevant if this court rules that [plaintiff] is not entitled to an award.").

   - In *National Fire Insurance,* the Court did allow the issues of liability and amount of attorneys' fees to be bifurcated, but noted: "***Given the history of this action, the court cannot help but look upon this request as anything other than a further and improper attempt by defendants to delay the resolution of this action.***" *Id.* at *6.
   - This statement on the part of the Court in *National Fire Insurance* is precisely why Defendants oppose the bifurcation sought by the Participants. Now a quarter of the way through the fourth year of litigation; and even after they moved to dismiss Plaintiffs' claims with prejudice; the Participants are still doing anything possible to delay resolution.

6. *American Home Assur. Co. v. Pope*, 410 F.Supp.2d 849, 851 (W.D. Mo. 2006), in which the District Court did grant the motion to bifurcate and awarded attorneys' fees after the dual proceeding.

   - The Participants failed to cite the opinion on appeal, however, in *American Home Assur. Co. v. Pope*, 487 F.3d 590, 605-06 (8th Cir. 2007), which vacated the attorneys' fee award, plainly demonstrating that the district court saved no time in bifurcating the issues.

- Moreover, the *American Home* case involved factual circumstances entirely different from those at issue here. The parties need no discovery for an attorneys' fee award to be made in this case.

**DISCUSSION**

Fed. R. Civ. P. 54 defines a "judgment" as a decree and/or any order from which an appeal lies. Plaintiffs in this case do not have a judgment. A plaintiff cannot appeal an order granting his motion for voluntary dismissal of the action once the requisite time limit has passed. *See* 5 Moore's Federal Practice 41.05 (2d ed. 1993). Plaintiffs voluntarily dismissed their claims with prejudice. (D.E. 339). Thus, Fed. R. Civ. P. 54 is irrelevant. The applicable Rule is Fed. R. Civ. P. 41. Rule 41(a)(1)(B) provides that a dismissal with prejudice operates as an adjudication on the merits.

In *Esquivel v. Arau*, 913 F. Supp. 1382, 1388 (C.D. Cal. 1996) the Court noted that Rule 41(d) permitted an award of fees because Rule 41(a)(2), which governs voluntary dismissals, has been read to allow the imposition of attorneys' fees as a condition of dismissal: "The fact that Rule 41(a)(2) has been a basis to impose fee award 'conditions' lends support to the proposition that Rule 41(d) 'costs' awards should also include attorneys' fees." *Id*. at 1391.

Plaintiffs' Second Amended Complaint alleged seven counts against Defendants. Plaintiffs demanded (i) judgment for compensatory and exemplary damages, together with interest, costs and reasonable attorneys fees, in an amount to be determined at trial; (ii) injunctive relief pursuant to the Florida's Uniform Trade Secrets Act to enjoin the misappropriation of trade secrets; (iii) imposition of a constructive trust on the assets of Palaxar Group, LLC and Palaxar Holdings; (iv) that a jury be empanelled to hear this cause; and (v) for such further and other relief the Court deems just and proper. Plaintiffs did not file these causes of action in a vacuum; they were well aware that they were filing under the Florida Uniform Trade Secrets Act, and that

that they were proceeding in bad faith. As Mr. Lynch's affidavit makes absolutely clear, the Participants knew the claims they made in their original complaint were false (D.E. 74-1 at ¶ 25).

Yet in Mr. Bates' own sworn statement he testified:

> Before the filing of the original complaint, Balch & Bingham, Bates Mokwa, and Plaintiffs conducted an investigation to determine whether or not there was sufficient evidentiary support to assert the allegations set forth in the original complaint…the investigation process (which occurred prior to the filing of the original complaint and continued through the filing of the Second Amended Complaint) included, without limitation: a. Speaking to former and current officers and directors of Mirabilis and Nexia; b. Reviewing all of the corporate governance of Mirabilis and Nexia; c. Reviewing thousands of pages of documents related to Mirabilis and Nexia; d. Reviewing hours of audio/video of the former officers and directors of Mirabilis and Nexia; e. Reviewing financial records of Mirabilis and Nexia; and f. Reviewing certain promotional documents of Palaxar. (D.E. 251-1 at ¶6.)
>
> Before the filing of the original complaint, a draft was circulated amongst Balch & Bingham, Bates Mokwa, and Plaintiffs. Plaintiffs reviewed the draft complaint and verified the accuracy of all the facts stated therein. Numerous revisions of the complaint were reviewed and circulated amongst the attorneys and Plaintiffs… (D.E. 251-1 at ¶7; D.E. 252-1.)

