IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MIRABILIS VENTURES, INC. and
NEXIA STRATEGY CORPORATION,

     Plaintiffs,

v.

PALAXAR GROUP, LLC.;
PALAXAR HOLDINGS, LLC;
FRANK HAILSTONES; EDITH CURRY
a/k/a EDITH BROADHEAD; and
TERENCE CHU,

     Defendants.

v.

MIRABILIS VENTURES, INC. and
NEXIA STRATEGY CORPORATION,

And THIRD PARTY CORPORATION,
WELLINGTON CAPITAL GROUP, INC.,
YANIV AMAR, FRANK AMODEO,
AARON BATES, MATTHEW MOKWA,
ROBERT POLLACK, JAMES SADRIANNA.

Case No. 6:07-CV-1788-ORL-28-KRS

## PLAINTIFFS' MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES

    Mirabilis Ventures, Inc., ("Mirabilis"), R. W. Cuthill, Jr. ("Cuthill"), Nicolette Vilmos, Todd K. Norman, and Broad and Cassel (collectively referred to as "Mirabilis Attorneys") hereby file their Memorandum of Law in Opposition to Motion of Defendants Palaxar Holdoings, LLC, Palaxar Group, LLC, Edith Curry and Frank Hailstones for Attorneys' Fees and Incorporated memorandum of Law ("Memorandum") (Doc. 372).  Plaintiffs request that this Court enter an order denying Defendants' motion for attorneys' fees ("*Motion for Attorneys' Fees*") for the reasons set forth below.

## I.      INTRODUCTION

A Second Amended Complaint (Doc. 56) was filed in this action on February 19, 2008 asserting, *inter alia*, the following claims:  Breach of Contract (Count I); Breach of Fiduciary Duty (Count II); Misappropriation of Trade Secrets (Count III); Conversion (Count IV); Civil Conspiracy (Count V); Injunctive Relief (Count VI); Unjust Enrichment (Count VII).  On May 27, 2008, Cuthill was hired as president of Mirabilis.  *See Cuthill Affidavit* (Doc. 193, Ex. 1). Just nine (9) days after Cuthill became president of Mirabilis, this matter was stayed on June 5, 2008 (Doc. 151).  As such no action was to take place until the stay was lifted.  On October 15, 2009 the Defendants requested this Court lift the stay which caused this matter to proceed against them (Doc. 162).  On November 6, 2009, the Mirabilis Attorneys appeared for the first time in this matter (Doc. 167).  On February 10, 2010, the Defendants filed a *Notice of Reinstatement of the Joint Motion for Summary Judgment* ("*Motion for Summary Judgment*") (Doc. 189).  The Plaintiffs filed their response in opposition to Defendants' motion for summary judgment (Doc. 193).  On August 6, 2010, this Court entered an *Order* granting the Defendants' Motion for Summary Judgment ("*Order on Summary Judgment*") (Doc. 285).  The Plaintiffs timely filed their Motion for Reconsideration (Doc. 303).  On November 15, 2010, the Court held a telephonic hearing on Plaintiffs' motion for reconsideration.  At the hearing, the Plaintiffs voluntarily dismissed their claims against the Defendants with prejudice (Doc. 337).  On November 17, 2010, this Court entered an *Order* wherein it confirms the *Oral Order* made at the telephonic hearing granting *Plaintiffs' Motion to Dismiss with Prejudice* and vacated the *Order* granting Defendants' *Motion for Summary Judgment* (Doc. 339).  On January 13, 2011 Defendants filed the *Motion for Attorneys' Fees*.  The Defendants basis for their *Motion for Attorneys' Fees* is pursuant to the Florida Uniform Trade Secrets Act, 28 U.S.C. § 1927 and the Court's inherent authority.

As will be shown herein this matter was pursued by Mirabilis, Cuthill and the Mirabilis Attorneys in good faith which preclude a ruling granting attorneys' fees under the Florida Uniform Trade Secrets Act, 28 U.S.C. § 1927, and this Court's inherent authority.[1]   Furthermore, there is no support to find that Plaintiffs' actions were unreasonable and vexatious or that Plaintiffs' actions "multiplied" the proceedings.   Furthermore, Defendants' *Motion for Attorneys' Fees* was untimely and therefore barred.   Finally, Defendants' attorneys' fees invoices contain numerous entries of improper "block billing", contain invoices for time prior to Cuthill's and the Mirabilis Attorneys' entry into this matter, are redacted to such a degree to make it impossible to determine whether the work performed was for this matter, and contain numerous irregularities indicating improper "double billing".

## II.  APPLICABLE SANCTIONS STANDARDS

### A.  28 U.S.C. § 1927 and the Court's Inherent Authority.

There are two requirements for sanctions under Section 1927.  First, an attorney must engage in "unreasonable and vexatious" conduct.  See *Hudson v. International Computer Negotiations, Inc.*, 499 F.3d 1252, 1261 (11th Cir. 2007).  An attorney's conduct satisfies the first requirement "only when the attorney's conduct is so egregious that it is tantamount to bad faith." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 457 F.3d 1180, 1190 (11th Cir. 2006).   Second, that "unreasonable and vexatious" conduct must multiply the proceedings.  *Hudson*, 499 F.3d at 1261.  When determining the dollar amount of a sanction under section 1927, the sanction "must bear a financial nexus to the excess proceedings, i.e., the sanction may not exceed the costs,

---

[1] It should be noted that Defendant Chu filed a similar Motion for Sanctions pursuant to Rule 11, 28 U.S.C. § 1927and the Court' inherent authority.  (Doc. 242).  This Court addressed each argument espoused by Chu and denied Chu's request *in toto*.  (Doc. 351).

expenses, and attorneys' fees reasonably incurred because of such conduct." *Id.* at 1261 (internal quotations omitted).

