# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| MIRABILIS VENTURES, INC. and<br>NEXIA STRATEGY CORPORATION,<br><br>    Plaintiffs,<br>-vs.-<br><br>PALAXAR GROUP, LLC;<br>PALAXAR HOLDINGS, LLC;<br>FRANK HAILSTONES; EDITH CURRY<br>a/k/a EDITH BROADHEAD; and<br>TERENCE CHU,<br><br>    Defendants,<br><br>vs.<br><br>MIRABILIS VENTURES, INC., et al.<br><br>    Counterclaim and Third<br>    Party Defendants. | Case No.:  6:07-CV-1788-ORL-28-GJK<br><br><br><br><br><br><br><br><br><br><br><br><br>**JOINT MOTION OF EDITH CURRY<br>AND FRANK HAILSTONES TO<br>DISMISS THIRD PARTY COUNTER-<br>CLAIMS OF FRANK AMODEO** |

   After conferring with Third Party Defendant/Third Party Counterclaim Plaintiff Frank Amodeo via letter, Defendants Edith Curry ("Curry") and Frank Hailstones ("Hailstones"), (collectively "Defendants") hereby move to dismiss the amended counterclaims of Third Party Defendant/Counterclaim Plaintiff Frank Amodeo ("Amodeo") filed February 14, 2010. [D.E. 398].

 **I. <u>INTRODUCTION</u>**

   In Amodeo's *Amended Answer and Counterclaims*, Frank Amodeo finally admits that he, via AQMI Strategy, initiated the original lawsuit—not to recover Nexia Certification or to stop

the use by Palaxar of any supposed trade secrets—but rather to repay what he admitted he owed to United States government.

In his answer to Curry and Hailstones' allegation (SAC ¶43) that "By no later than June 2007, Sadrianna notified Amodeo and Amar that Curry and Hailstones were scheduled to speak at the "58th Audit Directors' and Managers' Symposium" [] in Scottsdale, Arizona in October 2007." In response, Amodeo declares, [D.E. 398 ¶43] "Mr. Sadrianna is proficient on the internet, this is how Mr. Sadrianna found out about the Symposium. Mr. Sadrianna was as shocked as Mr. Amodeo, Mr. Gold, Mr. Slaughter, Mr. Panoff, etc…" underscoring that Amodeo knew about the Symposium far in advance, allowing ample time for Amodeo and his co-conspirators to plan to serve the baseless complaint in the most humiliating way possible.[1]

Moreover, SAC ¶44 alleges, "On August 30, 2007, Bates and Amodeo devised the press release plan whereby Amodeo would "go after those people who [he believed] helped put [him] in this situation [of having to repay the $220 million in trust fund taxes Amodeo admitted to stealing.]" to which Amodeo answers [D.E. 398 ¶44] that he himself "devised the public relations campaign with outside advisors [Balch and Bingham][2] and Mr. Amodeo's criminal counsel." There is no legitimate reason Amodeo's criminal counsel should have been involved in the slanderous press campaign of this civil litigation.

Finally, SAC ¶106 alleges, "On or about October 15, 2007, and at various times prior thereto, Defendants Nexia, Amodeo, Bates, Amar and Mokwa met, joined together, planned, and conspired to interfere with advantageous business relationships of Curry and Hailstones by

---

[1] Contrary to MVI's Answer to the same allegation [See D.E. 72 ¶75] "Mirabilis and Nexia admit that they became aware that Curry and Hailstones were scheduled to present at the conference just days before the filing of the Complaint."

[2] *See* D.E. 374-15, Exhibit O to Motion for Attorneys' Fees, Email exchange between attorney Aaron Bates and the law firm of Balch & Bingham.

engaging in the conduct set forth in ¶¶ 31 through 108." Amodeo's answer confirms what MVI, Nexia, Amodeo and his co-conspirators have, until now, staunchly denied to this Court: "Mr. Amodeo spoke with Mr. Gold, other USAO and IRS personnel and Mr. Slaughter and told them AQMI was going to initiate collection actions against Ms. Curry and Mr. Hailstones. The government only wanted to make sure the proceeds after legal fees went to the IRS."[3]

Amodeo now admits that the original lawsuit was brought by Amodeo as the sole owner of AQMI, and further, that the claims against Curry and Hailstones were for the benefit of parties other than Plaintiffs Mirabilis and Nexia and for a reason other than to recover the never-produced or identified trade secrets: to repay what Amodeo admitted diverting.

