## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

MIRABILIS VENTURES, INC. and
NEXIA STRATEGY CORPORATION,

      Plaintiffs,

v.                                                              Case No. 6:07-CV-1788-Orl-28-KRS

PALAXAR GROUP, LLC;                                 DISPOSITIVE MOTION
PALAXAR HOLDINGS, LLC;
FRANK HAILSTONES; EDITH CURRY
a/k/a EDITH BROADHEAD; and
TERENCE CHU,

      Defendants,

v.

MIRABILIS VENTURES, INC.,
NEXIA STRATEGY CORPORATION,
AQMI STRATEGY CORPORATION,
WELLINGTON CAPITAL GROUP, INC.,
YANIV AMAR, FRANK AMODEO,
AARON BATES, MATTHEW MOKWA,
ROBERT POLLACK, and JAMES SADRIANNA,

      Third-Party Defendants.
_____

### THIRD-PARTY DEFENDANT MATTHEW S. MOKWA'S MOTION FOR
### SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

      COMES NOW, Third-Party Defendant Matthew S. Mokwa ("Mokwa" or "Third-Party

Defendant"), by and through his undersigned counsel and pursuant to Fed. R. Civ. P. 56

moves this Court for summary judgment on all claims filed by Third-Party Plaintiffs, Edith

Curry ("Curry") and Frank Hailstones ("Hailstones") (collectively "Third-Party Plaintiffs").

The grounds for this motion are set forth in the following memorandum of law.

# TABLE OF CONTENTS

1. INTRODUCTION ................................................................................................... 3

2. STATEMENT OF UNDISPUTED MATERIAL FACTS .......................................... 4

   A. BACKGROUND ................................................................................................ 4

   B. CURRY'S ALLEGATIONS ................................................................................ 5

   C. HAILSTONES' ALLEGATIONS ......................................................................... 6

   D. TESTIMONY OF ZOLLERS ............................................................................... 6

   E. TESTIMONY OF CLINTON GROOMES, JR. ....................................................... 7

   F. TESTIMONY OF CONFERENCE ATTENDEES ................................................... 7

   G. TESTIMONY OF JOEL KRAMER ...................................................................... 8

   H. TESTIMONY OF MOKWA, BATES AND AMAR ................................................ 8

3. LEGAL STANDARD ............................................................................................ 8

4. ARGUMENT AND AUTHORITIES ....................................................................... 9

   A. SLANDER PER SE .......................................................................................... 9

      1. The alleged statement is not defamation ............................................... 9

      2. Third-Party Plaintiffs cannot prove publication ................................. 13

      3. Third-Party Plaintiffs are limited public figures ................................ 15

      4. Third-Party Plaintiffs cannot prove damages ..................................... 17

   B. TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS ......... 19

      1. Third-Party Plaintiffs cannot prove there was a business relationship ............... 21

      2. Third-Party Plaintiffs cannot prove knowledge of the relationship ..................... 22

      3. Third-Party Plaintiffs cannot prove interference ...................................... 23

      4. Third-Party Plaintiffs cannot prove damages ..................................... 24

   C. FLORIDA LITIGATION PRIVILEGE ................................................................. 25

5. CONCLUSION ................................................................................................... 25

1.      **<u>INTRODUCTION</u>**[1]

Curry and Hailstones brought this lawsuit against Mokwa alleging (1) slander per se; (2) intentional interference with business relationships; and (3) conspiracy.  All of the claims in this lawsuit arise from a conversation that occurred during the service of process of Mirabilis Ventures, Inc. ("Mirabilis") and Nexia Strategy Corporation's ("Nexia") lawsuit against Curry and Hailstones (the "Original Lawsuit").

As demonstrated by the facts and argument below, the admissible, relevant evidence falls far short of the legal standard necessary to maintain each of Third-Party Plaintiffs' claims.  Curry and Hailstones have attempted to obscure the record in this case with an avalanche of speculation, gossip, rumor, anecdotes of unrelated improprieties, and wild and conclusory allegations.  When the *actual claims* of Curry and Hailstones are measured against the *actual evidence*, each claim is fundamentally deficient.

Curry and Hailstones cannot produce any record evidence supporting their claims of defamation and intentional interference with business relationships.  The undisputed material facts demonstrate that the alleged defamatory statement does not meet the legal definition of defamation; was not published to a third-party; and did not cause any damages.  Moreover, Third-Party Plaintiffs have failed to identify a single business relationship that Mokwa interfered with.  As a result, Third-Party Plaintiffs' claims fail as a matter of law and this Court must grant summary judgment in favor of Mokwa.

---

[1]   Mokwa is filing an Appendix containing the Exhibits referred to in this Motion contemporaneous herewith. Citations to the Exhibits contained in the Appenidix are in the form [Ex. __].

2.     **STATEMENT OF UNDISPUTED MATERIAL FACTS**

    A.     **Background.**

Hailstones and Curry are former officers and directors of Mirabilis.[2]     Hailstones is a resident of the United Kingdom.  (Doc. 346 ¶ 2).  Aaron C. Bates ("Bates") was the attorney of record for Mirabilis and Nexia in the Original Lawsuit.[3]  Mokwa was employed by Bates' law firm, Goldberg Bates, PLLC k/n/a Bates Mokwa, PLLC.  Ex. 1, Aff. of Mokwa ¶ 5. Yaniv Amar ("Amar") was a former Mirabilis employee.  Ex. 2, Aff. of Amar ¶ 3.

