UNITED STATES DISTRICT COURT FILED
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION 2011 MAY 16 PM 12:59

US DISTRICT COURT
MIDDLE DISTRICT OF FL
ORLANDO FLORIDA

**MIRABILIS VENTURES, INC., AND NEXIA
STRATEGY CORPORATION,**

    **Plaintiffs,**

    **-vs-**              **Case No.6:07-cv-1788-Orl-28KRS**

**PALAXAR GROUP, LLC, PALAXAR
HOLDINGS, LLC, FRANK HAILSTONES,
EDITH CURRY, and FICTITIOUS
DEFENDANTS 1 THROUGH 8,**

_____/

### MOTION TO ALLOW EXPANSION OF THE RECORD AND NOTICE
### OF FILING MEMORANDUM OF FACT AND LAW

    **Comes now** Frank L. Amodeo and files the attached declarations, documents and memoranda in support of Mr. Amodeo's pending motion or as part of expanding the record for Mr. Amodeo's anticipated filings.

    The following declarations are made under penalty of perjury pursuant to 28 U.S.C. §1746, the statutory analog of a sworn affidavit. And to the extent an attached document is not separately declared under penalty of perjury; then the undersign affirms the document's accuracy and truth by the signature below.

    Wherefore Mr. Amodeo respectfully requests the court expand the record by adding the attached declarations and documents and such other relief as the court deems appropriate or fair.

                          _5/10/11_

                          Frank L. Amodeo # 48883-019
FCC-Low  Unit B-3
P.O. Box 1031
Coleman, FL 33521

## MEMORANDUM OF FACT AND LAW IN SUPPORT OF
## FRANK L. AMODEO'S CLAIM OF FACTUAL INNOCENCE

Frank L. Amodeo pled guilty to crimes which Mr. Amodeo did not commit, because Mr. Amodeo was misinformed about the elements of the crimes and misinformed about the applicability of the doctrine of willful blindness. Harrison Slaughter, Esq., incorrectly advised Mr. Amodeo concerning the significance of specific intent with regards to the tax crimes. Both as to the materiality of specific intent as an element, and the use of deliberate ignorance as a method of inferring intent. Except for this misadvice, Mr. Amodeo would not have pled guilty, because Mr. Amodeo was not guilty.

## AN ELEMENT OF FEDERAL TAX CRIMES IS THE
## SPECIFIC INTENT TO VIOLATE A KNOWN LEGAL DUTY

Mr. Amodeo has consistently and continuously stated that Mr. Amodeo believed the deferring (non-payment) of the payroll taxes was legal. The government acknowledged this was Mr. Amodeo's sincere belief, when the government stipulated to Mr. Amodeo's sentencing memorandum in lieu of Mr. Amodeo's testimony at sentencing. The four separate polygraph examinations corroborate that this was Mr. Amodeo's belief. The testimony of more than a hundred witnesses will support the factual assertion. Additionally, Mr. Amodeo's behavior in the audio recordings and the video recordings indicate Mr. Amodeo believed the deferment strategy was legitimate; as does Mr. Amodeo's publishing the tax strategy and Mr. Amodeo's disclosure of the tax liability in publicly available financial statements. Finally, Mr. Amodeo's disclosures to Mr. Amodeo's professional

advisors and to the Internal Revenue Service support the inference that Mr. Amodeo believed the nonpayment of taxes was lawful, as long as the tax obligation was reported to the IRS.

## A MISTAKE IN INTERPRETING OR UNDERSTANDING THE TAX LAWS IS A COMPLETE DEFENSE TO A TAX CRIME

The belief a taxpayer has complied with the tax laws is a complete defense to a criminal charge of violating the tax statutes, regardless of the belief's accuracy. Cheek v. United States, 498 U.S. 192 (1991); see also United States v. Kohwitz, 614 F.3d 1241, 1265 (11th Cir. 2010); United States v. Snipes, 611 F.3d 855, 867 (11th Cir. 2010); United States v. Williams, 121 F.3d 615, 621 (11th Cir. 1997); United States v. Morris, 20 F.3d 1111 (11th Cir. 1994). Because specific intent (willfulness, knowing) is an element of the crime, the burden of proof with regards to an accused's belief the taxpayer is not in compliance is the government's. See Williams, supra, 121 F.3d at n.6, United States v. Birkenstock, 823 F.2d 1026, 1028 (7th Cir. 1987)(The willfulness element of the federal tax felony statutes requires proof of an intentional violation of a known legal duty). The significance: the government is required to prove Mr. Amodeo's state of mind and understanding of the law beyond a reasonable doubt. See In Re: Winship, 397 U.S. 358 (1970). Proving a negative or a belief is not easy; direct proof is usually not available, the government typically proves this by circumstantial evidence or occasionally by polygraph. The general rule being: concealing behavior is indicative of a guilty mind. In other words, by examining an accused's

