# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

MIRABILIS VENTURES, INC. and NEXIA
STRATEGY CORPORATION,

Plaintiffs,

-vs-                                           Case No.  6:07-cv-1788-Orl-28GJK

PALAXAR GROUP, LLC; PALAXAR
HOLIDNGS, LLC; FRANK HAILSTONES;
EDITH CURRY a/k/a EDITH BROADHEAD;
and FICTITIOUS DEFENDANTS 1-8,

Defendants,

_____

# REPORT AND RECOMMENDATION

## TO THE UNITED STATES DISTRICT COURT:

This cause came on for consideration without oral argument on the following motions:

| MOTION: | MOTION OF DEFENDANTS PALAXAR HOLDINGS, LLC, PALAXAR GROUP, LLC, EDITH CURRY AND FRANK HAILSTONES FOR ATTORNEYS' FEES (Doc. No. 372) |
|---|---|
| FILED: | January 13, 2011 |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

| | |
|---|---|
| **MOTION:** | **JOINT MOTION TO BIFURCATE (Doc. No. 387)** |
| **FILED:** | **January 26, 2011** |

_____

**THEREON** it is **RECOMMENDED** that the motion be **DENIED as moot**.


I.   <u>**BACKGROUND.**</u>

This case has a long and complicated history, the details of which have been thoroughly set forth in prior orders, and are incorporated herein by reference.  *See* Doc. Nos. 236, 309, 351. The relevant time-line is set forth below:

On November 9, 2007, this case was removed from state court.  Doc. No. 1. In the original complaint, Mirabilis Ventures, Inc. ("Mirabilis") and Nexia Strategy Corporation ("Nexia") (collectively, the "Plaintiffs") sued Palaxar Group, LLC ("Palaxar Group"), Palaxar Holdings, LLC ("Palaxar Holdings"), Edith Curry ("Curry"), and Frank Hailstones ("Hailstones") alleging breach of contract, breach of fiduciary duty, misappropriation of trade secrets, conversion, and injunctive relief.  Doc. No. 2.  On January 25, 2008, the Court held a hearing on the Motion for Preliminary Injunction and, ultimately, entered an order denying the motion for failing to show a substantial likelihood of success on the merits.  Doc. Nos. 47, 48.

On February 19, 2008, Plaintiffs filed a Second Amended Complaint (the "Complaint") against Palaxar Group, Palaxar Holdings, Curry, Hailstones, and Terence Chu ("Chu") (collectively, the "Defendants").   Doc. No. 56. The Complaint alleges the following seven counts: breach of contract against Curry and Hailstones (Count I); breach of fiduciary duty against Curry and Hailstones (Count II); violation of Florida's Uniform Trade Secrets Act,

Section 688.001, Florida Statutes, against Curry and Hailstones (Count III); conversion against Curry and Hailstones (Count IV); civil conspiracy against the Defendants (Count V); injunctive relief (Count VI); and unjust enrichment against Curry and Hailstones (Count VII).  Doc. No. 56. Aaron C. Bates, Esq. signed both the original complaint and the Complaint on behalf of Plaintiffs.  Doc. No. 56 at 14.

The case concerns the development and marketing of an anti-fraud certification program known as Nexia Certification, which Plaintiffs alleged they own.  *See* Doc. Nos. 56, 285 at 1. Mirabilis was a firm that invested in various ventures.  *See* Doc. No. 205 at ¶ 5.  Nexia was a wholly owned subsidiary of Mirabilis.  *Id*. The Complaint alleges that Curry and Hailstones, while employed by Plaintiffs, formed Palaxar Group and Palaxar Holdings to "implement and market" Nexia Certification for their own personal gain and benefit.  Doc. No. 56 at ¶¶ 27-28. Plaintiffs claim that Curry and Hailstones, while employed by Plaintiffs, converted Nexia Certification and misappropriated Plaintiffs' trade secrets and confidential information regarding Nexia Certification.  Doc. No. 56 at ¶¶ 48-60.  Plaintiffs allege that Chu, as a founding member and manager of Palaxar Group and Palaxar Holdings, conspired with Hailstones and Curry to establish Palaxar Group and Palaxar Holdings for the sole purpose of marketing and using Nexia Certification.  *Id*. at ¶¶ 27-28, 32.  Plaintiffs maintain that the Defendants, including Chu, transferred the rights of Nexia Certification to Hailstones and Curry without the approval, authorization, or ratification of Plaintiffs' board of directors or the shareholders of Nexia.  Doc. No. 56 at ¶ 63.

Mirabilis was one of the entities that played a role in a scheme by Frank Amodeo ("Amodeo") to misappropriate payroll taxes that were due to the Internal Revenue Service (the

3

"IRS").  The scheme involved professional employer organizations ("PEOs"), which provided human resources and payroll services to clients.  The PEO's calculated and collected the payroll taxes that ought to be withheld from the pay checks of each client's employees.  "Rather than being turned over to the IRS, as the law required, the funds would be diverted to other ends, including funding operations of Amodeo-linked businesses or buying real estate, vehicles and other property." *Mirabilis Ventures, Inc. v. Rachlin Cohen & Holtz, LLP*, Case No. 6:09-cv-271-Orl-31DAB, Doc. No. 105 at 2 (M.D. Fla. Feb 1, 2011).   Mirabilis owned a number of companies, such as Nexia, in various lines of business.[1]

On March 6, 2008, Palaxar Group, Palaxar Holdings, Curry and Hailstones filed a Joint Answer, Affirmative Defenses, and First Amended Counterclaims, and Third-Party Claims (the "Counterclaims and Third-Party Claims").   Doc. No. 59.   Curry and Hailstones assert the following twelve counterclaims and third-party claims: breach of contract against Wellington Capital, Inc. ("Wellington") (Count I); fraud in the inducement against Mirabilis, Nexia, Robert Pollack ("Pollack"), and James Sadrianna ("Sadrianna") (Count II);  breach of a separation agreement against Mirabilis and Nexia (Count III);  breach of a termination agreement against Mirabilis (Count IV); conspiracy to commit slander against Mirabilis, Nexia, Amodeo, Yaniv Amar ("Amar"), Aaron C. Bates, Esq. ("Bates"), and Matthew Mokwa, Esq. ("Mokwa")[2] (Count V);  slander per se against Mirabilis, Nexia, and Mokwa (Count VI); slander per se against

---

[1] According to the indictment in Amodeo's criminal case, Mirabilis was a company that "specialized in acquisitions of and mergers with other businesses in various industries" and by late 2006 had "grown to be a conglomerate of approximately 70 companies involved in various industries, including consulting, corporate security, employee leasing and hotel ownership."  Doc. No. 1 in Case No. 6:08-cr-176 at 7-8.