Bates' and Mokwa's and Estes' and Campbell's and Balch's efforts to find sufficient evidentiary support for their claims count for ***nothing*** when they ***knew*** their claims were false.

Plaintiffs' counsel Allen Estes on January 25, 2008, during the hearing on MVI's Motion for Preliminary Injunction,[5] stated in this Court:

> If Nexia's not in the antifraud business, what business is it in? Nexia is in the liquidation business. Nexia exists today to marshal its assets and liquidate them for the benefit of its creditors. Unless you've been not paying attention to the media, I believe it is well established in the public domain that at least one of the creditors of Mirabilis or Nexia or any of the other subsidiaries is most likely going to be the IRS. There are tax issues. So Mirabilis is liquidating assets which will most likely end up at least a portion of being paid to the IRS . . . . there is no

[5] See *Crowe v. Coleman,* 113 F.3d 1536, 1542 (11th Cir.1997) (unequivocal concessions and admissions of counsel at oral argument in appellate courts can count against the party represented by counsel); *Kohler v. Inter-Tel, Inc.,* 244 F.3d 1167, 1170 n. 3 (9th Cir.2001) ( *citing United States v. Wilmer,* 799 F.2d 495, 502 (9th Cir.1986) (attorney's statement during oral argument constitutes judicial admission); McCaskill v. SCI Mgmt. Corp., 298 F.3d 677, 680 (7th Cir.2001) (verbal admission by counsel is a binding judicial admission, the same as any other formal concession made during the course of proceedings).

> patent. We're dealing with Florida Trade Secrets Law. ***They took a trade secret.*** There is no patent. Patent law, you must have a written assignment of the patent. It's not applicable here. ***We're dealing with the Florida trade secrets, uniform trade secrets act.*** (Emphasis added.) (D.E. 243 at 4.)

If Participants did not know, through their extensive research and investigation, that the Florida Trade Secrets Act has a statutory provision for attorneys' fees and costs for claims made, and injunctions pursued in bad faith, then their statements to this Court are lies. And conversely, if their statements to the Court are true, they knew from the first moment Mr. Estes began his erroneous Argument that the Participants themselves could be held liable for Defendants' attorneys' fees and costs. Defendants ***told*** the Participants (thus putting them on actual and constructive notice) that their claims were baseless and should be abandoned:

- When Defendants were served with process (October 15, 2007);
- In their original answers (D. E. 8 and 10);
- In the Motion for Judgment on the Pleadings (D.E. 9)
- In their response to the Motion for Preliminary Injunction (D.E. 44) and accompanying Exhibits and Affidavits (D.E. 41-1 through 41-19);
- At the hearing on the Motion for Preliminary Injunction (D.E. 75-19) (January 25, 2008);
- In their Answer and Amended Counterclaims (D.E. 59);
- In their Motion for Summary Judgment (D.E. 75) and accompanying Exhibits (D.E. 75-1 through 75-25) (March 17, 2008);
- At the deposition of Mr. Cuthill (September 22, 2010); and
- In countless pleadings, depositions, and conversations both before and since.[6]

[6] After Defendants' requests to meet in person with Mr. Norman and Ms. Vilmos were summarily denied, Defendants and the undersigned took the extraordinary step of attending a face-to-face meeting on October 8, 2010 with Roy Kobert, Esq. (of B&C), during which documents produced by Plaintiffs in September 2010 which demonstrated that the Plaintiffs' claims were baseless and that the prosecution of them was a plan by Frank Amodeo to reduce his sentence (all of which were Exhibits to the attorneys' fees motion (D.E. 372—374 (inclusive)) were presented to Mr. Kobert. Defendants asked him to take the opportunity either to withdraw the claims or withdraw his firm from the representation. Mr. Kobert did neither. Indeed, Mr. Kobert failed to respond. Ever.