The Court also has the inherent authority to impose "reasonable and appropriate" sanctions. *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir. 2002). "To exercise its inherent power a court must find that the party acted in bad faith." *Martin*, 307 F.3d at 1335. "Inherent powers must be exercised with restraint and discretion." *Footman v. Cheung*, 341 F.Supp.2d 1218, 1224 (M.D. Fla. 2004) (citing *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998)).

## B. Florida Uniform Trade Secrets Act

Section 688.005, Florida Statutes, provides:

> If a claim or misappropriation is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and malicious misappropriation exists, the court may award reasonable attorney's fees to the prevailing party.[2]

Therefore, in order to be entitled to an award of attorneys' fees under this statute, a court would have to identify a prevailing party and then determine that a claim was made in bad faith. However, the courts have found that the statute is a permissive statute, as opposed to a mandatory award, even if a court finds the prevailing party requirement has been met. *See Real-Time Laboratories, Inc. v. Predator Systems, Inc.*, 757 So.2d 634, 637 (Fla. 4th DCA 2000); *Chetu, Inc. v. Salihu*, 2010 WL 2680088 *3 (S.D. Fla. 2010). Therefore, even if this Court were to determine that the claim was made in bad faith, the Court would not be required to award fees. In the instant matter, the claim was not made in bad faith.

---

[2] There is no provision for the Court to enter an award of attorneys' fees against the Mirabilis Attorneys or Cuthill based on section 688.005, Florida Statutes. Generally, a court may only award attorney's fees when such fees are "expressly provided for by statute, rule, or contract." *Bane v. Bane*, 775 So.2d 938, 940 (Fla. 2000). Section 688.005 does not provide that fees or costs can be awarded against a party's counsel. It only allows for fees against a party. Since the Mirabilis Attorneys and Cuthill are not parties, an award of attorneys' fees against them under this statute would be improper.

4

### III.   ACTIONS TAKEN PRIOR TO CUTHILL BEING NAMED RECEIVER

The Defendants spend a majority of their Motion for Attorneys' Fees reciting allegations involving actions taken by previous counsel in bringing this and other matters.  The Defendants argue that the filing of this case was in bad faith in that the previous attorneys relied on documents provided by Frank Amodeo ("Amodeo"), was directed by Amodeo, and that the lawsuits were intended to benefit Amodeo.  Although Mirabilis disputes this, this Court has already found that the bankruptcy and related adversary claims were not filed for an improper purpose.  *See In re: Mirabilis Ventures, Inc.*, Case No. 6:08-bk-04237-KSJ Order dated April 21, 2010 (Doc. 576)

It should first be noted that a vast majority of the actions complained of by the Defendants occurred before Cuthill was appointed president of Mirabilis May 27, 2008.  (Doc. 193, Ex. 1). This matter was stayed just nine (9) days later on June 5, 2008, before Cuthill took any action in this matter (Doc. 151).  The stay was lifted on October 15, 2009 (Doc. 163).  Mirabilis and Cuthill took no action until the Mirabilis Attorneys appeared in this matter in November, 2009. This is well after the filing of this matter.  There is absolutely not one shred of evidence that Cuthill or the Mirabilis Attorneys participated in the actions complained of by the Defendants leading up to or prior to the lifting of the stay.  There is also not one shred of evidence that Cuthill or the Mirabilis Attorneys took any action whatsoever at the direction of or for the benefit of Amodeo.[3]  Furthermore, even if the actions taken by Cuthill or the Mirabilis Attorneys result

---

[3] The Defendants cannot point to one meeting, conversation, or communication that the Mirabilis Attorneys had with Amodeo.  They cannot because such a meeting, conversation or communication never happened.  Furthermore, despite the Defendants' unsubstantiated and unfounded allegations, there is absolutely not one scintilla of evidence that Amodeo made any representations or promises to Cuthill or the Mirabilis Attorneys.  Although Cuthill and the Mirabilis Attorneys reviewed information (as did Defendants) that was in Mirabilis' files after being created by Amodeo and his prior attorneys, Cuthill and the Mirabilis Attorneys have not relied on any statements, communications or correspondence of Amodeo in prosecution of this matter.  Furthermore, the mere fact that Amodeo may have compiled certain documents does not mean that the information in the documents is inaccurate. The undersigned had a responsibility to review all evidence available, regardless of its origin.

in a benefit to Amodeo, which they will not, this would not be enough to establish "bad faith" in the pursuit of this matter.[4]   As this Court has recognized "the possibility that the filings might benefit Amodeo should not obscure the fact that such benefit would result from creditors recovering as much as possible from the debtors." *See In re: Mirabilis Ventures, Inc.*, Case No. 6:08-bk-04237-KSJ Order dated April 21, 2010 (Doc. 576). Although this may lead to "an unsavory but secondary effect" of benefitting Amodeo, it does not establish that pursuit of this matter was in "bad faith." *Id.*   There is absolutely no evidence whatsoever that Mirabilis, Cuthill or the Mirabilis Attorneys prosecuted this matter in bad faith and Defendants do not explain how actions taken by prior attorneys indicate that this matter was prosecuted by Mirabilis, Cuthill or the Mirabilis Attorneys in "bad faith."