Pursuant to Fed. R. Civ. P. 12(b)(6), Hailstones and Curry respectfully urge this Court to dismiss Amodeo's *Amended Third Party Counterclaims* against them on the same grounds that supported their original M*otion to Dismiss* [D.E. 221 incorporated by reference herein] and the following:

1. The counterclaims fail to state claims upon which relief can be granted and Hailstones and Curry are entitled to judgment as a matter of law;

2. Neither Hailstones nor Curry ever owed any duty to Amodeo personally, and certainly none sufficient to support a claim of negligence against either for breach;

3. Amodeo is barred by the doctrine of collateral estoppel from arguing any notion contrary to his sworn testimony, his guilty plea and conviction in this Court; and

4. Amodeo and MVI have made several judicial admissions which render Amodeo's counterclaims utterly implausible and subject to dismissal.

5. Amodeo finally admits the original lawsuit commenced against Defendants was brought by AQMI Strategy for the benefit of Amodeo and not Mirabilis and Nexia.

---

[3] *See* D.E. 72 ¶¶ 130-135.

3

## II. PROCEDURAL HISTORY

On January 29, 2010, Amodeo filed his *Answer to the Third Party Complaint* along with *Third Party Counterclaims* against Curry and Hailstones [D.E. 185]. On February 15, 2010, Curry and Hailstones filed *a Motion to Dismiss Amodeo's Counterclaims* [D.E. 192 - dismissed as moot D.E. 228]. March 11, 2010, Amodeo filed *Amended Counterclaims against Curry and Hailstones* [D.E. 214], in response to which Curry and Hailstones filed their *Motion to Dismiss Amended Counterclaims* [D.E. 221 - Granted D.E. 279]. Amodeo filed a *Motion for Reconsideration* [D.E. 291 - Denied D.E. 294], and a second *Motion for Reconsideration* [D.E. 299 - Granted D.E. 344] permitting Amodeo's reply to Curry and *Hailstones' Motion to Dismiss his Counterclaims* by December 20, 2010, but Amodeo instead responded to *Third Party Plaintiffs' Second Amended Counterclaims* [D.E. 346] with his *Amended Answer and Counterclaims* [D.E. 398]. In response, Curry and Hailstones file this *Motion to Dismiss Amodeo's Counterclaims.*

## II. THE STANDARD FOR GRANTING A MOTION TO DISMISS.

In evaluating a plaintiff's pleadings pursuant to Fed. R. Civ. P. 12(b)(6), the Court must make reasonable inferences in Plaintiff's favor, "but [is] not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.,* 416 F.3d 1242, 1248 (11th Cir. 2005). Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal,* 556 U.S. __, 129 S.Ct. 1937, 1949 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true. *Id.*

A complaint should be dismissed if the facts as pled do not state a claim upon which relief may be granted. *See Iqbal,* 129 S.Ct. at 1950 (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 561-62, 570, 127 S.Ct. 1955, 1968-69, 1974 (2007) (retiring the prior "unless it appears beyond doubt that the plaintiff can prove no set of facts" standard). In *Twombly,* the Supreme Court emphasized a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1965. Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555, 127 S.Ct. at 1964-65 (internal citations and emphasis omitted).

More recently, in *Iqbal,* the Supreme Court reiterated that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 129 S.Ct. at 1949. The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss. *Id.* The well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974.

Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 29 S. Ct. at 1937. In sum, "[t]o survive a motion to dismiss, a complaint must contain

5

sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 1949 (internal quotation marks and citation omitted).

### III. AMODEO'S COUNTERCLAIMS AGAINST CURRY AND HAILSTONES.

Amodeo's Amended Counterclaims, like his two previous Counterclaims, are page upon page of unfounded allegations that seek somehow to establish the existence of a duty owed by Curry and/or Hailstones where none exists. As *Iqbal* provides, these "unwarranted deductions of fact" in Amodeo's complaint need not be admitted as true—and in fact, the record evidence before this Court overwhelmingly contradicts Amodeo's allegations. *Ashcroft v. Iqbal,* 556 U.S. __, 129 S.Ct. 1937, 1949 (2009). Conclusory allegations, unwarranted factual deductions, and conclusions of law need not be accepted as true and such allegations, masquerading as facts, will not prevent dismissal. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183,1185 (11th Cir. 2003). Plaintiff's uncorroborated conclusions that Curry and Hailstones had "a duty to Amodeo" are not supported by the either the law or the facts and therefore Plaintiff's claim fails.