    In or about October 2007, Bates and Mokwa flew to Scottsdale, Arizona to service process on Hailstones, a nonresident alien living in the United Kingdom, who was in town (with Curry) for a one-time speaking engagement.  Ex. 1, Aff. of Mokwa ¶ 7; Ex. 3, Aff. of Bates ¶¶ 10-11.  Amar also flew to Scottsdale, AZ because he wanted to see if it was actually true that the former CEO and Treasurer (Hailstones and Curry, respectively) of Mirabilis were lecturing on antifraud during a federal investigation into Mirabilis for the largest payroll tax fraud in history.  Ex. 2, Aff. of Amar ¶¶ 4-10.  Bates, Mokwa and Amar each traveled on different days and each stayed at different locations.  Ex. 1, Aff. of Mokwa ¶ 8.  Moreover, Mokwa is from Arizona and his family lives in the Scottsdale area.  Ex. 1, Aff. of Mokwa ¶ 7.

---

[2]   Hailstones served as President or CEO of Mirabilis from January 2, 2006 until December 31, 2006 and he served as a member of Mirabilis' Board of Directors from January 26, 2006 until January 31, 2007.  (Doc. 75-20 ¶ 18-19).  Curry served as Secretary and Treasurer of Mirabilis from October 2005 until October 31, 2006 and Board of Directors' member from October 2005 until October 31, 2006.  (Doc. 41-8 ¶ 4).  Curry served as the President of Nexia from January 1, 2005 until October 31, 2006.  (*Id.*)

[3]   Bates of the law firm Goldberg Bates, PLLC k/n/a Bates Mokwa, PLLC was counsel of record in the Original Action along with Russ Campbell ("Campbell") of Balch & Bingham, LLP (Doc. 2).  Bates was substituted for Todd Norman ("Norman") and Roy Kobert ( "Kobert") of Broad and Cassell pursuant to this Court's November 6, 2009 Order.  (Doc. 169).

4

Curry and Hailstones allege that during the service of process Mokwa and Amar slandered them by accusing them of thievery.  (Doc. 346 ¶¶ 76-97).  Curry and Hailstones are the only known witnesses who heard the alleged slander.  Ex. 4, Oct. Dep. of Hailstones 28:11-16; Ex. 5, Aug. Dep. of Curry 69:25-70:4; 92:4-94:3.  At their depositions, both Curry and Hailstones testified to different versions of the allegedly slanderous statement made by Mokwa.  *See infra* Sec. 2.B. and C.   In their response to Third-Party Defendants' Motion to Dismiss, Curry and Hailstones attributed their inability to recollect the precise allegations of slander on their hearing impairments.  (Doc. 317 p. 9-10, and FN 10).  Curry and Hailstones are both severely hearing impaired.  *Id*.; Ex. 5, Aug. Dep. of Curry 5:13-6:14.  Curry is functionally deaf and reads lips.  *Id*.  Hailstones underwent reconstructive surgery to repair his eardrum in August of 2010 in order to "restore his hearing." (Doc. 273 p. 2).

Moreover, this is Curry's second federal defamation lawsuit.  In Curry v. Nestle, 2000 U.S. App. LEXIS 18743 (6th Cir. 2000), Curry alleged that Nestle employees "defamed her by stating to other Nestle employees that she had misappropriated funds and was a thief."  *Id*. at 18.  Judgment was entered in favor of Nestle on all counts at summary judgment.  *Id*. at 1-2; *see also* Case No. 1:98-CV-0612 (N.D. Ohio).

**B.  Curry's allegations.**

Curry's specific allegations are crystallized in her handwritten notes drafted minutes after the alleged incident.  *See* Ex. 6.  Curry read her notes into the record at her deposition.  They read as follows:

> [I]t is 8:20 a.m. on the 15th of October 2007.  Frank Hailstones and I were walking from our rooms to the Scottsdale Renaissance conference center.  We approached the conference center just as three former Mirabilis and/or Mirabilis HR

5

employees approached us in the *middle of the street*.  Matt
Mokwa, Aaron Bates and Yaniv Amar were with a fourth
person who approached Frank and me saying he was a process
server.  He gave us the filings and I noticed Aaron Bates either
videoing or audio taping the event.  I then recognized Yaniv and
said Yaniv, is that you and hugged him hello.

[Amar] spoke and said I can't believe this.  I asked if he was
part of Mirabilis and he replied he was only here as a witness …
He said loudly enough to attract attention in front of
approximately thirty conference attendees; you and Frank were
officers of a company where two hundred and twenty million
dollars is missing and now you have the nerve to market an
anti-fraud product.

I then said there are three agreements, which will resolve this.
He cut me off and said, again, very loudly look, you were on the
front page of Saturday's Orlando Sentinel.  And Matt [Mokwa]
held up a copy to show the conference attendees.  I exclaimed
we were on the front, great.

Yaniv made another comment about the two hundred and
twenty million missing.  And I said I'll let Randy Gold sort that
out.  I said we'll see you later and walked into the conference
room.  Yaniv said to Frank, I guess you have to leave to go back
to the UK now.  I asked Frank why he'd have to go back.

Ex. 5, Aug. Dep. of Curry 104:3-105:11 (emphasis added); Ex. 6.

Moreover, at her deposition, Curry was asked *four* times to state exactly what Mokwa

said.  All *four* times, Curry testified that Mokwa held up a newspaper and said *look you made

the front page.*  Ex. 5, Aug. Dep. of Curry 46:18-48:1; 48:2-49:20; 49:24-50:24; 106:16-17.

    **C.**    **Hailstones allegations.**

At his deposition, Hailstones was asked *three* times to state exactly what Mokwa said.

All *three* times Hailstones testified that Mokwa held up the front page of The Orlando

Sentinel and said, *see, you made the front page*, *where's the 220 million?*  Ex. 4, Oct. Dep. of

Hailstones 7:16-21; 30:20-31:12.