contemporaneous or subsequent conduct, one can infer the attitudes and beliefs of the individual.

### MR. AMODEO'S CONTEMPORANEOUS AND SUBSEQUENT CONDUCT WAS NOT CONCEALING, BUT REVEALING AND TRANSPARENT, INDICATING MR. AMODEO HAD AN INNOCENT MIND.

Mr. Amodeo's conduct was the antithesis of concealment. Mr. Amodeo disclosed the plans (Sunshine Liquidaiton, PBS Reorganization) to the Internal Revenue Service; to the independent auditors and attorneys of Presidion Corporation; to the accountants, advisors of AQMI Strategy Corporation; to the accountants, advisors, attorneys, auditors and executives of Mirabilis Ventures, Inc.; and to the accountants, advisors, attorneys, auditors, controlling persons and executives of AEM, Inc. (A comprehensive but not exhaustive, list of dates, events, individuals and organizations is included in addendum "A" attached and incorporated by reference). Other conduct not meant to conceal includes: Mr. Amodeo directing the development of a video and seminar presentation to market the tax funded reorganization strategy and Mr. Amodeo ensuring the tax liabilities were included on financial statements made available for public review. Conduct revealatory, not concealing and indicative of an innocent mind.

Additionally, Mr. Amodeo submitted to a series of polygraphs conducted by one of the nation's leading polygraphers and a regular contractor with the Department of Justice. (Credentials and result are included in Addendum "B" attached and incorporated by reference). Mr. Amodeo passed all four polygraphs. After the first test, Mr. Slaughter admitted to

being "shocked," because "no one passes"; after the fourth, the polygrapher told Mr. Slaughter, "We should go see Randy, [Assistant United States Attorney I. Randall Gold] and tell him this man [ Amodeo ] did not commit the crime."

Further, and uniquely, Mr. Amodeo was able to obtain dozens of contemporaneously videotaped meetings which reveal not only the actions, but words and non-verbal communications of Mr. Amodeo, and about a hundred other persons, none of whom are shocked, surprised or even worried about the unpaid taxes.

All of these actions or events support the conclusion, Mr. Amodeo considered the conduct lawful, and was unaware of anyone, let alone himself, violating a legal duty. In other words, even using the government's preferred methodologies, Mr. Amodeo's actions, contemporaneous to the offense conduct and subsequent to the offense conduct, establish Mr. Amodeo lacked the requisite intent to be guilty of the crimes of conviction.

### ALTHOUGH THE ACCURACY OR REASONABLENESS OF MR. AMODEO'S BELIEF CONCERNING CORPORATE TAXPAYERS COMPLAINCE WITH THE TAX LAWS, IS IRRELEVANT TO THE LEGAL ISSUE OF MR. AMODEO'S INNOCENCE, THERE ARE EXPLANATIONS FOR THE MISBEGOTTEN IDEA.

The accuracy of Mr. Amodeo's belief are irrelevant to the legal decisions, but a number of events explain why Mr. Amodeo developed the beliefs.

Mr. Amodeo's belief, that non-payment or deferment of taxes by a reorganizing taxpayer is lawful, had its genesis in Mr. Amodeo's previous bankruptcy practice. Mr. Amodeo, in representing an individual proprietor, had discharged approximately two hundred thousand dollars in payroll taxes

(employer portion). The IRS officer involved in the case said as a rule, the government did not collect this portion from an insolvent taxpayer. Contemporaneously, Mr. Amodeo discovered that by executive order (Ronald Reagan's) the IRS was directed to not prosecute insolvent taxpayers; that correctly reported, but did not pay the tax. A belief that was consistent with a fundamental belief developed by Mr. Amodeo over the next several years; that is that fraud could not occur when there was disclosure. After developing the belief Mr. Amodeo, as is typical of bipolars, tended to the extreme in disclosing information.