[2] Although Mokwa has appeared as counsel of record for an interested party, Bates Mokwa, PLLC, regarding various motions for sanctions, Mokwa has not appeared as counsel of record for any party in this case.  *See* Doc. No. 250.

Mirabilis, Nexia, and Amar (Count VII); intentional interference with an advantageous business relationship against Mirabilis, Nexia, Amodeo, Amar, Bates, and Mokwa (Count VIII); civil conspiracy to intentionally interfere with an advantageous business relationship against Mirabilis, Nexia, Amodeo, Amar, Bates, and Mokwa (Count IX); indemnity against Mirabilis and Nexia (Count X); indemnity against AQMI Strategy Corporation ("AQMI") (Count XI); and abuse of process against Nexia and Mirabilis (Count XII). Doc. No. 59 at 12-37. The Counterclaims and Third-Party Claims are signed by Martin R. Raskin, Esq. ("Raskin"), as counsel for Curry, Palaxar Group, and Palaxar Holdings, and Kathleen B. Havener, Esq. ("Havener"), as counsel for Hailstones, Curry, Palaxar Group, and Palaxar Holdings. Doc. No. 59 at 38.[3]

On March 19, 2008, Chu, proceeding pro se, filed a Motion to Dismiss the Complaint for lack of personal jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted. Doc. No. 79, reinstated at Doc. No. 197.

On May 27, 2008, William R. Cuthill became President of Mirabilis and, two days later, Mirabilis filed for bankruptcy protection. Doc. Nos. 143, 205 at 4.[4] On June 5, 2008, the case was stayed in its entirety based on Mirabilis's bankruptcy filing and the United States' (the "Government") motion to stay the case. Doc. Nos. 146, 151. The Government stated that it was

---

[3] On November 15, 2007, Raskin appeared as counsel of record for Curry, Palaxar Group, and Palaxar Holdings. Doc. No. 17. Donald E. Christopher, Esq. and Christine M. Ho, Esq. appeared as counsel of record for Hailstones. Doc. No. 6 at 3. On January 24, 2008, Havener was admitted pro hac vice as counsel of record for Curry, Palaxar Group, and Palaxar Holdings with Raskin as local counsel. Doc.. Nos. 34, 44. *See also* Local Rule 2.02(a). On February 8, 2008, Mr. Christopher and Ms. Ho were granted leave to withdraw and Havener was substituted as counsel of record for Hailstones. Doc. Nos. 51-52. Since February 8, 2008, Mr. Hailstones has not had local counsel, in violation of Local Rule 2.02(a). *See* Doc. Nos. 415, 422, 422-1.

[4] Cuthill was the President of Mirabilis on May 27, 2008, and was appointed as Bankruptcy Trustee, whose job was "to identify, recover, and distribute the assets of Mirabilis during its Chapter 11 reorganization." Doc. No. 205 at 4. Cuthill is not an attorney and is not a party in this case.

investigating Mirabilis, Nexia, Amodeo, and others for the theft of approximately $182 million in payroll taxes due to the Internal Revenue Service (the "IRS").  Doc. No. 146 at 2.   The Government further stated:

> A surface reading of the [Complaint] and [Counterclaims and Third-Party Claims] might suggest that the criminal investigation and the civil case do not substantially overlap.  A review of the discovery requests in the civil case, however, reflect that there is: 1) evidence being sought that is irrelevant to the civil case, 2) a significant overlap between the allegations in the criminal investigation and the civil case, and 3) substantial prejudice that the [Government] would suffer if the requested relief is not granted.

Doc. No. 146 at 3-4.  The Government identified specific discovery requests Plaintiffs served on Defendants which related to the theft of payroll taxes.  Doc. No. 146 at 4.  Thus, because it believed ongoing discovery in the civil case would interfere with the Government's criminal investigation and eventual prosecution, the Government moved to stay discovery in the case.  *Id.*

On September 23, 2008, Amodeo pled guilty to a number of felonies, including a failure to collect and remit payroll taxes. Doc. No. 41 in Case No. 6:08-cr-176.  Amodeo was sentenced to twenty-two (22) and a half years in prison and ordered to pay restitution to the IRS of approximately $180 million.  Doc. No. 125 in Case No. 6:08-cr-176.  After originally pleading guilty, Mirabilis was permitted to plead nolo contendere to charges of conspiracy and wire fraud.  Doc. No. 149 in Case No. 6:08-cr-231.  Mirabilis has been ordered to pay restitution in the amount of $200 million as a consequence of the role it played in Amodeo's scheme.

On December 2, 2009, the stay was lifted.  Doc. No. 179.  From March 9, 2010 through September 22, 2010, the parties were embroiled in a dispute over the ownership of Nexia and who had the right to prosecute and defend on its behalf.  Doc. Nos. 209, 215, 220, 225, 236, 243,

309.   On August 3, 2010, Plaintiffs filed a Motion for Voluntary Dismissal Without Prejudice requesting that the Court dismiss the Complaint in its entirety without prejudice.  Doc. No. 280.

On August 6, 2010, the Court entered an order granting summary judgment in favor of Palaxar Group, Palaxar Holdings, Curry and Hailstones as to all of Plaintiffs' claims against them.  Doc. No. 285.  On August 9, 2010, the Court entered an order denying Chu's Motion to Dismiss for lack of personal jurisdiction (finding personal jurisdiction over Chu) but, sua sponte, entered summary judgment for Chu on Plaintiffs' civil conspiracy claim against him (Count V). Doc. No. 287 at 2.  In its August 9, 2010 order, the Court denied Plaintiffs' Motion for Voluntary Dismissal Without Prejudice as moot due to summary judgment having been granted in favor of Defendants as to all counts.  Doc. No. 287 at 2.

On November 17, 2010, the Court entered an order vacating its August 6, 2010 summary judgment order (Doc. No. 285) in favor of defendants Palaxar Group, Palaxar Holdings, Curry and Hailstones, and entered an order granting Plaintiffs' Ore Tenus Motion to Voluntarily Dismiss their claims with prejudice against those defendants.  Doc. No. 339.  Therefore, the claims against Palaxar Group, Palaxar Holdings, Curry and Hailstones have been voluntarily dismissed with prejudice (Doc. No. 339) and summary judgment has been entered in favor of Chu (Doc. No. 287) as to the civil conspiracy claim (Count V).