Nevertheless, the Participants continued with their relentless pursuit, destroying Curry's and Hailstones' personal and professional lives and reputations.

Cuthill, too, was well aware of the above information. According to Ms. Vilmos' (of B&C) statement in open Court at the December 2, 2009 Status Conference, Cuthill—whom she identified as a certified fraud examiner[7]— had reviewed the case file and that it was his informed decision to pursue this case. In a bankruptcy hearing, Cuthill testified that he spent significant time evaluating whether Mirabilis or Nexia held the more valuable claim against Palaxar, that he reviewed a multitude of documents as well as the case file, and spent a lot of time analyzing and valuing the claims against Defendants, beginning in May 2008 when he became President of Mirabilis, throughout the stay, with the assistance of Debtor's litigation counsel, Balch, through May 2010 in preparation for a hearing in Mirabilis' bankruptcy case. See *In re: Mirabilis Ventures, Inc.*, Case No. 6:08-BK-04327 (Bankr. Doc. 565).

The Participants have testified or certified to this Court that they reviewed thousands of documents and that "numerous revisions of the draft complaint" were circulated amongst the attorneys and plaintiffs. (D.E. 253-1, Declaration of J. Russell Campbell at ¶¶ c-f.) Given Cuthill's status as an experienced litigant,[8] this Court is entitled to presume that he followed his fiduciary duty and inquired of Mirabilis' lawyers as to the validity of the claims, and that Mirabilis' attorneys responded according to their duties as lawyers to answer their client

[7] Although Ms. Vilmos stated on the record that Mr. Cuthill was a certified fraud examiner, giving the clear impression that Mr. Cuthill was a certified fraud examiner ***at that time.*** Mr. Cuthill admitted in his deposition, however, that he has not been either a CPA or a certified Fraud examiner since January 31, 2008.

[8] A former Certified Fraud Examiner, former Certified Public Accountant, "and "a renowned trustee/liquidator and who was appointed by the Honorable Karen Jennemann, of the U.S. Bankruptcy Court for the Middle District of Florida. . . .[and] the trustee/liquidator in the Evergreen Security, Ltd. action, Case No. 6:01-00533-KSJ, [and] who was approved by the Bankruptcy Court [], because of his past successes, to liquidate Mirabilis, et al.," Cuthill of course was aware of his fiduciary duties to Mirabilis. *See U.S. v. Mirabilis*, Case No. 6:08-CR-00216-JA-KRS (Doc. 139 at pp. 8, 14).

truthfully. After Cuthill's significant and exhaustive review of the case, including the pleadings, Cuthill knew that the parties (including himself), the law firms and the attorneys could ultimately be statutorily responsible for paying Defendants' fees and costs. In particular, given that the claims included the theft of trade secrets, which, if made in bad faith, entitle this Court to order that Cuthill and Plaintiffs' multiple attorneys and law firms are liable for Defendants' attorneys' fees pursuant to Florida's Uniform Trade Secrets Act, Fla. Stat. § 688.005,[9] the Participants risked their potential individual liability when Cuthill authorized Vilmos to convey to Defendants their July 12, 2010 settlement offer:

> On behalf of Mr. Cuthill, I am authorized to make you this confidential settlement proposal. Mr. Cuthill will agree to dismiss the Palaxar law suit against Ms. Curry, Mr. Hailstones and Mr. Chu, with prejudice, in exchange the parties will execute releases, ***which will include the Mirabilis/Nexia attorneys past and present***. This settlement offer is contingent on all three parties, Ms. Curry, Mr. Hailstones and Mr. Chu, accepting and agreeing to the terms. (D.E. 368-1)[10]

There is no "massive amount of paperwork" here that the Participants will be required to comb through if the "entitlement" and "amount due" issues are not bifurcated. No defense counsel in the case submitted a bill beyond that from August 2010, when summary judgment was granted, and the undersigned's bills are the only ones that proceed even that far. A review of the bills submitted would not take an experienced attorney more than a few hours. The undersigned completed their review and appropriate redactions in less than six hours (time that was not included in the fees motion).