Furthermore, the Defendants make significant material misrepresentations regarding actions that the "Attorneys" took.  Defendants lump all of the attorneys together and define all of the attorneys that have ever been in this matter or represented Amodeo in criminal proceedings as "Attorneys."  For instance, Defendants misleadingly state that "The binders and folders prepared by the Attorneys and Amodeo were delivered to Slaughter in April and May 2007."  Cuthill and the Mirabilis Attorneys were not even involved in the case at that time.  The Mirabilis Attorneys did not appear until over 2 years later.  This is indicative of the fast and loose treatment of the "facts" that Defendants make throughout the Motion for Attorneys' Fees.  The Defendants have not stated any rationale at all as to why Cuthill and the Mirabilis Attorneys should be held liable for any actions taken before Cuthill and the Mirabilis Attorneys first appeared in this matter.

### IV. SPECIFIC ALLEGATIONS OF WRONGDOING

---

[4] The Defendants also cite to other actions filed by Mirabilis against its professionals as evidence that the filing of the lawsuits were "a shakedown."  This is inaccurate and highly inflammatory language that is wholly inappropriate. In fact in two of the matters that Mirabilis and the Mirabilis Attorneys are pursuing, this Court has denied the defendants' motions for summary judgments and the matters are proceeding to trial.

4816-5949-2869.2

After 17 pages of allegations of what occurred before the undersigned counsel and Cuthill were involved in the matter, movants for the first time make any allegations as to what the undersigned counsel and Cuthill allegedly did to warrant sanctions. First, they assert without any citation to evidence that the undersigned produced "only 200 documents and 100 more as exhibits to their pleadings". Of course, although 100 documents attached to pleadings is not usually considered *de minimus*, a footnote later puts the lie to the suggestion that there was limited discovery when Defendants bemoan the 6,000 boxes of documents and 14 terabytes of data they were provided. *See Motion for Sanctions* footnote 54. Defendants do not establish a lack of discovery with undocumented claims of how many documents were produced and their later statements directly contradict their claims.

Next, again without citation to the record, the Defendants state, in bold type so the court does not miss it, that **"To this day, not a single shred of evidence has been produced that supports their claims."** This is flatly untrue. Plaintiffs provided substantial evidence in response to the *Motion for Summary Judgment*, much of which this Court considered and found did create issues of fact. *See Order on Motion for Summary Judgment* at 12-14, 16. Despite the bold typeface, this assertion is clearly baseless.

Defendants go on to state that "Amodeo and his Attorneys" which as stated above are defined to include the undersigned, "developed a corrupt strategy designed to destroy the reputations of Curry and Hailstones . . . . " Again, no citation to any evidence could be made to support this claim. In actuality, no attorney working on this case at Broad and Cassel has ever met, communicated or spoken with Amodeo and surely did not develop any strategy, corrupt or otherwise, with him. In fact, prior to substitution as counsel in this case, there is no proof that the undersigned law firm or Cuthill ever met or had heard of Curry and Hailstones and certainly

7

no proof that they conspired to "destroy" them. This is pure fantasy created without any evidence.

Next, there is the statement that Amodeo was the "mastermind of this strategy" but that the undersigned and Cuthill "perpetuated this farce". While such ominous rhetoric may be enjoyable to write, when it fails to cite any evidence it defies meaningful discussion before this Court. In fact, there is no proof that Cuthill and the undersigned did anything but what it was their duty to do--to zealously represent their client and Mirabilis' creditors in what appeared to be a colorable claim to recover assets for the creditors of Mirabilis. This Court has similarly found those to be the motives of the undersigned and Cuthill. *See United States v. AEM, Inc.*, 718 F. Supp.2d 1334 (M.D. Fla. 2010) (Court found that there was value in allowing civil litigation to proceed on its merits for benefit of Mirabilis' creditors).

Defendants follow this by decrying that "[t]here is no excuse for B&C and Cuthill maintaining this case after the stay was lifted, in light of the documents readily available to them in MVI's warehouse." While this correctly identifies the timeframe in which action could be taken, this omits the fact that the undersigned had to then take discovery, review records and determine if a colorable claim was supported. Although the strong language of Defendants asserts without specifics that such conduct was wrongful, in truth Defendants have never made an argument that any of the discovery taken was not narrowly tailored to fulfill the undersigned's obligations, that any motion or response was not accurate and well taken, or that the arguments made on summary judgment were frivolous. In fact, Defendants in their 25 page *Motion for Attorneys' Fees* did not identify one specific discovery request, motion, filing with this Court, or argument made by the undersigned which was allegedly frivolous or not brought in good faith.

4816-5949-2869.2

Defendants next cite, again without citation to the record that the "Attorneys stood to be handsomely rewarded based on contingency and referral fees promised . . . . " Again this statement is made with no proof and is simply untrue. The undersigned never was promised a contingency or referral fee for this case and was not handsomely rewarded. This alleged motive fails as there is no evidence to support its false allegations.