Amodeo's Amended Counterclaims now allege the following:

1. Curry's Legal Malpractice (Count 1);
2. Curry and Hailstones were negligent as consultants (Counts 2 and 5);
3. Curry and Hailstones breached their fiduciary duties to Amodeo (Counts 3 and 6);
4. Curry and Hailstones are liable to Amodeo in contribution (Counts 4 and 7).

### A. Neither Curry nor Hailstones Had a Duty to Amodeo Personally as was Outlined in AQMI Strategy's Motion to Dismiss [D.E. 60 - Denied D.E. 121].[4]

#### 1. Plaintiff cannot establish negligence.

To maintain an action for negligence under Florida law, a plaintiff must establish three things: 1) that the defendant owed a duty to the plaintiff; 2) that the defendant breached that duty; and 3) that the breach caused the plaintiff damages. *Fla. Dep't of Corrs. v. Abril,* 969 So.2d 201, 203 (Fla.2007). A duty of care is "a minimal threshold legal requirement for opening the courthouse doors." *McCain v. Fla. Power Corp.,* 593 So.2d 500, 502 (Fla.1992) (footnote and emphasis omitted). Amodeo can establish none of these elements.

The existence of a duty poses a question of law that the court must answer before permitting a negligence claim to proceed before the trier of fact. *See Williams v. Davis,* 974 So.2d 1052, 1057 n. 2 (Fla. 2007) (emphasis added) (citing *McCain,* 593 So.2d at 504); *see also* Restatement (Second) of Torts § 328B. A duty of care requires that the defendant "conform to a certain standard of conduct . . . for the protection of others against unreasonable risks." *Clay Elec.,* 873 So.2d at 1185 (quoting *Prosser and Keeton on the Law of Torts* § 30, at 164-65 (W. Page Keeton, et al. eds., 5th ed.1984) (footnotes omitted).

#### 2. Curry never acted as an attorney for Amodeo.

In Count 1, Amodeo alleges that Curry was his attorney. *See* D.E. 398 ¶¶ 202-205. Further, he asserts that Curry misadvised him about certain legal matters. Nothing supports the notion that Curry was acting as an attorney in any of her dealings with him, and the statements are demonstrably false. Curry never "represented" Amodeo in any capacity.

---

[4] Within a few months after the instant case was stayed, Amodeo entered his guilty plea and AQMI Strategy Corporation became the property of the United States via the *Uncontested Preliminary Order of Forfeiture* [See Case No.: 6:08-cr-00176 D.E. 40 at ¶F - Granted D.E. 46 on October 2, 2008.]

7

The only acts Curry ever performed as a consultant were documented by a consulting agreement between Brookmeade Group, LLC and Presidion Solutions. [See D.E. 221-1]. Brookmeade Group, LLC, is and always has been a financial consulting entity *only*, and has provided no legal services of any kind.[5]

Amodeo cannot rightfully allege that there was ever an attorney-client relationship between Curry and himself, much less that, in such a relationship, Curry committed negligence. Further, Curry's employment agreement with Nexia clearly illustrates that she was not hired as an attorney. Nowhere in Amodeo's previous sworn statements does he claim Curry was ever engaged by him as an attorney: Amodeo's August 2006 sworn statement demonstrates:[6]

> Q. Was Presidion Corporation as the owner of these subsidiaries responsible for the payment of these 941 taxes?
>
> A. No they're not.
>
> Q. Did you make an investigation to determine whether or not that's the law?
>
>> A. There have been three sets of lawyers who have rendered opinions on that matter. Two firms hired by Presidion directly and one hired by me. [Berman, Kean and Riguerra].