**D.**     **Testimony of Thomas Zollers.**

Thomas Zollers was the process server who served Curry and Hailstones with the Complaint in Arizona.  Ex. 7, Aff. of Zollers ¶¶ 1-4.  Zollers testified that immediately after he served Curry and Hailstones in the parking lot they walked up to Mokwa, Bates and Amar and had a cordial conversation.  *Id.* ¶ 7.  Zollers further testified that he was several feet away and could not hear the substance of the conversation and that the conversation was not within earshot of anyone else.  *Id.* ¶¶ 9-10.

**E.**     **Testimony of Clinton Groomes, Jr.**

Clinton Groomes, Jr. ("Groomes") is Bates' personal care attendant.  (Doc. 346 ¶ 59).  Groomes testified that he accompanied Bates to the Scottsdale Renaissance Resort and witnessed Curry, Hailstones, Bates, Mokwa and Amar have a cordial conversation.  Ex. 8, Aff. of Groomes ¶¶ 3-4.  Groomes further testified that he was several feet away and could not hear the substance of the conversation and that the conversation was not within earshot of anyone else.  *Id.* ¶ 5.

**F.**     **Testimony of Eric Sork, Sargon Youmara, David Benami, Todd Stewart, Sandy O'Connor, Ken Conway, Bill Jackson, Cecily Fink, Erica Kartak, Matthew Raudenbush, Larry Davis, Robert W. Rudloff, Jr, John Winters, Rebecca Lai, Timothy Wardlow, and James Montgomery.**

Eric Sork ("Sork"), Sargon Youmara ("Youmara"), David Benami ("Benami"), Todd Stewart ("Stewart"), Sandy O'Connor ("O'Connor"), Ken Conway ("Conway"), Bill Jackson ("Jackson"), Cecily Fink ("Fink"), Erica Kartak ("Kartak"), Matthew Raudenbush ("Raudenbush"), Larry Davis ("Davis"), Robert W. Rudloff, Jr. ("Rudloff") John Winters ("Winters"), Rebecca Lai ("Lai") Timothy Wardlow ("Wardlow") and James Montgomery ("Montgomery") all testified that they attended the 58th Annual Audit Directors & Managers

Symposium in Scottsdale, AZ, were present when the alleged incident took place, and did not see Curry and/or Hailstones served with the Complaint or overhear Mokwa, Bates or Amar accuse Curry and/or Hailstones of thievery or dishonesty.  Composite Ex. 9.

      **G.**    **Testimony of Joel Kramer.**

    Joel Kramer ("Kramer") is the Managing Director, Internal Audit Division of the MIS Training Institute.  Ex. 10, Aff. of Kramer ¶ 3.  He has been friends with Hailstones for the past 25 years.  Ex. 5, Aug. Dep. of Curry 126:18-127:8.  Kramer testified that he witnessed Curry and Hailstones engage in a very intense and animated conversation with two men and that one of the men was waiving a newspaper in front of Curry and Hailstones.  Ex. 10, Aff. of Kramer ¶ 11.  Kramer further testified that he could not hear what was being said but there were 10-15 people within approximately 20 feet who might have heard the conversation.  *Id.* ¶¶ 12-13.

      **H.**    **Testimony of Mokwa, Bates and Amar.**

    Mokwa, Bates and Amar each testified that the conversation that took place was cordial; nobody was speaking in loud voices and there was no third-party within earshot.  Ex. 1, Aff. of Mokwa ¶¶ 9-14 ; Ex. 2, Aff. of Amar ¶¶ 11-15; Ex. 3, Aff. of Bates ¶¶ 13-17.

**3.**    **LEGAL STANDARD**

    "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56).  "[R]ule 56(c) mandates the entry of summary judgment, after adequate time for

discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* The summary judgment standard "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a) …" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

**4.      ARGUMENT AND AUTHORITIES**

    **A.      SLANDER PER SE.**

To sustain a cause of action for slander under Florida law, a plaintiff must demonstrate that: (1) the defendant published a false statement; (2) about the plaintiff; (3) to a third-party; (4) the party suffered damages as a result of the publication. *Fun Spot of Florida, Inc. v. Magical Midway of Central Florida, Ltd.*, 242 F.Supp.2d 1183, 1187 (M.D. Fla. 2002) (*citing Valencia v. Citibank Int'l*, 728 So.2d 330, (Fla. 3d DCA 1999)). In an action for defamation the plaintiff has the burden of proving: (1) the defamatory character of the communication; (2) its publication; (3) its application to the plaintiff; (4) the recipient's understanding of its defamatory meaning; (5) special harm resulting to the plaintiff from its publication; and (6) the defendant's negligence or malice in making the false communication. *See Restatement (Second) of Torts* § 613 (1977).

    **1.      The alleged statement is not defamation.**

Curry and Hailstones are the only known witnesses who heard the allegedly defamatory communication made by Mokwa. Ex. 4, Oct. Dep. of Hailstones 28:11-16; Ex. 5, Aug. Dep. of Curry 69:25-70:4; 92:4-94:13. All of the other witnesses in this matter testified that Mokwa did not say anything or that they could not hear what Mokwa said. *See* Ex 7, Aff.

of Zollers ¶¶ 9-10; Ex. 8, Aff. of Groomes ¶ 5; Ex. 10, Aff. of Kramer ¶¶ 12-13; Composite

Ex. 9, Aff. of Sork ¶¶ 4-5, Aff. of Youmara ¶¶ 4-5, Aff. of Benami ¶¶ 4-5, Aff. of Stewart ¶¶

3-4, Aff. of O'Connor ¶¶ 4-5, Aff. of Conway ¶¶ 4-5, Aff. of Jackson ¶¶ 4-5, Aff. of Fink ¶¶

4-5, Aff. of Kartak ¶¶ 4-5, Aff. of Raudenbush ¶¶ 4-5, Aff. of Davis ¶¶ 4-5, Aff. of Rudloff ¶¶

4-5, Aff. of Lai ¶¶ 4-5, Aff. of Wardlow ¶¶ 4-5, and Aff. of Montgomery ¶¶ 4-5.  Moreover,

Curry and Hailstones' sworn testimony contradicts each other, the Complaint, and Curry's

contemporaneous recollection.