An example of this tendency occurred while Mr. Amodeo was on supervised release. The probation officer, supervising Mr. Amodeo, while visiting a job site was surprised all the people knew who he (Scott Fanelli, the probation officer) was, since the probation office had told Mr. Amodeo, Mr. Amodeo did not need inform all of the people at the workplace of Mr. Amodeo's background or Mr. Fanelli's role. Mr. Amodeo told everyone because Mr. Amodeo held to the belief that secrets should be avoided; especially those about Mr. Amodeo's past conduct and personal philosophies.

Another example was the personal biography on Mr. Amodeo's website which revealed Mr. Amodeo's bankruptcy, criminal conviction, disbarment and psychological condition. Mr. Amodeo's penchant for disclosure is confirmed by Mr. Amodeo's publication on the internet, and otherwise, of the bad as well as the good; including financial statements which disclosed the tax

liabilities. Mr. Amodeo wanted to put the tax returns on the website, but Mr. Holtz and Mr. Beyer put the cabosh on that idea. They argued persuasively that the tax returns, especially of Mirabilis, were the property of Mirabilis' shareholders, not Frank Amodeo or AQMI Strategy, thus the decision to publicize belonged to Mirabilis so the information could not be published. The significance of this to the current matter is: Mr. Amodeo discussed with Mr. Amodeo's accountant and attorney publishing the statements which revealed the increasing tax obligation (Mr. Amodeo, contrary to their advice, did publish everything except the tax returns of companies legally outside Mr. Amodeo's control). Neither professional suggested the tax deferments or non-payments were illegal and should not be disclosed. The response of the professionals affirmed the validity of Mr. Amodeo's belief in the legitimacy of the conduct. Confidence building for anyone, not even considering the magnified effect on a person with Mr. Amodeo's bipolar condition. Any ordinary, normal person would have been assured by the professionals' behavior; especially of professionals like Mr. Holtz, CPA and Mr. Beyer, Esq., a prestigious accountant and a prominent attorney.

Even further affirmation came when Mr. Holtz drafted a presentation to be made to the IRS and incorporated into Mr. Amodeo's vitae, that showed how use of the payroll taxes actually generated more tax revenues for the IRS than were deferred, since the money did not get "buried", but went to generate new economic activity or pay wages. Again the point is

Mr. Holtz was not telling Mr. Amodeo this is a crime, but advising how to present the strategy as a success story.

Each event, like these just described, and there were scores, (sse addendum "C" for a nonexclusive list of examples, which is incorporated into this memorandum by reference), reinforced Mr. Amodeo's perception that the tax deferment strategy was lawful. Again, even an unimpaired individual would have been convinced. The effect on a bipolar-manic, like Mr. Amodeo, is to confirm the truth of his beliefs as if carved in stone.

Beyond these types of reinforcing events, there were other types of belief-reinforcing events: on the part of the Internal Revenue Service, the United States Attorney's Office, the IRS's Criminal Investigation Division, etc.... Events which (in order to avoid excessive redundancy) are more thoroughly discussed in the separate pleadings addressing specific claims related to those entities.

Finally, Mr. Amodeo's discussions with the various professionals, like the August 2006 town hall meeting, are not the type of behaviors associated with a person trying to hide unlawful conduct. Mr. Amodeo believed his actions and the actions of the others involved to be legal; otherwise Mr. Amodeo would not have spoken so openly with so many.

These examples help explain why Mr. Amodeo believed as Mr. Amodeo did, but significantly the reasonableness of Mr. Amodeo's belief is irrelevant to the analysis. Whether Mr. Amodeo's belief was objectively reasonable does not matter, only that Mr.



Amodeo actually believed. **See Cheek** supra; **see also United States v. Bachynsky,** U.S. App. LEXIS 3377 (11th Cir. 2011) **United States v. Heller,** 830 F.2d 150 (11th Cir. 1987).

## CONCLUSION

Mr. Amodeo did not violate the federal tax law, because Mr. Amodeo believed the offense conduct was lawful.

Respectfully submitted this 27 day of April by:

Frank L. Amodeo