On December 1, 2010, Curry and Hailstones filed a Second Amended Counterclaims and Third Party Claims (the "Amended Counterclaims and Third-Party Claims").  Doc. No. 346.[5]  In

---

[5]The Amended Counterclaims and Third-Party Claims are filed on behalf of only Curry and Hailstones.  Doc. No. 346.  Thus, Palaxar Group, LLC and Palaxar Holdings, LLC no longer assert any counterclaims or third-party claims.  Moreover, Chu did not assert any counterclaims or third-party claims.  Therefore, as of December 1, 2010, the only remaining claims in the case were the Curry and Hailstones's Amended Counterclaims and Third-Party Claims.  Doc. No. 346.

the Amended Counterclaims and Third-Party Claims, Curry and Hailstones assert the following nine claims: fraud in the inducement against Amodeo and Nexia (Count I); breach of a separation agreement against Nexia (Count II); civil conspiracy to commit slander against Amodeo, Amar, Bates, and Mokwa (Count III); slander per se against Nexia and Mokwa (Count IV); slander per se against Nexia and Amar (Count V); intentional interference with an advantageous business relationship against Nexia, Amodeo, Amar, Bates, and Mokwa (Count VI); civil conspiracy to intentionally interfere with an advantageous business relationship against Nexia, Amodeo, Amar, Bates, and Mokwa (Count VII); indemnity against Nexia (Count VIII); and abuse of process against Nexia (Count IX).   Doc. No. 346 at 4-24.[6] The Amended Counterclaims and Third-Party Claims are signed by Raskin, as counsel for Curry, and Havener, as counsel for Hailstones and Curry.  Doc. No. 346 at 24.

### A.  The Motion for Attorneys Fees.

On January 13, 2011, the Defendants filed the instant Motion for Attorneys' Fees (the "Motion for Attorneys Fees"), pursuant to the Florida Uniformed Trade Secrets Act, Section 688.005,[7] Florida Statutes, 28 U.S.C. § 1927,[8] and the Court's inherent authority, against

---

[6]Thus, there are no remaining claims against Mirabilis, Pollack, AQMI, Sadrianna, or Wellington.  On May 29, 2008, Mirabilis filed for bankruptcy protection.  Doc. Nos. 143, 150.  In the Amended Counterclaims and Third-Party Claims, Curry and Hailstones state that counterclaims were not raised against Mirabilis "in the interest of having the stay of this case lifted and the proceedings go forward."  Doc. No. 346 at ¶ 4.

[7] Section 688.005, Florida Statutes, provides:

> If a claim of misappropriation is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and malicious misappropriation exists, the court may award reasonable attorney's fees to the prevailing party.

Id. (emphasis added).

[8]28 U.S.C. § 1927 provides:

Mirabilis, Nexia, William R. Cuthill ("Cuthill"), Bates, Mokwa, the law firm of Goldberg Bates, PLLC ("Goldberg Bates"), Bates Mokwa, PLLC ("Bates Mokwa"), Allen Estes, Esq. ("Estes"), J. Russell Campbell, Esq. ("Campbell"), the law firm of Balch & Bingham LLP ("Balch"), Nicollete Vilmos, Esq. ("Vilmos"), Todd K. Norman, Esq. ("Norman"), and the law firm of Broad and Cassel ("B&C") (collectively, the "Respondents").  Doc. No. 372.  The Defendants define those Respondents who are lawyers or law firms collectively as the "Attorneys."  Doc. No. 372 at 2.[9]  The Motion for Attorneys Fees seeks sanctions against Respondents for: 1) filing a frivolous and baseless "Complaint and Amended Complaint"; 2) "propounding false statements to the Court"; and 3) "knowingly, wilfully, and vexatiously maintaining the litigation despite clear obligations to discontinue it."  Doc. No. 372 at 2.

Defendants maintain that this case was never about Nexia's anti-fraud program.  Doc. No. 372 at 2.  Defendants allege that this lawsuit was instituted with the unstated goal for Amodeo to recover funds that would enable him to make restitution, reduce his criminal sentence regarding the $188 million he stole, and to discover what information Curry and Hailstones may have provided to the Government.  Doc. No. 372 at 2-4. To achieve Amodeo's goal, Defendants allege that he instituted seventy-nine (79) lawsuits, including this case, "to shake down at least 124 individuals and 132 companies, professional organizations, banks, lending institutions, insurance companies, and government agencies to falsely obtain from others the $188 [million]

---

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

*Id.*

[9]To be clear, the above named lawyers and law firms are: Bates, Mokwa, Goldberg Bates, Bates Mokwa, Estes, Campbell, Balch, Vilmos, Norman, and B&C.  Doc. No. 342 at 2.

he admitted to having diverted from the Internal Revenue Service."   Doc. No. 372 at 3-4.
Defendants contend that Amodeo conspired with his criminal counsel, Mr. Slaughter, and "a
cadre of well-paid law firms."  Doc. No. 372 at 4.

A component of this alleged scheme was having Mr. Slaughter take possession of all of
Mirabilis's corporate records, "which rendered any civil discovery virtually impossible."  Doc.
No. 372 at 4.[10] Defendants assert that Slaughter, the lawyers, and law firms were motivated to
participate in this scheme by the large contingency fees they were promised.  Doc. No. 372 at 4.
According to Defendants, the lawyers and their firms were promised contingency fees of 44 to
55 percent for participating in the scheme.  *Id*.  Defendants also allege that Slaughter negotiated
an additional 20 percent "referral fee" from the other lawyers and law firms.  *Id*.  Thus, while
Amodeo negotiated his criminal plea deal, Defendants contend that the lawyers and law firms
were preparing and filing baseless lawsuits.  *Id*. at 4-5.  When the civil lawyers and law firms
received discovery, they allegedly transferred it to Slaughter.  *Id*. at 5.[11]

Defendants assert that the "Attorneys" knew Mirabilis and Nexia were not the true parties
in interest.  Doc. No. 372 at 5-7.  According to Defendants, Mirabilis and Nexia were seized by
their senior secured creditor, AQMI, ten months prior to the initiation of this lawsuit.  Doc. No.
372 at 5 (citing Doc. No. 374-4 at 5).  Defendants maintain that AQMI is controlled by Amodeo
as its sole shareholder.  Doc. No. 374 at 5.  Defendants contend that Plaintiffs, Balch, and Bates
Mokwa knew of AQMI's seizure "in early 2007," but "expressly denied it in the present case."

---

[10] In the Motion for Attorneys Fees, Defendants do not seek sanctions for the violation of any discovery order.  Doc. No. 372.

[11] In support of these allegations, Defendants cite generally to a series of vague documents, including handwritten notes, emails, and charts.  Doc. No. 372 at 5 (citing Doc. No. 374-11).

Doc. No. 372 at 5 (citing Plaintiffs' Answer to the Counterclaims and Third-Party Claims, Doc. No. 72 at ¶¶ 6, 16, 130-135).[12]  Defendants allege that AQMI retained the law firms, paid the attorneys, paid the salaries of Mirabilis's officers, and drafted and issued the press releases.  Doc. No. 372 at 5 (citing Doc. No. 374-5 at 11 (a letter to Elizabeth Green, Esq., retaining her services for Mirabilis's bankruptcy proceedings); and Doc. No. 374-6 at 3 ¶¶ 4-5 (a November 15, 2007, answer by Mirabilis, Amodeo, AQMI, and Jodi Jaiman, which is signed by Bates, in an unrelated case admitting that Amodeo is a consultant to Mirabilis, Amodeo is the president of AQMI, and AQMI pays all the salaries of Mirabilis' employees).  Thus, Defendants state that "[t]his case was brought by Amodeo, for his benefit, and the Attorneys admitted it, if not to this Court."  Doc. No. 372 at 5.