---

[9] Fla. Stat. § 688.005 provides: "If a claim of misappropriation is made in bad faith . . . the court may award reasonable attorneys' fees to the prevailing party."

[10] Although B&C and Mirabilis are now asserting that Mirabilis never represented Nexia with respect to the counterclaims (D.E. 352), they must have believed that they represented Nexia when they made this settlement proposal. If not, then there was nothing for Defendants to "release." This is yet another instance of Mirabilis' and B&C's bad faith. Moreover, seeking a release of liability not only of the client but of the involved attorneys presents a shameless conflict of interest.

Defendants' seek an award of joint and several liability. Every Participant had literally ***years*** to complete a thorough investigation and to learn that no trade secrets had been misappropriated. Balch, Estes, Campbell, Bates, and Mokwa knew the claim was false when they filed it; Bates and Mokwa knew it was false when they served it; Estes knew it was false when he argued it; B&C knew it was false when they fought in the bankruptcy court for Nexia's claims, then filed a notice of appearance (not a limited appearance) saying they represented Nexia, then made settlement offers on Nexia's behalf ***involving the counterclaims***, and now say Mirabilis never had the right to represent Nexia with respect to the counterclaims, knew all along the claims were false. Cuthill knew the claims against Defendants were false. Cuthill cannot—if asked—define or even describe Nexia Certification or a single one of Mirabilis' claimed "trade secrets." Nor can a single one of Mirabilis' or Nexia's attorneys do any better. This is a liability the Participants share—they knowingly planned it, pursued it, and maintained it together, beyond anyone's patience or credence. The conduct in this case has been inexcusable from the very start and so it continues. The Participants should bear the costs together.

**CONCLUSION**

This case has gone on far too long. Indeed, as evidence before this Court makes clear, it should have never been filed. Allowing Plaintiffs' and their well-funded attorneys, with Cuthill making $400/hour for all his time invested, to make every conceivable motion which automatically results in delay—without consequence to themselves—is an offense to the judicial system as much as to Defendants. The past three-plus years of malicious litigation have been sufficient punishment for the Defendants' voluntarily cooperation with the AUSA's investigation and indictment of Plaintiff MVI and Frank Amodeo. It is time for accountability. Defendants

respectfully request that the Court deny the Parties' Motion to Bifurcate and award attorney's fees and costs and all remedies the Court may find just and proper.

Date: January 28, 2011

Respectfully submitted,

/s/ Kathleen B. Havener____
KATHLEEN B. HAVENER
THE HAVENER LAW FIRM, LLC
15511 Russell Road
Chagrin Falls, OH 44022
Phone: 440-893-0188
Cell: 216-288-6009
Fax: 440-893-9326
kbhavener@havenerlaw.com

Attorney for Counterclaim/Third Party Plaintiffs Curry and Hailstones

MARTIN R. RASKIN
Florida Bar No. 315206
JANE SERENE RASKIN
Florida Bar No. 848689
RASKIN & RASKIN, P.A.
866 South Dixie Highway
Coral Gables, Florida 33146
Telephone: (305) 444-3400
Facsimile: (305) 445-0266
mraskin@raskinlaw.com

Attorneys for Counterclaim/Third Party Plaintiff Curry

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 28, 2011, I electronically filed the foregoing Opposition to the Motion to Bifurcate the Attorneys' Fees Issues with the Clerk of Court using the CM/ECF system, which will send a notice of electric filing to all registrants in that system. I further certify that I have caused the foregoing to be served by the means indicated upon the following:

Terence Chu (via email)

Yaniv Amar (via email)

Frank L. Amodeo B-3 (via U.S. Mail)
48883-019
Federal Correctional Complex – Low
P.O. Box 1031
Coleman, FL 33521

/s/ Kathleen B. Havener_______
KATHLEEN B. HAVENER