Defendants then argue without citation to any evidence, again in bold so that Court does not miss it, that "**plaintiff possessed the knowledge that its information does not constitute a trade secret**". However, in truth, a patent was awarded for this process and Defendants claimed the Nexia certification included trade secret algorithms. (*Curry Deposition*, P. 59, L. 6-13) Thus, this again is literally a bold statement without any proof to support it. Defendants even agreed to pay at least $500,000 to purchase this process. (*Curry Deposition*, P. 234, L. 4-7). To now claim it does not exist is baseless.

Besides those arguments, none of which contain citations to any evidence, there is absolutely no specific allegations to the undersigned and Cuthill's alleged wrongdoing. None of these allegations demonstrate that the undersigned acted in bad faith or in an attempt to multiply these proceedings.

## V.  DEFENDANTS' MOTION FOR ATTORNEYS' FEES  AND COSTS IS UNTIMELY

It is undisputed that this Court entered an order granting a motion for voluntary dismissal with prejudice against the Plaintiff on November 17, 2010. This voluntary dismissal resolved all claims by or against Mirabilis. It is further undisputed that the Defendants' *Motion for Attorneys' Fees*, which includes their claim for costs, was filed on January 13, 2011. Rule 54(B), Federal Rules of Civil Procedure, provides that unless a statute or court order provides

4816-5949-2869.2

otherwise, a motion for fees *must* "be filed no later than 14 days after the entry of judgment."[5]

Furthermore, Local Rule 4.18 states "In accordance with Fed.R.Civ.P. 54, *all* claims for costs or

attorney's fees preserved by appropriate pleading or pretrial stipulation shall be asserted by

separate motion or petition filed not later than fourteen (14) days following the entry of

judgment" (emphasis added).[6]   Therefore it is undisputed that the Defendants did not file their

*Motion for Attorneys' Fees* timely under Rule 54 and Local Rule 4.18.   The only item remaining

to be determined is whether Rule 54 and Local Rule 4.18 are applicable in this matter.   A review

of the rules and relevant case laws show that they are.

   Although their *Motion for Attorneys' Fees* does not allege timeliness in a subsequent

pleading (Doc. 390) Defendants claim that they filed their *Motion for Attorney's Fees*, which

includes their claim for costs, pursuant to section 688.005, Florida Statutes, and Rule 41, and not

under Rule 54.[7]   Section 688.005, Florida Statutes, does not provide a mechanism as to when or

how a motion for attorneys' fees is to be presented.   That exists in Rule 54 and Local Rule 4.18.

Furthermore, there is no order from this Court that states when the Defendants are to file a

motion for attorneys' fees or costs.   The Eleventh Circuit has previously construed other Florida

fee statutes as subject to the procedural requirements of Rule 54.   *See, e.g., Prime Ins. Syndicate,*

*Inc. v. Soil Tech Distribs.*, 270 Fed. Appx. 962, 965-966 (11th Cir. 2008) (Holding that request

---

[5] The Defendants bizarrely state that they are not requesting fees under Rule 54, Fed.R.Civ.P., but under Rule 41, Fed.R.Civ.P.  However Rule 41 does not provide for an award of attorneys' fees or outline how to move for fees. Rule 54 expressly describes the procedure a party is follow when moving for fees and costs, regardless of the reason a party is entitled to such an award.  Rule 54 is directly on point.

[6] Rule 54, Fed.R.Civ.P. contains an exception for motions for attorneys' fees pursuant to 28 U.S.C. §1927. Local Rule 4.18 does not contain such an exception but instead on its face applies to "all" motions.  Therefore under this Court's local rules, Defendants' Motion for Attorney Fees is untimely as to sections 688.005, Florida Statutes, 28 U.S.C. § 1927, and for costs.

[7] Although the Defendants claim in their *Opposition to Joint Motion of Plaintiff and Broad and Cassel, P.A., William R. Cuthill, Jr., Nicolette Vilmos, Todd Norman, Bates Mokwa PLLC, Aaron C. Bates and Matthew S. Mokwa to Bifurcate Issues Raised in Motion for Attorneys' Fees* (Doc. 390) that the applicable rule is Rule 41, the Defendants never cited to Rule 41 in their Motion for Attorneys' Fees.

10

under section 627.48(1), Florida Statutes, was untimely for failure to comply with time limitations imposed by Rule 54 and the district court's local rules.)  Therefore Rule 54 and Local Rule 4.18 are applicable and the Defendants were to file there motion for fees and costs within fourteen days of the Court's order dismissing this matter with prejudice.  The Defendant did not and therefore the *Motion for Attorneys' Fees* is untimely and should de denied.