*See also Frank L. Amodeo v. Berman, Kean & Riguerra, PA*, Case No.: 48-2008-CA-31333-O, (Orange County, Florida) (in which the Court ordered that Amodeo was collaterally estopped from the identical claims he is now alleging against Curry.)[7]

As reflected in D.E. 221-2, the transcript of Amodeo's August 26, 2006 sworn statement, he explains throughout that it was he who was responsible for the purported resolution of any

---

[5] While true that Curry has a Juris Doctorate from the University of Akron, Curry is licensed to practice only in Ohio, does not have a law office, and does not carry malpractice insurance. Aware of the rules regarding the unlicensed practice of law in Florida, Curry was very careful to leave the legal advice to those retained in that capacity.

[6] See D.E. 221-2, page 40 at lines 12-22., and D.E. 221-3

[7] *See* D.E. 221-4.

issues involving the Presidion tax matters. In addition, D.E. 221-3 is an excerpt from Curry's cross-examination by Mr. Sands during Amodeo's May 14, 2009 sentencing hearing, in which she explains that she was not engaged as an attorney at any time during her involvement with either Presidion or Amodeo. Curry never had an attorney/client relationship with Amodeo and Count 1 of Amodeo's Counterclaims should be dismissed.

### 3. Defendants are not liable to Amodeo as "Consultants."

Amodeo alleges that Curry and Hailstones are liable to him for "consultant malpractice." Not only have Curry and Hailstones been unable to locate a single case in Florida that supports such a claim, but neither Defendant had a consulting agreement with Amodeo, or any agreement that gave rise to a duty to Amodeo in their role as consultants. The only consulting agreement involving either Defendant even remotely related to this case is the consulting agreement between Brookmeade Group, LLC and Presidion Solutions [D.E. 221-1] which was in no way related to Amodeo personally. Neither Defendant ever had any consulting agreement in their individual capacity.

Moreover, in *Downs v. Coastal Systems Intern., Inc.*, 972 So.2d 258 (Fla. 3rd DCA 2008), the court held that unless the consultant negligently performed the work it was engaged to do, and such failure properly to perform those functions was the proximate cause of the injuries to the plaintiff who was not a party to the consulting contract, plaintiff could not recover. Given his guilty plea, Amodeo cannot claim that any actions of either Defendant as a consultant was the result of his loss. Accordingly, Counts 2 and 5 should be dismissed.

### 4. Defendants Owed no Duty to Amodeo as a Creditor.

Amodeo alleges that both Hailstones and Curry knew or should have known that MVI was insolvent and that, for that reason, each owed a fiduciary duty to Amodeo as a creditor of

9

MVI. His position is contrary to both the fact and Florida law. His own contrary testimony undercuts his claim that either Curry or Hailstones knew or should have known of MVI's financial condition. *See* Exhibits 1 and 2. As long as the organization is a going concern, the idea of the officers and shareholders owing a duty to its creditors is an unusual one at best. *See Orlinsky v. Patraka*, 971 So.2d 796 (Fla. 3rd DCA 2007), *citing Skinner v. Hulsey,* 138 So. 769, 773 (Fla.1931) ("in a solvent going concern directors are considered the agents or fiduciaries of the corporation, not of its creditors."). *See also Flight Equip. & Eng'g Corp. v. Shelton,* 103 So.2d 615, 626 (Fla.1958) (describing corporate officer's assertion that his first duty was to creditors, as opposed to corporation or stockholders, as "both strange and unfounded in law."). Counts 3 and 6 should be dismissed.

### 5. Neither Defendant owed a fiduciary duty to Amodeo.

That Amodeo now asserts Curry or Hailstones owed a fiduciary duty to him is absurd. A fiduciary relationship must be established by competent evidence, and the burden of proving such a relationship is on the party asserting it. *Kislak v. Kreedian,* 95 So.2d 510, 514-15 (Fla.1957). No document in this case even suggests that Curry or Hailstones owed Amodeo a personal duty of any kind. Further, fiduciary relationships implied in law are premised upon the specific factual situation surrounding the transaction and the relationship of the parties. Courts have found a fiduciary relationship implied in law "when confidence is reposed by one party and a trust accepted by the other." *Capital Bank v. MVB, Inc.,* 644 So.2d 515, 518 (Fla. 3d DCA 1994) (citations omitted). Neither Curry now Hailstones "accepted" a trust reposed by Amodeo.