Under oath, Curry described the defamatory communication as follows:

> At that point is when Mr. Mokwa held up the newspaper and said look you made the front page.

Ex. 5, Aug. Dep. of Curry 47:24-48:1.

> At that point is when Mr. Mokwa said look, you made the front page of the Orlando Sentinel and he held up the newspaper.

*Id*. at 48:23-25.

> That's when Matt said look, you're on the front page of the Orlando Sentinel.

*Id.* at 50:16-17.

> Matt showed the paper and he said what he said; look you were on the front page.

*Id.* at 106:16-17.

Under oath, Hailstones described the defamatory communication as follows:

> [Mokwa] said, Have you seen the front page of the Orlando Sentinel, where's the missing 220 million – or words to that effect.

Ex. 4, Aug. Dep. of Hailstones 7:17-19.

10

> Mr. Mokwa at that point held up the front page of The Orlando
> Sentinel and said, See you made the front page, where's the 220
> million.

*Id*. at 31:3-5.

> See, you made the front page of The Orlando Sentinel, look,
> where's the 220 million.

*Id*. at 31:11-12.

Whether the alleged communication is capable of bearing a particular meaning and whether that meaning is defamatory is a question of law to be determined by the court. *See Restatement (Second) of Torts* § 614 (1977).

As a matter of law, Mokwa's alleged communication cannot reasonably be susceptible to a defamatory interpretation and is not slander *per se*. Curry testified that Mokwa held up a news paper and said "you're on the front page of the Orlando Sentinel." Ex. 5, Aug. Dep. of Curry 50:16-17; *see also id*. at 47:24-48:1; 48:23-25; 106:16-17. Hailstones testified that Mokwa held up a news paper and said "[h]ave you seen the front page of the Orlando Sentinel, where's the missing 220 million?" Ex. 4, Oct. Dep. of Hailstones 7:16-21; *see also id*. at 31:3-5; 31:11-12.

First, the aforementioned statement that "you're on the front page of the Orlando Sentinel" does not subject them to distrust, hatred, contempt, ridicule or obloquy. *See Keller v. Miami Herald Pub. Co.*, 778 F.2d 711, 716 (11th Cir. 1985). Simply put: referencing an article in a public newspaper is not defamation; it is a constitutionally protected liberty enjoyed by citizens of the United States of America.

Second, asking Hailstones "where's the missing 220 million?" is not a defamatory communication. The tort of defamation requires the plaintiff to prove a false statement of

fact. *Fun Spot of Florida, Inc.*, 242 F.Supp.2d at 1187. As a matter of law, asking a question regarding a public newspaper article is not a false statement of fact.

Third, the aforementioned statements are nothing more than pure opinion and/or rhetorical hyperbole. Pure opinion occurs when the defendant makes a comment or opinion based on facts which are disclosed to the audience to whom the publication is made. *Town of Sewall's Point v. Rhodes*, 852 So. 2d 949, 950 (Fla. 4th DCA 2003). Rhetorically hyperbolic statements cannot reasonably be interpreted as stating actual facts about their target, even though they may at first blush appear to be factual. *Fortson v. Colangelo*, 434 F.Supp.2d 1369, 1379 (S.D. Fla. 2006).

In determining whether a statement is actionable, the court must examine the statement in the context in which it was published and consider all of the circumstances surrounding the statement. *Morse v. Ripken,* 707 So. 2d 921, 922 (Fla. 4th DCA 1998). Taken within the context of the communication (a discussion regarding the merits of the lawsuit in a parking lot) any third-party who might have "overheard" the discussion could not reasonably be expected to believe that the alleged statements were literal facts involving criminal conduct. All of the alleged statements reference a news paper article and are nothing more than opinion and/or fair comment regarding the subject matter of that article.

Moreover, "under the substantial truth doctrine, a statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true." *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 706 (Fla. 3d DCA 1999); s*ee also McCormick v. Miami Herald Publ'g Co.*, 139 So. 2d 197, 200 (Fla. 2d DCA 1962) (a statement is not considered false unless, it "would have a different effect on the mind of the reader from that which the pleaded

truth would have produced.") (internal quotations omitted).  It is undisputed that Curry and Hailstones were featured in an article on the front page of the October 13, 2007 Orlando Sentinel.[4]  *See* Ex. 11.  The article reported that a lawsuit had been filed against Curry and Hailstones, which alleged that they had misappropriated assets.  *Id*.  As a matter of law, the alleged statement is substantially true.

## 2.    Third-Party Plaintiffs cannot prove publication.

"In order for a defamatory communication to be actionable it must be communicated to someone other than the person defamed."  *American Ideal Management, Inc. v. Dale Village, Inc.*, 567 So. 2d 497, 498 (Fla. 4th DCA 1990); *see also Am. Airlines Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. 3rd DCA 2007) ("A defamatory statement does not become actionable … until it is published or communicated to a third person; statements made to the person alleging the defamation do not qualify."); *Granda-Centeno v. Lara*, 489 So. 2d 142, 143 (Fla. 3rd DCA 1986) ("To communicate or publish is to make known, and requires that someone hear or read the information communicated.") (internal citations omitted).