Defendants assert that in April of 2007, Slaughter received "binders" with documents that Plaintiffs have claimed did not exist or were fraudulent.  Doc. No. 372 at 7-9.  In support of this allegation, Defendants quote from Sadrianna's August 2007 deposition, wherein he stated that "Amodeo put together over 100 different blue folders . . . where he was trying to deflect responsibility from himself to a whole bunch of other people."  Doc. No. 372 at 8 (citing Doc. No. 317-7 at 76-77).  Defendants state:

> The binders and folders prepared by the Attorneys and Amodeo were delivered to Slaughter in April and May 2007.  Curry's April 20, 2007, 273 page binder contained her Separation Agreement, the patent application, and the extensive email communications evidencing her separation negotiations between . . . Hailstones, [Mirabilis's] General Counsel Richard Berman, [Mirabilis's Chief Executive Officer] and fellow inventor Laurie Holtz, as well as Amodeo.  Similarly, Hailstones' binder contained his employment

---

[12] The responses are essentially general denials to allegations in the Counterclaims and Third-Party Claims.  *See* Doc. No. 72 at ¶¶ 6, 16, 130-135.

> agreement with Axena, Inc. and his fully executed January 31,
> 2007 Termination Agreement.

Doc. No. 372 at 8 (citing Doc. No. 374-12).   Defendants further allege that "Plaintiffs, Cuthill,

and B&C provided [during discovery in separate case] the Laurie Holtz Timeline (containing the

Assignment Agreement that in this case they alleged Defendants falsified), as credible evidence

to be considered by Plaintiffs' expert witness."   Doc. No. 372 at 8-9 (citing Case No. 6:09-cv-

271-Orl-31DAB, Doc. No. 82-7 p. 49).[13]

Defendants contend that Amodeo acknowledged that the Respondents knew of his

fraudulent scheme by quoting from the transcript of Amodeo's sentencing hearing, wherein he

stated:

> . . . I commenced 30 lawsuits with different firms all over the
> county . . . and by [late] September [2007] the first affirmative
> actions were filed. . . . **[T]he twenty attorneys, they were told
> what was going on when I hired them, they knew it**. . . .

Doc. No. 372 at 8-9 (quoting Doc. No. 374-13 at 12) (emphasis in motion).   Defendants rely on

the above statement as clear proof that the Respondents knowingly pursued baseless lawsuits.

*Id*.[14]

---

[13] The document cited by Defendants was filed in Laurie Holtz's motion for sanctions against Mirabilis, which was denied.  *See* Doc. No. 106 in 09-cv-271.

[14] A review of the entire transcript shows that the Amodeo was stating that the attorneys knew that the ultimate beneficiary of those lawsuits and settlement agreements would be the Internal Revenue Service. Doc. No. 374-13 at 12.  The full transcript states:

Q.     What was your understanding at the time you made those settlements as to who the ultimate beneficiary would be of those settlements?
A.     The IRS.  Twenty attorneys, I would like them all here, and, again, I respect the judge's time for redundancy, but to bring them all in, they were told what was going on when I hired them, they knew it, they even put it in the pleadings in most cases to protect themselves, the funds will be held by our firm and turned over to the IRS if they're collected.

*Id*.

According to Defendants, in early 2007, AQMI, at the direction of Amodeo, retained Balch and put that law firm in charge of due diligence and assessing Amodeo's litigation plans. Doc. No. 732 at 11-12.  Defendants state:

> In August 2007, Balch billed over 215 hours for Litigation Due Diligence; which included meeting in Orlando, Florida to "discuss litigation management and due diligence on potential claims . . . in meetings with Bates, Amodeo, Goldberg and Mokwa;" and specifically on August 29, 2007, "locating tax timeline and case synopsis in preparation for determining litigation strategy for Palaxar, RKT, and Stratus Authority; reviewing tax timeline and case synopsis to determine key individuals."

Doc. No. 372 at 11.[15]  Defendants also allege that Balch "instructed Amodeo" regarding a press release deflecting responsibility.  Doc. No. 372 at 11-12 (citing Doc. No. 374-15 at 2 (an email from Campbell to Bates)).  In bullet point fashion, the email states in pertinent part: "I did it.  It was my plan and I now know it was wrong. . . . I got bad advice.  I am ultimately responsible, however, and I accept that responsibility."  Doc. No. 374-15 at 2. Based upon this email, Defendants declare: "Thus, the Attorneys were assisting in the drafting of false and defamatory press releases prefacing the coming deluge of litigation."  Doc. No. 372 at 12.

Defendants maintain that Mr. Slaughter frustrated discovery by controlling Mirabilis's corporate documents.  Doc. No. 372 at 12.[16]  In support of this allegation, Defendants rely on an April 21, 2010, deposition of Cuthill, wherein he stated that he entered the case in May of 2008, and had discussions with Mr. Slaughter concerning the custody of Mirabilis's documents.  *Id*. at 12 ("[W]hen I got into the case, I couldn't tell who was in charge of the Mirabilis documents. And since I was Mirabilis, or representing Mirabilis at that point in time, if the documents

---

[15] The quotations above have no record citation.  *Id*.

[16] The Motion for Attorneys Fees does not request sanctions against Slaughter.  Doc. No. 372.

13

belonged to Mirabilis, I wanted to take possession of them.").  Based on the above statement, Defendants contend "Plaintiffs, Amodeo and the Attorneys didn't 'thwart' the discovery process. They intentionally designed and implemented a means to obstruct it altogether."  Doc. No. 372 at 13.

Defendants state that the original complaint in this case was based on: 1) an "affidavit" of Jodi Jaiman; 2) select paragraphs from Curry's employment agreement; 3) two "obviously-altered" employee handbooks of a non-party to the suit; 4) an unsigned and "invalid on-its-face" employment agreement of Hailstones; and 5) screen prints of Palaxar's website.  Doc. No. 372 at 14-15.  Regarding Ms. Jaiman's affidavit, Defendants state:

> Ms. Jaiman's affidavit was not based on personal knowledge, but . . . only on her review of the corporate business records – she was not employed by [Mirabilis] or Nexia until 2007.  <u>Also in September 2008 she recanted the statements made in her previous affidavits</u>.