Defendants also claim that Rule 54 is inapplicable since "Plaintiff did not receive a judgment".[8]  Rule 54 defines a "judgment" as "a decree and any other order from which an appeal lies."  Defendants further argue that Plaintiff does not have a "judgment" in this matter, and that since Plaintiff voluntarily dismissed their claims with prejudice, Rule 54 is irrelevant and Rule 41 is the applicable rule.  However this is simply not supported by the Federal Rules of Civil Procedure.  Rule 54 does not define "judgment" narrowly.  "Rule 54(a) also rejects the…narrow reading of the term 'judgment.'  The rule specifically includes within the definition of 'judgment' all decrees and orders from which an appeal will lie."  *Brown v. Local 58, International Brotherhood of Electrical Workers, AFL-CIO*, 76 F.3d 762 (6th Cir. 1996) (Court holds that time for filing motion for attorneys' fees runs from finality of order granting a motion for voluntary dismissal).  A voluntary dismissal with prejudice can be appealed by a Plaintiff.[9]  "A dismissal without prejudice, which is not appealable, is distinguished from a dismissal with prejudice, which is appealable."  *Versa Products, Inc. v. Home Depot, USA, Inc.*, 387 F.3d 1325, 1328 (11th Cir. 2004). *See also Telephone Employees Credit Union v. Gillyard*, 87 F.3d 1537,

---

[8] The undersigned does not understand this argument as it is nonsensical.  Plaintiff admits that it did not receive a judgment entered on its behalf.  The Plaintiff voluntarily dismissed the matter with prejudice pursuant to Rule 41(a)(2).  It goes without saying that when a party voluntarily dismisses a matter with prejudice it has not received a judgment on its behalf.

[9] Defendants cite Moore's Federal Practice 41.05 for the proposition that "a plaintiff cannot appeal an order granting his motion for voluntary dismissal of the action **once the requisite time limit has passed.**" (emphasis added).  Of course this is true.  However, by definition this is true of all orders—of course one cannot appeal an order once the requisite time limit to appeal has passed.

1556 (9th Cir. 1996) (quoting *Concha v. London*, 62 F.2d 1493, 1507 (9th Cir. 1995) (emphasis in original) ("[I]t is 'clear that plaintiffs may appeal from a voluntary dismissal *with prejudice*, at least where the plaintiff is not acting pursuant to a settlement agreement intended to terminate the litigation'").

The Defendants further strangely assert that Rule 41(a)(1)(B) is applicable and that a dismissal is with prejudice only if the plaintiff previously dismissed any federal or state court action based on or including the same claim. Then the dismissal operates as an adjudication of the merits. However, Mirabilis has never dismissed any federal or state court claim that is similar to this claim. Therefore Rule 41(a)(1)(B) in inapplicable. The rule that is applicable to this matter is Rule 41(a)(2). In the instant matter the Plaintiff's claim was dismissed with prejudiced by court order—specifically Doc. 339. "A voluntary dismissal of a claim with prejudice operates as an adjudication on the merits in favor of the defendant, and the defendant is considered the prevailing party." *See Thompson v. The Florida Bar*, 2010 U.S. Dist. LEXIS 139322, *32 (M.D. Fla. 2010) (*quoting Andrews v. CSX Transp., Inc.*, No. 3:06-cv-704-J-32TEM, 2010 US Dist. LEXIS 90193, 2010 WL 3069484, at *2 (M.D. Fla Aug. 2, 2010). When there is a dismissal with prejudice which is an adjudication on the merits, the defendants are considered the prevailing parties for purposes of Rule 54. *Id*. Therefore, Rule 54 and Local Rule 4.18 are applicable.[10] The Defendants' request for attorneys' fees and costs are therefore untimely and should be denied.

---

[10] If this dismissal is not an adjudication on the merits and Rule 54 is inapplicable, the Defendants would not be entitled to attorneys' fees and costs as prevailing party pursuant to section 688.005, Florida Statutes. The first matter the court must determine under section 688.005 is whether a party is a "prevailing party." The Defendants cannot have it both ways—either they are a prevailing party and Rule 54 is applicable or they are not a prevailing party and therefore they are not entitled to attorneys' fees and costs.

Although Rule 54 explicitly exempts 28 U.S.C. §1927 from its time requirements, a motion for fees pursuant to 28 U.S.C. §1927 must be made in a "reasonable time." *See, e.g., In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 102 (3d Cir. 2008) (Stating that "a motion for sanctions [pursuant to § 1927] should be filed within a reasonable time."); *Fearing v. City of Lake St. Croix Beach*, 2006 U.S. Dist. LEXIS 70600 (D. Minn. 2006) (Denying motion for fees under § 1927 as untimely based on time limitations on attorneys' fees motions contained within district court's local rules.); *XCO Int'l v. Pac. Sci. Co.*, 2003 U.S. Dist. LEXIS 7286, *14 (N.D. Ill. 2003) ("[R]equirement that a motion for sanctions be filed as soon as practicable after the discovery of a Rule 11 violation should equally apply to a motion for sanctions pursuant to Section 1927."). In the instant matter, the filing of the *Motion for Attorneys' Fees* 57 days after this Court entered the Order dismissing the matter with prejudice is unreasonable. Furthermore, Local Rule 4.18 is directly on point in that it requires that all motions for fees and costs be filed within 14 days of final judgment. It is undisputed that the *Motion for Attorneys' Fees* was filed outside of the requirements found in Local Rule 4.18. Therefore Defendants' *Motion for Attorneys' Fees* is untimely in all respects and should be denied *in toto* as to both attorneys' fees and costs.