### B. Defendants are Not Liable to Amodeo in Contribution.

Even if all Amodeo's allegation are true (and record evidence demonstrates they are not), to maintain a claim for contribution, the claimant must have paid more than his pro rata share of the debt and the party against whom the claim for 6 of Florida's version of the Uniform Contribution

among Tortfeasors Act. It is wildly implausible that Curry and/or Hailstones could be jointly liable with Amodeo for the unpaid payroll taxes even if Amodeo paid more than his pro rata share, which, of course, he has not, and which accomplishment is even more unlikely. Counts 4 and 7 are subject to dismissal.

### C. Amodeo's Third Party Counterclaims are Inconsistent his Plea, Conviction, Testimony, Declarations and those of MVI and Should be Dismissed.

#### 1. Amodeo's claims are barred by the Doctrine of Collateral Estoppel

Even if Amodeo allegations were factual, he is collaterally estopped from bringing these claims. In *Orr v. Black & Furci, P.A.*, 876 F. Supp. 1270, 1276 (M.D. Fla. 1995), the court said it was the criminal defendant's guilty conduct that caused his injuries incurred as a result of his conviction, proscribing recovery. In *Schreiber v. Rowe*, 814, So2d. 396, 399 (Fla. 2002) the court said the better rule is to require a plaintiff as part of the causation element of his claim to prove by the greater weight of the evidence that he was innocent of the crimes charged in the underlying [criminal] proceeding. Amodeo has admitted criminal responsibility for the wrongdoings alleged by the government during the period October, 2004 through August, 2006.[8] *Opteum Fin. Servs. LLC v. Kolbe*, 2010 WL 3766470, *5 (M.D. Fla. Sept. 22, 2010) (stating, "[c]ollateral estoppel precludes a party from relitigating an issue of fact or law that was fully litigated in a previous action.").

Curry and Hailstones never advised Amodeo concerning payroll taxes, and in two years of criminal investigation, and despite his own admission that "Amodeo [was] in exclusive control of the evidence for the greatest part of the [federal grand jury] investigation,"[9] Amodeo was unable to produce a single piece of evidence that anyone at Mirabilis ever knew that payroll tax monies were funding the operations of Mirabilis Ventures, Inc.

---

[8] See D. E. 221-5 and 221-6.

[9] See D.E. 398 at ¶89.

11

## 2. Amodeo's claims are barred by his own Judicial Admissions.

In June 2010, Amodeo submitted two declarations stating [*see* Case No: 6:08-cr-00231 D.E. 150 and Case No: 6:08-bk-04327 D.E. 572]:

> [] I am the individual most familiar with the facts of this case, because I was present during the events, had the most direct contact with the individuals involved and subsequent to the events I have studied the tapes and records, far and away, more than any other individual and quite possibly more than all government agents and attorneys combined.
>
> I state unequivocally: No person at Mirabilis Ventures, Inc., or AEM, Inc. knew that the failure to make tax payments by AEM, Inc…or Professional Benefit Solutions, Inc., was a violation of the law.

*See* Exhibits 1 and 2.  Curry and Hailstones could not have breached any duty by failing to advise Amodeo of that which they did not know and that Amodeo himself was admittedly in a better position to know.

Substantiating this is the May 19, 2009 testimony of IRS Special Agent Richard Smith at Amodeo's sentencing hearing. Assistant U. S. Attorney Randall Gold examined IRS Special Agent Richard Smith, who testified:[10]

> . . . . In addition to asking about somebody's actions, we [AUSA and IRS] told Mr. Amodeo, Mr. Slaughter and Mr. Sands [Mr. Amodeo's criminal lawyers] that we were having, it was a challenge bridging the gap as it was referred to as between Presidion and Mirabilis.  Presidion was the one running up the payroll tax liabilities.  People at Mirabilis knew about it, but did they know that payroll tax funds were going to Mirabilis and funding its operations?  And again, we asked Mr. Amodeo that, he said something to the effect, now I get it, I get what you're looking for, I'll get it.
>
> Q. Did he ever get you that evidence?
>
> A. No.

---

[10] See May 10, 2009 Sentencing Transcript Case No: 6:08-cr-176-ORL-28GJK at pp 24-25

*See* D.E. 221-3 at pp. 24-25.  Amodeo did not produce such evidence regarding Curry and Hailstones for the simple reason that it does not exist.