Curry and Hailstones have failed to produce *any* evidence of publication during the three years they have prosecuted this case.  First, it is undisputed that the conversation took place in the middle of the street.  Ex. 4, Oct. Dep. of Hailstones 30:9-13; Ex. 5, Aug. Dep. of Curry 104:9.  Second, both Curry and Hailstones admitted at deposition that they cannot name one person who heard the allegedly defamatory statement.  Ex. 4, Oct. Dep. of Hailstones 28:11-16; Ex. 5, Aug. Dep. of Curry 69:25-70:4; 92:4-94:3.  Finally, and most shocking, Third-Party Plaintiffs produced the participant list from the Audit Directors & Managers

---

[4]  This Court may take judicial notice of the October 13, 2007 Orlando Sentinel Article pursuant to Rule 201, Federal Rules of Evidence.

Symposium where the alleged defamation occurred.[5]   *See* Ex. 12.   The Participant List includes the name, phone number, address and email of *every single* person who attended the Audit Directors & Managers Symposium.  *Id.*

Thus, Third-Party Plaintiffs allege in their Complaint that the slander was published to approximately 25 to 40 of the organizers and attendees of the conference; produced the list of *all* 66 conference attendees; then admitted under oath that they could not name *one person* on the list who heard the alleged slander.  (Doc. 346 ¶78); Ex. 12; Ex. 4, Oct. Dep. of Hailstones 28:11-16; Ex. 5, Aug. Dep. of Curry 69:25-70:4; 92:4-94:3.

Third-Party Defendants called *every single* attendee on the list and were unable to locate *one* witness who witnessed the service of process – not to mention heard the alleged slander.  Ex. 2, Aff. of Amar ¶ 16.  The following participants provided affidavits that they attended the conference, where present at the time of the alleged incident, and did not witness the service of process or hear the alleged slander:   Sork, Youmara, Benami, Stewart, O'Connor, Conway, Jackson, Fink, Kartak, Raudenbush, Davis, Rudloff, Winters, Lai, Wardlow, and Montgomery.  Composite Ex. 9.

Third-Party Plaintiffs' evidence of publication is pure speculation.   Third-Party Plaintiffs rely exclusively on the argument that someone at the conference *might* have heard the allegedly slanderous communication; *might* have understood the communication to represent a factual statement that Curry and Hailstones had committed a criminal act; and *might* have changed their opinion of Curry and Hailstones as a result of the alleged communication.   No reasonable trier of fact could overlook the overwhelming record

---

[5] The MIS Training Institute Audit Directors & Mangers Symposium Participant List was produced by Third-Party Plaintiffs and is bates stamped 100691-100695.

evidence against publication and find in Curry and Hailtones' favor based on unsupported speculation.  This is especially true in light of Curry and Hailstones hearing impairments.  *See supra* Sec. 2.A.

### 3.        <u>Third-Party Plaintiffs are limited public figures and cannot prove malice</u>.

A public figure plaintiff must establish "actual malice" on behalf of the publisher in order to maintain a defamation action.  *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974); *see also Della-Donna v. Gore Newspapers Company*, 489 So. 2d 72, 74 (Fla. 4th DCA 1986). The actual malice test requires plaintiffs to show that defendants published the defamatory material with a "high degree of awareness of . . . [its] probable falsity."  *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964).  Curry and Hailstones are limited public figures with regard to their dealings with Mirabilis.

To determine whether a person is a public figure with regard to the published statements, there is a three part test that requires affirmative responses to each of the following: (1) whether there is a public controversy; (2) whether the plaintiff played a sufficiently central role in that controversy; and (3) whether the alleged defamation was germane to plaintiff's involvement in that controversy.  *Della-Donna,* 489 So. 2d at 77 *citing Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287 (D.C. Cir. 1980).

The significant fraud that occurred at Mirabilis affected the employees of Mirabilis, the Orlando community, and the Federal Government.  The Mirabilis controversy was regularly covered by the local and national news.[6]  The Mirabilis controversy also raised significant legal issues regarding the conduct of the professions involved with Mirabilis and

---

[6] See Ex. 13 for a sample of news paper articles covering the Mirabilis controversy.  The Court may take judicial notice of these articles pursuant to Rule 201, Federal Rules of Evidence.

their respective control over the affairs of the company.[7]   The Mirabilis controversy easily meets the public controversy prong under *Waldbaum*.  *See Bruce v. Wiod, Inc.*, 1996 U.S. Dist. LEXIS 21979 *8-9 (S.D. Fla. 1996) ("A 'public controversy' is a matter which is openly debated, and which affects more people than simply the direct participants."); s*ee also Della-Donna,* 489 So. 2d at 76-77 (finding that a dispute over the disbursement of a multi-million dollar gift to a local university was a public controversy).

The second prong of the *Waldbaum* test examines the plaintiff's involvement in the public controversy. More specifically, the plaintiff must fulfill one of two requirements: either (1) he "purposely [tried] to influence the outcome" of the controversy, or (2) he "could realistically have been expected, because of his position in the controversy, to have an impact on its resolution." *Waldbaum,* 627 F.2d at 1297.

Curry and Hailstones were senior executives of Mirabilis and both owed a fiduciary duty to the corporation.  *See Snead v. U.S. Trucking Corp.*, 380 So. 2d 1075, 1078 (Fla. 1st DCA 1980).   As the respective Treasurer and President of Mirabilis, Curry and Hailstones were in a position to impact the resolution of the Mirabilis controversy and therefore meet the second prong of *Waldbaum*.  *See Bruce*, 1996 U.S. Dist. LEXIS 21979 *11-12 (finding that a radio station's programming director meets the second prong of *Waldbaum* because the programming director was in a position to influence the resolution of the public controversy).