Doc. No. 372 at 14 n. 39 (citing Doc. No. 75-19 at 9) (emphasis added).[17]  Defendants argue that, by filing the original complaint, "Plaintiffs and the Attorneys ignored, and in fact, denied, the contrary evidence contained in Plaintiffs' own files which they had given to Slaughter six months earlier."  Doc. No. 372 at 15.   Defendants state that the contrary evidence ignored by Plaintiffs and the "Attorneys" include: 1) the assignment agreements allegedly drafted by Scott Goldberg, Esq. (citing Doc. No. 24-10); 2) Curry and Hailstones' separation agreements (citing Doc. Nos. 24-5; 24-10); 3) Mirabilis's Articles of Incorporation; 4) Mirabilis's Bylaws; 5) Nexia's Bylaws (citing Doc. No. 24-3); Mirabilis's Board Minutes, which allegedly show

---

[17] Defendants do not provide a record citation for Ms. Jaiman's affidavit or her September 2008 recantation thereof. *Id.*

Amodeo's control (citing Doc. No. 24-2); and 7) Amodeo's handwritten agreement.  Doc. No. 372 at 15.[18]

Defendants contend that during the early stages of this case, Plaintiffs and the "Attorneys" issued "a series of knowingly false, defamatory and inflammatory news articles, press releases, and scores of blog entries."  Doc. No. 372 at 15-16 (listing four articles or press releases).  In furtherance of this knowingly false scheme, Defendants maintain that Bates and Mokwa served Curry and Hailstones with the "express goal" of causing them "maximum embarrassment."  Doc. No. 372 at 16-17.

In December 2007, when Defendants filed their original answer, they state that they provided Plaintiffs with the following information: 1) a July 28, 2008 handwritten agreement signed by Amodeo; 2) August 1, 2006 Intellectual Property Assignment Agreements; 3) Curry's October 31, 2006 Separation Agreement (citing Doc. Nos. 24-5; 24-10); 4) Hailstones' January 31, 2007 Termination Agreement; 5) three affidavits attesting to "no revenues [and] no insurance" for Palaxar; 6) affidavits from three of the four inventors attesting to the validity of the intellectual property assignments and the nature of Plaintiffs' waiver of any claim; 7) seven affidavits attesting to Amodeo's control; and 8) over 1,000 documents supporting Defendants' position.  Doc. No. 372 at 17-18.[19]  Defendants maintain that the Plaintiffs and the "Attorneys" were aware and in possession of those documents.  Doc. No. 372 at 18.  Instead of dismissing the lawsuit based upon those documents, in March of 2008, Defendants contend that the "Attorneys," "shunning their duties as officers of the Court, . . . filed a Second Amended

---

[18] The majority of the documents listed above were, in fact, filed by Bates and Campbell on behalf of Mirabilis in this case on January 4, 2008.  Doc. No. 24.

[19] With few exceptions, most notably the documents filed by Mirabilis in this case (Doc. No. 24), Defendants do not provide record citations for these documents.  Doc. No. 372 at 17-18.

Complaint to include an additional party, [Chu]."  Doc. No. 372 at 18.   Thereafter, Defendants

argue that Plaintiffs and the "Attorneys" propounded improper discovery seeking information in

support of Amodeo's criminal prosecution.  Doc. No. 372 at 18.  Due to this improper discovery,

Defendants state that the Government intervened and sought a stay of the case.   Doc. No. 372 at

18 (citing Doc. Nos. 146, 150).

Defendants maintain that from October 12, 2007 through August 4, 2010, the

"Attorneys" produced only 200 documents and 100 exhibits during discovery, none of which

allegedly supported their claims.  Doc. No. 372 at 19.  Defendants further state:

> Plaintiffs provided no supplemental production in three years.
> After two years and nine requests, a 116 page, single-space (9
> point font) index of the 6,000 boxes allegedly located in a
> warehouse in Orlando, Florida, along with an index of 14 terabytes
> of data, supposedly in electronic form, was provided leaving it "up
> to Defendant to figure out which documents and video tapes were
> relevant."    This was clearly not responsive to Defendants'
> discovery requests but also demonstrated that Plaintiffs, Cuthill
> and the Attorneys did not have any additional documents.  Further,
> the Attorneys and Cuthill had not done any investigation of the
> claims beyond the materials prepared by Amodeo for his criminal
> defense and provided to them by Bates and Mokwa.  *See* (D.E. 59
> p. 12 at ¶ 28 Case No. 6:09-cv-1974).

Doc. No. 372 at 19 n. 54.[20]   Based on this discovery production, or lack thereof, Defendants state

that it is clear that Plaintiffs and the "Attorneys" were "acting in bad faith."  Doc. No. 372 at 19

("Amodeo and his Attorneys developed a corrupt strategy designed to destroy the reputations of

Curry and Hailstones, as well as financially ruin them with the costs and publicity of this

litigation.").

---

[20] The above citation refers to a response to an unrelated motion for sanctions in another case stating: "As soon as
Mr. Cuthill was able to obtain possession of the boxes and the warehouses, in or around November 2008, he began
the task of moving, re-boxing, organizing and indexing over 5,000 documents."  Doc. No. 59 at 12, in Case No.
6:09-cv-1974.

Defendants contend that, "[w]hile Amodeo was the initial mastermind of the strategy, the Attorneys (especially B&C) and Cuthill perpetuated this farce." Doc. No. 372 at 20. Defendants state that "[o]ther than Amodeo, all (except one) who had personal knowledge of anything to do with the Assignment, Separation, and Termination Agreements and/or Palaxar had already testified in Defendants' favor by Affidavit in March 2008." Doc. No. 372 at 20-21.[21] Despite this alleged evidence, the "Attorneys were undaunted by the absence of a competent witness to testify against Defendants at the time the injunction was denied," and refused to dismiss the case. Doc. No. 372 at 21. Moreover, Defendants state that Bates and Mokwa had "first-hand knowledge" that "all the allegations were false and the Complaint was filed for an improper purpose." Doc. No. 372 at 22.

Defendants conclude:

> The manner and purpose with which this cause of action was commenced, served, publicized, and maintained exemplifies bad faith on the part of all who participated in planning, filing publicizing, and maintaining it. There is a glut of evidence in the record before this Court and in related cases to illustrate Plaintiffs' and Attorneys' bad faith conduct: pleadings, in-court statements, Plaintiffs' own document production, and sworn testimony. Contrast that with what Plaintiffs have produced to support their claims – which is precisely nothing. . . . Surely this case, in which the acts of Plaintiffs, Attorneys, and Cuthill were committed in bad faith from start to finish, justifies an award of fees and costs.