## VI. PROSECUTION OF THIS MATTER WAS NOT IN "BAD FAITH"

In order to obtain sanctions under 28 U.S.C. § 1927, the Defendants would have to show that Mirabilis, Cuthill, and Mirabilis' Attorneys acted in "bad faith." See *Amlong & Amlong, P.A. v. Denny's, Inc.*, 457 F.3d 1180, 1190 (11th Cir. 2006); *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir. 2002). The Defendants state that there was no evidence to pursue the claims against Defendants. However this is simply not true.

There was ample evidence for a prima facia case in this matter.  There was evidence that both Curry and Hailstones was employed with Mirabilis and Nexia pursuant to an employment agreement.  (Doc. 193, Exhibits 4 and 5).  The employment agreements with Mirabilis and Nexia, expressly provided that Curry and Hailstones would devote all of their time to their employer and their employer would retain ownership of their mental efforts during their employment.  *Id.*  The agreements also contained provisions prohibiting the misappropriation of trade secrets and providing for the protection of confidential information obtained while performing their duties as employees of Mirabilis and Nexia.  *Id.*

There was further evidence that while serving as President of Nexia and a Director of Mirabilis, Curry was tasked with creating an anti-fraud certification program for the benefit of Mirabilis and Nexia referred to as the Nexia Certification Program.  (Doc. 193, Ex. 6).  The purpose in creating Nexia Certification was to market and sell the Nexia Certification as a suite of anti-fraud services to businesses.  Curry admitted in her deposition that she and other employees worked on the development of the Nexia Certification during work hours.  (*Curry Deposition*, P. 185, L. 15-19; P. 186, L. 14-19).  Defendants also admitted that Mirabilis, as Nexia's parent corporation, paid all fees associated with the research and development of Nexia Certification and the accompanying patent application.  *Motion for Summary Judgment* at ¶11.  Finally, in a March 2, 2006 e-mail from Edith Curry to Tessah Ivery, Marty Flynn and Frank Hailstones, Curry admits that Nexia is the owner of the patent for Nexia Certification.[11]  (Doc. 182, Exhibit 8).  She stated "Incidentally, you do realize that Nexia Strategy owns the patent for Nexia Certification and the three inventors are Edie Curry, Frank Hailstones and Mike Dement."

---

[11] Since the Nexia Certification was subject to a patent application there is certainly evidence that the Nexia Certification contained confidential, proprietary or trade secret information.  If it did not contain proprietary information, it seems difficult to understand how it would be patentable.  Furthermore, Curry admitted that the algorithm upon which the Nexia Certification was based was a trade secret. (Curry Deposition, P. 59, L. 6-13)

14

*Id.*   Therefore, there was certainly evidence that the Nexia Certification was owned by Nexia.[12] Thus Plaintiff established its prima facia case.

Defendants presented the defense that the Nexia Certification was assigned to them.  Plaintiff did not ignore this affirmative defense but instead developed evidence relevant to it. There was evidence presented that the attempts to assign the Nexia Certification were void for a variety of reasons.   First of all, the assignment and separation agreement was a transaction with an interested officer and director and was executed by Hailstones, an alleged co-conspirator in this matter.   Secondly, as this Court found, there was no evidence that the assignment and separation agreement was ratified pursuant to Mirabilis' bylaws.   (Doc. 285 at 16).   There was also no evidence of any consideration or any item of value transferred to Mirabilis that would have supported this insider transaction.  (Curry Deposition, P. 235, L. 4-14).

In the vacated *Order on Summary Judgment*, this Court ultimately found that the assignment and separation agreements signed by Hailstones were valid and transferred Mirabilis' and Nexia's interest in the Nexia Certification to Hailstones, Curry, Holtz and Dement based upon Hailstones' apparent authority to bind Mirabilis.  Hailstones' apparent authority to bind Mirabilis was an issue that was not raised or briefed by the Defendants on the *Motion for Summary Judgment*.  It was an issue identified by this Court on which this Court based the *Order on Summary Judgment*.   Defendants are in a poor position to argue this claim was prosecuted in "bad faith" when the dispositive issue upon which this Court based the *Order on Summary Judgment* was not identified by the Defendants.[13]

---

[12] In fact, in the vacated *Order* on *Motion for Summary Judgment*, this Court recognized that there was certainly a disputed fact as to who owned the Nexia Certification.

[13] Of course, it should be noted that this Court vacated the *Order on Summary Judgment* and Plaintiff dismissed this matter with prejudice before a new ruling could be made.  It is not even clear if this Court would enter summary judgment on the record from the rehearing.

4816-5949-2869.2

There is absolutely no evidence that Mirabilis, Cuthill, and the Mirabilis Attorneys took any action in bad faith.  Mirabilis, Cuthill and the Mirabilis Attorneys pursued a claim to recover an asset that was owned by Nexia; that contained trade secret information; and was transferred out of Nexia to an insider and Mirabilis did not receive anything of value for it.  It could hardly be asserted that pursuit of such a claim would be in "bad faith."