This court has found:

> Judicial admissions are considered procedural in nature, and thus are governed in federal court by the Federal Rules of Evidence. *American Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 226 (9th Cir.1988).
>
> [A]dmissions in pleadings[s] are deemed judicial admission[s], binding on the party who makes them." *Lofton v. Kearney,* 157 F.Supp.2d 1372, 1375 n. 3 (S.D.Fla.2001) (fact in answer had effect of judicial admission) (citing *Missouri Hous. Dev. Comm'n v. Brice,* 919 F.2d 1306, 1314 (8th Cir.1990)); *Ferguson v. Neighborhood Hous. Servs. of Cleveland, Inc.,* 780 F.2d 549, 550-51 (6th Cir.1986); *see also Continental Ins. Co. of N.Y. v. Sherman,* 439 F.2d 1294, 1298 (5th Cir.1971) ("the pleading of a party made in another ... or the same action are admissible as admissions of the pleading party to the facts alleged therein.").

*Chick-Fil-A, Inc. v. CFT Dev., LLC*, 652 F. Supp. 2d 1252, 1260 (M.D. Fla. 2009) aff'd, 370 F. App'x. 55 (11th Cir. 2010)  Accordingly, Amodeo is bound by his own judicial admissions—even in another proceeding—and therefore his counterclaims against Curry and Hailstones should be dismissed.

### 3. Plaintiff MVI now Admits Curry was an Innocent Board Member.

Amodeo's allegations are also directly contradict by Plaintiff MVI, which in no less than four different pleadings in related cases has identified Curry as an innocent Board Member. First, for example, Plaintiff MVI, in its efforts to avoid summary judgment based on the *in pari delicto* defense in its *Response to Defendants' Motion for Summary Judgment on Liability and Damages* in [Mirabilis Ventures, Inc. v. Rachlin, et al., Case 6:09-cv-00271 D.E. 78 at p.9 at p. 17] stated:

> Edie Curry was appointed to the Board of Mirabilis on January 3, 2005. *See 1/3/05 Board Meeting*. Ms. Curry was the Board's Secretary and Treasurer. *Id.* Ms. Curry was misled as to Mirabilis' plan for resolving its payroll tax problems. Ms. Curry testified that the strategy of not paying payroll taxes and instead using them for other purposes was never communicated to her, and her understanding was that Mirabilis was going to figure out other ways, such as reducing expenses and improving sales, to resolve the payroll tax problem. May 14, 2009 Transcript of Hearing on Sentencing of Frank Amodeo (Case No. 6:08-cr-176-Orl-28) ("5/14/09 Sentencing Hearing")

*See* D.E. 78 Exhibit 14 in *Rachlin* case at 119-120, lines 20-3.

> In fact, Mr. Amodeo…tried to conceal the payroll tax fraud from the innocent directors…such as Ms. Curry. [*See id.* p. 19]

Second, Plaintiff MVI, in its *Response to Defendants' Motion for Summary Judgment* [Mirabilis Ventures, Inc., v. Berman, Kean & Rigueur, et al., Case 6:09-cv-00175 D.E. 88 at p.10 and p. 18] again stated:

> Edie Curry was appointed to the Board of Mirabilis on January 3, 2005. *See 1/3/05 Board Meeting*. Ms. Curry was the Board's Secretary and Treasurer. *Id.* Ms. Curry was misled as to Mirabilis' plan for resolving its payroll tax problems. Ms. Curry testified that the strategy of not paying payroll taxes and instead using them for other purposes was never communicated to her, and her understanding was that Mirabilis was going to figure out other ways, such as reducing expenses and improving sales, to resolve the payroll tax problem. May 14, 2009 Transcript of Hearing on Sentencing of Frank Amodeo (Case No. 6:08-cr-176-Orl-28) ("5/14/09 Sentencing Hearing") (D.E. 78 Exhibit 14) at 119-120, lines 20-3. Ms. Curry was a decision maker unaware of the fraud.

> Amodeo…tried to conceal the payroll tax fraud from the innocent directors, such as…Ms. Curry.