In addition, Curry and Hailstones communicated with the press and sought to influence the public's perception of the Mirabilis controversy.  Curry exchanged emails with

---

[7] In addition to the above captioned case, the Mirabilis controversy has been litigated in the following matters: *Mirabilis v. Rachlin Cohen Holtz LLP, et al.*, Case No. 6:09-cv-271; *Mirabilis v. Richard E. Berman et al.*, *Mirabilis v. James Moore & Co.*, Case No. 6:09-cv-176 and *Mirabilis v. Saxon Gilmore, et al.*, Case No. 6:09-cv-1974.

reporter Jim Leusner of the Orlando Sentinel.[8]  *See* Ex. 14.  Curry and Hailstones' attorney, Kathleen Havener, was quoted by the Orlando Sentinel in multiple articles discussing the Mirabilis controversy.[9]  *See* Ex. 15.  Moreover, Curry was also quoted by *Bloomberg* regarding her role as treasurer and board member of Mirabilis.  *See* Ex. 16.

The final prong of *Waldbaum* examines whether the alleged defamation was germane to the plaintiff's participation in the controversy.  Curry and Hailstones allege that Mokwa showed them a copy of the October 13, 2007 Orlando Sentinel with the headline *Mirabilis lost at least $220M* and accused them of thievery.  (Doc. 346 ¶ 78).  This allegation falls within the final prong of *Waldbaum*.

Accordingly, Curry and Hailstones are limited public figure and are required to prove by clear and convincing evidence that the alleged statement was made with actual malice.  There is no record evidence that the alleged statement was made with actual malice.

### 4.      <u>Third-Party Plaintiffs cannot prove damages.</u>

Third-Party Plaintiffs do not have a damage expert, medical bills, or any special damages.  Third-Party Plaintiffs' entire damage model is based on the doctrine of "presumed damages."  Ex. 5, Aug. Dep. of Curry 121:14-20.  At her deposition, Curry expressly testified that she does not believe that she needs to prove damages in this case.  *Id*. at 119:17-19.  In

---

[8]   These emails were produced by Third-Party Defendants to Mirabilis in the Original Action and are bates stamped DEFENDANTS 000948-000951.

[9]   Specifically, Ms. Havener was quoted in the February 16, 2008 Orlando Sentinel article: *2 former Mirabilis officers countersue, saying firm slandered them when it accused them of not noticing a $220M loss* and the October 7, 2010 article *Ex-Mirabilis insiders say trade-secrets ruling vindicates them*.  Ms. Havener used the press to bolster Curry and Hailstones public image with regard to the controversy.  The articles demonstrate the public's interest in Mirabilis as well as Curry and Hailstones ready access to the media.  This Court may take judicial notice of the articles pursuant to Rule 201, Federal Rules of Evidence.

Third-Party Plaintiffs' Answers to Bates' Interrogatories, Third-Party Plaintiffs (under oath) informed Third-Party Defendants of the following:

> We have no intention of attempting to prove damages specific to the slander that occurred at trial and therefore have nothing to produce in discovery.

Ex. 17, Third-Party Plaintiffs' Answers to Bates' Interrogatories at No. 9.[10]

In a follow up letter to Third-Party Plaintiffs, asking them to again quantify their damages, Third-Party Plaintiffs' counsel responded:

> I remind you that our allegations are all based on slander per se, which requires no proof of damages.  If our claim fails, there are no damages.  If it succeeds, the damages will not be based upon proof.

Ex. 19, Letter from Attorney Kathleen Havener.

Curry and Hailstones cannot present any record evidence of damages caused by the alleged slander.

In sum: (i) Curry's contemporaneous recollection contradicts the allegation of slander; (ii)  Curry's deposition testimony contradicts the allegation of slander; (iii) Hailstones' deposition testimony contradicts the allegation of slander; (iv) Mokwa, Bates and Amar's sworn testimony contradicts the allegation of slander; (v) 18 neutral witnesses gave sworn testimony that contradicts the allegation of slander; and (vi) Curry and Hailstones cannot prove any damages as a result of the alleged slander.   As a matter of law, Third-Party Plaintiffs' slander claim must be dismissed.

---

[10] Mokwa asked similar questions concerning the damages sought by Third-Party Plaintiffs, to which they responded, "since [our] cause of action is for slander per se, [we] have no burden to establish damages."  Ex. 18, Third-Party Plaintiffs' Answers to Mokwa's Interrogs. at No. 9; *see also id*. at No. 14.

**B.      TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS.**

The elements of tortious interference with a business relationship are (1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship. *Tamiami Trial Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985).

Third-Party Plaintiffs cannot prove *any* of the elements necessary to maintain a lawsuit for tortious interference with a business relationship.  Both Hailstones and Curry's claims for tortious interference with business relationships directly contradict their respective January 2010 depositions conducted by Mirabilis.  In their January 2010 depositions both Hailstones and Curry claim to have no source of income and no identifiable business relationships. Ex. 20, Jan. Dep. of Hailstones 8:2-11:23; Ex. 21, Jan. Dep. of Curry 7:20-8:18.

> [COUNSEL]:      And how long was your period of unemployment?
>
> [HAILSTONES]:  Since leaving the Mirabilis network at the end of January 2007.
>
> [COUNSEL]:  And you did no independent consulting work during that time?
>
> [HAILSTONES]:  No.

Ex. 20, Jan. Dep. of Hailstones 8:10-16.

> [COUNSEL]:  Were there specific opportunities at that time that [Palaxar EMEA] was looking to pursue?
>
> [HAILSTONES]:  Nothing specific, no.

> [COUNSEL]:  There was no targeted clients at that moment in time?
>
> [HAILSTONES]:  No.

*Id*. at 11:6-11.

> [COUNSEL]:  Did you have any specific products you were intending to market through the business?
>
> [HAILSTONES]:  At that point in time, no.
>
> [COUNSEL]:  You say at that point in time; did that change at some point in time?
>
> [HAILSTONES]:  There were some ideas that Ms. Curry and I were talking about, but did not result in a defined product.

*Id.* at 11:21-12:3.

> [COUNSEL]:  We couldn't say whether you would have received any income or not; we don't know?
>
> [HAILSTONES]:  No.  Well, it would have crystallized if a client would have turned up, but none did.