Doc. No. 372 at 25-26. Based on these allegations, Defendants state that they are entitled to a joint and several award of attorneys' fees against the Respondents. Doc. No. 372 at 25. Although Defendants attach roughly two-hundred and ninety-three (293) pages of affidavits and times sheets regarding the amount of attorneys' fees and costs incurred by them in this case,

---

[21] Defendants do not provide or cite to these affidavits. Doc. No. 372 at 21-22.

nowhere in the Motion for Attorneys Fees do they state the total amount of fees and costs they request.  Doc. Nos. 372, 373.

On January 27, 2011, Estes, Campbell, and Balch filed a response stating that the Motion for Attorneys' Fees repeats the same arguments previously raised in Chu's Motion for Sanctions. Doc. No. 388 at 1-2.  Thus, Estes, Campbell, and Balch adopt the same arguments raised in their response to Chu's Motion (Doc. Nos. 252, 255).  Doc. No. 388 at 1-2.  They request that the Motion for Attorneys Fees be denied because there is no basis to award sanctions against them. Doc. No. 388 at 1-2.

On February 10, 2011, Mirabilis, Cuthill, Vilmos, Norman, and B&C filed a response arguing that the Motion for Attorneys Fees should be denied because: 1) it is untimely (Doc. No. 394 at 9-13); 2) it "lump[s] all of the attorneys together" without any rationale, legal justification, or specific allegations of wrongdoing (Doc. No. 394 at 6, 9); and 3) there is no evidence that Mirabilis, Cuthill, Vilmos, Norman, or B&C prosecuted this matter in bad faith or multiplied the proceedings (Doc. No. 394 at 5-6, 11-16).  Doc. No. 394.

On February 10, 2011, Bates, Mokwa, and Bates Mokwa, filed a response arguing that the Motion for Attorneys Fees should be denied because: 1) it is untimely (Doc. No. 395 at 2-5); 2) it fails to meet the standard for awarding fees under 28 U.S.C. § 1927 (Doc. No. 395 at 6); 3) prior to filing the Complaint, Bates conducted a good faith review of the factual allegations and legal basis of the claims (Doc. No. 395 at 7 (citing Bate's affidavit Doc. No. 251-1)); 4) Mokwa never appeared as counsel for any party and, therefore, could not have acted in bad faith or vexatiously multiplied the proceedings (Doc. No. 395 at 9 n. 5); 5) Defendants fail to explain what specific conduct Bates, Mokwa, Bates Mokwa, or Goldberg Bates engaged in that amounts

to bad faith (Doc. No. 395 at 9); and 6) Section 688.005, Florida Statutes does not specifically permit attorneys' fees or costs to be taxed against a party's counsel (Doc. No. 395 at 10). Doc. No. 395.

**B.  Motion to Bifurcate.**

On January 26, 2011, Mirabilis, Cuthill, B&C, Vilmos, Norman, Bates Mokwa, Mokwa, and Bates filed a Joint Motion to Bifurcate (the "Motion to Bifurcate") requesting that the Court bifurcate the issue of entitlement to fees from the quantification of fees.  Doc. No. 387.

**C.  Subsequent History.**

On May 16, 2011, mediation was held between all parties.  Doc. No. 432.  The mediator's report states:

> The case has been partially resolved:
> (1) Issues relating to Hailstones' and Curry's claims against Amar, Bates Mokwa have been resolved except for the issues raised in [the Motion for Attorneys' Fees].
> (2) Certain payments shall be made by Amar, Bates & Mokwa within 120 days, at which time Hailstones & Curry will dismiss their claims against Amar, Bates & Mokwa, excepting only the matters referred to in [the Motion for Attorneys' Fees].
> (3) The Court shall retain jurisdiction over the pending [Motion for Attorneys' Fees], and shall enter an appropriate Order thereon. Those issues have not been settled and shall require judicial resolution.
> (4) Hailstone's and Curry's claims have been resolved in principle, and the parties through counsel will draft appropriate papers to be filed with the Court.

Doc. No. 432 at 2 (emphasis in original).  Thus, the mediator's report states that the case has been completely settled as to Amar, Bates, and Mokwa except for the issues raised in the Motion for Attorneys' Fees.  Doc. No. 432 at 2.[22]  That same day, Curry and Hailstones filed a Notice of

---

[22] As set forth above, the Motion for Attorneys' Fees did not seeks sanctions against Amar.  Doc. No. 372 at 1-2.

Partial Settlement in Principle Between Third Party Plaintiffs Curry and Hailstones and Third Party Defendants Amar, Bates, and Mokwa (the "Bates Settlement Notice").  Doc. No. 434.  The Bates Settlement Notice states that Curry and Hailstones "have reached a partial settlement in principle with" Amar, Bate, and Mokwa, and "[f]inal papers dismissing the claims will be filed upon fulfillment of certain terms of settlement as set forth in the Mediator's Report."  Doc. No. 434 at 1.  Curry and Hailstones state that they "specifically reserve to the Court's adjudication the issues raised in the [Motion for Attorneys' Fees]."  *Id*. at 1.  Thus, the Curry and Hailstones have settled all claims contained in the Amended Counterclaims and Third-Party Claims against Bates and Mokwa, and the only remaining issues between those parties are contained in the Motion for Attorneys' Fees.  *Id*.

On May 16, 2011, Curry and Hailstones also filed a Notice of Settlement in Principle Between Curry and Hailstones and Nexia (the "Nexia Settlement Notice").  Doc. No. 435.  In the Nexia Settlement Notice, Curry and Hailstones state that the parties "have reached a settlement in principle with [Nexia]," and "[t]he formal resolution of the claims will be submitted to the Court within the next ten business days."  Doc. No. 435 at 1.  Thus, Curry and Hailstones have settled all claims contained in the Amended Counterclaims and Third-Party Claims against Nexia, and there are no outstanding issues between those parties.  *Id*.

On May 27, 2011, Curry and Hailstones filed a Motion to Dismiss With Prejudice All Claims Against Amodeo (the "Motion to Dismiss Amodeo").  Doc. No. 438 at 1.  In the Motion to Dismiss Amodeo, Curry and Hailstones state "having settled with Mr. Amodeo's co-defendants and alleged co-conspirators, [Curry and Hailstones] respectfully move this Court for an order dismissing with prejudice all remaining claims . . . against [Amodeo]."  Doc. No. 438.

20

Thus, Curry and Hailstones, after settling all claims against Amodeo's alleged co-conspirators, moved to dismiss with prejudice all claims against Amodeo. *Id.*

On June 8, 2011, Curry, Hailstones, and Nexia filed a Proposed Consent Judgment (the "Consent Judgment"), requesting that the Court enter an order declaring that "[j]udgment is entered in this case in favor of [Curry and Hailstones] and against [Nexia] pursuant to the stipulated terms of the Proposed Consent Judgment filed by the parties." Doc. No. 441 at 6. Realizing that Curry and Hailstone lack the resources to continue the prosecution of their claims and that Nexia lacks the resources to satisfy a judgment against it, Curry, Hailstones, and Nexia agreed to enter into a consent judgment "in lieu of proceeding to trial and obtaining a money judgment against Nexia." Doc. No. 441 at 3.