## VII.  MIRABILIS, CUTHILL, AND MIRABILIS' ATTORNEYS' ACTIONS DID NOT MULTIPLY THE PROCEEDINGS.

In order for this Court to enter sanctions pursuant to 28 U.S.C. § 1927 the conduct must not just be "unreasonable and vexatious", but also must multiply the proceedings.  *Hudson*, 499 F.3d at 1261.  The Defendants have failed to provide any argument whatsoever that the actions taken by Mirabilis, Cuthill or the Mirabilis Attorneys multiplied the proceedings.  Since the Mirabilis Attorneys and Cuthill have appeared in this matter, the Mirabilis Attorneys have sought affirmative relief from this Court five (5) times: (1) to substitute counsel; (2) to extend a deadline to amend the Amended Complaint; (3) to suspend certain deadlines set forth in the case management order, (4) to reconsider the *Order on Summary Judgment*; and (5) to dismiss the matter without prejudice.  Three of these motions were procedural while only two were substantive.  Both of the substantive motions were granted.[14]  In contrast, however, this is the third response Plaintiff has had to file in response to a motion for sanctions.  The first two have been denied.  It is difficult to see how Plaintiff has "multiplied" this litigation when it has spent far more time responding to Defendants' motions for sanctions than on seeking affirmative relief. The Defendants have not and can not point to a single motion or pleading that was filed by Mirabilis, Cuthill, or the Mirabilis Attorneys that "multiplied" this litigation.  As such sanctions pursuant to 28 U.S.C. § 1927 are inappropriate.

---

[14] In granting the motion to dismiss, it was amended *ore tenus* to be with prejudice.

16

## VIII.  AMOUNTS SOUGHT ARE UNREASONABLE

### A. Bills Submitted Include Inappropriate "Block Billing" and Are Impossible to Decipher

A review of the bills submitted by Defendants indicates that it is rife with impermissible "block billing". "Block billing" "refers to the practice of including multiple distinct tasks within the same time entry." *Bujanowski v. Kocontes*, 2009 WL 1564263 *2 (M.D. Fla. 2009). "Block billing makes it very difficult for a court to determine the specific amount of time spent by an attorney or a paralegal on each task." *Steffen v. Senterfitt*, 2007 WL 1601750 *5 (M.D. Fla. 2007). "The court has broad discretion in determine the extent to which a reduction in fees is warranted by block billing." *Bujanowski* at 2. This can include a cross the board reduction or a complete denial of the block billed entry. *Id.*

The Plaintiff is unable to list each and every entry that contains block billing—the numbers are too great. However it is not uncommon for entries to include up to eight separate tasks for one entry. See January 15, 2008 entry of Christine M. Ho; December 12, 2007 entry of Donald E. Christopher; June 2, 2008 entry of Kathleen B. Havener. Ms. Havener's March 3, 2010 entry has an astounding total of at least 15 separate tasks. Again, this is not meant to be an exhaustive list--these are merely illustrative as to how it is impossible to determine whether the amounts requested are reasonable. As such, to the extent that the Court determines that some form of award is warranted, this Court should either strike in its entirety or greatly reduce the amounts included in the "block billing".

There are also large portions of the bills that were incurred before Cuthill and the Mirabilis Attorneys appeared in this matter in November, 2010. It is unclear under what theory Curry and Hailstones is requesting "joint and several" liability by Cuthill and the Mirabilis Attorneys for these fees and costs incurred. There are also significant fees that were incurred during the time

17

period that this matter was stayed. It is hard to fathom how activities undertaken during the stay would be useful in defending against the actions of Mirabilis, Cuthill, and the Mirabilis Attorneys—especially since they had yet to appear in the case. Section 1927 does not allow such generalized sanctions and instead the sanction "must bear a financial nexus to the excess proceeding." *Hudson* at 1261.

Finally, the excessive redaction found in Ms. Havener's entries makes it impossible to determine what was actually accomplished. Ms. Havener's June 2, 2008 entry is completely indecipherable. One cannot determine what was done and whether it was for the benefit of Curry and Hailstones. Furthermore, there are entire entries that are redacted. *E.g.* Statement of January 31, 2009 of The Havener Law Firm; October 20, 2009 entry of Ms. Havener.

## B. Improper Double Billing

The invoices submitted by The Havener Law Firm and Kathleen B. Havener, Attorney at Law, LLC also appear to contain improper double billing. A large number of entries appear identically on the bills to both Hailstones and to Curry. For example, on the first pages of her invoices a May 20, 2008 telephone call to Curry is on both bills for 1.75 hours each.[15] It appears that this is improperly double billed. Again, on the first pages of the invoices submitted by Ms. Havener, on May 21, 2008, Ms. Havener lists three calls for 2.25 hours to Curry, Mr. Raskin, and Curry and for the same day it lists in invoices to Hailstones three calls for 2.50 hours to Curry, Mr. Raskin and Curry in invoices to Curry. Again, this appears to be double billed. On October 13, 2009 and October 15, 2009 Ms. Havener billed 3.75 hours to both Curry and Hailstones for "Attention to Motion to Reinstate", spending a total of 7.5 hours. Ms. Havener's

---

[15] On the same day, Ms. Havener shows a 1.25 hour conference call with Curry and Mr. Raskin. The undersigned submits that it is unlikely that Ms. Havener spent a total of 4.75 hours on two telephone calls to Curry. Furthermore it is likely unreasonable to bill that much time on two telephone calls—much less bearable—on the same day. The purpose for these calls one can only infer, as the records do not describe it.