Third, Plaintiff Mirabilis Ventures, Inc., in its *Response to Defendants' Motion for Sanctions and Denial of Compensation* [Case 6:09-cv-00271 D.E. 91 at p.9 at p. 17] stated:

> Defendants' [Rachlin] attempt to avoid Ms. Curry as an innocent director is even more bizarre. [MVI] never asserted that Ms. Curry was anything but an innocent officer and director of Mirabilis who would have stopped this activity had she not been mislead. The evidence clearly supports that position. [Rachlin] assert that Ms. Curry and Plaintiff has been in litigation regarding a trade secret and other claims arising from that litigation. [Rachlin] do[es] not point out that no where in

that unrelated litigation was it asserted that she participated in the payroll tax scheme.[11]

Thus, Amodeo's allegations with respect to Curry are directly contradicted by the assertions of MVI in two different but related proceedings.

## CONCLUSION

Amodeo, despite having had "exclusive control" [See D.E. 398 at ¶90] of all the evidence until his incarceration, is unable to support any of the allegations in this counterclaim. He appears to believe that his bare allegations, contrary to his prior plea, testimony and declarations, should stand. Amodeo's counterclaims against Curry and Hailstones not only fail to state a claim upon which relief can be granted, however, they are barred by the doctrine of collateral estoppel and are directly contradicted by his judicial admissions in related proceedings. Further, the volume of record evidence before this Court demonstrates Amodeo's counterclaims utterly lack plausibility as required under *Twombly*. 550 U.S. at 570, 127 S.Ct. at 1974.

For all the reasons set forth herein, this Motion to Dismiss should be granted and the Third Party Amended Counterclaims of Frank Amodeo against Edith Curry and Frank Hailstones should be dismissed.

---

[11] MVI goes on to reference the *First Amended Complaint* from this case. (D.E. 42). MVI fails to inform the Court in the *Rachlin* case, however, that in its *Joint Answer and Affirmative Defenses to First Amended Counter Claims* in this case (D.E. 72 at ¶42 and 45) Plaintiffs MVI and Nexia did, in fact, accuse Ms. Curry of participating in the payroll tax scheme: "…Curry requested and was provided, over $5,000,000 in funds she knew were derived primarily from the collected and unpaid payroll taxes of the PBS Book of Business controlled by AEM, Inc., in 2006 and for which no repayment was made," and further, that "Curry received over $680,000 in funds she knew were derived primarily from the collected and unpaid payroll taxes of the PBS Book of Business controlled by AEM, Inc., in 2006 and for which no repayment was made." MVI's representation that it never accused Curry of participating in the payroll tax scheme was false. This is another example of Broad & Cassel's failure to independently review the case against Ms. Curry and Mr. Hailstones to determine whether it was proper to maintain it.

                                                      Respectfully submitted,

| | |
|---|---|
| MARTIN R. RASKIN | /s/ Kathleen Balthrop Havener |
| Florida Bar No. 315206 | KATHLEEN BALTHROP HAVENER |
| JANE SERENE RASKIN | Ohio Bar No. 0068906 |
| Florida Bar No. 848689 | THE HAVENER LAW FIRM, LLC |
| RASKIN & RASKIN, P.A. | 15511 Russell Road |
| 866 South Dixie Highway | Chagrin Falls, OH 44022-2669 |
| Coral Gables, FL 33146 | Telephone: (440) 893-0188 |
| Telephone: (305) 444-3400 | Facsimile: (440) 893-9326 |
| Facsimile: (305) 445-0266 | Cellular: (216) 288-6009 |
| mraskin@raskinlaw.com | kbhavener@havenerlaw.com |
| | |
| Attorneys for Defendants Curry, Palaxar Group, LLC, and Palaxar Holdings, LLC | Attorney for Defendants Curry, Hailstones, Palaxar Group, LLC, and Palaxar Holdings, LLC |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 24, 2011, I electronically filed the foregoing Motion of Defendants Curry and Hailstones to Dismiss the Counterclaims of Frank Amodeo with the Clerk of Court using the CM/ECF system, which will send a notice of electric filing to all registrants in that system. I further certify that I have caused the foregoing to be served by the means indicated upon the following:

Terence Chu (via email)
Yaniv Amar (via email)


Frank L. Amodeo (via Priority Mail)
B-3 / 48883-019
Federal Correctional; Complex – Low
P.O. Box 1031
Coleman, FL 33521

                                                      /s/ *Kathleen Balthrop Havener*
                                                      KATHLEEN B. HAVENER

                                                      Attorney for Defendants Curry, Hailstones, Palaxar Group, LLC, and Palaxar Holdings, LLC