*Id*. at 19:10-13.

> [COUNSEL]:  Okay.  You said it was set up to do that, by use of those words; do you mean it is not actively doing that at this time?
>
> [CURRY]:  We have no clients.
>
> [COUNSEL]:  Is that your only place of employment at this time?
>
> [CURRY]: Yes, Sir.
>
> [COUNSEL]:  So if you have no clients; what does your day-to-day work consist of at Palaxar?
>
> [CURRY]:  Looking for clients and looking for a job.

Ex. 21, January Dep. of Curry 8:9-18.

1.   **Third-Party Plaintiffs cannot prove the existence of a business relationship.**

In Florida, no cause of action exists for tortious interference with a business's relationship to the community at large.[11]  *Ethan Allen, Inc. v. Georgetown Manor, Inc.,* 647 So.2d 812, 815 (Fla. 1994); *North Am. Van Lines, Inc. v. Ferguson Transp., Inc.,* 639 So.2d 32, 33 (Fla. 4th DCA 1994), aff'd, 687 So.2d 821 (Fla. 1996) ("The business relationship must be with an identifiable person and not with the public at large.") "An action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *St. Johns River Water Mgmt. Dist. v. Fernberg Geological Servs,* 784 So. 2d 500, 503 (Fla. 5th DCA 2001).

"Loss of future customers is not sufficient to state a claim. The tort of unjustified interference with a business relationship requires the existence of a present relationship, not prospective relationships that one hopes to have in the future." *Beacon Property Management, Inc. v. PNR, Inc.,* 785 So.2d 564 (Fla. 4th DCA 2001), *overruled in non-relevant part,* 842 So.2d 773 (Fla. 2003).  "The speculative hope of future business is not sufficient to sustain the tort of interference with a business relationship." *St. Johns,* 784 So. 2d at 505.

---

[11]   In *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185 (11th Cir. 1999), the Eleventh Circuit described the distinction Florida courts draw between a relationship with the community at large and with an identifiable customer.  In *Dunn*, a group of airline pilots that continued to work during a pilot strike sued a pilots' union that placed the group on a list of "scabs" for tortious interference. *Id*. at 1189-90.  The pilots claimed that the union's "publication of the scab list prohibited them from obtaining employment with any commercial airline - in other words, that it interfered with the pilots' ability to sell their labor to the general community." *Id*. at 1191.  The Eleventh Circuit rejected the pilots' claim, holding that a tortious interference claim requires "a relationship with a particular party, and not just a relationship with the general business community." *Id*. (citing *Ethan Allen*, 647 So. 2d at 815).

Third-Party Plaintiffs have failed to identify the business relationship forming the basis for their lawsuit.  When Third-Party Plaintiffs' were asked to state with specificity each of the business relationships Mokwa interfered with, they responded with the following:

> Amar, Bates and Mokwa knew Curry and Hailstones were at the conference and that the conference was for the purpose of making and furthering business relationships.  Their intentional and outrageous display harmed Curry's and Hailstones' business relationships, and the damage has been their continual unemployment and their inability to market Palaxar's suite of antifraud products in the ensuing years.

Ex. 18, Third-Party Plaintiffs' Answers to Mokwa's Interrogs. at No. 12.

At his deposition, Hailstones repeatedly refused to identify the business relationship forming the basis for this lawsuit.  Ex. 4, Oct. Dep. of Hailstones 35:9-16; 36:22-37:6; 38:1-5; 38:17-21; 41:11-17.

> [COUNSEL]:  And, again, can you give one example of such a business relationship that's been negatively affected?
>
> [HAILSTONES]:   I can only refer you again to my prior answer, which is I'm not at liberty to give you a specific relationship.
>
> [COUNSEL]:  So let me get this straight, you've brought a lawsuit in federal court in the United States claiming that business relationships have been interfered with, and upon being questioned under oath, your answer is you can't discuss what those relationships are?
>
> [HAILSTONES]:  Yes.

*Id*. at 42:17- 43:2.

Third-Party Plaintiffs cannot produce any record evidence substantiating an actual identifiable business relationship that Mokwa interfered with.

**2.**      **Third-Party Plaintiffs cannot prove knowledge of the relationship.**

It is undisputed that Mokwa did not know what business relationships Third-Party Plaintiffs were pursuing.  Ex. 1, Mokwa Aff. ¶ 18.

> [COUNSEL]:  Can you give a specific example of a business relationship that was conspired to be interfered with due to the actions of my client, Matthew Mokwa.
>
> [HAILSTONES]:  Well, your client, I presume, would not have been in a position to know which relationships we were being – we were pursuing; and, therefore conspiring against.  But, generally, their actions had a global effect in the business relationships which were being pursued.

Ex. 4, Oct. Dep. of Hailstones 42:8-16.

### 3.    Third-Party Plaintiffs cannot prove interference.

To prove interference, Third-Party Plaintiffs must prove that Mokwa's actions induced or caused a breach or termination of a business relationship or expectancy.  *Smith v. Ocean State Bank*, 335 So. 2d 641, 643 (Fla. 1st DCA 1976).   The interference must be both intentional and unjustified.  *Weight-Rite Golf Corp. v. United States Golf Association*, 766 F. Supp. 1104, 1112 (M.D. Fla. 1991), *aff'd*, 953 F.2d 651 (11th Cir. 1992).  "Under Florida law, there is no such thing as a cause of action for interference which is only negligently or consequentially affected.  Accordingly, in order to prevail on a tortious interference claim, a plaintiff must establish the defendant's intent to interfere, as opposed to the defendant's mere intent to act.  To satisfy the intent requirement, the plaintiff must show that the defendant's actions were purposely directed at the interference."  *Maxi-Taxi of Florida, Inc. v. Lee County Port Auth.*, 2008 U.S. App. LEXIS 35073 *50 (M.D. Fla. 2008).