On August 11, 2011, the Court entered an order:

1.  Denying without prejudice the motion for a Proposed Consent Judgment until the Motion for Attorneys' Fees (Doc. No. 372) is resolved;

2.  Directing Curry and Hailstones to file a status report on or before September 14, 2011, regarding their settlement Amar, Bates, and Mokwa;

3.  Dismissing with prejudice Curry and Hailstones's claims against Amodeo; and

4.  Dismissing with prejudice Amodeo's Third-Party Counterclaims against Curry and Hailstones (Doc. No. 398).

Doc. No. 444. The Court noted that the only remaining claim at issue is the Motion for Attorneys' Fees. Doc. No. 444 at 6.

## II.    STANDARD OF REVIEW.

### A.  28 U.S.C. § 1927.

28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any
> court of the United States or any Territory thereof who so
> multiplies the proceedings in any case unreasonably and
> vexatiously may be required by the court to satisfy personally the
> excess costs, expenses, and attorneys' fees reasonably incurred
> because of such conduct.

*Id*.  There are only two requirements for sanctions under Section 1927.  First, an attorney must

engage in "unreasonable and vexatious" conduct.  *See Hudson v. International Computer

Negotiations, Inc.*, 499 F.3d 1252, 1261 (11th Cir. 2007).  An attorney's conduct satisfies the

first requirement "only when the attorney's conduct is so egregious that it is tantamount to bad

faith."  *Amlong & Amlong, P.A. v. Denny's, Inc.,* 457 F.3d 1180, 1190 (11th Cir. 2006) (internal

quotation marks and citation omitted).  Thus, "negligent conduct, standing alone, will not

support a finding of bad faith under Section 1927 – that is, an attorney's conduct will not warrant

sanctions if it simply fails to meet the standard of conducted expected from a reasonable

attorney."  *Amlong*, 457 F.3d at 1193.  Second, that "unreasonable and vexatious" conduct must

multiply the proceedings.  *Hudson*, 499 F.3d at 1261.  When determining the dollar amount of a

sanction under Section 1927, the sanction "must bear a financial nexus to the excess proceedings,

i.e., the sanction may not exceed the costs, expenses, and attorneys' fees reasonably incurred

because of such conduct."  *Id*. at 1261 (internal quotations omitted).

In *Velez v. Levy World Ltd. Partnership*, Case No. 6:03-cv-878-Orl-22DAB, 2007 WL

842768 at *4 (M.D. Fla. Mar. 20, 2007), the Court held:

> The language of § 1927 makes it clear that it only applies to
> unnecessary filings after the law suit has begun and does not apply
> to initial pleadings. . . . [T]he filing of a frivolous complaint may
> be sanctioned by Rule 11 or a court's inherent power, but not
> pursuant to § 1927.

*Id*. (internal citations omitted).   Thus, Section 1927 is not an appropriate basis in which to attack

an allegedly frivolous pleading.  *Id*.

**B.  Inherent Authority.**

The Court has the inherent authority to control the proceedings before it, which includes

the authority to impose "reasonable and appropriate" sanctions.   *Martin v. Automobili*

*Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir. 2002).   "To exercise its inherent

power a court must find that the party acted in bad faith."  *Martin*, 307 F.3d at 1335 (emphasis

added).  "Inherent powers must be exercised with restraint and discretion."  *Footman v. Cheung*,

341 F.Supp.2d 1218, 1224 (M.D. Fla. 2004) (citing *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th

Cir. 1998)).   Thus, a movant must show that a party and/or an attorney pursued objectively

untenable factual or legal positions by acting in bad faith.

**C.  Section 688.005, Florida Statutes.**

Section 688.005, of the Florida Uniform Trade Secrets Act provides:

> If a claim of misappropriation is made in bad faith, a motion to
> terminate an injunction is made or resisted in bad faith, or willful
> and malicious misappropriation exits, the court  may  award
> reasonable attorney's fees to the prevailing party.

*Id*. (emphasis added). Thus, Section 688.005 is not mandatory, but permits awards of attorneys'

fees to the prevailing party in the Court's discretion upon a finding of bad faith.  *Chetu, Inc. v.*

*Salihu*, 2010 WL 2680088 at *1-2 (S.D. Fla. July 6, 2010).   There is nothing in the language of

Section of 688.005 which would permit a court to award attorneys' fees against the attorney or law firm representing the losing party.  A review of the relevant case law revealed no case where attorneys' fees and costs were taxed against an attorney or law firm under Section 688.005.[23]

III.    **ANALYSIS.**

A.  **"Attorneys".**

As an initial matter, in order to be entitled to sanctions under Section 1927 or the Court's inherent authority, a movant must show that an attorney pursued objectively untenable factual or legal positions, engaged in unreasonable and vexatious conduct that multiplied the proceedings, or acted in bad faith.  *See* supra pp. 21-23. Application of this standard presupposes that the movant has specifically identified the individual attorney(s), the offending conduct committed by that attorney(s), and evidentiary support for each specific allegation.

In the Motion for Attorneys Fees, Defendants lump Bates, Mokwa, Bates Mokwa, Goldberg Bates, Estes, Campbell, Balch, Norman, Vilmos, and B&C into a single conclusory definition – the "Attorneys."  Doc. No. 372 at 1-2.   Defendants then proceed to level allegations against the "Attorneys" and others.   Doc. No. 372.   For example, except for the first page, Norman and Vilmos are never mentioned by name in the entire twenty-five page motion, including footnotes.   Doc. No. 372.   Estes and Campbell are only mentioned in one footnote, which is simply a citation to their affidavits in support of their opposition to Chu's Motion.  Doc. No. 372 at 13 n. 34 (citing Doc. Nos. 241 at ¶¶ 6-9; 252-1 at 3; 253-1).  The various lawyers and law firms each appeared, represented, and in some cases, withdrew from their representation of Plaintiffs at separate times throughout the litigation, yet the Motion of Attorneys' Fees boldly

_____

[23] In the Motion for Attorneys Fees, Defendants do not cite to a single case applying Section 688.005 against an attorney or law firm.  Doc. No. 372 at 23-25.

declares that "the Attorneys filed a Second Amended Complaint" and the "Attorneys . . . knew the claims filed against Defendants were baseless." Doc. No. 372 at 3, 18. This tactic unnecessarily complicates and confuses the allegations in the Motion for Attorneys Fees, and renders some of the allegations false.[24] Additionally, Defendants fail to request a specific amount of attorneys' fees, either in total or from each individual lawyer and law firm. Doc. No. 372. It is the movant's burden to show the precise misconduct alleged as to each attorney and/or law firm, and to quantify damages caused by each instance of misconduct. Moreover, each individual attorney and law firm is entitled to know precisely what improper conduct is alleged and the damages claims as a result of the alleged misconduct. The Motion for Attorneys Fee fails to comply with these basic requirements. Doc. No. 372.