March 5, 2010 entries on both Curry and Hailstone are for 3.25 hours each for what appears to be the review of two e-mails, review of Mirabilis' Memorandum in opposition to Motion to Strike, review of a letter, leaving a telephone message and examination of mediation dates. This is a total of 6.5 hours and appears to be double billed and unreasonable. Furthermore, the entries for March 16, 2010 and March 17, 2010 appear to be identical (which appears as 3 entries on the bills for a total of 9.75 hours). The entries on June 23, 2010 and June 24, 2010 also appear to be identical.[16]  A review of the Ms. Havener's entries on her invoices to Curry and Hailstones appear to include numerous instances of improper double billing. Ms. Havener also requests "travel time" from Chagrin Falls, Ohio while also seeking attorneys' fees for local counsel. This is also improper. As such, the request for Ms. Havener's bills should be denied *in toto*.

### C. Improper Costs

Curry and Hailstones have each submitted "Summary of Costs" which seek completely inappropriate "costs" that are not taxable costs. 28 U.S.C. § 1920 lists costs that are taxable. None of the items listed by Curry and Hailstones are applicable. Besides these costs, 28 U.S.C. § 1821 lists when travel expenses are taxable for witnesses. If travel is by common carrier "a receipt or other evidence of actual cost shall be furnished." Furthermore, when requesting parking fees a valid parking receipt is to be presented. When requesting subsistence for witnesses the witness is limited to subsistence allowances paid by the federal government.

In the instant matter, it is impossible to determine what "costs" allegedly incurred by Curry and Hailstones are potentially taxable. Neither Curry nor Hailstones attach a single receipt to back up their claims. Furthermore, a review of the "summary of costs" for Curry and Hailstones list none of these items listed in 28 U.S.C. § 1920. Both "summaries" list "Legal Bills—Funding

---

[16] The failure to comment on additional entries should not be read as approval of the entries. Again, there are just too many instances that appear to be improper to list.

Costs" for a total amount of over $62,000.00.  There is absolutely no explanation as to what these costs are and why they are taxable.  Curry includes $2,208.75 for "Copying Office Supplies."  There is absolutely no breakdown as to what these supplies or copying costs are for.  Therefore it is impossible to determine whether they are appropriately taxable.  As for the travel requested by both parties, a vast majority is for "attorney meetings" which are not allowed for under 28 U.S.C. § 1821.[17]  On only one instance is Curry and Hailstones requesting travel costs for being a "witness" at a deposition.  For that occasion there are no receipts to confirm the amounts alleged.

Both parties request other travel costs such as car rental and parking.  Again, this is not allowed under 28 U.S.C. § 1821.  A vast majority of the stated costs are for "attorney meetings" and not for attendance as a witness.  Furthermore, again, the parties do not present a single receipt supporting their alleged costs.  Both parties also request food/subsistence.  Again, a vast majority of the costs are for "attorney meetings."  There is also no evidence as to the per diem allowed for the subsistence.  As ten of the food entries exceed $300.00 it appears they exceed the federal government subsistence allowance.

The requests for costs by the attorneys are also deficient.  There is no breakdown as to what copies were made or why they were made making it impossible to determine if the costs are properly taxable.  There are also charges for improper items such as research, postage, meals, travel charges and telephone charges.  These are simply not taxable costs and are not awardable.  As such, Defendants' request for costs should be denied *in toto* as well.

## IX.  CONCLUSION

For reasons set forth above, the Defendants' Motion for Attorneys' Fees should be denied.

---

[17] It appears from Curry's summary that she is requesting air travel for a court reporter.  This is highly unusual and not allowed under federal law.

4816-5949-2869.2

BROAD AND CASSEL
Counsel for Mirabilis
Ventures, Inc.
390 North Orange Avenue
Suite 1400
Orlando, Florida 32801
P.O. Box 4961
Orlando, Florida 32802
Phone:  (407) 839-4200
Fax: (407) 650-0927

*/s/ Todd K. Norman*

_____

Todd K. Norman
Florida Bar No. 62154
tnorman@broadandcassel.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by either CM/ECF notice or U.S. Mail this 10th day of February, 2011 to Kathleen B. Havener, Esq., The Havener Law Firm, LLC, 15511 Russell Road, Chagrin Falls, OH 44022; Frank Amodeo, FCC-Low, B3, P.O. Box 1031, Coleman, FL 33521-1031; Terence Chu, 5637 Country Hills Lane, Glen Allen, VA 23059; Martin R. Raskin and Jane Serene Raskin, Raskin & Raskin, P.A., 2601 South Bayshore Drive, Suite 725, Miami, Florida 33133; Kathleen S. Davies, The Davies Law Firm, 126 E Jefferson St, Orlando, FL 32801; James Vincent Sadrianna, 10025 Chatham Oaks Court, Orlando, FL 32836, James Robert Lussier, Mateer & Harbert, PA, 225 E Robinson St., Ste 600, Orlando, FL 32802-2854; James Everett Shepherd, Pohl & Short, PA, 280 W Canton Ave., Ste 410, Winter Park, FL 32790; John Edwin Fisher, Fisher, Rushmer, Werrenrath, Dickson, Talley & Dunlap, PA, 20 N Orange Ave., Ste 1500, Orlando, FL 32802-0712; and US Attorney's Office, Suite 300, 501 W Church Street, Orlando, FL 32805.

/s/TODD K. NORMAN
TODD K. NORMAN

4816-5949-2869.2