Mokwa testified that he never intentionally or improperly interfered with any existing or potential business relationship of Curry, Hailstones or Palaxar.  Ex. 1, Mokwa Aff. ¶¶ 18-

20.   Third-Party Plaintiffs cannot produce any record evidence that a business relationship was severed or terminated due to the actions of Mokwa.   Third-Party Plaintiffs' evidence consists entirely of suppositions and conjecture.

### 4.      **Third-Party Plaintiffs cannot prove damages.**

Special damages "reasonably flowing" from Mokwa's alleged interference is an essential element of Third-Party Plaintiffs' cause of action for intentional interference with a business relationship. *Tamiami Trial Tours* 463 at 1127.   Proof of nominal damages will not suffice. *See Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089, 1091 (11th Cir. 1994).

Third-Party Plaintiffs do not have a damage expert, witnesses or any other evidence supporting their conclusory allegations of damages.   On multiple occasions Third-Party Plaintiffs were asked to quantify their damages and refused, stating that their damages are presumed and they do not need to prove damages.

> [COUNSEL]: Are you going to designate an expert?
>
> [CURRY]: I don't need to prove damages in this case, I believe.

Ex. 5, Aug. Depo of Curry 119:17-19.

> [COUNSEL]:  Is it your opinion that you do not need to prove damages?
>
> [CURRY]:  I believe damages are presumed in this case.
>
> [COUNSEL]:  So the answer is you do not believe you need to prove any damages in this case?
>
> [CURRY]:   I believe under what we plead, damages are presumed.  So that's my answer …

*Id.* at 121:14-20.

As noted previously, Curry and Hailstones have specifically stated that they do not intend, and are not required, to offer proof of damages. *See supra* Sec. 4.A.4. Because Plaintiff's have failed to offer any evidence of damages specific to their interference claim, their claim is deficient as a matter of law.

## C.   <u>FLORIDA LITIGATION PRIVILEGE.</u>

Hailstones and Curry both testified that their claims against Bates and Mokwa are grounded in the fact that their law firm represented Mirabilis. Ex. 4, Oct. Dep. of Hailstones 26:8-18, 27:7-10; Ex. 5, Aug. Depo of Curry 51:10-53:17. "Florida's litigation privilege affords absolute immunity for acts occurring during the course of judicial proceedings." *Jackson v. Bellsouth Telecomms* 372 F.3d 1250, 1274 (11th Cir. 2004) (citations omitted); *see also Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994) (explaining the rationale behind the privilege).

In the present case, the conduct forming the basis for the Third-Party Complaint involves litigation planning and the service of process of a lawsuit. Actions involved in the prosecution of a lawsuit are clearly protected under the Florida litigation privilege. *See Microsoft Corp. v. Big Boy Distrib. LLC*, 589 F. Supp. 2d 1308, 1322 (holding that "Big Boys' tortious interference claim is barred by Florida's litigation privilege to the extent this claim is predicated on Microsoft's conduct in pursuing its legal remedies through this lawsuit or another lawsuit").

## 5.   <u>CONCLUSION</u>

Third-Party Plaintiffs cannot show a genuine issue of material fact requiring trial on any of their claims. The evidence offered by Third-Party Plaintiffs offers no reasonable basis

from which a reasonable trier of fact could find that Mokwa committed slander or intentional interference with a business relationship. For all the reasons set forth herein, Third-Party Defendant Matthew S. Mokwa respectfully asks this Court to find that there remains no genuine issue of material fact to be tried, and Third-Party Defendant Matthew S. Mokwa is entitled to summary judgment on all counts against him.

Respectfully submitted this 27th day of March, 2011.

s/ Adam J. Loewy
ADAM J. LOEWY
Texas Bar No. 24041353
BARRY & LOEWY, LLP
The Frost Tower
401 Congress Avenue
Suite 1540
Austin, TX 78701
Ph.: (512) 852-4322
Fax: (512) 687-3441
aloewy@barryloewy.com
*Counsel for Matthew Mokwa*

KATHLEEN DAVIES
The Davies Law Firm, LLC
126 East Jefferson Street
Orlando, FL 32801
Ph.: (407) 540-1010
Fax: (407) 649-3038
kdavies@thedavieslawfirm.com
*Counsel for Aaron Bates and Matthew Mokwa*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 27, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties named on the attached Service List or in some other authorized manner for those counsel or parties who are not authorized to receive notices electronically.

s/ Adam J. Loewy
Adam J. Loewy

26

**SERVICE LIST**

| | |
|---|---|
| Kathleen Havener<br>Havener Law Firm, LLC<br>15511 Russell Road<br>Chagrin Falls, Ohio 44022<br>**Attorney for Edith Curry, Frank Hailstones, Palaxar Group LLC, and Palaxar Holdings LLC**<br><br>Martin R. Raskin<br>Jane S. Raskin<br>RASKIN & RASKIN, P.A.<br>2601 South Bayshore Drive<br>Suite 725<br>Miami, Florida 33133<br>mraskin@raskinlaw.com<br>**Attorneys for Edith Curry, Palaxar Group LLC, and Palaxar Holdings LLC** | Scott H. Park<br>Assistant U.S. Attorney<br>501 W. Church St.<br>Suite 300<br>Orlando, FL 32805<br>**Attorney for Nexia Strategy Corporation**<br><br>Yaniv Amar<br>3475 Mystic Point Drive, TH #10<br>Aventura, FL 33180<br>**Third-Party Defendant**<br><br>Frank Amodeo<br>FCC - Low, B3<br>P.O. Box 1031<br>Coleman, FL 33521-1031<br>**Third-Party Defendant** |