Similar to a prior motion for sanctions, the Motion for Attorneys Fees "has serious deficiencies that justify rejecting many of [its] arguments." Doc. No. 351 at n 11 (citing *Reese v. Herbert*, 527 F.3d 1253, 1260 (11th Cir. 2008) ("judges are not like pigs hunting for truffles buried in briefs.")). With the possible exception of Bates and Mokwa, the Motion for Attorneys Fees wholly fails to specifically identify the attorney or law firm involved, showing the specific misconduct committed by the attorney or law firm, and provide support for the harm allegedly resulting from any specific misconduct so the Court can determine what an appropriate sanction would be. On this basis alone, it is recommended that the Motion for Attorneys Fees be **DENIED**.

---

[24] The Motion for Attorneys Fees also contains allegations of bad faith and other wrongdoings by various individuals, attorneys and law firms including: Mateer & Harbert; Latham Shuker; Maher, Guiley & Maher; Leventhal & Slaughter; Jodi Jaiman; Scott Goldberg, Esq.; and Yaniv Amar. Doc. No. 372.

**B.  Sanctions.**

Defendants request sanctions against Respondents for: 1) filing a frivolous and baseless complaint and amended complaint; 2) propounding false statements to the Court; and 3) knowingly, wilfully, and vexatiously maintaining the litigation.  Doc. No. 372 at 2.  The Court has carefully reviewed the Motion for Attorneys Fees and the exhibits attached thereto.  Doc. Nos. 372-74.  *See* also supra pp. 8-17.  The Motion for Attorneys Fees levels numerous conclusory allegations against the Respondents, cites to numerous docket entries from this case and others, and contains numerous exhibits.  Doc. No. 372.  However, the evidence presented by the Defendants fails to prove that any of the Respondents knowingly or wilfully committed misconduct.  *See* supra pp. 8-18.

The facts show that the original complaint in state court was filed on November 9, 2007, and it was signed by Bates.  Doc. No. 2.  As set forth in the Court's prior report and recommendation:

> [T]he affidavit of Bates . . . provides that that prior to filing the Complaint, counsel conducted a thorough investigation to determine whether or not there was a sufficient evidentiary basis to make the allegations in the Complaint.  Doc. No. 251-1 at 2-3.  In the affidavit, Bates states that prior to filing the Complaint Balch and Bates Mokwa: "[Spoke] to former and current officers and directors of Mirabilis and Nexia; Review[ed] all of the corporate governance of Mirabilis and Nexia; Review[ed] thousands of pages of documents related to Mirabilis and Nexia; Review[ed] hours of audio/video of former officers and directors of Mirabilis and Nexia; Review[ed] [f]inancial records of Mirabilis and Nexia; and Review[ed] certain promotional documents of Palaxar."  Doc. No. 251-1 at 2.

Doc. No. 351 at 11.  On January 16, 2008, Estes was permitted to appear pro hac vice on behalf of Plaintiffs.  Doc. No. 31.  The Complaint was filed on February 19, 2008, and on March 6,

2008, Defendants answered and filed the Counterclaims and Third-Party Claims.  Doc. Nos. 56, 59.   On May 27, 2008, Cuthill became President of Mirabilis and, two days later, Mirabilis filed for bankruptcy protection.  Doc. Nos. 143, 205 at 4.

Shortly afterwards, on June 5, 2008, the case was stayed in its entirety based on Mirabilis's bankruptcy filing and the Government's motion stay.  Doc. No.  151.  On September 23, 2008, Amodeo pled guilty.  On November 6, 2009 Bate, Bates Mokwa, and Goldberg Bates were permitted to withdraw as counsel of record for Plaintiffs.  Doc. No. 169.  On that same day, Norman and Vilmos were added as counsel of record for Plaintiffs.  *Id*.  On December 2, 2009, the stay was lifted.  Doc. No. 179.

From March 9, 2010 through September 22, 2010, the parties were embroiled over a dispute over the ownership of Nexia and who had the right to prosecute and defend on its behalf. Doc. Nos. 209, 215, 220, 225, 236, 243, 309. On November 17, 2010, Plaintiffs' claims were voluntarily dismissed with prejudice.  Doc. Nos. 336-338.  On December 1, 2010, Curry and Hailstones filed their Amended Counterclaims and Third-Party Claims.  Doc. No. 346.  On January 13, 2011, nearly two months after Plaintiffs' claims were dismissed with prejudice, the Defendants filed the Motion for Attorneys Fees.  Doc. No. 372.

As evidenced by their own filings, Defendants possessed whatever information that they believed warranted sanctions against Respondents early in the case.   For example, in the Counterclaims and Third-Party Claims, which were filed on March 6, 2008, Defendants allege that Plaintiffs, Bates, Mokwa, and others, served Defendants in bad faith and issued defamatory press releases designed to injure and embarrass Defendants.  Doc. No. 59 at ¶¶ 71, 79-81, 84.  In May of 2010, in support of their Motion for Reconsideration, Defendants listed numerous acts of

27

bad faith allegedly committed by the Respondents.  Doc. No. 243 at 1-10.  However, Defendants delayed until January of 2011 to seek sanctions.  Moreover, all affirmative claims between the parties have now been settled. Doc. Nos. 432, 434-435, 438, 441.

The Court finds that Defendants have failed to: 1) adequately articulate the specific misconduct allegedly committed by the individual Respondents; 2) prove that misconduct occurred; and 3) quantify the harm allegedly done by each individual Respondent.  *See* Doc. No. 372.   Based on the record in this case, it is recommended that Court decline to exercise its discretion to sanction to the Respondents.  *See Footman*, 341 F.Supp.2d at 1224 ("Inherent powers must be exercised with restraint and discretion.").  Accordingly, it is recommended that the Motion for Attorneys Fees (Doc. No. 372) be **DENIED**.

### C.  Motion to Bifurcate.

Because it is recommended that the Motion for Attorneys Fees be denied, it is recommended that the Motion to Bifurcate (Doc. No. 387) be **DENIED as moot**.

## IV.   CONCLUSION.

Based on the forgoing, it is hereby **RECOMMENDED** that the Court:

1.  **DENY** Motion for Attorneys Fees (Doc. No. 372); and

2.  **DENY** the Motion to Bifurcate (Doc. No. 387).

Failure to file written objections to the proposed findings and recommendations contained in this report **within seven (7) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Recommended** at Orlando, Florida on August 18, 2011.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies to:
Presiding District Judge
Counsel of record
Unrepresented parties